IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant** | * | |
| | ****** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S
MOTION TO REVIEW CONDITION OF RELEASE
RELATED TO AGREEMENT TO FORFEIT PROPERTY
AND TO LIMIT SCOPE OF FORFEITURE ALLEGATION
<u>TO PERMIT HIM TO HIRE COUNSEL OF CHOICE</u>**

In this criminal tax and mortgage fraud case against a well-respected, non-violent first offender with longstanding ties to the community, the magistrate court issued conditions of release (ECF 6) and related orders (ECF 7 and 8) that required defendant Thomas C. Goldstein and his wife to post their marital residence in the District of Columbia as collateral to guarantee his appearance. The court then denied Mr. Goldstein's motion to modify that condition to substitute other real property with a greater equity value, which would have permitted Mr. Goldstein to use the equity in his house to fund his defense. The magistrate court's refusal to accept substitute real property as collateral is not reasonably required and violates Mr. Goldstein's right to counsel under the Sixth Amendment to the United States Constitution. Pursuant to 18 U.S.C. § 3145(a)(2), Mr. Goldstein moves this Court to review his conditions of release and substitute alternate property to be posted as a condition of release. He further moves to limit the scope of the government's forfeiture allegations to permit him to use non-forfeitable property to hire counsel of choice. For the reasons set forth below, the motion should be granted.

**FACTUAL BACKGROUND**

In 2020, the United States Attorney's Office opened a criminal investigation into Mr. Goldstein, a member of the Maryland and District of Columbia bars with a distinguished reputation as a leading practitioner before the United States Supreme Court.[1] Mr. Goldstein has known about the investigation for more than four years and, through counsel, was in frequent contact with the government.

On January 16, 2025, after more than four years of investigating, the government presented and the grand jury returned an indictment that charges Mr. Goldstein with 14 felony and five misdemeanor tax offenses and three counts of making false statements to a mortgage lender. The government exercised its right under Fed. R. Crim. P. 9(a) to secure an arrest warrant, but did not deem Mr. Goldstein a sufficient risk of flight or danger to the community to execute the warrant. Instead, it permitted Mr. Goldstein to remain free for the next 11 days and self-surrender at the Greenbelt courthouse on January 27, 2025.

Chief Magistrate Judge Sullivan conducted an initial appearance and arraignment on the afternoon of January 27. Mr. Goldstein was represented by counsel who entered limited appearances. He entered a plea of not guilty and the Court imposed conditions of release. The condition Mr. Goldstein asks this Court to review and amend involves the posting of real property as collateral to assure his appearance for future proceedings.

In her Pretrial Services Report, Senior Probation Officer Ashley Contreras did not recommend that Mr, Goldstein be required to post a secured bond, instead recommending that he be released on a $100,000 unsecured bond. At the initial appearance, the government requested

---

[1] The first page of the indictment (ECF 1) references USAO number 2020R00192, which means that the office's investigation was opened in 2020.

that Mr. Goldstein be required to post the residence that he and his wife jointly own, located at 4323 Hawthorne Street, NW, Washington, DC 20016 ("the Hawthorne Street property"). Mr. Goldstein's counsel urged the Court to follow Pretrial Services' recommendation. In the alternative, if the Court believed that a secured bond was required, he asked the Court to accept alternate property that members of his family own and are prepared to pledge. Such an arrangement would allow Mr. Goldstein to utilize his equity in the Hawthorne Street property to finance his defense.

The magistrate judge acknowledged Mr. Goldstein's right to counsel under the Sixth Amendment but took the position that Mr. Goldstein could finance his defense from his bank accounts. That position was not supported by the financial section of the Pretrial Services Report, which stated that Mr. Goldstein has a negative net worth of more than $3.3 million. The Court then adopted release conditions that, in paragraph 8(c), required both Mr. Goldstein and his wife to "execute a bond or an agreement to forfeit upon failing to appear as required the following … designated property: 100% interest (all owners of record) for 4323 Hawthorne Street, NW, Washington, DC 20016."

On January 29, 2025, Mr. Goldstein filed a motion to modify the conditions of release (ECF 18). As relevant to this appeal, he requested that the Court modify paragraph 8(c) to replace the Hawthorne Street property with the following three properties in South Carolina, all owned free and clear by members of his family:

> (a) **411 Harden Street, Columbia, South Carolina 29205**: This property is owned by Mr. Goldstein's father and stepmother, Francis Goldstein and Sara June Goldstein. It has an appraised taxable value of $677,200. *See* ECF 18-1.

3

(b) **2728 Kiawah Avenue, Columbia, South Carolina, 29205**. This property is owned by Francis Goldstein, Sara June Goldstein and Katerine Boyes, defendant Goldstein's half-sister. It has an appraised taxable value of $341,500. *See* ECF 18-2.

(c) **19 Ft. Fremont Road, Saint Helena Island, South Carolina, 29920**: This property is owned by Francis Goldstein and Sara June Goldstein. It has an appraised taxable value of $455,900. *See* ECF 18-3.

The value of the three South Carolina properties exceeds the equity in the Hawthorne Street property, which has an assessed value of approximately $3.2 million but is subject to an outstanding mortgage of approximately $1.8 million. The government stated that it would not agree to the substitution until it could review details regarding the proposed substitute property. It did not file a responsive pleading before the magistrate judge ruled.

Later on January 29, 2025, Judge Sullivan denied that portion of the motion to modify release conditions relating to the secured property (ECF 19). He wrote:

> Mr. Goldstein's request to substitute three properties in South Carolina for the Hawthorne Street property in Washington, D.C. is **DENIED**. The Court finds that maintaining the Hawthorne Street property (the residence of Mr. Goldstein's wife) as the property subject to forfeiture under the appearance bond (ECF No. 8) is necessary to reasonably assure that Mr. Goldstein will appear for all future proceedings in this case.

The Court did not make any factual findings either regarding any propensity of Mr. Goldstein to flee or why his family's properties would be insufficient to secure his appearance at trial.

Consistent with the magistrate court's rulings, Mr. Goldstein and his wife executed and recorded the agreement to forfeit property with the District of Columbia Recorder of Deeds.

# ARGUMENT

I.  **Mr. Goldstein Should be Permitted to Substitute a Bond Secured by His Family's Three South Carolina Properties.**

Title 18 U.S.C. § 3145(a)(2) provides that after a magistrate judge imposes conditions of release on a person, "the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." In reviewing such a motion, this Court reviews the magistrate judge's order *de novo*. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). In so doing, the Court "must make an independent determination of the proper … conditions of release." *Id*.

At the outset, this is a case in which there is no realistic prospect of flight. Mr. Goldstein is a deeply respected member of the bar who practiced at the highest levels for decades. He has surrendered his passport. He has limited his travel to the metropolitan Washington area, absent prior permission of Pretrial Services. He has known about the investigation for four-and-a-half years. During that time, he traveled overseas extensively but always returned home. He knew of the likely indictment date (upon the expiration of a tolling agreement) well before it occurred. When he was indicted, he did not flee, and the government did not seek to arrest him. He voluntarily self-surrendered on an 11-day-old warrant.

The magistrate judge's denial of Mr. Goldstein's motion to modify paragraph 8(c) of the conditions of release is based on two false premises: that the Hawthorne Street property is necessary to secure Mr. Goldstein's appearance than the South Carolina properties, and that Mr. Goldstein has assets other than his equity in the Hawthorne Street property to use to finance his defense. Neither premise is supported by the record. Once the mortgage on the Hawthorne Street property is taken into account, the South Carolina properties are worth *more* than the District of Columbia property. The magistrate judge's conclusion that Mr. Goldstein might flee

— and strip his closest family members of by far their most significant assets — is not supported by the record, including the report prepared by Pretrial Services, which recommended that no secured bond was required *at all*.

At the initial appearance, the magistrate judge secured a representation from the government that it would not object to alternative arrangements if necessary to fund Mr. Goldstein's defense. They are. Mr. Goldstein's exceeding debt to his attorneys substantially exceeds the amounts in his checking accounts. Moreover, the Pretrial Services Report makes clear that Mr. Goldstein does not have other assets for financing his defense in an enormous and complex case. As noted, the investigation was conducted for more than four years. The indictment spans more than 50 pages. The government has advised the defense that its initial discovery production will be approximately 60,000 documents. It has already identified nearly 80 witnesses. Defending the case will require extensive investigation as well as significant testimony by retained experts.

Mr. Goldstein has approximately $677,000 in equity in the Hawthorne Street property that he seeks to use to hire his defense counsel. *See infra* at 8 n.1. The Supreme Court has squarely held that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis v. United States*, 578 U.S. 5, 10 (2016) (plurality opinion); *see also id.* at 24 (Thomas, J., concurring) ("I agree with the plurality that a pretrial freeze of untainted assets violates a criminal defendant's Sixth Amendment right to counsel of choice."). In that decision, the Court rejected the dissent's position that "property — whether tainted or untainted — is subject to pretrial restraint, so long as the property might someday be subject to forfeiture." *Id.* at 15 (plurality opinion); *see also id.* at 27 (Thomas, J., concurring) ("An unlimited power to freeze a defendant's potentially forfeitable assets in advance of trial

would eviscerate the Sixth Amendment's original meaning and purpose.").

Finally, refusing to permit the substitution of the South Carolina property unfairly prejudices Mr. Goldstein's wife, who all agree is an entirely innocent party. The conditions of release and related documents functionally make it impossible for her to access her share of the equity in the Hawthorne Street property. She is incurring an array of significant costs related to the case as well.

## II. The Court Should Limit the Scope of the Government's Potential Forfeiture to the Remaining Mortgage on the Hawthorne Street Property.

The Forfeiture Allegation in the Indictment charges that in the event of Mr. Goldstein's conviction of, *inter alia*, Count 22, he "shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2) any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses." After the magistrate judge denied Mr. Goldstein's motion to substitute property, the United States filed a Bill of Particulars for Forfeiture of Property (ECF 21), which provided notice that if Mr. Goldstein is convicted of the violation of 18 U.S.C. § 1014 charged in Count 22, the potential forfeiture would cover "the real property located at 4323 Hawthorne Street NW, Washington DC 20016."

The overbroad language of the Bill of Particulars is contrary to the governing forfeiture statute and as a result impermissibly interferes with Mr. Goldstein's Sixth Amendment right to use equity from the Hawthorne property to fund his legal defense. The Bill of Particulars does not describe any of the facts relevant to the forfeiture determination, including particularly the relationship between the mortgage and the Hawthorne property. In other words, it does not provide any basis for its bald assertion that the property either is the proceeds or is derived from the proceeds of the alleged mortgage fraud.

7

In this case, it is undisputed that Mr. Goldstein and his wife purchased the Hawthorne Street property outright in early 2021. *See* Indictment ¶ 96. The mortgage was executed months later. *See id.* ¶¶ 97-99.[2] The government acknowledges that the funds Mr. Goldstein and his wife used the funds obtained from taking out the mortgage to repay a previous loan, not to purchase the house. *Id.* ¶¶ 95-97.

On this undisputed record, the only appropriate forfeiture if Mr. Goldstein is convicted on Count 22 would be a money judgment for the amount of the mortgage, not forfeiture of the Hawthorne Street property itself. To be sure, the mortgage is secured by an interest in the property. But it was not used to purchase the property. In the plain terms of the statute, because Mr. Goldstein and his wife already owned their house, the property is not directly or indirectly derived from the alleged mortgage fraud or its proceeds. *See* 18 U.S.C. § 982(a)(2).

This case is instead subject to the ordinary rule that in the case of alleged loan fraud, forfeiture under § 982(a)(2) is limited to the amount of the loan itself. *See United States v. Beecroft*, 825 F.3d 991, 997 (9th Cir. 2016) (quoting *United States v. Newman*, 659 F.3d 1235, 1244 (9th Cir. 2011) ("For purposes of criminal forfeiture, the 'proceeds' of a fraudulently obtained loan equal the amount of the loan.")); *United States v. Jameel*, 2014 WL 5317860 (E.D. Va. Oct. 16, 2014); *United States v. Sperber*, 2023 WL 3562967 (N.D. Ga. May 19, 2023); *cf. United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639 (1st Cir. 1988) (rejecting the

---

[2] The value of the original mortgage ($1,987,500) is the amount of money that the government could potentially forfeit. As discussed in the text, the forfeiture statute does not permit the government to secure that amount with a lien on the property. Mr. Goldstein's equity in the Hawthorne Street property (estimated at $677,000) is relevant to show that he has substantial equity that he could use to fund his defense. We derive that estimate by subtracting the current mortgage balance ($1.8462 million) from the current best estimate of the value of the property ($3.2 million), then dividing by two to distinguish Mr. Goldstein's equity from his wife's.

proposition that "forfeitability spreads like a disease" from the mortgage "to the entire interest in the property acquired prior to the payment"). In other cases, the United States has taken precisely this position. *See, e.g., United States v. Joel*, 2012 WL 2499424, at *3 (M.D. Fla. June 5, 2012) ("Therefore, based on these two loans, the United States seeks a money forfeiture judgment pursuant to § 982(a)(2) for $344,000, which is the sum of these loans."). There is no authority for attempting to secure that amount with a lien on the property.

For these reasons, the Court should hold that the Forfeiture Allegation in the Indictment and the Bill of Particulars are limited to a money judgment in the amount of the mortgage on the Hawthorne Street property, and that Mr. Goldstein may seek to use the equity in the property to finance his defense.

## **CONCLUSION**

For these reasons, Mr. Goldstein requests that the Court (1) review the conditions of release and amend paragraph 8(c) to substitute the South Carolina properties for the Hawthorne Street property, and (2) limit the scope of the Bill of Particulars to the amount of the mortgage on the Hawthorne Street property, $1,987,500.

Respectfully submitted,

/s/ Thomas C. Goldstein
Thomas C. Goldstein

Dated: February 5, 2025