IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CRIMINAL NO. LKG-25-6 |
| v. | * | |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |

********

### EMERGENCY MOTION TO REVOKE ORDER OF DETENTION

The government has made a mistake. Its motion to revoke the release order of defendant Thomas Goldstein is premised entirely on the assertion that Mr. Goldstein owns two cryptocurrency wallets that have been used for large financial transactions in the last few days. That assertion is false. As the attached message threads from Mr. Goldstein's cell phone show, those cryptocurrency wallets are owned by third parties, *not* by Mr. Goldstein, and there is no evidence that Mr. Goldstein engaged in the recent cryptocurrency transactions identified by the government.[1] The communications the government cites in its motion to tie the cryptocurrency wallets to Mr. Goldstein in fact show something very different—Mr. Goldstein making arrangements back in 2023 to satisfy a debt to the owner of the cryptocurrency wallet by asking another party to transfer money owed to Mr. Goldstein at that time directly to the owner's wallet. In other words, for both 2023 transactions discussed in the government's motion, Party A owed

---

[1] The messages cited and attached herein were taken from an image of Mr. Goldstein's personal phone that was collected by counsel for Mr. Goldstein in January 2024 and stored in a Relativity database hosted by undersigned counsel since that time. These messages were identified by searching the Relativity database for communications concerning the cryptocurrency wallets cited in the government's motion.

Mr. Goldstein money, and Mr. Goldstein in turn owed money to Party B. To satisfy his debt to Party B, Mr. Goldstein asked Party A to transfer funds to a cryptocurrency wallet owned by Party B, to satisfy the debt. The government was well aware of this possibility. Indeed, the Indictment alleges that Mr. Goldstein engaged in such transactions. *See, e.g.*, ECF No. 1, ¶¶ 24(f), 46. Yet it appears never to have occurred to the government that might be the case here.

Yesterday evening, while Mr. Goldstein was being transported to jail, counsel for Mr. Goldstein sent the government the communications attached to this motion, along with an email explaining their significance and a request that the government take immediate steps to correct its error. Apparently content to allow Mr. Goldstein to spend the night in jail based on its mistake, the government did not file a motion seeking Mr. Goldstein's release or even bother to respond to counsel's email that night. Instead, Assistant United States Attorney Patrick Kibbe responded at 10:40am the following morning, advising that the government is "looking into this further," inviting the *defense* to "supply any additional information relating to" the accounts and transactions in the government's motion, and stating that the government "will be available to address" any motion filed by Mr. Goldstein. Def. Ex. D. Accordingly, Mr. Goldstein through undersigned counsel now requests his immediate release. In the alternative, Mr. Goldstein requests a full detention hearing pursuant to 18 U.S.C. § 3148.[2]

## PROCEDURAL BACKGROUND

On February 9, 2025, the government filed an *ex parte* motion (ECF No. 40) seeking an arrest warrant against Mr. Goldstein and the revocation of the Court's Order Setting Conditions

---

[2] If the Court orders a Section 3148 hearing, Mr. Goldstein requests the opportunity to represent himself on a hybrid basis. Mr. Goldstein has no current intention of representing himself at trial. However, Mr. Goldstein is an experienced attorney, and he represented himself *pro se* at the February 10, 2025 hearing and therefore he may be able to best assist his own defense through hybrid representation for this motion.

2

of Release, ECF No. 6.  That *ex parte* motion relied entirely on allegations that Mr. Goldstein "own[ed]" two cryptocurrency wallets that he failed to disclose to Pretrial Services or the Court. *See, e.g.*, ECF No. 40 at 6.  On that basis, the government argued that Mr. Goldstein violated a condition of his release by transferring funds in violation of the condition that he "not transfer any funds w/o prior Pretrial approval," ECF No. 6, at 3.  The government also argued that Mr. Goldstein committed a federal crime in violation of 18 U.S.C. § 1001 by failing to disclose the two cryptocurrency wallets to Pretrial Services.  The alleged Section 1001 violations are based in part on purported false statements that Mr. Goldstein made to Pretrial Services in an in-person meeting with the Pretrial Services officer on February 6, 2025.  ECF No. 40 at 11.  That in-person meeting did not occur—it was cancelled.

On the morning of February 10, 2025, the Court granted the government's *ex parte* motion for an arrest warrant.  Mr. Goldstein was arrested shortly thereafter and remains incarcerated at this time.  The Court conducted a hearing later that afternoon and concluded that —based on the government's representations—"there is clear and convincing evidence of a violation of pretrial release conditions (not telling Pretrial about two cryptocurrency wallets and transferring funds without prior Pretrial approval) and that Mr. Goldstein has violated his release conditions."  ECF No. 42.  The Court ordered Mr. Goldstein's continued incarceration on that basis.

## ARGUMENT

The government's sole basis for seeking the revocation of Mr. Goldstein's pretrial release is the false allegation that he owns two cryptocurrency wallets, identified in the government's motion as the 935B wallet and the 54E3 wallet, and that he engaged in series of transactions with those wallets in recent days.  As the government concedes, it has no direct evidence that Mr. Goldstein owns either wallet or was responsible for those recent transactions.  ECF No. 40 at 5.

Instead, the government contends that Mr. Goldstein's ownership and control of the wallet is demonstrated by communications between Mr. Goldstein and third parties from nearly two years ago concerning one transaction from each wallet. The government is wrong. Communications from Mr. Goldstein's phone attached to this motion show that in each instance, Mr. Goldstein was asking the recipient of the communications to transfer funds to a cryptocurrency wallet owned by a third party to satisfy a debt.

## I.   THE 935B[3] WALLET

The government's motion purports to establish Mr. Goldstein's "ownership" over the 935B wallet by citing a series of messages dated May 5, 2023, between Mr. Goldstein and an individual identified in the government's motion as the "Fixer."[4] ECF No. 40 at 7-8. In particular, the government cites messages between the Fixer and Mr. Goldstein in which Mr. Goldstein provides the Fixer with the full address of the cryptocurrency wallet and then confirms receipt of two transfers of funds into the wallet from the Fixer—a "test transfer" of $100 followed by a full transfer of approximately $500,000.

The government's motion does not mention a message from Mr. Goldstein to the Fixer— included in the government's exhibit— sent three weeks before the transaction in which Mr. Goldstein tells the Fixer that the $500,000 cryptocurrency transaction will be used to pay a third party. On April 13, 2023, Mr. Goldstein writes to the Fixer, "I can definitely take $500k crypto. But I have to structure it as a purchase. Like I'm going to have a record of buying it from him. Or from you. *I need to do that bc I'm going to send it to* ▆▆▆ *as his share of poker*." ECF No. 40-4 (Gov't Ex. 3) at 1. This passage provides critical context for the portion of the April 13

---

3   The full address of the wallet is ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆935B.
4   This filing refers to the individual as the "Fixer" for identification purposes only.

exchange that is cited in the government's motion, in which Mr. Goldstein tells the Fixer that he will "have you send the [crypto] coins *for me.*" Id. (emphasis added).

The import of the message omitted from the government's motion—that the crypto was being sent to a wallet controlled by a third party, not by Mr. Goldstein—is confirmed by the excerpted messages attached hereto as Exhibit A. Those messages—which were sent at the same time that Mr. Goldstein and the Fixer were corresponding about the May 5 transaction—establish that a third party, and not Mr. Goldstein, owned and controlled the 935B wallet.

| Date/Time | Sender | Message |
|---|---|---|
| 5/5/23, 3:56pm GMT | ▇ | @▇ tom need to wire USDC to me, please give him a address |
| 5/5/23, 4:21pm GMT | ▇ | OK ▇935B |
| 5/5/23, 4:31pm GMT | Mr. Goldstein | $100 test sent |
| 5/5/23, 4:32pm GMT | ▇ | Got it |
| 5/5/23, 4:39pm GMT | Mr. Goldstein | Rest sent |
| 5/5/23, 4:40pm GMT | ▇ | Got 500k |

As these messages show, on the day of the transaction at issue, an individual identified in the message exchange as "▇ *sent the full address of the 935B wallet to Mr. Goldstein* at the request of an individual using the phone number ▇. These messages further show that Mr. Goldstein confirmed both the initial $100 test transfer and the full $500,000 transfer with ▇ These messages thus establish that "▇ not Mr. Goldstein, controlled the 935B wallet.[5]

---

[5] The time stamps of the messages in Defense Exhibit A are Greenwich Mean Time (GMT). The government's motion does not identify the time zone associated with the time stamps in Government Exhibit 3. However, a version of this message thread in which the time stamps appear in GMT, Defense Exhibit C, shows that the messages align. Thus, Mr. Goldstein receives the full address of the 935B wallet from "▇ at 4:21pm GMT, and he sends the address to the Fixer at 4:25pm GMT. The Fixer tells Mr. Goldstein that the $100 test transfer

In further support of its erroneous assertion that Mr. Goldstein is the owner of the 935B wallet, the government cites "sworn testimony of one of Defendant's former romantic partners" that allegedly "confirms that Defendant used an unhosted wallet for cryptocurrency transactions." ECF No. 40 at 9. The government then suggests that the cryptocurrency wallet identified by the "former romantic partner" is the 935B wallet. *See id.* ("That witness believed that Defendant stopped using an unhosted wallet in the summer or fall of 2022, on the basis that Defendant stopped asking for her help using it. However, as the messages and financial records listed above make clear, Defendant *was still using the 935B wallet in May of 2023 . . . .*") (emphasis added). This is highly misleading. Upon information and belief, the "former romantic partner" provided the government with the full address of the unhosted cryptocurrency wallet that she was aware of Mr. Goldstein using in 2022 — an address that *does not match the full address of the 935B wallet*.

Finally, the government says that Mr. Goldstein must be the owner of the 935B wallet because the 935B wallet was opened shortly before Mr. Goldstein "emptied and stopped using" a Coinbase account. The government asserts that "[t]his timing strongly suggests that Defendant *switched* from his Coinbase account, which the Government could more easily discover his ownership of (and freeze), to his unhosted 935B wallet." ECF No. 40 at 8-9 (emphasis added). This too is highly misleading. The government very likely has the records of the Coinbase account that Mr. Goldstein stopped using in November 2022, and those records show that the

---

was sent at 4:30pm GMT, and Mr. Goldstein passes that message on to ▇ at 4:31pm GMT. ▇ responds that the test transfer was received at 4:32pm GMT, and Mr. Goldstein passes that message on to the Fixer at 4:33pm GMT. ▇ then confirms receipt of the remaining funds at 4:40pm GMT, and Mr. Goldstein passes that message on to the Fixer at 4:40pm GMT.

funds in the Coinbase account were *not* transferred to the 935B wallet, another fact that the government does not mention in its motion.[6]

## II.     THE 54E3[7] WALLET

The government's sole basis for arguing that the 54E3 wallet is owned by Mr. Goldstein is a letter written by a lawyer for a third party. ECF No. 40 at 10 & ECF No. 40-10 (Gov't Ex. 9). In that letter, the lawyer proffers that a June 6, 2023 transfer of $242,410 USDT was sent to Mr. Goldstein's "address," and that it was a payment for a "poker loss" to Mr. Goldstein.

But the excerpted messages attached hereto as Exhibit B—which were sent on the same day, June 6, 2023—clearly establish that a different third party owned the 54E3 wallet.

| Date/Time | Sender | Message |
|---|---|---|
| 6/6/23, 4:45pm GMT | Mr. Goldstein | I have $220k UDT. Can I please have an ERC address to send it. |
| 6/6/23, 4:57pm GMT | ▓▓▓▓ | You want to send to ▓▓▓ to pay down the debt due, right? |
| 6/6/23, 4:58pm GMT | Mr. Goldstein | Yes |
| 6/6/23, 4:58pm GMT | ▓▓▓▓ | Okay, please wait |
| 6/6/23, 5:04pm GMT | ▓▓▓▓ | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓54E3 |
| 6/6/23, 5:04pm GMT | Mr. Goldstein | Ty |

---

[6] The government also cites the timing of transfers of large amounts of money in and out of the wallet just before the filing of Mr. Goldstein's motion to modify his release conditions as purported evidence of the suspicious nature of the transactions in this wallet. However, the government does not mention that this flow of money into and then immediately out of the wallet is a consistent pattern dating back months. *See* Gov't Ex. 1.

[7] The full address of the wallet is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓54E3.

| 6/6/23, 5:05pm GMT | | Please send me the Transaction ID once sent [emoji] |
|---|---|---|
| 6/6/23, 8:03pm GMT | Mr. Goldstein | |
| 6/6/23, 11:14pm GMT | | USDT242,410 transferred to ███ right? |
| 6/6/23, 11:15pm GMT | Mr. Goldstein | Yes |

Here again, the messages show that Mr. Goldstein was arranging the transfer of funds to pay off a debt to the third party that owns the cryptocurrency wallet. On the day of the transaction relied upon by the government, Mr. Goldstein writes to an individual associated with the number ███ "I have $220k UDT. Can I please have an ERC address to send it." The individual responds, "You want to send to ███ to pay down the debt due, right?" Mr. Goldstein responds, "Yes." The individual then *sends Mr. Goldstein the full address of the 54E3 wallet*. After Mr. Goldstein confirms the transfer into the wallet, the individual writes, "USDT242,410 transferred *to* ███ right?" (emphasis added). That amount—$242,410 USDT—is the precise amount of the transaction cited by the government. Mr. Goldstein responds, "Yes." These messages clearly show that the $242,410 USDT transfer cited by the government was sent to pay down a debt due to someone identified as "███ Mr. Goldstein did not control the 54E3 wallet and, in fact, did not even know the wallet identification number until it was sent to him by the unidentified third party with whom Mr. Goldstein was corresponding.

## CONCLUSION

The attached messages from Mr. Goldstein's phone clearly show that Mr. Goldstein does not own the cryptocurrency wallets that are the sole basis for the government's motion to revoke

Mr. Goldstein's release order, and that there is therefore no basis to believe that Mr. Goldstein engaged in transactions with those wallets in recent days. Because the government refuses to correct its error, Mr. Goldstein respectfully requests his immediate release.

Dated: February 11, 2025

                                                    */s/ Jonathan I. Kravis*
Jonathan I. Kravis (Maryland Bar No. 1706220008, motion for admission to the Bar of the U.S. District Court for the District of Maryland forthcoming)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Jonathan.Kravis@mto.com


*/s/ Stephany Reaves*
Stephany Reaves (Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Stephany.Reaves@mto.com


*Attorneys for Defendant Thomas Goldstein*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **CRIMINAL NO. LKG-25-6** |
| v. | * | |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |

********

## [PROPOSED] ORDER

Upon consideration of the motion to revoke order of detention filed by Defendant Thomas Goldstein, it is hereby **ORDERED** that Mr. Goldstein's motion is **GRANTED**, and that Mr. Goldstein be released forthwith.

Dated: February ___, 2025

_____

1