**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant** | * | |

*******

**DEFENDANT THOMAS C. GOLDSTEIN'S**
**CONSOLIDATED OPPOSITION TO MOTION TO STRIKE AND**
**REPLY IN SUPPORT OF MOTION TO REVIEW CONDITIONS OF RELEASE**
**AND TO LIMIT SCOPE OF FORFEITURE ALLEGATION**

As the government knows from its lengthy financial investigation, and as Pretrial Services has confirmed in its report, defendant Thomas C. Goldstein has a negative net worth. His principal asset is his equity in the Hawthorne Street house where he and his wife live. Mr. Goldstein intends to use the equity in the house to fund his defense in this case. The government has employed multiple tools to make it impossible for him to do so. First it insisted that an appearance bond be secured by the house. When Mr. Goldstein moved to substitute property with a greater value, the government filed a bill of particulars specifying that its forfeiture allegation covered the house — even though the law makes clear that the property itself is not forfeitable — and filed a *lis pendens*. When he challenged those actions (ECF No. 30), the government moved to strike his pleading (ECF No. 32), and then asserted that this Court cannot review the government's meritless attempt to forfeit the Hawthorne Street property until after trial — effectively preventing Mr. Goldstein from using his equity in the property to hire counsel (ECF No. 34).

These positions are neither logical nor supported by the law. The government illogically insists that the Hawthorne Street property simultaneously has no value (because it will be forfeited) and at the same time argues that this property — alone — is the only asset that will secure Mr. Goldstein's appearance. And it incorrectly asserts — again contrary to its usual position — that it can forfeit the Hawthorne Street property itself rather than the amount of the mortgage that was taken out *after* Mr. Goldstein and his wife purchased the home.

Mr. Goldstein has a Sixth Amendment right to use untainted assets — here, more than half a million dollars, his share of the portion of the Hawthorne Street property's value that exceeds the mortgage amount — to fund his defense. As the Supreme Court has squarely held, "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis v. United States*, 578 U.S. 5, 10 (2016) (plurality opinion). In forfeiture proceedings in *United States v. Mosby*, Crim. No. LKG-22-007 (D. Md.), this Court agreed that the government was not entitled to forfeit a defendant's untainted contributions to real property. The government here seeks to evade these precedents through an attenuated claim that the entire home is "but for" proceeds of mortgage fraud, a claim that fails because the lender of the earlier loan does not hold an actual security interest in the property.

To vindicate Mr. Goldstein's Sixth Amendment right, this Court should permit the use of the offered substitute collateral and limit the scope of the government's impermissibly broad bill of particulars. Substitution of the South Carolina properties would allow Mr. Goldstein to fund his defense while guaranteeing his appearance — all this in a case where the government (1) allowed him to self-surrender on the arrest warrant and surrender his passport eleven days after the indictment, and (2) Pretrial Services recommended only an *unsecured* appearance bond. Not only are the South Carolina properties worth more than Mr. Goldstein's share of the equity in the

Hawthorne Street property, but there is no realistic possibility (as opposed to mere speculation) that he would strip his father, step-mother, and sister of their principal assets and guaranty his own arrest and conviction by fleeing.

Since Mr. Goldstein filed his motion to review his conditions of relief (ECF No. 30), undersigned counsel have entered their appearances in this case. Counsel entered their appearances shortly after they learned that Mr. Goldstein had been detained on the government's motion — not because they had reached a final agreement with Mr. Goldstein on the terms of representation, but rather because they could not allow the government's mistake to leave Mr. Goldstein in jail, where he would be practically unable to litigate the detention motion *pro se*. Earlier today, the Court granted Mr. Goldstein's motion to revoke the detention order, finding that the government had failed to prove by clear and convincing evidence that Mr. Goldstein violated his conditions of release. These events in no way change the fact that Mr. Goldstein would be unable to pay for his defense without selling the Hawthorne Street property.

The undersigned counsel have now adopted Mr. Goldstein's self-filed motion to review his conditions of release and for other relief (ECF No. 30), which renders moot the government's motion to strike (ECF No. 32). On the merits, the Court should grant the relief requested by Mr. Goldstein.

## I. THE GOVERNMENT OFFERS NO PLAUSIBLE REASON WHY THE SOUTH CAROLINA PROPERTIES ARE NOT SUFFICIENT TO ENSURE MR. GOLDSTEIN'S APPEARANCE

As stated in Mr. Goldstein's previous submissions, his family is willing to post as collateral three properties with appraised taxable values of $677,200, $341,500, and $55,900, respectively, for a total of $1,074,600. *See* ECF Nos. 18-1, 18-2, 18-3. Because appraised taxable values are often much lower than present market values, the properties are almost certainly worth

much more than $1.1 million. By contrast, the Hawthorne Street property has an assessed value of approximately $3.2 million but is subject to an outstanding mortgage of approximately $1.8 million. Of the approximately $1.4 million in equity, half belongs to Mr. Goldstein's wife, who by all accounts has an ironclad innocent owner claim to half of the equity. *See* 21 U.S.C. § 853(n).

In opposing substitution, the government engages in a lengthy rehash of the indictment and 18 U.S.C. § 3142(g) factors that are equally applicable to all of the available parcels of collateral. ECF No. 34 at 3-13. It addresses the South Carolina properties in particular only briefly, arguing first that requiring Mr. Goldstein to post the Hawthorne Street marital residence "will be more effective in securing his continued appearances than would substituting the South Carolina properties, which Defendant does not own or live in." *Id.* at 5. It claims that "Defendant is less likely to flee if doing so would result in forfeiture of his marital residence." *Id.* The whole premise of this argument is flawed, however, because Mr. Goldstein's desire is to *sell* the Hawthorne Street property, divide the equity with his wife, and use his share to fund his defense.

The government later argues that Mr. Goldstein has a stronger "emotional and financial" connection to the Hawthorne Street property, ECF No. 34 at 11, and that the Court should not require innocent parties to bear the risk of his non-appearance. Of course, the same is true of the Hawthorne Street property — an innocent party (his wife) would bear the risk of his non-appearance. Moreover, it is a regular practice in this Court for third parties to pledge assets to secure a defendant's appearance. And in any event, the government's suggestion that Mr. Goldstein's "emotional and financial connection" to the Hawthorne Street property (which he intends to sell) is stronger than his desire not to see his closest family members rendered homeless and stripped of their most valuable assets is wholly unfounded.

Finally, the government suggests substitution of assets is not necessary because Mr. Goldstein has other assets with which he can pay counsel. ECF No. 34, at 12. The Pretrial Services Report refutes this notion. It notes that Mr. Goldstein has a *negative* net worth of more than $3.3 million, and a negative monthly cash flow. Even if the Court were to look only at the liquid assets side of his ledger, which showed combined bank accounts of $393,500 as of January 27, 2025, those funds are not nearly sufficient to fund a defense in this complex case and still leave Mr. Goldstein a nominal amount for living expenses.[1]

As noted above, last Monday, the government arrested Mr. Goldstein on an *ex parte* detention order based on the allegation that he was the owner of two cryptocurrency wallets that he failed to disclose to Pretrial Services. Earlier today, the Court granted Mr. Goldstein's motion to revoke the detention order, concluding that the government failed to prove by clear and convincing evidence that Mr. Goldstein owned either wallet. The evidence set forth in Mr. Goldstein's motion clearly established that Mr. Goldstein does not own the wallets. Indeed, on the morning of the detention hearing, in response to a request from the defense for any information tending to show that Mr. Goldstein does not own the wallets, the government disclosed that $2 million was withdrawn from one of the wallets earlier this week, *while Mr. Goldstein was in jail.* If the government intends to rely on Magistrate Judge Sullivan's dictum that he would have found a violation of Mr. Goldstein's conditions of release under a preponderance of the evidence standard, then the defense respectfully requests that the Court allow the defense to present evidence showing that Mr. Goldstein does not own the wallets, either at the hearing scheduled for tomorrow or at a later date.

---

[1] For example, the first tranche of government discovery is approximately 60,000 pages. Its review alone will eat up a significant portion of Mr. Goldstein's liquid assets.

In a case like this one — where Pretrial Services did not request that the defendant post any kind of secured bond and where the government allowed Mr. Goldstein to make his initial appearance voluntarily nearly two weeks after the Indictment was returned — the South Carolina properties are more than sufficient to guarantee his appearance. The Court should permit substitution.

## II. THE FORFEITURE ALLEGATION AND BILL OF PARTICULARS MUST BE LIMITED TO THE AMOUNT OF THE MORTGAGE ON THE HAWTHORNE STREET PROPERTY

Mr. Goldstein's motion sets forth an undisputed legal proposition that the Court knows well from the *Mosby* case: that because the mortgage loan charged in Count 22 was not directly used to purchase the Hawthorne Street property, under 18 U.S.C. § 982(a)(2), the only appropriate forfeiture if Mr. Goldstein is convicted on that count would be a money judgment for the amount of the mortgage, not forfeiture of the Hawthorne Street property itself. *See* ECF No. 30 at 8-9.

The government first posits a procedural objection: that the Court cannot address the scope or amount of the forfeiture charged in the indictment's forfeiture allegations or in the bill of particulars. ECF No. 34 at 13-14. But the unpublished, out-of-circuit district court decisions cited by the government do not support its position. In those cases, the Court deferred ruling on *factual disputes* regarding the connection between the alleged conduct and the property identified in the forfeiture notice. By contrast, Mr. Goldstein is not raising such a factual dispute. Indeed, for purposes of this motion, the relevant facts concerning the Hawthorne Street property are undisputed. Instead, Mr. Goldstein is challenging the government's *legal basis* for claiming forfeiture over property that Mr. Goldstein would otherwise use to fund his defense. Indeed, none of the nonbinding cases cited by the government considered an argument that the

challenged forfeiture allegation impaired the defendant's ability to fund their defense. The government's novel argument that such a challenge cannot be brought before final disposition of the case would mean that the Government could claim forfeiture over every piece of a defendant's property, crippling the defendant's ability to fund their defense, and the Court could not intervene. Such a conclusion is contrary to *Luis*, where the plurality and concurring opinions both rejected the dissent's position that "property — whether tainted or untainted — is subject to pretrial restraint, so long as the property might someday be subject to forfeiture." 578 U.S. at 15; *see also id.* at 27 (Thomas, J., concurring). Nothing prevents the Court from ruling on Mr. Goldstein's legal challenges at this juncture, particularly because doing so would vindicate Mr. Goldstein's Sixth Amendment right to counsel.

On the merits, the government presents a convoluted claim that the Hawthorne Street property itself constitutes "proceeds" of the offense charged in Count 22. ECF No. 34 at 15-17. To be clear: the government does *not* dispute that the proceeds of the loan obtained through the mortgage application identified in Count 22 of the Indictment were *not* used to purchase the Hawthorne Street property, which Mr. Goldstein and his wife *already* owned at the time they executed the loan at issue in Count 22. Instead, those proceeds were used to pay off an earlier loan. The government's attenuated theory of forfeiture is confusing and almost impossible to follow: because the purchase of the Hawthorne Street property was initially funded by the earlier loan, and because the proceeds of the mortgage identified in Count 22 were used to pay off the earlier loan, had Mr. Goldstein not repaid the earlier lender, the earlier lender would have sued, which then would have led to a judgment, which could have been enforced against the Hawthorne Street property. The government cites no case in which a court has upheld such a tenuous theory of forfeiture. And in any event, the government's attenuated theory makes no

sense, because the earlier lender does not hold an actual security interest in the property. The settled legal rule is that the "proceeds" of alleged loan fraud are the loan — full stop — as this Court ruled in *Mosby*, holding that the defendant retained her own contributions to the home's equity.

At most, the Hawthorne Street property could theoretically be treated as a substitute asset. But the government cannot restrain a substitute asset through its *lis pendens* filing with the District of Columbia Recorder of Deeds or otherwise. The Fourth Circuit has abandoned its previous "anomalous rule permitting the pretrial restraint of a defendant's innocent property pursuant to the federal criminal forfeiture statute." *United States v. Chamberlain,* 868 F.3d 290, 291 (4th Cir. 2017) (en banc). It held in *Chamberlain* that 21 U.S.C. § 853(e) "permits the government to obtain a pretrial restraining order over only those assets that are directly subject to forfeiture as property traceable to a charged offense." *Id.* at 298. This limitation on pretrial restraint includes *lis pendens* filings. The District of Columbia Council and Court of Appeals have made clear that a *lis pendens* authorized by D.C. Code § 42-1207 "shall be effective *only if the underlying action or proceeding directly affects* the title to or tenancy interest in, or asserts a mortgage, lien, security interest, right of first offer, right of first refusal, or other ownership interest in real property situated in the District of Columbia." *Garcia v. Tygier,* 295 A.3d 594, 603 (D.C. 2023) (quoting statute). As discussed above, no such interest exists in this case. Under 21 U.S.C. § 853(p), forfeiture of substitute property cannot occur until after the defendant's conviction and a determination by the trial court that the defendant's act or omission resulted in the court's inability to reach § 853(a) assets. *See* § 853(p)(1)(A)-(E); Fed. R. Crim. P. 32.2(e)(1)(B). The relation-back and protective order provisions in § 853(c) and § 853(e) do not extend to substitute property: "Unlike the pre-conviction interest the government may claim in

tainted § 853(a) property, § 853(c) thus does not explicitly authorize the United States to claim any pre-conviction right, title, or interest in § 853(p) substitute property." *United States v. Jarvis,* 499 F.3d 1196, 1204 (10th Cir. 2007) (holding that *lis pendens* notice against substitute property was improper).

In sum, if the Court substitutes the South Carolina property for the Hawthorne Street property, it can and should limit the forfeiture allegation and bill of particulars arising from the offense charged in Count 22 to a money judgment for $1,987,500, the amount of the mortgage that Mr. Goldstein and his wife secured on property they already owned. And it should permit Mr. Goldstein to sell the Hawthorne Street property and use his share of the non-forfeitable proceeds to fund his defense.

**CONCLUSION**

For these reasons, the Court should grant the relief requested in ECF No. 30: (1) amend Paragraph 8(c) of the conditions of release (ECF No. 6) to substitute the South Carolina properties for the Hawthorne Street property; and (2) limit the scope of the Bill of Particulars (ECF No. 21) to the amount of the mortgage on the Hawthorne Street property, $1,987,500. The Court should also deny the government's motion to strike (ECF No. 32) as moot.

Respectfully submitted,

/s/ *Jonathan Kravis*
/s/ *Stephany Reaves*

______________________________

Jonathan I. Kravis
(MD Bar No. 1706220008; motions for admission *pro hac vice* and for admission to D. Md. bar pending)
Stephany Reaves (Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com

Adeel Mohammadi (pro hac vice)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

Dated: February 13, 2025