```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                        SOUTHERN DIVISION

 3     UNITED STATES OF AMERICA,)
             Plaintiff ,        )
 4                             )
             vs.               )   CASE NUMBER: 8:25-cr-00006-LKG
 5                             )
       THOMAS C. GOLDSTEIN,    )
 6           Defendant.        )
       _____)
 7


 8     TRANSCRIPT OF PROCEEDINGS - MOTIONS HEARING/FARETTA HEARING
             BEFORE THE HONORABLE TIMOTHY  J. SULLIVAN
 9               UNITED STATES MAGISTRATE JUDGE
                   Monday, February 10, 2025
10                     Greenbelt, Maryland

11                   A P P E A R A N C E S

12     FOR THE PLAINTIFF:
             BY: PATRICK KIBBE, ESQUIRE
13               OFFICE OF THE UNITED STATES ATTORNEY
                 6406 Ivy Lane, Suite 800
14               Greenbelt, Maryland 20770

15           BY: STANLEY OKULA, ESQUIRE
                 DEPARTMENT OF JUSTICE - TAX DIVISION
16               150 M Street, N.E., Room 2.142
                 Washington, DC  20002
17
       THE DEFENDANT, appearing pro se
18

19


20     Also Present:

21     Adam Smith, Office of Pretrial Services

22


23


24
             ***Proceedings recorded by FTR GOLD***
25     Transcript produced by computer-aided transcription
```

**P R O C E E D I N G S**

(2:39 p.m.)

            **THE COURT:**  Good afternoon, everybody.  Have a seat.  Government, call the case, please.

            **MR. KIBBE:**  Calling the case of United States v. Thomas C. Goldstein; Criminal Action Number LKG-25-6.  We're here for the purpose of a hearing on the Government's motion for revocation of the release order.  Good afternoon, Your Honor.  Assistant United States Attorney Patrick Kibbe, along with senior litigation counsel Stanley Okula from the Department of Justice Tax Division on behalf of the Government.

            **THE COURT:**  All right, thank you.  Good morning -- good afternoon.

      Mr. Goldstein, good afternoon.

            **THE DEFENDANT:**  Good afternoon.

            **THE COURT:**  With us is Officer Smith from Pretrial.

            **PRETRIAL OFFICER SMITH:**  Good afternoon.

            **THE COURT:**  So what brings us together today is the following: So the Government presented a ex parte motion for an arrest warrant and to revoke Mr. Goldstein's conditions of release.  I granted that motion this morning and apparently, Mr. Goldstein was taken into custody.

      We're here for basically two reasons today.  One is to explain to Mr. Goldstein what is happening in that I revoked

his conditions of release; and two is we have an Attorney
Inquiry Hearing Wednesday about the unsettled status of
counsel for Mr. Goldstein whether he's retaining, whether he's
representing himself, whether he wants to apply for
court-appointed counsel if he's financially unable to afford
counsel.

Mr. Reed, who I see here entered an appearance today;
however, it's again, a special appearance limited, just like
Mr. Berman, just like Mr. Lauro.  There is nothing in the
local rules or the federal rules that I'm aware of that allow
lawyers to jump into federal criminal cases on a piecemeal
fashion.  So I recognize that Mr. Reed has filed what he's
filed, but I'm happy that he's not sitting at counsel table
because I was going to tell him that he had to step back, in
any event.

So I've revoked your conditions of release.  You have --
I don't think we have to have a hearing on it.  If you want to
have a hearing, you can -- I'm sure you don't have the ability
now to present whatever it is you want to present, maybe you
do.

But let me hear from the Government about what it thinks
is going on today because I really -- one of the things I plan
on resolving is Mr. Goldstein's counsel status and if we have
to have a Faretta hearing, we'll have a Faretta hearing.

Mr. Kibbe?

1          **MR. KIBBE:**  Thank you, Your Honor.  That was the

2     first point that I was going to bring up is if Mr. Goldstein

3     wants to represent himself today, then perhaps a Faretta

4     hearing would be appropriate to make sure Mr. Goldstein

5     understands, and I'm sure he does, but everything that goes

6     along with that to protect his Sixth Amendment and Fifth

7     Amendment rights.

8        And then I'm happy at any point if Your Honor would like

9     to go through the Government's motion, the facts of the

10    motion, the exhibits of the motion.  I'll leave that to the

11    Court's discretion.

12         **THE COURT:**  So Mr. Goldstein, let me ask you this:

13    Have you had an opportunity to review the Government's motion?

14         **THE DEFENDANT:**  Yes.

15         **THE COURT:**  Okay.  And I'm sure you disagree with

16    it?

17         **THE DEFENDANT:**  Yes.

18         **THE COURT:**  What are you doing about an attorney?

19         **THE DEFENDANT:**  I'm representing myself pro se.  I'm

20    happy to have a Faretta hearing.  It's not required.  Faretta

21    applies at critical stages of the proceeding.

22         **THE COURT:**  Right.

23         **THE DEFENDANT:** Hearing on bail conditions isn't a

24    critical stage of the proceedings, but I don't mind.  If you

25    want to do it for avoidance of doubt and also I do -- I

1  actually do believe that there is -- the Government having put

2  on evidence, and submitted a brief, that there is a right to

3  be able to put on evidence and present argument and I want to

4  do that.

5          **THE COURT:**  Right.  And I'm cognizant of the fact

6  that you are kind of at a disadvantage because the Government

7  made a proffer, I granted the motion, granted the arrest

8  warrant and you really haven't had a fulsome or any

9  opportunity to say the Government is wrong, that these aren't

10  your cryptocurrency wallets, they belong to somebody else,

11  there's whatever, whatever, and I recognize that.

12      And again, the posture that we're in is I put you out on

13  conditions of release.  And pretrial filed a notice of

14  apparent violation.  Have you seen that?

15          **THE DEFENDANT:**  No.

16          **THE COURT:**  All right.  So Mr. Smith, give Mr.

17  Goldstein --

18          **THE DEFENDANT:**  Is it based on the same thing, Your

19  Honor?

20          **THE COURT:**  Yeah.  But you should really look at it

21  and have a copy of it.

22          **THE DEFENDANT:** Okay, I understand it.

23          **THE COURT:**  All right.  So look, I do appreciate the

24  irony of going through what -- and I do believe at least a

25  culture in this court is we feel strongly about people being

1    represented by counsel.  The Sixth Amendment means something.

2    And I'm also cognizant of the Supreme Court's strong

3    admonitions that individuals have the right to represent

4    themselves.  And they also have the right to counsel of

5    choice.  And I do appreciate the fact that you are an attorney

6    and that every one of your questions to my standard Faretta

7    inquiry is going to be yes.  But I do think that the record

8    needs to reflect that.

9        And, you know, Judge Griggsby may want to do this herself

10   at another time if you maintain your position to

11   self-represent yourself.  So I think it's probably prudent

12   just to do that colloquy now and then we can figure out where

13   we go from there.

14           THE DEFENDANT: Sure.  And Your Honor, my point isn't

15   that it's my desire to represent myself pro se, it's that the

16   conditions of release have made it impossible for me to retain

17   counsel.

18           THE COURT:  Sure.

19           THE DEFENDANT: And so I'm perfectly -- but it is my

20   desire to do so for purposes of this hearing and the Faretta

21   hearing and everything.

22           THE COURT:  But you understand my cynicism of your

23   observation that given the Government's proffer that there are

24   millions of dollars floating through cryptocurrency wallets

25   that belong to you.

1          **THE DEFENDANT:**  Right.  And Your Honor, what I will

2     tell you now is that within a week, the Government will file

3     something acknowledging that that's not mine and that they are

4     wrong.

5          **THE COURT:**  Understood, okay.

6          All right, so Mr. Goldstein, under *Faretta v. California*

7     I'm going to ask you a series of questions.  I'm going to

8     shorthand them because I know you're an attorney with a

9     tremendous amount of experience.  So you can just answer yes

10    to every one of these questions.

11         **THE DEFENDANT:**  Yes, Your Honor.

12         **THE COURT:**  All right.  I assume that you're

13    familiar with the United States Sentencing Guidelines and how

14    it works?

15         **THE DEFENDANT:**  Yes.

16         **THE COURT:**  And that you're familiar with the

17    Federal Rules of Evidence?

18         **THE DEFENDANT:**  Yes.

19         **THE COURT:**  And you're familiar with the Federal

20    Rules of Criminal Procedure?

21         **THE DEFENDANT:**  Yes.

22         **THE COURT:**  Are you familiar with the Court's local

23    rules?

24         **THE DEFENDANT:**  Sufficiently, yes.

25         **THE COURT:**  And enough that you know how to access

1   them and find them off the website and to adhere to the

2   conduct expected in the local rules and the policies and

3   procedures?

4           **THE DEFENDANT:**  Yes.

5           **THE COURT:**  That you understand the governing

6   Supreme Court and Fourth Circuit law about criminal procedure

7   and the substantive issues in this case?

8           **THE DEFENDANT:**  Yes.

9           **THE COURT:**  That you understand the serious nature

10  of the charges against you as contained in the Indictment that

11  was returned on January 16, 2025 which charges you with a

12  total of 22 counts.  And you understand both the nature of all

13  of those substantive counts, the maximum possible penalties;

14  is that correct?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  You understand that there is no parole

17  in the federal system?

18          **THE DEFENDANT:**  Yes.

19          **THE COURT:**  Do you understand that obviously the

20  complexity of the federal criminal litigation generally and in

21  cases like this that are hypertechnical, paper dependent,

22  record dependent, and complicated?

23          **THE DEFENDANT:**  Yes.

24          **THE COURT:**  Do you understand that there is a

25  serious disadvantage for somebody to represent themselves,

1    especially if they're in custody, to do all the things that is

2    necessary to prepare a case?  File and investigate pretrial

3    motions, do an investigation, interview witnesses, do all the

4    things that one -- contact experts, retain experts, work with

5    experts?  All those things are very difficult for a person to

6    do on his or her own whether they're a lawyer or not.

7         Do you understand that?

8              **THE DEFENDANT:**  Yes.

9         **THE COURT:**  And do you also understand that it is

10   tremendously even more difficult if you remain in a custodial

11   status with a marshal service pending the case?

12        Do you understand that?

13             **THE DEFENDANT:**  Yes.

14        **THE COURT:**  Just how many cases -- I know you have a

15   background, but have you actually -- I know you do appellate

16   work, but have you actually represented someone in a criminal

17   trial in a federal court anywhere?

18             **THE DEFENDANT:**  I have done all of the pretrial

19   proceedings.  The case was dismissed and we prevailed.  So

20   there wasn't a trial, but all of the pretrial work.  And I'm

21   certainly familiar with -- I have taught evidence in law

22   school.  I'm very familiar with criminal procedure and the

23   practice.

24             **THE COURT:**  So you understand that you and you alone

25   will be responsible for reviewing all the discovery that the

Government provides, providing the Government reciprocal discovery under the rules requesting if you believe the Government hasn't filed -- I mean, hasn't provided you with the necessary discovery you're going to have to interact with them on that. You understand that you have an obligation to produce such discovery to the Government? You have to conduct your own factual investigation? You have to develop your own legal theories? You have to research and draft your own motions and file them? You have to prepare your own jury instructions? You have to do your own opening and closings? You have to interview people, figure out who to serve subpoenas, use the process of the court to subpoena those individuals, if appropriate? That you have to examine witnesses on your own, cross-examine Government witnesses during the trial, present evidence, object to questions during the trial if you feel they are inappropriate, preserve any evidentiary objections during the trial for any appeal? And in the event that you're not acquitted you have to engage in a presentence process as ordered by Judge Griggsby, including the preparation of any mitigation and/or presentence report and the process of a federal criminal sentencing?

Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** And if convicted, you will be responsible for litigating on your own any sentencing

```
1    guidelines, any adjustments under the guidelines.  Even though
2    they're advisory, they still have to be calculated and done by
3    the district judge.
4         Do you understand that?
5              THE DEFENDANT:  Yes.
6              THE COURT:  And in the event that you're convicted,
7    you have to also note your own timely appeal to the United
8    States Court of Appeals for the Fourth Circuit.
9         Do you understand that?
10             THE DEFENDANT:  I do.
11             THE COURT:  And have you given this considerable
12   thought about your decision to represent yourself?
13             THE DEFENDANT:  I have.
14             THE COURT:  And do you understand that if I accept
15   your decision and/or Judge Griggsby does this inquiry under
16   Faretta, you may not be able to change your mind?
17             THE DEFENDANT:  Yes.
18             THE COURT:  Okay.  And again --
19             THE DEFENDANT:  Pardon me, Your Honor, and just to
20   reiterate what I said before regarding the Faretta inquiry and
21   I am answering the question yes, it is my view that the Court
22   will conclude that the conditions of release should be
23   modified in a way that will allow me to retain counsel.  But
24   if that doesn't occur, then absolutely yes.
25             THE COURT:  Sure.  And again, I'm purposely not
```

 1     talking about that because you've appealed that to Judge

 2     Griggsby in a pro se capacity and that's pending with Judge

 3     Griggsby.  And it's for Judge Griggsby to either affirm or

 4     reverse.  I've had both over 13 years, so it is what it is.

 5          THE DEFENDANT:  Yes, sir.

 6          THE COURT:  But I'm aware of that.  And I read your

 7     motion so I understand that we're not -- I don't feel that's

 8     necessarily appropriate for me to talk about it.

 9          THE DEFENDANT:  I'm just saying it for the record,

10     Your Honor.

11          THE COURT:  So do you believe that you can tell me

12     that you've made a notion and intelligent decision to forgo or

13     forfeit your right to counsel and represent yourself at this

14     time?

15          THE DEFENDANT:  I do and I can.

16          THE COURT:  Okay.  And do you have any hesitation,

17     concerns?  I understand about what's pending in front of Judge

18     Griggsby, but do you have any concerns about representing

19     yourself that you want to articulate or put on the record?

20          THE DEFENDANT:  No.  I think you've been very

21     thorough, Your Honor.

22          THE COURT:  And that you feel that not only based on

23     your past experience as a lawyer, but your knowledge of this

24     case and your ability to battle with the Government in a court

25     of law that you are well-equipped to do so?

             **THE DEFENDANT:**  Yes, Your Honor.

             **THE COURT:**  All right.  And just before -- just for
completeness purposes, where did you go to law school?

             **THE DEFENDANT:**  I went to American University.

             **THE COURT:**  And how long have you been a practicing
attorney?

             **THE DEFENDANT:**  About a quarter century.

             **THE COURT:**  And if you had to tell us in one or two
sentences what the nature of your practice has been for a
quarter of a century, what would it be?

             **THE DEFENDANT:**  I litigated a variety of the cases
that you referenced so far.  I have been deeply involved in
all matter of federal questions including with respect to
criminal procedure.  In particular, the sentencing guidelines,
*Booker, Fanfan* I litigated.  I would say that on questions of
law, my practice has been pretty comprehensive, but I have the
good fortune through other work that I've done to become
familiar with criminal procedure.  I view the work that's done
in trial courts as essential and very detail oriented and its
own special set of concerns and need and I am very attentive
to those.

             **THE COURT:**  Now you know I can't help myself, but
like you're too young to have anything to do with *Gideon*,
right?  You weren't representing him -- you weren't involved
in that case, were you?

1    **THE DEFENDANT:** No, but I have done other right to

2 counsel work.

3    **THE COURT:** I'm kidding. I understand.

4  All right, Government, any additional questions or areas

5 of inquiry you want the Court to ask Mr. Goldstein?

6    **MR. KIBBE:** No, Your Honor.

7    **THE COURT:** All right. The Court makes the

8 following findings of fact: I find that Mr. Goldstein is, in

9 fact, a lawyer; he has tremendously -- tremendous experience

10 representing others in federal court in complex criminal cases

11 and he definitely is not like most Faretta inquiry hearings

12 where a layperson has the gigantic uphill battle of even

13 understanding the basics.

14  Mr. Goldstein answered every question in the affirmative

15 and he totally understands -- the Court finds that he totally

16 understands without hesitation the complexity and challenges

17 that he faces representing himself in this capacity at this

18 time, that he understands the charges in the Indictment. He

19 understands the maximum possible penalties. He understands

20 the guidelines. He also understands, given his experience,

21 that during a trial the trial judge can't help him. Judge

22 Griggsby can't treat him any different than any other advocate

23 in her courtroom. That he'll be held to the same standards as

24 an attorney concerning the rules of evidence and criminal

25 procedure. And the Court finds by clear and convincing

evidence that there's ample grounds to find that Mr. Goldstein has waived his right to counsel at this time and that he can proceed in his pro se self-represented capacity.  Okay?

So having said that, the limited appearances of Mr. Berman, Mr. Lauro -- was that his name?  Lauro, and Mr. Reed will obviously remain on the docket, but they will not be representing you anymore.  And it would be inappropriate for Mr. Berman or Mr. Read or -- because they're members of our bar, to file things for you on CM/ECF.  You're going to have to work with whoever else in the clerk's office to make sure that whatever you want to get filed gets filed pursuant to our local rules, but you can't use their resources to electronically file things.  You might have your own electronic filing thing, I don't even know.

**THE DEFENDANT:**  Your Honor, I'll just say that the United States' position is that I cannot file pro se.  They moved to strike my pro se filing which is to say their position is that nobody can file anything on my behalf.

**THE COURT:**  Right.  Well, you can't have hybrid representation, though.

**THE DEFENDANT:**  It's not hybrid, Your Honor.  They moved to strike a pro se filing.

**THE COURT:**  What the Government did, yeah.  Well, again, look, the beauty, Mr. Goldstein, of being a magistrate judge is that when people appeal me it's not my problem

1  anymore.  So it's Judge Griggsby I would assume will handle

2  that in the normal course.  But I understand your position.

3  But the Court's concern and the long precedent of -- I don't

4  pretend to be the legal scholar that you are, but that we

5  guard zealously against this hybrid representation and that

6  you can either represent yourself, you can have a lawyer

7  represent you, but never the two shall meet.  And there's

8  possibilities in some cases where standby counsel is appointed

9  and there's a lot of different variations, but it becomes very

10  confusing for a lot of people if lawyers are filing things for

11  you.

12       But that's a legal issue that can be raised and

13  adjudicated with Judge Griggsby.  Because, again, I'm just a

14  magistrate judge.  I just want to get you out of my life, all

15  right?  No disrespect.  I want to get Mr. Kibbe out of my

16  life, because the merits of all of this are going to occur in

17  front of Judge Griggsby, right?

18       So having said that, I do find that Mr. Goldstein is

19  proceeding pro se, effectively immediately.

20       All right.  Mr. Kibbe, anything else that we need to do?

21       **MR. KIBBE:**  Not on that part, Your Honor.  Would you

22  like me to present argument on the Government's motion?

23       **THE COURT:**  Well, I guess the issue on that is the

24  way I read the order, I've already revoked Mr. Goldstein's

25  conditions of release based on the proffer that was in the

1  motion.  Understanding that Mr. Goldstein has not seen this

2  before today, I assume you have a copy now; is that correct?

3          **THE DEFENDANT:**  I did get one eventually, Your

4  Honor.

5          **THE COURT:**  Okay, yeah.  And that I'm sure that Mr.

6  Goldstein takes -- well, he's already said it, that he

7  believes that the Government's motion is without merit and

8  that you're going to be filing something say in like mea

9  culpa, I'm sorry, and I understand that.  But the way I view

10 this right now is that the proffer that was contained in the

11 motion was sufficient enough for me to revoke his conditions

12 of release under 3148 and I can take us through that inquiry,

13 but to me it's -- at this point it's not really about wallets

14 with gigantic long numbers or anything like that.  To me it's

15 about my conditions of release and the conditions of release

16 that I imposed.  And Pretrial's belief that you weren't

17 forthright in disclosing these cyber currency accounts, these

18 wallets.  And also the representations in the motion, again,

19 could be wrong, but that you have been engaging in

20 transferring funds in both of the wallets of significant

21 amounts of money.  And if that's the case, then you have

22 violated my condition of release that you may not.

23          **MR. KIBBE:**  It would violate no transfers.

24          **THE COURT:**  Right, that you may not transfer any

25 funds without prior pretrial approval.  And again, I totally

expect you're going to file a motion for a reconsideration.
And if and when you do, I will get you in for a very, very
timely hearing as fast as I possibly can. And you can put the
Government to the test.

Now understand too that, you know, at this stage the
practice in this court is mostly proceeding by proffer, right?
We don't end up having large evidentiary hearings where you'll
be able to call case agents and start -- not that you would,
but engage in fishing expeditions for things downstream that
may benefit you at a trial or at some other point. So, you
know, that's how I'm viewing where we are.

So to answer your question, Mr. Kibbe, I don't think it's
necessary now. If the Government wants to put something on
the record, free to do so and then I'll let Mr. Goldstein put
something on the record. He's free to do so preliminarily
about the status of where we find ourselves, but I'm not going
to engage in -- I think it's a disadvantage to Mr. Goldstein
to expect him to marshal what he needs today in order to
defend against the Government's motion which I granted, but
Courts always reconsider things based on the evidence.
Sometimes the evidence changes.

So Mr. Kibbe, if you want to put something on the record
you're totally free to do so. And Mr. Goldstein, you're
totally free to do so.

    **MR. KIBBE:** Thank you, Your Honor. Then the

1    Government would submit on its motion that Your Honor has said

2    it has already granted.

3            THE COURT:  Mr. Goldstein, anything you want to put

4    on the record other than what you've already put on the

5    record?

6            THE DEFENDANT:  Yes, Your Honor.  I'm going to ask

7    -- the Court, of course, has a motion from the Government and

8    has an evidentiary submission from the Government.  As you

9    said, I'm at a disadvantage in that respect.  I just in

10   building a little bit of a record here, I'd ask the Court's

11   indulgence.  One thing I would like to do is be sworn.

12           THE COURT:  Be sworn?

13           THE DEFENDANT:  Sworn, yes. Sworn in that what I'm

14   going to say is the truth.

15           THE COURT:  Okay, sure.

16       Any objection to that?

17           MR. KIBBE:  No, Your Honor.

18           THE COURT:  All right.  Mr. Goldstein, could you

19   raise your right hand?

20           (Defendant, sworn.)

21           THE COURT:  Go ahead.

22           THE DEFENDANT:  Thank you, Your Honor.  The reason I

23   wanted to be sworn is I want it to be clear is if I told you

24   -- and I expect to be taken in custody, but I'm going to be in

25   front of you on various things probably for a while.  I wanted

 1    it to be very clear that if what I tell you isn't true, that
 2    I'll have committed perjury.  That this is part of the ongoing
 3    investigation.  The Government has made clear I've engaged in
 4    obstruction of justice, that that will result in a sentencing
 5    enhancement, in addition to the additional offense.  So I just
 6    want you to understand the unbelievable seriousness and that I
 7    affirmatively asked to be sworn in for these purposes.

 8        These are not my accounts.  I didn't engage in these
 9    transfers.  That will be pretty easily provable.  I get that
10    the Government was suspicious because it looked strange and I
11    get that when they made the proffer to you your intuition is
12    this really looks like it's true.  The Government could have
13    investigated, but knowing that I was -- knowing prudently that
14    I was working on the motion with respect to the conditions,
15    instead it decided to have me arrested.

16        What happened in this situation is that there are other
17    people.  And this is commonplace with respect to currency and
18    with respect to gambling.  What happened and what I will be
19    able to prove is that third parties, I sent money to third
20    parties.  And, in fact, there's text messages here describing
21    what it is that I was doing.  And this money went straight
22    into their wallets and I will prove to you that it's in their
23    wallets.

24        I'll give you just a couple of facts on the face of the
25    motion that will make you wonder.  And I understand that

you've concluded that there's reason to believe that it should
be revoked, but I'll give you the facts that will make you
wonder.

The premise of the motion is that I'm an idiot.  Knowing
that I was under investigation, I had invoices created and
created a record of these transactions, including where these
cryptocurrency -- this cryptocurrency was going.  And knowing
that these people had been subpoenaed and that all that
information was in the hands of the Government, the
Government's theory in the motion is that rather than taking
two seconds and creating a new cryptocurrency account, I like
an idiot decided to send tens of millions of dollars through
the cryptocurrency account that they inevitably and no doubt
were watching.  That is not -- that would take an idiot.

The other reason I would have to be an idiot is that I
would have been an idiot for the past several years.  Having
access to tens of millions of dollars, what I did is not pay
my taxes and took out a mortgage on my house that was utterly
unnecessary because I had millions and millions of dollars.
And that will give you, I think, an intuition that maybe
something is up here.

The other thing up here is that the Government maybe
thinking that this was a wallet of mine with $200,000, this is
the second wallet that's referenced, never told the Court
that, never told Pretrial Services that, never objected to the

other motion on the ground that I had hundreds of thousands of dollars that I was hiding from the Government, but they actually knew that I had.

What's going to happen, Your Honor, is that I was arrested, they made me surrender my phone and I would have been able hopefully -- I switched phones just in the new iPhone coming out, but hopefully the messages identifying these cryptocurrency accounts and who the ultimate recipients were. One of them I know for sure because he's identified in the text messages will be able to get the other side of the transaction, the other set of messages saying it went to theirs and they are the source of the information.

When I confirm -- you're very thorough, Your Honor. You'll see that there are a set of messages which I confirm the receipt. And there will be messages. Either I'll have them or that person will have them saying -- me checking with them, "Did you receive it?" "Yes, I received it." My passing on word that it had been received.

Now when all that happens in a few days and when the Government having gotten me put in jail on this basis, notwithstanding the fact that I am swearing, my family should never trust anything I should say, nothing in the trial I say should be trusted, nothing I ever say to you again should be trusted or to Judge Griggsby. Notwithstanding all of that, they're going to have me put in jail.

 1          When they come soon and withdraw this because they could

 2     have through just any more investigation found out that it

 3     wasn't true, I'd like you to realize something about the

 4     Government.  The Government in this case has gone wild.  I

 5     have been deeply respected by federal courts for my entire

 6     career.  The lead prosecutor in this case has been found to

 7     have lied to a federal district judge, a judge in England, a

 8     judge in Canada.  He lied to the grand jury here and to

 9     witnesses.  And I will prove that.

10          And what I am asking Your Honor is that the Court take

11     this test, take this measure of what's going on in this case.

12     Rather than doing something sensible like investigating this

13     question while I'm working on the conditions of release, doing

14     senseless things like moving to strike a pro se filing when

15     the entire point is that I am filing pro se so that I can get

16     counsel.  The Government has a ready, shoot, aim perspective

17     on me.  I will prove this is not true.  They will come and

18     tell you it's not true in a few days after I have been in

19     jail.

20          I spent the last several hours in shackles.  I haven't

21     had a pen to write anything down or submit anything to you.

22     And you will see that this is part of a broader pattern.  I

23     just want to build a record now for you and for Judge Griggsby

24     that this is what's been going on for years.

25          The charges with respect to the case are based on just

exactly this pattern and that is they take something that

looks -- concede there's something that should be investigated

here, but you can take a much, much more measured approach and

say, you know, is this really true?  And instead, the

prosecution here has with respect to the Indictment, with

respect to this, with respect to the other motions it filed

just gone wild.  And I want the Court to know it.  I want

their supervisors and the new administration and the new

leadership of the Department of Justice to know it.  And I

will just continue -- I know I'm going to be in front of you

for a while.  I promise you, we are going to be back here in a

few days.  I'm going to reference this conversation.  They're

going to reference the fact that they stuck to it and I'm

going to just continue to demonstrate this to you and to Judge

Griggsby over the course of the next several months.

**THE COURT:**  Okay.  All right.

Officer Smith, I neglected to ask you, any position or

comments by Pretrial about any of this?

**PRETRIAL OFFICER SMITH:**  Your Honor, the only

recommendation at this point is that we would recommend

detention based on the fact that we were fully unaware of

these crypto accounts that he never reported to Pretrial.

When the Court releases somebody on Pretrial supervision,

they place a level of trust with that individual being

forthright with us. Mr. Goldstein, to his credit, has

25

communicated with me very regularly, but he never disclosed
the crypto accounts that the Government is alleging are his.
So that is concerning for Pretrial.  We have no way of
necessarily monitoring accounts of that nature, but for the
defendant being forthright with us and telling us about it.
So it wasn't until we were notified by the Government about
these accounts that we actually were informed of the accounts.
So at this point at this juncture we would recommend detention
based on that.

        **THE DEFENDANT:**  Your Honor, if I could just add
one --

        **THE COURT:**  Sure.

        **THE DEFENDANT:**  Just to -- Pretrial has been so great
at communicating with me in this.  What he's talking about is
that every conceivable thing that might implicate the
conditions of release, anything that might look like a
transfer, anything at all, anything that just involved the
possibility of -- so for example, there's my do not contact
list, no communication.  Any time anyone tried to contact me I
reported it to Pretrial and I had my lawyers tell that person
that I'm not allowed to contact you.

    And Your Honor, this is just going to be part of a
pattern here and that is -- when we come back here in a few
days because I hope you won't let them just withdraw on paper,
I hope you will make them show up and talk to you -- what

Nadine M. Bachmann, RMR, CRR - Federal Official Court Reporter - 101 W. Lombard Street, Baltimore, Maryland 21201 - nadine_bachmann@mdd.uscourts.gov

```
 1    you're going to see is that there was this pattern of my doing

 2    everything beyond the pale to make sure there was no problem

 3    with any condition of release.  And now I'm going to go to

 4    jail because this prosecution has just lost its mind.  And

 5    this is another example of what they could have done, so many

 6    simple things to recognize that this wasn't true.

 7         And Your Honor, I think even you are now having doubts

 8    because the idea I would put my entire life on the line over

 9    the truth of this, I think you realize that we are going to be

10    back here.  I hope you do.  And that I'm actually telling the

11    truth.  And you are nonetheless because of the submissions of

12    these people like the Indictment, like other filings of them,

13    you trust the Government.  And I get that.  What you are going

14    to see in a few days is that trust is misplaced.

15              THE COURT:  Well, I understand your point.  I think

16    you probably forget that I was a criminal defense attorney for

17    24 years.

18              THE DEFENDANT:  I do not.

19              THE COURT:  And my level of, like, blind trust to

20    the Government is probably not very deep.  I'm trying to be

21    fair here and the Government -- if the Government told me

22    things on Super Bowl Sunday night that turned out to be

23    untrue, or half-truths, or lies, then there are consequences

24    for that conduct.  Just like if you were moving funds and not

25    telling Pretrial that you had these wallets and you were
```

1    moving funds, then under 3148 I'm going to find by clear and

2    convincing -- I found already basically that under 3148 by

3    clear and convincing evidence you violated my conditions of

4    release and that I think you're unlikely to abide by them at

5    this time and you're going to be detained. But these issues

6    can always be revisited and I totally expect that we will be

7    revisiting them at some point.

8              **THE DEFENDANT:** Can I? I apologize.

9              **THE COURT:** Go ahead.

10             **THE DEFENDANT:** I do want to make the point that the

11   Government could have structured it this way or allowed the

12   Court to structure it this way that made this utterly

13   unnecessary. The Government could have easily, it was within

14   its power, said okay, we have this serious concern. You're

15   detained, okay? What I want you to do is if you can find the

16   messages with respect to this on your phone or, you know, let

17   us communicate with these people to demonstrate that it's not

18   yours, we get it. But instead, they have made it as

19   functionally impossible as possible. They took my phone away

20   so that I didn't have access. They refused to tell me

21   initially what the detention was about.

22        This is -- to say that there is a clear and convincing

23   evidence standard and the structure of the proceeding will be

24   one that makes it as difficult as possible to demonstrate this

25   is just obviously wrong, these are not my accounts, I think is

just another indication that this is going to have been

pointless, and unnecessarily so and it's going to end up

having been a waste of the Court's time because they could

have managed this in a way easily that made it possible for

them -- I understand they have a concern. Fine, you have a

concern. But to take someone, keep them in shackles for

hours, put them in jail over it when they are definitely wrong

and they don't have a message saying, you know, anything that

I would have done in the past few days, no explanation for why

I would have done it. Why I would have $1,000 deposited in

the cryptocurrency account, that they, Your Honor, I think

should have structured this in a way that it made it possible

for the Court not to have to do this to me.

        **THE COURT:** Right. Yeah, look, I'm not happy to

deal with any of this stuff, right? But look, the Government

has the ability to proceed however they see fit. And they --

if you file a motion to say hey, I want to review my detention

order that I'm going to issue that's already issued, then we

will have a prompt hearing on that and you will be able to do

whatever it is that you want to do to challenge the Government

and maybe things change, maybe they don't. I don't know.

    But I do recognize that you are operating at a

disadvantage now and that is not fair. And that is not how we

want to proceed here in this court. And you will have, if you

want, you will have your opportunity to tell me in a robust,

factual fashion why the Government has lost their mind and we
will deal with that.

        **THE DEFENDANT:** So Your Honor, can I just ask --

        **THE COURT:** Sure.

        **THE DEFENDANT:** --a question? The way I will do
that is by looking in my phone for the messages that I'm
talking about. So what will have happened -- and again, I did
get a new iPhone so I might have to -- someone may have to
reach out to the other people. These people are on my do not
contact list. So it will have to be handled counsel to
counsel. But what I'm wondering, Your Honor, is the simplest
way to do this is just for us to check on my phone whether or
not these messages are there.

    If I'm going to be detained, how is it that we can do
this?

        **THE COURT:** Right. And oh, the conundrum of wanting
to represent yourself, right? I mean, because you could
always hire an investigator. You can hire people to do the
actions for you, right? Because you are at a disadvantage. I
mean, you are representing yourself and you're detained.
That's two very bad things. But I'm certainly not in -- and I
don't know whether the Government got a warrant -- I have no
idea what -- anything about your phone. But, you know, I'm
certainly not going to start looking through people's phones.

        **THE DEFENDANT:** But I do represent myself and so I

do have the right to represent myself.  And so there is
inevitably this conundrum.  I disagree with Your Honor, but it
is a conundrum that has to be resolved.  And the question is
then how is it that we can resolve it?

          **THE COURT:**  So let me ask Government, what is up
with the phone that you took today?

          **THE DEFENDANT:**  No, I just gave it to my wife, Your
Honor.

          **THE COURT:**  All right, so the Government didn't
seize the phone, you gave it to your wife?

          **THE DEFENDANT:**  I didn't say they seized it, Your
Honor.  They made me give it up and then they took it to my
wife because she dropped me off here.  There was a pretext
arrest which I understand through pretrial.

          **THE COURT:**  So I guess I assumed that when you said
"the Government took my phone" that they have it in -- they
have it.

          **THE DEFENDANT:**  I don't think I used that word.  If
I did, I apologize.  Exactly what happened is that I was
arrested.  I was required to surrender my phone and they gave
it to my wife.

          **THE COURT:**  Right.

          **THE DEFENDANT:** The question is how it is that we can
resolve this conundrum of me being able to -- in a way that
doesn't concern the Government with my sending messages to

1  anybody or creating some sort of record, be able to just look

2  for these messages.  And if the Government has a suggestion

3  about some practical way of doing that.

4      Your Honor, I am risking my entire reputation with you,

5  the Court, the world, that this is what's going to happen and

6  I think it would be -- everybody would be well advised if it's

7  possible for us to have a pragmatic solution to this for us to

8  take it.

9      **THE COURT:**  Mr. Kibbe, any thoughts on that?

10     **MR. KIBBE:**  Your Honor, if Ms. Howe has the phone,

11  then perhaps that's one way that Mr. Goldstein can get to the

12  messages that he's referring to.  If there's specific people

13  that he needs to contact for this purpose, the Government

14  doesn't object to that and would be happy to receive those

15  facts.

16     And we'd say at this point, Your Honor, the facts that

17  the Government presented are in the motion.  We're not playing

18  games here.  We're not trying to disadvantage Mr. Goldstein.

19  The Government has a serious concern about these transfers and

20  evidence that Mr. Goldstein controlled or owned these accounts

21  and that's what we're presenting to the Court.

22     **THE COURT:**  I'm not getting into this and I

23  appreciate the tuna net that Mr. Goldstein is trying to lay in

24  front of me, but the one thing that is questioned for the

25  Court is you don't show in any of those exhibits where it

```
 1     went.  So, you know, you show one-sided transfers, but there's
 2     no -- I don't know where -- nothing you gave me shows me where
 3     they went.  Now maybe you don't know where they went, maybe
 4     that's the nature of this kind of currency, I don't know.  But
 5     I'm sure you'll file something and we'll have a very robust
 6     hearing about all of this.
 7          But I also, before I end, I just want people to
 8     understand what is not going to happen here.  We are not going
 9     to have a seminar on cryptocurrency, and wallets, and the Wild
10     West world of all these different tethered dollar, Bitcoin,
11     whatever.  To me it's very simple: Whether -- and I already
12     found it because I already entered the order -- whether Mr.
13     Goldstein has violated my conditions of release which is
14     whether he transferred money or funds without talking to
15     Pretrial in advance.  That is -- if we ever have a hearing on
16     this gentlemen, ladies, that's the hearing.  It's did he
17     violate my conditions of release, that particular section.
18     Was he dishonest to Officer Smith in not revealing that he was
19     the owner of these two wallets.  That is where we will go.  We
20     will not -- I just don't have the bandwidth.  I'm too old.  I
21     don't understand.  I don't even know what LinkedIn is.  I'm
22     not doing cryptocurrency stuff.  We're not doing it.  It's not
23     for me.  So I don't want to go too far astray here.  It's a
24     very narrow issue and that's where we are.
25          All right.  Last word, Mr. Goldstein.  Go ahead.
```

1           **THE DEFENDANT:**  I'm sorry.  I meant to say first

2    Your Honor, that's exactly right.  The messages that I'm

3    talking about are just going to be about ownership.  It's

4    nothing to do with high-tech details of cryptocurrency.

5           The other thing I meant to say is this motion is going to

6    disprove itself. Here is what's going to happen:  They're

7    saying these accounts are in use.  You're about to put me in

8    jail.  I think since they're in use they're going to keep

9    getting used.  And I want to know how long it takes the

10   Government to come back to you and say we were watching

11   this -- nobody could know.  This is, right, not at my behest.

12   I was just arrested without any warning.  How long is it going

13   to take the Government to say you know what, Your Honor, we

14   noticed that Mr. Goldstein can't be doing this, he's in jail.

15          **THE COURT:**  Right, because it's a shared wallet or

16   something else.  I understand that.  And that's -- the

17   Government is going to have to answer that and, you know, it's

18   a big step to tell a federal judicial officer that you want to

19   revoked someone's conditions of release based on certain

20   conduct.  And if that conduct turns out to be untrue then

21   they're -- can't say what I want to say -- there are

22   consequences to that.  But we're not there yet, okay.

23          **THE DEFENDANT:**  As long as there will be

24   consequences, I'm good, Your Honor.

25          **THE COURT:**  Anything else?  Anything else?

1        **MR. KIBBE:**  No, Your Honor.

2        **THE COURT:**  All right, thank you all very much.

3        **(Whereupon the proceeding was concluded at 3:23**

4  **p.m.)**

5                    **CERTIFICATE OF OFFICIAL REPORTER**

6

7

8

9        **I, Nadine M. Bachmann, Registered Merit Reporter and**

10  **Certified Realtime Reporter, do hereby certify that the**

11  **foregoing is a correct transcript of the audio-recorded**

12  **proceedings in the above-entitled matter, audio recorded via**

13  **FTR Gold on February 10, 2025, and transcribed from the audio**

14  **recording to the best of my ability and that said transcript**

15  **has been compared with the audio recording.**

16

17                        **Dated this 12th day of February, 2025**

18

19                        *-S-*

20                        **NADINE M. BACHMANN  RMR, CRR**
                         **FEDERAL OFFICIAL COURT**

21

22

23

24

25

# $

**$1,000** [1] - 28:10
**$200,000** [1] - 21:23

# 1

**10** [2] - 1:9, 34:13
**12th** [1] - 34:17
**13** [1] - 12:4
**150** [1] - 1:16
**16** [1] - 8:11

# 2

**2.142** [1] - 1:16
**20002** [1] - 1:16
**2025** [4] - 1:9, 8:11, 34:13, 34:17
**20770** [1] - 1:14
**22** [1] - 8:12
**24** [1] - 26:17
**2:39** [1] - 2:2

# 3

**3148** [3] - 17:12, 27:1, 27:2
**3:23** [1] - 34:3

# 6

**6406** [1] - 1:13

# 8

**800** [1] - 1:13
**8:25-cr-00006-LKG** [1] - 1:4

# A

**abide** [1] - 27:4
**ability** [4] - 3:18, 12:24, 28:16, 34:14
**able** [9] - 5:3, 11:16, 18:8, 20:19, 22:6, 22:10, 28:19, 30:24, 31:1
**above-entitled** [1] - 34:12
**absolutely** [1] - 11:24
**accept** [1] - 11:14
**access** [3] - 7:25, 21:17, 27:20
**account** [3] - 21:11, 21:13, 28:11
**accounts** [11] - 17:17, 20:8, 22:8, 24:22, 25:2, 25:4, 25:7,

27:25, 31:20, 33:7
**acknowledging** [1] - 7:3
**acquitted** [1] - 10:18
**Action** [1] - 2:6
**actions** [1] - 29:19
**Adam** [1] - 1:21
**add** [1] - 25:10
**addition** [1] - 20:5
**additional** [2] - 14:4, 20:5
**adhere** [1] - 8:1
**adjudicated** [1] - 16:13
**adjustments** [1] - 11:1
**administration** [1] - 24:8
**admonitions** [1] - 6:3
**advance** [1] - 32:15
**advised** [1] - 31:6
**advisory** [1] - 11:2
**advocate** [1] - 14:22
**affirm** [1] - 12:3
**affirmatively** [1] - 20:7
**afford** [1] - 3:5
**afternoon** [6] - 2:3, 2:8, 2:14, 2:15, 2:16, 2:18
**agents** [1] - 18:8
**ahead** [3] - 19:21, 27:9, 32:25
**aided** [1] - 1:25
**aim** [1] - 23:16
**alleging** [1] - 25:2
**allow** [2] - 3:10, 11:23
**allowed** [2] - 25:21, 27:11
**alone** [1] - 9:24
**Amendment** [3] - 4:6, 4:7, 6:1
**AMERICA** [1] - 1:3
**American** [1] - 13:4
**amount** [1] - 7:9
**amounts** [1] - 17:21
**ample** [1] - 15:1
**answer** [3] - 7:9, 18:12, 33:17
**answered** [1] - 14:14
**answering** [1] - 11:21
**apologize** [2] - 27:8, 30:19
**apparent** [1] - 5:14
**appeal** [3] - 10:17, 11:7, 15:25
**appealed** [1] - 12:1
**Appeals** [1] - 11:8
**appearance** [2] - 3:7, 3:8
**appearances** [1] -

15:4
**appearing** [1] - 1:17
**appellate** [1] - 9:15
**applies** [1] - 4:21
**apply** [1] - 3:4
**appointed** [2] - 3:5, 16:8
**appreciate** [3] - 5:23, 6:5, 31:23
**approach** [1] - 24:3
**appropriate** [4] - 4:4, 10:13, 12:8
**approval** [1] - 17:25
**areas** [1] - 14:4
**argument** [2] - 5:3, 16:22
**arrest** [3] - 2:21, 5:7, 30:14
**arrested** [4] - 20:15, 22:5, 30:20, 33:12
**articulate** [1] - 12:19
**assistant** [1] - 2:9
**assume** [3] - 7:12, 16:1, 17:2
**assumed** [1] - 30:15
**astray** [1] - 32:23
**attentive** [1] - 13:20
**attorney** [6] - 4:18, 6:5, 7:8, 13:6, 14:24, 26:16
**Attorney** [2] - 2:9, 3:1
**ATTORNEY** [1] - 1:13
**audio** [4] - 34:11, 34:12, 34:13, 34:15
**audio-recorded** [1] - 34:11
**avoidance** [1] - 4:25
**aware** [2] - 3:10, 12:6

# B

**BACHMANN** [1] - 34:20
**Bachmann** [1] - 34:9
**background** [1] - 9:15
**bad** [1] - 29:21
**bail** [1] - 4:23
**bandwidth** [1] - 32:20
**bar** [1] - 15:9
**based** [8] - 5:18, 12:22, 16:25, 18:20, 23:25, 24:21, 25:9, 33:19
**basics** [1] - 14:13
**basis** [1] - 22:20
**battle** [2] - 12:24, 14:12
**beauty** [1] - 15:24
**become** [1] - 13:17
**becomes** [1] - 16:9

**BEFORE** [1] - 1:8
**behalf** [2] - 2:11, 15:18
**behest** [1] - 33:11
**belief** [1] - 17:16
**believes** [1] - 17:7
**belong** [2] - 5:10, 6:25
**benefit** [1] - 18:10
**Berman** [3] - 3:9, 15:5, 15:8
**best** [1] - 34:14
**beyond** [1] - 26:2
**big** [1] - 33:18
**bit** [1] - 19:10
**Bitcoin** [1] - 32:10
**blind** [1] - 26:19
**Booker** [1] - 13:15
**Bowl** [1] - 26:22
**brief** [1] - 5:2
**bring** [1] - 4:2
**brings** [1] - 2:19
**broader** [1] - 23:22
**build** [1] - 23:23
**building** [1] - 19:10
**BY** [2] - 1:12, 1:15

# C

**calculated** [1] - 11:2
**California** [1] - 7:6
**Canada** [1] - 23:8
**cannot** [1] - 15:16
**capacity** [3] - 12:2, 14:17, 15:3
**career** [1] - 23:6
**case** [14] - 2:4, 2:5, 8:7, 9:2, 9:11, 9:19, 12:24, 13:25, 17:21, 18:8, 23:4, 23:6, 23:11, 23:25
**CASE** [1] - 1:4
**cases** [6] - 3:11, 8:21, 9:14, 13:11, 14:10, 16:8
**century** [2] - 13:7, 13:10
**certain** [1] - 33:19
**certainly** [3] - 9:21, 29:21, 29:24
**CERTIFICATE** [1] - 34:5
**Certified** [1] - 34:10
**certify** [1] - 34:10
**challenge** [1] - 28:20
**challenges** [1] - 14:16
**change** [2] - 11:16, 28:21
**changes** [1] - 18:21
**charges** [4] - 8:10, 8:11, 14:18, 23:25

**check** [1] - 29:12
**checking** [1] - 22:16
**choice** [1] - 6:5
**Circuit** [2] - 8:6, 11:8
**clear** [7] - 14:25, 19:23, 20:1, 20:3, 27:1, 27:3, 27:22
**clerk's** [1] - 15:10
**closings** [1] - 10:10
**CM/ECF** [1] - 15:9
**cognizant** [2] - 5:5, 6:2
**colloquy** [1] - 6:12
**coming** [1] - 22:7
**comments** [1] - 24:18
**committed** [1] - 20:2
**commonplace** [1] - 20:17
**communicate** [1] - 27:17
**communicated** [1] - 25:1
**communicating** [1] - 25:14
**communication** [1] - 25:19
**compared** [1] - 34:15
**completeness** [1] - 13:3
**complex** [1] - 14:10
**complexity** [2] - 8:20, 14:16
**complicated** [1] - 8:22
**comprehensive** [1] - 13:16
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concede** [1] - 24:2
**conceivable** [1] - 25:15
**concern** [6] - 16:3, 27:14, 28:5, 28:6, 30:25, 31:19
**concerning** [2] - 14:24, 25:3
**concerns** [2] - 12:17, 12:18, 13:20
**conclude** [1] - 11:22
**concluded** [2] - 21:1, 34:3
**condition** [2] - 17:22, 26:3
**conditions** [18] - 2:21, 3:1, 3:16, 4:23, 5:13, 6:16, 11:22, 16:25, 17:11, 17:15, 20:14, 23:13, 25:16, 27:3, 32:13, 32:17, 33:19
**conduct** [5] - 8:2,

10:6, 26:24, 33:20
**confirm** [2] - 22:13, 22:14
**confusing** [1] - 16:10
**consequences** [3] - 26:23, 33:22, 33:24
**considerable** [1] - 11:11
**contact** [6] - 9:4, 25:18, 25:19, 25:21, 29:10, 31:13
**contained** [2] - 8:10, 17:10
**continue** [2] - 24:10, 24:14
**controlled** [1] - 31:20
**conundrum** [4] - 29:16, 30:2, 30:3, 30:24
**conversation** [1] - 24:12
**convicted** [2] - 10:24, 11:6
**convincing** [4] - 14:25, 27:2, 27:3, 27:22
**copy** [2] - 5:21, 17:2
**correct** [3] - 8:14, 17:2, 34:11
**counsel** [17] - 2:10, 3:3, 3:5, 3:6, 3:13, 3:23, 6:1, 6:4, 6:17, 11:23, 12:13, 14:2, 15:2, 16:8, 23:16, 29:10, 29:11
**counts** [2] - 8:12, 8:13
**couple** [1] - 20:24
**course** [3] - 16:2, 19:7, 24:15
**Court** [17] - 8:6, 11:8, 11:21, 14:5, 14:7, 14:15, 14:25, 19:7, 21:24, 23:10, 24:7, 24:23, 27:12, 28:13, 31:5, 31:21, 31:25
**COURT** [73] - 1:1, 2:3, 2:13, 2:17, 2:19, 4:12, 4:15, 4:18, 4:22, 5:5, 5:16, 5:20, 5:23, 6:18, 6:22, 7:5, 7:12, 7:16, 7:19, 7:22, 7:25, 8:5, 8:9, 8:16, 8:19, 8:24, 9:9, 9:14, 9:24, 10:24, 11:6, 11:11, 11:14, 11:18, 11:25, 12:6, 12:11, 12:16, 12:22, 13:2, 13:5, 13:8, 13:22, 14:3, 14:7, 15:19, 15:23, 16:23,

17:5, 17:24, 19:3, 19:12, 19:15, 19:18, 19:21, 24:16, 25:12, 26:15, 26:19, 27:9, 28:14, 29:4, 29:16, 30:5, 30:9, 30:15, 30:22, 31:9, 31:22, 33:15, 33:25, 34:2, 34:20
**court** [8] - 3:5, 5:25, 9:17, 10:12, 12:24, 14:10, 18:6, 28:24
**Court's** [6] - 4:11, 6:2, 7:22, 16:3, 19:10, 28:3
**court-appointed** [1] - 3:5
**courtroom** [1] - 14:23
**courts** [2] - 13:19, 23:5
**Courts** [1] - 18:20
**created** [2] - 21:5, 21:6
**creating** [2] - 21:11, 31:1
**credit** [1] - 24:25
**criminal** [11] - 3:11, 8:6, 8:20, 9:16, 9:22, 10:21, 13:14, 13:18, 14:10, 14:24, 26:16
**Criminal** [2] - 2:6, 7:20
**critical** [2] - 4:21, 4:24
**cross** [1] - 10:14
**cross-examine** [1] - 10:14
**CRR** [1] - 34:20
**crypto** [2] - 24:22, 25:2
**cryptocurrency** [11] - 5:10, 6:24, 21:7, 21:11, 21:13, 22:8, 28:11, 32:9, 32:22, 33:4
**culpa** [1] - 17:9
**culture** [1] - 5:25
**currency** [3] - 17:17, 20:17, 32:4
**custodial** [1] - 9:10
**custody** [3] - 2:23, 9:1, 19:24
**cyber** [1] - 17:17
**cynicism** [1] - 6:22

## D

**Dated** [1] - 34:17
**days** [6] - 22:19, 23:18, 24:12, 25:24, 26:14, 28:9
**DC** [1] - 1:16

**deal** [2] - 28:15, 29:2
**decided** [2] - 20:15, 21:12
**decision** [3] - 11:12, 11:15, 12:12
**deep** [1] - 26:20
**deeply** [2] - 13:12, 23:5
**defend** [1] - 18:19
**Defendant** [2] - 1:6, 19:20
**defendant** [1] - 25:5
**DEFENDANT** [60] - 1:17, 2:16, 4:14, 4:17, 4:19, 4:23, 5:15, 5:18, 5:22, 6:14, 6:19, 7:1, 7:11, 7:15, 7:18, 7:21, 7:24, 8:4, 8:8, 8:15, 8:18, 8:23, 9:8, 9:13, 9:18, 10:23, 11:5, 11:10, 11:13, 11:17, 11:19, 12:5, 12:9, 12:15, 12:20, 13:1, 13:4, 13:7, 13:11, 14:1, 15:15, 15:21, 17:3, 19:6, 19:13, 19:22, 25:10, 25:13, 26:18, 27:8, 27:10, 29:3, 29:5, 29:25, 30:7, 30:11, 30:18, 30:23, 33:1, 33:23
**defense** [1] - 26:16
**definitely** [2] - 14:11, 28:7
**demonstrate** [3] - 24:14, 27:17, 27:24
**Department** [2] - 2:11, 24:9
**DEPARTMENT** [1] - 1:15
**dependent** [2] - 8:21, 8:22
**deposited** [1] - 28:10
**describing** [1] - 20:20
**desire** [2] - 6:15, 6:20
**detail** [1] - 13:19
**details** [1] - 33:4
**detained** [4] - 27:5, 27:15, 29:14, 29:20
**detention** [4] - 24:21, 25:8, 27:21, 28:17
**develop** [1] - 10:7
**different** [3] - 14:22, 16:9, 32:10
**difficult** [3] - 9:5, 9:10, 27:24
**disadvantage** [7] - 5:6, 8:25, 18:17, 19:9, 28:23, 29:19,

31:18
**disagree** [2] - 4:15, 30:2
**disclosed** [1] - 25:1
**disclosing** [1] - 17:17
**discovery** [4] - 9:25, 10:2, 10:4, 10:6
**discretion** [1] - 4:11
**dishonest** [1] - 32:18
**dismissed** [1] - 9:19
**disprove** [1] - 33:6
**disrespect** [1] - 16:15
**district** [2] - 11:3, 23:7
**DISTRICT** [2] - 1:1, 1:1
**Division** [1] - 2:11
**DIVISION** [2] - 1:2, 1:15
**docket** [1] - 15:6
**dollar** [1] - 32:10
**dollars** [5] - 6:24, 21:12, 21:17, 21:19, 22:2
**done** [8] - 9:18, 11:2, 13:17, 13:18, 14:1, 26:5, 28:9, 28:10
**doubt** [2] - 4:25, 21:13
**doubts** [1] - 26:7
**down** [1] - 23:21
**downstream** [1] - 18:9
**draft** [1] - 10:8
**dropped** [1] - 30:13
**during** [4] - 10:15, 10:17, 14:21

## E

**easily** [3] - 20:9, 27:13, 28:4
**effectively** [1] - 16:19
**either** [3] - 12:3, 16:6, 22:15
**electronic** [1] - 15:14
**electronically** [1] - 15:13
**end** [3] - 18:7, 28:2, 32:7
**engage** [4] - 10:18, 18:9, 18:17, 20:8
**engaged** [1] - 20:3
**engaging** [1] - 17:19
**England** [1] - 23:7
**enhancement** [1] - 20:5
**entered** [2] - 3:7, 32:12
**entire** [4] - 23:5, 23:15, 26:8, 31:4
**entitled** [1] - 34:12
**equipped** [1] - 12:25
**especially** [1] - 9:1

**ESQUIRE** [2] - 1:12, 1:15
**essential** [1] - 13:19
**event** [3] - 3:15, 10:18, 11:6
**eventually** [1] - 17:3
**evidence** [11] - 5:2, 5:3, 9:21, 10:15, 14:24, 15:1, 18:20, 18:21, 27:3, 27:23, 31:20
**Evidence** [1] - 7:17
**evidentiary** [3] - 10:17, 18:7, 19:8
**ex** [1] - 2:20
**exactly** [3] - 24:1, 30:19, 33:2
**examine** [2] - 10:13, 10:14
**example** [2] - 25:18, 26:5
**exhibits** [2] - 4:10, 31:25
**expect** [4] - 18:1, 18:18, 19:24, 27:6
**expected** [1] - 8:2
**expeditions** [1] - 18:9
**experience** [4] - 7:9, 12:23, 14:9, 14:20
**experts** [3] - 9:4, 9:5
**explain** [1] - 2:25
**explanation** [1] - 28:9

## F

**face** [1] - 20:24
**faces** [1] - 14:17
**fact** [8] - 5:5, 6:5, 14:8, 14:9, 20:20, 22:21, 24:13, 24:21
**facts** [5] - 4:9, 20:24, 21:2, 31:15, 31:16
**factual** [2] - 10:7, 29:1
**fair** [2] - 26:21, 28:23
**familiar** [7] - 7:13, 7:16, 7:19, 7:22, 9:21, 9:22, 13:18
**family** [1] - 22:21
**Fanfan** [1] - 13:15
**far** [2] - 13:12, 32:23
**Faretta** [11] - 3:24, 4:3, 4:20, 6:6, 6:20, 7:6, 11:16, 11:20, 14:11
**fashion** [2] - 3:12, 29:1
**fast** [1] - 18:3
**February** [3] - 1:9, 34:13, 34:17
**FEDERAL** [1] - 34:20
**Federal** [2] - 7:17,

7:19
**federal** [11] - 3:10, 3:11, 8:17, 8:20, 9:17, 10:21, 13:13, 14:10, 23:5, 23:7, 33:18
**few** [6] - 22:19, 23:18, 24:12, 25:23, 26:14, 28:9
**Fifth** [1] - 4:6
**figure** [2] - 6:12, 10:11
**file** [10] - 7:2, 9:2, 10:9, 15:9, 15:13, 15:16, 15:18, 18:1, 28:17, 32:5
**filed** [7] - 3:12, 3:13, 5:13, 10:3, 15:11, 24:6
**filing** [7] - 15:14, 15:17, 15:22, 16:10, 17:8, 23:14, 23:15
**filings** [1] - 26:12
**financially** [1] - 3:5
**findings** [1] - 14:8
**fine** [1] - 28:5
**first** [2] - 4:2, 33:1
**fishing** [1] - 18:9
**fit** [1] - 28:16
**floating** [1] - 6:24
**following** [2] - 2:20, 14:8
**FOR** [2] - 1:1, 1:12
**foregoing** [1] - 34:11
**forfeit** [1] - 12:13
**forget** [1] - 26:16
**forgo** [1] - 12:12
**forthright** [3] - 17:17, 24:25, 25:5
**fortune** [1] - 13:17
**Fourth** [2] - 8:6, 11:8
**free** [4] - 18:14, 18:15, 18:23, 18:24
**front** [5] - 12:17, 16:17, 19:25, 24:10, 31:24
**FTR** [2] - 1:24, 34:13
**fully** [1] - 24:21
**fulsome** [1] - 5:8
**functionally** [1] - 27:19
**funds** [5] - 17:20, 17:25, 26:24, 27:1, 32:14

## G

**gambling** [1] - 20:18
**games** [1] - 31:18
**generally** [1] - 8:20
**gentlemen** [1] - 32:16
**Gideon** [1] - 13:23
**gigantic** [2] - 14:12, 17:14
**given** [3] - 6:23, 11:11, 14:20
**GOLD** [1] - 1:24
**Gold** [1] - 34:13
**GOLDSTEIN** [1] - 1:5
**goldstein** [1] - 2:6
**Goldstein** [30] - 2:15, 2:23, 2:25, 3:3, 4:2, 4:4, 4:12, 5:17, 7:6, 14:5, 14:8, 14:14, 15:1, 15:24, 16:18, 17:1, 17:6, 18:14, 18:17, 18:23, 19:3, 19:18, 24:25, 31:11, 31:18, 31:20, 31:23, 32:13, 32:25, 33:14
**Goldstein's** [3] - 2:21, 3:23, 16:24
**governing** [1] - 8:5
**Government** [54] - 2:4, 2:12, 2:20, 3:21, 5:1, 5:6, 5:9, 7:2, 10:1, 10:3, 10:6, 10:14, 12:24, 14:4, 15:23, 18:4, 18:13, 19:1, 19:7, 19:8, 20:3, 20:10, 20:12, 21:9, 21:22, 22:2, 22:20, 23:4, 23:16, 25:2, 25:6, 26:13, 26:20, 26:21, 27:11, 27:13, 28:15, 28:20, 29:1, 29:22, 30:5, 30:9, 30:16, 30:25, 31:2, 31:13, 31:17, 31:19, 33:10, 33:13, 33:17
**Government's** [8] - 2:7, 4:9, 4:13, 6:23, 16:22, 17:7, 18:19, 21:10
**grand** [1] - 23:8
**granted** [5] - 2:22, 5:7, 18:19, 19:2
**great** [1] - 25:13
**Greenbelt** [2] - 1:10, 1:14
**Griggsby** [14] - 6:9, 10:19, 11:15, 12:2, 12:3, 12:18, 14:22, 16:1, 16:13, 16:17, 22:24, 23:23, 24:15
**ground** [1] - 22:1
**grounds** [1] - 15:1
**guard** [1] - 16:5
**guess** [2] - 16:23, 30:15

**Guidelines** [1] - 7:13
**guidelines** [4] - 11:1, 13:14, 14:20

## H

**half** [1] - 26:23
**half-truths** [1] - 26:23
**hand** [1] - 19:19
**handle** [1] - 16:1
**handled** [1] - 29:10
**hands** [1] - 21:9
**happy** [5] - 3:13, 4:8, 4:20, 28:14, 31:14
**hear** [1] - 3:21
**HEARING** [1] - 1:8
**Hearing** [1] - 3:2
**hearing** [15] - 2:7, 3:17, 3:18, 3:24, 4:4, 4:20, 4:23, 6:20, 6:21, 18:3, 28:19, 32:6, 32:15, 32:16
**HEARING/FARETTA** [1] - 1:8
**hearings** [2] - 14:11, 18:7
**held** [1] - 14:23
**help** [2] - 13:22, 14:21
**hereby** [1] - 34:10
**herself** [1] - 6:9
**hesitation** [2] - 12:16, 14:16
**hiding** [1] - 22:2
**high** [1] - 33:4
**high-tech** [1] - 33:4
**himself** [3] - 3:4, 4:3, 14:17
**hire** [2] - 29:18
**Honor** [41] - 2:9, 4:1, 4:8, 5:19, 6:14, 7:1, 7:11, 11:19, 12:10, 12:21, 13:1, 14:6, 15:15, 15:21, 16:21, 17:4, 18:25, 19:1, 19:6, 19:17, 19:22, 22:4, 22:13, 23:10, 24:19, 25:10, 25:22, 26:7, 28:11, 29:3, 29:11, 30:2, 30:8, 30:12, 31:4, 31:10, 31:16, 33:2, 33:13, 33:24, 34:1
**HONORABLE** [1] - 1:8
**hope** [3] - 25:24, 25:25, 26:10
**hopefully** [2] - 22:6, 22:7
**hours** [2] - 23:20, 28:7
**house** [1] - 21:18
**Howe** [1] - 31:10

**hundreds** [1] - 22:1
**hybrid** [3] - 15:19, 15:21, 16:5
**hypertechnical** [1] - 8:21

## I

**idea** [2] - 26:8, 29:23
**identified** [1] - 22:9
**identifying** [1] - 22:7
**idiot** [5] - 21:4, 21:12, 21:14, 21:15, 21:16
**immediately** [1] - 16:19
**implicate** [1] - 25:15
**imposed** [1] - 17:16
**impossible** [2] - 6:16, 27:19
**IN** [1] - 1:1
**inappropriate** [2] - 10:16, 15:7
**including** [3] - 10:19, 13:13, 21:6
**indication** [1] - 28:1
**Indictment** [4] - 8:10, 14:18, 24:5, 26:12
**individual** [1] - 24:24
**individuals** [2] - 6:3, 10:13
**indulgence** [1] - 19:11
**inevitably** [2] - 21:13, 30:2
**information** [2] - 21:9, 22:12
**informed** [1] - 25:7
**Inquiry** [1] - 3:2
**inquiry** [6] - 6:7, 11:15, 11:20, 14:5, 14:11, 17:12
**instead** [3] - 20:15, 24:4, 27:18
**instructions** [1] - 10:10
**intelligent** [1] - 12:12
**interact** [1] - 10:4
**interview** [2] - 9:3, 10:11
**intuition** [2] - 20:11, 21:20
**investigate** [1] - 9:2
**investigated** [2] - 20:13, 24:2
**investigating** [1] - 23:12
**investigation** [5] - 9:3, 10:7, 20:3, 21:5, 23:2
**investigator** [1] - 29:18

**invoices** [1] - 21:5
**involved** [3] - 13:12, 13:24, 25:17
**iPhone** [2] - 22:7, 29:8
**irony** [1] - 5:24
**issue** [4] - 16:12, 16:23, 28:18, 32:24
**issued** [1] - 28:18
**issues** [2] - 8:7, 27:5
**itself** [1] - 33:6
**Ivy** [1] - 1:13

## J

**jail** [7] - 22:20, 22:25, 23:19, 26:4, 28:7, 33:8, 33:14
**January** [1] - 8:11
**judge** [7] - 11:3, 14:21, 15:25, 16:14, 23:7, 23:8
**JUDGE** [1] - 1:9
**Judge** [14] - 6:9, 10:19, 11:15, 12:1, 12:2, 12:3, 12:17, 14:21, 16:1, 16:13, 16:17, 22:24, 23:23, 24:14
**judicial** [1] - 33:18
**jump** [1] - 3:11
**juncture** [1] - 25:8
**jury** [2] - 10:9, 23:8
**justice** [1] - 20:4
**JUSTICE** [1] - 1:15
**Justice** [2] - 2:11, 24:9

## K

**keep** [2] - 28:6, 33:8
**Kibbe** [7] - 2:9, 3:25, 16:15, 16:20, 18:12, 18:22, 31:9
**KIBBE** [10] - 1:12, 2:5, 4:1, 14:6, 16:21, 17:23, 18:25, 19:17, 31:10, 34:1
**kidding** [1] - 14:3
**kind** [2] - 5:6, 32:4
**knowing** [4] - 20:13, 21:4, 21:7
**knowledge** [1] - 12:23

## L

**ladies** [1] - 32:16
**Lane** [1] - 1:13
**large** [1] - 18:7
**last** [2] - 23:20, 32:25
**Lauro** [3] - 3:9, 15:5
**law** [5] - 8:6, 9:21,

12:25, 13:3, 13:16
**lawyer** [4] - 9:6, 12:23, 14:9, 16:6
**lawyers** [3] - 3:11, 16:10, 25:20
**lay** [1] - 31:23
**layperson** [1] - 14:12
**lead** [1] - 23:6
**leadership** [1] - 24:9
**least** [1] - 5:24
**leave** [1] - 4:10
**legal** [3] - 10:8, 16:4, 16:12
**level** [2] - 24:24, 26:19
**lied** [2] - 23:7, 23:8
**lies** [1] - 26:23
**life** [3] - 16:14, 16:16, 26:8
**limited** [2] - 3:8, 15:4
**line** [1] - 26:8
**LinkedIn** [1] - 32:21
**list** [2] - 25:19, 29:10
**litigated** [2] - 13:11, 13:15
**litigating** [1] - 10:25
**litigation** [2] - 2:10, 8:20
**LKG-25-6** [1] - 2:6
**local** [4] - 3:10, 7:22, 8:2, 15:12
**look** [7] - 5:20, 5:23, 15:24, 25:16, 28:14, 28:15, 31:1
**looked** [1] - 20:10
**looking** [2] - 29:6, 29:24
**looks** [2] - 20:12, 24:2
**lost** [2] - 26:4, 29:1

## M

**magistrate** [2] - 15:24, 16:14
**MAGISTRATE** [1] - 1:9
**maintain** [1] - 6:10
**managed** [1] - 28:4
**marshal** [2] - 9:11, 18:18
**MARYLAND** [1] - 1:1
**Maryland** [2] - 1:10, 1:14
**matter** [2] - 13:13, 34:12
**maximum** [2] - 8:13, 14:19
**mea** [1] - 17:8
**mean** [3] - 10:3, 29:17, 29:20
**means** [1] - 6:1
**meant** [2] - 33:1, 33:5

**measure** [1] - 23:11
**measured** [1] - 24:3
**meet** [1] - 16:7
**members** [1] - 15:8
**Merit** [1] - 34:9
**merit** [1] - 17:7
**merits** [1] - 16:16
**message** [1] - 28:8
**messages** [13] - 20:20, 22:7, 22:10, 22:11, 22:14, 22:15, 27:16, 29:6, 29:13, 30:25, 31:2, 31:12, 33:2
**might** [4] - 15:13, 25:15, 25:16, 29:8
**millions** [5] - 6:24, 21:12, 21:17, 21:19
**mind** [4] - 4:24, 11:16, 26:4, 29:1
**mine** [2] - 7:3, 21:23
**misplaced** [1] - 26:14
**mitigation** [1] - 10:20
**modified** [1] - 11:23
**Monday** [1] - 1:9
**money** [4] - 17:21, 20:19, 20:21, 32:14
**monitoring** [1] - 25:4
**months** [1] - 24:15
**morning** [2] - 2:13, 2:22
**mortgage** [1] - 21:18
**most** [1] - 14:11
**mostly** [1] - 18:6
**motion** [26] - 2:7, 2:20, 2:22, 4:9, 4:10, 4:13, 5:7, 12:7, 16:22, 17:1, 17:7, 17:11, 17:18, 18:1, 18:19, 19:1, 19:7, 20:14, 20:25, 21:4, 21:10, 22:1, 28:17, 31:17, 33:5
**MOTIONS** [1] - 1:8
**motions** [3] - 9:3, 10:9, 24:6
**moved** [2] - 15:17, 15:22
**moving** [3] - 23:14, 26:24, 27:1
**MR** [9] - 2:5, 4:1, 14:6, 16:21, 17:23, 18:25, 19:17, 31:10, 34:1

## N

**N.E** [1] - 1:16
**Nadine** [1] - 34:9
**NADINE** [1] - 34:20
**name** [1] - 15:5

**narrow** [1] - 32:24
**nature** [5] - 8:9, 8:12, 13:9, 25:4, 32:4
**necessarily** [2] - 12:8, 25:4
**necessary** [3] - 9:2, 10:4, 18:13
**need** [2] - 13:20, 16:20
**needs** [3] - 6:8, 18:18, 31:13
**neglected** [1] - 24:17
**net** [1] - 31:23
**never** [7] - 16:7, 21:24, 21:25, 22:22, 24:22, 25:1
**new** [5] - 21:11, 22:6, 24:8, 29:8
**next** [1] - 24:15
**night** [1] - 26:22
**nobody** [2] - 15:18, 33:11
**nonetheless** [1] - 26:11
**normal** [1] - 16:2
**note** [1] - 11:7
**nothing** [5] - 3:9, 22:22, 22:23, 32:2, 33:4
**notice** [1] - 5:13
**noticed** [1] - 33:14
**notified** [1] - 25:6
**notion** [1] - 12:12
**notwithstanding** [2] - 22:21, 22:24
**Number** [1] - 2:6
**NUMBER** [1] - 1:4
**numbers** [1] - 17:14

## O

**object** [2] - 10:15, 31:14
**objected** [1] - 21:25
**objection** [1] - 19:16
**objections** [1] - 10:17
**obligation** [1] - 10:5
**observation** [1] - 6:23
**obstruction** [1] - 20:4
**obviously** [3] - 8:19, 15:6, 27:25
**occur** [2] - 11:24, 16:16
**OF** [6] - 1:1, 1:3, 1:8, 1:13, 1:15, 34:5
**offense** [1] - 20:5
**OFFICE** [1] - 1:13
**office** [1] - 15:10
**Office** [1] - 1:21
**officer** [2] - 24:17, 33:18

**Officer** [2] - 2:17, 32:18
**OFFICER** [2] - 2:18, 24:19
**OFFICIAL** [2] - 34:5, 34:20
**Okula** [1] - 2:10
**OKULA** [1] - 1:15
**old** [1] - 32:20
**one** [14] - 2:24, 3:22, 6:6, 7:10, 9:4, 13:8, 17:3, 19:11, 22:9, 25:11, 27:24, 31:11, 31:24, 32:1
**one-sided** [1] - 32:1
**ongoing** [1] - 20:2
**opening** [1] - 10:10
**operating** [1] - 28:22
**opportunity** [3] - 4:13, 5:9, 28:25
**order** [5] - 2:8, 16:24, 18:18, 28:18, 32:12
**ordered** [1] - 10:19
**oriented** [1] - 13:19
**ourselves** [1] - 18:16
**own** [11] - 9:6, 10:7, 10:8, 10:9, 10:10, 10:14, 10:25, 11:7, 13:20, 15:13
**owned** [1] - 31:20
**owner** [2] - 32:19
**ownership** [1] - 33:3

## P

**p.m** [2] - 2:2, 34:4
**pale** [1] - 26:2
**paper** [2] - 8:21, 25:24
**pardon** [1] - 11:19
**parole** [1] - 8:16
**part** [4] - 16:21, 20:2, 23:22, 25:22
**parte** [1] - 2:20
**particular** [2] - 13:14, 32:17
**parties** [2] - 20:19, 20:20
**passing** [1] - 22:17
**past** [3] - 12:23, 21:16, 28:9
**PATRICK** [1] - 1:12
**Patrick** [1] - 2:9
**pattern** [4] - 23:22, 24:1, 25:23, 26:1
**pay** [1] - 21:17
**pen** [1] - 23:21
**penalties** [2] - 8:13, 14:19
**pending** [3] - 9:11, 12:2, 12:17

**people** [13] - 5:25, 10:11, 15:25, 16:10, 20:17, 21:8, 26:12, 27:17, 29:9, 29:18, 31:12, 32:7
**people's** [1] - 29:24
**perfectly** [1] - 6:19
**perhaps** [2] - 4:3, 31:11
**perjury** [1] - 20:2
**person** [3] - 9:5, 22:16, 25:20
**perspective** [1] - 23:16
**phone** [11] - 22:5, 27:16, 27:19, 29:6, 29:12, 29:23, 30:6, 30:10, 30:16, 30:20, 31:10
**phones** [2] - 22:6, 29:24
**piecemeal** [1] - 3:11
**place** [1] - 24:24
**Plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:12
**plan** [1] - 3:22
**playing** [1] - 31:17
**point** [12] - 4:2, 4:8, 6:14, 17:13, 18:10, 23:15, 24:20, 25:8, 26:15, 27:7, 27:10, 31:16
**pointless** [1] - 28:2
**policies** [1] - 8:2
**position** [5] - 6:10, 15:16, 15:18, 16:2, 24:17
**possibilities** [1] - 16:8
**possibility** [1] - 25:18
**possible** [7] - 8:13, 14:19, 27:19, 27:24, 28:4, 28:12, 31:7
**possibly** [1] - 18:3
**posture** [1] - 5:12
**power** [1] - 27:14
**practical** [1] - 31:3
**practice** [4] - 9:23, 13:9, 13:16, 18:6
**practicing** [1] - 13:5
**pragmatic** [1] - 31:7
**precedent** [1] - 16:3
**preliminarily** [1] - 18:15
**premise** [1] - 21:4
**preparation** [1] - 10:20
**prepare** [2] - 9:2, 10:9
**present** [5] - 3:19, 5:3, 10:15, 16:22
**Present** [1] - 1:20

**presented** [2] - 2:20, 31:17
**presentence** [2] - 10:19, 10:20
**presenting** [1] - 31:21
**preserve** [1] - 10:16
**pretend** [1] - 16:4
**pretext** [1] - 30:13
**Pretrial** [11] - 1:21, 2:17, 21:25, 24:18, 24:22, 24:23, 25:3, 25:13, 25:20, 26:25, 32:15
**pretrial** [6] - 5:13, 9:2, 9:18, 9:20, 17:25, 30:14
**PRETRIAL** [2] - 2:18, 24:19
**Pretrial's** [1] - 17:16
**pretty** [2] - 13:16, 20:9
**prevailed** [1] - 9:19
**pro** [11] - 1:17, 4:19, 6:15, 12:2, 15:3, 15:16, 15:17, 15:22, 16:19, 23:14, 23:15
**problem** [2] - 15:25, 26:2
**procedure** [5] - 8:6, 9:22, 13:14, 13:18, 14:25
**Procedure** [1] - 7:20
**procedures** [1] - 8:3
**proceed** [3] - 15:3, 28:16, 28:24
**proceeding** [5] - 4:21, 16:19, 18:6, 27:23, 34:3
**PROCEEDINGS** [1] - 1:8
**proceedings** [3] - 4:24, 9:19, 34:12
**Proceedings** [1] - 1:24
**process** [3] - 10:12, 10:19, 10:21
**produce** [1] - 10:6
**produced** [1] - 1:25
**proffer** [6] - 5:7, 6:23, 16:25, 17:10, 18:6, 20:11
**promise** [1] - 24:11
**prompt** [1] - 28:19
**prosecution** [2] - 24:5, 26:4
**prosecutor** [1] - 23:6
**protect** [1] - 4:6
**provable** [1] - 20:9
**prove** [4] - 20:19, 20:22, 23:9, 23:17
**provided** [1] - 10:3

**provides** [1] - 10:1
**providing** [1] - 10:1
**prudent** [1] - 6:11
**prudently** [2] - 20:13
**purpose** [2] - 2:7, 31:13
**purposely** [1] - 11:25
**purposes** [3] - 6:20, 13:3, 20:7
**pursuant** [1] - 15:11
**put** [15] - 5:1, 5:3, 5:12, 12:19, 18:3, 18:13, 18:14, 18:22, 19:3, 19:4, 22:20, 22:25, 26:8, 28:7, 33:7

## Q

**quarter** [2] - 13:7, 13:10
**questioned** [1] - 31:24
**questions** [7] - 6:6, 7:7, 7:10, 10:15, 13:13, 13:15, 14:4

## R

**raise** [1] - 19:19
**raised** [1] - 16:12
**rather** [2] - 21:10, 23:12
**reach** [1] - 29:9
**read** [3] - 12:6, 15:8, 16:24
**ready** [1] - 23:16
**realize** [2] - 23:3, 26:9
**really** [6] - 3:22, 5:8, 5:20, 17:13, 20:12, 24:4
**Realtime** [1] - 34:10
**reason** [3] - 19:22, 21:1, 21:15
**reasons** [1] - 2:24
**receipt** [1] - 22:15
**receive** [2] - 22:17, 31:14
**received** [2] - 22:17, 22:18
**recipients** [1] - 22:8
**reciprocal** [1] - 10:1
**recognize** [4] - 3:12, 5:11, 26:6, 28:22
**recommend** [2] - 24:20, 25:8
**recommendation** [1] - 24:20
**reconsider** [1] - 18:20
**reconsideration** [1] - 18:1

**record** [13] - 6:7, 8:22, 12:9, 12:19, 18:14, 18:15, 18:22, 19:4, 19:5, 19:10, 21:6, 23:23, 31:1
**recorded** [3] - 1:24, 34:11, 34:12
**recording** [2] - 34:14, 34:15
**Reed** [2] - 3:7, 15:5
**reed** [1] - 3:12
**reference** [2] - 24:12, 24:13
**referenced** [2] - 13:12, 21:24
**referring** [1] - 31:12
**reflect** [1] - 6:8
**refused** [1] - 27:20
**regarding** [1] - 11:20
**Registered** [1] - 34:9
**regularly** [1] - 25:1
**reiterate** [1] - 11:20
**release** [19] - 2:8, 2:22, 3:1, 3:16, 5:13, 6:16, 11:22, 16:25, 17:12, 17:15, 17:22, 23:13, 25:16, 26:3, 27:4, 32:13, 32:17, 33:19
**releases** [1] - 24:23
**remain** [2] - 9:10, 15:6
**report** [1] - 10:20
**reported** [2] - 24:22, 25:20
**REPORTER** [1] - 34:5
**Reporter** [2] - 34:9, 34:10
**represent** [12] - 4:3, 6:3, 6:11, 6:15, 8:25, 11:12, 12:13, 16:6, 16:7, 29:17, 29:25, 30:1
**representation** [2] - 15:20, 16:5
**representations** [1] - 17:18
**represented** [3] - 6:1, 9:16, 15:3
**representing** [8] - 3:4, 4:19, 12:18, 13:24, 14:10, 14:17, 15:7, 29:20
**reputation** [1] - 31:4
**requesting** [1] - 10:2
**required** [2] - 4:20, 30:20
**research** [1] - 10:8
**resolve** [2] - 30:4, 30:24
**resolved** [1] - 30:3

**resolving** [1] - 3:23
**resources** [1] - 15:12
**respect** [10] - 13:13, 19:9, 20:14, 20:17, 20:18, 23:25, 24:5, 24:6, 27:16
**respected** [1] - 23:5
**responsible** [2] - 9:25, 10:25
**result** [1] - 20:4
**retain** [3] - 6:16, 9:4, 11:23
**retaining** [1] - 3:3
**returned** [1] - 8:11
**revealing** [1] - 32:18
**reverse** [1] - 12:4
**review** [2] - 4:13, 28:17
**reviewing** [1] - 9:25
**revisited** [1] - 27:6
**revisiting** [1] - 27:7
**revocation** [1] - 2:8
**revoke** [2] - 2:21, 17:11
**revoked** [5] - 2:25, 3:16, 16:24, 21:2, 33:19
**rights** [1] - 4:7
**risking** [1] - 31:4
**RMR** [1] - 34:20
**robust** [2] - 28:25, 32:5
**Room** [1] - 1:16
**Rules** [2] - 7:17, 7:20
**rules** [7] - 3:10, 7:23, 8:2, 10:2, 14:24, 15:12

## S

**scholar** [1] - 16:4
**school** [2] - 9:22, 13:3
**se** [11] - 1:17, 4:19, 6:15, 12:2, 15:3, 15:16, 15:17, 15:22, 16:19, 23:14, 23:15
**seat** [1] - 2:4
**second** [1] - 21:24
**seconds** [1] - 21:11
**section** [1] - 32:17
**see** [6] - 3:7, 22:14, 23:22, 26:1, 26:14, 28:16
**seize** [1] - 30:10
**seized** [1] - 30:11
**self** [2] - 6:11, 15:3
**self-represent** [1] - 6:11
**self-represented** [1] - 15:3

**seminar** [1] - 32:9
**send** [1] - 21:12
**sending** [1] - 30:25
**senior** [1] - 2:10
**senseless** [1] - 23:14
**sensible** [1] - 23:12
**sent** [1] - 20:19
**sentences** [1] - 13:9
**Sentencing** [1] - 7:13
**sentencing** [4] - 10:21, 10:25, 13:14, 20:4
**series** [1] - 7:7
**serious** [4] - 8:9, 8:25, 27:14, 31:19
**seriousness** [1] - 20:6
**serve** [1] - 10:11
**service** [1] - 9:11
**Services** [2] - 1:21, 21:25
**set** [3] - 13:20, 22:11, 22:14
**several** [3] - 21:16, 23:20, 24:15
**shackles** [1] - 23:20, 28:6
**shall** [1] - 16:7
**shared** [1] - 33:15
**shoot** [1] - 23:16
**shorthand** [1] - 7:8
**show** [3] - 25:25, 31:25, 32:1
**shows** [1] - 32:2
**side** [1] - 22:10
**sided** [1] - 32:1
**significant** [1] - 17:20
**simple** [2] - 26:6, 32:11
**simplest** [1] - 29:11
**sitting** [1] - 3:13
**situation** [1] - 20:16
**Sixth** [2] - 4:6, 6:1
**Smith** [5] - 1:21, 2:17, 5:16, 24:17, 32:18
**SMITH** [2] - 2:18, 24:19
**solution** [1] - 31:7
**someone** [3] - 9:16, 28:6, 29:8
**sometimes** [1] - 18:21
**soon** [1] - 23:1
**sorry** [2] - 17:9, 33:1
**sort** [1] - 31:1
**source** [1] - 22:12
**SOUTHERN** [1] - 1:2
**special** [2] - 3:8, 13:20
**specific** [1] - 31:12
**spent** [1] - 23:20
**stage** [2] - 4:24, 18:5

**stages** [1] - 4:21
**standard** [2] - 6:6, 27:23
**standards** [1] - 14:23
**standby** [1] - 16:8
**Stanley** [1] - 2:10
**STANLEY** [1] - 1:15
**start** [2] - 18:8, 29:24
**STATES** [4] - 1:1, 1:3, 1:9, 1:13
**States** [4] - 2:5, 2:9, 7:13, 11:8
**States'** [1] - 15:16
**status** [4] - 3:2, 3:23, 9:11, 18:16
**step** [2] - 3:14, 33:18
**still** [1] - 11:2
**straight** [1] - 20:21
**strange** [1] - 20:10
**Street** [1] - 1:16
**strike** [3] - 15:17, 15:22, 23:14
**strong** [1] - 6:2
**strongly** [1] - 5:25
**structure** [2] - 27:12, 27:23
**structured** [2] - 27:11, 28:12
**stuck** [1] - 24:13
**stuff** [2] - 28:15, 32:22
**submission** [1] - 19:8
**submissions** [1] - 26:11
**submit** [2] - 19:1, 23:21
**submitted** [1] - 5:2
**subpoena** [1] - 10:12
**subpoenaed** [1] - 21:8
**subpoenas** [1] - 10:12
**substantive** [2] - 8:7, 8:13
**sufficient** [1] - 17:11
**sufficiently** [1] - 7:24
**suggestion** [1] - 31:2
**Suite** [1] - 1:13
**SULLIVAN** [1] - 1:8
**Sunday** [1] - 26:22
**Super** [1] - 26:22
**supervision** [1] - 24:23
**supervisors** [1] - 24:8
**Supreme** [2] - 6:2, 8:6
**surrender** [2] - 22:5, 30:20
**suspicious** [1] - 20:10
**swearing** [1] - 22:21
**switched** [1] - 22:6
**sworn** [7] - 19:11, 19:12, 19:13, 19:20,
19:23, 20:7
**system** [1] - 8:17

## T

**table** [1] - 3:13
**taught** [1] - 9:21
**TAX** [1] - 1:15
**Tax** [1] - 2:11
**taxes** [1] - 21:18
**tech** [1] - 33:4
**tens** [2] - 21:12, 21:17
**test** [2] - 18:4, 23:11
**tethered** [1] - 32:10
**text** [2] - 20:20, 22:10
**THE** [136] - 1:1, 1:1,
1:8, 1:12, 1:13, 1:17,
2:3, 2:13, 2:16, 2:17,
2:19, 4:12, 4:14,
4:15, 4:17, 4:18,
4:19, 4:22, 4:23, 5:5,
5:15, 5:16, 5:18,
5:20, 5:22, 5:23,
6:14, 6:18, 6:19,
6:22, 7:1, 7:5, 7:11,
7:12, 7:15, 7:16,
7:18, 7:19, 7:21,
7:22, 7:24, 7:25, 8:4,
8:5, 8:8, 8:9, 8:15,
8:16, 8:18, 8:19,
8:23, 8:24, 9:8, 9:9,
9:13, 9:14, 9:18,
9:24, 10:23, 10:24,
11:5, 11:6, 11:10,
11:11, 11:13, 11:14,
11:17, 11:18, 11:19,
11:25, 12:5, 12:6,
12:9, 12:11, 12:15,
12:16, 12:20, 12:22,
13:1, 13:2, 13:4,
13:5, 13:7, 13:8,
13:11, 13:22, 14:1,
14:3, 14:7, 15:15,
15:19, 15:21, 15:23,
16:23, 17:3, 17:5,
17:24, 19:3, 19:6,
19:12, 19:13, 19:15,
19:18, 19:21, 19:22,
24:16, 25:10, 25:12,
25:13, 26:15, 26:18,
26:19, 27:8, 27:9,
27:10, 28:14, 29:3,
29:4, 29:5, 29:16,
29:25, 30:5, 30:7,
30:9, 30:11, 30:15,
30:18, 30:22, 30:23,
31:9, 31:22, 33:1,
33:15, 33:23, 33:25,
34:2
**theirs** [1] - 22:12
**themselves** [2] - 6:4, 8:25
**theories** [1] - 10:8
**theory** [1] - 21:10
**thinking** [1] - 21:23
**thinks** [1] - 3:21
**third** [2] - 20:19
**Thomas** [1] - 2:6
**THOMAS** [1] - 1:5
**thorough** [2] - 12:21, 22:13
**thoughts** [1] - 31:9
**thousands** [1] - 22:1
**timely** [2] - 11:7, 18:3
**TIMOTHY** [1] - 1:8
**today** [8] - 2:19, 2:24, 3:7, 3:22, 4:3, 17:2, 18:18, 30:6
**together** [1] - 2:19
**took** [5] - 21:18, 27:19, 30:6, 30:12, 30:16
**total** [1] - 8:12
**totally** [6] - 14:15, 17:25, 18:23, 18:24, 27:6
**transaction** [1] - 22:11
**transactions** [1] - 21:6
**transcribed** [1] - 34:13
**Transcript** [1] - 1:25
**transcript** [2] - 34:11, 34:14
**TRANSCRIPT** [1] - 1:8
**transcription** [1] - 1:25
**transfer** [2] - 17:24, 25:17
**transferred** [1] - 32:14
**transferring** [1] - 17:20
**transfers** [4] - 17:23, 20:9, 31:19, 32:1
**treat** [1] - 14:22
**tremendous** [2] - 7:9, 14:9
**tremendously** [2] - 9:10, 14:9
**trial** [10] - 9:17, 9:20, 10:15, 10:16, 10:17, 13:19, 14:21, 18:10, 22:22
**tried** [1] - 25:19
**true** [7] - 20:1, 20:12, 23:3, 23:17, 23:18, 24:4, 26:6
**trust** [5] - 22:22, 24:24, 26:13, 26:14, 26:19
**trusted** [2] - 22:23, 22:24
**truth** [3] - 19:14, 26:9, 26:11
**truths** [1] - 26:23
**trying** [3] - 26:20, 31:18, 31:23
**tuna** [1] - 31:23
**turned** [1] - 26:22
**turns** [1] - 33:20
**two** [7] - 2:24, 3:1, 13:8, 16:7, 21:11, 29:21, 32:19

## U

**ultimate** [1] - 22:8
**unable** [1] - 3:5
**unaware** [1] - 24:21
**unbelievable** [1] - 20:6
**under** [8] - 7:6, 10:2, 11:1, 11:15, 17:12, 21:5, 27:1, 27:2
**understood** [1] - 7:5
**UNITED** [4] - 1:1, 1:3, 1:9, 1:13
**United** [5] - 2:5, 2:9, 7:13, 11:7, 15:16
**University** [1] - 13:4
**unlikely** [1] - 27:4
**unnecessarily** [1] - 28:2
**unnecessary** [2] - 21:19, 27:13
**unsettled** [1] - 3:2
**untrue** [2] - 26:23, 33:20
**up** [8] - 4:2, 18:7, 21:21, 21:22, 25:25, 28:2, 30:5, 30:12
**uphill** [1] - 14:12
**utterly** [2] - 21:18, 27:12

## V

**variations** [1] - 16:9
**variety** [1] - 13:11
**various** [1] - 19:25
**via** [1] - 34:12
**view** [3] - 11:21, 13:18, 17:9
**viewing** [1] - 18:11
**violate** [2] - 17:23, 32:17
**violated** [3] - 17:22, 27:3, 32:13
**violation** [1] - 5:14
**vs** [1] - 1:4

## W

**waived** [1] - 15:2
**wallet** [3] - 21:23, 21:24, 33:15
**wallets** [10] - 5:10, 6:24, 17:13, 17:18, 17:20, 20:22, 20:23, 26:25, 32:9, 32:19
**wants** [3] - 3:4, 4:3, 18:13
**warning** [1] - 33:12
**warrant** [3] - 2:21, 5:8, 29:22
**Washington** [1] - 1:16
**waste** [1] - 28:3
**watching** [2] - 21:14, 33:10
**website** [1] - 8:1
**Wednesday** [1] - 3:2
**week** [1] - 7:2
**well-equipped** [1] - 12:25
**West** [1] - 32:10
**wife** [4] - 30:7, 30:10, 30:13, 30:21
**wild** [2] - 23:4, 24:7
**Wild** [1] - 32:9
**withdraw** [2] - 23:1, 25:24
**witnesses** [4] - 9:3, 10:14, 23:9
**wonder** [2] - 20:25, 21:3
**wondering** [1] - 29:11
**word** [3] - 22:18, 30:18, 32:25
**works** [1] - 7:14
**world** [2] - 31:5, 32:10
**write** [1] - 23:21

## Y

**years** [4] - 12:4, 21:16, 23:24, 26:17
**young** [1] - 13:23
**yourself** [7] - 6:11, 11:12, 12:13, 12:19, 16:6, 29:17, 29:20

## Z

**zealously** [1] - 16:5