```
1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
2                         SOUTHERN DIVISION

3  _____
                                 )
   UNITED STATES OF AMERICA       )
4                                 )
        v.                        )  Case No. 8:25-cr-00006-LKG-1
5                                 )
   THOMAS C. GOLDSTEIN,           )
6                                 )
                Defendant.        )
7  _____)

8                              Greenbelt, Maryland
                               February 14, 2025
9                              2:02 p.m.

10

                       (REDACTED TRANSCRIPT)
11                      MOTIONS HEARING

12          BEFORE THE HONORABLE LYDIA KAY GRIGGSBY
                 United States District Judge
13

14                  A P P E A R A N C E S

15  ON BEHALF OF THE GOVERNMENT:

16      UNITED STATES ATTORNEY'S OFFICE
        6406 Ivy Lane, Suite 800
17      Greenbelt, Maryland  20770
        BY:  PATRICK DAVID KIBBE, ASSISTANT U.S. ATTORNEY
18           (410) 212-4237
             patrick.kibbe@usdoj.gov
19
                        (Continued)
20

21

22

23
                    PATRICIA KLEPP, RMR
24              Federal Official Court Reporter
                6500 Cherrywood Lane, Suite 200
25                Greenbelt, Maryland  20770
```

```
 1              A P P E A R A N C E S (Cont'd)

 2   ON BEHALF OF THE GOVERNMENT: (Cont'd)

 3        U.S. DEPARTMENT OF JUSTICE, Tax Division
          Northern Criminal Enforcement Section
 4        150 M Street, N.E.
          Washington, D.C.  20002
 5        BY:  STANLEY J. OKULA, JR., SENIOR LITIGATION COUNSEL
               Room 2.142
 6             (202) 514-2839
               stan.j.okula@usdoj.gov
 7        BY:  SEAN EMERSON GORDON-MARVIN, TRIAL ATTORNEY
               Room 1.317
 8             (202) 307-0872
               emerson.gordon-marvin@usdoj.gov
 9
     ON BEHALF OF THE DEFENDANT:
10
          MUNGER, TOLLES & OLSON LLP
11        601 Massachusetts Avenue, N.W., Suite 500 E
          Washington, D.C.  20001
12        BY:  JONATHAN I. KRAVIS, ESQUIRE
               (202) 220-1130
13             jonathan.kravis@mto.com
          BY:  STEPHANY REAVES COUPER, ESQUIRE
14             (202) 220-1126
               stephany.reaves@mto.com
15
     ALSO PRESENT:
16
          THOMAS C. GOLDSTEIN
17        S.A. ANDREW ACCARDI - IRS-CI
          ADAM SMITH, USPTSO
18

19

20

21

22

23

24

25
```

***COMPUTER-AIDED TRANSCRIPT OF STENOTYPE NOTES***

```
 1                    P R O C E E D I N G S

 2        (Call to order of the Court.)

 3             THE COURTROOM DEPUTY:  Please rise.  The United States

 4   District Court for the District of Maryland is now in session,

 5   the Honorable Lydia Kay Griggsby presiding.

 6             THE COURT:  Good afternoon.  If everyone could be

 7   seated for just a moment, I want to go over a few preliminary

 8   matters before we formally call the case.

 9             First, for those who have not appeared before the

10   Court before, if you are counsel, or Mr. Goldstein, and you are

11   fully vaccinated and wish to do so, you're welcome to lower your

12   mask at this time.  The Court meets that criteria, so I am going

13   to do that, and hopefully, you can hear me a little bit better.

14   For others joining us in the courtroom, I will invite you to

15   keep your mask on, just for the comfort and safety of all of us.

16             I next want to make a few preliminary comments before

17   I invite the government to call the case and we proceed.

18   Firstly, I want to share with counsel Local Rule No. 201, which

19   appears in the court's local rules, and I'm going to read that

20   into the record to make sure that we are all aware of the

21   requirements for counsel who appear in criminal matters.

22             The rule provides as follows:  Except as otherwise

23   provided in the Rule, a defendant in a criminal case may only be

24   represented by a member of the Bar of this Court or counsel

25   appointed for that defendant by any United States court.
```

1        The Court may permit any attorney who is an active

2   member in good standing of the bar of any other United States

3   court or of the highest court of any state to appear and

4   participate as counsel in a particular criminal case.  Such

5   permission shall not constitute formal admission to the Bar of

6   this Court.  However, an attorney admitted for this occasion

7   only is subject to the disciplinary jurisdiction of this Court.

8   Any party represented by an attorney who has been admitted for

9   this occasion only must also be represented by an attorney who

10  is and continually remains an active member in good standing of

11  the Bar of this Court, who shall sign all documents and unless

12  excused by the presiding judge be present at any court

13  proceedings.

14        And lastly, counsel for a defendant may withdraw their

15  appearance only with leave of court, except as provided by

16  Local Rule 101.2.c.

17        I just wanted to share that gentle reminder to make

18  sure we're all aware of the court's local rules, and of course,

19  the Court will expect all counsel to comply with those rules as

20  we proceed.

21        At this time, I'm going to invite the United States of

22  America to please call the case, we'll do introductions of

23  counsel, and then we will proceed.

24        Good afternoon, Counsel.

25        MR. KIBBE:  Good afternoon, Your Honor.

1          Calling the case, United States v. Thomas C.

2     Goldstein, Criminal Action No. LKG-25-6.  We're here for the

3     purpose of a hearing on Mr. Goldstein's motion for review of the

4     detention -- conditions of release, excuse me, and also review

5     forfeiture allegations in the indictment.

6          I'm Assistant United States Attorney Patrick Kibbe on

7     behalf of the government, joined today by my colleagues from the

8     Department of Justice, Tax Division, Senior Litigation Counsel

9     Stanley Okula and Trial Attorney Emerson Gordon-Marvin.  Also

10    present in the courtroom behind me is IRS-CI Special Agent

11    Andrew Accardi.

12          THE COURT:  Good afternoon, AUSA Kibbe and counsel, as

13    well as those assisting the government.

14          Counsel for the defense and Mr. Goldstein,

15    good afternoon.

16          MR. KRAVIS:  Good afternoon, Your Honor.  My name is

17    Jonathan Kravis.  I am joined today by my colleague,

18    Stephany Reaves.  We have the honor to represent Mr. Goldstein

19    in this matter, and for the record, Mr. Goldstein is present and

20    is seated to my left.

21          THE COURT:  Good afternoon, Counsel.

22          Mr. Goldstein, welcome to you and counsel; thank you

23    for being here as well.

24          Well, Counsel, we have several matters before the

25    Court today.  Quite frankly, a lot has happened over the last

1   few days, and I'm going to take just a moment to walk through

2   the Court's understanding of all that has occurred.  Of course,

3   many matters occurred that were not directly in front of me at

4   that time.  I want to make sure I understand where we are, we'll

5   give counsel a chance to correct anything on the record and to

6   give a general background of the case, and then we'll jump more

7   fully into the motions.

8           I do want to also invite Mr. Goldstein to be sworn in

9   at the appropriate time in case he wishes to address the Court.

10          And you are welcome to do so, Mr. Goldstein.

11          Back on January 16th of 2025, a federal grand jury in

12   the District of Maryland returned a 22-count indictment,

13   charging Mr. Goldstein with tax evasion and violation of

14   Title 26, United States Code, Section 7201; aiding and assisting

15   the preparation of false and fraudulent tax returns in violation

16   of Title 26, United States Code, Section 7206(2); willful

17   failure to pay taxes, in violation of Title 26, U.S. Code,

18   Section 7203; and false statements on a loan application in

19   violation of Title 18, United States Code, Section 1014.

20          On January 27th, Mr. Goldstein had his initial

21   appearance and pled not guilty to all charges at that time, and

22   at that time, he was also ordered released by the Court, subject

23   to certain conditions of his release.  Most notably, there was a

24   requirement to execute a bond or agreement for a 100 percent

25   interest in a residence located at ████████████, Washington,

1    D.C. -- I'll refer to that as the Washington, D.C. residence

2    today; I know that's at issue today.

3           Mr. Goldstein subsequently executed the bond.  On

4    January 29th, he filed a motion to modify that condition, which

5    was considered by the Court and ultimately denied.

6           Thereafter, on January 31st, the government filed a

7    bill of particulars related to the forfeiture count in this

8    case.  And this also involves the Washington, D.C. residence,

9    and so it will be relevant to our conversation today.

10          On February 5th, Mr. Goldstein filed a pro se motion

11   for review of the modification -- I'm sorry, review requesting

12   modification of the condition of release related to the

13   Washington, D.C. property.  He's asking to substitute three

14   properties located in South Carolina as the collateral in lieu

15   of that property.  Mr. Goldstein also filed a motion to limit

16   the forfeiture allegation in the indictment.

17          On February 6th, the government moved to strike those

18   filings as in violation of the Court's local rules, and

19   thereafter, the government also filed an ex parte motion to

20   revoke Mr. Goldstein's release.  That motion was fully briefed.

21   That hearing was held -- I'm sorry, he was originally detained,

22   and then a hearing was held yesterday, which revoked the

23   detention, and Mr. Goldstein, of course, is present today, not

24   subject to detention.

25          On February 13th, after the Court revoked the order of

1  detention, the Court also issued an order with additional

2  conditions of release that include those previously ordered by

3  the Court as well as several additional conditions, and these

4  are the ones I wanted to highlight, which I think are relevant

5  today.

6          They include that Mr. Goldstein shall execute a bond

7  for a 100 percent interest in his residence, again, the

8  Washington, D.C. residence.  Mr. Goldstein's also required to

9  surrender his passport.  He is not to open new bank accounts or

10 obtain or draw lines of credit or transfer funds without the

11 prior approval of Pretrial Services.  He's also to refrain from

12 use of computer systems and internet capable devices.  He's also

13 been directed to disclose the types and amounts of any internet

14 capable devices that he currently possesses or has access to and

15 to provide that information to Pretrial Services.  He has also

16 been instructed by the Court to provide a comprehensive list of

17 all assets he holds anywhere and however titled by February 18

18 of 2025 at 10:00 a.m.

19         Lastly, yesterday, Mr. Goldstein filed a reply in

20 support of his motion for review as well as a response to the

21 government's motion to strike that motion.

22         And today, the Court will entertain argument on all of

23 these matters and endeavor to rule on these matters and assess

24 where we are in terms of next steps.  I want to first now ask

25 the courtroom deputy to swear in Mr. Goldstein, and I also want

1    to recognize who's here from Pretrial, because I forgot to do

2    so, and then we'll get into a discussion about the motions.

3                THE COURTROOM DEPUTY:  Mr. Goldstein, please stand and

4    raise your right hand.  You do solemnly promise and declare

5    under the penalties perjury that the information you are about

6    to give to the Court in the matter now pending before it shall

7    be the truth, the whole truth, and nothing but the truth?

8                THE DEFENDANT:  I do.

9                THE COURTROOM DEPUTY:  Thank you.  Please state your

10   full name for the record.

11               THE WITNESS:  Thomas Che Goldstein.

12               THE COURTROOM DEPUTY:  You may be seated.

13               THE WITNESS:  Thank you.

14               THE COURT:  Thank you so much.

15               And I do want to recognize our representative from

16   Pretrial Services for the record.

17               THE WITNESS:  Good afternoon, Your Honor.  Adam Smith

18   on behalf Pretrial Services.

19               THE COURT:  Thank you so much, Mr. Smith.  Thank you

20   for being here today.

21               AUSA Kibbe, would you like to begin with a little more

22   background about the case, correct anything the Court has said.

23               Does the court reporter need some assistance?

24               THE COURT REPORTER:  Could you please move the

25   microphone closer towards you?

1           MR. KIBBE:  Yes, absolutely.

2           THE COURT:  And you're also welcome if you want to use

3    the podium, Counsel.  If that's more comfortable for you, you're

4    welcome to do so as well.

5           MR. KIBBE:  Thank you, Your Honor.

6           As an initial housekeeping matter -- and I appreciate

7    the Court's thorough review of the record.  I know there has

8    been a lot in the past week.

9           The government did file an opposition to

10   Mr. Goldstein's pro se motion as well, and my apologies if I

11   missed that in the recitation.  That's at ECF 34.  So we did

12   initially file a motion to strike, and out of abundance of

13   caution, we also did file a substantive opposition, which

14   defense counsel replied to yesterday evening at 6:00 p.m.

15          THE COURT:  Thank you, Counsel, for that correction.

16   The Court has reviewed your response.

17          MR. KIBBE:  Thank you, Your Honor.

18          As Your Honor has noted, this is a case involving

19   22 counts of alleged tax violations and mortgage fraud, and the

20   way that the government understands the issues -- and counsel

21   will correct me if there's additional ones that he would like to

22   raise today, but that there are three main things that we need

23   to resolve.

24          The first is the condition that Mr. Goldstein use his

25   Washington, D.C. residence as the forfeiture, from the

 1    forfeiture bond.  So that's issue number one, and that's related

 2    to the conditions of release under the Bail Reform Act.

 3         The second two issues are related to Mr. Goldstein's

 4    challenge to the forfeiture allegations in the indictment.  And

 5    those are not Bail Reform Act issues, those are separate issues,

 6    and the first is that Mr. Goldstein would like to limit the

 7    forfeiture to a money judgment.  The second is the

 8    Sixth Amendment issue that Mr. Goldstein raises in various

 9    filings.  And the government sees that as a distinct issue from

10    the money judgment issue or the Bail Reform Act issue.  And the

11    issue is, there, the government does is not agree that

12    Mr. Goldstein would have the ability to use any untainted assets

13    in -- to aid his defense, to use -- to pay for defense counsel.

14         THE COURT:  Well, is the government's position that

15    the Washington, D.C. residence is a tainted asset and therefore

16    not eligible under Luis and some of the other case law?

17         MR. KIBBE:  Yes, Your Honor, at least part of it is

18    going to be tainted, is the government's position, and the

19    tainted portion would be the mortgage and appreciation, because

20    the government's theory -- and I'm happy to get into all of this

21    in detail -- is that Mr. Goldstein would not have that property

22    but for the mortgage fraud charged in the indictment.

23         And the procedures to see if -- what untainted assets

24    Mr. Goldstein could use are set out in the Fourth Circuit case,

25    United States v. Farmer.  And so there's an established

```
 1    procedure that's different than the Bail Reform Act procedure.

 2    It's different than Mr. Goldstein's legal challenge to a money

 3    judgment; it's that Mr. Goldstein has to show that the

 4    government seized his assets, which it has not done, as far as

 5    the lis pendens, and two, that he does not have sufficient funds

 6    to otherwise pay for counsel.  And I'll go into detail on this

 7    at the appropriate time, but the government submits, he has not

 8    shown that.

 9          Now, the government's asking that that portion of

10    Mr. Goldstein's motion be denied with prejudice and that he

11    could refile something that attempts to establish these various

12    factors.

13          THE COURT:  Now, let me just be clear about what you

14    mean about that portion of the motion, because the issue with

15    the residence kind of flows throughout.

16          MR. KIBBE:  Yes.

17          THE COURT:  There's the argument about limiting

18    forfeiture, and there's also the initial argument about the

19    condition --

20          MR. KIBBE:  Yes.

21          THE COURT:  -- that the Court has imposed that the

22    residence, the Washington, D.C. residence be used as collateral

23    to assure, reasonably assure Mr. Goldstein's appearance.

24          So is your position on this issue that it relates to

25    all of those or just to the limit to for- -- limit the
```

1  forfeiture portion?

2         MR. KIBBE:  The house runs through all three.

3         THE COURT:  Right.

4         MR. KIBBE:  The government's position is that the

5  forfeiture bond stands alone as an appropriate -- was one of the

6  appropriate conditions of release, and that is one bucket, here.

7  The second bucket is Mr. Goldstein's attempt to limit the

8  government's ability -- forfeiture to a money judgment at the

9  very start of the case.

10        And the government's position is, that's not

11 procedurally proper; that should absolutely be done after

12 conviction.  All we've done is provide a notice at this point.

13        THE COURT:  All right.  And just -- let me just be --

14 make sure the Court is clear about where forfeiture fits in.

15 There is a forfeiture allegation in the indictment, a bill of

16 particulars has been provided to Mr. Goldstein.  The forfeiture

17 would be a part of the sentence, right, at the conclusion -- if

18 Mr. Goldstein were convicted and then subject to sentencing,

19 I believe on Count 22 is where the forfeiture comes in; is that

20 right?

21        MR. KIBBE:  Absolutely correct, Your Honor.

22        THE COURT:  All right.  So there's a number of other

23 counts in the case that aren't tied to the forfeiture issue, as

24 the Court read the indictment.

25        MR. KIBBE:  Yes, that's correct, Your Honor.

1             THE COURT:  Okay.  So at this point, does the

2    government -- has the government seized or have an interest in

3    the Washington, D.C. residence based upon the forfeiture

4    allegation in the indictment?

5             MR. KIBBE:  No, Your Honor.  The government has done

6    two things:  One is, it has filed a bill of particulars; and

7    second is, it's filed a lis pendens on the property.  Now, a

8    lis pendens is a notice; it's holding our place in line.  We

9    haven't seized the property, it's not a lien on the property;

10   it's a notice that corresponds to the bill of particulars,

11   saying that the government is providing notice to potential

12   buyers that the government, if there is a conviction in this

13   case and after sentencing, as Your Honor has noted, would seek

14   to forfeit the property.

15             THE COURT:  Okay.  Go ahead.

16             MR. KIBBE:  So I'm happy at this stage to go into

17   argument into those three buckets, or we can wait, you know --

18             THE COURT:  Well -- all right.  I think it might be

19   helpful to let Mr. Goldstein's counsel be heard, because other

20   than the motion to strike, they are the ones that are filing the

21   motions and some issues upon review which I think are properly

22   before me, and some issues are not.

23             There's a little interconnection, obviously, with

24   regards to the residence kind touching on all those issues, but

25   really, what's before the Court would be the decision by Chief

```
 1    Magistrate Judge Sullivan to require the Washington, D.C.
 2    residence to be basically collateral to assure Mr. Goldstein's
 3    appearance as a condition of his release.  I think the other
 4    issues at least are not on review, and we can talk later about
 5    whether they are otherwise procedurally properly before the
 6    Court.
 7            Just to be clear, though, since you're here,
 8    AUSA Kibbe, on the Bail Reform Act issue, which I think is
 9    what's really in front of me, do I understand the government's
10    position to be that you believe that the Washington, D.C.
11    residence should appropriately remain collateral in this case to
12    assure Mr. Goldstein's presence, or -- what is the government's
13    position about his request to just basically swap out that
14    property for three other properties that he's identified?
15            MR. KIBBE:  Yes, Your Honor.
16            The government's position is that the Washington, D.C.
17    residence should remain in collateral on this case.
18    Chief Magistrate Sullivan has found that three times, now, and
19    the government submits that Chief Magistrate Judge Sullivan
20    found that correctly.  And that's based on the Bail Reform Act
21    factors that I'm happy to go through at the appropriate time and
22    also the -- you know, the particular interest that Mr. Goldstein
23    has in that residence versus three properties that he does not
24    own.
25            THE COURT:  Okay.  Thank you, Counsel; that's helpful.
```

1          I want to give Mr. Goldstein's attorney a chance to be

2    heard so we make sure that we understand his position, and then

3    I'll hear again from the government.

4          MR. KRAVIS:  Thank you --

5          THE COURT:  Good afternoon, Counsel.

6          MR. KRAVIS:  Good afternoon, Your Honor.  Thank you.

7          I believe there are two issues that are properly

8    before the Court today, both of which relate to the property

9    that Your Honor has referred to as the Washington, D.C.

10   property.  The first is Mr. Goldstein's appeal from the release

11   condition that requires a security bond on the Washington, D.C.

12   property to secure his appearance.

13         And I want to be clear; our challenge to the release

14   conditions today is very narrow.  There are numerous release

15   conditions that the Magistrate Judge has imposed on

16   Mr. Goldstein, and the only thing we are challenging here is the

17   refusal of the Magistrate Judge to substitute a security

18   interest in the -- a security bond in the South Carolina

19   properties for the Washington -- a security bond in the

20   Washington, D.C. residence.

21         Our argument, of course, as set forth in our filings,

22   is that a security bond on the Washington, D.C. residence as

23   opposed to a security bond on the South Carolina properties,

24   which are actually more valuable, is not reasonably necessary to

25   assure -- is not the least restrictive measure that's reasonably

1    necessary to assure Mr. Goldstein's appearance under the Bail

2    Reform Act.  That's issue No. 1.

3          The second is, Mr. Goldstein has also asked the Court

4    to strike the bill of particulars filed by the government that

5    identifies the Washington, D.C. property as subject to

6    forfeiture.  I respectfully disagree with my colleague on the

7    other side that that is not procedurally proper.

8          In fact, the very case that he just cited to the

9    Court, United States v. Farmer, as well as the Supreme Court

10   case we cited in our filings, Luis, makes clear that that

11   absolutely is an appropriate remedy that a defendant can seek

12   when the defendant alleges, as we have here, that number one,

13   the property is untainted, and number two, that the property is

14   necessary to fund the defendant's defense of the case.

15         That's what we've alleged here, and under Farmer, we

16   don't have to wait until after the trial is over and it's too

17   late for Mr. Goldstein to use that asset to fund his defense.

18         THE COURT:  Let me just pause a moment to clarify and

19   make sure the Court understands you.

20         On the first point, with regards to the property being

21   used as collateral as a condition of release, you mentioned, the

22   South Carolina properties, in your client's view, are more

23   valuable.  I want to zero in on "valuable" and what that means

24   in this context.

25         The property is being used as collateral or as an

18

1    incentive to ensure that Mr. Goldstein -- reasonably assure that

2    he shows up and that he remains present for these proceedings.

3    And so I think in that context, what is valuable really has a

4    lot to do with what's valuable to Mr. Goldstein, and that

5    certainly can be reflected in the market value, but it can also

6    be reflected in other things.

7           And one of the things that I'm going to just -- so I

8    want to hear your view.  You know, one of the points -- in

9    reviewing, thus far, many of the points Mr. Goldstein makes are

10   important, but they actually make the point I think that the

11   Court is looking to in terms of using that property as

12   collateral.  We want it to be very valuable to him as an

13   incentive to remain present and to appear before the Court.

14          So I guess, the fact that the other properties may

15   have a higher market value when combined, I don't know that that

16   necessarily fully answers the Court's concern.  It certainly is

17   a reasonable argument, but the other piece is really what the

18   Court is looking to.  And so that's one of the areas where, when

19   I'm trying to understand the defense position, where I see a bit

20   of a tension in terms of what the purpose of this condition is,

21   not that the properties aren't equally weighted in value, but

22   what's valuable to Mr. Goldstein, what's going to be an

23   incentive for him.

24          MR. KRAVIS:  Your Honor, I wholeheartedly agree with

25   that description of the analysis here, and so let me just

1    clarify.  The South Carolina properties are both the residence

2    and the primary asset of Mr. Goldstein's immediate family, his

3    father, his stepmother, and his half sister.

4         This is where they live, and this is also the primary

5    asset that those family members possess, and so those

6    properties, in addition to being economically valuable, are also

7    valuable to Mr. Goldstein because they are the primary means --

8    they are the primary means of his immediate family.  And I would

9    argue, Your Honor, that under those circumstances, the

10    government simply cannot show that a security interest on the

11    Washington, D.C. residence is the only thing that can secure

12    Mr. Goldstein's appearance, because that is the requirement of

13    the Bail Reform Act; it has to be the least restrictive

14    combination of conditions that will reasonably assure the

15    appearance of the defendant.

16         And so given Mr. Goldstein's emotional and family

17    connections to the property in South Carolina, as well as the

18    property in Washington, D.C., it is a perfectly reasonable

19    condition; it is the less restrictive condition to put the

20    security bond there.

21         THE COURT:  Does Mr. Goldstein have an ownership

22    interest in the three South Carolina properties?  I understand

23    the family members are living there; are they the owners of

24    those properties?

25         MR. KRAVIS:  They are the owners of those properties,

```
 1   and they are willing to make those prop- -- to put up those

 2   properties as a security bond for Mr. Goldstein's appearance.

 3              THE COURT:  And Mr. Goldstein is, however, owner along

 4   with his spouse of the Washington, D.C. residence; is that

 5   correct, or no?

 6              MR. KRAVIS:  For the moment; the reason that

 7   Mr. Goldstein has brought this motion, to ask both that the

 8   release conditions be modified and the forfeiture allegation be

 9   struck is because he and his wife intend to sell that residence

10   in order to fund his defense.  And so the idea that -- the

11   government's argument that Mr. Goldstein has some deep,

12   you know, emotional connection to his martial home or some deep,

13   like, financial interest in the property, Mr. Goldstein wants to

14   sell the property; he wants to sell the property to be able to

15   fund his defense.

16              And so under those circumstances, a security interest

17   on the South Carolina properties is sufficient to ensure his

18   appearance before the Court.

19              THE COURT:  And are members of Mr. Goldstein's family

20   currently residing at any or all of the South Carolina

21   properties, or are these like vacation homes, second homes; do

22   you have any insight about that?

23              MR. KRAVIS:  They're residing at two of the three

24   properties.  So we've identified three properties in

25   South Carolina, and we've provided their combined appraisal
```

```
 1    value to the Court.  Those are residences for two -- two of
 2    those are residences for Mr. Goldstein's immediately family.
 3              THE COURT:  Okay.
 4              MR. KRAVIS:  The other -- I just want to make sort of
 5    one more point about the release conditions issue before I move
 6    on, because I would like to briefly address the forfeiture
 7    issue, and the final point I want to make here is that this
 8    question does have Sixth Amendment implications to it.
 9              So I respectfully disagree with my colleague's
10    categorization of the issues before the Court today.  The
11    Sixth Amendment consideration is not like separate third thing
12    that we can talk about at the end; the Sixth Amendment is an
13    important consideration in evaluating each of the two issues
14    that Mr. Goldstein has brought before the Court today.
15              We are not asking for a modification of this aspect of
16    the release conditions simply because it would make
17    Mr. Goldstein's life more convenient or simply because it would
18    make him happier; we are asking for this modification because he
19    needs to sell the property in order to fund his defense.
20              And the last thing I want to mention here -- because
21    the Magistrate Judge brought this up yesterday -- is, I do want
22    to just say a word about my own appearance before the Court
23    today, because I understand that I am standing here arguing
24    about how Mr. Goldstein needs to sell the property to fund his
25    defense, and here I am.
```

1          My colleague and I entered into this case this week

2     after Mr. Goldstein was detained on the government's ex parte

3     motion for a detention order, as the Court recounted in the

4     summary.  That happened on Monday.  We entered our appearances

5     shortly thereafter.

6          And I want to be really clear about this.  We entered

7     our appearances in this case this week because we felt as though

8     we could not sit on the sidelines and watch while Mr. Goldstein

9     was incarcerated based on what turned out to be a mistake by the

10    government.  We did not have a final agreement on terms of

11    representation, and we still don't.  We entered into the case

12    because Mr. Goldstein could not secure his own release pro se

13    while he was detained.

14         Now, I'm sure that my colleagues on the other side

15    would never stoop to arguing that because we came into the case

16    to correct their mistake on the detention motion, that that

17    somehow prejudices Mr. Goldstein's Sixth Amendment argument; I'm

18    sure they would never say anything like that.  But I did want to

19    raise this point, because the Magistrate Judge brought it up at

20    the hearing yesterday, and so I just wanted to make sure I

21    touched on it, because the Court had brought it up.

22         THE COURT:  Thank you very much, Counsel.  I'm sure

23    we'll have you back, I'll have some additional questions, but I

24    do want give the government a chance to now formally respond,

25    and then the Court will likely have additional comments for both

1    sides before I share my views.

2             MR. KRAVIS:  Thank you, Your Honor.

3             THE COURT:  Thank you so much.

4             AUSA Kibbe, you're welcome come back to the podium.

5             MR. KIBBE:  Thank you, Your Honor.

6             Speaking, Your Honor, with the bond conditions, the

7    analysis for the bond conditions, as Your Honor knows, are under

8    the factors in the Bail Reform Act; that's the nature and

9    circumstances of the offense, the weight of the evidence,

10   history and characteristics of the defendant, and the nature and

11   seriousness of the danger.  And the government addressed these

12   at length in its opposition, and Mr. Goldstein, in his motion

13   and defense counsel's opposition, really hasn't addressed these,

14   but these are at the core of the Court's analysis of what are

15   the least restrictive conditions for release.

16            And these are the factors that Judge Sullivan has

17   reviewed three times now, and the government submits again that

18   Judge Sullivan got it right.  And so to briefly recap some of

19   those for the record, regarding the nature and circumstances of

20   the offense, Mr. Goldstein's been charged with 22 felony counts

21   of tax crimes and making false statements to mortgage lenders.

22            Now, the second part of that, the false statements to

23   mortgage lenders, is particularly relevant when we're talking

24   about this Washington, D.C. residence, because Mr. Goldstein, as

25   alleged in the indictment, has spent years hiding his assets

1    from the government, failing to report taxes, failing to report

2    cryptocurrency that he owns, made false statements on mortgage

3    applications, which he used, then, to help obtain his residence.

4         And so those are the allegations in the indictment;

5    those are the nature and circumstances of the offense that lay

6    backdrop to the question of what are the appropriate conditions

7    of release.

8         Now, the other factor that the Court must consider is

9    the weight of the evidence, because the government makes

10   allegations, but of course, the Court must consider the weight

11   of the evidence at this stage, while Mr. Goldstein, of course,

12   always maintains his presumption of innocence.

13        So in terms of the weight of the evidence, there are

14   significant, significant pieces of evidence that tie

15   Mr. Goldstein to all the crimes charged in the indictment.  As

16   has been reported in the papers and filed by counsel and by the

17   government, there's tens of thousands of pages of discovery, a

18   witness list that's approximately 80 people long; this has been

19   an extensive, years-long investigation.

20        And that evidence includes many statements by

21   Mr. Goldstein himself.  Take the mortgage fraud, for example.

22   We have emails from Mr. Goldstein, stating to other parties, It

23   would be pointless to sue me, because I am in debt right now.

24   We have amortization schedules of debt and private lenders,

25   showing that at the time he submitted these mortgage

1    applications, he was over $15 million in debt.  We also have at

2    that same time the loan applications, where Mr. Goldstein signed

3    in multiple places that he disclosed all of his debt.  He even

4    signed a statement that said, I understand the FBI investigates

5    mortgage fraud, signed by Mr. Goldstein.

6          So these are just a few pieces of evidence that go to

7    the weight of the evidence in this case, not only to charges

8    overall; this is when we're talking about this Washington, D.C.

9    residence.

10         Turning to the nature -- sorry, the history and

11   characteristics of Mr. Goldstein.  By all accounts

12   Mr. Goldstein's a brilliant lawyer; there's no dispute about

13   that.  He's also a very, very sophisticated businessperson and

14   one who has gambled with tens of millions of dollars at a time

15   and hid that from the government.  So when we're talking about

16   conditions of release, this is a critical, critical piece when

17   thinking about, what are those least restrictive conditions.

18         Now, as Your Honor has noted, there were a lot of

19   proceedings this week, and a lot of that involved the use of

20   cryptocurrency wallets and the government's allegations that

21   Mr. Goldstein was involved in recent transfers of millions of

22   dollars.  And the Court respects Chief Magistrate

23   Judge Sullivan's opinion yesterday, where he found that the

24   government could no longer meet by clear and convincing evidence

25   that Mr. Goldstein was involved in those recent

1    millions-of-dollar transfers, but he did state on the record in

2    his opinion that he believed Mr. Goldstein had not disclosed his

3    other cryptocurrency accounts and he was suspicious that

4    Mr. Goldstein did in fact participate in those transactions.

5           Now, the point here is not to relitigate that but just

6    to point out to Your Honor that the current order of the Court

7    is to require Mr. Goldstein, as Your Honor noted, to disclose

8    all of his assets by February 18th.  And so we're still waiting

9    for that disclosure.  The Court is still waiting for that

10   disclosure.

11          THE COURT:  Well, let me stop you right there, and I

12   am going to also ask this of Mr. Goldstein's counsel, because

13   one of the conditions imposed yesterday was for Mr. Goldstein to

14   provide some additional information about his assets.  And I

15   will say, in looking at this case thus far and carefully

16   considering the arguments, we don't have a clear picture, or I'm

17   not sure that the Court has a clear picture, and I think, a lot

18   of the important arguments Mr. Goldstein is making will really

19   depend upon having a really clear picture of what his financial

20   position looks like.

21          I did carefully review the Pretrial Services report,

22   which provides some information about Mr. Goldstein's accounts,

23   and debts, et cetera, but I think, particularly in light of some

24   of the arguments being raised about the desire to use the

25   Washington, D.C. residence to help fund a defense and what

1     resources might be available to him, as well as the questions

2     that we're struggling with now, how to mitigate any risk of

3     flight, that information is really going to be critical.

4            I'm going to hear some more, but I'm kind of laying

5     out, Counsel, that you know, we're kind of a movable feast,

6     here, a little bit, and the more information the Court has, the

7     better position the Court will be in to address this concern.

8     And I think that that -- you know, the facts seem to be changing

9     as we go forward.

10            But in any event, I didn't mean interrupt you,

11    AUSA Kibbe, but you know, this is very early in the case,

12    information is coming in.  I'm pleased that Mr. Goldstein now

13    has counsel to assist him, but I think that the Court needs to

14    have a more clear picture of what's going on, to understand

15    particularly the concern about the inability to fund a defense.

16            And of course, Mr. Goldstein does have a

17    Sixth Amendment right to have counsel, and I don't want to have

18    a situation where that has been harmed.  I'm not clear we have

19    that situation right now.

20            But in any event, go ahead, AUSA Kibbe, with your

21    points.

22            MR. KIBBE:  Yes, Your Honor, I appreciate it.

23            And the government agrees with all of that.  I think

24    that's relevant to both this bond condition but then the other

25    question that we're talking about with respect to the use of the

1    assets and the equity in the Washington, D.C. home under a

2    Farmer hearing.

3           So to turn, then, just to the last few points I was

4    going to make about the conditions of release -- and really, it

5    goes back to what the Court has already said about what's the

6    value of the property, what's the difference between the

7    properties, because it's not just about what is the equity in

8    these three properties versus the equity in the Washington, D.C.

9    home; there is a real difference between those properties.

10          One, Mr. Goldstein owns; it's his -- what he has

11   called his marital residence.  And while I appreciate the

12   argument and don't dispute it that he does not want his family

13   to lose their homes either, there is a difference, because this

14   is the home that he lives in, this is the home that his wife

15   lives in, this is the home that his children would come back to,

16   right, and so there is a difference between the homes.

17          In addition to that, if Mr. Goldstein were to not

18   appear and forfeiture was then on the table, he was -- he would

19   be asking the Court to then forfeit the property of innocent

20   third parties versus the property that is the very subject of

21   the mortgage fraud count in the indictment.  And respectfully,

22   the government believes that it's much more appropriate to keep

23   the focus of the bond both for the interest -- to prevent flight

24   but then also because of the nature of that asset and its

25   position in this case as the property subject to the bond.

```
 1              And I'm happy then to turn to the separate forfeiture
 2    issue, unless there are any questions the Court has for me on
 3    the --
 4              THE COURT:  No, I'd like to wrap up the so-called bail
 5    reform issue.  I appreciate the parties are in a slightly
 6    different position about what the parameters of that are, but
 7    I'd like to just wrap that up and then share where the Court is
 8    before I rule, to give counsel a chance to make any additional
 9    points or Mr. Goldstein to make any points.
10              I want to kind of wrap up right now what I'm going
11    call kind of falls squarely within the ruling from Chief
12    Magistrate Judge Sullivan with regards to the use of the
13    Washington, D.C. residence as a collateral to reasonably assure
14    Mr. Goldstein's appearance, and I think I understand the
15    government's position as also fleshed out in their papers and
16    the factors and why they believe those factors support this.
17    I've heard from his counsel.  I want to give Mr. Kravis a chance
18    if you want say anything else on that issue.  Then I'm going
19    share my thinking, and then I'll give you a chance to say
20    anything further before I actually rule.
21              Mr. Kravis, do you want address that piece of it any
22    further before I share my thoughts?
23              MR. KRAVIS:  Your Honor, I just wanted to make two
24    final points about the Washington, D.C. residence in response to
25    my colleague's last comments.
```

1          The first is that the government in its filings and in
2    its argument today keeps going back to this like emotional
3    connection that Mr. Goldstein is supposed to have had to the
4    Washington, D.C. residence, the home his children come back to
5    I think is what I heard today, marital home I also heard today.

6          I'm not sure -- I'm just not sure the government is
7    get getting the message, here.  Mr. Goldstein wants to sell the
8    house.  Mr. Goldstein is not asking for this modification of his
9    release conditions to protect something that is more emotionally
10   valuable to him or something like that.  That is just like not
11   what's going on here; Mr. Goldstein is asking for the change in
12   the security bond status so that he can sell the house to fund
13   the defense.  This whole thing about the emotional connection to
14   the marital whatever is like not a thing.

15         The second point I wanted to make is, you know, I
16   heard my colleague say it would be unfair to put innocent third
17   parties at stake by putting a security bond on the
18   South Carolina residence.  That is of course the entire point of
19   a security bond, is that the people who are putting it up, third
20   parties, they are Mr. Goldstein's father, and his stepmother,
21   and his half sister, they would be putting skin in the game,
22   they would be putting up their residences and their primary
23   assets, and Mr. Goldstein, of course; that creates precisely the
24   sort of emotional attachment to the bond that Your Honor
25   mentioned when I was up here a few moments ago.

1          In other words, it is precisely that potential harm to

2    the folks who own the property that -- those people who are part

3    of Mr. Goldstein's family that creates the kind of emotional

4    connection that Your Honor was referencing when talking about

5    the need for an appropriate release condition in this area.

6          At that point, I'm ready to submit on this issue,

7    unless the Court has any further questions for me.

8          THE COURT:  No further questions right now, Counsel.

9    Thank you for clarifying your position; that's very helpful --

10         MR. KRAVIS:  Thank you, Your Honor.

11         THE COURT:  -- to the Court and provides some

12   additional insights.

13         Well, Counsel, I want to just share my thinking on

14   this before I formally rule.  And I've listened very carefully,

15   I've looked very closely at the papers, and I know we've been

16   dealing with this issue for a while, now, so I'm also aware of

17   prior representations made by the parties on this matter.  I'm

18   of course reviewing it de novo, so I am not coming in with an

19   opinion one way or the other.

20         A couple things I want to share.  Firstly, as I think

21   the government pointed out, I'm guided largely by 18 U.S.C.,

22   Section 3142 in determining whether there are conditions that

23   can be cobbled together to address twin concerns, risk of flight

24   and danger to the community.  This is the same twin inquiry that

25   the Court previously considered in connection with

1    Mr. Goldstein's release.

2          I'm looking at those issues again today, and as the

3    government has pointed out, there are a number of factors that

4    the Court is instructed to consider in assessing if I can find

5    conditions that would allow the mitigation of any concerns of

6    that nature and secondly what those conditions should be.

7          We're talking about one condition, but as the Court

8    noted earlier, there are a number of conditions that have been

9    imposed by this Court, so it's the combination, it's the mixture

10   that we're trying to get right.  So while this condition is

11   obviously very important, I am also informed by the other

12   conditions, and the Court will be looking all of that in terms

13   of assessing what to do with regards to the Washington, D.C.

14   residence.

15         Mr. Goldstein is seeking to modify the condition that

16   has required him to put up the Washington, D.C. residence as

17   collateral to ensure his reasonable appearance in this matter

18   going forward in exchange for three other properties located in

19   South Carolina.

20         I understand today that these properties are owned by

21   and are occupied by members of his extended family, I believe,

22   parents and other members of the family, all located in

23   South Carolina, and Mr. Goldstein has provided the market values

24   of those properties to the Court.  They are all substantial, and

25   he argues I think persuasively that the overall value of the

1    properties would be greater than the market value of the

2    Washington, D.C. residence, particularly when taking into

3    account the outstanding mortgage that the Court understands is

4    on that property.

5         I've also reviewed the presentence report, which

6    provides some information -- Pretrial Services report,

7    pardon me, that provides some information about Mr. Goldstein's

8    financial conditions, including assets that he has in his

9    checking accounts, current debts that he's identified to the

10   Court.  I think as I indicated earlier, Mr. Goldstein's

11   financial picture is not completely clear to this Court, and

12   I think that's something that Chief Magistrate Judge Sullivan

13   was also grappling with in trying to assess Mr. Goldstein's

14   motion, and it's why we have also requested that Mr. Goldstein

15   provide some additional information which might clarify some of

16   the concerns that the Court has expressed.

17        Based on what's currently before me, I don't think

18   that there's a concern -- or I'll say it this way; I'm not

19   concerned about the condition.  I think, based on what's in

20   front of me right now, there is a significant risk of flight,

21   given Mr. Goldstein's history of international travel, his

22   connections with individuals outside of the United States, and

23   particularly the serious allegations in the indictment, which

24   of course he is presumed to be innocent of at this point, but

25   the Court must take those allegations into account in assessing

1   the serious nature and circumstances of the offense charged.

2         The offenses charged are quite serious.  I took

3   another look at the indictment today, and I think in light of

4   the serious nature of those charges, that has to be a factor in

5   terms of the Court's assessment of risk of flight in particular.

6         We talked a little bit about the weight of the

7   evidence today, and again, based upon both the indictment, the

8   representations by the government, and also some of the

9   statements by Mr. Goldstein and his counsel, I think we all

10  recognize, there's a substantial amount of evidence that the

11  government says it's going to rely upon to prove the charges in

12  this case, including bank records, contemporaneous

13  communications attributed to Mr. Goldstein.  I think both sides

14  recognize, we've got about 80 witnesses, potentially, in this

15  case.

16        So there's lot of evidence.  I'm not suggesting that

17  the evidence will prove these offenses, but I think, again, the

18  weight of the evidence here is significant in terms of the

19  Court's assessment about conditions of release.

20        Mr. Goldstein, as I mentioned earlier -- I looked at

21  his travel history before we came in today.  He has recent

22  international travel I believe within the last year or so.  I

23  know that his passport has been surrendered, and I think that

24  helps to mitigate that concern, but because of that travel and

25  his connection with folks overseas, again, I see a risk here,

1  and I think that this property, right now, based upon the

2  Court's understanding of it, is an essential element of the

3  conditions that we can cobble together to allow Mr. Goldstein to

4  remain released prior to trial and also be reasonably assured

5  that he will be present for trial and pretrial proceedings.

6         I would like, Mr. Goldstein, to have a little bit more

7  information about your financial situation.  I understand that

8  you're going to provide that by next week pursuant to the

9  current conditions of your release, and that may help the Court

10 better understand where the Washington, D.C. residence fits in.

11 And it may be a situation where the Court might reconsider its

12 views.  I do not do so now because I don't think it's

13 appropriate; I think that the condition is necessary, it's

14 appropriate under the law, and in light of the information from

15 the Court, I think it is a proper balance to ensure

16 Mr. Goldstein's continued presence here.

17        I will also say that again, an essential concern for

18 this Court throughout these proceedings has been this ability in

19 understanding of Mr. Goldstein's financial assets.  His ability,

20 of course, to fund a defense is important, and the Court

21 appreciates that concern.  There have been some concerns

22 expressed about whether the Court has gotten accurate

23 information.  I am confident we're going to get accurate

24 information on February 18th, and I think we'll be in a much

25 better position, should Mr. Goldstein wish to continue to pursue

1    this issue, to revisit it if it's appropriate, and to assess

2    whether or not a modification is appropriate.

3         I would also encourage Mr. Goldstein, if you do wish

4    to continue to pursue this issue, to continue to engage with the

5    government so that we can see if we can cobble together

6    conditions that might satisfy the Court, and the government, and

7    Mr. Goldstein's understandable concern, to make sure that he is

8    able to hire the counsel of his choice to represent him in this

9    matter, but based upon the current record and the arguments

10    today, I believe that the condition is appropriate, consistent

11    with the law, and necessary in order to ensure Mr. Goldstein's

12    reasonable appearance in this case.

13         And so I am going to deny the motion for review at

14    this time and sustain the order of Chief Magistrate

15    Judge Sullivan.  I will allow Mr. Goldstein to revisit the issue

16    sometime after he provides the financial information that's been

17    ordered by the Court and both the Court and Pretrial and the

18    government have had a chance look at it, so we have a better

19    idea of what's going on.

20         So at this time, the Court's order is to deny the

21    motion for review.  I'm going to do it without prejudice to

22    Mr. Goldstein, given that I think there's additional information

23    that we need, and I'm going to sustain the order of the

24    Magistrate Judge in this matter.

25         Are there any questions or comments regarding the

1    Court's ruling?  Of course, I will issue an order after we

2    adjourn today, and we'll put something in writing that will

3    probably go out early next week, given the holiday.

4            Any questions or concern from the United States about

5    the Court's ruling on this part of the case?

6            MR. KIBBE:  No, Your Honor, thank you.

7            THE COURT:  Anything from defense, or defense counsel?

8            MR. KRAVIS:  No questions or concerns, Your Honor.

9            We do appreciate the Court's denial without prejudice,

10   and I just want to assure the Court that we will do absolutely

11   everything in our power to make sure that the record regarding

12   Mr. Goldstein's financial situation is clear, both for Pretrial

13   Services and for this Court.

14           THE COURT:  Thank you very much, Counsel.  I think

15   that will be extremely helpful, and of course, the Court stands

16   ready to review that information and to reassess this issue if

17   appropriate.

18           I should have also addressed previous to my ruling on

19   this issue the motion to strike.  I'm going to deny the motion

20   to strike, because I do think this is a very important issue.

21   It was a time-sensitive issue, but the government's concerns

22   about the propriety of the filing were well noted and well

23   taken.  I think we are all aware of the local rules now, and I

24   don't think we'll have any concerns of this nature going

25   forward.  So for that reason, I'll deny the motion to strike.

1          I'm now happy to revisit this issue of limiting the

2    scope of forfeiture.  I'm going to share a few thoughts on that,

3    and then again, Counsel, if you wish to address the Court

4    further, you're welcome to do so.  I don't think this issue is

5    properly in front of me.  Number one, it's not part of the

6    motion for review, which is really the purpose of today's

7    hearing.  While it is an issue that I believe Mr. Goldstein can

8    raise, perhaps before sentencing, this is not the forum for it.

9          I think that number one, what should have happened in

10   this case was that we should have come together and set a

11   schedule for pretrial motions, which can include a motion on

12   this issue.  We had set a date for that scheduling conference

13   last week, and at the consent of the parties at that time, the

14   Court continued it.  But I would like us to have a holistic

15   approach this and other pretrial issues so that Mr. Goldstein is

16   fairly heard and the Court understands all issues that he wishes

17   to raise before I start ruling on things.

18         And so I am not going to preclude Mr. Goldstein from

19   pursuing the issue.  The government, of course, can continue to

20   argue about whether even some period before sentencing is

21   appropriate, I'm not ruling that it's not, but I am going to

22   allow Mr. Goldstein, if he wishes to, to file motions on this so

23   we can get in a little bit better order and we can address that

24   issue.

25         I'd like us to schedule, in the very near future, an

1    initial scheduling conference so that we can talk about a

2    schedule for this, and any other pretrial motions, and any other

3    issues that the parties wish the Court to address.  Based upon

4    the parties' submission I believe of last week, the indication

5    was, you were not ready to set the case for trial at that time,

6    and so I did not hold that initial scheduling conference, but

7    I'd like to revisit where we are, and if we need to have

8    pretrial motions, we'll set a schedule.

9              The Court will carefully review those motions, and

10   of course, I'll rule on those motions, but I'd like do it in an

11   orderly fashion so that we're addressing all issues,

12   particularly given some of the Sixth Amendment concerns that

13   Mr. Goldstein has raised; I want to make sure he's fully heard

14   and that the Court carefully considers them before ruling.

15             So my thought would be to deny, again, the motion to

16   limit scope of forfeiture, without prejudice to Mr. Goldstein to

17   raise the motion again once we have a schedule and of course

18   without prejudice to the government to continue to argue if they

19   believe it to be the case that the motion is premature.  I'll

20   look those issues more carefully, and then I can give, I think,

21   a more thoughtful ruling so we know the rules of the road going

22   forward.

23             If anyone wishes to be heard on the motion to limit

24   forfeiture further, I'm happy to hear.

25             Mr. Kravis, would you like address the Court?

1          MR. KRAVIS:  I'm sorry, may I have the Court's brief

2   indulgence?

3          THE COURT:  Of course; let's give them a little white

4   noise.

5      (Conference between Mr. Kravis and Defendant.)

6          MR. KRAVIS:  Thank you for the indulgence, Your Honor.

7          At this point, we have no objection to the motion

8   being denied without prejudice.  I believe the forfeiture motion

9   is tied up with the other motion regarding the Washington, D.C.

10  property.  I say that, of course, because once we have provided

11  a fuller picture of Mr. Goldstein's financial situation to the

12  Court in pretrial, if the Court is inclined to revisit its

13  ruling on the release condition issue, the security on the

14  property in D.C. versus South Carolina, the lis pendens that the

15  government has on the Washington, D.C. residence would block

16  Mr. Goldstein from selling that residence.

17         And so the two issues I think are bound up together,

18  and I think in light of the Court's decision to await further

19  clarity on Mr. Goldstein's finances with respect to the one

20  motion, we think that that is appropriate on this motion

21  as well.

22         THE COURT:  Okay.

23         MR. KRAVIS:  Thank you, Your Honor.

24         THE COURT:  Thank you very much, Mr. Kravis.

25         AUSA Kibbe.

```
1              MR. KIBBE:  Nothing further, Your Honor, thank you.
2              THE COURT:  Okay.
3         Counsel, I had identified some possible dates for us
4  to have an initial scheduling conference in this case, which
5  I think would be helpful.  I'm happy to throw them out.  If
6  they're not dates we can secure today, of course, you can reach
7  out to my Chambers.
8              I know that Mr. Goldstein is due to provide some
9  information by February 18th, as I recall.  I would have
10 availability the next day, February 19th, at 4:00 p.m.  This
11 could be a telephonic call just to set a schedule and see where
12 we are.  If that date and time does not work, the Court also has
13 availability the next Wednesday, February 26th, at 2:30 p.m.
14 Again, this could be telephonic.  Mr. Goldstein, you're welcome
15 to dial in as well.  But that would perhaps give us a chance to
16 see where we are and set a schedule if we need to, to address
17 these issues further, for a little better information,
18 particularly in terms of the information due in from
19 Mr. Goldstein on the 18th.
20             I don't know if Counsel wants to speak to any of those
21 dates right now.
22             Mr. Kravis?
23         (Conference between Mr. Kravis and Defendant.)
24             MR. KRAVIS:  Thank you, Your Honor.
25             The date on the 19th works for the defense, if it's
```

```
 1    convenient for the government.

 2              THE COURT:  AUSA Kibbe.

 3              MR. KIBBE:  That also works for the government,

 4    Your Honor, and I would note that previously, we submitted to

 5    have his joint status report prepared by March 3rd, and we can

 6    also use the call on February 19th in addition to that if the

 7    Court would like that.

 8              THE COURT:  Okay.  I think it would be helpful for us

 9    to come together next week and see where we are, and if we have

10    motions, let's get a schedule that we can all be comfortable

11    with and kind of move forward in an orderly fashion.

12              So I'm going to set an initial scheduling conference

13    for next Wednesday, February 19, at 4:00 p.m.  My Chambers will

14    contact counsel with the dial-in information, et cetera.

15    Mr. Goldstein, you are of course welcome to join that call if

16    you wish to do so, and we can see where we are, and if we need

17    to, we'll get a schedule in place so the case can move forward.

18              Is there anything else that we need to address before

19    we adjourn today from the perspective of the defense?

20              MR. KRAVIS:  Not from the defense.  Thank you

21    Your Honor.

22              THE COURT:  Anything further from the government?

23              MR. KIBBE:  No, Your Honor, thank you.

24              THE COURT:  Well, Counsel, I want to thank you so much

25    for your presence here today; helpful discussion.
```

```
1          I look forward to visiting with you next week to talk
2     about next steps in this case.  Mr. Goldstein, I also thank you
3     for your presence here today.
4          I believe we can stand adjourned.  I wish everyone a
5     very happy Valentine's Day and President's Day weekend.  Have a
6     good afternoon.
7          (All responding:  Thank you, Your Honor.)
8          THE COURTROOM DEPUTY:  All rise.  This Honorable Court
9     stands adjourned.
10         (The proceedings were adjourned at 2:57 p.m.)
11                        *     *     *
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2          I, Patricia Klepp, Registered Merit Reporter, in and for

3     the United States District Court for the District of Maryland,

4     do hereby certify, pursuant to 28 U.S.C. § 753, that the

5     foregoing is a true and correct transcript of the

6     stenographically-reported proceedings held in the above-entitled

7     matter and the transcript page format is in conformance with the

8     regulations of the Judicial Conference of the United States.

9                            Dated this 15th day of February, 2025.

10

11

                          _____/s/_____
12                        PATRICIA KLEPP, RMR
                          Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25
```