IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant | * | |
| | * | |

*******

**GOVERNMENT'S SUR-REPLY TO DEFENDANT'S
EMERGENCY MOTION TO COMPEL GRAND JURY TESTIMONY**

The United States of America respectfully requests that the Court deny both Defendant's Emergency Motion To Compel Production of Certain Grand Jury Testimony, ECF 88, and Defendant's request for sanctions in its Reply, ECF 97. The Emergency Motion, which Defendant now says is "effectively moot[]," ECF 97 at 4, should be denied as moot or denied on the merits because Defendant has not demonstrated that the Government's disclosure of presumptively secret grand jury testimony is warranted.

Defendant's request for sanctions, raised in his Reply, ECF 97, also should be denied. Defendant's Reply misconstrues the Government's statements through half-truths and outright falsehoods; these false claims provide no basis for sanctions. They distract from the issues and evidence relevant to the Emergency Motion and underlying Appeal of Amended Order Setting Conditions of Release, ECF 80. Nonetheless, because Defendant's central allegation is that the Government's purportedly mischaracterized a witness's grand jury testimony, the Government is submitting *in camera* the grand jury transcript, which will confirm that the Government has litigated this case candidly, responsibly, and in good faith. But this transcript should not be disclosed to Defendant, who has not made a strong showing of a particularized need for it.

**BACKGROUND**

On February 27, 2024, Defendant appealed Chief Magistrate Judge Sullivan's order that his electronic devices be monitored by Pretrial Services ("the Monitoring Condition"). ECF 81. Judge Sullivan's order was based in part on his finding that Defendant's "extensive past use of cryptocurrency . . . which he might use to flee from prosecution in this case." ECF 64 at 6. Of particular relevance to this dispute, Judge Sullivan found the Monitoring Condition necessary without relying on Defendant offering things of value, including cryptocurrency, to his former employee ("the witness") after the investigation became overt, and without addressing whether Defendant attempted to influence her cooperation with the investigation through those offers. ECF 64 at 5-6. On March 6, the Government filed an opposition to Defendant's appeal, arguing that his use of and access to cryptocurrency—including as just one example Defendant's offers of cryptocurrency to the witness—justified the Monitoring Condition. ECF 84. On March 10, Defendant filed the instant Emergency Motion, seeking to compel production of the witness's grand jury testimony. ECF 89. On March 14, the Government filed its Opposition. ECF 91. In his Reply, filed on March 18, Defendant stated the Emergency Motion was "effectively moot[]," but alleged misconduct by the Government and suggested that the Court address "whether sanctions against the government are warranted . . . for its lack of candor," ECF 97 at 3. On March 19, the Court directed the Government to file this Sur-Reply to the Emergency Motion. ECF 98.

**ARGUMENT**

I. **Grand Jury Testimony Sought By Defendant's Emergency Motion**

   A. **The Government is submitting the testimony for *in camera* review**

The Emergency Motion sought to compel production of grand jury testimony of the witness, whom Defendant repeatedly offered things of value, including cryptocurrency and a

2

$10,000 bonus, after learning of the Government's investigation. The Government once again stands by its argument that there was no credible explanation for Defendant's actions other than to attempt to prevent the witness from assisting in an ongoing criminal investigation, and that Defendant's actions are among the reasons to affirm the Monitoring Condition. To show that the Government made its proffers and arguments in good faith, and that sanctions are not warranted, the Government is submitting for *in camera* review the grand jury testimony of the witness, as well as the exhibits referenced in the testimony. For the Court's convenience, the Government has highlighted testimony relevant to the positions set forth in its Opposition. To be clear, the Government still strongly objects to any disclosure of the grand jury testimony to Defendant for the reasons stated in its Opposition and because Defendant should not be allowed to gain access to a secret grand jury transcript through bald assertions that the Government misled the Court.

### B.  The Government did not mislead the Court about the testimony

Defendant argues that the Government misled the Court by claiming "that obstruction was the only possible explanation" for Defendant offering things of value to the witness and by claiming his acts "only permitted that inference." ECF 97 at 4. This is false. Most obviously, it is false because *the Government never claimed it*. Rather, the Government asserted and maintains that the timeline and evidence show "that Defendant 'had no credible reason to make the offers other than to attempt to prevent the potential witness from assisting in the investigation.'" Opp. Appeal, ECF 84 at 17 (quoting Opp. Pro Se Mot., ECF 34 at 9); *see also* Opp. Emergency Mot., ECF 91 at 5. The Government has never said that the only *possible* inference was Defendant's intent to influence the witness's cooperation with the investigation; it has always maintained that this is the only *credible* inference—as explained at length in its previous briefing. *See* ECF 84 at

15-16 (detailing timeline); ECF 91 at 6-7 & n.1 (explaining Defendant's own letter contradicted his alleged need to retain the witness to respond to the investigation).

Defendant's further assertion—that the witness's testimony "is flatly inconsistent" with the Government's claim that this is the only credible interpretation, ECF 97 at 4, 7—is also untrue. First, the Government has never claimed that the witness knew Defendant's subjective intent, or that Defendant explicitly told the witness not to cooperate. Second, that Defendant (a highly sophisticated attorney) did not explicitly tell the witness not to cooperate does little to undermine the strong inference that he was attempting to influence her cooperation with the investigation when he repeatedly offered her payments, exclusively in person, after he had finished responding to subpoenas, after she had resigned, and after her replacement had started. *See* ECF 91 at 11. The Government is confident that *in camera* review will confirm it did not mislead the Court.

### C. The Government has complied with Rule 6(e)

The Government has complied and will continue to comply with Rule 6(e). Rule 6(e)(3)(A)(i) specifically provides that disclosure of a grand jury matter, other than the grand jury's deliberations or any grand juror's vote, may be made to "an attorney for the government for use in performing that attorney's duty." Fed. R. Crim. P. 6(e)(3)(A)(i); *see also United States v. Sells En'g, Inc.*, 463 U.S. 418, 428–29 (1983) ("[G]overnment attorneys are allowed into grand jury rooms, not for the general and multifarious purposes of the Department of Justice, but because both the grand jury's functions *and their own prosecutorial duties require it*." (emphasis added)). One of the duties of a prosecutor is to present the Court with information in Bail Reform Act hearings, which require a court to consider "the nature and circumstances of the offense charged," "the weight of the evidence against the person," their "history and characteristics," and the "nature and seriousness of the danger" posed by the person. 18 U.S.C. § 3142(g). As explained in the

Government's Opposition, ECF 91 at 4-7, it is appropriate and routine for the Government to proceed by proffer in the context of a Bail Reform Act dispute or hearing. *See United States v. Vane*, 117 F.4th 244, 252 (4th Cir. 2024). This information often comes from grand jury material, and is appropriately disclosed to the court for performance of the prosecutor's duties. *Cf. United States v. Manglitz,* 773 F.2d 1463, 1466 (4th Cir. 1985) (holding that Government's proffer of grand jury material during a Rule 11 hearing was appropriate as part of prosecutor's duty to inform the court of a factual basis to support the plea).

Under Defendant's interpretation of Rule 6(e), the Government could not offer such information at a detention hearing and, as a result, the Court could not consider it. This is an absurd outcome, especially because the Fourth Circuit has explicitly blessed proffering information in the context of Bail Reform Act hearings. *See Vane*, 117 F.4th at 252. For example, under Defendant's theory: if a witnesses testified to the grand jury that a defendant possessed a gun and threatened to kill the witness and her family, and the Government later that day arrested the defendant on a complaint, the Government could not argue for detention because that information came from the witness's grand jury testimony.

In any event, the Government's Opposition demonstrates that it has steadfastly guarded the secrecy of the grand jury testimony that Defendant seeks to review. The Government referenced the existence of "sworn testimony." ECF 52 at 8. However, the Government has not quoted grand jury testimony anywhere in its extensive briefing. Further, the Government's proffers concerning the witness are largely derived from contemporaneous evidence collected during the investigation and voluntary statements made to the Government outside the grand jury. Such voluntary statements to the Government are not protected by the plain language of Rule 6(e). *See, e.g.*, *In re Grand Jury Proc.*, 503 F. Supp. 2d 800, 808 (E.D. Va. 2007) (summarizing the Fourth Circuit's

narrow reading of Rule 6(e) and concluding interview reports from witness interviews were not subject to the Rule). The Government now discloses grand jury testimony to the Court *in camera* to defend against Defendant's accusations that the Government "mischaracterized" evidence, ECF 97 at 11, and should be sanctioned.

In sum, the Government has not violated Rule 6(e). If anything, Defendant is trying to illicitly circumvent Rule 6(e) to discover additional details of presumptively secret grand jury testimony of a witness who rebuffed his repeated offers of cryptocurrency and money under circumstances that demonstrate the lengths to which Defendant will go to conceal his crimes and wrongdoing from the Government.

## II. The Government Has Litigated This Case Responsibly And In Good Faith

Instead of addressing any of the merits of his request for the grand jury testimony, or responding to the legal authority cited by the Government, Defendant used his Reply to launch various baseless accusations at the Government. The vast majority of those arguments concern the Government's positions on Defendant's pretrial detention and conditions of release. They also largely rehash arguments Defendant already made to Judge Sullivan. Notably, in the face of such arguments from Defendant, Judge Sullivan stated on the record his view that the Government had proceeded in good faith, *see* ECF 73 at 23, and wrote that if the standard for pretrial detention was preponderance of the evidence (instead of clear and convincing evidence), then Defendant would still be detained for violating his conditions of release, ECF 64 at 5-6. However, because the Reply renews those same arguments and makes new ones, the Government will respond to them here.

### A. The Government did not withhold the transaction history of the 935B wallet

Defendant is completely wrong in asserting that the Government "withheld from the Magistrate Judge the full transaction history of the 935B wallet." ECF 97 at 10. To the contrary,

6

the Government presented the full transaction history *twice* during the Bail Reform Act litigation before Judge Sullivan, and *once more* before this Court. First, on February 9, 2025, the Government attached the transaction history of the 935B wallet to its *ex parte* motion to revoke Defendant's release. *See* ECF 40 (public, redacted version of filing from the day before), Ex. 1 (USDT transaction history of 935B wallet), Ex. 2 (USDC transaction history of 935B wallet). Second, on February 11, 2025, the Government attached the transaction history of the 935B wallet to its opposition to Defendant's motion to revoke the detention order. ECF 52, Ex. 6 (USDT transaction history of 935B wallet). When the Government learned that the 935B wallet conducted transfers while Defendant was detained, the Government advised Defendant about that activity and, at the hearing, offered a copy of those transfers to Judge Sullivan. ECF 73 at 20; *see* Opp. Appeal 4 n.1, ECF 84. Third, the Government also provided the full transaction history of the 935B wallet in briefing before this Court: on March 6, 2025, the Government again attached the transaction history of the 935B wallet to its opposition to Defendant's appeal of amended conditions of release, and explained that additional transactions occurred while Defendant was detained. *See* ECF 84 at 14 (discussing transaction history and recent new transactions); Ex. 13 (USDC transaction history of 935B wallet), Ex. 15 (USDT transaction history of 935B wallet).

That context proves Defendant's argument is demonstrably false. It is unclear how or why Defendant or his counsel would advance this argument in support of the request for sanctions. And as explained next, it is not the only unfounded argument in the Reply.

### B. The Government did not withhold messages between Defendant and the Seller

Another claim in the Reply that cannot withstand scrutiny is that the Government "withheld from the Magistrate Judge the full set of messages between Mr. Goldstein and the Seller."[1] ECF

---

[1] The Government previously identified this individual as "The Fixer" based on how that individual identified himself. However, Defendant invokes exchanges that he previously exhibited, *see*

7

97 at 10. The "full set of messages" spans more than four years and 950 pages, which contain innumerable conversations that were plainly irrelevant to analyzing the Bail Reform Act issues before Judge Sullivan. Instead of foisting such a voluminous document on Judge Sullivan, the Government appropriately excerpted passages that were relevant to the question at hand: whether Defendant had violated his conditions of release by engaging in undisclosed cryptocurrency transactions both before and after being charged. Notably, to the Government's knowledge, Defendant also has never submitted to Judge Sullivan or to this Court the full set of messages.

Instead, Defendant submitted and made arguments based on other messages between Defendant and "the Seller"[1] that were not referenced in the Government's submissions—but these exchanges underscore precisely why the Government inferred that Defendant owned the 935B wallet. When arranging the 500,000 USDC for the 935B wallet, Defendant repeatedly spoke in terms of "I": "*I* can definitely take $500k Crypto. But *I* have to structure it as a purchase. Like *I'm* going to have a record of buying it from him. Or from you. I need to do that bc *I'm* going to send it to Larry as his share of poker." *See* ECF 84, Ex. 9 at 1 (emphasis added). Later, the Seller wrote, "I have *your* coin." *Id.* at 5. Defendant provided the 935B address and the Seller then sent cryptocurrency twice, asking Defendant to confirm receipt each time—with Defendant responding "Received" in minutes. *Id.* This exchange strongly suggested that Defendant owned the 935B wallet.

This language stands in stark contrast to the language Defendant and the Seller used in other exchanges. For example, in the three messages that Defendant excerpted, Defendant and the Seller consistently spoke in terms of third-party recipients: "Can you update me on the crypto? *They asked*"; "Can you confirm *they got it* before I sent [sic] rest"; "Did *they [sic] person* get *their*

---

[1] Appeal Ex. B, ECF 81-2, in which Defendant anonymized this person as "the Seller," and the Government uses this pseudonym here for clarity.

8

*$5k?*"; "Lmk if *they have received it*"; "*He says* it wasn't received." *See* Appeal, ECF 81 at 15-16 (providing these quotes) (emphasis added); Appeal Ex. B, ECF 81-2 (providing full exchanges). To be sure, these show Defendant sometimes had cryptocurrency sent to others. More importantly, however, the exchanges speak explicitly about third-party recipients, unlike the exchange about the 935B wallet and unlike the exchange with the Seller about the B351 and 0524 wallets (which Defendant concedes he controlled at the time of the exchange), *see* ECF 84, Ex. 4 (B351 and 0524 wallet messages).

Thus, Defendant's language in these additional exchanges *reinforced* the Government's conclusion that Defendant exclusively owned the 935B wallet. The fact that the Seller transferred 500,000 USDC to the 935B wallet on May 5, 2023, and that wallet then transferred the same amount out to another wallet three days later, further supported the Government's reasonable inference at the time that Defendant owned the wallet, received 500,000 USDC into the wallet, and then transferred it to "Larry" three days later to pay him. *See* Opp. Appeal, ECF 84 at 11.

This evidence shows that, when the Government moved for detention, it did not commit misconduct by failing to provide additional evidence that *supported* its inference that he exclusively owned the 935B wallet. Rather, this evidence further demonstrates the Government acted in good faith when it made that inference.[2] The Government's excerpting of a voluminous document was reasonable and appropriate.

### C. The Government did not withhold messages from Defendant's phone

Defendant's argument that the Government "withheld from the Magistrate Judge messages from Mr. Goldstein's phone establishing that he did not own the wallets in question," ECF 97 at

---

[2] Similarly, the fact that Defendant had the Seller send cryptocurrency to wallets he owned (*e.g.*, the B351 and 0524 wallets) and to wallets he did not own did nothing to illuminate Defendant's relationship to the 54E3 wallet, which he and the Seller never discussed in the messages.

9

10, also fails to provide a basis for sanctions for multiple reasons. The most obvious reason is that the Government did not possess the messages when it filed its *ex parte* motion to revoke Defendant's release, so it could not have "withheld" them; Defendant did not produce the messages until after he was detained. Further, as the Reply acknowledges, the Government *did* provide the messages to Judge Sullivan, and did so even though Defendant proceeded *pro se* and now-current counsel had not yet even filed their motion to revoke detention. Having acknowledged the Government's transparency in providing the messages to Judge Sullivan, the Reply now reverts to suggesting the Government wrongfully "withh[eld] the defense explanation of the significance of the messages." EF 97 at 10. This ignores that Defendant was proceeding *pro se* at the time; that his current counsel were not representing him; that the messages themselves were short, opaque conversations with little context and largely anonymous individuals, some of whom are still unidentified; that the Government was still conducting its own review based on the newly provided information; and that it had already gone above and beyond by submitting the allegedly exculpatory messages to Judge Sullivan. These facts establish that the Government did not improperly withhold from Judge Sullivan the newly produced messages, and in fact, the opposite is true.

### D. The Government did not make misleading statements about Defendant's use of cryptocurrency wallets

Defendant's vague allusion to the Government making "a series of misleading statements to the Magistrate Judge about [Defendant's] 'use' of the wallets," ECF 97 at 11, similarly does not warrant sanctions. Given that Defendant had not disclosed to the Court or Pretrial Services *any* cryptocurrency assets or activity at that point, and in light of the flight risk already posed by Defendant, the Government reasonably filed its *ex parte* motion for detention rather than to wait for the very real possibility that Defendant was about to flee the District to avoid the serious felony

and other charges in the Indictment. This is yet another argument that Defendant made before Judge Sullivan in requesting that he be released from detention. Far from admonishing or sanctioning the Government for its submissions on this point, Judge Sullivan stated that the Government had acted in good faith, s*ee* ECF 73 at 2. Judge Sullivan also found "it likely that [Defendant] has access to funds that have yet to be identified, and which he might use to flee from prosecution in this case," ECF 64 at 6, and ordered additional, appropriate conditions of release (only one of which Defendant now appeals), ECF 64 at 5-6. Put simply, the Government did not mislead the Court and Judge Sullivan imposed the Monitoring Condition after considering Defendant's arguments and evidence.

### E. Defendant's attacks on the *ex parte* tolling orders are premature and unfounded

Defendant argues that sanctions are warranted because of "utterly false" representations in a declaration attached to one of the Government's *ex parte* tolling applications. ECF 97 at 15. This argument is premature and unfounded. It is premature because, as Defendant notes, this dispute will be raised in "a forthcoming pretrial motion." ECF 97 at 14. It is unfounded because Defendant asserts that three discrete inaccuracies in a declaration attached to a tolling application "went to the very essence of" the issue, and should "inform the Court's thinking" on whether to sanction the Government. ECF 97 at 14. The inaccuracies in the tolling application were unintentional, and, when it discovered the error, the Government *itself* promptly disclosed and corrected it in a subsequent, supplemental tolling application. *See* ECF 97, Ex. F at 2, n.1. Moreover, the Court granted that supplemental tolling application after being informed by the Government of the inaccuracies in the initial declaration—undermining any suggestion that the previous inaccuracies influenced the Court's decisions on the applications. The Government will fully address this issue in opposing Defendant's anticipated pretrial motion on this subject.

11

Regardless, the discrete errors in one of the *ex parte* tolling applications do not show a lack of candor. Rather, just the opposite, as the Government disclosed the errors to the Court and the Court granted a supplemental tolling application.

### F. Defendant's disagreement with the Indictment is a matter for trial

Defendant writes that the Government's Opposition "seriously misrepresents the facts" concerning his law firm's employment of four women with whom Defendant was involved in or pursuing personal relationships. ECF 97 at 12-13. Whether the full salary and health insurance premiums payments for these women were improperly deducted from the law firm's tax returns is a trial issue. By deriding the Government's citation to the Indictment rather than "actual evidence," ECF 97 at 12, Defendant ignores that the grand jury decided there was probable cause supporting the allegations in the Indictment. Defendant's mere disagreement with the Government's—and the grand jury's—allegations does not make them false or misleading.

Ultimately, Defendant disagrees with the inferences that the Government draws—about the necessity of the Monitoring Condition, about his messages regarding the 935B wallet, about his offers to the witness, and about his employment of the four women. Such disagreements are typical; suggesting sanctions based on them is not. Put differently, Defendant may point to various molehills of disagreement. But this Court need not make mountains out of them and need not be distracted from the actual issue at hand: the very real need to continue monitoring his devices.

### III. The Court Should Reject Defendant's Unfounded Attacks

As explained throughout this filing, Defendant has repeatedly, falsely accused the Government of misconduct. For example, Defendant's counsel incorrectly stated to Judge Sullivan that a meeting between Defendant and Pretrial Services never occurred, despite that it in fact did occur via videoconference. *See* Opp. Appeal, ECF 84 at 4 n.1 (detailing exchange in

which Judge Sullivan asked Pretrial Officer Smith, "So your position is that Mr. Goldstein's proffer to me was incorrect because you did have the meeting?" and he replied, "That is correct"). Defendant alleged that the Government concealed from Judge Sullivan activity involving one of the at-issue cryptocurrency wallets while Defendant was detained, despite the fact that the Government told this to Defendant and offered documentation of the activity to Judge Sullivan. *See id.* In the Reply, Defendant alleged the Government failed to provide the 935B wallet transaction history—when, in fact, the Government did so in three separate filings. Defendant also now ascribes ill intent to the Government for filing an ECF notice that inadvertently named the witness whose testimony is at issue—omitting that the Government immediately acknowledged, responded to, and rectified the issue, and that Defendant also has made innocent mistakes in electronic filings.[3]

Notwithstanding these unsupported attacks, the Government remains focused on addressing the relevant law and evidence to achieve a fair and orderly resolution of this case, and the instant appeal of the monitoring condition. *See U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 457 (4th Cir. 1993) (noting that "because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition"). Defendant has objected to the Government's proffers in the context of the Bail Reform Act disputes. The Government takes a different view and has supported its arguments with law and evidence. These matters should be resolved on the merits, and not Defendant's attacks on the Government.

---

[3] *See, e.g.*, ECF 99 (apologizing for erroneous redactions); ECF 59 (QC notice requesting corrective action regarding *pro hac vice* motion); ECF 53 (QC notice regarding incorrectly filed notice of appearance).

The Government respectfully suggests that Defendant's Emergency Motion and request for sanctions are best viewed through the prism of his repeated, demonstrably untrue accusations about the Government's conduct.[4]  Based on the record and evidence presented, the Government respectfully submits that the Defendant's request for sanctions should be denied.

### IV. The Monitoring Condition Should Be Affirmed

Finally, the Government disagrees that its Opposition "largely mooted [Defendant's] appeal of the Monitoring Condition." ECF 97 at 4-5. As explained in the Government's opposition to Defendant's appeal, ECF 84, the Court should affirm Judge Sullivan's order to require monitoring of Defendant's electronic devices by Pretrial Services.  Defendant's suggestion that the Government's Opposition "defends only a narrow monitoring of [his] actual use of cryptocurrency trading apps or websites," ECF 97 at 5, is inaccurate.  The amended conditions of release prohibit Defendant from engaging in cryptocurrency transactions, which Defendant does not dispute.  Judge Sullivan found that the appropriate way to ensure compliance with that condition under the Bail Reform Act is through Pretrial Services using monitoring software on Defendant's devices.  As Judge Sullivan explained, this involves a review of the applications on

---

[4] Defendant has described the Government's submissions as "false" or "misleading" at least 50 times in its briefs to Judge Sullivan and this Court.  As explained above, these attacks are wholly unsupported.  While the Government will not engage in the same tactics as Defendant and move for sanctions in its Sur-Reply, the Government respectfully requests that the Court take any appropriate action in the future should the defense continue its baseless attacks on the Government, rather than litigating the merits of this case. *See, e.g.*, *In re Liotti*, 667 F.3d 419, 422 n.4, 426–427, 431 (4th Cir. 2011) (publicly admonishing attorney in criminal appeal for, *inter alia*, "falsely accus[ing] the government of misleading the trial court and, when corrected, criticiz[ing] opposing counsel in a discourteous manner."); *Walker v. Tillerson*, No. 1:17-CV-732, 2018 WL 1187599, at *9 (M.D.N.C. Mar. 7, 2018), *aff'd sub nom. Walker v. Pompeo*, 735 F. App'x 69 (4th Cir. 2018) (warning attorney in civil case who filed sanctions motion that made "unfounded claims of 'false accusations' and 'blatant lies'" that if the attorney "persists in filing motions or other pleadings that are presented 'for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation,' Fed. R. Civ. P. 11(b)(1), he is the one who will be facing a sanctions motion, which the Court has the authority to initiate *sua sponte*.").

Defendant's devices that would allow him to engage in cryptocurrency transactions, and keywords and algorithms that the vendor uses to monitor any potential cryptocurrency transactions. *See* ECF 73 at 38–39. The Government's briefing in opposition to Defendant's appeal addresses the appropriateness of the Monitoring Condition. *See* ECF 84.

Nonetheless, the Government reiterates that Defendant's offers of things of value, including cryptocurrency, to the witness were not among the reasons why Judge Sullivan ordered the Monitoring Condition, and relatedly are not necessary for this Court to affirm Judge Sullivan's order. Even though the Government believes Defendant's offers are an additional reason to affirm Judge Sullivan's order, the order should be affirmed even if the Court disregards those facts. Further, Defendant's argument that the Monitoring Condition is overbroad, and that Pretrial Services should only monitor his use of certain apps or websites, overlooks the fact that Defendant can effectuate transfers of cryptocurrency not only through certain apps or websites, but also—as proven by messages produced and referenced by Defendant—by communicating with third parties and asking or directing them to move cryptocurrency on Defendant's behalf. Defendant's professed concern that such monitoring risks disclosure of privileged communications similarly overlooks that Pretrial Services can simply avoid reviewing communications between Defendant and his attorneys, as well as draft filings or submissions to the Court. The Monitoring Condition should be affirmed.

## **CONCLUSION**

For all the reasons stated above, the Government respectfully requests that the Court deny Defendant's Emergency Motion To Compel Production of Certain Grand Jury Testimony, ECF 89, and Defendant's request for sanctions in his Reply, ECF 97.

Respectfully submitted,

Kelly O. Hayes
United States Attorney
/s/ _____
Patrick D. Kibbe
Assistant United States Attorney
District of Maryland

Stanley J. Okula, Jr.
Senior Litigation Counsel
Department of Justice—Tax Division

Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division