**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | **CRIMINAL NO. LKG-25-6** |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

**DEFENDANT THOMAS C. GOLDSTEIN'S
<u>MOTION FOR BILL OF PARTICULARS</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1
LEGAL STANDARDS .......................................................................................................2
ARGUMENT.......................................................................................................................4
      A.    Gambling Income For 2016, 2019, and 2020 ...........................................5
      B.    Deductions for Employee Salaries and Health Insurance........................6
      C.    Tax Payment Dates ....................................................................................8
CONCLUSION....................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Spies v. United States*,
   317 U.S. 492 (1943)..................................................................................................8

*United States v. Anderson*,
   481 F.2d 685 (4th Cir. 1973) ....................................................................................2

*United States v. Barnes*,
   158 F.3d 662 (2d Cir. 1998).......................................................................................7

*United States v. Carb*,
   17 F.R.D. 242 (E.D.N.Y. 1954).................................................................................4

*United States v. Cuong Gia Le*,
   310 F. Supp. 2d 763 (E.D. Va. 2004) ........................................................................3

*United States v. DeGroote*,
   122 F.R.D. 131 (W.D.N.Y. 1988)..............................................................................4

*United States v. Feil*,
   No. CR 09-00863-1 JSW, 2010 WL 4055576 (N.D. Cal. Oct. 14, 2010) ................4

*United States v. Fletcher*,
   74 F.3d 49 (4th Cir. 1996) ........................................................................................3

*United States v. Goldstein*,
   56 F.R.D. 52 (D. Del. 1972) ............................................................................4, 6, 7

*United States v. Ingersoll*,
   No. 14-CR-20216, 2014 WL 5420222 (E.D. Mich. Oct. 22, 2014) .........................4

*United States v. Rosenfeld*,
   264 F. Supp. 760 (N.D. Ill. 1967) .............................................................................4

*United States v. Schembari*,
   484 F.2d 931 (4th Cir. 1973) .................................................................................3, 4

*United States v. Tucker*,
   686 F.2d 230 (5th Cir. 1982) ....................................................................................8

*United States v. Wharton*,
   No. ELH-13-0043, 2014 WL 1430387 (D. Md. Apr. 10, 2014)...............................3

*Williams v. United States*,
   164 F.2d 302 (5th Cir. 1947) ....................................................................................3

**FEDERAL STATUTES**

26 U.S.C. § 7201 ...........................................................................................................................7

26 U.S.C. § 7203 ........................................................................................................................2, 8

26 U.S.C. § 7206(2) ......................................................................................................................7

**RULES - OTHER**

Fed. R. Civ. Proc. 7(f) ...................................................................................................................2

**OTHER AUTHORITIES**

*IRS extends additional tax deadlines for individuals to May 17, IRS (Mar. 29, 2021),* https://www.irs.gov/newsroom/irs-extends-additional-tax-deadlines-for-individuals-to-may-17. ..........................................................................................8

*Tax Day now July 15: Treasury, IRS extend filing deadline and federal tax payments regardless of amount owed, IRS (Mar. 21, 2020),* https://www.irs.gov/newsroom/tax-day-now-july-15-treasury-irs-extend-filing-deadline-and-federal-tax-payments-regardless-of-amount-owed. ...................................8

**INTRODUCTION**

The Indictment in this case fails to provide adequate detail regarding several key allegations, without which defendant Thomas C. Goldstein is unable to understand the nature of the charges against him or adequately prepare for trial:

*First*, the Indictment repeatedly references large sums of alleged poker gambling income that Mr. Goldstein is supposed to have won over the course of three tax years (2016, 2019, and 2020) but did not report, *see* ECF No. 1, ¶¶ 36, 66, 69, though the government has failed to provide sufficient details about the alleged gambling income. Specifically, though the government alleges that Mr. Goldstein failed to report gambling winnings for each year, it has only provided the defense with certain alleged gambling *winnings* information, while providing him with no information about gambling *losses* and incomplete information about third parties who allegedly "staked" Mr. Goldstein's poker matches.[1]

*Second*, the Indictment alleges that Mr. Goldstein committed tax evasion because he hired four employees who did "little or no work" for his law firm. *Id*. ¶¶ 13, 24(j), 55. The government's theory is that because these employees did what the government argues is an insufficient quantum of work, the firm wrongly treated part of their salaries and health insurance premiums as business expenses, and that by deducting the full amount, Mr. Goldstein committed willful tax evasion. But nowhere in the Indictment does the government clarify what portion of their salaries and insurance premiums were correctly deducted and what portion were incorrectly deducted. If, as the government concedes, the employees did "little" work (however the

---

[1] As alleged in the Indictment, other poker players would "stake, or 'buy a piece of,'" Mr. Goldstein's matches. *Id*. ¶ 7. "[S]uch arrangements meant that the other poker players would receive an agreed-upon percentage of [Mr. Goldstein's] winnings if he won the match but pay that same percentage of [Mr. Goldstein's] losses if he lost." *Id*.

1

government defines that), then it must correspondingly concede that some portion of the firm's expenses associated with those employees was legitimately deducted. Yet Mr. Goldstein has been given no details about the government's calculations about inappropriate deductions.

*Third*, the Indictment charges Mr. Goldstein with five counts of willful failure to pay taxes in violation of 26 U.S.C. § 7203, Counts 15-19 (for tax years 2016, 2017, 2019, 2020, and 2021), but alleges that his "payment due date[s]" were simply the general tax filing deadlines, usually around April 15 of the following year. It is undisputed that Mr. Goldstein was on installment payment plans with the IRS; eventually, he paid his full tax liability for each year, *id.* ¶¶ 39, 50, 68, 74, 85. Mr. Goldstein therefore has been given no information about *when* the government alleges he should have paid the taxes that were due while he was on a payment plan.

Mr. Goldstein therefore respectfully requests that the Court order the government to produce a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) with sufficient information that would allow Mr. Goldstein to identify (i) the specific amounts of net gambling income (including both wins and losses) the Indictment alleges he underreported for 2016, 2019, and 2020; (ii) the specific amounts of employee salaries and health insurance premiums the Indictment alleges that he incorrectly deducted as business expenses; and (iii) the specific dates on which the Indictment alleges he should have paid his 2016, 2017, 2019, 2020, and 2021 tax bills.

## **LEGAL STANDARDS**

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to direct the Government to file a bill of particulars.[2] *See United States v. Anderson*, 481 F.2d 685, 690-91

---

[2] While Rule 7(f) originally contained a "for cause" requirement for bills of particular, that language was eliminated in 1966. As the Advisory Committee on Rules explained, "[t]he amendment to the first sentence eliminating the requirement of a showing of cause is designed to

2

(4th Cir. 1973). While the Court has discretion in ordering the government to produce a bill of particulars, there exists "no discretion to disregard the requirements of the Sixth Amendment that the accused shall be informed of the nature and cause of the accusations against him fully enough to enable him to prepare his defense." *Williams v. United States*, 164 F.2d 302, 304 (5th Cir. 1947) (finding reversible error for trial court to refuse the defendant's motion for a bill of particulars).

The Fourth Circuit has held that courts should grant a motion for a bill of particulars when the indictment is so general that it does not advise the defendant of the specific acts that he must defend against. *See United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996); *see also United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973) ("[T]he purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense."). Courts in this Circuit have held that a bill of particulars is permitted where an indictment "sets forth the offense elements and includes a brief statement of the facts and circumstances of the offense, but omits certain essential specifics of the offense." *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 773-74 (E.D. Va. 2004); *see also United States v. Wharton*, No. ELH-13-0043, 2014 WL 1430387, at *12 (D. Md. Apr. 10, 2014) ("Given the complexity and nature of the charges, and the extended period of time involved, I am persuaded to grant the defendants' request for a bill of particulars."). By providing the defendant with sufficient information about

---

encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Notes of Advisory Committee on Rules (1966 Amendment).

3

the nature of the charges against him, a bill of particulars also "avoid[s] needless work in preparing a defense." *United States v. Goldstein*, 56 F.R.D. 52, 54 (D. Del. 1972).

Courts have long recognized the need for bills of particulars in tax cases like this one because of "the difficulty of defending tax cases without the advantage of adequate particularized information regarding the offense." *United States v. Rosenfeld*, 264 F. Supp. 760, 762 (N.D. Ill. 1967); *see, e.g.*, *United States v. DeGroote*, 122 F.R.D. 131, 141 (W.D.N.Y. 1988). In particular, where an indictment alleges that a taxpayer has omitted information from a tax return, "the omissions should be identified with sufficient specificity to enable the defendant to prepare for the trial thereon." *United States v. Carb*, 17 F.R.D. 242, 243 (E.D.N.Y. 1954). And where the indictment alleges unreported or underreported income, "the Government will be required to supply [a defendant] with the date, amount, character and source of unreportable income which was allegedly received by the defendant[]." *Goldstein*, 56 F.R.D. at 56 (footnotes omitted); *see also United States v. Ingersoll*, No. 14-CR-20216, 2014 WL 5420222, at *6 (E.D. Mich. Oct. 22, 2014) (granting motion for bill of particulars and requiring the government to provide "the dates, amount, character and source of the income allegedly received but not reported"); *United States v. Feil*, No. CR 09-00863-1 JSW, 2010 WL 4055576, at *4 (N.D. Cal. Oct. 14, 2010) (same).

## **ARGUMENT**

As currently alleged, the Indictment lacks "sufficient information on the nature of the charge against [Mr. Goldstein] so that he may prepare for trial." *Schembari*, 484 F.2d at 934-35. Without further information in the form of a bill of particulars, Mr. Goldstein faces the "danger of surprise at trial" and fundamental injustice in his inability to properly prepare for trial. *Id.*

The Court should therefore order the Government to issue a bill of particulars covering the following topics.

### A. Gambling Income For 2016, 2019, and 2020

The Indictment alleges in cumulative terms that Mr. Goldstein received sums of gambling income across three tax years:

- For 2016, the government alleges that Mr. Goldstein's "gambling winnings were more than $17,500,000," and that his "net gambling winnings for 2016 were more than $5,000,000."  ECF No. 1, ¶ 36.

- For 2019, the government alleges that Mr. Goldstein "received approximately $359,000 in gambling income" which he failed to report.  *Id.* ¶ 66.

- Similarly, for 2020, the government alleges simply that Mr. Goldstein "received approximately $93,180 in gambling income" which he failed to report.  *Id.* ¶ 69.

Because these allegations provide few or no details about whom Mr. Goldstein is alleged to have won that gambling income from, when that income was allegedly received, or the specific amounts alleged to have been received, he repeatedly requested this information from the government following his indictment.  The government eventually produced to the defense a table including its allegations of raw poker wins and losses from 2016, 2019, and 2020, *see* Exhibit A, but as the government is aware, those raw transactions alone cannot be used to calculate his gambling income.  *First*, Exhibit A provides no information about transactions comprising Mr. Goldstein's gambling losses.  *Second*, Exhibit A provides insufficient information about third parties that allegedly "staked" Mr. Goldstein, *see supra* at 1 n.1.  While Exhibit A appears to provide the government's theories on "staking" payments made as a result of Mr. Goldstein's alleged poker wins in 2016, it provides no information about staking for other tax years.

Though the government has given no information to calculate the specific net gambling winnings it alleges Mr. Goldstein failed to report, on the basis of these nonspecific allegations

5

(among others), the government has charged Mr. Goldstein with willfully evading taxes for 2016 (Count 1) and willfully aiding and assisting in the preparation of false and fraudulent tax returns for 2016, 2019, and 2020 (Counts 5, 11, and 13).

Without more, the Indictment's allegations and the government's table at Exhibit A fail to provide Mr. Goldstein with sufficient information to understand the nature of the 2016, 2019, and 2020 charges against him. The transactions the government has identified at Exhibit A do not provide Mr. Goldstein with sufficient information to calculate the net gambling winnings the government alleges he should have reported as taxable income. *See, e.g.*, *Goldstein*, 56 F.R.D. at 56 (requiring the government to provide the defendant taxpayer with the specific "date, amount, character and source" of unreported income). Because of gambling losses and third-party staking, the transactions identified in Exhibit A do not directly translate into gambling income.

To calculate his alleged gambling income and therefore understand the nature of the felony charges against him, Mr. Goldstein needs information about gambling losses and poker staking. This information is purely factual and should be readily available to the government, and the Court should order the government to produce its calculations of Mr. Goldstein's net gambling winnings as a bill of particulars.

### B. Deductions for Employee Salaries and Health Insurance

The Indictment pursues the entirely novel theory that Mr. Goldstein is criminally liable for *under*-employing four employees with whom he is alleged to have had personal relationships. The government's theory is that because the four employees allegedly did "little or no work," ECF No. 1, ¶¶ 13, 24(j), 55, deductions Mr. Goldstein's firm took for their salaries and health insurance premiums were improper. And not only does the government allege that the deductions were improperly taken, they also allege that Mr. Goldstein *willfully* adopted this

scheme to evade taxes of around $15,000. On that basis (among others), the Indictment charges Mr. Goldstein with willful tax evasion in violation of 26 U.S.C. § 7201 for tax year 2018 (Count 3) and willfully aiding and assisting in the preparation of false and fraudulent tax returns for 2018 in violation of 26 U.S.C. § 7206(2) (Counts 9 and 10).

As discussed in Mr. Goldstein's concurrently filed motion to dismiss these provisions of the Indictment as being void for vagueness, this theory of criminal *under*employment liability fails to alert taxpayers to what conduct is forbidden. How much work does an employee have to do before they have "earned" their salary, thereby allowing their employer to deduct that salary as a proper business expense? As it relates to the present motion, the Indictment also suffers from a related defect: it fails to provide Mr. Goldstein with sufficient information to determine how much the government alleges was improperly deducted. The Indictment acknowledges the possibility that the four employees did *some* work (even if it was "little"). Accordingly, some portion of the four employees' salaries and premiums would have been appropriately deducted. But as alleged, the Indictment provides no such information to help Mr. Goldstein understand the nature of the charges against him, leaving him to guess about the government's theory of improper business deductions. Did G&R improperly deduct 50% of their salaries and insurance premiums? 25%? Or even 100%? *Cf. Goldstein*, 56 F.R.D. at 56 (requiring the government to provide the defendant with the specific sources and amounts of unreported income). Mr. Goldstein is entitled to this information, "even if the effect is disclosure of evidence or of [the prosecution's] theories." *See United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (citation and internal quotation marks omitted).

7

### C. Tax Payment Dates

Finally, the Indictment charges Mr. Goldstein with five counts of willful failure to pay taxes in violation of 26 U.S.C. § 7203 for tax years 2016, 2017, 2019, 2020, and 2021 (Counts 15-19). It is undisputed, however, that Mr. Goldstein was on installment payment plans with the IRS. And the Indictment acknowledges that for each of those years, Mr. Goldstein eventually paid the full taxes on his reported income. ECF No. 1, ¶¶ 39, 50, 68, 74, 85. The government's theory of criminal liability is, therefore, that notwithstanding his agreements with the IRS and his participation in an installment payment plan—through which he fully paid his tax liabilities along with any interest and penalties—he is criminally liable for failure to pay his taxes *quickly enough*. Given that prosecutions for failure to pay taxes are "rare," *United States v. Tucker*, 686 F.2d 230, 233 (5th Cir. 1982)—no doubt because of "our traditional aversion to imprisonment for debt," *Spies v. United States*, 317 U.S. 492, 498 (1943)—the government's theory of criminal liability here borders on the absurd.

In any event, the Indictment's allegations as to the Section 7203 charges suffer from a particularity problem as well. The Indictment provides no information about what amounts Mr. Goldstein was supposed to pay and when he was supposed to pay them. Instead, the Indictment merely lists the general tax filing date, usually around April 15,[3] as the "payment due dates." ECF No. 1, at 45. But this ignores, of course, that Mr. Goldstein had negotiated a separate series

---

[3] For two of the tax years, 2019 and 2020, the "payment due dates" listed are not on or around April 15. For tax year 2019, in light of the COVID-19 pandemic, the IRS extended the individual filing deadline to June 15, 2020. *See Tax Day now July 15: Treasury, IRS extend filing deadline and federal tax payments regardless of amount owed*, IRS (Mar. 21, 2020), https://www.irs.gov/newsroom/tax-day-now-july-15-treasury-irs-extend-filing-deadline-and-federal-tax-payments-regardless-of-amount-owed. Similarly, for tax year 2020, the IRS extended the individual filing deadline to May 17, 2021. *See IRS extends additional tax deadlines for individuals to May 17*, IRS (Mar. 29, 2021), https://www.irs.gov/newsroom/irs-extends-additional-tax-deadlines-for-individuals-to-may-17.

of agreements with the IRS regarding a payment plan. To understand the nature of the charges against him and prepare his defense, Mr. Goldstein is entitled to know when precisely the government alleges that Mr. Goldstein's payments should have been sent and in what amounts.

## CONCLUSION

For the foregoing reasons, Mr. Goldstein respectfully requests that the Court enter an order requiring the government to provide a bill of particulars identifying with specificity:

1. The specific amounts of net gambling income (including both wins and losses) the Indictment alleges he underreported for 2016, 2019, and 2020;

2. The specific amount of the four employees' salaries and insurance premiums that the government alleges were improperly deducted as business expenses; and

3. When Mr. Goldstein's tax payments should have been sent and in what amount.

                Respectfully submitted,

                */s/ Jonathan I. Kravis*
                Jonathan I. Kravis (Bar No. 31556)
                Stephany Reaves (Bar No. 19658)
                MUNGER, TOLLES & OLSON LLP
                601 Massachusetts Avenue NW, Suite 500E
                Washington, DC 20001
                (202) 220-1100
                Jonathan.Kravis@mto.com
                Stephany.Reaves@mto.com

                Adeel Mohammadi (pro hac vice)
                MUNGER, TOLLES & OLSON LLP
                350 S. Grand Avenue, 50th Floor
                Los Angeles, CA 90071
                (213) 683-9100
                Adeel.Mohammadi@mto.com

                *Attorneys for Defendant Thomas Goldstein*

Dated: May 16, 2025