IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ****** | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
ALLEGATIONS FOR FAILURE TO ALLEGE AFFIRMATIVE ACT**

The United States of America respectfully requests that the Court deny Defendant's Motion to Dismiss Allegations for Failure to Allege Affirmative Act, ECF 120. The Motion seeks dismissal of certain "affirmative acts of evasion" contained in Counts One through Four of the Indictment, which charge him with tax evasion for 2016-2018 and 2021 in violation of 26 U.S.C. § 7201. Defendant argues that two categories of affirmative acts of evasion—involving Defendant's personal use of Goldstein & Russell, P.C. ("G&R") funds and his diversion of G&R legal fees to pay personal gambling debts—do not meet the "legal standard for an affirmative act of tax evasion." ECF 120 at 2. In particular, although he does not contest that his use of G&R assets and diversion of G&R fees benefited him personally and resulted in an underreporting of his taxable income, Defendant maintains that certain allegations are infirm because other people were responsible for the accounting or tax reporting of those items. *Id.* at 3-6.

Defendant's attack on the affirmative act allegations fails for two principal reasons. First, Defendant's argument ignores the well-settled rule that legal and otherwise innocent acts can constitute affirmative acts of tax evasion, so long as the acts were undertaken with the requisite intent. Second, and relatedly, Defendant's argument ignores the equally well-settled rule that it is

for the jury to determine, as a matter of fact, whether the affirmative acts were undertaken, in whole or part, to conceal funds from or mislead the Internal Revenue Service ("IRS"). Resolving that issue is not proper in the pre-trial context; it should be reserved for the jury at trial. The Motion should be denied.

## I. Background

On January 16, 2025, a Greenbelt grand jury returned a 22-count indictment, charging Defendant with four counts of Tax Evasion, in violation of 26 U.S.C. § 7201 (Counts One through Four); ten counts of Aiding and Assisting the Preparation of False and Fraudulent Tax Returns, in violation of 26 U.S.C. § 7206(2) (Counts Five through Fourteen); five counts of Willful Failure to Pay Taxes, in violation of 26 U.S.C. § 7203 (Counts Fifteen through Nineteen); and three counts of False Statements on a Loan Application, in violation of 18 U.S.C. § 1014 (Counts Twenty through Twenty-two). *See generally* Indictment, ECF 1.

The four tax evasion counts cover tax years 2016, 2017, 2018, and 2021, and each count alleges that Defendant committed multiple "affirmative acts" to carry out his willful attempt to evade assessment of his income taxes. *Id.* at 38-40. Among the affirmative acts common to the tax evasion counts is the allegation that Defendant "us[ed] funds and assets of G&R to pay personal gambling debts." *Id.* With respect to Counts One, Two, and Four, the Indictment spells out how Defendant's personal use of G&R funds "caused" the transfer of those funds to be improperly characterized on the books and tax returns of G&R—resulting in Defendant's evasion of assessment of taxes. In particular, those allegations are as follows:

**Tax Year 2016**—During tax year 2016, Defendant engaged in a series of poker matches in which he lost millions of dollars. To pay some of those gambling debts, Defendant directed that four wire transfers, totaling $871,000, be sent from a G&R bank account to the winners of the

matches. Defendant also caused wire transfers in the amounts of $200,000 and $100,000 to be sent from a G&R account to pay a personal, poker-related debt owed by Defendant. *Id.* ¶ 31. The Indictment details how Defendant's use of the G&R funds—totaling $1,171,600—caused those funds to be mischaracterized on the G&R books and tax returns:

> When causing those four gambling debt payments and two promissory note payments totaling $1,171,600 to be sent from the G&R bank account, **GOLDSTEIN** failed to inform the G&R firm manager that the transfers were to satisfy his personal debts rather than those of G&R, resulting in those transfers being falsely classified as "Legal Fee[]" expenses of G&R. Moreover, despite having been provided by the firm manager in late December 2016 with a written, year-end summary spreadsheet of transfers from the G&R bank account that classified the six payments as "Legal Fees" paid by G&R, **GOLDSTEIN** did not inform the firm manager or the Accounting Firm that those six payments were to satisfy **GOLDSTEIN**'s personal debts. Consequently, **GOLDSTEIN** caused the $1,171,600 in payments to be falsely classified and deducted, for tax reporting purposes, as G&R expenses.
>
> While failing to inform the G&R firm manager that the payments totaling $1,171,600 were personal transactions, in December 2016 through January 2017, **GOLDSTEIN** drafted a ledger listing some of his gambling transactions in the 2016 tax year. To draft the ledger, **GOLDSTEIN** requested information from the G&R firm manager in or around late December 2016 about certain categories of payments made from G&R business and personal accounts, without explaining that the categories focused on gambling-related payments. In or around January 2017, **GOLDSTEIN** emailed the ledger, which reflected information on the year-end summary spreadsheet, to an encrypted, Switzerland-based email account bearing his own name, and later emailed an updated version of the ledger to his own G&R email account in or around October 2017. But **GOLDSTEIN** never emailed or otherwise provided the ledger to G&R's firm manager or the Accounting Firm.

*Id.* ¶¶ 32-33.

**Tax Year 2017**—To fund Defendant's poker matches with California Businessman-3 in 2017, Defendant convinced a New York law firm to "invest" in those matches. The New York law firm agreed to do so by sending $500,000 to an account owned by California Businessman-3 on or about March 6, 2017. When the law firm sought repayment from Defendant later in 2017, Defendant caused $175,000 to be sent from the G&R bank to partially repay that personal debt. In

doing so, Defendant caused the transfer of funds to be mischaracterized as a business expense, rather than a personal one, as follows:

> When directing that the $175,000 wire be sent, **GOLDSTEIN** did not disclose to the G&R firm manager that this transfer—which was between two law firms—was to satisfy **GOLDSTEIN**'s personal gambling-related debt and not a legal fee or other G&R business expense.

*Id.* ¶ 46.

**Tax Year 2019**—To repay a gambling debt owed by him personally during 2019, Defendant caused a $170,000 wire transfer to be sent from a G&R bank account to a California Movie Producer. In doing so, Defendant caused the transfer of funds to be mischaracterized as a business expense, rather than a personal one, as follows:

> **GOLDSTEIN** did not tell the G&R firm manager or the Accounting Firm that the $170,000 payment to the Producer was to satisfy **GOLDSTEIN**'s personal debt and thus was not a business expense of G&R. By causing the payment to the Producer to be sent from the G&R bank account, **GOLDSTEIN** caused the payment to be falsely categorized as a "Legal Fee[]" on the G&R books rather than a payment to satisfy **GOLDSTEIN**'s personal gambling debt.

*Id.* ¶ 63.

A similar set of allegations detail how Defendant's diversion, or personal use, of legal fees owed to G&R caused those fees to be omitted from G&R's books and records—resulting in Defendant's evasion of assessment of taxes. For 2017, Defendant directed that a nationally-known law firm on February 1, 2017 send to Defendant's personal account—rather than the G&R bank account—a $250,000 fee owed to G&R. That fee diversion directly helped Defendant's tax evasion because, although Defendant typically had the G&R office manager prepare invoices when seeking payment from that law firm, Defendant did not do so with respect to the $250,000 fee. Further, Defendant did not tell anyone at G&R, or its outside accounting firm, that he had directed the fee to his personal bank account (and that he used most of the funds, immediately after receipt, to pay

4

personal poker debts). *Id.* ¶¶ 41-42. Defendant engaged in strikingly similar conduct in 2018. *See id.* ¶¶ 51-52 (alleging that Defendant "reached an understanding" with the New York law firm in 2018 that in exchange for the law firm canceling of a $125,000 personal debt owed by Defendant, the law firm would get to "offset" a $125,000 legal fee it owed to G&R; and that Defendant never informed the G&R firm manager or the outside accounting firm of the offset agreement).

He did it again in 2021, when he and G&R earned a $500,000 legal fee from the Actor but Defendant instead directed the Actor to pay that $500,000 fee to California Businessman-3, to whom Defendant still owed millions of dollars for his poker debt. *Id.* ¶ 79. Despite having earned half a million dollars in legal fees from a famous actor, Defendant never told G&R's firm manager or the outside accounting firm about this income. *Id.* ¶ 80.

## II. Governing Legal Principles

### A. The Tax Evasion Statute and Scope of the "Affirmative Act" Element

The tax evasion statute, 26 U.S.C. § 7201, provides that "[a]ny person who willfully attempts *in any manner* to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ." *Id.* (emphasis added). To obtain a conviction under the statute, the Government must prove three elements: willfulness, a substantial tax deficiency, and an affirmative act constituting an attempted evasion of the tax. *Sansone v. United States*, 380 U.S. 343, 351 (1965); *Spies v. United States*, 317 U.S. 492 (1943); *United States v. Goodyear,* 649 F.2d 226, 227–228 (4th Cir. 1981); *United States v. Callanan*, 450 F.2d 145, 147 (4th Cir. 1971).

The Supreme Court has recognized that, as a result of Congress' decision not to "define or limit the methods by which a 'willful attempt to defeat and evade' might be accomplished," it would not "constrict the scope of the Congressional provision that it may be accomplished 'in any

manner'." *Spies*, 317 U.S. at 499. The *Spies* Court thus set forth a non-exclusive set of examples that would satisfy the affirmative act requirement, and specifically noted that an affirmative willful attempt:

> may be inferred from conduct such as keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, *handling of one's affairs to avoid making the records usual in transactions of the kind*, and any conduct, the likely effect of which would be to mislead or to conceal.

*Spies*, 317 U.S. at 499 (emphasis added). The Court emphasized that "[i]f the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." *Id*. Thus, an "affirmative act" is simply an act committed with an intent to evade taxes. *See id.*; *Sansone*, 380 U.S. at 351 (describing element as a "willful commission" or "affirmative commission").

Following *Spies*, courts have found the "affirmative act" element satisfied even where the act is an otherwise innocent or legal one—so long as it is done with an intent to mislead or conceal. *See United States v. Voigt*, 89 F.3d 1050, 1090 (3d Cir. 1996) (affirmative act element satisfied based on defendant's entry into confidentiality agreements, refusing to pay cash for jewelry when it would have caused reporting to the IRS, and use of overseas bank account); *United States v. Jungles*, 903 F.2d 468, 474 (7th Cir. 1990) (taxpayer's entry into an "independent contractor agreement," although a legal activity in and of itself, satisfied "affirmative act" element); *United States v. Thompson*, 518 F.3d 832, 854 (10th Cir. 2008) (domestic and foreign commission checks deposited in defendant's personal savings account); *United States v. Conley*, 826 F.2d 551, 556-57 (7th Cir. 1987) (use of nominees and cash with intent to evade payment of taxes).

In addition, courts have found the affirmative act element satisfied where a defendant's personal use of corporate funds or diversion of corporate receipts is accompanied by a failure to

alert bookkeepers or accountants of such acts. *See, e.g.*, *United States v. Kaatz*, 705 F.2d 1237, 1246 (10th Cir. 1983) (affirmative act element satisfied where defendants "handled their affairs so as to avoid making the records usual to the businesses which they operated, and they did not disclose to their accountant the receipts which they diverted"); *United States v. Samara*, 643 F.2d 701, 703 (10th Cir. 1981) (defendant diverted receipts and failed to inform outside accountants of checks cashed rather than deposited into corporate bank account); *United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir. 1977) ("[A] taxpayer cannot shift the responsibility for admitted deficiencies to the accountants who prepared his returns if the taxpayer withholds vital information from his accountants.") (quoting *United States v. Lisowski*, 504 F.2d 1268, 1272 (7th Cir. 1974)); *United States v. Scher*, 476 F.2d 319, 321 (7th Cir. 1973) (the fact that defendant "did not conceal his check cashing from his employees does not foreclose the conclusion that he was consciously reticent about telling his accountant about the practice"); *United States v. Garavaglia*, 566 F.2d 1056, 1060 (6th Cir. 1977) (explaining that a defendant cannot omit or conceal information from his tax preparer and then attempt to claim innocence by averring that he is absolved of liability because a professional prepared his tax return).

Finally, the law is clear that tax evasion cases "simply require that there be some evidence from which a jury could infer an intent to mislead or conceal beyond mere failure to pay assessed taxes; 'it is for the jury to determine, as a matter of fact, whether the affirmative act was undertaken, in part, to conceal funds from or mislead the government.'" *United States v. Hassebrock*, 663 F.3d 906, 918-19 (7th Cir. 2011) (quoting *United States v. King,* 126 F.3d 987, 993 (7th Cir.1997)); *United States v. Voigt,* 89 F.3d at 1090 (same); *United States v. McKee*, 506 F.3d 225, 234 (3d Cir. 2007) (same).

To summarize: if an otherwise innocent act is committed with any (even partial) intent to evade taxes, then it constitutes an affirmative act for the purposes of Section 7201. Moreover, whether the act was committed with this evasive intent is a question for the jury.

### III.    Argument

Measured against these principles, Defendant's attack on the affirmative acts of evasion is risible. His acts, which resulted in over $2 million dollars never being accurately counted on G&R's books and tax returns, are quintessential examples of conduct designed to conceal income from and mislead the IRS. Defendant's attempts to shift blame to his office managers and accountants fail because he did not provide any—let alone accurate—information about the purpose of the at-issue financial transactions or disclose that these transactions were not business expenses but personal ones. Moreover, the question of whether Defendant committed these acts with intent to mislead or conceal is a paradigmatic question for the jury—and not one for the Court to resolve in the context of a pretrial motion.

As an initial matter, Defendant does not contest that he *committed acts* by telling G&R's firm managers to use G&R funds to pay personal debts, and by telling third parties to pay funds to others that were due to G&R. Defendant also does not contest that *his* acts of using G&R funds to pay personal bills and *his* acts of directing the use of his personal bank account to receive G&R legal fees both resulted in his accountants mischaracterizing those amounts as business expenses.

In a bravura demonstration of chutzpah, however, he attempts to escape the consequences of his acts by shifting blame to others. For instance, Defendant's principal argument concerning the "mischaracterized" transactions—namely, that his directions regarding where the funds should be sent cannot constitute affirmative acts because Defendant was not involved in the ultimate classification of those transactions, ECF 120 at 3—ignores critical facts. First, Defendant knew

that his directions to the office managers to make the transfers would result in the use of G&R funds to pay his gambling-related debts. The office managers, after all, did not have access to Defendant's separate personal bank account for gambling ("Gambling Account") so, given the amounts involved, they could only have made the transfers from a G&R account. Indeed, all of Defendant's personal bank accounts combined, including his Gambling Account, often contained insufficient funds to cover the personal payments he instructed be sent from G&R, so the office managers generally *could not* have sent the funds directly from Defendant's personal accounts to his creditors.

Second, Defendant could have ensured that the transfers were treated as personal if he had simply directed that the transfers be sent initially to one of his personal accounts. That not only would have enabled Defendant to pay his gambling-related debts from his personal accounts; but it also would have ensured that his accountants knew that the transfers from G&R went first to Defendant personally and constituted income to him, not business expenses. Having chosen not to take that course and having failed to provide instructions to his office managers to treat the transfers as personal, Defendant was fully aware that the transfers using G&R funds would be (improperly) treated as business expenses rather than personal expenses or distributions.

Third and finally, Defendant's argument with respect to the six 2016 transfers, totaling $1,171,600, ignores the fact that he was *specifically informed* that these six transfers were categorized as business expenses of G&R. In December 2016, Defendant requested information from the G&R firm manager about certain categories of payments made from G&R's bank accounts. In response, the firm manager provided Defendant a year-end summary spreadsheet that classified all six transfers as "Legal Fees" paid by G&R. *Id.* ¶ 32-33. Defendant then used the information from that spreadsheet to create a personal ledger listing some of his gambling wins

and losses for the year. *Id.* ¶ 33. Despite requesting, seeing, and using that summary spreadsheet, Defendant, took no steps to correct the inaccurate categorizations. Instead, he kept the information to himself and effectively hid the true personal nature of those six transfers by sending the personal ledger to his encrypted, Swiss-based email account (but not to his office managers or accountants).

In sum, Defendant directed G&R's accountants prepare books and tax filings for the firm, and he knew that they characterized transfers from G&R's bank accounts as business expenses by default (based on the entirely reasonable assumption that payments made by G&R to third parties were business expenses unless labeled otherwise). Knowing this was the default characterization, Defendant directed firm managers to pay his personal debts with G&R funds but did not tell them or his accountants that the payments were personal expenses. Defendant's instructions to make the payments undisputedly constituted "acts." Defendant's decision to give these instructions while knowing the payments would inevitably be mischaracterized, and thus underreport his income, makes them an affirmative act of evasion.

Whether he explicitly directed the mischaracterization himself is irrelevant; all that matters is that he directed the payments while withholding critical information, and this had the likely—and actual—effect of misleading his accountants and the IRS about the true amount of his income. *See Spies*, 317 U.S. at 499 (stating that "handling of one's affairs to avoid making the records usual in transactions of the kind, and *any conduct*, the likely effect of which would be to mislead or conceal" both constitute affirmative acts of evasion (emphasis added)); *United States v. Goodyear*, 649 F.2d 226, 228 (4th Cir. 1981) ("[A] willful attempt may be inferred from any conduct having the likely effect of misleading or concealing.").[1]

---

[1] Defendant claims that "without the allegation that [Defendant] affirmatively instructed the office managers to mischaracterize the transactions, there is no 'affirmative act' of tax evasion." Mot. 7. However, this cannot be reconciled with *Spies*'s list of possible evasive acts, or the fact that failing to file income tax returns, when coupled with other evasive acts, constitutes tax evasion. *See, e.g.*,

By affirmatively using G&R funds to pay personal expenses while keeping his office managers and accountants in the dark about the true nature of the transactions, Defendant evaded assessment of his income taxes. This is a clear-cut affirmative act.

So, too, with respect to the fee diversions. As noted, Defendant typically sent invoices to the California law firm when seeking payment. But when he requested in February 2017 that the law firm send $250,000 to his personal account (the lion's share of which was used immediately for gambling-related payments), Defendant strayed from the regular practice of having an invoice prepared—resulting in $250,000 never hitting G&R's books or tax returns. As the Supreme Court recognized in *Spies*, refraining from "making the records usual in transactions of the kind" can constitute an affirmative act of evasion when done to conceal the initial receipt of the fee by directing it to a personal account. 317 U.S. at 499.

Defendant's contention that his diversion of fees cannot constitute affirmative acts because the payors were obligated to issue Forms 1099 reporting the payments is unconvincing for a number of reasons. First, it assumes—incorrectly, as it turns out—that all the payors were complying with the obligation to issue Forms 1099. Second, it assumes, dubiously, that the Forms 1099 sent to G&R were provided by Defendant to his accountants.[2] Third, it incorrectly assumes that an accountant would rely on the Forms 1099, when in truth the proper accounting (and tax reporting) method for a cash-based taxpayer like Defendant is to report the amounts flowing into and out of the law firm's coffers—not simply to tally whatever numbers happen to be

---

*Goodyear*, 649 F.2d at 227-28 (affirming tax evasion conviction where defendants failed to file tax returns and later made false statements). If Defendant were correct that an affirmative act requires the defendant himself mischaracterize income to the IRS, then anyone could avoid liability for tax evasion by simply not filing a tax return and thereby not mischaracterizing any income.

[2] For example, Defendant received a Form 1099 recording the $26,435,000 that he won from California Businessman-2 in 2016, but never gave this Form 1099 to his accountants.

11

listed on other parties' tax records. Indeed, accountants rely on bank statements and gross receipts precisely because a payor (like the Actor) might make a payment to a lawyer but not issue (or even know to issue) a Form 1099.

All of these assumptions are not only factually wrong, but also legally irrelevant. Even if other parties hypothetically could have tried to prevent Defendant from evading his taxes, that does not change the fact that Defendant affirmatively instructed third parties to divert payments with the intent to and knowledge that doing so would obscure his true taxable income. Defendant should not be allowed to dodge the consequences of the affirmative steps he took to evade taxes by complaining that his office managers or accountants failed to catch his crimes. After all, "'a taxpayer cannot shift the responsibility for admitted deficiencies to the accountants who prepared his returns if the taxpayer withholds vital information from his accountants . . . .'" *Pomponio*, 563 F.2d at 662 (citation omitted).

At base, Defendant is not disputing that he committed these acts, but rather that they cannot constitute "affirmative acts" because he did not commit them with the intent to evade taxes. His argument should be given short shrift because it ignores the fundamental precept that *the jury* must decide whether an act—even an innocent or innocuous one—was done with intent to mislead or conceal such that it constitutes an "affirmative act" of evasion under Section 7201. *Hassebrock*, 663 F.3d at 918–19; *Voigt,* 89 F.3d at 1090; *McKee*, 506 F.3d at 234.[3] Armed with knowledge of

---

[3] *United States v. Romano*, 938 F.2d 1569 (2d Cir. 1991), does not apply here for precisely this reason. There, the defendant attempted to transport cash into Canada and was sent back to the United States, where the IRS promptly seized all of it the same day, while "his tax year was still open and he had yet to owe anything to the IRS." *Id.* at 1573; *see id.* at 1570-71. Transporting the cash was not an affirmative act because he had no obligation to report it as income on the day that he transported it, so the Government did not prove his "intent to violate the law" (that he transported the cash with an intent to evade taxes). Similarly, the defendant's later failure to file a tax return did not suggest his other acts were done with evasive intent because his failure to file did not conceal any information from the IRS, which already knew the precise amount of his alleged income because it had seized the entire amount. *Id.* at 1573-74. The key fact was not that

12

Defendant's failure to timely pay his taxes, his false statements to his accountants, his failure to report millions of dollars of gambling income, and his extensive use of G&R funds for personal purposes over multiple tax years, a jury could easily—and quite properly—conclude that he committed the instant acts (namely, using and diverting G&R funds to pay personal debts) with the purpose to conceal.

## CONCLUSION

For all the reasons stated above, the Government respectfully requests that the Court deny Defendant's Motion to Dismiss Allegations for Failure to Allege Affirmative Act, ECF 120.

Respectfully submitted,

Kelly O. Hayes
United States Attorney
/s/_____
Patrick D. Kibbe
Assistant United States Attorney
District of Maryland

Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division

---

the defendant's act of transporting cash was innocent, but that the government failed to show that *any evasive intent motivated that act*. *See id.* at 1572-74.

Here, the core question is whether Defendant committed the acts with evasive intent—and that question is properly reserved for the jury.