IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNTS 15 THROUGH 19**

The United States of America respectfully requests that the Court deny Defendant's Motion to Dismiss Counts 15 Through 19 ("Motion"), ECF 126, which charge Defendant with willfully failing to timely pay his tax obligations for tax years 2016-2017 and 2019-2021, in violation of 26 U.S.C. § 7203. Although he does not dispute that he failed to comply with his clear legal duty to pay his taxes *on time*, Defendant argues that dismissal of the failure-to-pay counts is warranted because (1) he ultimately paid his tax obligations; (2) the failure-to-pay charges are unprecedented and constitute a "wildly overexpansive interpretation of Section 7203"; and (3) the allegations of willfulness contained in the Indictment are inadequate. ECF 126 at 2-4.

Defendant's attack on the failure-to-pay counts is meritless. First, Defendant's belated payment of his tax obligations does not negate willfulness for his failures-to-pay crimes. Those crimes, as the Supreme Court has made clear, were complete on the payment due dates that Defendant knew about and willfully ignored. Second, Defendant's claim that the Section 7203 charges are unprecedented is not only factually wrong but is also irrelevant. Examples of criminal failure-to-pay and failure-to-file charges abound, even in cases where defendants belatedly pay their taxes and file their returns. In any event, even if the failure-to-pay charges were truly

unprecedented and unique—and they are not—dismissal would still not be required because there is no statutory ambiguity with respect to the clear legal duty Defendant chose to violate. Third and finally, Defendant's challenge to the allegations of willfulness is unfounded because the Indictment clearly alleges willful violations of the failure-to-pay statute. Any challenge to the adequacy of the Government's proof of willfulness is properly reserved for trial and may not be decided on a motion to dismiss.

### I. Background

On January 16, 2025, a Greenbelt grand jury returned a 22-count indictment, charging the Defendant with four counts of Tax Evasion, in violation of 26 U.S.C. § 7201 (Counts One through Four); ten counts of Aiding and Assisting the Preparation of False and Fraudulent Tax Returns, in violation of 26 U.S.C. § 7206(2) (Counts Five through Fourteen); five counts of Willful Failure to Pay Taxes, in violation of 26 U.S.C. § 7203 (Counts Fifteen through Nineteen); and three counts of False Statements on a Loan Application, in violation of 18 U.S.C. § 1014 (Counts Twenty through Twenty-two). Indictment, ECF 1.

With respect to the failure-to-pay charges, the Indictment alleges the following specifics:

**Tax Year 2016**—Defendant's 2016 tax return was due on April 18, 2017, together with his income tax payment for 2016. Although Defendant filed an April 2017 extension to file until October 2017, he failed to pay, on the original tax return due date, the income taxes he owed, which totaled over $1.6 million. When Defendant filed his 2016 tax return on October 16, 2017, he again failed to pay the liability (over $1.6 million) he acknowledged on that tax return. It was not until 2019, after the IRS commenced collections proceedings, that Defendant agreed to pay his 2016 tax liability. Defendant finally paid the balance of his 2016 liability in 2021—almost four

2

years late—when the unpaid liability hampered his efforts to obtain financing for the purchase of a new home.[1] ECF 1 ¶¶ 37-39, 86, 95-96.

Defendant's failure to pay some or all of his tax liability for 2016 was not because of lack of funds or lack of knowledge that he was required to pay. Indeed, rather than pay any of his 2016 taxes between April and October 2017, Defendant spent over $2 million on luxury items, gambling debts, and other personal payments. As just a few examples, in 2017, Defendant spent $90,000 on a downpayment for a Bentley; almost $40,000 at a luxury hotel in Hong Kong; almost $30,000 chartering a yacht; and over $4,000 at a Las Vegas nightclub.[2] Moreover, Defendant specifically acknowledged his choice to spend money on gambling rather than pay his taxes when he acknowledged, in or around November 2016, to the legal representative of a creditor that, "I was going to use [hundreds of thousands of dollars in available funds] to pay my personal 2016 taxes, but I'm just paying penalties instead. That's fine, and it's my problem." ECF 1 ¶ 37.

**Tax Year 2017**—Defendant's 2017 tax return was due on April 17, 2018, together with his income tax payment for 2017. Although Defendant filed an April 2018 extension to file until October 2018, he failed to pay the income taxes he owed, which totaled approximately $1.037 million, on the original tax return due date. When Defendant filed his 2017 tax return on October

---

[1] Defendant's attempt to purchase a new home also precipitated Defendant's false statements on loan applications in violation of 18 U.S.C. § 1014, as charged in Counts Twenty through Twenty-Two. ECF 1 ¶¶ 86-100.

[2] Defendant's suggestion that his purchasing of a meal might run afoul of the statute (ECF 126 at 8) is risible. The proof at trial will show that, rather than timely pay his taxes, Defendant chose to use his available funds for gambling, discretionary vacations, financial support of intimate partners, and expensive cars and jewelry. Thus, contrary to his suggestion, Defendant was not faced with a choice of paying his taxes or paying for necessities to survive. In any event, the law is clear that taxpayers are required to arrange their financial affairs so they can timely meet their payment obligations. *See, e.g.*, *United States v. Tucker*, 686 F.2d 230, 233 (5th Cir. 1982) ("A taxpayer is obligated to conduct his financial affairs in such a way that he has cash available to satisfy his tax obligations on time.").

3

15, 2018, he again failed to pay the $1.037 million liability he acknowledged on that tax return. It was not until 2019, after the IRS consolidated its 2016 and 2017 collection activities, that Defendant agreed to pay his 2017 tax liability. Defendant finally paid the balance of his 2017 liability in 2021—almost three years late—so that he could obtain financing for the purchase of a new home. *Id.* ¶¶ 38; 49-50.

Defendant's failure to pay some or all of his tax liability for 2017 was not because of lack of funds or lack of knowledge that he was required to pay. Indeed, rather than pay any of his 2017 taxes between April and October 2018, Defendant spent hundreds of thousands of dollars on luxury items, gambling debts, and other personal payments. *Id*. ¶ 49. As just a few examples, in 2018, Defendant spent over $70,000 to lease an additional residence in Hermosa Beach, California; over $10,000 at an upscale country club in Chevy Chase, Maryland; and $14,000 to rent a recreational vehicle to attend Burning Man.[3]

**Tax Year 2019**—Defendant's 2019 tax return was due on July 15, 2020, together with his income tax payment for 2019. Although Defendant filed a July 2020 extension to file until October 2020, he failed to pay, on the original tax return due date, the income taxes he owed, which were over $500,000. When Defendant filed his 2019 tax return on October 15, 2020, he again failed to pay his more than $500,000 tax liability. It was not until 2021 that Defendant finally paid the balance of his 2020 liability. *Id.* ¶ 68.

Defendant's failure to pay some or all of his tax liability for 2019 was not because of lack of funds or lack of knowledge that he was required to pay. Indeed, rather than pay any of his 2019

---

[3] According to its website, Burning Man "is a global ecosystem of artists, makers, and community organizers who co-create art, events, and local initiatives around the world. Most recognizably, tens of thousands of Burners gather annually to build Black Rock City, a participative temporary metropolis in the Nevada desert." Available at https://burningman.org/about/ (last visited May 26, 2025).

4

taxes during 2020, Defendant used over $550,000 to fund gambling matches that he lost during 2020 and spent over $50,000 on luxury items and other personal payments between July and October 2020. *Id*. ¶ 68. As just a few examples, in 2020, Defendant spent $60,000 at a luxury car rental business; over $12,000 at a London nightclub; over $10,000 at a wine company; and over $4,000 at a luxury clothing and handbag store in Las Vegas.

**Tax Year 2020**—Defendant's 2020 tax return was due on May 17, 2021, together with his income tax payment for 2020. Although Defendant filed a May 2021 extension to file until October 2021, he failed to pay, on the original tax return due date, the income taxes he owed, which totaled approximately $945,000. When Defendant filed his 2020 tax return on October 15, 2021, he again failed to pay the $945,000 liability he acknowledged on that tax return. It was not until December 2022 that Defendant finally paid the balance of his 2020 liability. *Id*. ¶¶ 73-74.

Defendant's failure to pay some or all of his tax liability for 2020 was not because of lack of funds or lack of knowledge that he was required to pay. Indeed, rather than pay any of his 2020 taxes between April and October 2021, Defendant spent over $500,000 on luxury items and other personal payments between those months and used over $1 million to pay gambling debts during 2021. *Id*. ¶ 73. As just a few examples, in 2021, Defendant spent over $200,000 to lease an additional residence in Las Vegas; over $60,000 on private jet travel; almost $50,000 at a luxury hotel in Costa Rica; and almost $50,000 at a London nightclub.

**Tax Year 2021**—Defendant's 2021 tax return was due on April 18, 2022, together with his income tax payment for 2021. Defendant, however, failed to pay, on the original tax return due date, the income taxes he owed, which totaled over $1,139,000, and failed to make any estimated tax payments. *Id*. ¶ 84. Indeed, rather than pay any of his 2021 taxes between April and October 2022, Defendant spent over $800,000 on luxury items and other personal payments between those

5

months. *Id.* ¶ 85. As just a few examples, in 2022, Defendant spent approximately $380,000 to rent a luxury villa in Saint Barthélemy; over $200,000 to lease an additional residence in Manhattan Beach, California; almost $220,000 on luxury watches; and $60,000 at a New York City nightclub.

Based upon the foregoing allegations, the Indictment charged that Defendant "did willfully fail to pay the income tax due" on the due dates listed below, in the following approximate amounts for the tax years listed:

| COUNT | TAX YEAR | TAXABLE INCOME (Reported on Tax Return) | APPROXIMATE TAX DUE | PAYMENT DUE DATE |
|---|---|---|---|---|
| 15 | 2016 | $4,350,019 | $1,690,527 | 04/18/2017 |
| 16 | 2017 | $2,707,866 | $1,037,595 | 04/17/2018 |
| 17 | 2019 | $2,004,734 | $512,522 | 07/15/2020 |
| 18 | 2020 | $2,941,485 | $947,137 | 05/17/2021 |
| 19 | 2021 | $3,675,863 | $1,139,488 | 04/18/2022 |

ECF 1 at 45.

## II. Governing Legal Principles

### A. The Requirements to File Returns and Pay Taxes

The time within which taxpayers must file an income tax return is governed by 26 U.S.C. § 6072, which generally requires individual taxpayers to file on or before April 15 following the close of a tax year. 26 U.S.C. § 6072(a). Although individuals are permitted to seek and obtain an automatic extension of the time to file a return, 26 U.S.C. § 6081; 26 C.F.R. § 1.6081-4(a), the Code requires payment of tax obligations on the original due date for filing. *See* 26 U.S.C.

§ 6151(a) ("[W]hen a return of tax is required under this title or regulations, the person required to make such return . . . shall pay such tax at the time and place fixed for filing the return (*determined without regard to any extension of time for filing the return*)" (emphasis added)); 26 C.F.R. § 1.6081-4(c) ("An automatic extension of time for filing a return granted under paragraph a of this section will not extend the time for payment of any tax due on such return."). In other words, an extension of time to file an income tax return does not extend the time to pay taxes. *Ott v. United States*, 141 F.3d 1306, 1309 (9th Cir. 1998); J. Mertens, Law of Fed. Income Taxation § 49E:2 (2025) ("The general rule for the payment of taxes for which a return is required is that the tax must be paid at the time the return is due, without regard to any extension of time.").

The Supreme Court has emphasized the need for punctilious adherence by taxpayers to the statutory obligations to file timely returns and make timely payments, explaining that "[p]unctuality is important to the fiscal system." *Spies v. United States*, 317 U.S. 492, 496 (1943). Indeed, the *Spies* court warned that there "are sanctions to assure punctual as well as faithful performance of these duties," *id.*, including criminal sanctions for the "[w]illful failure to pay the tax when due." *Id*. at 497. Accordingly, the Supreme Court has observed that, if a taxpayer willfully fails to report his income (by not filing a return) or fails timely to pay his tax, the violation of Section 7203 is complete, irrespective of whether the taxpayer intends to comply with those duties at a later date. *Sansone v. United States*, 380 U.S. 343, 354 (1965) ("[T]he intent to report the income and pay the tax sometime in the future does not vitiate the willfulness required by [26 U.S.C. § 7203]."); *see also id.* at 351 (stating the § 7203 misdemeanor requires only "willfulness and the omission of the required act—here the payment of the tax when due").

Consistent with the Supreme Court's guidance in *Spies* and *Sansone*—namely, that Section 7203 requires payments on the tax due date and that an intent to pay taxes in the future does not

7

"vitiate" willfulness—courts have consistently excluded evidence of belated tax payments or tax filings made by those who violated the requirement to timely file or pay as not relevant. *E.g.*, *United States v. Ming,* 466 F.2d 1000, 1005 (7th Cir. 1972) ("[L]ate filing and late tax payment are immaterial on the issue of willfulness in a Section 7203 prosecution."); *see also United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) (finding belated tax payments irrelevant and observing that, if such payments were deemed admissible, "tax evaders could avoid criminal prosecution simply by paying up after being caught"); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) (same); *United States v. Wade*, 203 F. App'x 920, 929 (10th Cir. 2006) ("[W]e fail to see how the attempts to settle the tax debt after the charged offenses are relevant to his conduct beforehand."); *United States v Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014) (upholding preclusion of evidence concerning filing of amended tax returns and repayments to political campaign after learning of federal investigation); *United States v. Radtke*, 415 F.3d 826, 840 (8th Cir. 2005) (no abuse of discretion in excluding evidence that the defendant filed an amended tax return after being charged with willfully subscribing to a false tax return).

### B. Civil and Criminal Penalties

Congress has enacted a penalty regime to enforce the tax laws that includes both civil and criminal sanctions. The Supreme Court has made clear that the invocation of one form of sanction—either civil or criminal—"does not exclude resort to the other." *Spies*, 317 U.S. at 495. Accordingly, the fact that an IRS examination of a defendant's failure to pay taxes may begin as a civil matter does not preclude a subsequent criminal prosecution of a defendant for willfully failing to pay his taxes. *United States v. Curtis*, 781 F.3d 904, 906 (7th Cir. 2015) (defendant who willfully failed to file for certain years and entered into payment agreement for those years successfully prosecuted for willfully failing to pay for later years). Conversely, the existence of a criminal

prosecution for certain tax crimes, even an unsuccessful one, does not preclude subsequent civil enforcement. *Helvering v. Mitchell*, 303 U.S. 391, 397, 399 (1938) (prior acquittal for tax evasion does not preclude civil enforcement for same acts; "Congress may impose both a criminal and a civil sanction in respect to the same act or omission").  Finally, the fact that some or all of an outstanding civil tax liability has been collected by the IRS, or voluntarily paid by a taxpayer, does not preclude criminal prosecution. As this Court explained in *United States v. Ross*, 135 F. Supp. 842 (D. Md. 1955),

> No authority has been cited to the court holding that the discharge of a tax liability, whether by voluntary payment or forced collection, constitutes a bar to criminal liability. To the contrary, numerous cases have distinguished the civil and criminal sanctions of the Internal Revenue Code and have held that offers of compromise, the payment of heavy penalties and of the taxes due will not bar the United States from criminal prosecution.

*Id.* at 847.

### III.  Argument

Measured against the foregoing principles, Defendant's arguments for dismissal of the Section 7203 counts border on the frivolous. First, the governing statutes, regulations, and Supreme Court precedent show that Defendant's crimes were complete on the payment due dates that Defendant knew of and willfully ignored.  Second, Defendant's claim that Section 7203 charges are unprecedented is both incorrect and irrelevant.  Third, the indictment adequately alleges willful violations of the failure-to-pay statutes, and Defendant improperly seeks to present a jury issue in a motion to dismiss.

#### A. Defendant's Belated Tax Payments Do Not Negate Willfulness

As an initial matter, Defendant's principal contention—that the failure-to-pay charges are infirm because he eventually paid his taxes, ECF 126 at 3—fails for one simple reason: the governing statutes and regulations plainly and unambiguously require taxpayers to pay taxes and

9

file returns on the payment and filing due dates, *not* at some later date that a taxpayer belatedly chooses. *See* 26 U.S.C. § 7203 (requiring filing of returns "at the time or times required by law or regulations"); 26 U.S.C. § 6072 (requiring filing on April 15); 26 U.S.C. § 6151(a) (requiring payment of tax on due date for filing return, irrespective of extension); 26 C.F.R. 1.6151-1(a) (same). And if the plain words of the statutes and regulations were not enough, the Supreme Court's declarations in *Sansone* make this legal point clear:

> [Section] 7203 makes it a misdemeanor willfully to fail to perform a number of specified acts *at the time required by law*—the one here relevant being the failure to pay a tax *when due*. This misdemeanor requires only willfulness and the omission of the required act—here *the payment of the tax when due*.

380 U.S. at 351 (emphasis added). Accordingly, because the late payment of taxes or an intent to pay taxes in the future "does not vitiate the willfulness required by [Section] 7203," *id.*, the fact that Defendant ultimately paid his taxes does not mandate dismissal of the failure-to-pay charges.

Notably, in advancing his contention that Section 7203 charges are appropriate only when a taxpayer "altogether" fails to file returns or pay taxes, ECF 126 at 3, Defendant ignores the operative words of the governing statutes, Sections 7203, 6072(a), and 6151, which, when read together, require payment of taxes on the original tax return due date.[4] Defendant also fails to cite any case holding that a Section 7203 prosecution is viable only if the proof establishes that a defendant wholly fails to pay taxes or file a return. Defendant's failure in this regard is unsurprising, as the cases addressing the issue have held that late payment or late filing does not preclude a prosecution for failing to timely pay taxes or file returns.

---

[4] In his Motion, Defendant quotes portions of 26 U.S.C. § 7203, but misleadingly elides from that quotation the statutory language that is central to resolving his arguments—that is, the language commanding that tax return filings and tax payments must be made "at the time or times required by law or regulations." ECF 126 at 2 (representing that Section 7203 "provides that any person 'who willfully fails to pay [any] tax . . . shall . . . be guilty of a misdemeanor'").

10

Start with the Supreme Court. As noted, *Sansone* made clear that if a taxpayer willfully fails to report his income (by not filing a return) or fails timely to pay his tax, the violation of Section 7203 is complete on the date the filing or payment was due, irrespective of whether the taxpayer intends to comply with those duties at a later date. 380 U.S. at 354. Likewise, in *United States v. Houser*, 754 F.3d 1335 (11th Cir. 2014), the defendant argued that his failure-to-file conviction under Section 7203 was invalid because he ultimately filed his tax return, albeit three years late. In rejecting this argument, the Eleventh Circuit reasoned that "the sanctions set forth in § 7203 are designed 'to assure punctual as well as faithful performance of these duties.'" *Id.* at 1351 (quoting *Spies*, 317 U.S. at 496). The *Houser* court explained that "[t]he statute in question would be meaningless if a taxpayer could file beyond the required date and not be subject to legal sanctions." *Id.*; *see also United States v. Ming,* 466 F.2d at 1005 (holding that a "late filing and late tax payment are immaterial on the issue of willfulness in a Section 7203 prosecution").

Also, in *United States v. Greenlee,* 380 F. Supp. 652 (E.D. Pa. 1974), the defendant was charged with failing to timely file his 1971 tax return but argued that the late filing of that return—in December 1972—"negate[ed] the operation of [Section 7203]." In rejecting the defendant's argument, the Court reasoned that:

> Section 7203 specifically states that any person who willfully fails to make a return "at the time or times required by law" shall be guilty of a misdemeanor. Under the express terms of the statute, late filing constitutes a violation of the law and does not render the statute inoperative. The purpose of the statute is to insure punctuality and promptness in the performance of obligations under the various Federal tax laws.

*Id*. at 660-661 (citing *Spies*).

In sum, the plain words of the statute establish that Defendant violated Section 7203 by failing to pay his taxes when they were due. The cases interpreting the statute—most of which

11

Defendant fails to cite or discuss—make plain that, contrary to Defendant's claim, the late payments he made do not preclude his prosecution on the failure-to-pay counts.

The fact that Defendant made some payments pursuant to a payment agreement he reached with the IRS, *see* Mot., ECF 126 at 2, 4, years after his taxes were due, is irrelevant. As noted, the IRS's initial resort to civil remedies with respect to Defendant's unpaid taxes "does not exclude resort to" criminal charges. *Spies*, 317 U.S. at 495. Defendant has failed to cite to any case, or any provision of his IRS settlement agreement, that mandates dismissal of the failure-to-pay charges here—and for good reason: acceptance of Defendant's arguments would mean that he could use a civil payment agreement, struck before the IRS gathered the full measure of Defendant's willful conduct, as a get-out-of-jail-free card. *Cf. Houser*, 754 F.3d at 1351 (noting § 7203 "would be meaningless" if belated compliance could preclude prosecution). This is especially important given that Defendant promptly defaulted on that payment agreement when he chose not to timely pay his 2019 taxes.

### B. Defendant's Argument that the Failure to Pay Counts are Unprecedented is Incorrect and Irrelevant

Defendant's related claim—that the failure to pay counts are unprecedented and constitute an "overexpansive" interpretation of Section 7203—fails for multiple reasons. First, Defendant is wrong in contending that there is just "one reported case" holding that failure-to-pay or failure-to-file charges can be brought where a defendant makes late payments or files late returns. ECF 126 at 3 (citing *United States v. Freeman*, 2022 WL 1156325 (D. Conn. April 18, 2022)). In *United States v. Palermo*, 259 F.2d 872 (3d Cir. 1958), the Third Circuit squarely addressed the same argument advanced by Defendant here—that "Congress did not intend to make late payment of income tax, as distinguished from failure to pay, a criminal offense." 259 F.2d at 875. Despite the fact that the defendant in *Palermo* had belatedly satisfied his tax obligations prior to the inception

of a criminal investigation, the court rejected the attack on the validity of the criminal failure-to-pay charges, stating:

> Defendant's [argument] ignores the plain language of [§ 7203]. The statutes specifically state that the criminal penalties provided thereunder are "in addition to other penalties provided by law". Congress obviously intended to make failure to make timely payment of income tax a misdemeanor regardless of the civil remedies available to insure prompt collection and the other penalties applicable in cases of late payment.

*Id.* Other criminal failure-to-pay and failure-to-file prosecutions have been brought notwithstanding a defendant's belated payment of taxes or filing of returns. *See, e.g.*, *United States v. Biden*, 23-cr-599-MCS, 728 F. Supp. 3d 1054, 1106 (C.D.CA. 2024) (noting failure-to-pay charges contained in indictment); *Biden*, 23-cr-599-MCS, ECF 211 at 17 (excluding evidence of late tax payments, reasoning that "evidence of late payment here is irrelevant to Mr. Biden's state of mind at the time he allegedly committed the charged crimes"); *United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979) (upholding exclusion of evidence of late tax payments in failure-to-file prosecution); *United States v. Ross*, 626 F.2d at 81 (upholding, in failure-to-file prosecution, exclusion of evidence that defendant belatedly filed returns and offered to pay delinquent taxes). Accordingly, far from constituting an unprecedented use of § 7203, the garden-variety failure-to-pay charges against Defendant are consistent with § 7203 charges routinely brought in other cases.

Second, even if the charges here were truly unique and unprecedented, Defendant would still not be entitled to relief. As a matter of due process, "[i]t is immaterial that there is no litigated fact pattern precisely in point." *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 96 (2d Cir. 1983) (upholding tax convictions predicated on tax accounting related to sham inventory transaction). What is material is that that the criminal statute in question is sufficiently definite to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden[.]" *United States v. Harriss*, 347 U.S. 612, 617 (1954). Here, the governing statute and regulations

plainly put Defendant, a sophisticated attorney, on notice of what was forbidden—the late payment of tax obligations. Indeed, unlike the approach he has taken with respect to certain other allegations, *see* ECF 122, Defendant has not filed a motion to dismiss the failure-to-pay charges on vagueness grounds.  Nor could he: Defendant made clear that he understood this precise legal duty when he told a creditor's legal representative that, rather than pay his 2016 taxes with funds available to him, he would not do so and would "pay[] penalties instead," adding: "That's fine, and it's my problem." ECF 1 ¶ 37.[5]

Given the foregoing, Defendant's arguments predicated on the purportedly unprecedented nature of the charges are meritless. Defendant should be required to face the penalties that he recognized would flow from his choice not to timely pay his taxes.

### C. The Indictment Adequately Alleges Defendant's Willful Failure to Pay Taxes

Defendant's final argument—attacking the allegations of willfulness contained in the failure-to-pay counts, ECF 126 at 4—warrants little discussion. If that argument were truly based

---

[5] The statute does not impose a burden on the Government to prove that Defendant knew that that criminal prosecution (as opposed to civil sanctions or penalties) was a potential consequence of his intentional violation of his duty to timely pay his taxes. *See United States v. Rosenfield,* 469 F.2d 598, 601 & n.1 (3d Cir. 1972) (upholding jury instruction that "It is no defense that defendant was not aware of the criminal penalties for his failure to file"); *United States v. Quinn*, 566 F. App'x 659, 667 (10th Cir. 2014) ("We note, after carefully reading Quinn's arguments, she may be suffering under a mistaken belief as to the extent of the knowledge necessary for conviction. She repeatedly states she did not know she was engaging in 'criminal' conduct. Ignorance of a legal duty is a defense, but the fact the defendant 'was not aware of the criminal penalties' is not."); *United States v. Awand,* 467 F. App'x 609, 611 & n.11 (9th Cir. 2012) (upholding 7203 conviction and holding that, "It is not an essential element of the crime that a defendant know his actions can result in criminal sanctions*"*); *In re Complaint as to March Lawrence*, 31 P.3d 1078, 1082 (Or. 2001) (rejecting defendant's argument that his conduct did not violate the statute because "he did not know that his failure [to file a tax return when due] carried criminal consequences," concluding that "[s]uch a defense does not negate a finding of a willful failure to file a tax return at the time or times required by law."); *see also United States v. Wilson*, 214 F. Supp. 629, 630-31 (D. Del. 1963) ("willfulness" required to sustain convictions for failure to pay special wagering occupational tax established by showing defendant knew tax was owed, even without showing that defendant also knew failure to comply carried criminal, not merely civil, sanctions).

14

on a failure to adequately "allege" willfulness in the Indictment, then that argument should be swiftly rejected because Counts Fifteen through Nineteen of the Indictment (which contain the statutory allegations for all the failure-to-pay counts) plainly allege that the defendant "did willfully fail to pay the income tax due" on the payment due dates listed." ECF 1 at 45. Such allegations are all that is required to withstand a pre-trial motion to dismiss. *See United States v. Rendelman*, 641 F.3d 36, 43-44 (4th Cir. 2011) (indictment sufficient if it alleges an offense in the words of the statute, expressly setting forth the elements).

But Defendant's argument is not based on deficient allegations; rather, it is a disguised attack on the Government's proof, which of course is not the proper subject of a pretrial motion. Indeed, the law is clear that "[a] motion to dismiss is not a device for the summary trial of the evidence; it is addressed only to the facial validity of the indictment." *United States v. Eichman*, 756 F. Supp. 143, 145-46 (S.D.N.Y. 1991) (citing *United States v. Winer*, 323 F. Supp. 604, 605 (E.D. Pa. 1971)); *see also United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) ("[A] challenge to the sufficiency of the indictment . . . is ordinarily limited to the allegations contained in the indictment. . . . '[A] court may not dismiss an indictment [based] on a determination of facts that should have been developed at trial.'" (citation omitted)); *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment")*; United States v. Suarez*, No. 2:14-cr-119, 2015 WL 13049998, at *3 (E.D. Va. March 17, 2015) ("Simply put, it is ultimately the jury's duty to determine whether the Defendant had the requisite intent to commit the alleged crimes, based on all of the evidence admitted at trial."); *United States v. Shabbir*, 64 F.Supp.2d 479, 481 (D. Md. 1999) (court should not grant motion to dismiss where defendant's "legal contentions are inextricably bound up with the facts of the case"); *see generally Russell v. United States*, 369 U.S.

749, 791 (1962) ("There is no such thing as a motion for summary judgment in a criminal case.") (Harlan, J., dissenting).

Here, the sufficiency of the Government's proof with respect to the failure-to-pay counts will be established through various ways, including: Defendant's failure to pay for multiple years; his failure to report millions of dollars of income over six tax years; his educational background and legal and financial sophistication; his direct knowledge of his specific legal duty to timely pay his taxes; and his treatment of that legal duty as a trifle that he could simply opt out of, or address when it was most personally convenient or beneficial (for example, when he decided in 2021 to pay his overdue taxes so that he could obtain financing to buy a new home).  Contrary to Defendant's claim, the adequacy of the Government's willfulness proof is reserved for trial. Defendant's pre-trial motion attacking that proof should therefore be denied.

## CONCLUSION

For all the reasons stated above, the Government respectfully requests that the Court deny Defendant's Motion to Dismiss Counts 15 Through 19, ECF 126.

Respectfully submitted,

Kelly O. Hayes
United States Attorney
/s/_____
Patrick D. Kibbe
Assistant United States Attorney
District of Maryland

Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division