**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **v.** | *    **CRIMINAL NO.  LKG-25-6** |
| | * |
| **THOMAS CHE GOLDSTEIN,** | * |
| | * |
| **Defendant** | * |
| | * |

**\*\*\*\*\*\*\***

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**
**DISCLOSURE OF *BRADY* AND GRAND JURY MATERIALS**

The United States of America respectfully requests that the Court deny Defendant's Motion to Compel Disclosure of *Brady* and Grand Jury Materials, ECF 127.  The Government has gone above and beyond by producing almost 125,000 documents pursuant to Rule 16, summaries of potential *Brady* information for 33 witnesses, and full statements (including sworn testimony where available) for five additional witnesses.  The Government will continue to fulfill its obligations under Rule 16, *Brady*, and the Jencks Act.  Defendant grasps at straws, demanding the production of additional material "now" based on his speculation that there just might be something more, and invites the Court to contravene controlling precedent, breach Grand Jury secrecy, flout the Jencks Act, disregard the District of Maryland's Standing Order on Discovery, and ignore its own Pretrial Scheduling Order in this case.  Enough.  Defendant's motion to compel should be denied.

## BACKGROUND

The Government has complied with all discovery and *Brady* obligations and will continue to do so.  The Court need only look at the parties' discovery letters attached as exhibits to Defendant's motion to see Defendant's skewed presentation of the facts and wildly irrelevant

discovery requests. *See, e.g.*, Def. Ex. A at 10 (requesting "[d]ocuments sufficient to identify the resources spent by the government on this investigation, including salaries and travel").

To begin, the Government has produced almost 125,000 documents pursuant to Rule 16. These productions took place on February 14, 2025, February 28, 2025, April 30, 2025, and today (June 18, 2025).  The Government has and will continue to make rolling productions when it receives additional Rule 16 material.

In addition, the Government conducted a detailed review of all witness interviews and transcripts to identify any potential *Brady* information obtained during this four-year investigation. As a result of this comprehensive review, the Government disclosed summaries of potentially exculpatory information for 33 potential witnesses derived from interviews and testimony.  The Government also provided the entirety of prior statements, including sworn testimony where available, of an additional five potential witnesses, including four representatives of the accounting firm retained by Defendant and his law firm.  These disclosures were made in letters dated March 24, 2025 (Def. Exhibit D), April 4, 2025 (Def. Exhibit E), April 11, 2025 (Def. Exhibit F), and April 18, 2025 (Def. Exhibit H).  In addition, the Government separately responded to Defendant's discovery letters on March 17, 2025 (Def. Exhibit C), May 1, 2025 (Def. Exhibit J), May 8, 2025 (Def. Exhibit K), May 9, 2025 (Def. Exhibit L), and May 16, 2025 (Gov. Exhibit N)[1]. Notwithstanding that *Brady* is a "trial right," the Government worked in good faith to produce this information as quickly as possible, in order of the priorities identified by Defendant, and before Defendant's pretrial motions deadline.

---

[1] Government's Exhibit N is attached as an exhibit to this Opposition brief.  This discovery letter was sent on May 16, 2025, prior to Defendant filing his pretrial motions later that day.  The Government includes the letter here for the sake of completeness and has labeled this letter as Exhibit N to follow the chronology of the parties' other discovery letters.

Despite the Government's voluminous, detailed, and responsive disclosures, Defendant moves the Court to compel disclosure of Jencks material and Grand Jury transcripts based on his disagreement with the charges and pure speculation about what information he could possibly obtain. Defendant's demand is contrary to law and should be denied.

## DISCUSSION

### I.    Defendant Impermissibly Attempts to Use *Brady* to Engage in a Fishing Expedition

Defendant first attempts to squeeze his demand for interview memoranda and Grand Jury transcripts into the framework of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, but the Government has more than complied with its *Brady* obligations in this case.

"[U]nder *Brady* . . . the government is obligated to provide a defendant with any exculpatory evidence in its possession, including evidence that can be used to impeach government witnesses." *Rivera v. United States*, 494 F. Supp. 2d 383, 386-87 (E.D. Va. 2007) (citing *Brady*, 373 U.S. at 87). "Yet, 'the purpose of the *Brady* rule is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur.'" *Id.* at 387 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "Furthermore, while due process requires the government to provide the defendant with exculpatory evidence, it 'does not require the prosecution to disclose information in a specific form or manner.'" *Id.* (quoting *United States v. Wooten*, 377 F.3d 1134, 1143 (10th Cir. 2004)).

In *Rivera v. United States*, the Government disclosed to the defendant exculpatory information contained within certain documents, but did not disclose the documents themselves. 494 F. Supp. 2d 383, 387 (E.D. Va. 2007). The court ruled that withholding the documents did not violate *Brady* because the defendant "received the essential information contained in the documents." *Id.* ("[I]t is of no moment under *Brady* that he did not receive the specific

documents[.]").    Similarly, other courts have held that the Government satisfies *Brady* by disclosing summaries of exculpatory statements by potential witnesses. *See, e.g.*, *United States v. Collins*, 409 F. Supp. 3d 228, 244–45 (S.D.N.Y. 2019) (rejecting argument that "the Government is required to produce primary materials containing exculpatory statements in order to meet its *Brady* obligation"); *United States v. Blackley*, 986 F. Supp. 600, 604-605 (D.D.C. 1997) (*Brady* satisfied by disclosure of "summaries [that] fairly indicate the nature of the exculpatory testimony that [] each witness might offer").

Here, the Government's approach is appropriate and consistent with this "prevailing view" among federal courts. *See United States v. Berchtold*, No. 1:21-CR-39, 2024 WL 2834056, at *10-11 (W.D. Pa. June 3, 2024) (declining to extend *United States v. Park*, 319 F. Supp. 2d 1177, 1179 (D. Guam 2004)).  The Government has disclosed "the essential information" from potentially exculpatory prior statements of 33 different potential witnesses. *See Rivera*, 494 F. Supp. 2d at 387. The Government has gone further by providing the entirety of prior statements, including sworn testimony where available, of an additional five potential witnesses. Those individuals include four representatives of the accounting firm retained by Defendant and his law firm during the tax years at issue in the Indictment) whose statements were disclosed out of an abundance of caution and because of the unique relevance of accountants and tax preparers in tax cases.

Notwithstanding the production of this information, Defendant moves to compel the production of witness transcripts and interview reports.  ECF 127 at 5–7.  Defendant first attacks the charges returned by the Grand Jury, and those attacks are addressed separately in the Government's oppositions to Defendant's various motions to dismiss.  For purposes of this motion, Defendant compounds the errors of his flawed motions to dismiss by speculating that "based on the theories of liability charged in the Indictment, it is very likely that numerous witnesses made

exculpatory statements in interviews and in grand jury testimony." ECF 127 at 6. On that basis, Defendant seeks to compel interview memoranda and Grand Jury transcripts, despite that the Government has already produced summaries of any potential *Brady* information. *Id.* at 6–7.

The Supreme Court has made clear that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). The Fourth Circuit has repeatedly upheld this principle. *See, e.g.*, *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("We have often noted that *Brady* requests cannot be used as discovery devices."); *United States v. Wolf*, 860 F.3d 175, 192–93 (4th Cir. 2017) (same); *United States v. Woods*, 515 F. App'x 222, 223 (4th Cir. 2013) (same). Rather, to establish a *Brady* claim, the defendant must demonstrate three things: "'(1) the evidence at issue must be favorable to the defendant, whether directly exculpatory or of impeachment value; (2) it must have been suppressed by the state, whether willfully or inadvertently; and (3) it must be material.'" *United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 315–16 (4th Cir. 2000) (quoting *Spicer v. Roxbury Correctional Inst.*, 194 F.3d 547, 555 (4th Cir.1999)).

Here, Defendant is impermissibly attempting to use *Brady* as a discovery device. Defendant's demand for interview memoranda and Grand Jury transcripts—on top of the information already disclosed to Defendant—is, quite simply, a search for information. The character of Defendant's demand as a discovery request is apparent based on its speculative nature. As noted above, one of the requirements for a *Brady* claim is that the information is material. The Fourth Circuit and district courts within the Fourth Circuit have repeatedly rejected speculative requests for information submitted under the guise of *Brady* for failing to meet the materiality requirement.

For example, in *United States v. Wolf*, the Fourth Circuit affirmed the district court's decision to deny a *Brady* claim for the full set of files regarding a fraud investigation into one of the Government's trial witnesses. *United States v. Wolf*, 860 F.3d 175, 192–93 (4th Cir. 2017). In that case, the defendant was convicted of multiple counts stemming from a mortgage fraud conspiracy. *Id.* at 180. At trial, the defendant testified that he relied on the advice of an attorney named Dale Fussell. *Id.* at 185. In rebuttal, the Government called Fussell, who denied drafting particular documents or advising the defendant that his transactions were acceptable. *Id.* at 185–86. Approximately eight months after trial, the Government disclosed that two months after trial, a Grand Jury opened an investigation into Fussell, who served as a closing attorney for approximately 100 fraudulent short sale transactions. *Id.* at 188. The Government disclosed one short sale file to the defendant, but not the other 99. *Id.* The defendant moved to compel the other 99 files, arguing that there was good reason to believe that these other files may also contain material inconsistent with Fussell's trial testimony. *Id.* at 188, 193. The district court denied the request as an "attempt to engage in a wide-ranging fishing expedition post-trial." *Id.* at 193. The Fourth Circuit agreed and explained:

> Any argument that the evidence would have produced a different outcome was based on sheer speculation. As the district court pointed out, Wolf was trying to use *Brady* to engage in a post-trial fishing expedition for material evidence. "*Brady* requests cannot be used as discovery devices." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Id.* (internal quotation marks omitted).

*Id.* at 192–93 (4th Cir. 2017).

Defendant's request here is even more of a fishing expedition. The Government has already produced summaries of potential *Brady* information for witnesses in a comprehensive set of disclosures. Defendant's theory that there may be more, unspecified, exculpatory information

that has not already been disclosed is pure speculation. *Cf. United States v. Woods*, 515 F. App'x 222, 223 (4th Cir. 2013) ("Woods can only speculate as to what the requested information might reveal and thus cannot satisfy *Brady*'s requirements that the information be favorable to him and material to his guilt or punishment."); *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("Because Caro can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be "favorable to [the] accused.") (citing *Brady*, 373 U.S. at 87.); *Barnette v. United States*, No. 3:12CV327-V, 2014 WL 234817, at *8 (W.D.N.C. Jan. 22, 2014) (rejecting *Brady* claim for "all exculpatory material related to guilt or sentencing in the Government's possession, including anything in the files of federal law enforcement agencies that participated in the investigation of his case" because request was too speculative to satisfy *Brady*'s materiality requirement.)

In this case, the Government has already produced summaries of potentially exculpatory information. Defendant moves to compel complete witness interviews and Grand Jury transcripts, based on the speculation that they might contain exculpatory information or be helpful by providing additional context. *See* ECF 127 at 8–9. This is precisely the type of speculative request that the Fourth Circuit and district courts within it have repeatedly rejected. *See Woods*, 515 F. App'x at 223; *Caro*, 597 F.3d at 619; *Wolf*, 860 F.3d at 192–93; *Barnette*, 2014 WL 234817, at *8.

Defendant's own examples illustrate that his motion to compel is simply an improper fishing expedition.

Start with the first example cited by Defendant. ECF 127 at 8. Defendant is charged with failing to report as income the approximately $1,000,000 he brought in cash through Dulles International Airport on October 25, 2018. Related to this charge, the Government included in its March 24, 2025 letter the following potential *Brady* information: "In 2018, when Goldstein and

[Employee-4] went on a trip to Hong Kong, Goldstein brought back to the United States a large amount of cash, which he told [Employee-4] he was borrowing from a friend for taxes." Def. Exhibit D, Gov. March 24, 2025 letter at 1. In his motion to compel, Defendant complains that this disclosure does not include when he made this statement or additional details that would corroborate Employee-4's (referred to here as Woman-4) recollection. The Government, responding in good faith to Defendant's questions, pointed out the exact date and text message where Defendant made this statement to Woman-4 in the discovery that had been produced. *See* Def. Ex. J, Gov. May 1, 2025 letter at 3 ("[Y]our letter questions when Defendant told [Woman-4] that cash he brought to the United States was borrowed from a friend to pay taxes. Defendant's own text messages—which the Government produced and to which Defendant presumably has access regardless—show that he made the statement on October 16, 2018. PROD-USA-0175157 at -237."). Remarkably, Defendant persists in claiming that the Government has not adequately disclosed this material, including when the statement was made ("the letter does not disclose *when* Mr. Goldstein made this statement to Employee 4" ECF 127 at 8), despite that the Government literally highlighted this information for Defendant in a *Brady* letter and then pointed out the text message with Bates stamped location and date in which Defendant made the statement. Defendant's demand for all interview memoranda and Grand Jury transcripts based on this disclosure is not a credible *Brady* request. It is worse than fishing. It is trawling for information without even stopping to read the disclosures and discovery that the Government already provided.

Defendant's other examples fair no better. In its March 24, 2025 letter, the Government also disclosed information regarding Woman-3, including the following:

> Initially, [Woman-3] stated that while employed at G&R, she worked approximately 20 hours per week on average, and understood that she had to work an average of 20 hours per week to qualify for health insurance. [Woman-3] also

initially stated that there were instances when she would work 40 hours one week and 0 hours the next week.

After further review of documents that she produced—including text messages in which Goldstein told [Woman-3] "[n]ominally you may actually be full time. I'm not sure. But you can ignore that. My expectation will be 10 hours" (PROD-USA-0286638)—[Woman-3] stated that she understood that she was required to work 10 hours a week at G&R, and that she in fact worked 10 hours per week at G&R.

Defendant argues that this disclosure is inadequate because he wonders whether Woman-3 was "clarifying" or "retracting" her initial statement. ECF 127 at 9. Defendant also complains that this disclosure does not include a description of how Woman-3 reviewed the documents or the form of questions that the Government asked her. *Id.* But the Government has satisfied its *Brady* obligations by disclosing the essential information regarding Employee-3's statements about her schedule, including the variances in her statements, satisfying its *Brady* obligations. *See Rivera v. United States*, 494 F. Supp. 2d at 387; *United States v. Collins*, 409 F. Supp. 3d at 244–45; *United States v. Blackley*, 986 F. Supp. at 604-605. Not only are Defendant's questions about ancillary matters that have nothing to do with the substance of what Woman-3 said, Defendant makes absolutely no showing that his request for all interview memoranda and Grand Jury transcripts is anything but speculative as to the existence of any additional exculpatory information.

Finally, as part of his larger effort to point the finger at others for his willful tax crimes, Defendant argues that his clients should have issued Forms 1099 to his law firm, ECF 127 at 9, where Defendant diverted or offset payments owed to the firm to satisfy personal gambling debts. Notwithstanding Defendant's machinations with respect to the payments, and his independent obligation to properly classify the payments as income, out of an abundance of caution to produce any potential *Brady* information, the Government disclosed to Defendant that "[Law Firm 2] did not issue Forms 1099 early on to everyone. The firm started issuing Forms 1099 to everyone at the suggestion of their accounting firm." Def. Exhibit E, Gov. April 4, 2025 letter at 4. In his motion

to compel, Defendant generates questions he might like to ask Law Firm-2, such as when Law Firm-2 received this suggestion from their accounting firm, when Law Firm-2 started issuing Form 1099s, and to whom?  ECF 127 at 9.  Rather than ask Law Firm-2, Defendant speculates that the Government has this information, and that such information is material and exculpatory.  This is an impermissible use of *Brady* as a discovery device and falls far short of a plausible showing that specific exculpatory material exists that was not already disclosed in the Government's disclosures.

Defendant's civil interrogatory-style questions further illustrate why his examples, and broader demand for all interview memoranda and Grand Jury transcripts, are insufficient to compel interview memoranda and witness transcripts.  The Government disclosed summaries of potentially exculpatory information more than eight months before trial.  That matters because *Brady* is "a trial right," *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) (emphasis in original), thus rendering Defendant's current objections premature.  It also matters because the defense team has ample time to conduct—and may already have begun conducting—interviews of potential witnesses to determine if they can provide exculpatory evidence at trial.  "In situations such as this, where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) (denying *Brady* challenge to nondisclosure of prior statements by witness whom defendant "was free to question . . . in preparation for trial" and whom "it would have been natural for [defendant] to have interviewed").  The Government's disclosures are more than sufficient to enable the defense team—which comprises at least five capable attorneys from two different law firms—to gather and develop exculpatory evidence.  For all these reasons, Defendant's motion to compel interview memoranda and Grand Jury transcripts under the guise of *Brady* should be denied.

## II.    The Court Should Not Breach Grand Jury Secrecy

The Court should also reject Defendant's motion to compel Grand Jury transcripts, including legal instructions provided to the Grand Jury.  Defendant argues that he has a particularized need for the Grand Jury material based on (1) his supposition that the Grand Jury was improperly or inadequately instructed because of his disagreement with the Indictment returned by the Grand Jury; and (2) his desire to assess whether the prosecution asked questions about his personal relationships for the sole purpose of prejudicing the Grand Jury against him. *See* ECF 127 at 12–13; 15–16.[2]  Defendant's arguments rest on pure speculation and contradict controlling law.  Accordingly, Defendant has failed to carry his "heavy burden" of showing particularized and factually based grounds that irregularities in the Grand Jury create a basis for dismissal of the indictment.  *See United States v. Mosby*, No. 22-CR-00007-LKG, 2022 WL 4240835, at *6 (D. Md. Sept. 14, 2022).

The Supreme Court has made clear that the "proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979) (noting that the "Supreme Court has consistently recognized" this premise).  Indeed, "[s]ince the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye.  The rule of grand jury secrecy . . . is an integral part of our criminal justice system." *Id.* at 218 n.9.  This fundamental presumption of Grand Jury secrecy is now embodied in Rule 6(e) of the Federal Rules of Criminal Procedure.

---

[2] Defendant also moves to compel any summaries of testimony from a prior Grand Jury presented to the indicting Grand Jury.  *See* ECF 127 at 14–15.  Defendant asserts that the use of summaries "is particularly likely, and problematic, here."  *Id.* at 14.  Defendant's request for summaries should be denied, not only because it fails to meet the particularized need standard, but also because of the simple fact that the Government did not utilize summaries to present prior Grand Jury testimony to the indicting Grand Jury.  Defendant's speculation on this point is emblematic of Defendant's larger fishing expedition to compel *Brady* and Grand Jury material.

A party seeking disclosure of Grand Jury material under Rule 6(e) must make "a strong showing of particularized need" for the material sought. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983) ("[w]e have consistently construed [Rule 6(e)] . . . to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted"); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958); *Mosby*, 2022 WL 4240835, at *2.

As the Supreme Court explained in *Douglas Oil*:

> Parties seeking disclosure of grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

441 U.S. at 222.

And as this Court has explained, "'[A] defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" *Mosby*, 2022 WL 4240835, at *6 (quoting *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (internal quotation marks omitted)).

The presumption of secrecy applies equally to legal instructions given to the Grand Jury by the prosecutor, requiring that those seeking access to the legal instructions likewise demonstrate a particularized need for those portions of the transcripts. *See Mosby*, 2022 WL 4240835, at *6 (denying request for Grand Jury instructions for failing to meet the "particularized need" standard); *United States v. Johnson*, 1994 WL 805243, at *7 (W.D.N.Y. May 26, 1995) ("As with a request for a review of grand jury minutes, the secrecy of the grand jury will not be compromised by an

order to disclose grand jury instructions without a showing of 'particularized need.'"), *aff'd mem.*, 108 F.3d 1370 (2d Cir.1997); *United States v. Abounnajah*, 1991 WL 42895, at *2 (E.D.N.Y. Mar. 26, 1991) ("A defendant is not routinely entitled to grand jury testimony or instructions in order to engage in a fishing expedition in hopes of uncovering an impropriety or defect in the proceedings where he had no basis to conclude that such an impropriety or defect exists"); *United States v. Wallach*, 1988 WL 140832, at *1 (S.D.N.Y. Dec. 16, 1988) (denying defendants' motion for disclosure of legal instructions to Grand Jury because it was based on "speculation and conclusory allegations," and did not make out a showing of "particularized need"); *United States v. Keystone Automotive Plating Corp.*, 1984 WL 2946, at *7 (D.N.J. Jan. 9, 1984) (denying request for instructions to Grand Jury because of presumption of regularity in such proceedings and failure to show particularized need); *United States v. Graham Mortgage Corp.*, 564 F. Supp. 1239, 1246-47 (E.D. Mich. 1983) (same), *rev'd on other grounds*, 740 F.2d 414 (6th Cir. 1984); *United States v. Shoher*, 555 F. Supp. 346, 354-55 (S.D.N.Y. 1983) (denying request for disclosure of Grand Jury instructions because there was no showing of particularized need); *United States v. Hubbard*, 474 F. Supp. 64, 86 (D.D.C. 1979) (rejecting request for disclosure of prosecutors' opening and closing remarks to Grand Jury because "strong presumption of regularity in [such] proceedings," and failure to "raise[ ] any challenge which rebuts that presumption").

Some courts have even held that "'a defendant must support allegations of grand jury misconduct or abuse with affidavits or other proffered evidence' and that '[s]uch affidavits or other evidence should be of a particularity sufficient to support a finding that 'inherently suspect' procedures were used before the grand jury.'" *Loc Tien Nguyen*, 314 F. Supp. 2d at 616 (quoting *United States v. Shane*, 584 F. Supp. 364, 367 (E.D. Pa. 1984)). Similarly, a court should not

undertake an *in camera* review of a Grand Jury transcript if the defendant's motion relies on "mere unsupported pleadings." *United States v. Shane*, 584 F. Supp. at 367.

Separate and apart from the important statutory and common-law reasons prohibiting the disclosure of legal instructions given to the Grand Jury, such instructions are also not subject to disclosure because there is no requirement that detailed legal instructions (like those delivered to petit juries) be delivered to Grand Juries at all. *See United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("prosecutor is under no obligation to give the grand jury legal instructions"); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) (same); *United States v. Ko,* 1991 WL 183361, at *1 (S.D.N.Y. 1991) (same). Indeed, as one leading authority has noted, "[g]enerally, federal courts have deemed instructions sufficient if the prosecutor read the statutory language defining the offense." S. Beale, W. Bryson, J. Felman & M. Elston, Grand Jury Law & Practice § 9:10, at 9-59 (2005). Accordingly, "[c]hallenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face." *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir.1986) (rejecting an attack on an erroneous legal instruction that had been provided to the Grand Jury). *Accord United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989); *United States v. Welch*, 201 F.R.D. 521, 523 (D. Utah 2001); *United States v. Finn*, 919 F. Supp. 1305 (D. Minn. 1995).

"An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits," and challenges to an indictment based on the sufficiency of evidence contained therein are inappropriate. *Costello v. United States*, 350 U.S. 359, 363-64 (1956); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) (facially valid indictment not subject to challenge based on "the reliability or competence of the evidence presented to the grand jury"); *Lawn v. United States*, 355 U.S. 339, 349 (1958) ("this Court has

several times ruled that an indictment returned by a legally constituted non-biased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment").

In *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court expanded on its ruling in *Costello* and rejected a claim that Grand Jury proceedings could be scrutinized to assess the evidence presented by prosecutors. The Court reasoned:

> It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentations was "incomplete" or "misleading." Our words in *Costello* bear repeating: Review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trials requires [it]."

*Williams*, 504 U.S. at 54-55 (citations omitted). *See also United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986) ("Challenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face."); *United States v. Welch*, 201 F.R.D. 521, 525 (D. Utah 2001) (denying motion for *in camera* review because there was "no deficiency in the indictment"). Therefore, as long as the indictment correctly alleges all elements of the crime, a defendant cannot secure dismissal of the indictment for failure to properly instruct the jury. *See United States v. Vanderhorst*, 2 F. Supp. 3d 792, 797 (D.S.C. 2014); *see also United States v. Baver*, No. 2:21-CR-00520-JNP, 2023 WL 3022495, at *9 (D. Utah Apr. 20, 2023) ("Restated, even if the grand jury transcripts revealed that the prosecutor incorrectly described the elements of a Section 1014 violation, an incorrect description alone does not establish prosecutorial misconduct warranting dismissal.").

The foregoing principles warrant swift rejection of all of Defendants' claims regarding disclosure of the Grand Jury proceedings. Take Defendant's disagreements with the charges in the

Indictment. ECF 127 at 12–13. First, Defendant recycles the arguments he makes in his motion to dismiss the allegations regarding the salary and healthcare payments he deducted as ordinary and necessary business expenses for the women with whom he was having or pursuing intimate personal relationships. *Id.* at 12. But the Grand Jury returned an indictment that properly alleges the elements of Defendant's tax crimes, including for willfully evading his taxes in violation of 26 U.S.C. § 7201 and willfully failing to pay his taxes in violation of 26 U.S.C. § 7203. Accordingly, there is no basis to compel Grand Jury transcripts related to these charges based on speculation that the Government's presentation of evidence was incomplete or misleading. *See Williams*, 504 U.S. at 54-55 ("Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,][and] [n]either justice nor the concept of a fair trials requires [it].'") (quoting *Costello*, 350 U.S. at 364); *Mosby*, 2022 WL 4240835, at *6 (denying motion to obtain instructions on perjury charges after rejecting defendant's argument that the indictment alleged the incorrect legal standard).

Next, Defendant returns to what he sees as exculpatory evidence regarding alleged mistakes other law firms made in issuing Forms 1099, and argues that somehow this suggests the Grand Jury was improperly instructed. *Id.* at 13. Even if this information was exculpatory as to *Defendant's* willful tax crimes (a dubious claim), the Supreme Court has made clear that there is no obligation to present exculpatory information to the Grand Jury. *See Williams*, 504 U.S. at 52 ("[N]either in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented. . . . Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system.") (citations omitted). Moreover, Defendant merely assumes that testimony regarding the issuance and use of Forms 1099 was not presented to the Grand Jury in

16

the first place.  Either way, Defendant has not met his heavy burden of showing particularized and factually based grounds exist to support the proposition that irregularities in the Grand Jury proceedings may create a basis for dismissal of the indictment. *See Mosby*, 2022 WL 4240835, at *6.

Finally, Defendant argues that he always followed the tax laws and expected others to do the same, so the Government must have incorrectly instructed the Grand Jury on the elements of willfulness.  *Id.*  But the Grand Jury's facially valid indictment is enough to call for a trial on the merits.  *Costello*, 350 U.S. at 363-64; *Bank of Nova Scotia*, 487 U.S. at 261; *Lawn*, 355 U.S. at 349.  Accordingly, Defendant may present his arguments to the jury, but they do not provide a particularized and factual basis to breach Grand Jury secrecy.

To the extent that Defendant claims that the complexity of this case, or that it includes novel legal theories (which it does not), justifies breaching Grand Jury secrecy, the simple response is that no case has recognized such an exception, nor is one warranted.  The words of the Court in *United States v. Welch*, 201 F.R.D. 521 (D. Utah 2001), are fully applicable here:

> In this case, defendants' motion is speculative, general and does not show particularized need.  If inspection of grand jury instructions were granted in this case they would be subject to production on a mere desire framed as a claim that the indictment is complex or being challenged.  That is insufficient.  The indictment here is valid on its face.  Accordingly, defendants' request for dismissal of the Indictment or access to the grand jury transcripts should be rejected.

*Id.* at 523.

Defendant's separate demand for Grand Jury material to "assess the scope of any questioning" related to Defendant's personal relationships "and the extent to which the questioning prejudiced the grand jury," ECF 127 at 16, fails on its face to establish a factual basis of particularized need.  Here, Defendant does not even disguise the fact that he is simply searching for evidence of misconduct.  But Rule 6(e)(ii) is not "an invitation to engage in a fishing expedition

17

to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *Loc Tien Nguyen*, 314 F. Supp. 2d at 616.

To be clear, not only does Defendant fail to meet his burden to show a particularized and factual basis that the Government asked questions regarding his personal activities to prejudice Defendant, no such evidence exists.  To the contrary, the Grand Jury considered and returned an Indictment, which included a charge for willfully evading taxes in 2018 through various means, such as using his law firm to pay current or prospective intimate partners and deduct the payments as ordinary and necessary business expenses in violation of 26 U.S.C. § 7201.  ECF 1 at 39.  As discussed more fully in the Government's opposition to Defendant's motion to dismiss these allegations, evidence regarding Defendant's personal and financial arrangements with these women is central to the determination of whether Defendant's deductions of their full salaries and health insurance premiums were properly classified as ordinary and necessary business expenses. Likewise, evidence regarding Defendant's payments to or on behalf of these women, including luxury purchases and travel, is relevant to show Defendant was willfully failing to pay his taxes, in violation of 26 U.S.C. § 7203, and instead choosing to spend money on personal matters.  ECF 1 ¶¶ 37, 49, 68, 73, 84.  Thus, evidence regarding Defendant's personal relationships was squarely and properly before the Grand Jury.  Moreover, the Grand Jury was entitled to investigate these and other potential charges, even if a particular charge was not ultimately returned.  As the Supreme Court has explained:

> "Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury 'can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not.'" *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–643 (1950)). It need not identify the offender it suspects, or even "the precise nature of the offense" it is investigating. *Blair v. United States*, 250 U.S. 273, 282 (1919).

*Williams*, 504 U.S. at 48 (alterations in original). *See also Mosby*, 2022 WL 1120073, at *8 (recognizing the "broad discretion afforded to prosecutors in investigating any criminal matter.").

The cases cited by Defendant do not support breaching Grand Jury secrecy in this case. In *United States v. Stevens*, a "brief excerpt" from the Grand Jury proceedings was disclosed to the defendant after *in camera* review when a specific legal instruction about the advice of counsel defense had been identified as potentially erroneous. 771 F. Supp. 2d 556, 564-65 (D. Md. 2011). Similarly, in *United States v. Way*, the district court ordered limited production of Grand Jury transcripts regarding the legal instructions on specific elements of particular counts, given an intervening change in the law by the Supreme Court. No. 114CR00101DADBAM, 2015 WL 8780540, at *4, *7 (E.D. Cal. Dec. 15, 2015). By contrast, here there is no particularized and factual based issue regarding an incorrect legal instruction or change in law. Rather, Defendant broadly attacks the charges in the Indictment and speculates, based on his disagreement with the charges, that "transcripts of the grand jury instructions are likely to demonstrate that the government misstated the law." ECF 127 at 14. Such speculation is insufficient to warrant the disclosure of Grand Jury transcripts.

*United States v. Naegele* was "one of those exceedingly rare cases where the defendant has been able to make a factually based showing of particularized need for the production and inspection of grand jury materials under Rule 6(e)(3)(E)(ii)." 474 F. Supp. 2d 9, 11 (D.D.C. 2007). In that case, five of eleven counts alleging violations of 18 U.S.C. § 152(3) (knowingly and fraudulently making a false statement in a bankruptcy proceeding) and 18 U.S.C. § 157 (bankruptcy fraud) were based on a Statement of Financial Affairs; however the evidence showed that the Government did not actually have a signed signature page for the Statement of Financial Affairs but suggested to the Grand Jury that it did. *Id.* In addition, the Court doubted that the

Government would be able to prove that the signature page was ever even filed with the Bankruptcy Court. *Id.* In other words, the defendant in *Naegele* presented a particularized factual basis—the Government presented charges based on a signed document they did not have but said they did—to warrant disclosure of Grand Jury transcripts. By contrast, Defendant's allegations here are mere disagreements with the charges or speculation as to what may have been presented—that is, the type of allegation that the *Naegele* court explained was insufficient. *See Id.* at 10 ("It is also settled that conclusory or speculative allegations of misconduct do not meet the particularized need standard; a factual basis is required.").

In *United States v. Kilpatrick*, 575 F. Supp. 325 (D. Colo. 1983), the district court authored a lengthy and colorful opinion about a litany of issues that allegedly occurred during the Grand Jury proceedings, including, *inter alia*, (1) the prosecutor administering oaths to witnesses (*id.* at 328); (2) the prosecutor telling the grand jurors that IRS agents were agents of the Grand Jury (*id.* at 329); (3) the prosecutor imposing secrecy obligations on witnesses (*id.* at 332); and (4) the prosecutor intimidating a witness by telling them that their testimony disgraces them (*id.* at 333). This case does not present any of the issues examined in *Kilpatrick*.

Finally, in *United States v. Mahoney*, the district court ordered disclosure of Grand Jury transcripts based on a question as to the accuracy of summaries provided by the prosecutor to a second Grand Jury. 495 F. Supp. 1270, 1273-77 (E.D. Pa. 1980). As explained above, *supra* note 2, here the Government did not use summaries to present the testimony given to a prior Grand Jury to the indicting Grand Jury. Therefore, the issue in *Mahoney* is inapplicable. What is relevant, however, is *Mahoney*'s admonition that "mere speculation that there was . . . prosecutorial abuse in the grand jury proceedings is not enough to justify disclosure," and "grand jury deliberation

should not be opened solely for discovery purposes." *Id*. at 1273. That is precisely what Defendant invites the Court to do here.

In sum, Defendant's motion falls far short of the requisite particularity to justify any inquiry into the Grand Jury proceedings. *See, e.g.*, *United States v. Wilson*, 565 F. Supp. 1416, 1436 (S.D.N.Y. 1983) ("Speculation and surmise as to what occurred before the grand jury is not a substitute for fact . . . Counsel's unsupported view that abuses may have occurred in . . . the grand jury system is insufficient to overcome the presumption of regularity of the grand jury proceedings and does not justify disturbing the traditional secrecy surrounding such proceedings"); *Williams*, 504 U.S. at 54-55 (no basis to scrutinize adequacy of prosecutor's presentation on the ground it was "inadequate" or "misleading").

### III. The Court Should Deny Defendant's Attempt to Circumvent the Jencks Act and this Court's Orders

What is left of Defendant's motion is a thinly veiled demand to compel early production of Jencks material. Defendant's demand for witness transcripts "now," ECF 127 at 16, ignores controlling Fourth Circuit precedent, the District of Maryland's Standing Order on Discovery, and this Court's own Pretrial Scheduling Order—all of which the Government will comply with. Defendant's motion to compel prospective Jencks material at this juncture should be denied.

The Jencks Act provides that the disclosure of a Government witness's statements shall not be made until *after* the witness testifies on direct examination:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. 3500(a). *See also United States v. Boyd*, 53 F.3d 631, 633–34 (4th Cir. 1995) ("The Jencks Act provides that after a witness for the government has testified on direct examination in

a criminal case, the government must 'produce any statement (as hereinafter defined) of the witness in the possession of the United States which *relates to the subject matter as to which the witness has testified*.'") (quoting 18 U.S.C. § 3500(b)) (emphasis in *Boyd*); *United States v. Snow*, 537 F.2d 1166, 1168 (4th Cir. 1976) (Jencks Act only applies to an "existing prior statement of a government witness concerning matters covered by direct examination").

Indeed, as the Fourth Circuit has explicitly stated, "The district court may not require the government to produce Jencks Act material relating to one of its witnesses until *after* the witness has testified." *United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994) (emphasis in original). Rather, the Government may choose to "voluntarily disclos[e]" Jencks material prior to trial, a practice that the Fourth Circuit encouraged. *Id. See also United States v. Ruffin*, No. 5:16-CR-321-1BO, 2018 WL 401535, at *1 (E.D.N.C. Jan. 12, 2018) (denying request based on text of Jencks Act and controlling Fourth Circuit precedent where defendant argued early disclosure was necessary to prepare for "numerous witnesses who will, or may, be testifying at trial"); *United States v. Davis*, No. 7:17-CR-27-FL-1, 2018 WL 6112410, at *2 (E.D.N.C. Nov. 21, 2018) (denying motion for early Jencks).

Accordingly, the District of Maryland's Standing Order on Discovery notes that it has long been the practice in this District for the Government to disclose prospective witness statements "at least one week before trial" to allow counsel for Defendant to be prepared to cross-examine witnesses, and encourages (but does not order) that practice to continue. Standing Order 2020-1 ¶ 7(a), In Re: Discovery in Criminal Cases, Misc. No. 00-308 (D. Md. Feb. 5, 2020). Rather, the Standing Order merely requires the Government to notify Defendant if it does not intend to comply with this practice in a particular case. *Id.* ¶ 7(b). Similarly, the Court's Pretrial Scheduling Order

in this case provides that "the Court strongly encourages the Government to produce any *Jencks* material no later than two weeks before trial is scheduled to commence." ECF 107 at 2.

As the Government has repeatedly told defense counsel, the Government will comply with the Jencks Act, the historical practice in the District of Maryland as reflected in the Standing Order on Discovery, and this Court's Pretrial Scheduling Order by providing all Jencks material at least two weeks before trial. The Government has also expressed a willingness to discuss an earlier Jencks disclosure deadline with defense counsel. But Defendant's demand to compel Jencks material *now*, under the guise of *Brady* and Rule 6(e) in a pretrial motion filed eight months before trial, amounts to nothing more than an impermissible fishing expedition. *See United States v. Boyd*, 53 F.3d at 635 ("'The [Jencks] Act does not authorize fishing expeditions by the defendant . . . and use of statements under the Act is limited to impeachment.'") (quoting *United States v. Graves*, 428 F.2d 196, 199 (5th Cir. 1970)). Defendant's request must be denied.

## <u>CONCLUSION</u>

The Government has steadfastly complied with its discovery obligations under Rule 16 and *Brady*. In a transparent and speculative fishing expedition, Defendant moves to compel the production of all witness interview memoranda and transcripts of Grand Jury proceedings now, contrary to the law on Rule 16, *Brady*, the Jencks Act, Grand Jury secrecy, and this Court's orders. Defendant's motion should be denied.

Respectfully submitted,

Kelly O. Hayes
United States Attorney
/s/
Patrick D. Kibbe
Assistant United States Attorney
District of Maryland

Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division