# Exhibit 1B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| IN RE POSSIBLE VIOLATIONS OF 18 U.S.C. §§ 371, 1001; 26 U.S.C. §§ 7201, 7203, 7206, 7212; 31 U.S.C. §§ 5314, 5322 | Misc. No. 23mc00553<br><br>FILED EX PARTE & UNDER SEAL |

USDC- GREENBELT
'23 NOV 3 PM 2:04

### DECLARATION IN SUPPORT OF THE UNITED STATES' *EX PARTE* APPLICATION FOR SUSPENSION OF THE RUNNING OF THE STATUTES OF LIMITATIONS

I, Andrew Accardi, hereby state the following:

1. I am a Special Agent at the Internal Revenue Service ("IRS") Criminal Investigation ("CI"), and I submit this declaration in support of the accompanying application pursuant to 18 U.S.C. § 3292 to suspend the running of the statute of limitations for possible offenses arising out of this district's grand jury investigation of Thomas Che Goldstein ("Goldstein"), who filed false and fraudulent tax returns for various years and who failed to report on his federal income tax returns, and elsewhere, his interest in, or signature authority over, foreign financial accounts.

2. The grand jury has been investigating Goldstein and other individuals for the following possible criminal offenses: (i) conspiring to defraud the United States, in violation of 18 U.S.C. § 371; (ii) evading taxes, in violation of 26 U.S.C. § 7201; (iii) making and subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1); (iv) aiding and assisting the preparation of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2); (v) willfully failing to pay individual income tax, in violation of 26 U.S.C. § 7203; (vi) corruptly endeavoring to obstruct the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a); (vii) willfully failing to file a report his ownership or control of, or signatory or other authority over, a foreign

Exhibit A

financial account in violation of 31 U.S.C. §§ 5314, 5322; and (viii) making false statements to an agency of the United States, in violation of 18 U.S.C. § 1001.

3. The grand jury has not returned an indictment.

### Relevant United States Legal Requirements

4. United States citizens have an obligation to report to the IRS on the Schedule B of a U.S. Individual Income Tax Return ("IRS Form 1040"), whether that individual had an interest in, or signature or other authority over, a financial account in a foreign country in a particular year by checking "Yes" or "No" in the appropriate box and identifying the country where the account is maintained. United States citizens have an obligation to report all worldwide income, including income earned from foreign financial accounts on their tax returns and to pay the taxes due on that income.

5. United States citizens who have an interest in, or signature or other authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular year are required to file with the Department of the Treasury a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). An FBAR identifies, among other things, the name of the financial institution at which the account was held, the account number, and the maximum value of the account during the calendar year. The FBAR due date for the calendar years 2016 through 2021 was April 15 of the following year.

6. As detailed below, I believe that evidence of the offenses under investigation is located in Montenegro.

### Introduction to the Investigation

7. Goldstein was born in the United States and is a United States citizen. He resided in Maryland between 2016 and 2021.

8. After graduating from college and law school, Goldstein became an attorney. He rose to national prominence in the United States arguing cases before the United States Supreme Court as a founding partner at the law firm Goldstein & Russell, P.C. ("G&R"), which he and his wife owned jointly until he became its sole owner in 2017. Goldstein also founded a popular American legal blog, named SCOTUSblog, which covers U.S. Supreme Court cases. In or about 2023, Goldstein announced his retirement from Goldstein & Russell, P.C.

9. In addition to his work as an attorney, over the past decade Goldstein has also become a high-stakes poker player, sometimes betting or winning millions of dollars in a single game.

10. Between 2016 and 2019, Goldstein earned over $30 million in gambling winnings through his participation in poker matches. Although gambling winnings must be reported in full on the income tax returns filed with the IRS by United States taxpayers, Goldstein failed to report the accurate amount of his gambling winnings on his tax returns. On other occasions between 2016 and 2020, Goldstein reported certain gambling income but offset that income by claiming false deductions, thereby understating the correct amount of income tax he owed to the IRS. For example, in 2016, Goldstein earned and was paid over $26 million in gambling winnings through a series of poker games against a California-based player. Goldstein, however, failed to report on his 2016 income tax return the full amount of those winnings and falsely understated his net income by more than $5,000,000.

11. Goldstein also engaged in other tax misconduct beyond falsely understating his poker income. For example, he diverted millions of dollars from his law firm, G&R, to pay for personal expenses. Similarly, in 2018, he placed on his law firm's payroll young women with whom he appears to have been having intimate personal relationships and paid them through the

law firm, even though those women performed no work for the law firm. Under U.S. law, Goldstein should have reported, as his own personal income, the law firm funds paid to these women and the law firm funds he used to pay his personal expenses. Goldstein, however, omitted that income from his personal income tax returns. In doing so, Goldstein used G&R to hide and/or disguise those payments and thereby evade significant tax liabilities for himself. In the process, Goldstein also filed false tax returns for G&R.

### Foreign Bank Accounts and Funds

12. While committing these crimes between 2016 and 2020, Goldstein maintained bank accounts for himself and for his law firm at Universal Capital Bank AD Podgorica ("UCB") in Montenegro, and caused the wiring of large amounts of money through those accounts. According to lawfully obtained bank documents, in 2016, Goldstein opened four accounts at UCB: (1) a domestic account in his name (Account No. ▇▇▇▇), (2) an international account in his name (Account No. ▇▇▇▇, ▇▇▇▇), (3) a domestic account for G&R (Account No. ▇▇▇▇), and (4) an international account for G&R (Account No. ▇▇▇▇, ▇▇▇▇).

13. In 2016, his domestic UCB account received €926,872.70, which led Goldstein to wire $885,000 of those funds to a U.S. bank account that he controlled. In 2018, after Goldstein's domestic account at UCB received €862,142.19, he transferred that money to the G&R domestic UCB account, then to the G&R international UCB account, and from there wired the money to a U.S. bank account.

14. Goldstein did not report this money, or any interest earned on this money, as income on his federal tax returns. Given Goldstein's unreported gambling income and his use of G&R to evade taxes, he also may have used the UCB accounts to further hide his income from the IRS and

further evade U.S. taxes. Goldstein's failure to properly report the UCB accounts on FBARs and his tax returns reinforces this suspicion.

15. Goldstein also failed to file FBARs for these four Montenegrin bank accounts for the years 2016 through 2020 and failed to report these bank accounts on the Schedule B to his income tax returns.

16. During the Government's investigation, Goldstein made statements to an agent from the Internal Revenue Service in which he indicated, in substance and part, that he was unaware of the FBAR filing requirement. Goldstein, however, was previously involved in a United States Supreme Court case that addressed FBAR-related issues, with an amicus brief by G&R listing him as an attorney for the amici.

### Request to Montenegro

17. Based on the information outlined above, on September 25, 2023, at the prosecutors' request, the Office of International Affairs of the United States Department of Justice ("OIA") made an official request to Montenegro for legal assistance obtaining evidence ("First Montenegrin Request"). A copy of the letter transmitting the First Montenegrin Request is attached as Exhibit B.

18. That Request sought business and bank records from UCB.

19. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27, 2023.

*Andrew Accardi*
Andrew Accardi
Special Agent
IRS, Criminal Investigation

5                                                                                          Exhibit A