**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **Defendant.** | * | |
| | * | |

**DEFENDANT THOMAS C. GOLDSTEIN'S REPLY
IN SUPPORT OF HIS MOTION TO DISMISS
<u>ALLEGATIONS CONCERNING EMPLOYEES</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1
ARGUMENT .................................................................................................................................. 3
CONCLUSION............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Actavis Labs., FL, Inc. v. United States*,
　161 Fed. Cl. 334 (2022), aff'd, 131 F.4th 1345 (Fed. Cir. 2025) ......................................... 5, 6, 9

*Loewy Drug Co. of Baltimore City v. United States*,
　232 F. Supp. 143 (D. Md. 1964), aff'd, 356 F.2d 928 (4th Cir. 1966) ..................................... 5, 6

*United States v. Ragen*,
　314 U.S. 513 (1942) ...................................................................................................................... 9

*United States v. Sun*,
　278 F.3d 302 (4th Cir. 2002) ........................................................................................................ 8

**INTRODUCTION**

Defendant Thomas Goldstein moved to dismiss the allegations concerning salary and benefits paid to certain firm employees as unconstitutionally vague. As argued in the defense motion, there is no legal standard that gives a business adequate notice as to the amount of work that an employee must perform so that the deduction of their salary does not constitute a federal crime. The government's opposition does not meaningfully respond to this argument. Instead, the government devotes nearly half its opposition to reciting in detail its allegations concerning Mr. Goldstein's relationships with the employees, allegations that have no bearing on the defense's motion. The government's approach strongly suggests that the true purpose of these allegations is to prejudice Mr. Goldstein publicly and (if the motion is denied) before the jury.

As a matter of law, the precise nature and extent of Mr. Goldstein's alleged relationships with the employees makes no difference—*none*—to the government's legal theory. The government argues that a crime was committed if Mr. Goldstein was substantially motivated by any non-business purpose. *See* ECF No. 135 ("Opp."), at 18-19. So, unquestionably, the identical crime was committed if the employees were family members, friends, family members of friends, political allies, lovers, or any of a nearly infinite number of other relationships. The defense motion therefore took as its premise that there was a non-business relationship between Mr. Goldstein and the employees, and explained why the relevant statutes would be unconstitutionally vague if applied in the manner alleged by the Indictment. And the motion took care to note that any attempt by the government to delve into the supposed details of the relationships would be wildly inappropriate.

The government's opposition spends page after page doing exactly that—detailing on the public record the precise nature of the alleged relationship with each individual. Importantly, that material did not address the relevant point that was discussed by the motion: what legal

1

standard applies in light of the undisputed fact that those individuals engaged in actual *work*. Rather, it included, for example, the supposed details of how Mr. Goldstein met the employees and his relationships after their period of employment. Worse still, a great deal of what the government wrote is entirely inaccurate. The best example is that, in fact, there was no personal relationship at all with *three* of the employees while they were employed by Mr. Goldstein's law firm. But the government hides behind an array of bald assertions—saying that it should be given the opportunity to prove irrelevant, prejudicial facts at trial—to try and create the opposite, false impression.

    The government barely attempts to argue that this thirteen-page recitation of prejudicial allegations is relevant to the legal issue raised by the defense motion. It asserts that as-applied challenges must be decided based on the facts. Opp. at 16. That is correct only in a sense that directly refutes the government's claim. This as-applied vagueness challenge has to be decided based on the *relevant* facts. But as explained, none of the government's prejudicial allegations is relevant, because its legal theory has nothing to do with the precise nature of Mr. Goldstein's relationships with the employees. Indeed, the defense motion *assumed* for these purposes that at some point he had or sought a non-employment relationship with those individuals. Tellingly, after making the argument that an as-applied challenge must be fact-based, the government then does not even *claim* that any of this material actually informs the legal issue before the Court in any way.

    This is not the first time that the government has leveled inaccurate allegations against Mr. Goldstein in its public filings. The government had Mr. Goldstein's release revoked on allegations about his use of cryptocurrency that turned out to be untrue. In later filings concerning Mr. Goldstein's release conditions, the government asserted that a witness testified

before the grand jury that Mr. Goldstein had tried to bribe them using cryptocurrency. That turned out to be an inaccurate characterization of the witness's testimony.

As set forth in this and the other defense pretrial filings, the government's case is filled with unprecedented and implausible theories of criminal liability. The government should not be permitted to distract from those weaknesses in its case with prejudicial allegations concerning Mr. Goldstein's personal life.

As an experienced attorney, Mr. Goldstein requests that the Court grant him permission to participate personally in the hearing on this motion, as it has previously done.

## ARGUMENT

The Indictment alleges that defendant Thomas Goldstein committed tax evasion by treating the salaries and benefits payments of four firm employees as business expenses. The government concedes that three of the four employees performed actual work for the law firm, while the fourth went on unpaid medical leave almost immediately after she joined the firm. Nevertheless, the government says that deduction of the salary payments to employees who performed work for the firm is a federal crime because those employees performed "little or no work," ECF No. 1, ¶ 13, and/or because the salary payments were intended "[t]o supplement or supplant," *id.* ¶ 12, personal payments from Mr. Goldstein to the employees. As the defense argued in its motion, this application of the tax evasion statute is unconstitutionally vague because it provides no standard by which an ordinary person could distinguish lawful from criminal conduct.

In places, the Indictment suggests an answer to this question. The Indictment alleges that the four individuals were not "bona fide employees," *id.* ¶ 56(b). Under this standard, deduction of salary paid to a true "no-show" employee—that is, an employee who received a salary yet

3

performed no work at all—could theoretically constitute criminal tax evasion, while avoiding the vagueness concerns raised by the defense motion.

The government does not argue for this standard, likely because the government knows it cannot meet it—three of the four employees performed actual work for the firm, while the fourth went on unpaid medical leave almost immediately after she started. In its opposition, the government abandons the Indictment's "bona fide employees" standard, arguing instead that the salaries and benefits paid to the employees "were not ordinary and necessary business expenses, but rather personal expenses made for Defendant's benefit," Opp. at 20. This argument completely fails to address the fundamental point of the defense motion: In this context, where the government concedes that work was actually performed for the firm, there is no legal standard for determining what constitutes a "personal expense" and therefore the line between permissible conduct and unlawful activity is undefined.

Without such a clear line, the statute is unconstitutionally vague as applied. The vagueness inquiry examines the particular facts at issue to determine whether the statute provides notice to the public and whether it adequately curtails arbitrary enforcement. ECF No. 122 ("Mot."), at 4. In other words—how is a reasonable person to know what the criminal statute prohibits? Even the government seems unable to answer that question coherently. In places, the government cites a 1964 civil case from this District to suggest that the scope of criminal liability in this context is a *subjective* inquiry—that the deduction of the salaries and benefits as business expenses is a crime no matter how much work the employees performed because Mr. Goldstein intended for the payments to incentivize personal relationships. *E.g.,* Opp. at 20 (arguing that the deductions were criminal because "'the dominant, if not the sole, reason for the payments was to provide for the financial needs' of the four women, and to incentivize continuing or initiating

4

intimate personal relationships with Defendant") (quoting *Loewy Drug Co. of Baltimore City v. United States*, 232 F. Supp. 143, 148 (D. Md. 1964), *aff'd*, 356 F.2d 928 (4th Cir. 1966)). Elsewhere, the government cites a civil case from the Court of Federal Claims post-dating the conduct at issue to suggest that the inquiry is *objective*—that the deductions were a crime because the work of the employees was not (in the government's estimation) "appropriate and helpful to the operation" of the firm. *Id.* at 21 (quoting *Actavis Labs., FL, Inc. v. United States*, 161 Fed. Cl. 334, 352 n.11 (2022), *aff'd*, 131 F.4th 1345 (Fed. Cir. 2025)).

These two judicially-created tests do not solve the government's vagueness problem for several reasons.

First, these tests were crafted by courts addressing the scope of civil tax liability. They do not appear in the tax evasion statute, or any other statute or implementing regulation cited by the government. The government cites no case supporting the proposition that a judicially-created test for civil liability can render an otherwise vague criminal statute constitutional as applied.

Second, because these were civil cases, where the void for vagueness doctrine does not apply, the courts deciding them had no occasion to consider whether these tests could be used to support a criminal tax evasion prosecution consistent with the Fifth Amendment. Those courts did not consider, for example, whether it would violate the void for vagueness doctrine to ask a criminal jury to decide a defendant's guilt based on the jury's estimation as to whether the expenditure was "appropriate and helpful to the operation" of the defendant's business, or whether the defendant's "dominant . . . purpose" in hiring the employee was to provide for their "financial needs," or whether the expenditure was "common to the business community of which

5

it is a part." And the government cites no case in which a court has applied either, or both, of these tests in a criminal case.

Third, the two tests are very different, and could lead to different outcomes when applied to the same set of facts. Consider a business owner who hires a family member as an employee for the primary purpose of supporting the family member financially. Under the *Loewy Drug* test, those payments would be considered personal and therefore deduction of those payments as a business expense would be a crime. But under the *Actavis Labs* test, the salary could be deducted lawfully so long as the family member employee's work was "appropriate and helpful to the operation of the business." The government's opposition does not explain how the court, or a jury, should reconcile these two tests when they produce conflicting results.

Fourth, the government does not attempt to explain how the jury could be expected to decide whether the evidence in this case meets these tests consistent with due process. The government's opposition suggests that the evidence would show that the employees worked relatively few hours. *E.g.*, Opp. 3 (alleging that Employee 1's work took "only a few hours over a few days"); *id.* at 6 (alleging that Employee 2's work "took her less than two days total to complete"); *id.* at 8 (alleging that Employee 3 worked 10 hours per week). But according to the civil cases cited by the government, the pertinent inquiry is not the number of hours worked but rather the *value* of the work to the firm. *See id.* at 21 (defining "necessary expenses" as "those that are 'appropriate and helpful to the operation of the taxpayer's business'"). The government's opposition provides no legal standard that would allow a jury to decide whether the value of the work performed by these employees was "appropriate and helpful to the operation" of the firm.

6

That is because there is no such standard. There is no statute, regulation, or even agency guidance that tells a business how to quantify the value of an employee's work in determining whether it would be a federal crime to deduct some or all off that employee's salary as a business expense. Without such a standard, the government's theory of liability is unconstitutionally vague.

The government's only answer to this argument is to repeat over and over the allegation that the amount of salary paid to the employees was motivated by personal considerations. *E.g.*, Opp. at 20 (alleging that the salaries were "not ordinary and necessary business expenses, but rather personal expenses made for Defendant's benefit"). But that does not solve the vagueness problem. The government does not attempt to explain how a business owner who hires a relative, or a friend, or a neighbor, is meant to know whether the business may deduct $25 per hour, or $20 per hour, or $15 per hour to avoid criminal prosecution for committing tax evasion on the theory that some portion of the employee's salary was motivated by personal considerations.

In this case, for example, the government does not dispute that Employee 1, who was paid under $25 per hour, performed actual work for the firm, and therefore the firm must have been permitted to deduct *something*. The government does not attempt to explain how Mr. Goldstein was meant to know what that something was—whether the firm was permitted to deduct $20 per hour, or $15 per hour, or some other number,  The government's suggestion that this question can simply be decided by a jury after the fact is precisely the sort of standardless theory of criminal liability that the vagueness doctrine forbids.

The government's vagueness problem does not end with the definition of a "personal expense." The government also cannot describe with specificity the alleged crime. In some

7

places, the government suggests that the deduction of *any* portion of the salaries and benefits was criminal, irrespective of the fact that work was performed for the firm. In other places, the government suggests that deduction of an unspecified amount of the salaries and benefits might be appropriate in light of the work performed. Still elsewhere, the government says it need not make up its mind.

The fact that the government's twenty-eight-page opposition cannot clearly explain either the legal standard that applies here or the precise conduct that is alleged to be criminal tells the Court everything it needs to know when it comes to vagueness.

Because it cannot articulate a clear legal standard, the government does not even attempt to respond to the questions about the scope of criminal liability posed in the defense motion, dismissing them as "speculative" and "hypothetical." Opp. at 26. But the defense motion raised these questions for a reason—if the government cannot clearly explain to the Court what conduct is prohibited by the tax evasion statute as applied in this context, then it is not possible for "ordinary people [to] understand what conduct is prohibited." *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002).

For example, when an owner of a small business hires a friend, or a family member, or a neighbor's child, even though the business does not have enough work to fully occupy the new hire, has the business owner committed a federal crime? Does the answer to that question depend on the subjective intent of the business owner when they made the hire, such that the business owner has committed a crime only if they intended to help the neighbor's child gain working experience or to support the family member? Or does the answer depend on how much work the new employee actually performs, and if so what is the number? The government does not attempt to respond to these questions because it does not know the answers.

Nor is the vagueness problem limited to the context of employment. As discussed above, under the *Actavis Labs* test, the line between a permissible business deduction and a criminal act of evasion is whether the expenses are "appropriate and helpful to the operation of the taxpayer's business." Opp. at 21 (citation omitted), When a business that pays more money for machinery because the machinery was manufactured in the United States and then deducts the full cost of the machinery, that business presumably would be committing a federal crime because the extra cost of the domestic-manufactured machinery is not "appropriate and helpful" to the business. The government is apparently unwilling to say whether it is endorsing such a breathtaking expansion of federal criminal law.

*United States v. Ragen*, 314 U.S. 513 (1942), does not rescue the government's vague theory of liability. In *Ragen*, the defendants were convicted of creating "back dated contracts" that "fabricated" a basis for treating past payments to the defendants as commissions, while "destroying" the original records showing that the payments were actually dividends. *Id.* at 519-20. The Supreme Court held that, on these facts, whether the backdated documents were a criminal tax evasion scheme or (as the defendants argued) a legitimate effort to ensure the correct tax treatment of payments to individuals who actually performed some work for the company was a question for the jury to decide. In *Ragen*, the prohibited conduct was clearly defined—the tax evasion statute plainly forbids backdating and fabricating records to falsely characterize dividends as commissions—and the question was whether the conduct fit within that definition. Here, by contrast, the government's twenty-eight-page opposition cannot clearly and simply describe the prohibited conduct—it cannot explain what it means to say that a payment to an employee who actually performed work for the firm is "personal" and therefore criminal to treat as a business expense.

The statute's willfulness requirement also does not help the government. As the defense motion recognized, in some circumstances the element of willfulness can save an otherwise vague criminal statute. But that is not the case here, because the government's theory of liability is impermissibly vague as to what it is that Mr. Goldstein is alleged to have done willfully. Took a business deduction on salary paid to an employee who was hired for the "dominant" purpose of advancing a personal relationship, even though the employee did actual work? Took a business deduction on salary paid to an employee whose work (in the government's estimation) was not "appropriate and helpful to the operation" of the firm? Took a business deduction on the full amount of the salary, when only a smaller deduction was warranted? (The government's opposition suggests that all of these are candidates.) Because the government cannot define the prohibited conduct, the willfulness requirement does not save its theory.

Perhaps recognizing the fatal flaws in this theory of criminal liability, the government suggests that the Court deny the defense motion because Mr. Goldstein's alleged "payments to or on behalf of the women are relevant to other counts not at issue in the Motion," Opp. at 27, namely the misdemeanor violations of Section 7203 charged in Counts 15-19. This will not do. Mr. Goldstein has a due process right not to be tried on a vague theory of liability, apart from the separate question whether the evidence relevant to that theory is admissible on some other ground. Moreover, the evidence at issue is enormously prejudicial and on the government's view has scant relevance to the Section 7203 misdemeanors, since the government contends that ability to pay is not an element of that offense. As the defense expects to argue in a motion in limine, the government cannot have it both ways—if Mr. Goldstein's ability to pay his taxes is not an element of the offense, then the fact that he spent money on other expenses while he owed the taxes is not relevant.

**CONCLUSION**

Contrary to the government's assertion, this case is a powerful example of the risk of arbitrary enforcement posed by vague criminal statutes. The government's opposition does not cite a single case in which a defendant has been criminally prosecuted for tax evasion based on the deduction of salary paid to allegedly underemployed workers. The government does not dispute that the total tax liability at issue regarding these employees is approximately $19,000. And the government begins its opposition defending this theory with a "brief," Opp. at 2, thirteen-page recitation of its allegations concerning the details of Mr. Goldstein's personal relationships that are completely irrelevant in light of the defense's acknowledgement that the allegation that Mr. Goldstein "was involved in, or pursued, intimate personal relationships" with the four employees is assumed to be true for these purposes, Mot. at 1; the government never suggests that the details of the relationships bear on the vagueness inquiry. All this suggests that the government brought this unprecedented, standardless theory of liability not to vindicate the government's interest in criminal enforcement of a $19,000 violation of the federal tax code but rather to embarrass Mr. Goldstein. This is precisely the sort of arbitrary enforcement of the federal criminal law that the void for vagueness doctrine is meant to prevent.

                        Respectfully submitted,

                        */s/ Jonathan I. Kravis*
                        Jonathan I. Kravis (Bar No. 31556)
                        Stephany Reaves (Bar No. 19658)
                        MUNGER, TOLLES & OLSON LLP
                        601 Massachusetts Avenue NW, Suite 500E
                        Washington, DC 20001
                        (202) 220-1100
                        Jonathan.Kravis@mto.com
                        Stephany.Reaves@mto.com

                        Adeel Mohammadi (*pro hac vice*)
                        MUNGER, TOLLES & OLSON LLP
                        350 S. Grand Avenue, 50th Floor
                        Los Angeles, CA 90071
                        (213) 683-9100
                        Adeel.Mohammadi@mto.com

                        *Attorneys for Defendant Thomas Goldstein*

Dated: July 2, 2025