IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S REPLY REGARDING ITS REQUEST FOR A *FARETTA* HEARING**

Now that defendant Thomas Goldstein has confirmed that he demands—and, indeed, has already helped himself to—hybrid representation in this case, the Court should be wary. The Court should be concerned that Goldstein wrote several of the pending motions to dismiss and that Goldstein believes he is better equipped to argue those motions than his own retained counsel. The Court should worry that Goldstein's hubris has *already* infected these proceedings. Despite direct admonition from Chief Magistrate Judge Sullivan, Goldstein ignored the Court's warning and pursued hybrid representation, assigning himself the portions of the case he wishes to conduct while leaving the rest to retained counsel.

Goldstein and his attorneys have now muddled the record, requiring the Court to delve into whether Goldstein believes his attorneys were not adequately skilled, prepared, or willing to raise all the pretrial issues Goldstein wanted to raise in his motions to dismiss (and prior filings) and whether Goldstein is presently aware of any basis to claim ineffective assistance of counsel to date. If the government had not raised the *Faretta* issue with the Court, it appears Goldstein would have sprung it on the Court at the September 24th pretrial motions hearing.

Before largely retiring,[1] Goldstein was an experienced appellate attorney. His strategy here is clear: muddle the trial record as much as possible so that, in the event of a conviction at trial, he can ask the Fourth Circuit for a do-over. This Court should not play Goldstein's game.

## Argument

I. **This Court should treat Goldstein the same as every other criminal defendant in this District.**

Goldstein imagines himself to be uniquely situated here. He is not. Most criminal defendants care about their own prosecution and nearly all of them know the facts of their case better than the attorneys who represent them. But Goldstein chose his attorneys from Munger Tolles to represent him in this case, and he should let them do their job.

Of course, if Goldstein fancies himself as better equipped to handle this criminal case than his hired counsel, Goldstein has the constitutional right to proceed *pro se*. *Faretta v. California*, 422 U.S. 806, 819-20 (1975). He does not, however, have a constitutional right to "hybrid representation." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).[2]

A. <u>Goldstein violated Judge Sullivan's rulings against hybrid representation.</u>

On February 10, 2025, Chief Magistrate Judge Sullivan expressly advised Goldstein that the Court would not entertain "hybrid representation," in which Goldstein would both appear *pro se* and be represented by counsel:

> Well, you can't have hybrid representation, though. . . . [T]he Court's concern and the long precedent of—I don't pretend to be the legal scholar that you are, but that we guard zealously against this hybrid representation and that you can either represent yourself, you

---

[1] *See, e.g.*, Kimberly Strawbridge Robinson & Lydia Wheeler, Bloomberg Law, *Goldstein Retires from High Court Bar After Reinventing Path* (Mar. 1, 2023), https://news.bloomberglaw.com/us-law-week/tom-goldstein-retires-from-high-court-bar-after-reinventing-path (last accessed August 25, 2025).

[2] Goldstein also does not have a right to hybrid representation for written motions. *See United States v. Miller*, 54 F.4th 219, 226 (4th Cir. 2022).

> can have a lawyer represent you, but never the two shall meet. And there's possibilities in some cases where standby counsel is appointed and there's a lot of different variations, but it becomes very confusing for a lot of people if lawyers are filing things for you.

Det. Hrg. Tr. 15:15-16:11, Dkt. 69 (Feb. 10, 2025). On February 13, Judge Sullivan also instructed defense counsel: "[I]n one of the briefings there was a mention about Mr. Goldstein's desire to have some kind of hybrid presentation today. That will not be allowed, that he has retained counsel, and they will speak for him." Det. Hrg. Tr. 3:8-11, Dkt. 73 (Feb. 13, 2025).

In his opposition, Goldstein admits that he understood the Court's ruling and says that he "disagreed" with it. Dkt. 163 at 4. However, Goldstein never formally moved the Court for reconsideration of Judge Sullivan's ruling and never moved for permission to pursue hybrid representation in briefing or at the upcoming September 24, 2025, hearing. The government submits that, had it not moved for another *Faretta* colloquy, Goldstein would have waited to ambush the Court with this gambit at that hearing, forcing it to allow hybrid representation or grant a continuance while Goldstein or his counsel prepared to argue the others' motions. That is, although the replies in support of Goldstein's pretrial motions requested permission for him to participate at the upcoming hearing, the replies omitted that Goldstein was the principal drafter of the filings related to at least two of the motions, and that he and his hired counsel had apparently divvied up the motions for purposes of briefing and arguing them at the hearing.

B.  <u>The Court did not invite Goldstein to pursue hybrid representation in this case.</u>

Goldstein now argues that the Court later invited him to enjoy hybrid representation. *Id.* at 5. Goldstein misconstrues the Court's invitation to address the Court directly at the February 14, 2025, hearing on Goldstein's motion for reconsideration of the conditions of his bond.

3

At the beginning of that hearing, the Court said, "I want to also invite Mr. Goldstein to be sworn in at the appropriate time in case he wishes to address the Court," noting that Goldstein was welcome to do so if he so elected. Det. Hrg. Tr. 6:8-10, Dkt. 75 (Feb. 14, 2025). Indeed, the Court had Goldstein sworn in—as a *witness*:

```
 3        THE COURTROOM DEPUTY:  Mr. Goldstein, please stand and
 4   raise your right hand.  You do solemnly promise and declare
 5   under the penalties perjury that the information you are about
 6   to give to the Court in the matter now pending before it shall
 7   be the truth, the whole truth, and nothing but the truth?
 8        THE DEFENDANT:  I do.
 9        THE COURTROOM DEPUTY:  Thank you.  Please state your
10   full name for the record.
11        THE WITNESS:  Thomas Che Goldstein.
12        THE COURTROOM DEPUTY:  You may be seated.
13        THE WITNESS:  Thank you.
```

*Id.* (Tr. 9:3-13). Goldstein was represented by his current attorneys at the February 14, 2025, hearing, and he did not speak after being sworn. The context of the Court's comment and the transcript itself make plain that the Court was communicating that Goldstein was welcome to *testify* if he wanted to do so. Nothing in the transcript of that hearing—or any subsequent interactions with the Court—indicates that the Court invited Goldstein to serve as co-counsel to his retained attorneys. Indeed, if Goldstein genuinely believed he had already received permission to act as co-counsel in this case—despite Judge Sullivan's admonition—then it is unclear why Goldstein requested permission in his replies to "participate personally" in the hearing on his motions to dismiss. *E.g.*, Dkt. 144 at 5-6; Dkt. 149 at 15; Dkt. 150 at 3; Dkt. 153 at 5.

4

C. <u>Goldstein has failed to demonstrate a "special need" for hybrid representation here.</u>

As the government noted in its initial motion (Dkt. 158), the Court has discretion to permit hybrid representation where a defendant demonstrates a "special need" for it. *United States v. Lang*, 527 F.2d 1264, 1265 (4th Cir. 1975). However, permitting hybrid representation imposes significant risk on the trial court's management of its docket and its record on appeal. *See, e.g.*, Letter Order 2, *United States v. Henson*, No. 21 CR 470 (D. Md. Jan. 28, 2025), Dkt. 179 (declining hybrid representation and finding that the limitations on the role of standby counsel were "necessary to avoid undue delays in the progress of the trial, inconsistencies in Ms. Henson's presentation of a defense at trial, and confusing the jury—and, indeed, confusing the trial record—as to Ms. Henson's self-represented status"); *United States v. Roof*, 225 F. Supp. 3d 394, 397 (D.S.C. 2016) ("[T]he trial court should take care to prevent the use of standby 'counsel as an instrument to distort the system,' which 'a skillful defendant'—or skillful standby counsel—'could manipulate to create reversible error.'" (cleaned up) (quoting *United States v. Singleton*, 107 F.3d 1091, 1102 (4th Cir. 1997))); *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (*en banc*) (noting that the trial court "must traverse a thin line" between rights to counsel and self-representation and "a skillful defendant could manipulate" this line "to create reversible error").

Thus, in practice, this Court and her sister courts in the Fourth Circuit rarely exercise their discretion to permit hybrid representation. *See, e.g.*, *United States v. West*, 877 F.2d 281, 293 (4th Cir. 1989) (finding no special need to permit the defendant to participate in closing arguments); *United States v. Sacco*, 571 F.2d 791, 793 (4th Cir. 1978) (finding that defendant's "greater familiarity with the facts" did not suffice as special need to permit him to cross examine witnesses because Sacco "could have sufficiently informed his counsel about the facts to allow him to perform adequately"); *United States v. Ayesh*, 765 F. Supp. 2d 763, 767 (E.D. Va. 2011) (declining

5

to permit defendant to participate in closing arguments even though defense counsel would not assert facts or argument during closing that the defendant wanted to assert); *United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) (affirming a district court's denial of hybrid representation where the defendant was an attorney with specialized legal knowledge, finding the defendant could have shared his expertise with his attorney so that they could make use of it at trial).

Goldstein's response to the government's motion for a *Faretta* colloquy does not provide any substantial justification to "participate directly" in the upcoming motions hearing, let alone articulate a "special need" to justify the Court's deviation from the usual practice of giving defendants a binary choice between representation by counsel or self-representation. The government stipulates that Goldstein is a sophisticated and experienced attorney. Indeed, the complex tax and fraud schemes with which Goldstein is charged imply a substantial level of sophistication. But Goldstein's experience does not suffice as a special need justifying hybrid representation here. *See Sacco*, 571 F.2d at 793; *Olano*, 62 F.3d 1193 (holding that the defendant has not established a special need simply because "he allegedly had more expertise in banking and real estate law than did his appointed counsel."); *United States v. Mosely*, 810 F.2d at 98 (denying the defendant's motion for hybrid representation and stating "[t]here are obvious justifications for the refusal to allow hybrid representation in criminal trials, regardless of the legal experience of the defendant.").

Moreover, in his response brief, Goldstein cites three out-of-circuit court cases for the proposition that the "Court has wide discretion to" allow hybrid representation at the motions hearing. Dkt. 163 at 9-10. No doubt it has such discretion. But these cases make clear why it should not do so here and why it must hold a *Faretta* hearing regardless.

In *United States v. Middleton*, No. 15-40018-02-DDC, 2020 U.S. Dist. LEXIS 84016 (D. Kan. May 13, 2020), a represented defendant filed a *pro se* motion that the district court interpreted as a motion for compassionate release under 18 U.S.C. § 3582(c)(1). The court quickly dispatched the *pro se* motion without a response from the United States because the court found that the defendant had not first exhausted her administrative rights. The district court noted in a footnote that Middleton was represented by counsel and that there was no constitutional right to hybrid representation, *id.* at *1, n.2, but the court decided to exercise its discretion to permit hybrid representation for the limited purpose of considering—and summarily rejecting—the defendant's *pro se* motion.

In *United States v. Porter*, No. 19-20115, 2022 U.S. Dist. LEXIS 87740 (E.D. Mich. May 16, 2022), the defendant—while represented by counsel—filed four *pro se* motions to dismiss. The Court directed Porter's attorney to refile the four motions as his own, but Porter's attorney declined to endorse the four motions because the attorney believed them to be meritless. The district court noted that "[it] is well-established law in the Sixth Circuit that a criminal defendant cannot proceed with hybrid representation, whereby he asserts both the right to proceed *pro se* and the right to counsel—he must choose one or the other." *Id*. at *8-9. The district court also noted that district courts "very rarely" exercise their discretion to permit hybrid representation, quoting a passage from *Mosely*, 810 F.2d at 98, explaining why courts should be concerned about hybrid representation:

> There are obvious justifications for the refusal to allow hybrid representation in criminal trials, regardless of the legal experience of the defendant. The potential for undue delay and jury confusion is always present when more than one attorney tries a case. Further,

      where one of the co-counsel is the accused, conflicts and disagreements as to trial strategy are almost inevitable.[3]

Nonetheless, noting the attorney's ethical dilemma and the fact that the defendant had raised the issues in his four *pro se* motions multiple times, the district court agreed to consider Porter's four pro se motions as filed by the defendant—*after* the Court first conducted a *Faretta* colloquy. *Porter*, at \*10.

      Finally, in *United States v. Stile*, No. 1:11-cr-00185-JAW, 2013 U.S. Dist. LEXIS 172040, at \*3-4 (D. Me. Dec. 6, 2013), a represented defendant filed "thirty or so" *pro se* motions. The district court had serially appointed new attorneys for Stiles, but the defendant was dissatisfied with each of them. The district court found that "it appeared that a major source of Mr. Stile's profound dissatisfaction with his court-appointed attorneys is that, in his view, they had all refused to pursue meritorious legal defenses, forcing him to file those motions *pro se*." *Id*. at \*3. Accordingly, the district court agreed to permit hybrid representation for the *limited purpose* of considering Stile's *pro se* motions with the hope of resolving simmering tensions with the defendant's fourth court-appointed attorney.

      None of the facts in *Middleton*, *Porter*, or *Stiles* are analogous here. Goldstein is ably represented by retained counsel—attorneys of his own choosing—from a prominent law firm. There are no indicia that Goldstein's attorneys do not support his motions to dismiss: his attorneys presumably read the six motions before filing them with the Court, and they adopted each of those motions as their own when they signed and filed them using their ECF accounts. Moreover, in each of the three cases Goldstein cited, the courts effectively allowed *pro se* representation as to specific motions to resolve tensions between defendants and their counsel—not the type of hybrid

---

[3] Notably, Mosely himself was an attorney and even a former judge, but the district court still declined to let Mosely serve as co-counsel. *Mosely*, 810 F.2d at 94.

representation in which Goldstein engaged by drafting briefs that his counsel filed and by asking his counsel to still conduct any related evidentiary examinations. *See* Dkt. 163 at 9.

### II. The Court should address these issues now to preserve its record for appeal.

Now that Goldstein has asserted that he is better suited than his retained attorneys to argue at least two of his motions to dismiss, the Court cannot turn a blind eye to the implications of that assertion. Why is Goldstein more capable than his hired counsel to argue those motions? Why is Goldstein better qualified than them to argue some of his motions but not all of them? Is Goldstein dissatisfied with his attorneys' performance to date, and if so, why? Has counsel failed to assert an argument that Goldstein demands they make to the Court? Can Goldstein presently articulate a basis to assert that his retained attorneys have failed to provide effective assistance of counsel? If, given the binary choice of representing himself or being represented by counsel, Goldstein chooses to continue to be represented by counsel: does he want to be represented by *these* attorneys, or does he have a basis to claim that they are not performing satisfactorily?

All these questions drive at the heart of the problem of hybrid representation: it muddles the trial court's record and unnecessarily creates issues for appeal. If Goldstein represents himself, he waives his right to later claim ineffective assistance of counsel. *McKaskle*, 465 U.S. at 177, n.8 ("[A] defendant who exercises his right to appear *pro se* 'cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel.'" (quoting *Faretta*, 422 U.S., at 835, n.46)). But where the Court permits hybrid representation, the question of waiver becomes much more difficult. Can Goldstein later claim ineffective assistance of counsel if he drafted 85 percent of a motion to dismiss but he decides to have his retained counsel argue the motion at the hearing? What if he drafted 15 percent of a motion?

The government respectfully requests that, in addition to the proposed *Faretta* colloquy, the Court inquire—even *ex parte* if necessary—regarding the hybrid representation to date.[4] Specifically, the Court should determine (i) for which filings Goldstein was principally responsible, (ii) whether there were any arguments Goldstein's attorneys asserted (or refused to assert) against Goldstein's wishes; and (iii) whether Goldstein is presently aware of any basis to assert that his retained attorneys failed to provide effective assistance of counsel.[5]

**III. If Goldstein wants to proceed *pro se*, he must waive his right to counsel.**

The Fourth Circuit has been exceedingly clear: "Although a criminal defendant has both a right to counsel and a right to represent himself, those rights are 'mutually exclusive.'" *United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014) (quoting *Singleton*, 107 F.3d at 1100). If Goldstein wants to serve as his own attorney for any portion of the proceedings before this Court, he must first waive his right to counsel *at least* with respect to those portions of the proceedings and any pretrial motions that he argues. *Singleton*, 107 F.3d at 1100-02 ("The *Faretta* Court clearly contemplated that the right to self-representation cannot be exercised without first eliciting a valid waiver of the right to counsel from the defendant."); *see also, Hunt*, 99 F.4th at 184 (holding that a defendant must first "relinquish his right to counsel" before the Court can determine, what, if

---

[4] It appears to the government that Goldstein has pursued hybrid representation since at least April 1, 2025, when his counsel moved to invalidate the § 3292 tolling orders. *See* Dkt. 112. The government notes that this was *after* this Court read Local Rule 201 into the record during the February 14, 2025, detention hearing (Dkt. 75, Tr. 3:18–4:20), seemingly further forewarning Goldstein that hybrid representation would not be permitted in this case.

[5] It is hard to reconcile Goldstein's and his attorneys' decision to engage in hybrid representation—including filing briefs "principally" written by Goldstein—with the letter and spirit of the Local Rules and the Court's multiple Orders. However, given the waiver issues that likely arise from Goldstein's active participation in the drafting of briefs later filed by his attorneys (*see McKaskle*, 465 U.S. at 177, n.8), this Court might entertain Ordering that, going forward, Goldstein and/or his attorneys certify which portions of any brief for which Goldstein had substantial input or involvement in drafting.

10

any level of assistance standby counsel may provide at trial). As the Fourth Circuit held in *Singleton*:

> Because the right to counsel serves both individual and collective good, it is appropriate to ascribe it a constitutional primacy which the more individualistic right of self-representation does not command. While respecting the right to self-representation requires the sacrifice of the systemic benefit of using trained defense lawyers as an additional guarantee of judicial fairness and legitimacy, the Sixth Amendment does not require that the defendant be permitted to use counsel as an instrument to distort the system.

107 F.3d at 1102. As explained above, this waiver is significant because, if Goldstein decides to represent himself for any portion of the proceedings, he waives his right to later claim ineffective assistance of counsel *at least* as to those matters. *McKaskle*, 465 U.S. at 177, n.8.

Finally, because Goldstein's attorneys signed and filed each of the motions that are the subject of the parties' September 24, 2025, hearing, Goldstein's attorneys should be prepared to argue each of those motions at the hearing. Goldstein's professed desire to argue several of the motions filed himself does not relieve his retained counsel of their obligation to fulfill their respective roles. The Court should not countenance a delay if Goldstein stands on his right to counsel and decides at the hearing to allow his retained counsel to argue all the motions.

## CONCLUSION

Hybrid representation is strongly disfavored, and the Court should not permit Goldstein to serve as co-counsel in this case. The Court should offer Goldstein the binary choice between being represented by counsel and proceeding *pro se*. And, if Goldstein knowingly and voluntarily waives his right to counsel through a *Faretta* colloquy before the motions hearing, the Court need not and should not permit retained counsel to be heard during argument on his pretrial motions.

11

Respectfully submitted,

KELLY O. HAYES
United States Attorney

Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice, Tax Division

Adeyemi Adenrele
Assistant United States Attorney
United States Attorney's Office
District of Maryland

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

SEAN P. BEATY
Senior Litigation Counsel