# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******** | |

## DEFENDANT THOMAS C. GOLDSTEIN'S
## MOTION TO PERMIT HIM TO SELL THE HAWTHORNE PROPERTY
## <u>IN ORDER TO FUND HIS DEFENSE</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................4

ARGUMENT .........................................................................................................................6

I.  THE *LIS PENDENS* IS UNLAWFUL AND THE COURT SHOULD ORDER THE GOVERNMENT TO REMOVE IT..................................................................6

    A.  The *Lis Pendens* Must Be Removed Because the Government Had No Authority Under Federal Law To File It....................................................6

    B.  The *Lis Pendens* Violates D.C. Law and Must Be Ordered Removed. .................11

II.  THE COURT SHOULD REMOVE THE APPEARANCE BOND ON THE HAWTHORNE PROPERTY. ..........................................................................12

    A.  Subsequent Developments Following the Court's Initial Denial Favor Substitution of the South Carolina Properties..........................................14

    B.  The Section 3142(g) Factors Support Substitution of the South Carolina Properties. ..........................................................................................16

III.  MR. GOLDSTEIN HAS A SIXTH AMENDMENT RIGHT TO SELL THE HAWTHORNE PROPERTY TO FUND HIS DEFENSE. ...............................18

IV.  IN THE ALTERNATIVE, MR. GOLDSTEIN IS ENTITLED TO A *FARMER* HEARING...................................................................................................20

    A.  Mr. Goldstein Has Met His Initial Burden To Show That He Requires Access to the Hawthorne Property's Equity To Fund His Defense Costs............21

    B.  Mr. Goldstein Has Met His Initial Burden To Show That The Hawthorne Property Is An Untainted Asset. ...........................................................22

CONCLUSION....................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Fletcher v. United States*,
   No. 5:02-CR-8-1H, 2007 WL 9754342 (E.D.N.C. May 21, 2007) ........................................21

*United States v. Jarvis,*
   499 F.3d 1196 (10th Cir. 2007) ...................................................................................7, 8, 12

*Luis v. United States*,
   578 U.S. 5 (2016)................................................................................................. 1, passim

*United States v. Bollin*,
   264 F.3d 391 (4th Cir. 2001) ...............................................................................................7

*United States v. Boyer*,
   58 F. Supp. 3d 173 (D. Mass. 2014) ..................................................................................12

*United States v. Byrd*,
   153 F. Supp. 3d 851 (D. Md. 2015)..............................................................................21, 22

*United States v. Chamberlain*,
   868 F.3d 290 (4th Cir. 2017) (en banc) ...............................................................................7

*United States v. Farkas*,
   No. 1:10-cr-200, 2011 WL 5101752 (E.D. Va. Oct. 26, 2011), aff'd, 474 F.
   App'x 349 (4th Cir. 2012) .................................................................................................11

*United States v. Farmer*,
   274 F.3d 800 (4th Cir. 2001) .........................................................................3, 20, 21, 22

*United States v. Glover*,
   8 F.4th 239 (4th Cir. 2021) .....................................................................................1, 18, 21

*United States v. Gonzalez-Lopez*,
   548 U.S. 140 (2006)...........................................................................................................18

*United States v. Jameel*,
   No. 2:13-cr-98, 2014 WL 5317860 (E.D. Va. Oct. 16, 2014), aff'd, 626 F.
   App'x 415 (4th Cir. 2015) ...................................................................................................9

*United States v. Joel*,
   No. 8:11-CR-89-T-23TGW, 2012 WL 2499424 (M.D. Fla. June 5, 2012)...........................10

*United States v. Kramer*,
   No. 1:06-CR-200-ENV-CLP, 2006 WL 3545026 (E.D.N.Y. Dec. 8, 2006)...........................12

*United States v. Miller,*
   911 F.3d 229 (4th Cir. 2018) ................................................................7

*United States v. Parrett,*
   530 F.3d 422 (6th Cir. 2008) ................................................................7

*United States v. Patel,*
   888 F. Supp. 2d 760 (W.D. Va. 2012) ...........................................21, 22

*United States v. Peters,*
   732 F.3d 93 (2d Cir. 2013)...................................................................9

*United States v. Pole No. 3172, Hopkinton,*
   852 F.2d 636 (1st Cir. 1988).............................................................10

*United States v. Queri,*
   679 F. Supp. 2d 295 (N.D.N.Y. 2010) ..............................................12

*United States v. Rivera,*
   No. 22-20552-CR, 2023 WL 4363544 (S.D. Fla. July 6, 2023).........7, 12

*United States v. Sperber,*
   No. 1:21-cv-328-MLB, 2023 WL 3562967 (N.D. Ga. May 19, 2023) ...................9

**STATE CASES**

*Garcia v. Tygier,*
   295 A.3d 594 (D.C. 2023) .................................................................11

*Heck v. Adamson,*
   941 A.2d 1028 (D.C. 2008) ...............................................................11

**FEDERAL STATUTES**

18 U.S.C. § 982(a)(2)..................................................................7, 8, 9, 10

18 U.S.C. § 982(b)(1) ...........................................................................11

18 U.S.C. § 1014 ...............................................................................6, 8

18 U.S.C. § 3142(c)(1)(B) ..............................................................2, 12, 15

18 U.S.C. § 3142(g) ............................................................................16

18 U.S.C. § 3142(g)(1) .........................................................................16

18 U.S.C. § 3142(g)(2) .........................................................................17

18 U.S.C. § 3142(g)(3) .........................................................................17

18 U.S.C. § 3142(g)(4) ...................................................................................................18

18 U.S.C. § 3145(c) .......................................................................................................13

21 U.S.C. § 853(e) ...........................................................................................................7

21 U.S.C. § 853(p) ...................................................................................................11, 12

**STATUTES - OTHER**

D.C. Code Ann. § 42-1207(b).........................................................................................11

**CONSTITUTIONAL PROVISIONS**

Sixth Amendment ................................................................................................... passim

## <u>INTRODUCTION</u>

Defendant Thomas Goldstein needs to sell his home in Washington D.C. (the "Hawthorne Property") to fund his defense in this case.  As the documents filed under seal with the Court and Mr. Goldstein's reports to Pretrial Services show, the Hawthorne Property is the only asset available to pay for counsel, expert witnesses, and other expenses in this complex tax case.

The government has taken two actions that—in violation of Mr. Goldstein's Sixth Amendment right to counsel—prevent Mr. Goldstein from selling the Hawthorne Property to fund his defense.  First, the government has filed a *lis pendens* on the Hawthorne Property with the D.C. Recorder of Deeds. (Exhibit A).  Second, the government has opposed the defense request to modify the release condition ordered by the Magistrate Judge imposing an appearance bond on the Hawthorne Property, notwithstanding the offer by Mr. Goldstein's family to secure his appearance with properties in South Carolina (the "South Carolina Properties") that have dramatically greater value than Mr. Goldstein's interest in the Hawthorne Property.  Each condition makes it impossible for Mr. Goldstein to sell the Hawthorne Property to fund his defense.  Each condition should be lifted as an unlawful violation of Mr. Goldstein's constitutional right under the Sixth Amendment "to be represented by an otherwise qualified attorney whom that defendant can afford to hire."  *United States v. Glover*, 8 F.4th 239, 244 (4th Cir. 2021) (quoting *Luis v. United States*, 578 U.S. 5, 12 (2016) (plurality op.)).

Start with the *lis pendens*.  The *lis pendens* violates both the federal forfeiture statute and District of Columbia law because the property was acquired prior to and independent of any unlawful activity.  The government's argument to the contrary is based on a wildly speculative theory that (to the defense's knowledge) has never been adopted by any court.

The security bond on the Hawthorne Property is legally unwarranted, as it is not the least restrictive condition that will assure Mr. Goldstein's appearance, 18 U.S.C. § 3142(c)(1)(B).  Mr. Goldstein's family has offered to substitute the South Carolina Properties that have much greater value than Mr. Goldstein's interest in the Hawthorne Property to assure his appearance, and a family member will be present at the hearing on this motion to address any questions from the Court.  A bond on the South Carolina Properties is sufficient.  Mr. Goldstein has complied with (and does not challenge) his many release conditions, including the surrendering of his passport; restrictions on his ability to travel outside of the Washington, D.C. metropolitan area; and his inability to transfer funds or engage in certain other financial activities without pretrial approval. *See* ECF No. 6, ¶ 8.[1]  Notably, neither the government nor Pretrial Services opposed a request from Mr. Goldstein to travel abroad this past spring to attend his child's graduation, ECF No. 117, a request that the Magistrate Judge promptly approved, ECF No. 118.

In addition, both the *lis pendens* and the security bond should be removed for the additional reason that they violate Mr. Goldstein's Sixth Amendment right to counsel.  Without the requested relief, Mr. Goldstein will be unable to fund his defense.  A declaration signed by Mr. Goldstein and filed under seal with the Court shows that he has no other assets that are sufficient to pay the costs of the defense of this complex tax case, including legal and expert

---

[1]    Pretrial Services submitted a notice of apparent violation on August 13, 2025.  Pretrial Services noted Mr. Goldstein's history of full compliance with his release conditions, and requested no action.  The Court agreed no action was necessary.  In that instance, Mr. Goldstein simply moved money between two accounts he controls, to make it easier to pay for living expenses.  Mr. Goldstein obviously was not attempting to conceal the transfer.  He provides the statements for *both* accounts to Pretrial Services each month.  And Mr. Goldstein could simply have used the money from the transferor account, without raising any issue under the release conditions.  Mr. Goldstein's failure to tell Pretrial Services at the time of the transaction, although a technical violation of the release conditions, was obviously an innocent mistake. Pretrial Services does not suggest otherwise.

fees.  A separate declaration from undersigned counsel filed under seal and *ex parte* describes those costs.  *See* Kravis Decl.  Under these circumstances, a *lis pendens* and a security bond encumbering the only asset that Mr. Goldstein can use to fund his defense violates the Sixth Amendment.  *See Luis*, 578 U.S. at 10 (plurality op.).[2]

████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

██████████████████████████

When Mr. Goldstein first raised these issues with the Court, the Court previously denied similar motions without prejudice, on the ground that the Court did not yet have a full picture of Mr. Goldstein's finances.  ECF No. 76, at 7.  Mr. Goldstein's subsequent submissions to Pretrial Services and the documents filed under seal in connection with this motion provide the Court with that picture.  They show that without the requested relief Mr. Goldstein will be unable to fund his defense in this case.  (The defense has already provided the government with more-than-enough information to show that Mr. Goldstein has no significant assets and that he clearly cannot afford the cost of counsel, though the government has refused to remove the *lis pendens* or consent to the substitution of the security bond, forcing Mr. Goldstein to seek relief through

---

[2]    Alternatively, and as discussed below, under *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001), Mr. Goldstein is entitled to a hearing based on a preliminary showing that the Hawthorne Property is an untainted asset and that Mr. Goldstein has no other funds to pay for his defense.

this motion.)  Accordingly, the defense requests that the Court lift the *lis pendens* and substitute the South Carolina Properties to secure Mr. Goldstein's appearance.

## BACKGROUND

At Mr. Goldstein's initial appearance, Pretrial Services recommended that Mr. Goldstein be released on a $100,000 unsecured bond.  The government disagreed and requested that Mr. Goldstein be required to post the Hawthorne Property as a condition of pretrial release.  Jan. 27, 2025 Hr'g Tr. at 12; Pretrial Services Report at 8.  Though Mr. Goldstein's counsel at the time argued he needed access to his equity in the Hawthorne Property to pay his defense's "legal fees," Chief Magistrate Judge Sullivan concluded that Mr. Goldstein could fund his defense from his then-existing savings (though the Pretrial Services report acknowledged that Mr. Goldstein had a negative net worth of more than $3.3 million).  Jan. 27, 2025 Hr'g Tr. at 16.  Chief Magistrate Judge Sullivan ordered a bond on the Hawthorne Property as a condition of Mr. Goldstein's pretrial release.  ECF No. 6, ¶ 8(c); *see also* ECF No. 8 (the executed bond).

Shortly thereafter, on January 29, 2025, Mr. Goldstein filed a motion requesting that the Court substitute the bond on the Hawthorne Property with the three South Carolina Properties collectively appraised at approximately $1.5 million (more than double Mr. Goldstein's outstanding equity in the Hawthorne Property) and owned free and clear by Mr. Goldstein's immediate family members.[3]  ECF No. 18.  In that motion, Mr. Goldstein noted that he "need[ed] to use his equity in the Hawthorne St. property to fund his defense."  *Id.* at 2.  Chief

---

[3]      The three South Carolina Properties are: (1) 411 Harden Street, Columbia, South Carolina 29205, which is owned by Mr. Goldstein's father and stepmother and had an appraised taxable value in 2024 of $677,200; (2) 2728 Kiawah Avenue, Columbia, South Carolina 29205, which is owned by Mr. Goldstein's father, stepmother, and sister and had an appraised taxable value in 2024 of $341,500; and (3) 19 Ft. Fremont Road, Saint Helena Island, South Carolina 29920, which is owned by Mr. Goldstein's father and stepmother and had an appraised taxable value in 2024 of $455,900.  *See* ECF No. 18, ¶ 6; *see also* ECF Nos. 18-1, 18-2, and 18-3.

Magistrate Judge Sullivan denied that motion, though he did amend the appearance bond to provide that the Hawthorne Property "will only be forfeited if Mr. Goldstein fails to appear as required, and not for other violations of the conditions of release."  ECF No. 19, at 1.

While Mr. Goldstein's motion requesting the Court substitute the appearance bond on the Hawthorne Property was pending, on January 31, 2025, the government filed with the D.C. Record of Deeds a "Notice of Lis Pendens."  *See* Exhibit A.  That *lis pendens*—which has been publicly filed and is available to any potential buyer of the Hawthorne Property—announces that these proceedings "affect[] title" to the property, which the government alleges "constitut[e] or [is] derived from proceeds the Defendant obtained directly or indirectly as a result of the criminal offenses [sic.]."  *Id.* at 1.  Because of the *lis pendens*, Mr. Goldstein is unable to sell the Hawthorne Property because no buyer is willing to purchase at fair market value a property that is subject to a *lis pendens*.  Goldstein Decl., ¶ 4.

On February 2, 2025, Mr. Goldstein filed a *pro se* motion asking this Court to (1) review his conditions of pretrial release and allow the substitution of a bond on the three South Carolina Properties instead of the Hawthorne Property; and (2) limit the scope of the government's forfeiture allegation to exclude the Hawthorne Property.  ECF No. 30.[4]  Mr. Goldstein again argued that he needed to access the equity in the Hawthorne Property to fund his defense.  *Id.* at 6-7.  Soon after, undersigned counsel entered an appearance (even in the absence of a retainer agreement) because Mr. Goldstein had been unjustly detained on a false allegation that he had transferred a large amount of cryptocurrency.  Given the presence of counsel, and in the wake of the government's (debunked) allegations about undisclosed funds, the Court found that Mr.

---

[4]    The government subsequently moved to strike the *pro se* filing, *see* ECF No. 32, but the Court denied the government's motion to strike.  ECF No. 76, at 7.

Goldstein had "not shown that he will not have sufficient funds to hire counsel, unless the Court allows the substitution [of] the South Carolina Properties" and that Mr. Goldstein's "financial position is also not clear to the Court." ECF No. 76, at 7. As a result, the Court denied without prejudice Mr. Goldstein's motion to substitute the bond on the Hawthorne Property with a bond on the South Carolina Properties. The Court noted that Mr. Goldstein "may renew th[e] motion once his financial information has been provided to the Court." *Id.* The Court also denied without prejudice Mr. Goldstein's motion to limit the scope of the government's forfeiture allegation because it concluded that the motion was "not properly before the Court." *Id.*

In May 2025, the defense asked the government to reconsider its position on the security bond and the *lis pendens* in light of Mr. Goldstein's record of compliance with his release conditions, the need to sell the Hawthorne Property to fund his defense, and the fact that the Hawthorne Property is an untainted asset. Over the next two months, the defense responded to numerous emails from the government asking approximately 25 detailed questions about Mr. Goldstein's finances. As of August 20, 2025, the government has refused to change its position on these issues.

## ARGUMENT

### I. THE *LIS PENDENS* IS UNLAWFUL AND THE COURT SHOULD ORDER THE GOVERNMENT TO REMOVE IT.

#### A. The *Lis Pendens* Must Be Removed Because the Government Had No Authority Under Federal Law To File It.

The *lis pendens* filed by the government on the Hawthorne Property is unlawful because the undisputed facts show that the Hawthorne Property is an untainted asset and therefore the government may not restrain that asset prior to trial.

The criminal forfeiture statute provides that after a person is convicted of a violation of 18 U.S.C. § 1014, a court "shall order that the person forfeit to the United States any property

constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."  18 U.S.C. § 982(a)(2).  The government is required to show "probable cause to believe that the assets are forfeitable, which requires showing that they have a 'substantial connection' to the crime on which forfeiture is predicated."  *United States v. Miller*, 911 F.3d 229, 232 (4th Cir. 2018) (citation omitted).

Under 21 U.S.C. § 853(e), the government may restrain forfeitable assets prior to trial only if those assets are tainted—that is, only if the assets bear a direct relationship to the defendant's alleged offense.  *United States v. Chamberlain*, 868 F.3d 290, 294 (4th Cir. 2017) (en banc)).  Substitute assets are fundamentally different.  A defendant *must* be permitted to use substitute assets to fund his defense because "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment."  *Luis*, 578 U.S. at 10 (plurality op.).  As in every other circuit that has reviewed this issue, the rule in the Fourth Circuit is that the government may *not* "restrain substitute assets prior to trial" under 21 U.S.C. § 853(e).  *Chamberlain*, 868 F.3d at 296-97 ("[T]here is a firm distinction between the government's authority to restrain tainted and untainted assets[.]").[5]

Consistent with this rule, courts have consistently held that the federal criminal forfeiture statutes do not permit the government to file *lis pendens* notices on substitute assets.  *E.g.*, *United States v. Parrett*, 530 F.3d 422, 432 (6th Cir. 2008); *United States v. Jarvis*, 499 F.3d 1196, 1205 (10th Cir. 2007); *United States v. Rivera*, No. 22-20552-CR, 2023 WL 4363544, at *8 (S.D. Fla. July 6, 2023).  In doing so, they have rejected the government's efforts to "use the

---

[5]     In *Chamberlain*, the Fourth Circuit overruled its old, aberrant rule—alone among the circuits—that substitute property was subject to pretrial restraint.  *See, e.g.*, *United States v. Bollin*, 264 F.3d 391, 421 (4th Cir. 2001).

*lis pendens* mechanism to preserve the substitute property" without having to otherwise follow the procedures required for the restraint of substitute assets. *See Jarvis*, 499 F.3d at 1205.

Here, the government asserts that, in connection with Count 22 of the Superseding Indictment—an alleged violation of 18 U.S.C. § 1014 based on a loan application to a mortgage lender called NFM Lending—the Hawthorne Property is subject to a *lis pendens* because it is subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2). *See* ECF No. 159, at 52.[6]  Undisputed facts demonstrate that the Hawthorne Property is untainted property and therefore cannot be restrained through a *lis pendens*.

The Superseding Indictment alleges that Mr. Goldstein submitted the loan application to NFM Lending on July 11, 2021, and that after NFM approved the loan, the loan was closed on September 29, 2021.  ECF No. 159, ¶¶ 100, 102.  The Superseding Indictment alleges that Mr. Goldstein omitted information on that application about certain personal debts he owed; about his tax liability for the previous calendar year; and about his role as a guarantor on two financing agreements between his law firm Goldstein & Russell ("G&R") and a litigation funder ("Litigation Funder[7]").  *Id.* ¶ 103.[8]

Critically, nowhere does the Superseding Indictment allege that Mr. Goldstein used the funds he received from the NFM Lending loan to purchase the Hawthorne Property.  Nor could it: It is undisputed that Mr. Goldstein and his wife purchased the Hawthorne Street property in

---

[6]    Though the Superseding Indictment's forfeiture allegation also covers two other 18 U.S.C. § 1014 offenses, Counts 20 and 21, the government's bill of particulars clarifies that the sole basis for seeking forfeiture of the Hawthorne Property is Count 22 of the Superseding Indictment.  *See* ECF No. 21, at 1.

[7]    Mr. Goldstein uses here the same pseudonym used by the government in its Superseding Indictment.

[8]    The Superseding Indictment alleges in one place that Mr. Goldstein was applying for a loan of $180,000 (*id.* at 51) but elsewhere alleges that the loan was for $1,987,500 (*id.* ¶ 100).

March 2021, i.e., six months *before* receiving the funds from NFM Lending.  *Id.* ¶ 99.  By the time Mr. Goldstein received the funds from NFM Lending, he had already purchased, closed on, and moved into the Hawthorne Property.  And while NFM Lending executed a mortgage on the Hawthorne Property, it did so because that was the asset securing the loan (and not because Mr. Goldstein used the NFM Lending funds to purchase the house).  Indeed, the NFM Lending closing disclosure states that the "purpose" of the loan is a "home equity loan," and not a home "purchase."  *See* Exhibit B, at 2 (capitalization removed).

Instead, Mr. Goldstein used the proceeds of the NFM Lending loan to pay off loans his law firm had received earlier from the Litigation Funder.  The Litigation Funder had, in Spring 2021, loaned funds to G&R, which in return had "pledge[d] certain receivables potentially due in specified court cases and other legal matters" to the Litigation Funder.  ECF No. 159, ¶ 97.  Once the Litigation Funder's funds had been received, Mr. Goldstein used those funds to pay his outstanding tax liabilities for the 2016 and 2017 tax years, which were encumbering property he then owned in Chevy Chase, Maryland (not the Hawthorne Property).  *Id.* ¶ 98.

These undisputed facts demonstrate that the Hawthorne Property is *not* "proceeds" of the offense charged in Count 22 of the Superseding Indictment.  Therefore, the government cannot restrain the Hawthorne Property pretrial under 18 U.S.C. § 982(a)(2).  Instead, this case is subject to the ordinary rule that in cases of alleged loan fraud, forfeiture under Section 982(a)(2) is limited to the amount of the loan itself.  *See United States v. Peters*, 732 F.3d 93, 102 (2d Cir. 2013) ("The proceeds of a fraudulently obtained loan equal the amount of the loan." (citation modified)); *see also, e.g.*, *United States v. Jameel*, No. 2:13-cr-98, 2014 WL 5317860, at *3 (E.D. Va. Oct. 16, 2014), *aff'd*, 626 F. App'x 415 (4th Cir. 2015); *United States v. Sperber*, No. 1:21-cv-328-MLB, 2023 WL 3562967 (N.D. Ga. May 19, 2023).  In other cases, the government

has taken precisely this position.  *See, e.g.*, *United States v. Joel*, No. 8:11-CR-89-T-23TGW,

2012 WL 2499424, at *3 (M.D. Fla. June 5, 2012) ("Therefore, based on these two loans, the

United States seeks a money forfeiture judgment pursuant to § 982(a)(2) for $344,000, which is

the sum of these loans.").  *United States v. Pole No. 3172, Hopkinton* is especially instructive

because the First Circuit there rejected the notion that "forfeitability spreads like a disease" from

the mortgage "to the entire interest in the property acquired prior to the payment."  852 F.2d 636,

639 (1st Cir. 1988).  In that civil forfeiture case, the court held that insofar as the specific

mortgage payments were made from proceeds of an offense, the "interest acquired as a result of"

those payments was forfeitable, not the entire interest in the property.  *Id.* at 639-40.

In prior filings (ECF No. 34, at 15-17), the government has put forward a convoluted

claim as to how the Hawthorne Property constitutes "proceeds" from the offense charged in

Count 22.  The government's reasoning follows five steps: (1) the Hawthorne Property was

partially purchased using funds borrowed from the Litigation Funder in March 2021; (2) the

home equity loan from NFM Lending was used to repay the Litigation Funder six months later;

(3) absent the home equity loan from NFM Lending, Mr. Goldstein would not have been able to

pay the Litigation Funder; (4) the Litigation Funder would then have sued Mr. Goldstein and

prevailed; and (5) the Litigation Funder would have recovered the Hawthorne Property in that

hypothetical litigation.  *See id.*

Even if the government could prove that attenuated chain of causation—which it makes

no attempt to do—it would have no legal significance.  Mr. Goldstein and his wife already

owned the Hawthorne Property at the time they executed the loan at issue in Count 22; it was

therefore untainted property.  The government's contrary assertion is that absent the alleged loan

fraud charged in Count 22, Mr. Goldstein would have had to liquidate the Hawthorne Property as

10

an asset. But that does not render the home "tainted." Imagine that to pay the Litigation Funder Mr. Goldstein would have liquated his retirement accounts, which was certainly a realistic possibility.[9] That of course would not render the retirement accounts "tainted" assets. *See United States v. Farkas*, No. 1:10-cr-200, 2011 WL 5101752, at *3 (E.D. Va. Oct. 26, 2011) ("[P]roperty is forfeitable if the defendant would not have received it but for his illegal activities."), *aff'd*, 474 F. App'x 349 (4th Cir. 2012).

The Hawthorne Property is therefore untainted property which the government could, at most, theoretically seek to recover following a conviction as a *substitute* asset under 21 U.S.C. § 853(p). *See* 18 U.S.C. § 982(b)(1) (adopting the provisions of 21 U.S.C. § 853(p)).

### B.    The *Lis Pendens* Violates D.C. Law and Must Be Ordered Removed.

The government's filing of a *lis pendens* against the Hawthorne Property also violates D.C. law, which governs the filing of the notice here. *Garcia v. Tygier*, 295 A.3d 594, 601 (D.C. 2023). Under the relevant provision of the D.C. Code, a *lis pendens* "shall be effective only if the underlying action or proceeding directly affects the title to . . . or asserts a[n] . . . ownership interest in real property situated in the District of Columbia." D.C. Code Ann. § 42-1207(b). The statute further adds that it "shall not be construed to apply where the title to or interest in the real property affected by the notice is not directly at issue in the underlying action or proceeding." *Id.* § 42-1207(j); *see also Garcia*, 295 A.3d at 603 ("[T]he doctrine of lis pendens cannot be applied to real property tangentially related to the dispute." (citation omitted)).[10]

---

9 ████████████████████████████████████████████████████████████

10    The current language of § 42-1207 was added by the D.C. Council in 2010 to reverse the D.C. Court of Appeals' prior holding that the statute allowed *lis pendens* notices where the pending litigation did not directly place property interests at issue. *See Heck v. Adamson*, 941 A.2d 1028, 1030 (D.C. 2008).

Because the federal forfeiture statute "does not explicitly authorize the United States to claim any pre-conviction right, title, or interest in § 853(p) substitute property," *Jarvis*, 499 F.3d at 1204, the government has no interest to assert in the Hawthorne Property, nor do these pending criminal proceedings affect Mr. Goldstein's interest in that property.

As in numerous similar cases, this Court has the authority to order the government to remove the *lis pendens* it has filed with the D.C. Recorder of Deeds.  Federal courts have repeatedly held that under various state law, the government is not permitted to file a *lis pendens* against substitute property for which it intends to seek forfeiture.  *See, e.g.*, *Jarvis*, 499 F.3d at 1205 (New Mexico law); *Rivera*, 2023 WL 4363544, at *4 (Florida law); *United States v. Boyer*, 58 F. Supp. 3d 173, 176 (D. Mass. 2014) (Massachusetts law); *United States v. Queri*, 679 F. Supp. 2d 295, 299 (N.D.N.Y. 2010) (New York law); *United States v. Kramer*, No. 1:06-CR-200-ENV-CLP, 2006 WL 3545026, at *10 (E.D.N.Y. Dec. 8, 2006) (New York law).  These courts have all concluded that the appropriate remedy is an order issued by the federal court instructing the government to remove the improperly filed *lis pendens* notice.  Here too, this Court should order the government to remove the *lis pendens* notice on the Hawthorne Property.

## II.    THE COURT SHOULD REMOVE THE APPEARANCE BOND ON THE HAWTHORNE PROPERTY.

Mr. Goldstein's ability to fund his defense through his only remaining asset is also blocked by the appearance bond currently placed on the Hawthorne Property.  Though Pretrial Services concluded that no bond was necessary to secure Mr. Goldstein's appearance and instead recommended that Mr. Goldstein be released on a $100,000 bond, Jan. 27, 2025 Hr'g Tr. at 12; Pretrial Services Report at 8, the Magistrate Judge ordered that Mr. Goldstein put up the Hawthorne Property as bond for his appearance.  ECF No. 6, ¶ 8(c).  But the appearance bond is not the "least restrictive . . . condition" that will "reasonably assure [his] appearance."  18 U.S.C.

§ 3142(c)(1)(B).  Mr. Goldstein has arranged to post alternate assets—the South Carolina Properties—to secure his appearance.  Therefore, the Court should amend Mr. Goldstein's conditions of pretrial release under 18 U.S.C. § 3145(c) to allow the substitution of the South Carolina Properties, whose value far exceeds Mr. Goldstein's equity interest in the Hawthorne Property.

Mr. Goldstein has offered substantial assets in the form of the South Carolina Properties as alternative collateral and they are more than adequate to assure his appearance.  As stated in previous submissions, close members of Mr. Goldstein's family—his father, stepmother, and sister—are willing to post their own properties as security for his appearance.  *See* ECF Nos. 18-1, 18-2, 18-3. With appraised taxable value of approximately $1.5 million (which is almost certainly lower than fair market value[11]), the financial security these properties provide well exceeds the approximately $600,000 in equity that Mr. Goldstein holds in the Hawthorne property.  *Id.*; Goldstein Decl., ¶ 5.

The Court previously noted that apart from the relative financial value of the properties, it found relevant "the value that the Defendant places on the [Hawthorne] property."  ECF No. 76, at 6.  But the whole reason Mr. Goldstein seeks to have the appearance bond removed from the Hawthorne Property (and substituted to the South Carolina Properties) is so that he can sell the Hawthorne Property in order to fund his defense.  To the extent the government or the Court believes that Mr. Goldstein's appearance will be assured by his non-financial attachment to the Hawthorne Property, *see, e.g.*, ECF No. 34, at 11 (government arguing that Mr. Goldstein's "emotional" connection to the Hawthorne Property "is stronger than any connection to the South

---

[11]    In fact, according to estimates available at the real estate website Redfin.com, the properties have a collective estimated value of over $2.1 million.  *See* Exhibit C.

Carolina properties"), that conclusion is undercut by the fact that Mr. Goldstein already intends to cut ties to the Hawthorne Property by selling it in order to fund his defense.  Moreover, the Hawthorne Property is far from the archetypal "family home" to which a defendant has outsized attachment.  As the Superseding Indictment itself acknowledges, Mr. Goldstein has only owned the Hawthorne Property for a little more than four years, ECF No. 159, ¶ 98, meaning that the Hawthorne Property was not where he lived for much of his adult life and not the house where his children grew up. ███████████████████████████████████████

Given all of this, any consideration of "emotional" attachment cuts in favor of substitution of the South Carolina Properties, since Mr. Goldstein's failure to appear would deprive his close loved ones, including his aged father and stepmother, of their properties.

### A.    Subsequent Developments Following the Court's Initial Denial Favor Substitution of the South Carolina Properties.

While the Court previously denied a similar request by Mr. Goldstein, that denial was without prejudice, and the Court invited Mr. Goldstein to "renew [that] motion once his financial information has been provided to the Court."  ECF No. 76, at 7.  Four subsequent developments demonstrate why the requested substitution is appropriate.

*First*, Mr. Goldstein has now provided information about his financial assets to Pretrial Services in accordance with the Court's order, *see id.*, and is submitting a detailed financial declaration under seal as an exhibit to this motion.  As demonstrated by those materials, Mr. Goldstein does not have any other significant resources apart from his equity interest in the Hawthorne Property with which he can fund his defense.  Goldstein Decl., ¶ 6.  While the Court previously referenced a report by Pretrial Services that stated ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████    Mr. Goldstein is of course willing to provide the Court with any additional information about his financial condition that will assist the Court in ruling on this motion.

*Second*, over the months since the Court's February 18, 2025 decision denying without prejudice his request to substitute the South Carolina Properties, Mr. Goldstein has a near perfect record of compliance with the terms of his pretrial release. Indeed, neither the government nor Pretrial Services opposed a request from Mr. Goldstein to travel abroad this past spring to attend his child's graduation, ECF No. 117, a request that the Magistrate Judge promptly granted, ECF No. 118. Under these circumstances, there is no reason to believe that Mr. Goldstein's appearance can only be reasonably assured by posting the Hawthorne Property uniquely, and that posting the South Carolina Properties would not provide the same or better assurance. *See* 18 U.S.C. § 3142(c)(1)(B) (requiring the Court to place "the least restrictive . . . condition, or combination of conditions" that "will reasonably assure the appearance of the person as required").

*Third,* at this point in the litigation Mr. Goldstein has a clearer picture of the costs associated with his defense. Those costs are described in a sealed *ex parte* declaration from Mr. Goldstein's counsel. *See* Kravis Decl.

15

*Fourth*, ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

## B.    The Section 3142(g) Factors Support Substitution of the South Carolina Properties.

None of the statutory factors listed at 18 U.S.C. § 3142(g) supports the proposition that the Hawthorne Property *alone* can reasonably assure Mr. Goldstein's appearance.  If anything, those factors counsel in favor of substituting the South Carolina Properties for the appearance bond.

*First*, nothing about the nature or circumstances of the charged offenses counsels any restriction specific to the Hawthorne property. 18 U.S.C. § 3142(g)(1).  Mr. Goldstein's charges involve serious but nonviolent offenses, and it is undisputed that Mr. Goldstein was long aware of the government's investigation and possibility that he may be charged.  Still, there has been no indication that Mr. Goldstein has even contemplated fleeing and intends on doing anything other than vigorously disputing the charges brought against him at trial.  Moreover, though the government alleges that Mr. Goldstein committed fraud in connection with certain mortgage applications (Counts 20-22), it is undisputed that no funds received in connection with the relevant applications were used to purchase the Hawthorne Property.  *See supra* at pp. 8-11.

*Second*, nothing about the "weight of the evidence" against Mr. Goldstein compels the conclusion that posting the Hawthorne Property as bond is necessary to assure his appearance.  *See* 18 U.S.C. § 3142(g)(2).  As Mr. Goldstein has pointed out in the many pretrial motions he filed, *see* ECF Nos. 116, 119, 120, 121, 122, 125, 126, and 127, the government's case against

Mr. Goldstein suffers from serious and fatal flaws. For the reasons laid out in his pretrial motions and for reasons that he will raise at trial, Mr. Goldstein intends to appear at trial in order to vigorously defend himself. Moreover, as the Court previously acknowledged, "this case will involve tens of thousands of documents regarding the alleged offenses and almost 80 witnesses." ECF No. 76, at 6. The extensive amount of preparation required only confirms the significant costs of defending this case, which is why Mr. Goldstein is seeking substitution of the South Carolina Properties in order to pay for his defense costs by selling the Hawthorne Property.

*Third*, nothing about Mr. Goldstein's history and personal characteristics suggests that the Hawthorne Property is uniquely required to secure his appearance. 18 U.S.C. § 3142(g)(3). Mr. Goldstein is a well-respected member of the bar and has extensive, robust ties to the community. He has no criminal record. And he has a flawless "record concerning appearance at court proceedings." *Id.* § 3142(g)(3)(A). To the extent that the Court is concerned with Mr. Goldstein's "experience with international travel" and "ties to wealthy individuals in foreign countries," two considerations are relevant. Mr. Goldstein's limited financial resources (as demonstrated by the attached declaration) mitigate these concerns. And whatever the merits of these concerns are, they presumably apply with equal measure to the South Carolina and Hawthorne Properties; in other words, substituting the South Carolina Properties will do nothing to heighten those concerns.

*Fourth*, Mr. Goldstein poses no danger to the community, *see* 18 U.S.C. § 3142(g)(4), and—in any event—substitution of the South Carolina Properties is not relevant to this factor. The Court has already acknowledged as much because its previous order did not discuss this factor. *See* ECF No. 76, at 4-7.

III.    **MR. GOLDSTEIN HAS A SIXTH AMENDMENT RIGHT TO SELL THE HAWTHORNE PROPERTY TO FUND HIS DEFENSE.**

Both the *lis pendens* and appearance bond are invalid for the further reason that they violate Mr. Goldstein's right to counsel. "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Glover*, 8 F.4th at 244 (quoting *Luis*, 578 U.S. at 12 (plurality op.)). And "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 578 U.S. at 10 (plurality op.); *see also id.* at 24 (Thomas, J., concurring) (agreeing that "a pretrial freeze of untainted assets violates a criminal defendant's Sixth Amendment right to counsel of choice"). Violation of this "fundamental" right is reversible error. *See id.* at 11 (plurality op.); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (holding that erroneous deprivation of the right to counsel of the defendant's choice was itself reversible error is a "structural error" not subject to harmlessness review). Here, the government's refusal to permit Mr. Goldstein to sell the Hawthorne Property to access his share of equity—his only remaining asset of value with which he can afford to pay his counsel—is a violation of his Sixth Amendment right.

As Mr. Goldstein's attached declaration establishes, without access to the Hawthorne Property's equity, he has no other available assets with which to fund his defense costs. *See* Goldstein Decl., ¶ 6. ████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ████████████████████████████. Moreover, the Indictment, the Superseding Indictment, and the conditions of his release have made it impossible for Mr. Goldstein to earn income. *See id.* ¶ 19 (explaining that Mr. Goldstein has no

other sources of income); *see also* ECF No. 81, at 25 (Mr. Goldstein noting that the electronic monitoring of his devices impedes his ability to provide legal advice to clients).[12]  And monthly bank statements provided to Pretrial Services as a condition of Mr. Goldstein's release show that Mr. Goldstein has no material sources of income other than those set forth in his declaration.

Moreover, the cost of Mr. Goldstein's defense—both those costs already incurred and those costs anticipated through trial—are entirely reasonable in light of the wide sweep of the Superseding Indictment's allegations, which the government itself constantly stresses.  *See* Kravis Decl. ¶¶ 9-12; *see also, e.g.*, ECF No. 34, at 3-4 (government noting that Mr. Goldstein has been charged with "twenty-two felony counts" which are "serious charges" based on allegations "spanning more than half a decade"); ECF No. 84, at 19 (government noting that it has "collected and produced in discovery tens of thousands of documents" and that it "has identified nearly 80 witnesses").  The nearly two dozen charges span many years and involve both novel legal and complex factual issues.  The pretrial work is extensive, and the trial itself is expected to last weeks, *see* Jan. 27, 2025 Hr'g Tr. at 11.

Taken together, the record establishes that Mr. Goldstein has exhausted all alternative funding sources, that the costs of his defense will be significant, and that he needs access to his one remaining significant asset—his equity interest in the Hawthorne Property—in order to continue funding his defense.  The defense conveyed these facts to the government in an attempt to avoid litigating the present motion.  In prior correspondence, the government asked approximately 25 invasive questions covering topics ranging from Mr. Goldstein's travel to the breakdown of labor between Mr. Goldstein and his attorneys.  In an attempt to reach a resolution

---

[12]    Pursuant to the order setting the conditions of his pretrial release, *see* ECF No. 6, ¶ 8(k), Mr. Goldstein is also prohibited from having contact with many dozens of individuals, some of whom were significant clients.

to these issues and avoid burdening the Court's docket with unnecessary motion practice, the defense responded as appropriate.  Still, the government refused to take steps to permit Mr. Goldstein to sell the Hawthorne Property.

It bears noting that the government's pre-motion attempts to exhaustively examine Mr. Goldstein's spending is wildly inappropriate.  As noted in Mr. Goldstein's declaration, he has significantly reduced his spending since his indictment.  Goldstein Decl., ¶ 20.  But the only relevant question is whether he can pay for counsel without selling the Hawthorne Property; unquestionably, he cannot.  In seeking details about Mr. Goldstein's spending and other aspects of his financial life, the government has instead used its encumbrances on the Hawthorne Property to both improperly seek discovery related to the allegations of the Superseding Indictment and attempt to litigate Mr. Goldstein's private life in public.

## IV.  IN THE ALTERNATIVE, MR. GOLDSTEIN IS ENTITLED TO A *FARMER* HEARING.

While the Court should grant this motion to permit Mr. Goldstein to sell the Hawthorne Property in order to fund his defense on the basis of the record before it—including the attached declarations sworn under penalty of perjury—in the alternative, the Court should hold an evidentiary hearing pursuant to *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001).  In *Farmer*, the Fourth Circuit held that "due process requires a pretrial adversary hearing when [1] a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and [2] that he has no other funds from which to secure the counsel of his choice." 274 F.3d at 803.  Once "a defendant sufficiently alleges that the government may have wrongly seized assets needed to hire counsel of choice," the defendant is entitled to a *Farmer* hearing in order to "prove by a preponderance of the evidence that the seized assets are untainted." *Glover*, 8 F.4th at 244.

Failure to hold a *Farmer* hearing where a defendant is entitled to one is reversible error. *Farmer*, 274 F.3d at 806.  Courts in this Circuit regularly conclude that defendants are entitled to *Farmer* hearings on facts similar to those presented here.  *E.g.*, *id.*; *United States v. Byrd*, 153 F. Supp. 3d 851, 857 (D. Md. 2015); *United States v. Patel*, 888 F. Supp. 2d 760, 771 (W.D. Va. 2012); *Fletcher v. United States*, No. 5:02-CR-8-1H, 2007 WL 9754342, at *2 (E.D.N.C. May 21, 2007); *see also Glover*, 8 F.4th at 245 (the Fourth Circuit noting that it is "inclined to agree . . . that the district court ought to have timely set and conducted a *Farmer* hearing," but that this issue had been waived as a result of the defendant's guilty plea).

A.    **Mr. Goldstein Has Met His Initial Burden To Show That He Requires Access to the Hawthorne Property's Equity To Fund His Defense Costs.**

As Mr. Goldstein's attached declaration establishes, and as discussed above in Section III, without access to the Hawthorne Property's equity, he has no other available assets with which to fund his defense costs.  *See* Goldstein Decl., ¶ 6.  ██████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████ Taken together, these materials establish that Mr. Goldstein's liabilities are numerous, that he has exhausted all alternative fundings sources, and that he needs access to his one significant asset— his equity interest in the Hawthorne Property—in order to continue funding his defense costs.

The sworn declarations submitted herein "allow[] the [C]ourt to make a meaningful, independent assessment" of Mr. Goldstein's inability to fund his defense costs without the use of his equity in the restrained Hawthorne Property.  *See Patel*, 888 F. Supp. 2d at 770.  At a minimum, Mr. Goldstein has met his initial burden, and—to the extent that the government

believes otherwise—it "may present evidence" at the hearing that Mr. Goldstein "has other substantial assets with which to hire attorneys." *Farmer*, 274 F.3d at 805.

**B.      Mr. Goldstein Has Met His Initial Burden To Show That The Hawthorne Property Is An Untainted Asset.**

Mr. Goldstein has also met his initial burden to show that the Hawthorne Property is "untainted." *See Farmer*, 274 F.3d at 803. This initial burden is "merely a threshold test" and requires a defendant to make only "a prima facie showing that the assets at issue are not subject to forfeiture." *Byrd*, 153 F. Supp. 3d at 856. In satisfying that burden, courts accept "proffer[s] [without] supporting facts." *Id.* For the reasons stated in Section I.A *supra*, Mr. Goldstein has amply met that minimal standard. Restraining the Hawthorne Property, therefore, violates his Sixth Amendment right to use untainted assets to pay for counsel of his choice. *Luis*, 578 U.S. at 10 (plurality op.).

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Goldstein respectfully requests that this Court permit him to sell the Hawthorne Property in order to fund his defense with his share of the equity in that property. Specifically, the Court should: (i) order the government to remove the notice of *lis pendens* filed with the D.C. Recorder of Deeds; and (ii) substitute the South Carolina Properties for the Hawthorne Property as the property securing Mr. Goldstein's appearance. In the alternative, the Court should schedule a pretrial adversary *Farmer* hearing to determine that the Hawthorne Property is an untainted asset which Mr. Goldstein requires in order to fund his defense.

22

Respectfully submitted,

/s/ *Jonathan I. Kravis*
_____
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

Dated: August 29, 2025