IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS GOLDSTEIN,<br><br>**Defendant.** | CRIMINAL NO. LKG-25-0006 |

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANT FROM INTRODUCING SELF-SERVING HEARSAY, HIS EXCULPATORY STATEMENTS, OR AGENT INTERVIEW SUMMARIES**

The government requests that the Court preclude Defendant Thomas Goldstein ("Defendant" or "Goldstein") from introducing his own self-serving hearsay statements and agent interview summaries, either substantively or through impeachment. During the October 7, 2025 pretrial motions hearing, Defendant attempted both tactics, and the Court should not allow either at trial.

**FACTUAL BACKGROUND**

Defendant co-founded the law firm, Goldstein & Russell, P.C. ("G&R"), published SCOTUSblog, and, over the course of his career, argued over forty cases before the Supreme Court. In this regard, he is one of the most notable lawyers and legal scholars in the country. Despite his legal acumen and reputation, he failed to report millions of dollars in gambling income, falsely deducted over $1 million in personal expenses as business expenses, concealed his ownership of and transactions in virtual currencies (when in fact he conducted millions of dollars in such transactions and even attempted to purchase a home with cryptocurrency), and repeatedly lied to multiple IRS representatives to hide his schemes.

1

For these acts and others, on August 7, 2025, a Greenbelt grand jury returned a 22-count Superseding Indictment, charging Goldstein with four counts of tax evasion, in violation of 26 U.S.C. § 7201 (Counts One through Four); ten counts of aiding and assisting the preparation of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2) (Counts Five through Fourteen); five counts of willful failure to pay taxes, in violation of 26 U.S.C. § 7203 (Counts Fifteen through Nineteen); and three counts of false statements on a loan application, in violation of 18 U.S.C. § 1014 (Counts Twenty through Twenty-two).

## ARGUMENT

**I.  The Court Should Preclude the Introduction of Self-Serving or Exculpatory Statements by Defendant.**

The government moves this Court for an order precluding Goldstein from introducing any evidence, making any statement, or asking any question that implicates his own out-of-court hearsay statements. Simply put, the defendant may not introduce his own prior statements, whether made to law enforcement or otherwise, at trial.

A defendant's statement may be offered into evidence by the government on two possible bases:

> [The government] may wish to use the statement to establish the truth of the matter stated. In these circumstances, under Rule 801(d)(2)(A) the statement is not hearsay, because it is simply a statement of the opposing party. On the other hand, the government may wish to offer the statement to show that the defendant made false representations to the authorities, from which the jury could infer a consciousness of guilt, and hence guilt.

*United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (discussing post-arrest statements of the defendant offered by the Government at trial). The defendant does not have a parallel ability to offer the statement into evidence. It is well-established that a defendant may not introduce his own out-of-court statements for the truth of the matter asserted. Fed. R. Evid. 80l(d); *see, e.g., United*

*States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (holding that the defendant could not introduce his own out-of-court statements because the Rules of Evidence "do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party"); *Marin*, 669 F.2d at 84 ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Palow*, 777 F.2d 52,56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them."). This is true even when the defendant claims that those statements would be exculpatory, which they are not in this case. *See Wilkerson*, 84 F.3d at 696.[1]

The rationale for such a rule is clear: to permit otherwise would place a defendant's self-serving statements "before the jury without subjecting [him] to cross-examination, precisely what the hearsay rule forbids." *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). In the absence of such a rule, the parties could "effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to firsthand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Importantly, examples abound of defendants attempting to slip in favorable evidence through a "back door." For example, defendants have sought to cross-examine the government's witnesses about self-serving, exculpatory portions of otherwise inculpatory statements. *See Ortega*, 203 F.3d at 682. Defendants have also attempted to invoke the "Rule of Completeness"

---

[1] Of course, a defendant's inculpatory statements, when offered by the government, are admissible party opponent admissions. *See* Fed. R. Evid. 801(d)(2). But this rule operates as a one-way street: a defendant's statements—whether as to themselves or others and whether exculpatory or not—are inadmissible hearsay, even if made contemporaneously with other self-inculpatory statements. *See Williamson v. United States*, 512 U.S. 594, 599 (1994) (finding "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming district court decision to preclude defendant from "eliciting his own exculpatory statements, which were made within a broader, inculpatory narrative").

3

codified in Fed. R. of Evid. 106 to "humanize" themselves or invite sympathy, *see, e.g.*, *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (redacted confession not misleading, so Rule of Completeness did not require admission of the full statement into evidence), and "admit hearsay testimony through the 'back door' without subjecting themselves to cross-examination." *Ortega*, 203 F.3d at 683; *see also United States v. Williston*, 862 F.3d 1023, 1038 (10th Cir. 2017) (district court correctly excluded defendant's own inadmissible hearsay statements to cross-examine a witness, because "such a maneuver would amount to 'an end-run around the adversarial process'").

The government is moving *in limine* to alert the Court to this possible issue and the applicable law, which uniformly holds that such non-inculpatory statements are inadmissible hearsay that may not be introduced at trial through either the back door of cross-examination, invocation of Fed. R. of Evid. 106, or through alleged Rule 1006 summary charts. For example, in October 2018, while Defendant still owed taxes on $26 million he earned from playing poker in 2016, Defendant continued to underreport millions in income, further hid the nature of his poker income by making false representations to an IRS employee, and spent extravagant sums taking romantic partners to Bali and Hong Kong. Specifically, after taking a romantic partner to Hong Kong, on October 25, 2018, Defendant returned to the Unites States. He landed at Dulles International Airport with $968,000 in cash in a duffel bag. Upon landing at Dulles, Defendant told U.S. Customs and Border Patrol Officer Karime Foy that the cash was gambling winnings from Macau and that he had to carry the winnings in cash because he could not transfer money out of the country. Defendant also told his law firm coworkers that the cash was income from a client. However, he caused his accountants to falsely believe that the cash was a loan and, thus, not taxable income.

Separately, he mentioned in a text message to his girlfriend at the time before his trip to Hong Kong that he had "to go pick up $1-2m in cash I'm borrowing to pay taxes[.]" Unless Defendant decides to take the stand and subject himself to cross-examination, such that this hearsay statement can be tested, the Court should not allow him to introduce it. Accordingly, the Court should preclude Defendant from attempting to elicit or introduce information about *any* of his own self-serving statements.

## II. The Court Should Preclude Defendant from the Improper Use of Interview Summary Reports.

Based on the recent pretrial motions hearing, the government requests that the Court preclude Defendant from: (i) introducing the contents of the report to improperly impeach witnesses during cross-examination; (ii) publishing the contents of the report to the jury; or (iii) otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them.

Law enforcement interview reports are not statements of the witness under the Jencks Act, which defines a statement as "a written statement made by said witness and signed or otherwise adopted or approved by him"; a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously"; or a statement made by a witness to the grand jury. *See* 18 U.S.C. § 3500(e). The Supreme Court has held that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *See Palermo v. United States*, 360 U.S. 343, 352-53 (1959); *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) ("[W]hen a government agent interviews a witness and takes contemporaneous notes of the witness' responses, the notes do not become the witness' statement -- despite the agent's best efforts to be accurate -- if the agent does not read back, or the witness does not read, what the

5

[agent] has written.") (internal quotation marks omitted)). Moreover, in *United States v. Cavazos*, the Fourth Circuit held that FBI 302s are not *Jencks* material because they "do not constitute the witness's statements in this context unless the witness has adopted those notes or the notes receive the witness's oral statements substantially verbatim." 542 F. App'x 263, 271 (4th Cir. 2013) (citing *Roseboro*, 87 F.3d at 645).[2]

Over a month before trial, pursuant to an agreement between the parties, the government will be producing numerous interview summaries to the defense. Like in *Cavazos*, these interview summaries do not constitute contemporaneous and substantially verbatim recitals of statements by witnesses but instead are summaries, written after those interviews were completed, and reflect the thought processes and interpretations of the agent. Moreover, the reports were not signed or otherwise adopted by the witnesses themselves. As a result, it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations." *Palermo*, 360 U.S. at 350. Accordingly, this Court should not allow such a tactic here. Further, the Court should also preclude Defendant from publishing any of the reports to the jury or suggesting that the content of the reports are the statements of the witness.

---

[2] Almost every other circuit court to address the question has similarly held that interview summaries generally are not Jencks Act "statements" of the witness. *See United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) ("[B]ecause the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material."); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under . . . the Jencks Act"); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they were not a verbatim recital . . . but rather only an agent's summary.").

**CONCLUSION**

Based on the foregoing, the United States asks the Court to preclude the defense from (i) making any argument or introducing any evidence including his own self-serving hearsay; and (ii) preclude Defendant from introducing the contents of any interview report to improperly impeach a witness during cross-examination or publishing the contents of that report to the jury.

          Respectfully submitted,

          Kelly O. Hayes
          United States Attorney

          /s/
          Adeyemi Adenrele
          Assistant United States Attorney
          District of Maryland

          Sean Beaty
          Senior Litigation Counsel
          Department of Justice—Tax Division

          Emerson Gordon-Marvin
          Hayter Whitman
          Trial Attorneys
          Department of Justice—Tax Division