**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S MOTION IN LIMINE TO EXCLUDE
PROPOSED EXPERT TESTIMONY OF QUOC TUAN NGUYEN**

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| ARGUMENT | 2 |
| CONCLUSION | 6 |

i

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Sardis v. Overhead Door Corp.*,
   10 F.4th 268 (4th Cir. 2021) ...................................................................................2

*United States v. Campbell*,
   963 F.3d 309 (4th Cir. 2020) ...................................................................................2

**FEDERAL RULES**

Fed. R. Evid. 403 ........................................................................................................1, 2

Fed. R. Evid. 702 ........................................................................................................1, 2

**INTRODUCTION**

According to the government's expert notice, IRS Special Agent Quoc Tuan Nguyen intends to testify about Virtual Private Networks ("VPNs") and the email service "Proton Mail"—two digital privacy measures that Mr. Goldstein used (along with thousands if not millions of other people on the internet). The import of Agent Nguyen's testimony is to suggest that there is something illicit about Mr. Goldstein's perfectly lawful activity. But that is plainly not the case here, as the government does not and cannot allege that Mr. Goldstein took these steps to avoid detection by the IRS or law enforcement. Consequently, expert testimony about Proton Mail and VPNs would serve only to confuse and distract the jury while significantly prejudicing Mr. Goldstein by suggesting that his conduct was somehow nefarious. Agent Nguyen's testimony therefore should be excluded under Rules 403 and 702, and the government should not be permitted to argue to the jury that Mr. Goldstein's use of a Proton Mail account or VPNs to access a cryptocurrency website suggests that he acted with illicit intent.

**BACKGROUND**

**1. The Superseding Indictment**

The Superseding Indictment charges Mr. Goldstein with nineteen counts of tax-related crimes, including four counts of willful tax evasion (Counts 1-4) and ten counts (Counts 5-14) of willfully aiding in the preparation of false tax returns. The Superseding Indictment's allegations concerning Proton Mail and VPNs are incredibly sparse.

First, with respect to Proton Mail, the Superseding Indictment alleges that on one occasion Mr. Goldstein "drafted a ledger listing some of his gambling transactions in the 2016 tax year" and later "emailed th[at] ledger . . . to an encrypted, Switzerland-based email account," i.e., his Proton Mail account. ECF No. 159, ¶ 33. Several months later, Mr. Goldstein "emailed an updated version of the ledger to his own G&R email account." *Id.* The Superseding

1

Indictment does not allege that Mr. Goldstein used his Proton Mail account in connection with any other transactions, records, or communications relevant to the charged offenses.

Second, the Superseding Indictment alleges that although Mr. Goldstein engaged in cryptocurrency transactions in 2020 and 2021, he failed to check a box on his 2020 and 2021 tax returns indicating that he had "received, sold, sent, exchanged, or otherwise acquired or disposed of any financial interest in any virtual currency."  ECF No. 159, ¶ 21; *see also id.* ¶¶ 24, 71-73, 83, 85.  In 2021—but not 2020—Mr. Goldstein is alleged to have used a foreign cryptocurrency account to conduct some subset of those transactions.  *Compare id.* ¶ 83, *with* ¶ 71.  The government's expert disclosure claims that the foreign account in question was a Binance.Com account and that Mr. Goldstein "used one or more VPNs to create and use [that] Binance.Com account in 2021."  Ex. A, at 4.

### 2. Agent Nguyen's Proposed Testimony

The government's disclosure states that Agent Nguyen will offer expert testimony on the following topics:  "(1) how Proton Mail works; (2) why investigators often cannot access the contents of Proton Mail accounts and communications; (3) how Virtual Private Networks ('VPN') work; and (4) how it appears that Defendant used one or more VPNs to access Binance.Com despite its policy banning U.S. users from registering or maintaining an account on their platform."  Ex. A, at 2.

### ARGUMENT

The proposed expert testimony of Agent Nguyen regarding Proton Mail and VPNs should be excluded as irrelevant and highly prejudicial.  *See* Fed. R. Evid. 403, 702; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) ("if an [expert] opinion is not relevant to a fact at issue," "it [must] be excluded"); *United States v. Campbell*, 963 F.3d 309, 314 n.1 (4th Cir. 2020) ("[E]ven if an expert witness's opinion is admissible under Rule 702, Rule 403 permits the

district court to exclude relevant opinion testimony 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice.'").

With respect to Proton Mail, the only possible relevance of Agent Nguyen's testimony about "how Proton Mail works" and "why investigators often cannot access the contents of Proton Mail accounts" would be to suggest that Mr. Goldstein created and used his Proton Mail account to conceal a "ledger of 2016 poker transactions" from law enforcement. Ex. A, at 2. (Tellingly, even the government's own expert disclosure offers no other theory of relevance. *See* Ex. A, at 2-3.) But that theory makes no sense. After all, the government's disclosure admits that Mr. Goldstein sent the document *from his law firm email account*, Ex. A, at 2, and the Superseding Indictment alleges that Mr. Goldstein later emailed an "updated version" of that same document *to his law firm email account*, ECF No. 159, ¶ 33. The suggestion that Mr. Goldstein went to the trouble of creating a Proton Mail account to conceal information from the government and then transmitted that information into and out of a work email account that is not concealed from the government is preposterous. The proposed expert testimony is therefore irrelevant.

This testimony is also very likely to confuse the jury and prejudice Mr. Goldstein. Expert testimony from an IRS Special Agent in a cybercrimes unit about how Proton Mail accounts can be used to conceal information from law enforcement—using terms like "end-to-end . . . encryption" and "zero-access encryption" and discussing Swiss privacy laws, *see* Ex. A, at 3—is very likely to give the jury the false impression that Mr. Goldstein created a Proton Mail account for nefarious purposes, when the government has no evidence whatsoever to support that allegation.

The same is true with respect to Agent Nguyen's proposed expert testimony about VPNs.

3

The government's expert disclosure claims this testimony relates to the Superseding Indictment's allegation that Mr. Goldstein maintained a foreign cryptocurrency account through which he conducted transactions that he allegedly willfully failed to disclose on his 2021 tax return. ECF No. 159 ¶¶ 83, 85. But the government's expert notice does *not* say that Agent Nguyen will offer any testimony regarding the use of VPNs to conceal information from law enforcement generally, much less offer the opinion that using a VPN to create a Binance.Com account could conceal from law enforcement the fact that such an account exists or that it is being used to conduct cryptocurrency transactions. Instead, the government's disclosure says only that Agent Nguyen will testify that Mr. Goldstein's use of VPNs allegedly violated *Binance.Com's policies*. But Mr. Goldstein's compliance with Binance.Com policies is completely irrelevant to any charge in the Superseding Indictment.

This is not the first time that the government has attempted to use this issue to make misleading insinuations about Mr. Goldstein's character. After the government had Mr. Goldstein arrested based on the now-thoroughly-discredited allegation that he transferred money among cryptocurrency accounts in violation of his release conditions, Mr. Goldstein appealed the monitoring condition imposed by the Magistrate Judge upon granting Mr. Goldstein's emergency motion for release from custody. In its opposition to that motion, the government argued that Mr. Goldstein's use of VPNs to access Binance.Com in 2021 made him "a significant risk of flight." ECF No. 83, at 30; *see id.* at 26 (use of VPNs "only heightens" the "concern" that Mr. Goldstein might "flee from prosecution").

As explained in the supplemental declaration of cryptocurrency expert Jason Trager in support of the defense reply, these allegations are wholly unfounded. Mr. Trager explained that "many people use VPNs for various innocuous reasons," and "most cyber experts *recommend*

4

the use of a VPN." ECF No. 87-1 ¶ 7 (emphasis added). In fact, "the United States government embraces and encourages VPN use." *Id.* ¶ 8. Mr. Trager further explained that, while Binance "took the official position that U.S.-based customers would be blocked from the platform" in 2019, Binance continued to target and service U.S.-based customers. *Id.* ¶ 13. And Binance "*encouraged U.S. customers to continue to access the platform through use of a VPN. In fact, Binance encouraged VPN use among all users*." *Id.* ¶ 14 (emphasis added). As a result "a host of U.S. customers continued to legally use the platform through use of a VPN," and "[t]o this day, Binance continues to allow general use of VPNs." *Id.* The government offered no response to these points from Mr. Trager in the monitoring condition appeal, and it offers no response in Agent Nguyen's expert notice.

Mr. Trager's unrebutted analysis shows that Mr. Goldstein's use of VPNs to access Binance is not at all unusual, let alone nefarious, and that this conduct was in fact encouraged by Binance. Agent Nguyen's proposed expert testimony that this conduct technically violated Binance's policies therefore has no possible relevance.

Moreover, as with the proposed Proton Mail testimony, this irrelevant testimony on VPNs would be highly prejudicial to Mr. Goldstein. Expert testimony from an IRS cybersecurity agent about Mr. Goldstein's use of VPNs "in (1) Milan, Italy, (2) Oslo, Norway, . . . (3) Port of Spain, Trinadad and Tobago," and other locations around the world, Ex. A, at 4, is very likely to give the jury the misimpression that Mr. Goldstein was employing VPNs to hide his cryptocurrency use from the government.

Finally, introduction of Agent Nguyen's proposed expert testimony on VPNs will create yet another minitrial on uncharged conduct. If Agent Nguyen is permitted to testify on this subject, the defense will be forced to call Mr. Trager to rebut this testimony, leading to a dispute

5

before the jury about compliance with Binance policies and the propriety of VPNs generally, none of which has anything to do with the crimes charged in the Superseding Indictment.

## CONCLUSION

For the foregoing reasons, Mr. Goldstein respectfully requests that the Court exclude Agent Nguyen's proposed testimony, and prohibit the government from arguing at trial that Mr. Goldstein's use of Proton Mail or VPNs suggests an intent to conceal his conduct from the government.

Dated: October 24, 2025

Respectfully submitted,

/s/ Jonathan Kravis
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*