IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION


UNITED STATES OF AMERICA,      *

                 *

      Plaintiff,        *

                 *

    v.              *       CRIMINAL NO. LKG-25-6

                 *

THOMAS C. GOLDSTEIN,      *

                 *

      Defendant.      *

                ********


DEFENDANT THOMAS C. GOLDSTEIN'S MOTION IN LIMINE
TO PRECLUDE EVIDENCE OF UNCHARGED MISCONDUCT AND OTHER
<u>CHARACTER EVIDENCE</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT ......................................................................................................................7

I.     THE EVIDENCE IDENTIFIED IN THE GOVERNMENT'S 404(B) NOTICE IS INADMISSIBLE CHARACTER EVIDENCE ..............................................................7

     A.     The Government's Notice Is Deficient ....................................................7

     B.     The Government's Proposed Evidence Is Inadmissible ........................10

          1.     Applicable Legal Standard........................................................11

          2.     The Noticed Evidence Is Inadmissible ....................................12

II.     ANY OTHER EVIDENCE OF UNCHARGED MISCONDUCT IS LIKEWISE INADMISSIBLE .................................................................................................27

III.     THE GOVERNMENT SHOULD NOT BE PERMITTED TO ARGUE THAT MR. GOLDSTEIN ENGAGED IN "TWO ILLICIT AND FRAUDULENT SCHEMES" ...........................................................................................................28

CONCLUSION..................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Goodman v. Praxair Servs., Inc.*,
No. CV MJG-04-391, 2009 WL 10681955 (D. Md. June 16, 2009)......................................28

*United States v. Arce*,
49 F.4th 382 (4th Cir. 2022) ..............................................................................................9

*United States v. Birch*,
39 F.3d 1089 (10th Cir. 1994) ...........................................................................................9

*United States v. Briley*,
770 F.3d 267 (4th Cir. 2014) ..........................................................................12, 19, 23, 24

*United States v. Brizuela*,
962 F.3d 784 (4th Cir. 2020) .................................................................................. passim

*United States v. Bush*,
944 F.3d 189 (4th Cir. 2019) ..........................................................................................11

*United States v. Fleming*,
983 F.2d 1058 (4th Cir. 1993) ...........................................................................................9

*United States v. Gordon*,
No. 96-4718, 1998 WL 277043 (4th Cir. 1998) ...........................................................10, 27

*United States v. Hall*,
858 F.3d 254 (4th Cir. 2017) .................................................................................. passim

*United States v. Ham*,
998 F.2d 1247 (4th Cir. 1993) .........................................................................................23

*United States v. Johnson*,
617 F.3d 286 (4th Cir. 2010) .........................................................................................26

*United States v. Lighty*,
616 F.3d 321 (4th Cir. 2010) .................................................................................. passim

*United States v. McBride*,
676 F.3d 385 (4th Cir. 2012) ..........................................................................11, 12, 14

*United States v. McClellan*,
44 F.4th 200 (4th Cir. 2022) .........................................................................................10

*United States v. Otuya*,
    720 F.3d 183 (4th Cir. 2013) ..................................................................12

*United States v. Queen*,
    132 F.3d 991 (4th Cir. 1997) ..................................................14, 19, 28

*United States v. Watson*,
    No. 23-4756, 2025 WL 1720509 (4th Cir. June 20, 2025)................22, 25

*United States v. Williams*,
    30 F.4th 263 (5th Cir. 2022) ..................................................................15

## FEDERAL STATUTES

18 U.S.C. § 1014..........................................................................................4

26 U.S.C. § 7201..........................................................................................3

26 U.S.C. § 7203....................................................................................4, 19

26 U.S.C. § 7206(2)......................................................................................4

## FEDERAL RULES

Fed. R. Evid. 401 .........................................................................................6

Fed. R. Evid. 403 ................................................................................. passim

Fed. R. Evid. 404 ...............................................................................19, 21

Fed. R. Evid. 404(a)...................................................................................19

Fed. R. Evid. 404(b).......................................................................... passim

Fed. R. Evid. 404(b)(1)...............................................................................22

Fed. R. Evid. 404(b)(2).................................................................................8

Fed. R. Evid. 404(b)(3)...................................................................2, 8, 9, 10

Fed. R. Evid. 404(b)(3)(A) ........................................................................27

Fed. R. Evid. 404(b)(3)(B)......................................................................9, 12

## OTHER AUTHORITIES

22B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    *Evidence* § 5242.1 (2d ed.) ....................................................................8

Wright & Miller, *Fed. Prac. & Proc.* § 5249 ...................................................................9

## INTRODUCTION

The government's Rule 404(b) notice makes clear that it intends to introduce a wide variety of uncharged, highly prejudicial evidence at trial. The notice is a laundry list of irrelevant allegations—including failing to report certain gambling winnings and losses as early as 2012, purchasing luxury goods, asking an employee of a legal blog founded by Defendant Thomas Goldstein to assist with personal errands, playing high-stakes poker, breaching a contractual disclosure obligation to a litigation funder, and pursuing intimate relationships with employees.

The government's proposed 404(b) evidence threatens to entangle the jury in a series of minitrials over uncharged tax returns, transactions, and events dating back over a decade, adding to the complexity of an already-complicated trial. The Superseding Indictment comprises 22 counts spanning six different tax years and alleging numerous purported acts of evasion ranging from mischaracterized business expenses to the deduction of salary and benefits for employees who, according to the government, did not work enough. The government's noticed evidence would add to the trial an unspecified number of additional transactions involving at least 13 different counterparties dating back a decade. The government now proposes to introduce evidence regarding an office manager for SCOTUSblog, an entity not mentioned in the Superseding Indictment, for the purpose of showing that Mr. Goldstein asked the office manager to run some errands. And the government proposes to distract the jury with highly prejudicial and irrelevant evidence concerning Mr. Goldstein's lifestyle and his personal relationships.

The government's notice provides no specific explanation as to the admissibility of any of this evidence beyond reciting the boilerplate language in Federal Rule of Evidence 404(b). The government has thus simply ignored its obligation to provide notice of "the permitted purpose for which [it] intends to offer [that] evidence and the reasoning that supports the

1

purpose." Fed. R. Evid. 404(b)(3). That error alone warrants exclusion of the government's proposed evidence. The Court set a deadline (proposed by the parties) for the government to provide notice under Rule 404(b). That deadline has long since passed, and the notice submitted by the government is plainly deficient. That should be the end of the matter.

In any event, none of this evidence is admissible. Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character," and it further requires the government to "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b). Under this Rule, "[t]he government bears the burden of establishing that evidence of a defendant's prior bad acts is admissible for a proper purpose." *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017), *as amended* (June 21, 2017). In its Rule 404(b) notice, the government has tried to dodge this burden by arguing that its grab bag of uncharged misconduct is, in actuality, "intrinsic" to the crimes that Mr. Goldstein is accused of committing. But those arguments are meritless. Evidence is intrinsic only where it is part and parcel of the charged offenses, and that does not describe any of the prior acts evidence the government plans to offer.

When the government's evidence is properly viewed for what it is—"[e]vidence of any other crime, wrong, or act" under Rule 404(b)—its inadmissibility becomes obvious. The government's notice is propensity evidence through and through: it is neither "relevant to an issue other than the general character of the defendant" nor "necessary to prove an element of the charged offense[s]." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (citation and internal quotation marks omitted). And any nominal probative value that it *does* have is "substantially outweighed … by its prejudicial effect." *Id.* In addition, the introduction of this evidence at trial—and the rebuttal evidence that the defense would be forced to introduce on

these topics—would result in a series of minitrials regarding people and episodes that have nothing to do with the offenses charged in the Superseding Indictment and that date back over a decade.

The government's notice further claims the right to offer *additional* evidence *beyond* what has already been disclosed. That is plainly improper. The government should be required to disclose any other uncharged acts evidence that it plans to offer now, so that the parties can resolve its admissibility before trial.

Finally, the Court should not permit the government to argue to the jury that Mr. Goldstein "engineered two illicit and fraudulent schemes." ECF No. 159 ¶ 41. This allegation refers to two transactions that the government has charged as acts of tax evasion. (For the reasons set forth in Mr. Goldstein's motions to dismiss, these transactions are not affirmative acts of evasion with the likely effect to mislead or conceal—they are at most good-faith errors.) The government did not charge Mr. Goldstein with fraud arising out of these transactions, and the theories of liability for these transactions charged in the Superseding Indictment have nothing whatsoever to do with the accusation that they were "illicit" and "fraudulent." The government's only purpose in attaching these labels to the transactions is to make Mr. Goldstein appear guilty of *something*, a plainly improper purpose under Rule 404(b).

## BACKGROUND

Across twenty-two counts, the Superseding Indictment (ECF No. 159) charges Mr. Goldstein with an assortment of allegedly criminal acts spanning five years. Specifically, the Superseding Indictment alleges that:

- Mr. Goldstein willfully attempted to evade paying his taxes in **2016** (Count 1), **2017** (Count 2), **2018** (Count 3), and **2021** (Count 4), in violation of 26 U.S.C. § 7201, including by failing to prevent his accounting firm from mischaracterizing

certain transactions as business expenses and by failing to notice that his
accounting firm had not reported certain payments as income to Mr. Goldstein's
firm, Goldstein & Russell (G&R);

- Mr. Goldstein willfully aided or assisted in preparing false tax returns for himself
  and G&R, in **2016** (Counts 5 and 6), **2017** (Counts 7 and 8), **2018** (Counts 9 and
  10), **2019** (Counts 11 and 12), and for himself in **2020** (Count 13) and **2021**
  (Count 14), in violation of 26 U.S.C. § 7206(2), by failing to correct errors in the
  returns prepared by his accounting firm;

- Mr. Goldstein—who filed his tax *returns* on time, who entered into a payment
  plan with the IRS, and who undisputably has fully paid his tax liability for the
  years in question—willfully failed to pay taxes due and owing "on or before the
  payment due dates" in **2016** (Count 15), **2017** (Count 16), **2019** (Count 17), **2020**
  (Count 18), and **2021** (Count 19), in violation of 26 U.S.C. § 7203; and

- Mr. Goldstein made false statements on loan applications in **2021** (Counts 20, 21,
  and 22), in violation of 18 U.S.C. § 1014, by failing to list certain liabilities.

On September 12, 2025, the government provided defense counsel with a "notice of its
intent to introduce at trial evidence of other crimes or acts pursuant to Federal Rule of Evidence
404(b)." *See* Ex. A ("Notice"). That sweeping 404(b) notice identifies a dozen categories of
evidence that the government plans to offer at trial, including the following:

- ***Failure to file or pay federal and state taxes outside of the charged period.***
  Evidence that in years before (category 3) and after (category 4) the charged
  period, Mr. Goldstein allegedly failed to timely file and/or pay his federal taxes,

and that in "many" unspecified years, Mr. Goldstein allegedly failed to timely file and/or pay his state taxes (category 5).

- **_Misreporting of gambling winnings and losses before the charged period._** Evidence that, in 2012 through 2015, Mr. Goldstein allegedly failed to inform his accountants about the "extent" of his "significant gambling winnings and losses" (category 1), and allegedly failed to report certain gambling winnings in 2014 and 2015 (category 6).

- **_Misclassified G&R transactions._** Evidence that Mr. Goldstein allegedly "caused and attempted to cause" certain G&R transactions to be misclassified, where such errors did not affect either Mr. Goldstein's income tax in a year in which he is charged with tax evasion (Counts 1-4) or the accuracy of the items on G&R's returns that the Superseding Indictment charges were "false" (Counts 6, 8, 10, 12) (category 7).[1]

- **_Personal spending and lawful gambling activities._** Evidence that Mr. Goldstein "spent millions of dollars on personal expenses" (category 4), "chose to spend money on items other than his taxes" (category 5), and continued to play high stakes poker through 2024 (category 8).

- **_Relationships with employees._** Evidence that Mr. Goldstein allegedly asked a SCOTUSblog employee to conduct "personal tasks" (category 9) and that Mr. Goldstein allegedly "was in or pursuing intimate personal relationships" with certain G&R employees (category II).

---

[1] The 404(b) notice identifies six "examples" of misclassified G&R transactions, but the government stops notably short of arguing that those misclassification errors actually caused Mr. Goldstein to evade paying any taxes or caused G&R to falsely report any items on its returns.

- ***Statements to a litigation funder***.  Evidence that Mr. Goldstein allegedly failed to disclose certain "private debt[s]" to a litigation funder ("Litigation Funder") (category 10).

- ***Mr. Goldstein "understood taxes.***"  Evidence that Mr. Goldstein "understood taxes, tax reporting …, and his obligation to timely file and pay his individual income taxes," including notices from his accounting firms and the IRS, legal briefs that Mr. Goldstein signed, and a "suggestion" that Mr. Goldstein made to someone else's tax advisors in 2014 about how that person might reduce his tax liability.[2]

- ***Conduct in dismissed charges.***  Evidence that Mr. Goldstein engaged in conduct as to which this Court may dismiss criminal charges—for example, conduct related to tax year 2016, which Mr. Goldstein argues is outside the statute of limitations (category III).

Without making any attempt to connect any particular category of evidence to any charged conduct, the government's 404(b) notice asserts broadly that *each and every category* of evidence is "intrinsic to the crimes charged in the Superseding Indictment."  Notice p.1.  The government further claims that "[m]uch" of that evidence is "direct evidence of [Mr. Goldstein's] *mens rea* for the charged offenses," without identifying *which* evidence is relevant to *which* offense.  *Id.*

---

[2] In this motion, Mr. Goldstein does not move to preclude the government from offering evidence that he instructed his accountants and firm manager "about the proper classification of various receipts into and payments from G&R bank accounts."  Notice p.3.  Mr. Goldstein reserves all rights to object to the admission of such evidence during trial, including, *inter alia*, under Rules 401 and/or 403.

Finally, the government's 404(b) notice purports to notify Mr. Goldstein that "the Government also may offer additional evidence beyond that disclosed herein, because it is either direct evidence an offense charged, intrinsic to an offense charged, or because it is admissible under Rule 404(b)." *Id.* The 404(b) notice provides no information as to what that "additional" undisclosed evidence may pertain to. *Id.*

## **ARGUMENT**

## I. **THE EVIDENCE IDENTIFIED IN THE GOVERNMENT'S 404(b) NOTICE IS INADMISSIBLE CHARACTER EVIDENCE**

The government's notice is deficient. Rather than identify the specific purposes for which the government intends to offer each piece of evidence, as required by Rule 404(b), the notice merely recites the text of the rule, effectively claiming every possible ground for admitting every piece of noticed evidence. The defense motion to exclude should be granted on that ground alone—the Court set a deadline for Rule 404(b) notice, and the government failed to submit an adequate notice by that deadline.

In any event, the evidence set forth in the government's notice is plainly inadmissible. The evidence is clearly not "intrinsic" to any charged offense, and therefore it is inadmissible unless it falls within one of the exceptions set forth in Rule 404(b). None of those exceptions applies. Moreover, the noticed evidence is highly prejudicial to Mr. Goldstein, and would serve only to waste time and confuse the jury with a series of minitrials over uncharged conduct.

### A. **The Government's Notice Is Deficient**

"To satisfy [its] burden" to prove the admissibility of evidence under Rule 404(b), "the government must identify *each* proper purpose for which it will use the other acts evidence and *explain* how that evidence 'fits into a chain of inferences … that connects the evidence to each proper purpose, no link of which is a forbidden propensity inference.'" *Hall*, 858 F.3d at 266

7

(citation modified).  Rule 404(b)(3) therefore requires that, in providing notice of its intent to

offer prior bad acts evidence at trial, the government must not only "provide reasonable notice of

any such evidence … so that the defendant has a fair opportunity to meet it" but also must

"articulate in the notice the permitted purpose for which the prosecutor intends to offer the

evidence and the reasoning that supports the purpose" Fed. R. Evid. 404(b)(3); *see also* 22B

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Evidence* § 5242.1 (2d

ed.) (discussing 2020 amendments to Rule 404(b)(3) that require "more meaningful notice to a

defendant about how the prosecutor intends to use the other act evidence").

  The boilerplate language in the government's 404(b) notice comes nowhere close to

meeting its burden.  The government's notice begins with a blanket assertion that every piece of

evidence in the notice is "intrinsic" to the charged offenses and therefore not subject to Rule

404(b).  The notice then states that "the acts and evidence described [in its notice] … may

admissible [sic] to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident,'" Notice p.1 (citation omitted)—*i.e.*, *every* permitted

purpose listed in Rule 404(b)(2).

  This is plainly insufficient.  The notice does not explain how each of the numerous

categories of evidence—comprising numerous individuals and entities not mentioned in the

Superseding Indictment as well as transactions dating back over a decade—could possibly be

"intrinsic" to the charged offenses.  Nor does the notice even attempt to link particular pieces of

evidence to particular charges.  In fact, as set forth below, *none* of the noticed evidence is

intrinsic to any charged offense.

  Moreover, by cataloguing every conceivable purpose for which prior act evidence may be

admitted and claiming that blanket list justifies a dozen different categories of evidence, the

government's purported "notice" utterly fails to "articulate … *the* permitted purpose" for which it "intends to offer *the* evidence."  Fed. R. Evid. 404(b)(3)(B) (emphases added); *see, e.g.*, *United States v. Fleming*, 983 F.2d 1058 (4th Cir. 1993) ("The offeror must specify the issue proposed to be proved by the evidence of the other crimes[.]" (citing Wright & Miller, *Fed. Prac. & Proc.* § 5249)); *United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994) ("[A] broad statement merely invoking or restating Rule 404(b) will not suffice." (citation omitted)).  And the government's notice does not even *attempt* to provide "reasoning" to support its scattershot list of ostensible "permitted purpose[s]."  Fed. R. Evid. 404(b)(3)(B); *see United States v. Arce*, 49 F.4th 382, 394 (4th Cir. 2022) ("Rule 404(b)(3) … requires a 'notice' … that details, 'in writing before trial,' the 'permitted purpose,' *and* 'reasoning that supports the purpose' for introducing the evidence." (emphasis added)).  Indeed, the notice's glaring lack of specificity suggests that the government itself has not pinned down a proper theory for any of the evidence it identifies, raising the concern that the government's real motive is to smuggle propensity evidence to the jury.

The government's approach to its Rule 404(b) notice obligation in this case—*i.e.*, to list every possible exception for every piece of evidence, force the defendant to file a motion *in limine*, and only *then* explain its true position—warrants exclusion of the noticed evidence.  The time for the government to articulate the "permitted purpose" for which it plans to offer bad acts evidence is long past.  This Court's pre-trial scheduling order directed the government to provide its 404(b) notice on September 12, 2025, six weeks before the deadline to file motions *in limine*. *See* ECF No. 155.  In this motion, defense counsel cannot respond to "reasoning" that the government has not "articulate[d]."  Fed. R. Evid. 404(b)(3)(B).  And, as this Court observed in denying Mr. Goldstein's request to extend the briefing deadlines for the parties' motions *in*

*limine*, drawing out pre-trial motions practice risks "imped[ing] the parties' ability to adhere to the January 12, 2025, trial date."  ECF No. 196, at 2.  The government should not be rewarded for flouting Rule 404(b)'s clear notice requirement with a do-over that could seriously prejudice Mr. Goldstein's ability to prepare for an extremely complex trial that is slated to start in less than three months.

"[B]ecause the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if … the notice requirement has not been met."  *United States v. Gordon*, No. 96-4718, 1998 WL 277043, at *3 (4th Cir. 1998) (quoting Fed. R. Evid. 404(b) advisory committee's note); *see also United States v. McClellan*, 44 F.4th 200, 206 (4th Cir. 2022) (where "the Government has not attempted to offer a 'proper purpose' for considering" evidence of a prior crime, such "evidence … is inadmissible at trial").  Here, the government's failure to provide proper notice under Rule 404(b)(3) means that it cannot offer 404(b) evidence against Mr. Goldstein at trial.

## B.    The Government's Proposed Evidence Is Inadmissible

The evidence in the government's notice is inadmissible.  That evidence is plainly not "intrinsic" to any offense charged in the Superseding Indictment, and therefore it is inadmissible unless the government can show that that it is serves a "permissible purpose" under Rule 404(b).  The government cannot make that showing.  The evidence is not relevant, it is highly prejudicial to Mr. Goldstein, and admission of this evidence would force the defense to introduce responsive evidence in every category, necessitating a series of minitrials on individuals and entities that are not mentioned in the Superseding Indictment and transactions and events dating back over a decade, wasting time and confusing the jury.

1.    **Applicable Legal Standard**

"[P]rior 'bad act' evidence" is considered "intrinsic"—and therefore outside the purview of Rule 404(b)—only where the "uncharged conduct aris[es] out of the same series of transactions as the charged offense," *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012), or is "inextricably intertwined with the evidence regarding the charged offense" such that "it forms an integral and natural part of the witness's accounts of the circumstances surrounding the [charged] offenses," *United States v. Bush*, 944 F.3d 189, 196 (4th Cir. 2019) (citation and internal quotation marks omitted).  Evidence is also intrinsic where it "serve[s] to complete the story of the crime on trial," *McBride*, 676 F.3d at 396 (citation omitted), but even then the uncharged acts must be "probative of an integral component of the crime on trial or provide information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the story of the crime itself," *United States v. Brizuela*, 962 F.3d 784, 795 (4th Cir. 2020).  To prevent the intrinsic-evidence exception from "disguis[ing] the type of propensity evidence that Rule 404(b) is meant to exclude," courts are "require[d]" to give purportedly intrinsic evidence a "hard look to ensure that there is a clear link or nexus between the evidence and the story of the charged offense, and that the purpose for which the evidence is offered is actually essential." *Id.* at 795.

Evidence that is not intrinsic is inadmissible unless it meets the requirements of Rule 404(b).  "For such evidence to be admissible, it must be '(1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable.'" *Lighty*, 616 F.3d at 352 (citation omitted).  Furthermore, the Fourth Circuit's "Rule 404(b) analysis involves a Rule 403 determination, that is, the probative value of the

evidence must not be substantially outweighed by its prejudicial effect." *Id.*[3]  The government "bears the burden of establishing that evidence of … prior bad acts is admissible for a proper purpose." *Hall*, 858 F.3d at 266.

### 2.    The Noticed Evidence Is Inadmissible

Under this two-part framework, the categories of prior act evidence set forth in the government's notice are all inadmissible.  Each category is not "intrinsic" conduct and does not meet the requirements of Rule 404(b).[4]

### (a)    Failure to file or pay federal and state taxes outside of the charged period (categories 3, 4, 5, and III)[5]

The Superseding Indictment charges Mr. Goldstein with four discrete counts of willfully evading federal taxes in 2016, 2017, 2018, and 2021, and ten discrete counts of aiding or assisting in the preparation of false federal tax returns in 2016 through 2021.  Mr. Goldstein's conduct with respect to entirely different tax returns—i.e., returns for different tax years, for state taxes, or both—is in no way intertwined with, nor necessary to complete the story of, the errors in Mr. Goldstein's (or G&R's) federal tax returns between 2016 and 2021.  *Compare McBride*, 676 F.3d at 396 ("prior 'bad act' evidence … plainly f[ell] within the realm of Rule 404(b)"

---

[3] Because the government has failed to comply with its obligation under Rule 404(b) to "articulate … the permitted purpose for which [it] intends to offer" each category of "evidence and the reasoning that supports the purpose," Fed. R. Evid. 404(b)(3)(B), Mr. Goldstein can only guess the government's true theory of admissibility as to each category of evidence.  In attempting to anticipate the government's possible justifications, Mr. Goldstein does not waive and expressly reserves the right to respond to any "permitted purpose," *id.*, belatedly identified by the government.

[4] Because the government's proposed evidence is not intrinsic to the conduct charged in the Superseding Indictment, it follows *a fortiori* that the same evidence cannot constitute "direct" evidence of Mr. Goldstein's *mens rea* for those alleged offenses.

[5] We address pre-2016 and post-2021 conduct together, as the Fourth Circuit "make[s] no distinction between prior and subsequent bad acts under Rule 404(b)."  *United States v. Briley*, 770 F.3d 267, 276 (4th Cir. 2014) (citation and internal quotation marks omitted).

where the defendant was charged with possession with intent to distribute cocaine at a night club in 2009 and government offered evidence that a confidential informant attempted to purchase crack cocaine from the defendant at his residence in 2008), *with United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013) (defendant's "2008–2009 and … 2010 fraudulent activity were really components of the same ongoing criminal episode" where "[b]oth sets of acts involved the same victim …, defrauded under the same basic scheme …, by the same conspirators").  Indeed, the government's 404(b) notice effectively concedes that Mr. Goldstein's pre-2016 conduct is not part of the same "story" as his post-2016 conduct, as the notice states that Mr. Goldstein "first told" his accountant "about significant winnings and losses when [his accounting firm] was preparing his 2016 individual income tax return."  Notice p.3.

Any other conclusion would be irreconcilable with the Fourth Circuit's recent decision in *United States v. Brizuela*.  There, at the criminal trial of a doctor charged with 21 counts of unlawfully distributing controlled substances to five different patients, the government introduced testimony from several *other* patients on the theory that their "testimony provide[d] evidence that [the defendant] consistently failed to follow generally recognized procedures."  962 F.3d at 791 (citation modified).  On appeal, the Fourth Circuit held that the other patients' testimony was not admissible as intrinsic evidence because the defendant was charged with "[a]n unlawful distribution violation" with respect to "specific prescription[s]," and the "testimony of the … other patients did not reference or encompass any of the 21 prescriptions listed in the indictment."  *Id.* at 795-96.  Thus, the other patients' testimony was not necessary to "complete the story *of the crimes on trial*'" because "the relevant 'story' for [an unlawful distribution] offense is whether in writing the cited prescription, the defendant doctor was treating *the patient*

*receiving the prescription* within the bounds of professional medical practices." *Id.* at 797 (citation modified).

Because this evidence is not "intrinsic," it is inadmissible unless the government can show that it meets the requirements of Rule 404(b). The government cannot make that showing. The government's notice says nothing about why this evidence is relevant, likely because it has no relevance whatsoever. Mr. Goldstein does not dispute the Superseding Indictment's allegations that he finished paying his tax liability for tax years 2016, 2017, and 2019 in 2021, *see* ECF No. 159 ¶¶ 40, 51, 69, and his tax liability for tax years 2020 and 2021 in 2022, *see id.* ¶¶ 75, 87, including pursuant to payment plans negotiated with the IRS. Consequently, the dates on which Mr. Goldstein paid his taxes in *other* years is entirely irrelevant to the charged crimes—and certainly not necessary to prove any element of those offenses. *See Brizuela*, 962 F.3d at 798 ("evidence purportedly speaking to [undisputed] issues is not relevant to or probative of an essential element of the charged offenses").

In truth, the government's plan to tell the jury about Mr. Goldstein's late payments in *uncharged* tax years is nothing more than a naked attempt to "try[] [Mr. Goldstein] for prior acts rather than charged acts," and to "confuse[]" the jury into "using the [prior] acts improperly in arriving at a verdict." *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997); *see also McBride*, 676 F.3d at 396 ("[T]he danger inherent in admitting prior 'bad act' evidence is that it will be considered impermissibly as evidence of character."). Especially in a case such as this one, where the government has (at best) a thin case that hinges on circumstantial evidence to prove willful acts of omission, "there is 'an unacceptable risk that'" evidence concerning uncharged tax years will cause "the jury will assume that" Mr. Goldstein has a "propensity for" tax evasion and "convict on that basis alone." *Hall*, 858 F.3d at 270 (citation modified).

For similar reasons, evidence pertaining to uncharged tax years is inadmissible under Rule 403. Hearing about Mr. Goldstein's tax history would "give[] the jury the chance to decide the case on [the] improper"—and inaccurate—assumption that Mr. Goldstein "is guilty because he is the type of person who doesn't follow the tax laws." *United States v. Williams*, 30 F.4th 263, 268 (5th Cir. 2022). And the government's plan to dredge up five additional years of federal returns (2013, 2014, 2015, 2022, and 2023) would require a series of minitrials for each of those years. If the government is permitted to introduce this evidence, then the defense will be forced to present contrary evidence, including evidence tending to show Mr. Goldstein's good faith efforts to satisfy his tax obligations in those years.

### (b)    Misreporting of gambling winnings and losses before the charged period (categories 1 & 6) and misclassified G&R transactions (category 7)

The government plans to offer evidence about gambling winnings and losses from 2013, 2014, and 2015, as well as misclassified transactions from 2014, 2015, 2019, 2020, and 2021. The evidence in this category comprises an unspecified number of transactions involving at least 13 different counterparties, the vast majority of whom are not even mentioned in the Superseding Indictment. The government also intends to offer evidence that because Mr. Goldstein gave his prior accounting firm, Caldwell, the impression that he played poker only "social[ly]," Caldwell "did not know [Mr. Goldstein] had substantial gambling winnings or losses, and did not report them on [Mr. Goldstein's] tax returns." Notice p.2.

This evidence too is not "intrinsic" for the reasons set forth above. The Superseding Indictment charges fourteen separate offenses for *each year* in which Mr. Goldstein allegedly evaded taxes, and for *each false return* that Mr. Goldstein allegedly assisted in preparing. By definition, conduct related to other tax years or other tax returns cannot "ar[ise] from the same transaction, series of transactions or single criminal episode as the charged offenses." *Brizuela*,

962 F.3d at 796.  Therefore, the "new stories" the government seeks to present at trial are nothing more than "'overkill' or 'piling-on' by the prosecution," which would impermissibly "invite[] the jury 'to find guilt by association or as result of a pattern,' rather than examining whether sufficient evidence supported a conviction under each count in the indictment."  *Id.* (citation omitted).

This evidence is also inadmissible under Rule 404(b).  Indeed, the government's own notice underscores why Caldwell's pre-2016 errors are irrelevant to Mr. Goldstein's intent or knowledge during the charged period:  Caldwell's mishandling of Mr. Goldstein's gambling winnings and losses created an error in the *government's favor*, and Mr. Goldstein eventually fired Caldwell precisely because Mr. Goldstein believed "Caldwell knew [he] played in private poker games" and "should have known to collect and report [his] poker transactions."  Notice p.2.  Notably, the government's 404(b) notice does not claim that any of Mr. Goldstein's conduct with respect to Caldwell was *willful*—the *mens rea* for each of the tax offenses charged in the Superseding Indictment.

Similarly, evidence concerning uncharged gambling winnings and losses is not relevant to Mr. Goldstein's intent or knowledge for the charged offenses, because the notice admits that Mr. Goldstein *did* "t[ell]" his new accounting firm "about significant winnings and losses when [the new firm] was preparing his 2016" tax return—that is, the first tax year of the charged period.  *Id.* at p.3.  And, again, the government has given no indication that it believes any of these pre-2016 errors were willful.

Evidence that Mr. Goldstein allegedly "attempted to cause … G&R financial transactions to be misclassified," *id.* at p.4, where such errors had no effect in any charged year on Mr. Goldstein's income or the accuracy of G&R's returns, similarly lacks any proper purpose.  Here

16

again, the government's notice says nothing about the relevance of any of these transactions. To the extent the government believes that such transactions demonstrate a pattern of anything other than innocent (or, at most, negligent) accounting errors, the Superseding Indictment contains no shortage of similar allegations during the charged period. *Uncharged* examples of misconduct—none of which is claimed to have been willful—are thus not necessary to the government's case. *See Lighty*, 616 F.3d at 354 ("The necessity prong must be analyzed in 'light of other evidence available to the government,'" and "as the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases." (citation omitted)).

In the alternative, Rule 403 requires excluding this evidence. The probative value of any such evidence is minimal, and it is substantially outweighed by the risk that "the jury [will] '[] find guilt by association or as result of a pattern,' rather than examining whether sufficient evidence supported a conviction under each count in the indictment." *Brizuela*, 962 F.3d at 796 (citation omitted). In a complex case spanning five years and dozens of allegedly mischaracterized or unreported transactions, presenting evidence of *uncharged* errors to the jury seriously risks confusing the issues.

This evidence also would waste the jury's time by necessitating another series of minitrials. If the government is permitted to present this evidence, then the defense will be forced to present evidence putting these transactions in context, to show that they were at most good faith errors and not willful tax evasion. This will require the jury to sift through evidence concerning a variety of transactions that were not charged and that involve parties who have no relationship to the allegations in the Superseding Indictment (and who otherwise would not even be mentioned at trial), and it may require calling additional witnesses who have no association

with the charged conduct.  This defense of tax returns from years ago—precisely the sort of prejudice that the statute of limitations is intended to prevent—would significantly lengthen the trial, and it would require the jury to keep track of which evidence pertains to a charged tax year and which evidence pertains to an uncharged tax year.

(c)    **Personal spending and lawful gambling activities (categories 4, 5 & 8)**

The 404(b) notice also states that the government intends to offer evidence that Mr. Goldstein "chose to spend" "millions of dollars" on luxury items rather "than [paying] his taxes," Notice p.4, and to continue "play[ing] high stakes poker" through 2024, Notice p.5.  (This evidence appears to track pointed allegations in the Superseding Indictment that, "rather than pay … his taxes," Mr. Goldstein spent money on "luxury items, gambling debts, and other personal payments."  ECF No. 159 ¶¶ 37, 50, 69, 74, 87.)  In one particularly egregious example, the government's 404(b) notice threatens to tell the jury that Mr. Goldstein "recently won a substantial number of gold bars" that had been "stolen … from an elderly client"—and which Mr. Goldstein allegedly "never … returned."  Notice p.5.  In fact, the government knows that Mr. Goldstein did not possess those bars when the theft was discovered, making it impossible to "return[]" them.

None of this evidence is "intrinsic" to any offense charged in the Superseding Indictment. As to Mr. Goldstein's lawful gambling activities, there is no conceivable way that playing poker *after the charged period* could be intertwined with, or otherwise part of the story of, Mr. Goldstein's alleged tax-related misconduct.  And as to Mr. Goldstein's personal spending habits during the charged period, it is beyond dispute that *everyone* spends money on things other than taxes—including people with outstanding tax obligations.  The "story" of the crime of failure to

18

pay taxes is the non-payment of taxes, not the payment of *other* debts or the purchase of personal items.

This evidence is also inadmissible under Rule 404(b), as it is textbook character evidence and nothing more. The government's notice offers no explanation of the relevance behind its attempt to put Mr. Goldstein's lifestyle on trial: Evidence of Mr. Goldstein's purportedly extravagant spending and high-stakes gambling is not probative of any element of any charged offense, and it can *only* serve to "unduly excite the emotions of the jury." *Queen*, 132 F.3d at 994; *see* ECF No. 126, at 5 (explaining that personal expenditures are not relevant to the crime defined by 26 U.S.C. § 7203). That makes it patently inadmissible under both Rules 403 and 404. *See United States v. Briley*, 770 F.3d 267, 277 (4th Cir. 2014) ("[T]he need to push the defendant's personal habits and inclinations forward raises Rule 403 concerns."); Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). As the Fourth Circuit has cautioned, "[t]he trouble with … character wounds is that they bleed, in the sense that 'bad people' may be presumed by the factfinder to commit no end of criminal acts." *Briley*, 770 F.3d at 277.

### (d)   Relationships with employees (categories 9 and II)

Mr. Goldstein's relationships with SCOTUSblog and G&R employees are likewise extrinsic to the offenses charged in the Superseding Indictment.

First, even assuming *arguendo* that asking a SCOTUSblog employee to assist with certain personal tasks "was not permissible under the Internal Revenue Code," Exhibit A to Def's Mot. in Limine to Limit Proposed Expert Testimony of Coleen Ranahan, at 4 ("Ranahan Disclosure"), the government offers no theory as to why such conduct is intertwined with the *specific* tax-related offenses with which Mr. Goldstein is charged—*i.e.*, willfully evading paying

his personal income tax (Counts 1-4), willfully assisting in the preparation of false tax returns (Counts 5-14), and willing failing to pay taxes due and owing (Counts 15-19). The government has never, for example, alleged that G&R's donations to SCOTUSblog were misclassified as charitable contributions. Tellingly, the government managed to tell the "story" of Mr. Goldstein's alleged offenses twice, in both the original and superseding indictments, without ever mentioning SCOTUSblog at all, let alone the SCOTUSblog employee in question. *See generally* ECF Nos. 1 & 159.

Second, whether Mr. Goldstein had or was pursuing romantic relationships with individuals who were employed by G&R, *see* ECF No. 159 ¶ 12, has no bearing on the question of whether the salary and benefits G&R paid to those women—less than $50,000 in total, *see id.* ¶¶ 56-57, 65, 70—was wrongly deducted as a business expense. Nepotism is not a federal crime, and the government's theory of liability does not depend in any way on the nature of Mr. Goldstein's relationship to the women. Whether the women in question were lawfully entitled to the salary and benefits they received turns on the nature of their employment relationship with G&R, not on any personal relationship they might have had with Mr. Goldstein, nor on Mr. Goldstein's subjective motivations in hiring them. The government's theory of criminal liability would presumably apply to an employer who hires a spouse, or a neighbor, or a family member—the nature of the relationship does not matter. Therefore, the salacious allegations that Mr. Goldstein was having (or pursuing) sexual affairs with G&R employees is hardly "probative of an *integral component* of the crime on trial." *Brizuela*, 962 F.3d at 795 (emphasis added). Indeed, the government's 404(b) notice leaves little doubt that its true aim in offering evidence of Mr. Goldstein's relationships with G&R employees is not to "provide information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the

20

story of the crime itself," *id.*, but rather to scandalize—and prejudice—the jury with "deeply personal and/or graphic evidence" of Mr. Goldstein's "intimate physical relationships."  Notice p.6.

This evidence is also inadmissible under Rule 404(b) because it is highly prejudicial and entirely irrelevant.  The government's professed intention to offer evidence that Mr. Goldstein misused "a SCOTUSblog employee for his personal benefit" and had (or was pursuing) "intimate personal relationships with" certain G&R employees, Notice p.9, is a brazen attempt to paint Mr. Goldstein in an unsavory light.  None of this evidence has *anything* to do with whether Mr. Goldstein is guilty of the financial crimes of which he is accused.

The allegation that Mr. Goldstein occasionally asked a SCOTUSblog employee to assist with personal errands has nothing to do with any allegation in the Superseding Indictment, which does not even mention SCOTUSblog.  During its investigation, the government subpoenaed virtually every document imaginable from SCOTUSblog, including all corporate bookkeeping records, financial records, bank records, loan records, and employee records.  After all that investigation, the government chose not to bring any criminal charges related to SCOTUSblog.

Having brought no charges related to SCOTUSblog, the government now proposes to call an expert to opine that Mr. Goldstein's "use of the SCOTUSblog employee … was not permissible under the Internal Revenue Code."  Ranahan Disclosure p.4.  The government's goal plainly is not to prove any element of the charged offenses, but rather to persuade the jury that Mr. Goldstein is the type of person who disregards "the Internal Revenue Code."  *Id.*  Such propensity evidence is manifestly improper under Rules 403 and 404.  *See Hall*, 858 F.3d at 260 ("[E]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

(quoting Fed. R. Evid. 404(b)(1))); *United States v. Watson*, No. 23-4756, 2025 WL 1720509, at

*1 (4th Cir. June 20, 2025) ("[P]ropensity evidence is excluded because it might 'so

overpersuade the jury as to prejudge one with a bad general record.'" (citation modified)).

 Allowing the government to present this evidence would require yet another minitrial.  If

this evidence is admitted, then the defense would be forced to present contrary evidence about

the SCOTUSblog employee, entangling the jury in fact and expert testimony about the proper

use of 501(c)(3) entities and their employees, an issue that is not raised by any of the charges in

the Superseding Indictment.

 The government's plan to present "substantial, deeply personal and/or graphic evidence"

of Mr. Goldstein's "intimate physical relationships" with G&R employees is even less

defensible.  Whether G&R legitimately deducted salaries and benefits paid to those employees

depends entirely on whether those women had a legitimate employment relationship with

G&R—not whether they *also* had a personal relationship, romantic or otherwise, with Mr.

Goldstein, much less the specific nature of that relationship.  *See* ECF No. 135, at 17-19

(government agreeing that deductions were legitimate if they were "ordinary and necessary

expenses" *to G&R*).

 But even if Mr. Goldstein's romantic relationships (or aspirations) were both "relevant"

and "necessary," such evidence is *still* inadmissible because its "probative value … [is]

substantially outweighed by its prejudicial effect."  *Lighty*, 616 F.3d at 352 (citation and internal

quotation marks omitted); *see Hall*, 858 F.3d at 269 ("Absent … balancing of … prior bad act

evidence's probative value against its prejudicial effect, 'the list of exceptions in Rule 404(b), if

applied mechanically, would overwhelm the central principle.'" (citation omitted)).  On the one

hand, because what matters is whether *G&R* appropriately deducted the women's salary and

benefits as business expenses, the probative value of Mr. Goldstein's personal relationships with those women is minimal—and, the intimate *details* of those relationships is less probative, still. After all, the government's theory would be the same irrespective of the details of Mr. Goldstein's relationships with the employees. On the other hand, the risk of prejudice is extremely high. Indeed, the government has come close to admitting as much by describing its evidence as "graphic." Notice p.6. Providing the jury with graphic "emails, text messages, videos, … photographs sent and received," and even Mr. Goldstein's "various online dating profiles," Notice p.6, presents an intolerable risk of that "the emotions of the jury will be excited to irrational behavior." *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) (citation and internal quotation marks omitted).

The Fourth Circuit's decision in *United States v. Briley* is instructive. There, the defendant was charged with three counts of forcibly resisting arrest and one count of "engaging in an obscene display" arising from an episode of "intimate sexual activities in a national park and an ensuing physical altercation with United States Park Police officers." 770 F.3d at 269-70. At trial, the government introduced evidence that two months after the charged conduct, the defendant was again caught "engaging in sexual conduct, in the *same* vehicle, in the *same* general area." *Id.* at 276 (emphases added). Despite those similarities, however, on appeal the Fourth Circuit expressed concern that the government had "use[d] th[e] least serious charge as a conduit for bringing in unseemly acts not charged in the indictment." *Id.* at 277. The court ultimately held that the evidence "came too close to pure propensity evidence" and therefore should not "have been admitted," explaining that "[s]hining … a bright light on [the defendant's] other sexual activities risked directing the jury's attention to the wrong place." *Id.* at 275-76.

23

So too here.  The government's obvious purpose in presenting evidence about Mr. Goldstein's personal relationships with G&R employees is to impugn Mr. Goldstein's character. Indeed, the government was so eager to tell the jury about Mr. Goldstein's extramarital affairs that it concocted an unprecedented theory of criminal tax evasion that, *at most*, would mean Mr. Goldstein reduced his taxes by less than $18,000.  ECF No. 159 ¶¶ 56, 65, 70; *see generally* ECF No. 122.  Notwithstanding the government's tortured attempt to recast nepotism as a tax crime, Mr. Goldstein's romantic life is not on trial—and whatever minimal probative value such evidence might have is dramatically outweighed by the risk that the jury will use that evidence to convict Mr. Goldstein for having bad character.  *See Briley*, 770 F.3d at 275-76; *Hall*, 858 F.3d at 269 (holding that, although the defendant's "prior possession conviction was relevant to establishing his knowledge" of a subsequent drug crime, "the prejudicial effect of admitting that prior conviction for this purpose far outweighed the evidence's probative value" in light of "the high risk that the evidence will … tend to establish bad character" (citation and internal quotation marks omitted).

### (e)    Statements to a litigation funder (category 10)

Evidence that Mr. Goldstein allegedly failed to comply with a contractual obligation to disclose certain "personal debts" to the Litigation Funder, Notice p.5, also has no bearing on whether Mr. Goldstein violated a statutory obligation to make truthful statements to prospective mortgage lenders.  "There simply [is] no connection between" those episodes, which "occurred at different times, at different places, and involved completely different motives."  *Lighty*, 616 F.3d at 354.

This evidence is also inadmissible under Rule 404(b).  Once again, the government's notice provides no explanation as to how Mr. Goldstein's alleged failure to disclose "his financial status" to the Litigation Funder, Notice p.5, has any relevance to the crimes of making a

false statement to a "mortgage lending business," ECF No. 159 ¶¶ 117, 119, 121—which the

Litigation Funder is not.  At most, such evidence could persuade a jury that Mr. Goldstein has a

propensity for making misstatements on loan applications.  But, of course, that sort of propensity

finding is not a legitimate basis on which to rest a verdict.  *Hall*, 858 F.3d at 260; *Watson*, 2025

WL 1720509, at *1.

 In addition, this evidence is substantially more prejudicial than probative—and thus

inadmissible under Rules 404(b) and 403—for similar reasons.  Moreover, such evidence is

likely to confuse the jury about which loan applications may properly give rise to criminal

liability and risks wasting time by prompting yet another a minitrial, this one over whether Mr.

Goldstein did, in fact, breach any contractual disclosure obligation to the Litigation Funder.

  **(f)**  **Mr. Goldstein "understood taxes" (category 2)**

 The government's notice states that it intends to introduce evidence that Mr. Goldstein

"understood taxes."  This evidence consists of Mr. Goldstein's conversations, notices he received

that he was required to timely file and pay his taxes, legal briefs that he wrote "regarding or

analogizing to taxes and/or the reporting of foreign bank accounts," and advice that he allegedly

gave to another individual in 2014.  Notice p.3.

 To be sure, Mr. Goldstein's general legal experience may be relevant to his state of mind.

For example, as a lawyer, Mr. Goldstein would have been aware that criminal charges for many

of the alleged acts of evasion have never been brought.  But the government has offered no

evidence that Mr. Goldstein was aware that any of the specific conduct charged in the

Superseding Indictment was criminal.  Any notices Mr. Goldstein received from his accountants

or the IRS stating that "he had to timely file and pay taxes, and that he … had received or would

receive penalties for not doing so," Notice p.3, at most demonstrate that Mr. Goldstein knew—as

most adults do—that he had an obligation to pay taxes.  Such evidence is not relevant to whether

Mr. Goldstein knew that his accounting firm had misreported the specific transactions alleged in the Superseding Indictment.

Nor has the government offered evidence of any legal work performed by Mr. Goldstein that relates to that specific conduct. None of the briefs cited in the government's 404(b) notice address the specific legal issues in this case—for example, what constitutes a deductible business expense, the proper reporting of gambling winnings and losses, etc. Indeed, the Court recently denied Mr. Goldstein's request to participate personally in oral argument at the government's urging precisely because Mr. Goldstein had no particular expertise in these issues.

Finally, evidence that Mr. Goldstein "suggest[ed]" to someone else's tax advisers that *that person* should "hid[e] his full poker income from the government through offshore accounts and entities," Notice p.3, is neither relevant nor necessary to prove that Mr. Goldstein had the requisite knowledge or intent to evade *Mr. Goldstein's taxes*. Notably, other than using a foreign bank account, the Superseding Indictment does not allege that Mr. Goldstein ever did any of the things he allegedly advised this other person to do—*e.g.*, establishing "a foreign business entity" and "reporting himself as a professional gambler." *Id.*; *see United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010) ("The fact that a defendant may have been involved in drug activity in the past does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct."). Nor does the government's 404(b) notice explain what was *illegal* about Mr. Goldstein's advice. Advising someone on how to lawfully reduce their tax burden is entirely appropriate, and it certainly does not demonstrate *mens rea* for tax evasion. As a result, whatever vanishingly small probative value such evidence might have is outweighed by, first, the risk that the jury will use this episode to conclude that Mr. Goldstein is a tax evader—precisely the sort of character inference that Rule

26

404(b) is designed to avoid—and, second, by the time that would be wasted litigating what Mr. Goldstein said, his intent in saying it, and whether anything he suggested was actually unlawful.

*    *    *

In sum, the foregoing categories of evidence are inadmissible prior acts evidence under Rule 404(b).  But to the extent this Court concludes that any of those categories describe intrinsic evidence that falls outside of Rule 404(b)'s purview, such evidence is alternatively inadmissible under Rule 403 because "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, [and/or] needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## II.    ANY OTHER EVIDENCE OF UNCHARGED MISCONDUCT IS LIKEWISE INADMISSIBLE

This Court should also preclude the government from offering any other, as-yet-undisclosed evidence of uncharged misconduct, as the government has threatened to do.  *See* Notice p.1.

The government's 404(b) notice asserts that the government "may offer additional evidence beyond that disclosed herein" and claims that such evidence will "either [be] direct evidence an offense charged, intrinsic to an offense charged, or … admissible under Rule 404(b)."  Notice p.1.  To the extent the government relies on Rule 404(b), a "condition precedent to admissibility," *Gordon*, 1998 WL 277043, at *3 (citation and internal quotation marks omitted), is "reasonable notice"—including sufficient detail about the "evidence that the prosecutor intends to offer at trial" such that "the defendant has a fair opportunity to meet it," Fed. R. Evid. 404(b)(3)(A); *see also* pp.7-10, *supra*.  The government's current 404(b) notice is self-evidently insufficient to fulfill the government's disclosure obligations as to *undisclosed* evidence.

27

To the extent the government plans to argue that other uncharged misconduct is admissible as intrinsic and/or direct evidence, the Court should require the government to disclose that evidence well before trial so Mr. Goldstein can evaluate the government's claim and, if necessary, seek a ruling from this Court. While Rule 404(b)'s notice requirement does not formally apply to intrinsic or direct evidence, the government's 404(b) notice evinces a breathtakingly aggressive understanding of what counts as "intrinsic" or "direct" evidence in this case. If the government truly thinks additional uncharged conduct is intrinsic to Mr. Goldstein's alleged crimes, then it should say so now, and give the parties an opportunity to resolve any disputes before what will already be a long and complex trial. *See Goodman v. Praxair Servs., Inc.*, No. CV MJG-04-391, 2009 WL 10681955, at *1 (D. Md. June 16, 2009) ("A motion in limine is 'widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial.'" (citation omitted)). The government should not be allowed to end-run Rule's 404(b) by springing purportedly "intrinsic" evidence on Mr. Goldstein on the eve of trial, leaving him at a strategic disadvantage in mounting a response. *Cf. Queen*, 132 F.3d at 996 (Rule 404(b) "protects against the 'trial by ambush' that would occur if one were confronted at trial not only with acts alleged in the indictment but also with prior acts from the span of one's entire lifetime. Such a trial would be nearly impossible to prepare for effectively.").

## III.   THE GOVERNMENT SHOULD NOT BE PERMITTED TO ARGUE THAT MR. GOLDSTEIN ENGAGED IN "TWO ILLICIT AND FRAUDULENT SCHEMES"

The Superseding Indictment alleges that in 2017 Mr. Goldstein asked Law Firm 1 to pay a $250,000 legal fee directly to his personal bank account. The Superseding Indictment does not allege that Mr. Goldstein took any affirmative step to interfere either with the legal obligation of Law Firm 1 to file a Form 1099-NEC with the IRS or with G&R reporting this income. In fact,

Law Firm 1 *did* file a Form 1099-NEC—but the payment was not recorded as income because Mr. Goldstein's accountants improperly ignored the form in violation of basic accounting principles. The Superseding Indictment also alleges that in 2017 a $175,000 personal expenditure from G&R's firm account to Law Firm 2 was mischaracterized as a legal fee payment. The Superseding Indictment does not allege that Mr. Goldstein told G&R's firm manager to characterize this payment as a business expense.[6]

The Superseding Indictment gratuitously characterizes these transactions as "two illicit and fraudulent schemes." ECF No. 159 ¶ 41. The government's "scheme" theory for the first transaction is unexplained. With respect to the second transaction, the government's "scheme" theory appears to be that Mr. Goldstein allegedly told Law Firm 2 that it was "investing" in a poker match between Mr. Goldstein and California Businessman 3, when in fact Mr. Goldstein used the payment to pay an existing debt from a prior match that Mr. Goldstein had lost. However, the Superseding Indictment concedes that Mr. Goldstein repaid Law Firm 2 the money it was owed. There is no allegation—much less a criminal charge—that Mr. Goldstein deprived Law Firm 2 of money it was owed through a false statement.

The government should not be permitted to refer to these transactions as "illicit and fraudulent schemes." The government has not charged Mr. Goldstein with mail or wire fraud arising out of these transactions. With respect to the redirected legal fee from Law Firm 1, the Superseding Indictment does not explain how the request was "illicit and fraudulent." With respect to the payment from Law Firm 2, the details of Mr. Goldstein's statements to Law Firm 2 have nothing whatsoever to do with the government's theory of liability. Arguing that these

---

[6] The defense has moved to dismiss both these allegations for failure to allege an affirmative act that would have the likely effect to mislead or conceal, an essential element of the crime of tax evasion. *See* ECF No. 120.

were "illicit and fraudulent schemes" would serve only to mislead the jury about the nature of the crime charged and to prejudice the jury against Mr. Goldstein.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Goldstein respectfully requests that the Court (1) exclude evidence identified in categories 1, 2 (in part), 3, 4, 5, 6, 7, 8, 9, 10, II, and III of the government's 404(b) notice; (2) exclude all other evidence of uncharged misconduct that the government would seek to admit pursuant to Rule 404(b), and order the government to disclose any other evidence of uncharged misconduct that it would seek to admit as intrinsic and/or direct evidence; and (3) issue an order precluding the government from describing the transactions identified in Paragraph 41 of the Superseding Indictment as illicit, fraudulent, or otherwise unlawful.


Dated: October 24, 2025                          Respectfully submitted,

                                                 /s/ Jonathan Kravis
                                                 Jonathan I. Kravis (Bar No. 31556)
                                                 Stephany Reaves (Bar No. 19658)
                                                 Sarah E. Weiner (*pro hac vice*)
                                                 MUNGER, TOLLES & OLSON LLP
                                                 601 Massachusetts Avenue NW, Suite 500E
                                                 Washington, DC 20001
                                                 (202) 220-1100
                                                 Jonathan.Kravis@mto.com
                                                 Stephany.Reaves@mto.com
                                                 Sarah.Weiner@mto.com

                                                 Adeel Mohammadi (*pro hac vice*)
                                                 MUNGER, TOLLES & OLSON LLP
                                                 350 S. Grand Avenue, 50th Floor
                                                 Los Angeles, CA 90071
                                                 (213) 683-9100
                                                 Adeel.Mohammadi@mto.com

                                                 *Attorneys for Defendant Thomas Goldstein*