IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS C. GOLDSTEIN,<br><br>Defendant. | CRIMINAL NO. LKG-25-0006 |

**GOVERNMENT'S OPPOSITION TO GOLDSTEIN'S MOTION TO EXCLUDE EXPERT TESTIMONY FROM IRS-CI SPECIAL AGENT QUOC TUAN NGUYEN**

The United States of America, by and through undersigned counsel, hereby submits the following opposition to Defendant Thomas C. Goldstein's Motion *in Limine* to Exclude Proposed Expert Testimony of Quoc Tuan Nguyen. Dkt. 205.

At trial, IRS-CI Special Agent Quoc Tuan Nguyen will testify about two electronic systems Goldstein used to further his tax crimes: (1) Proton Mail, where Goldstein maintained an email account and to which he emailed a ledger of 2016 gambling transactions, and (2) Virtual Private Networks ("VPNs"), which Goldstein used in 2021 to create and access an overseas Binance.Com account through which he then conducted millions of dollars in cryptocurrency transactions.

Goldstein does not contest the reliability of Agent Nguyen's proposed testimony. Rather, he alternately argues that this testimony is not relevant or would violate Rule 403.

Goldstein is wrong. Agent Nguyen's testimony about both topics is squarely relevant to Goldstein's willful violation of the tax laws. Goldstein's decision to send a gambling ledger to an encrypted email account abroad—but not his accountants or firm manager—strongly suggests that Goldstein wanted to keep the information secret, including from the people preparing his tax returns and the government. Similarly, Goldstein's decision to use VPNs to configure and access a Binance.Com account (necessary because Binance.Com prohibited access by U.S. users), receive

more than $900,000 through that account, and then transfer more than $600,000 to his domestic Coinbase cryptocurrency account demonstrates Goldstein's intent to conceal the extent of his cryptocurrency transactions and, thus, his willful failure to report his financial interest in cryptocurrency on his 2021 tax return. Because Agent Nguyen's testimony is directly relevant to an element of the tax crimes charged, the Court should deny Goldstein's motion.

## BACKGROUND

The Superseding Indictment alleges Goldstein's use of Proton Mail and Binance.Com. First, it alleges that he drafted a ledger listing some of his 2016 gambling transactions and emailed it from his Goldstein & Russell ("G&R") email account "to an encrypted, Switzerland-based email account"—*i.e.*, Proton Mail—but "never emailed or otherwise provided the ledger to G&R's firm manager or the Accounting Firm." Dkt. 159, ¶ 33. Second, it alleges that in 2021, "Goldstein maintained two cryptocurrency accounts, one in the United States and the other abroad," which he used "to engage in approximately 200 [cryptocurrency] transactions . . . with a total transaction volume of more than $8 million." *Id.* ¶ 83. Despite this, Goldstein answered "no" on his 2021 Form 1040 to the question, "At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency?" *Id.* ¶ 84.

Based on these and many other acts, the Superseding Indictment charges Goldstein with multiple specific intent crimes: (1) tax evasion, in violation of 26 U.S.C. § 7201; (2) aiding and assisting in the preparation and filing of false tax returns, in violation of 26 U.S.C. § 7206; and (3) willful failure to pay taxes, in violation of 26 U.S.C. § 7203. For example, Count One charges evasion of Goldstein's 2016 taxes based in part on him "providing false and incomplete information to the Accounting Firm." *Id.* ¶ 105(b). And Count 14 charges Goldstein with willfully

aiding and assisting in the preparation of his false 2021 Form 1040 based, in part, on his false answer "no" to that Form's cryptocurrency question. *Id.* ¶ 113.

For these offenses, the government must prove that Goldstein acted willfully. *E.g.*, 1 Sand's Modern Federal Jury Instructions – Criminal ¶¶ 59.01-04 (2025 Online Ed.) (instructions for §§ 7201, 7203, and 7206(2)). Willfulness is the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). Thus, the government must "prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* at 202.

## LEGAL STANDARD

Evidence is generally admissible if it is relevant, and relevant evidence is evidence that tends to make a fact of consequence more or less probable. Fed. R. Evid. 402 & 401. Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by a danger of" unfair prejudice, confusing the issues, or delay. Fed. R. 403.

Under Federal Rule of Evidence 702, a witness qualified as an expert "may testify in the form of an opinion if the proponent demonstrates to the court that it is more likely than not that:"

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony must rest "'on a reliable foundation'" and be "'relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Indeed, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. "Relevant evidence, of course, is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 592). Even if expert testimony is relevant, however, Rule 403 still "permits the district court to exclude [it] 'if it's probative value is *substantially* outweighed by a danger of . . . unfair prejudice." *United States v. Campbell*, 963 F.3d 309, 314 n.1 (4th Cir. 2020) (emphasis added).

## ARGUMENT

**I.     Agent Nguyen's proposed testimony about Goldstein's use of Proton Mail is relevant and admissible.**

Agent Nguyen will testify that Proton Mail is a Switzerland-based email service that uses end-to-end and zero-access encryption which, together, mean that neither Proton nor third parties can access the contents of a Proton Mail email account. *See* Expert Discl. 4, Dkt. 205-1. Thus, he will opine that, based on his knowledge and experience, the contents of Goldstein's Proton Mail account would be accessible only to the person with the login username and password, and not Proton, or Swiss or United States authorities. *Id.*

First, Goldstein's use of Proton Mail is relevant. Willfulness is an element of Goldstein's tax crimes. His decision to email his 2016 gambling ledger to his own Proton Mail email address demonstrates that Goldstein wanted to keep the ledger. At the same time, Goldstein's decision to *not* provide the ledger to his accountants or firm manager suggests that he wanted to hide its contents—the extent of his 2016 gambling winnings and payments—from them. The fact that Goldstein titled the subject line of his email "file" and the ledger "Amounts.docx," rather than anything that conveyed its actual contents, suggests he did not even want someone searching his own G&R email account to find it with terms like "poker," "gambling" or "taxes." These facts

4

make it more likely that he intentionally caused his accountants to inaccurately report his gambling on his 2016 Form 1040.

Agent Nguyen's opinion is relevant for the same reasons: it will help the jury understand Goldstein's decision to email the ledger to Proton Mail, and, as a result, to determine his willfulness. Because Proton Mail is heavily encrypted, based in the privacy-oriented country of Switzerland, and provides email accounts that neither Proton nor law enforcement can access, Goldstein's decision in January 2017 to email the ledger to his Proton Mail account *specifically*, rather than another personal email account, reinforces just how closely Goldstein sought to guard his secret ledger. This, in turn, makes it significantly more likely that Goldstein was trying to conceal his gambling winnings and intentionally caused his accountants to prepare and file his 2016 Form 1040, which underreported his gambling income by millions of dollars. Without the context of Agent Nguyen's opinion about Proton Mail, the jury will not be able to understand the import of Goldstein's decision to email his ledger to his Proton Mail account instead of elsewhere.

Nonetheless, Goldstein argues these inferences "make[] no sense" because he initially sent the email from his G&R email account, and later emailed another version of his ledger from his G&R email account to his G&R email account. Mot. 6, Dkt. 205. That is a factual argument about different inferences the jury could draw from the same facts. However, such alternative explanations do not change the fact Agent Nguyen's opinion will assist the jury to assess Goldstein's use of Proton Mail for the ledger and draw inferences about his willfulness. At best, these counterpoints present a competing conclusion that reduces the *strength* of the inference that he acted willfully.[1] However, it is for the jury to decide what inferences to draw from the evidence.

---

[1] Even then, there is a likelier explanation: Goldstein lost access to the Proton Mail account to which he first emailed the ledger, as evidenced by the fact that he appears to have switched to a new Proton Mail account in the months between his two ledger emails.

Second, the opinion is also necessary to help the jury understand the *lack* of further evidence from Proton Mail. Goldstein appears intent on blaming his accountants and has, in various ways, already blamed the government for alleged deficiencies in its investigation. He may attempt to do so again at trial and may specifically point to a dearth of evidence from Proton Mail (versus, say, emails produced by G&R). Even if he does not, the absence of further evidence from Proton Mail may well raise questions for the jury. Agent Nguyen's opinion will explain why additional evidence on the matter is not available to the government.

Third, Goldstein also argues that the opinion is "very likely to confuse the jury and prejudice" him by giving the jury "the false impression that [he] created a Proton Mail account for nefarious purposes." Mot. 3. Not so. To start, Agent Nguyen will say nothing about *why* Goldstein created the account, or even what he used it for generally.

Moreover, Rule 403 allows a court to exclude relevant evidence only if its probative value is "*substantially* outweighed by a danger of" confusing the issues or unfair prejudice. Fed. R. Evid. 403 (emphasis). There is no substantial risk of confusing the issues because the issue is clear cut: Goldstein's intent to evade taxes on his gambling income. Nor is there a risk of unfair prejudice, let alone a substantial one. To be sure, Goldstein's decision to email the ledger to his Proton Mail account but not his accountants is highly probative of his intent. However, evidence is not unfairly prejudicial just because it is damaging to his case. *See United States v. Bell*, 901 F.3d 455, 465 (4th Cir. 2018) ("[U]nfair prejudice is not shown merely because the evidence is damaging to a defendant's case, since 'highly probative [evidence] invariably will be prejudicial to the defense.'" (quoting *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009)).

Ultimately, the government may choose how to prove its case with admissible evidence, and it may rely on circumstantial evidence to prove intent. *See United States v. Hills*, 618 F.3d

619, 638-39 (7th Cir. 2010); *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) ("The government, which has the burden of proving every element of the crime charged, must have the freedom to decide how to discharge that burden."). Agent Nguyen's opinion is highly probative of Goldstein's willfulness. It is even more important because Goldstein apparently plans to blame his accountants for errors in reporting his gambling winnings; Agent Nguyen's opinion will help the jury evaluate the extent to which Goldstein misled his accountants, hid information from them, and thereby willfully evaded taxes on his 2016 gambling income. The opinion should be admitted.

**II.    Agent Nguyen's proposed testimony about Goldstein's use of a VPN to create and access a Binance.Com account also is relevant and admissible.**

Agent Nguyen would testify that Binance.Com prohibited United States-based individuals from creating and operating cryptocurrency accounts on its platform, and opine that, based on the Internet Protocol address logs from Binance, Goldstein appears to have circumvented this prohibition by using a VPN that made him appear to be located outside the United States. *See* Expert Discl. 4, Dkt. 205-1.

This opinion also is relevant to Goldstein's willfulness. Goldstein used a VPN to create and access an offshore cryptocurrency account, received more than $900,000 in cryptocurrency through it, and transferred more than $600,000 worth of cryptocurrency from it to his U.S.-based Coinbase account—even though he could have just received all the cryptocurrency at that Coinbase account in the first place.

First, Agent Nguyen's opinion will help the jury evaluate whether Goldstein willfully hid his cryptocurrency transactions from his accountants and the IRS when he failed to report them on his 2020 and 2021 tax returns. Going to the effort of configuring a VPN, masking one's physical location, creating a second, separate offshore cryptocurrency account, repeatedly using a VPN to access that account, and receiving hundreds of thousands of dollars in cryptocurrency through it—

7

only to ultimately transfer much of that cryptocurrency to a domestic account—makes little sense unless the *entire purpose* is to conceal the source of the cryptocurrency and its status as income. This convoluted, otherwise inexplicable activity makes it much more likely that Goldstein intentionally hid his cryptocurrency dealings from his accountants and the IRS. *Cf. United States v. Jones*, 459 Fed. App'x 379, 384 (5th Cir. 2012) (per curiam) (finding evidence supported tax-evasion conviction where defendant placed "plac[ed] money on circuitous paths of cashier's checks and funnel[ed] it into a house purchased through a convoluted scheme").

Second, Goldstein also received hundreds of thousands of dollars in cryptocurrency at his Binance.Com account that he then sent to third parties without it ever touching his Coinbase account. The fact that he went to the trouble of using a VPN to repeatedly access an overseas account and conduct substantial financial transactions—which he never reported on his tax returns—also makes his willfulness more likely.

Third, the fact that Goldstein went to such lengths to create his Binance.Com account in 2021—*after* IRS-CI Special Agents had interviewed him about his foreign bank accounts and tax misconduct—and still did not tell his accountants about it further reinforces that his failure to report the account was not only willful, but was part of his larger scheme to conceal the extent of his income.

Finally, Goldstein now argues that Binance.Com, despite its official prohibition on U.S. users, encouraged the use of VPNs so his use of the account was "not at all unusual, let alone nefarious." Mot. 8. Strikingly, he does not claim Binance.Com encouraged him personally to do this (and thus has not established the relevance of that general fact). Regardless, if Goldstein wishes to testify that Binance.Com encouraged him to use a VPN to violate its policies, he is welcome to do so. However, this would only present a competing factual narrative and set of

inferences to the jury. It would not change the fact that Agent Nguyen's opinion will help the jury evaluate whether Goldstein acted willfully when he failed to report his cryptocurrency transactions and evaded taxes in 2021.

Agent Nguyen's opinion is simple, straightforward, and directly relevant to Goldstein's willfulness. A jury will not struggle with the simple idea that Goldstein used yet another convoluted tactic to conceal his income and financial transactions, nor the inference that he did so willfully. The opinion should be admitted.

## CONCLUSION

Agent Nguyen's opinions about Goldstein's use of Proton Mail and VPNs have a strong tendency to make his willfulness more probable and should be admitted. The government respectfully requests that the Court deny Goldstein's motion.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: November 14, 2025

/s/ *Emerson Gordon-Marvin*
Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division

Sean Beaty
Senior Litigation Counsel
Department of Justice—Tax Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland