MUNGER, TOLLES & OLSON LLP

RONALD L. OLSON
ROBERT E. DENHAM
CARY B. LERMAN
GREGORY P. STONE
BRAD D. BRIAN
GEORGE M. GARVEY
WILLIAM D. TEMKO
JOHN W. SPIEGEL
DONALD B. VERRILLI, JR. P.C.
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
KATHLEEN M. McDOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
HENRY WEISSMANN
KEVIN S. ALLRED
JEFFREY A. HEINTZ
STUART N. SENATOR
JONATHAN E. ALTMAN
KELLY M. KLAUS
LISA J. DEMSKY
MALCOLM A. HEINICKE
JAMES C. RUTTEN
RICHARD ST. JOHN
ROHIT K. SINGLA
CAROLYN HOECKER LUEDTKE
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
SETH GOLDMAN
GRANT A. DAVIS-DENNY
JONATHAN H. BLAVIN
DANIEL B. LEVIN
MIRIAM KIM
HAILYN J. CHEN
BETHANY W. KRISTOVICH
JACOB S. KREILKAMP
JEFFREY Y. WU
LAURA D. SMOLOWE
HEATHER E. TAKAHASHI
ERIN J. COX
BENJAMIN J. HORWICH
BRYAN H. HECKENLIVELY
ELAINE J. GOLDENBERG P.C.
GINGER D. ANDERS P.C.
MARGARET G. MARASCHINO
JOHN M. GILDERSLEEVE
ADAM B. WEISS
JEREMY A. LAWRENCE
ACHYUT J. PHADKE
ZACHARY M. BRIERS
KURUVILLA J. OLASA
JUSTIN P. RAPHAEL
ROSE LEDA EHLER
JOHN W. BERRY
ROBYN K. BACON
JORDAN D. SEGALL
JONATHAN KRAVIS P.C.
JOHN L. SCHWAB
EMILY C. CURRAN
L. ASHLEY AULL
WESLEY T.L. BURRELL
CRAIG JENNINGS LAVOIE
JENNIFER L. BRYANT
NICHOLAS D. FRAM
VINCENT LING
LAUREN BELL P.C.
VICTORIA A. DEGTYAREVA
JOHN B. MAJOR
RACHEL G. MILLER-ZIEGLER P.C.
FAYE PAUL TELLER
STEPHANIE G. HERRERA
JULIANA M. YEE
LAUREN C. BARNETT
NICK R. SIDNEY
SKYLAR B. GROVE
LAURA M. LOPEZ
COLIN A. DEVINE
DANE P. SHIKMAN
MAGGIE THOMPSON
SAMUEL H. ALLEN
ALLISON M. DAY
GIOVANNI S. SAARMAN GONZÁLEZ
SARA A. MCDERMOTT
J. MAX ROSEN
ANNE K. CONLEY
DAVID W. MORESHEAD
ROWLEY J. RICE
LAUREN E. ROSS
BENJAMIN G. BAROKH
ABE DYK
MEGAN MCCREADIE
RAQUEL E. DOMINGUEZ
ARIEL TESHUVA
SHANNON GALVIN AMINIRAD
XIAONAN APRIL HU
CARRIE C. LITTEN
JAMES R. SALZMANN
SEAN P. BARRY
MICHAEL I. SELVIN
HUNTER V. ARMOUR
NATHANIEL F. SUSSMAN
OLIVER BROWN
PAUL E. MARTIN

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100

350 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100

560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000

January 6, 2025

MATTHEW MIYAMOTO
ANDRA LIM
REBECCA L. SCIARRINO
CORY M. BATZA
BRIAN R. BOESSENECKER
ROBERT E. BOWEN
RICHARD T. JOHNSON
GRACE DAVIS FISHER
LAUREN N. BECK
CALEB W. PEIFFER
GREGORY T. S. BISCHOPING
JAMIE LUGURI
STEVEN B. R. LEVICK
JANELLE KRUMMEN
WILLIAM M. ORR
GABRIEL M. BRONSHTEYN
JING JIN
ALEX C. WERNER
ROSIO FLORES ARRIAGA
JESSICA O. LAIRD
ERICA C. TOOCH
SARAH E. WEINER
EVAN MANN
ANDREW T. NGUYEN
NATALIE G. MOYCE
RACHEL M. SCHIFF
MIRANDA E. REHAUT
STEPHANY REAVES
LAUREN E. KUHN
J. KAIN DAY
GARRETT SOLBERG
TED KANG
ADAM W. KWON
JOSEPH N. GLYNN
SIMON K. ZHEN
CARSON J. SCOTT
CHRISTOPHER B. CRUZ
MATTHEW W. LINSLEY
ADEEL MOHAMMADI
TAYLOR L. BENNINGER
LORRAINE L. ABDULAHAD
CLARE KANE
SIDNEY M. EISNER
HELEN ELIZABETH WHITE
KATHLEEN FOLEY
ALISON A. DOYLE
FELIPE DE JESÚS HERNÁNDEZ
JASON D. WEISS
HENRY D. SHREFFLER
MILES W. UNTERREINER
LYNDSEY FRANKLIN
ANDREW DELAPLANE
ARIELLA PARK
LAURA R. PERRY
NATASHA GEILING
JOSEPH MANTEGANI
GRAHAM J. WYATT
WESLEY P. DEVOLL
LAUREN A. BILOW
ROMAN LEAL
KAYSIE GONZALEZ
ALEXIS D. CAMPBELL
KYRA E. SCHOONOVER
WENDY Q. XIAO
DANIEL KANE
ADITI NARESH GHATLIA
ALBERTO J. DE DIEGO-HABEL
KYLE A. SCHNEIDER
PRISCILA E. CORONADO
CARL H. JIANG
BOBBY H. KIM
CLAIRE I. ROGERSON
EDUARDO A. GONZÁLEZ
GRACE ORDONEZ
LIAM GENNARI
CHARLES LAM
MICHAEL X. WEI
MAGGIE BUSHELL
REBECCA J. HANSEN
CONNOR HOGE
SARAH M. PFANDER
ELIZABETH ANASTASI
KEVIN HAN YANG
CHRISTOPHER A. MORILLO
CORDELL A. BROWN
QIANZHE DANNY ZHANG
JULIA KONSTANTINOVSKY
BENJAMIN R. WELTON
ABIGAIL K. BESSLER
KYLE A. GROVES

*OF COUNSEL*
PATRICK J. CAFFERTY, JR.
PETER A. DETRE
BRADLEY R. SCHNEIDER
PETER E. GRATZINGER
ADAM R. LAWTON
SARAH J. COLE

SEE MTO.COM FOR JURISDICTIONS OF ADMISSION

Writer's Direct Contact
(202)220-1130
(202)220-1130 FAX

**VIA E-MAIL**

Lisa Monaco
Deputy Attorney General

Stuart Goldberg
Deputy Assistant Attorney General

United States Department of Justice

Re: Goldstein Investigation

Dear Deputy Attorney General Monaco and Deputy Assistant Attorney General Goldberg:

We write on behalf of our client Thomas Goldstein. Mr. Goldstein is a deeply respected attorney and the founder of SCOTUSblog, the most successful legal blog of all time. He has argued dozens of cases before the United States Supreme Court and has twice been recognized by *The American Lawyer* as one of the 100 most influential lawyers in the country. Unfortunately, for the past four years, Mr. Goldstein has been subjected to a meandering, roving criminal tax investigation that has scrutinized nearly every aspect of his personal, financial, and professional life. During that time, the investigation has morphed indiscriminately from one discarded theory of liability to another, ignoring the bedrock principle that the Justice Department investigates crimes, not people. As set forth herein, this investigation raises serious evidentiary and ethical concerns that warrant careful and deliberate review.

GOVERNMENT EXHIBIT
11/20/2025
8:25-cr-0006
No. 1

Despite our broad concerns, our request is simple and straightforward. We ask that the Tax Division provide us with basic information about the proposed charges that we have repeatedly requested and been refused, and that the Tax Division (and then this Office if necessary) hear us out. As we have repeatedly advised the Tax Division and the U.S. Attorney's Office for the District of Maryland, we are willing to enter into a tolling agreement to avoid any possible prejudice to the government.

We seek your intervention now because, after ignoring our requests over the years for a meeting to discuss the status of the investigation, the Tax Division is rushing to indict this case before the change in Administration. Since the presidential election, the Tax Division has rocketed toward seeking an indictment from the grand jury without affording us a genuine process to engage with the government's basic facts and legal theories. To give just one example—at the taxpayer conference in mid-December, the Tax Division disclosed for the first time key allegations about a new transaction that had never been identified to us. At the conference, we were told that we would have the opportunity to address this new transaction. Then, without waiting for our response, the Tax Division informed us just over a week later that an indictment had been approved and that our request for further review had been denied.

Meanwhile, our requests for certain critical information about the proposed charges have been ignored. The Tax Division disclosed its bottom-line tax loss calculation for the first time at the taxpayer conference, but has declined to provide us with the basis for that calculation. The Tax Division has declined to identify multiple specific transactions that form the basis for its allegations. The Tax Division refuses to provide us with copies of Mr. Goldstein's own bank records from 2016—records that Mr. Goldstein is no longer able to obtain himself as a result of the government's multi-year delay in this investigation. The Tax Division also refuses to provide us with its basis for asserting that criminal charges for the 2016 tax year fall within the statute of limitations. Notably, this is all information that the government would have to provide to the defense anyway as part of criminal discovery post-indictment. And the Tax Division has offered no possible prejudice that could result from providing that information now, other than slow down the government's rush to indict.

Under these circumstances, the taxpayer conference serves no purpose, as it is impossible for us to genuinely engage with the government's theories of criminal liability. This is an inappropriate way for the Justice Department to treat those under investigation, particularly where (as here) over the course of the investigation we have repeatedly presented contemporaneous evidence rebutting the government's erroneous suppositions. The apparent rush to indict this case before January 20 exacerbates these serious process fouls. And it precludes the next Administration, which would be responsible for the prosecution of this case, from assessing the propriety of any charges before irreparable injury is done to Mr. Goldstein and his reputation.

This dramatic acceleration of the investigation's pace serves no valid purpose in light of our willingness to toll the applicable statute of limitations. Indeed, the Tax Division *rejected* a tolling agreement that would have extended the limitations period beyond the change in Administration, and *insisted* that it expire on January 16. Any time pressure at this stage is therefore purely of the Tax Division's own making and is easily resolved.

In sum, to ensure that this matter receives the appropriate level of oversight and supervisory review, we request that:

1. The Tax Division provide us with basic information regarding the proposed charges, namely:

    a. Mr. Goldstein's own bank records from 2016, which we were unable to obtain as a result of the government's delay and refusal to communicate with us during the investigation;

    b. The specific transactions that form the basis for the Tax Division's tax loss calculation and the proposed charges; and

    c. The basis for the government's position that charges arising out of the 2016 tax year fall within the statute of limitations.

2. The Tax Division provide us with a further taxpayer conference to address these materials, as well as the new transaction raised for the first time at the first taxpayer conference.

3. We have the opportunity to meet with supervisors from the Tax Division and the U.S. Attorney's Office to address the newly-provided documents and information, as well as our serious concerns with the conduct of this investigation.

4. Extend the tolling agreement beyond January 16, 2025, as we previously proposed, to allow this review process to occur in an orderly fashion.

The purpose of this request is neither process for its own sake nor delay. We are confident that a fair and thorough evaluation—which would have occurred but for the Tax Division's rush to indict this case before January 20—would affect the government's charging decision. Most notably, as discussed below, there is no evidence that Mr. Goldstein acted with the willfulness necessary to support a criminal charge. And we have not been provided with critical information and documents that would allow us to address the specific charges in more detail.

**Rush To Indict**

The recent history of this matter suggests that the Tax Division is rushing to obtain an indictment from the grand jury before the change in Administration.

Prior to the 2024 election, the government was in no hurry. For over two years following a defense proffer at the U.S. Attorney's Office in May 2021, the Office ignored our repeated requests for a meeting to discuss the status of the investigation. When the investigation resumed in December 2023, it dragged on for another year, during which the government re-subpoenaed virtually every financial document imaginable from Mr. Goldstein's former law firm, Goldstein & Russell, and SCOTUSblog.

After the 2024 presidential election, however, the Tax Division suddenly began to rush. At that point, Mr. Goldstein decided to retain additional counsel who would join Mr. Kravis and Mr. Weissmann in representing his interests. When we requested a brief continuance of the November taxpayer conference over the Thanksgiving holiday so that Mr. Goldstein could finalize retention of new counsel, the Tax Division initially refused that request, despite our willingness to toll the applicable statute of limitations. As noted, the Tax Division *insisted* that the tolling agreement not give the government time beyond January 16, 2025—four days before the change in Administration.

The Tax Division's rush to indict was apparent at the taxpayer conference. The very purpose of the taxpayer conference is to address the defendant's response to the government's allegations. Yet here, the Tax Division disclosed for the first time at the conference a transaction included in its tax loss calculation that had never previously been identified for us. The Tax Division also for the first time disclosed the amount of its estimated tax loss calculation yet refused to identify the specific transactions underlying that calculation, or the breakdown by tax year, or any other detail that would allow us to meaningfully respond. The Tax Division also refused to discuss the proposed Title 18 charges or the possibility of a civil resolution at the conference.

At the conference, we requested another meeting to address the new allegations raised at the conference, the significant discrepancy between the Tax Division's loss calculation and our own calculation, the Title 18 charges, and the possibility of civil resolution, as well as our concerns with the conduct of this investigation more generally. With this request pending, and without the opportunity for us to address these important topics, on Friday, December 27, we were informed that the Tax Division and the U.S. Attorney's Office had given "final authorization to seek grand jury action."

On a phone call later that day between Mr. Kravis and the lead prosecutor, Mr. [redacted] Mr. Kravis reminded Mr. [redacted] that we had been requesting further review of any proposed

charges coming out of the taxpayer conference since August. Mr. [redacted] responded that the Tax Division would provide the defense with the requested further review, either in the form of an additional written submission or an in-person meeting, and he agreed to provide further details about this review process on Monday. (Although Mr. [redacted] contests this version of the conversation, our understanding is obvious from the fact that we awaited word on when and how we would make our further presentation.) Yet on Monday, December 30, while we were preparing this presentation addressing the outstanding topics that were not discussed at the taxpayer conference at the Tax Division's insistence, Mr. [redacted] advised that the Tax Division was reneging on its promise of further review. That decision was made before we could even send the additional presentation we were told we would be permitted to submit.

The Tax Division's conduct betrays a rush to indict this case before January 20. As discussed further below, this investigation raises profound ethical and evidentiary concerns. These concerns warrant meaningful review of the proposed charges, and it would be highly inappropriate to rush that review for the purpose of obtaining an indictment before the change in Administration. At every stage, we have offered tolling agreements so that the government will suffer no prejudice from this review.

**Absence of Willfulness**

The Tax Division's rush to indict this case is particularly troubling in light of the utter absence of any evidence of willfulness. After four years of investigation and hundreds of subpoenas, the government has shown us no evidence—none—that Mr. Goldstein acted with the willfulness that would be required to establish criminal liability. On the other side of the ledger, we have shown the government dozens of examples of Mr. Goldstein expressly instructing his office managers to follow the relevant tax rules, even when following those rules inured to his financial disadvantage. We have discussed this evidence at length in our prior submissions to the Tax Division, which have never even attempted to address them either in writing or at the taxpayer conference. The relevant submission is attached, and briefly summarized below.

The Tax Division has refused to identify for us the specific transactions at issue. However, based on our prior correspondence, we are aware that the Tax Division has been investigating: (1) several payments from the operating account of Mr. Goldstein's former law firm, Goldstein & Russell, to third parties that were allegedly mischaracterized as business expenses rather than personal distributions; and (2) a few instances in which legal fees owed to the firm were used to pay Mr. Goldstein's personal expenses directly and therefore were allegedly not reported as income.

In our submissions to the Tax Division, we have made three points about these transactions.

*First*, we are aware of no evidence that Mr. Goldstein affirmatively directed an office manager or an accountant to mischaracterize a personal payment as a business expense or ignore firm income. The Tax Division's four-year, roving investigation has uncovered not a single document showing that any of these alleged errors is attributable to Mr. Goldstein. What the investigation *has* uncovered is numerous contemporaneous communications in which Mr. Goldstein expressly instructs his office managers to report personal expenditures from the firm account properly. Many of those communications concern payments to *the same counterparties* who received the payments that the Tax Division contends were mischaracterized. It simply defies common sense to conclude from this evidentiary record that Mr. Goldstein instructed his office managers to *correctly characterize* numerous personal expenditures over the years while silently engaging in a scheme to mischaracterize a handful of other personal expenditures to those same parties. By far the likelier inference is that the allegedly mischaracterized payments were the sort of routine accounting errors that are not uncommon to small businesses like Goldstein & Russell.

*Second,* that inference becomes even more compelling in light of the fact that the evidentiary record in this case is littered with examples of basic errors by the accounting firm that handled Mr. Goldstein's and Goldstein & Russell's tax returns. Our submissions to the Tax Division have included documentary evidence showing that the accountants failed to follow clear and correct instructions from Mr. Goldstein or firm office managers. These basic, egregious errors by the accountants strongly support the inference that any mischaracterizations of firm expenditures or failures to report firm income were the result of good-faith mistakes, not willful misconduct.

*Third,* the numbers at issue here are very small. By our calculation, even accepting as true all of the Tax Division's allegations with respect to the transactions that have been identified for us, the total tax loss over five years is approximately $800,000, averaging out to approximately $160,000 per year. During those years, the firm reported millions of dollars in gross profits and Mr. Goldstein reported millions of dollars in taxable income. These small numbers further strengthen the inference that any errors here were the result of good faith mistakes rather than willful misconduct. And we find it highly unusual that the Tax Division would consider criminal charges—and refuse even to discuss the possibility of civil resolution—based on such low numbers.

**Conduct of Investigation**

It is a foundational principle of the Justice Department that the Department investigates crimes, not people. As Deputy Attorney General Monaco put it in comments at the University of Chicago in May 2022:

> We look at and investigate the crimes in front of us, and then we work our way up. We follow the facts, we follow the evidence, we follow the money, and have our investigation go out from there. And it's very important to do that in a methodical way. Why? So that people don't think you are starting from an assumption. If you are starting from that which is in front of you, and investigating those facts, and letting the facts guide you, not letting your assumptions, not letting viewpoints guide you, but starting at the bottom as it were and working out from there, that also I think should give people confidence that we are investigating conduct, not people and not viewpoints.

The investigation of Mr. Goldstein is a paradigmatic example of the violation of this principle. For four years, this investigation went down one meritless rabbit hole after another, in a search for something—anything—with which to charge Mr. Goldstein. For example, the government at various points has alleged that: (1) Mr. Goldstein willfully failed to disclose the existence of foreign bank accounts; (2) SCOTUSblog was a sham entity; and (3) Mr. Goldstein inappropriately used SCOTUSblog funds to pay personal expenses. The government appears to have issued well over two hundred grand jury subpoenas. After years of investigation and millions of dollars spent by Mr. Goldstein responding to subpoenas for virtually every financial record imaginable, these theories (among others) have been abandoned.

This roving search for a crime appears to be motivated in large part by personal animus towards Mr. Goldstein. We are aware that witnesses have been asked—in interviews and before the grand jury—about Mr. Goldstein's sexual habits and proclivities, the details of his marriage, and his personal relationships. The government has demanded that third parties produce sexually explicit photographs and videos involving Mr. Goldstein. Needless to say, these topics and materials have nothing to do with any possible theory of criminal liability. Instead, they reflect an inappropriate, prurient obsession with Mr. Goldstein's personal life.[1]

* * * * *

In its rush to seek an indictment before the change in Administration, the Tax Division has deprived us of basic information about the allegations against Mr. Goldstein as well as the opportunity to meaningfully respond. Further review of this matter is amply warranted in light of the utter lack of evidence of willfulness and the conduct of this investigation, which appears to have been a four-year roving inquiry into every aspect of Mr. Goldstein's life to find

[redacted]

something—anything—to support a criminal charge. We respectfully request that the Tax Division provide us with the information we have long requested, including the particular transactions supporting its tax loss calculation, the relevant bank statements of Mr. Goldstein, and the basis for its contention that charges based on the 2016 tax year fall within the statute of limitations. Once we have reviewed this information, we would like the opportunity to be heard by the Tax Division and if necessary this Office. We will agree to an extension of the tolling agreement so that the government suffers no possible prejudice from this review process.

Sincerely,

*/s/ Jonathan Kravis*
Jonathan Kravis

*/s/ Andrew Weissmann*
Andrew Weissmann

*/s/ Christopher Kise*
Christopher Kise

*/s/ John Lauro*
John Lauro

cc:

DOJ Tax Division

Kelly Hayes

U.S. Attorney's Office for the District of Maryland