**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S REPLY IN SUPPORT OF HIS MOTION IN LIMINE TO PRECLUDE EVIDENCE OF UNCHARGED MISCONDUCT AND OTHER <u>CHARACTER EVIDENCE</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1
ARGUMENT ........................................................................................................................1
I.     THE GOVERNMENT'S 404(B) NOTICE IS DEFICIENT .................................................1
II.    EVEN IF THE GOVERNMENT HAD PROVIDED ADEQUATE NOTICE,
       THE EVIDENCE IDENTIFIED IN THE GOVERNMENT'S 404(B) NOTICE IS
       INADMISSIBLE ........................................................................................................3
       A.    "Caldwell Evidence" (Category 1) .........................................................3
       B.    "Understood Taxes Evidence" (Category 2) ..........................................5
       C.    Failure To Pay Federal Taxes In Tax Years Before 2016 And After 2021
             (Categories 3 and 4) ...............................................................................7
       D.    Failure To Report Gambling Winnings In Previous Years (Category 6) ..............10
       E.    "Misclassification of Financial Transactions Evidence" (Category 7) ..................10
       F.    "False Statements to Litigation Funder Evidence" (Category 10) .........................11
       G.    Evidence Regarding State Taxes (Category 5), Evidence That Mr.
             Goldstein Continued To Play Poker (Category 8), and Evidence Regarding
             Use Of A SCOTUSBlog Employee (Category 9)......................................12
       H.    Personal Relationships With Employees (Category III).........................13
III.   THE GOVERNMENT DOES NOT DISPUTE THAT SEVERAL OTHER
       CATEGORIES OF EVIDENCE ARE INADMISSIBLE ...............................................15
CONCLUSION....................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Stenlund v. Marriott Int'l, Inc.*,
    172 F. Supp. 3d 874 (D. Md. 2016) ................................................................................10, 15

*United States v. Abarca*,
    61 F.4th 578 (8th Cir. 2023) ....................................................................................................2

*United States v. Al-Suqi*,
    581 F. App'x 212 (4th Cir. 2014) ............................................................................................8

*United States v. Bell*,
    No. 17-CR-20183, 2020 WL 4726935 (E.D. Mich. Aug. 14, 2020) .......................................2

*United States v. Briley*,
    770 F.3d 267 (4th Cir. 2014) ...........................................................................................14, 15

*United States v. Brizuela*,
    962 F.3d 784 (4th Cir. 2020) ........................................................................................ *passim*

*United States v. Bush*,
    944 F.3d 189 (4th Cir. 2019) ..................................................................................................12

*United States v. Cenephat*,
    115 F.4th 1359 (11th Cir. 2024) ..............................................................................................2

*United States v. Dill*,
    628 F. Supp. 3d 1104 (E.D. Okla. 2022) .................................................................................2

*United States v. Hall*,
    858 F.3d 254 (4th Cir. 2017) ........................................................................................ *passim*

*United States v. Johnson*,
    893 F.2d 451 (1st Cir. 1990) ....................................................................................................8

*United States v. Ledesma*,
    No. 19-20216, 2020 WL 7075289 (E.D. Mich. Dec. 3, 2020) ................................................2

*United States v. Lighty*,
    616 F.3d 321 (4th Cir. 2010) ............................................................................................3, 14

*United States v. Lord*,
    404 F. App'x 773 (4th Cir. 2010) ............................................................................................8

*United States v. McBride*,
    676 F.3d 385 (4th Cir. 2012) ...................................................................................................9

*United States v. McGee*,
  No. 22-CR-019-JFH, 2022 WL 17960451 (E.D. Okla. Dec. 27, 2022) ...................................2

*United States v. Ringwalt*,
  213 F. Supp. 2d 499 (E.D. Pa. 2002) ..................................................................................8, 9

*United States v. Shah*,
  125 F. Supp. 3d 570 (E.D.N.C. 2015)....................................................................................13

*United States v. Sutherland*,
  921 F.3d 421 (4th Cir. 2019) ...................................................................................................8

*United States v. Tedder*,
  801 F.2d 1437 (4th Cir. 1986) .................................................................................................9

*United States v. Upton*,
  799 F.2d 432 (8th Cir. 1986) ...................................................................................................9

**FEDERAL RULES**

Fed. R. Evid. 403 ................................................................................................................ *passim*

Fed. R. Evid. 404 ......................................................................................................... 2, 10, 12

Fed. R. Evid. 404(b)............................................................................................................ *passim*

Fed. R. Evid. 404(b)(3) ...............................................................................................................2

Fed. R. Evid. 404(b)(3)(B)....................................................................................................1, 2

Fed. R. Evid. 405 ......................................................................................................................10

Fed. R. Evid. 704 ........................................................................................................................5

Fed. R. Evid. 802 ........................................................................................................................5

**LOCAL RULES**

L.R. 105.3 ....................................................................................................................................3

iii

**INTRODUCTION**

Evidence of Mr. Goldstein's prior bad acts and other prejudicial character evidence should be excluded from trial. Although the government acknowledges its obligation to provide notice of the "permitted purpose" for which it seeks to introduce such evidence and "the reasoning that supports the purpose," Fed. R. Evid. 404(b)(3)(B), the prosecution's Rule 404(b) notice in this case did neither. That alone is grounds for exclusion.

In all events, the evidence identified in the government's notice is inadmissible under Rules 403 and 404. Mr. Goldstein is charged with nineteen discrete tax offenses in six different years. Any tax-related misconduct before or after that period is, by definition, not "intrinsic" to the charged tax years; nor is it necessary to prove any element of those offenses. Likewise, Mr. Goldstein's statements to a private litigation funder are irrelevant to the indictment's three counts of making false statements to a mortgage lender. And evidence about Mr. Goldstein's lifestyle, including his personal spending habits and romantic relationships, is even further afield.

All of the foregoing evidence is seriously prejudicial, as it presents an unacceptable risk that the jury will convict based on propensity, negative character inferences, or even a general dislike of Mr. Goldstein. Moreover, litigating those uncharged allegations, some of which reach back more than a dozen years and many of which are hotly disputed, would make an already sprawling case even more confusing and time-consuming for the jury to sort through. The government has charged Mr. Goldstein with twenty-two counts of criminal conduct spanning six years; there is no need to lengthen and complicate an already complex trial by subjecting the jury to even more litigation over uncharged conduct. The evidence should be excluded.

**ARGUMENT**

**I.    THE GOVERNMENT'S 404(b) NOTICE IS DEFICIENT**

Rule 404(b) was amended in 2020 "'principally to impose additional notice requirements

1

on the prosecution.'" *United States v. Abarca*, 61 F.4th 578, 580 (8th Cir. 2023) (quoting Fed. R. Evid. 404, Advisory Comm. Notes). "The 2020 amendments make clear that the government now must 'articulate'" *both* "'the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose.'" *Id.* at 580-81 (quoting Fed. R. Evid. 404(b)(3)); *accord United States v. Cenephat*, 115 F.4th 1359, 1366 (11th Cir. 2024).

The government's 404(b) notice unsuccessfully attempts to satisfy both of Rule 404(b)(3)(B)'s requirements in a single sentence. As to the government's obligation to "articulate … the permitted purpose for which the prosecutor intends to offer the evidence," Fed. R. Evid. 404(b)(3)(B), the government's notice simply parrots every possible "permitted purpose" listed in Rule 404(b). *See* ECF No. 212 ("Notice") at 1. That is exactly the sort of *pro forma* "notice" that the 2020 amendments prohibit. *See* ECF No. 210 ("Mot.") at 7-9; *see, e.g.*, *United States v. Bell*, No. 17-CR-20183, 2020 WL 4726935, at *4 (E.D. Mich. Aug. 14, 2020). As to the requirement that the prosecution "articulate … the reasoning that supports the purpose" for which the evidence is offered, Fed. R. Evid. 404(b)(3)(B), the government's notice is totally silent, *see* Notice p.1—and, as a consequence, plainly insufficient. *See, e.g.*, *United States v. McGee*, No. 22-CR-019-JFH, 2022 WL 17960451, at *2 (E.D. Okla. Dec. 27, 2022).

The two cases cited by the government, *see* ECF No. 224 ("Opp.") at 8, only underscore the government's apparently widespread practice of flouting Rule 404(b)'s new requirements. Plenty of courts have admonished the government for this practice, yet the issue persists. *See, e.g.*, *United States v. Dill*, 628 F. Supp. 3d 1104, 1111 (E.D. Okla. 2022) (evidence inadmissible because "conclusory" 404(b) notice was "void of any explanation or analysis"); *United States v. Ledesma*, No. 19-20216, 2020 WL 7075289, at *5 (E.D. Mich. Dec. 3, 2020) (order "direct[ing] the government to take note of subsection (b)(3)(B)").

2

Because the government's notice is deficient, the 404(b) evidence it proposes to offer is inadmissible. *See* Mot. 9-10. The government's request to treat its opposition brief as belated notice under Rule 404(b) would make such notice untimely by more than two months. *See* ECF No. 155. This Court's September 12 deadline was designed to provide the parties with adequate time (six weeks) to brief motions *in limine*. Construing the government's brief as Rule 404(b) notice would effectively—and unfairly—cut the defense's time to respond from six weeks to one, *see* ECF No. 155, and halve the permissible briefing, *see* L.R. 105.3, all while the defense is preparing for a trial scheduled to start in less than two months. The government should not be allowed to achieve compliance with Rule 404(b) by violating this Court's scheduling orders, especially without showing good cause for doing so. *See* ECF No. 196, at 1-2.

## II.     EVEN IF THE GOVERNMENT HAD PROVIDED ADEQUATE NOTICE, THE EVIDENCE IDENTIFIED IN THE GOVERNMENT'S 404(b) NOTICE IS INADMISSIBLE

The government "bears the burden of establishing that evidence of … prior bad acts is admissible for a proper purpose." *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017). "For such evidence to be admissible, it must be '(1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable.'" *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (citation omitted). Relatedly, courts are required to give purported "intrinsic" evidence "a hard look" to ensure that it is not "used to disguise the type of propensity evidence that Rule 404(b) is meant to exclude." *United States v. Brizuela*, 962 F.3d 784, 795 (4th Cir. 2020). Under these standards, the evidence identified in the government's 404(b) notice is clearly inadmissible.

### A.     "Caldwell Evidence" (Category 1)

The government's so-called "Caldwell Evidence" should be excluded from trial. *See* Mot. 15-18. First, Mr. Goldstein's ostensible "failure to tell Caldwell about his significant

3

gambling income," Opp. 6, is not intrinsic to any of the conduct charged in the indictment, which (at the earliest) occurred *four years* later.  Moreover, the government's own 404(b) notice concedes that Mr. Goldstein told his new accountants at GRF "about significant winnings and losses when GRF was preparing his 2016 individual income tax return,"[1] Notice p.3, so whatever happened with Caldwell is not part of the same "scheme" alleged in the indictment, Opp. 15.  Allowing the jury to consider whether Mr. Goldstein accurately reported his gambling income many years before the relevant time period would confuse the issues and constitute "'piling-on' by the prosecution," which impermissibly "invite[s] the jury 'to find guilt by association or as result of a pattern.'"  *Brizuela*, 962 F.3d at 796 (citation omitted).

      Second, Mr. Goldstein's decision to fire Caldwell in 2012 for failing to properly report his gambling winnings and losses is not at all probative of whether he anticipated that his *subsequent* accounting firm would commit the errors alleged in the indictment.  In fact, as the government's 404(b) notice acknowledges, Mr. Goldstein fired Caldwell because he expected an accounting firm to "know[] to collect and report [his] poker transactions" and to proactively "ask follow-up questions about potential items that needed to be reported on taxes."  Notice p.2.

      Third, there is no legitimate need for the government to present evidence that the IRS audited one of Mr. Goldstein's pre-2012 tax returns, which is far more prejudicial than probative.  The government claims this evidence will show that Mr. Goldstein "understood his tax reporting obligations," Opp. 16, but Mr. Goldstein has never contended—and will not contend at trial—that he was unaware that gambling income is taxable.  Instead, Mr. Goldstein vigorously disputes

---

[1] As noted in the defense's motion *in limine*, this allegation confirms that any pre-2016 errors in GRF's reporting of Mr. Goldstein's gambling winnings and losses are neither intrinsic nor admissible under Rule 404(b).  *See* Mot. 16-17.  The government's brief makes no attempt to justify admitting any such evidence.  *See* Opp. 14-17 (discussing only Caldwell).

4

that he willfully evaded taxes (or willfully aided in the preparation of false returns) by failing to prevent GRF's accounting errors. Nothing the IRS agent could have said to Mr. Goldstein in 2012 about "proper gambling record keeping practices," Opp. 15, could demonstrate that Mr. Goldstein knew an entirely different accounting firm would misreport his income years later.[2]

### B. "Understood Taxes Evidence" (Category 2)

Legal briefs signed by Mr. Goldstein that happen to address tax concepts do not demonstrate that Mr. Goldstein knew any of *his* conduct was unlawful. *See* Mot. 26. The two representative briefs filed by the government prove this point: each addresses the availability of federal jurisdiction to hear certain tax-related cases, not the underlying conduct criminalized by the tax laws. *See* ECF No. 222-1, at 4 (federal preemption); ECF No. 224-2, at 4 (Tucker Act). Presenting such evidence to the jury would waste significant time and risk immense confusion, as counsel for both parties would have to tease out the complex legal topics addressed by each brief, and defense counsel would have to correct any misimpressions about the scope of Mr. Goldstein's legal practice. And it would seriously prejudice Mr. Goldstein by improperly encouraging the jury to hold him to a higher *mens rea* standard simply because he is an accomplished lawyer—when, in fact, the government moved to preclude Mr. Goldstein from arguing any motions in his case on the ground that "his command of the … legal issues … may be weak" and "he appears to lack prior experience with many of them." ECF No. 158, at 6-7.

Evidence that Mr. Goldstein advised an agent for California Businessman-2 "to create a

---

[2] The government's suggestion that Caldwell will testify that "the IRS [agent] advised [Mr.] Goldstein … on proper gambling record keeping practices" and that Mr. Goldstein "knew his tax reporting and recordkeeping obligations for gambling income," Opp. 15, raises a number of concerns beyond Rules 403 and 404(b)—including, e.g., the rules against hearsay and against offering an opinion about the defendant's mental state. *See, e.g.*, Fed. R. Evid. 704, 802. The defense reserves all rights to object to Caldwell's testimony at trial.

5

foreign company and bank account solely for the purpose of recording gambling wins and losses," Opp. 18, is likewise entirely irrelevant to the question of whether Mr. Goldstein willfully evaded *his own* taxes. *See* Mot. 26-27. The government does not suggest that Mr. Goldstein knew anything he advised California Businessman-2 to do was unlawful. Other than the simple act of opening a foreign bank account,[3] none of Mr. Goldstein's ostensible advice "mirrored" his own conduct. And the advice Mr. Goldstein gave to California Businessman-2's representative in 2014 is entirely disconnected, both conceptually and temporally, from the series of poker games that Mr. Goldstein played against California Businessman-2 in 2016. Litigating the issues of what Mr. Goldstein advised, whether it was unlawful, whether Mr. Goldstein knew it was unlawful, and whether Mr. Goldstein personally adopted any of the strategies he advised would distract and confuse the jury with a lengthy minitrial.

Finally, the defense agrees that Mr. Goldstein's communications regarding the proper characterization of income and expenses, like the email exchange in Exhibit 3 (ECF No. 224-3), are relevant to his knowledge and mental state.[4] *See* Mot. 6 n.2. Mr. Goldstein also agrees that IRS notices like the one in Exhibit 4 (ECF No. 224-4), which document Mr. Goldstein's participation in an IRS payment plan, are admissible. *See* ECF No. 225, at 8-15. That said, because the government has provided no other examples or explanation of what other "IRS[]" notices" or "email exchanges" it might seek to offer, Opp. 17-18, the defense reserves the right

---

[3] The government's brief *again* makes the seriously misleading allegation that Mr. Goldstein "wholly failed to tell his accountants" about the Montenegrin account. Opp. 19. As established at the November 6 hearing, the government *for years* has had conclusive proof that Mr. Goldstein directed his office manager to disclose those accounts. *See* ECF No. 116, at 2-3, 11.

[4] The government has taken flatly inconsistent positions on this issue. *Compare* ECF No. 204, at 15 (seeking to preclude Mr. Goldstein from "cross-examining the government's witnesses regarding instances in which he … adequately notified his employees and/or his tax preparers that the expenses were personal"), *with* Opp. 17-18 (arguing that "email exchanges … regarding the classification and tax implications of various payments from G&R accounts" are admissible).

6

to object such evidence on a case-by-case basis at trial.

### C. Failure To Pay Federal Taxes In Tax Years Before 2016 And After 2021 (Categories 3 and 4)

The law of the Fourth Circuit is clear: Where the defendant is charged with a "specific" instance of misconduct, for example, writing an unlawful prescription (as in *Brizuela*) or failing to pay taxes on a specific date for a specific tax year (as here), evidence about *other* transactions—even if factually similar—is "extrinsic to the offenses for which [the defendant is] charged." *Brizuela*, 962 F.3d at 795-96; *see* Mot. 12-14. As a result, evidence that Mr. Goldstein failed to pay his federal taxes before or after the charged period is admissible only if the government "satisf[ies] [its] burden" under Rule 404(b) to "identify each proper purpose for which it will use the … evidence and explain how that evidence 'fits into a chain of inferences … no link of which is a forbidden propensity inference." *Hall*, 858 F.3d at 266 (citation modified).

The government makes essentially no effort to explain how evidence that Mr. Goldstein failed to timely pay his taxes before the charged period serves any "proper purpose." *Id.* The government simply asserts that Mr. Goldstein "knew that these taxes were due but still failed to pay." Opp. 20. To begin with, whether Mr. Goldstein "knew that these [pre-2016] taxes were due," *id.*, is not relevant to whether he willfully failed to pay his 2016, 2017, 2019, 2020, and 2021 taxes when he fully complied with the civil tax-enforcement regime. *See* ECF No. 225, at 8-14. And regardless of what Mr. Goldstein "knew" about his obligation to pay his 2013, 2014, and 2015 taxes, Opp. 8, whether he actually paid on time is not at all relevant to that knowledge.[5]

---

[5] The government suggests that non-payment in uncharged tax years is "evidence of absence of mistake and lack of accident." Opp. 21. This is a strawman. Mr. Goldstein has never claimed, and will not claim at trial, that his belated tax payments were accidental (e.g., that the check was lost in the mail).

7

The government's attempt to justify evidence regarding Mr. Goldstein's 2022 and 2023 taxes fares no better.[6] Again, the government simply asserts that Mr. Goldstein's failure to pay taxes in 2022 and 2023 "is indirect inculpatory evidence of willfulness" for tax years 2016 through 2021. Opp. 21. But why? Not only does the government fail to spell out this "chain of inferences," *Hall*, 858 F.3d at 266, but it has in fact *affirmatively argued* elsewhere that any such inference is improper, taking the position that "[w]hat [Mr.] Goldstein thought about the importance of paying his taxes after [2020] could not possibly have any bearing on what was in his mind when his obligation to pay his taxes arose under the law." ECF No. 204, at 9.

The cases the government chiefly relies upon (Opp. 16, 19-20) are readily distinguishable. *United States v. Lord*, 404 F. App'x 773 (4th Cir. 2010), concerned a sufficiency of the evidence challenge (not admissibility), and the probative "pattern of failing to pay … taxes for an extended period of time" was *charged* conduct. *Id.* at 778-79; *see also United States v. Al-Suqi*, 581 F. App'x 212, 214-15 (4th Cir. 2014) (evidence recorded during undercover operation was admissible because it "occurred during the same time period that [the defendant] was preparing the tax returns that were the subject of the indictment"). And in *United States v. Ringwalt*, 213 F. Supp. 2d 499 (E.D. Pa. 2002), the court admitted prior-year tax returns showing that the defendant had used "the *identical scheme* and plan to evade income taxes." 213 F. Supp. 2d at 509 (E.D. Pa. 2002) (emphasis added); *see also United States v. Sutherland*, 921 F.3d 421, 430 (4th Cir. 2019) (evidence of prior-year tax return admissible because evasive scheme began in that year).[7] Here, by contrast, the government does not argue that Mr.

---

[6] The government's brief mentions tax year 2024. Because that topic was not properly noticed, *see* Notice p.4, it is inadmissible, *see* pp.1-3, *supra*. Evidence regarding Mr. Goldstein's 2024 taxes should also be excluded for the same reasons as his 2022 and 2023 taxes.

[7] Many of the out-of-circuit cases cited by the government are inapposite for similar reasons. *See, e.g.*, *United States v. Johnson*, 893 F.2d 451, 453 (1st Cir. 1990) (tax evasion, not failure to

8

Goldstein committed tax evasion in uncharged years, much less that he adopted some evasive scheme in those years that was "the very same" as in charged years, *Ringwalt*, 213 F. Supp. 2d at 509, or which continued into the charged period. Rather, the government simply claims that there are other years in which Mr. Goldstein—who is not charged with failing to file any returns—did not timely file and/or pay his taxes. That is not a "scheme" or a "modus operandi." Opp. 20, 22. It is just improper propensity evidence, pure and simple. *See* Mot. 14-15.

In the alternative, evidence of Mr. Goldstein's failure to file and/or pay taxes in uncharged years should be excluded under Rule 403. *See* Mot. 14-15. Indeed, the government *concedes* that "there is a chance of unfair prejudice in that the jury could believe that [Mr. Goldstein] should be convicted for years in which he failed to pay or report his taxes." Opp. 21-22. The government's view that such prejudice will be "resolved by … a limiting instruction," Opp. 22, ignores the "unacceptable risk that the jury will assume that [Mr. Goldstein] has a propensity" for tax crimes "and convict on that basis alone." *Hall*, 858 F.3d at 270 (citation modified); *see also United States v. McBride*, 676 F.3d 385, 399 & n.5 (4th Cir. 2012) (holding that erroneous admission of "bad act" evidence "was not cured by the issuance of a limiting instruction" because "[a] jury instruction, while a required condition for the admission of any evidence pursuant to Rule 404(b), does not necessarily rescue the use of otherwise inadmissible evidence."); *United States v. Tedder*, 801 F.2d 1437, 1444 (4th Cir. 1986) ("[A] curative instruction is not adequate where the inadmissible evidence is likely to impress a jury to the extent that an instruction from the court will not dissipate its prejudicial effect."). And the government simply ignores the other Rule 403 considerations counseling in favor of exclusion,

---

pay); *United States v. Upton*, 799 F.2d 432, 433 (8th Cir. 1986) (sufficiency of the evidence, not admissibility). And all of those appellate decisions filtered their analysis through the forgiving abuse-of-discretion standard of review.

9

including that litigating Mr. Goldstein's reasons for failing to pay (or file) *five years' worth* of additional taxes will cause "undue delay" and cost significant amounts of "wast[ed] time" in many additional minitrials. Fed. R. Evid. 403; *compare* Mot. 15, *with* Opp. 21-22.

### D. Failure To Report Gambling Winnings In Previous Years (Category 6)

Although the government lumps its sixth category of Rule 404(b) evidence (failure "to report gambling winnings in previous years," Notice p.4), under the heading "Pattern of Failure to Pay and Report Taxes Evidence," Opp. 6, the government's brief nowhere defends the admissibility of that evidence, *see* Opp. 19-22. For the reasons given in the defense's motion *in limine*, such evidence is inadmissible. *See* Mot. 15-17 (not intrinsic, inadmissible under Rule 404(b)), and inadmissible under Rule 403); *see Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("[F]ailing to respond to [an] argument . . . concedes the point.").

### E. "Misclassification of Financial Transactions Evidence" (Category 7)

The government intends to offer "[e]vidence related to [Mr. Goldstein's] misclassification of G&R financial transactions before, during, and after the charged period." Opp. 6. To the extent this evidence constitutes communications by Mr. Goldstein to his office managers or accountants explaining how expenses or other transactions should be classified, the defense agrees such evidence falls outside Rules 404 and 405 because it is relevant to intent. *See* ECF No. 225, at 7-8. The Court should reject the government's attempt to preclude Mr. Goldstein from offering that very same evidence (*see* ECF No. 204, at 15-16), as allowing the government to offer evidence of purportedly inaccurate instructions while precluding the defense from offering evidence of accurate instructions would be extremely unfair and prejudicial.

To the extent the government seeks to introduce evidence of other, uncharged examples of mischaracterizations, such evidence should be excluded. *See* Mot. 15-18; *but see* Opp. 17 (government stating that it "does not intend to prove up a litany of transactions" from prior tax

10

years). By definition, accounting errors that did not affect Mr. Goldstein's tax liability in charged tax years are extrinsic to the crimes of evading those *specific* taxes or aiding in the preparation of those *specific* returns. *See* p.7, *supra* (discussing *Brizuela*). Erroneous characterizations also are irrelevant to Mr. Goldstein's knowledge or intent—unless, as noted, if Mr. Goldstein provided the instructions on how to characterize those transactions. *See* Mot. 16-17. And uncharged mischaracterizations are substantially more prejudicial than probative, as they present a significant risk that "the jury [will] '[] find guilt … as result of a pattern,' rather than examining whether sufficient evidence supported a conviction under each count in the indictment." *Brizuela*, 962 F.3d at 796 (citation omitted). As it stands, the jury in this case will be asked to sift through eight different transactions to determine if they were willfully mischaracterized, *see* ECF No. 120, at 3; adding *uncharged* transactions to that already-full plate is wholly unnecessary and risks wasting significant time and resources.

  F. **"False Statements to Litigation Funder Evidence" (Category 10)**

   The indictment alleges that (1) in February and March 2021, Mr. Goldstein unsuccessfully sought to obtain a loan from FSM to purchase a home in Washington, DC, ECF No. 239 ¶¶ 95, 100; (2) in March and April 2021, Mr. Goldstein's law firm borrowed funds from a litigation funder, which allowed Mr. Goldstein to remove tax liens on his Maryland home, sell that home, and use those funds to purchase a home in Washington, DC, *id.* ¶¶ 101-02; and (3) in September 2021, Mr. Goldstein obtained a loan from NFM, secured by his DC home, and used those funds to partially repay the litigation funder, *id.* ¶¶ 104-106. The indictment charges Mr. Goldstein with making false statements to the mortgage lenders, FSM and NFM—not to the litigation funder. Yet, the government plans to offer evidence that Mr. Goldstein made a false statement to the litigation funder, as well.

   That evidence is inadmissible. *See* Mot. 24-25. Even assuming that the allegation that

11

Mr. Goldstein sought the NFM loan to pay back the litigation funder is part of the "story" of the charged offense of making a false statement *to NFM*, Opp. 24, that story is complete so long as the jury knows that the litigation funder extended Mr. Goldstein a loan. The details of that separate, uncharged financial transaction are not "an integral and natural part of [any] witness's accounts of the circumstances surrounding the [charged] offenses." *United States v. Bush*, 944 F.3d 189, 196 (4th Cir. 2019). Nor are those details "probative of an integral component of the crime on trial" or "essential" to the government's case. *Brizuela*, 962 F.3d at 795.

The government's argument that the alleged falsity of Mr. Goldstein's statement to the litigation funder proves "motive to make false statements to NFM," Opp. 24, makes no sense. The *existence* of the loan from the litigation funder might explain why Mr. Goldstein sought a loan from NFM. But the government offers no coherent theory as to why making allegedly false statements to the litigation funder somehow demonstrates "motive" or "intent" to "make false representations to NFM." Opp. 24. To draw that inference, the jury would have to conclude that Mr. Goldstein has a character for untruthfulness on loan applications—but that is precisely the sort of evidence that is impermissible under Rule 404. *See Hall*, 858 F.3d at 266.

In light of its extremely limited probative value, evidence that Mr. Goldstein failed to disclose his debts to the litigation funder is also inadmissible under Rule 403. *See* Mot. 25. That evidence would encourage the jury to draw prejudicial inferences about Mr. Goldstein's character, confuse the jury about which loan applications may give rise to criminal liability, and waste time by necessitating a trial within a trial over whether Mr. Goldstein actually breached any contractual disclosure obligations to the litigation funder.

G. **Evidence Regarding State Taxes (Category 5), Evidence That Mr. Goldstein Continued To Play Poker (Category 8), and Evidence Regarding Use Of A SCOTUSBlog Employee (Category 9)**

Without engaging with any of the defense's arguments regarding the inadmissibility of

the fifth, eighth, and ninth categories of evidence identified in the government's 404(b) notice, *see* Mot. 12-15, 18-22, the government states that it "does not intend to introduce" such evidence unless Mr. Goldstein "opens the door," Opp. 24-25. Mr. Goldstein has no intention of "opening the door" in the manner suggested by the government (*see* Opp. 24-25). For the reasons offered in the defense's motion *in limine*—and which remain unrebutted by the government—the defense's motion to exclude this evidence should be granted.

### H.     Personal Relationships With Employees (Category III)

The government's persistent inability to articulate a theory as to why G&R's deduction of four employees' salaries and benefits constituted an act of tax evasion presents not only a constitutional vagueness problem, *see* ECF Nos. 122, 154, 246, but also an insurmountable barrier to admissibility. "As the proponent of the evidence, the government bears the burden to establish its admissibility." *United States v. Shah*, 125 F. Supp. 3d 570, 574 (E.D.N.C. 2015). Yet because the government cannot explain what about Mr. Goldstein's relationship to the four women caused their salaries and benefits to be non-deductible, it cannot coherently identify any purpose for which such evidence is admissible.

First, the government asserts without *any additional* elaboration that "the existence of these relationships … [is] necessary to complete the story related to Counts 3 and 9 through 13." Opp. 25. The government treats the phrase "complete the story" as a magic incantation. It is not. On the contrary, "for evidence of uncharged conduct to be admissible to 'complete the story' of a charged offense," the evidence must be truly "necessary" and "actually essential." *Brizuela*, 962 F.3d at 795. As the defense explained in its motion *in limine*, the government has never explained why evidence about Mr. Goldstein's personal relationships with the employees in question is relevant, much less essential, to whether they had a legitimate employment relationship with G&R. *See* Mot. 20-21.

13

Second, the government contends that "the nature of [Mr.] Goldstein's relationships with these women" may be "proof of his motive" to hire them. Opp. 25. But it is undisputed that the women were, in fact, hired by G&R. So it is entirely unclear why the government believes Mr. Goldstein's *reasons* for hiring those employees are "'necessary to prove an element of the charged offense[s].'" *Lighty*, 616 F.3d at 352 (citation omitted). Nor is it clear why the government seemingly believes that Mr. Goldstein crossed the line into tax evasion simply because his personal relationship with the women was romantic instead of "platonic."[8] Opp. 25.

The government's promise that it "does not plan on unnecessarily introducing … irrelevant and salacious details" about Mr. Goldstein's relationship with the four employees, Opp. 25—apparently reserving for itself the authority to decide what is "necessar[y]," "[]relevant," and sufficiently non-"salacious," *id.*—is not a basis upon which to deny the defense's motion *in limine*. As evidenced by the government's 404(b) notice, its grand jury presentation, and its briefs on the employee allegations, the government and the defense have extremely different views about the relevance and prejudicial effect of this evidence. The defense has therefore moved *in limine* to exclude such evidence precisely so that the defense can rely on this Court's guidance, rather than the government's vague pledge to self-police.

Additionally, the government's brief offers no response whatsoever to the defense's argument that, to the extent evidence regarding Mr. Goldstein's relationships with the four women has any probative value, that value is substantially outweighed by a serious risk of prejudice. *Compare* Mot. 22-24, *with* Opp. 25. As in *United States v. Briley*, 770 F.3d 267 (4th

---

[8] This represents yet *another* late-breaking theory of employee liability. *See* ECF Nos. 122, 154, 246. It also raises more questions than it answers. If hiring a romantic partner constitutes tax evasion, but hiring a platonic friend does not, on what side of the line do familial relationships fall? What about spousal relationships? The government's brief does not say.

14

Cir. 2014), the government here has attempted to "use th[e] least serious charge"—evading less than $18,000 of taxes—"as a conduit for bringing in unseemly acts not charged in the indictment," "which then might affect consideration of the more serious charges." *Id.* at 277; *see also id.* ("Shining such a bright light on [the defendant's] … sexual activities risked directing the jury's attention to the wrong place."). Thus, evidence and argument about Mr. Goldstein's intimate relationships—including references to "mistresses," "paramours," and nomenclature indicating an extramarital relationship—should be excluded under Rule 403.

### III. THE GOVERNMENT DOES NOT DISPUTE THAT SEVERAL OTHER CATEGORIES OF EVIDENCE ARE INADMISSIBLE

The government does not dispute that several other kinds of evidence and argument (only some of which are mentioned in the government's 404(b) notice) are impermissible. *See Stenlund*, 172 F. Supp. 3d at 887. *First*, the government does not contest that Mr. Goldstein's personal spending habits are neither intrinsic to the charged conduct nor admissible for a proper purpose under Rule 404(b). *See* Mot. 18-19. Moreover, evidence of Mr. Goldstein's purportedly extravagant spending is unduly prejudicial under Rule 403. *See* Mot. 19. *Second*, the government does not resist the defense's request for an order directing the government to promptly disclose any other uncharged misconduct it plans to introduce at trial, regardless of whether the government claims that such evidence is intrinsic to the charged offenses. *See* Mot. 28, 30. *Third*, the government does not dispute that it would be improper at trial to describe the transactions identified in Paragraph 41 of the Superseding Indictment (now Paragraph 45 of the Second Superseding Indictment) as illicit, fraudulent, or otherwise unlawful. *See* Mot. 28-30. This Court should issue an order precluding the government from doing so. *See* Mot. 30.

### CONCLUSION

The motion *in limine* should be granted.

Dated: November 21, 2025

Respectfully submitted,

/s/ Jonathan I. Kravis
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*