IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. LKG-25-6 |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |
| | * | |

### DEFENDANT THOMAS C. GOLDSTEIN'S
### MOTION FOR LEAVE TO SUPPLEMENT EXPERT DISCLOSURE

Defendant Thomas C. Goldstein respectfully requests leave to supplement his expert disclosure to designate a new expert to testify regarding the numerous accounting errors committed by Mr. Goldstein's tax preparers Gelman, Rosenberg & Freedman, PC ("GRF"). This topic is critical to Mr. Goldstein's defense that he did not willfully evade taxes or assist in the preparation of false tax returns, and it was properly included in the defense's timely expert notice. In light of the Court's ruling that this subject requires education that the defense's current designated expert does not possess, the defense has identified another expert who can testify on this topic. The defense would offer that expert on Topic 3 in the original disclosure. The current designated expert, David Williams, would testify on Topics 4 and 6 in the original disclosure, and would serve as the defense's summary witness.

The government will suffer no prejudice from this supplement, as the substance of the expert testimony that the defense intends to offer through the new expert is set forth in the current expert notice, and the underlying facts have been described in several pretrial defense filings. And because this is not a civil case, the government would not be entitled to additional discovery on

1

the new expert beyond their curriculum vitae and prior testimonial experience, which the defense will promptly provide.

The defense has identified a candidate to serve as an expert on Topic 3. This candidate, who works at the same firm as the current expert and holds a CPA and a degree in accounting and finance, is reviewing the relevant materials. The defense expects to be in a position to disclose the new expert to the government by Friday, December 19, 2025. The defense will be ready to proceed to trial on January 12, 2026, with both experts. If the government takes the position that it cannot be ready for trial on January 12 in light of the supplemented defense expert disclosure, then the defense requests in the alternative that the Court continue the trial date. To be clear—the defense is not requesting a continuance unless the government contends—and the Court agrees—that a defense supplement to the expert disclosure requires a continuance.

## **FACTUAL BACKGROUND**

Mr. Goldstein is charged with twenty-two counts of tax evasion and related offenses. As the Court recognized at the December 12, 2025 motions hearing, willfulness will be a central element of Mr. Goldstein's defense. And a key prong of Mr. Goldstein's willfulness defense will be the numerous accounting errors committed by GRF, many of which relate directly to charged conduct.

For example, the Second Superseding Indictment alleges that on three occasions Mr. Goldstein redirected legal fee income to a source other than the firm bank account. ECF No. 239, at ¶¶ 46-47, 52, 81-86. There is no dispute that Mr. Goldstein never instructed GRF—or anyone else—not to report the income. It is also undisputed that asking a payor to make a payment to a personal bank account or to a third party is not itself a crime. Instead, the government's theory of

liability appears to be that Mr. Goldstein redirected the income with the intent to conceal the income from GRF.

The problem with this theory is that the payors had a legal obligation to report the income on Forms 1099-NEC issued to the IRS and to Mr. Goldstein's law firm, Goldstein & Russell. In other words, Mr. Goldstein could not have redirected the payments with the willful intent to conceal the income because redirecting the payments would not in fact conceal the income. Those payments would have to be reported on the Form 1099-NEC no matter where they went.

The undisputed evidence shows that one of the payors did not comply with this legal obligation; another payor recognized and complied with it only several years later. There is no allegation that these failures by the payors are in any way attributable to Mr. Goldstein. The third payor identified in the Second Superseding Indictment *did* issue a Form 1099-NEC to Goldstein & Russell that included the redirected income. This income nevertheless was not reported on the firm's tax returns, not as the result of willful conduct by Mr. Goldstein, but as a result of a fundamental error by GRF.

The undisputed evidence shows that GRF ignored Forms 1099-NEC issued to Goldstein & Russell because GRF wrongly believed that payors were not required to issue Forms 1099-NEC to the law firm. *See* ECF No. 112-1, at 14 (one of GRF's accountants saying "[A]s a corporation companies don't need to issue 1099s to G&R for services. You might get a few by mistake but don't require them so we don't keep them."). As a result, GRF (1) disregarded a Form 1099-NEC from one of the payors that included the redirected income, (2) did not ask Goldstein & Russell to provide a full set of Forms 1099-NEC for tax preparation purposes, and (3) failed to advise Goldstein & Russell to follow up with other payors to obtain the necessary documentation.

3

Based on its position in a prior filing, the defense expects the government to attempt to defend GRF's conduct by arguing that "the proper accounting (and tax reporting) method for a cash-based taxpayer like" Mr. Goldstein's law firm "is to report the amounts flowing into and out of the law firm's coffers," and that "accountants rely on bank statements and gross receipts precisely because" a payor might make a payment to a law firm but not issue a Form 1099-NEC. ECF No. 130, at 11-12. Expert testimony on GRF's improper treatment of this issue will assist the jury in assessing this evidence and is directly relevant to Mr. Goldstein's defense that the failure to report the redirected income was the fault of GRF (as well as the payors) and not the result of his own willful conduct.

To take another example, the Second Superseding Indictment alleges that on one occasion Mr. Goldstein received a payment of income that went to a firm bank account in Montenegro. ECF No. 239, ¶¶ 38-39. It is undisputed that approximately 90% of that income was transferred to the firm bank account in the United States and properly declared as income, while a small amount of the money remained in the firm account in Montenegro. Even though Mr. Goldstein paid taxes on 90% of the money, the government has charged him with tax evasion for failure to pay taxes on the small amount that remained in the Montenegro account.

Here again, the alleged unlawful conduct is directly traceable to GRF's errors. Beginning in the fall of 2016, and continuing for a period of several years, the firm office managers repeatedly told GRF about the Montenegro bank accounts. Yet GRF never requested or reviewed the bank statements for this account. This was a particularly egregious error in light of the fact that, as discussed above, according to the government GRF "rel[ied] on bank statements" and prepared tax returns by "report[ing] the amounts flowing into and out of the law firm's coffers." *See* ECF No. 130, at 11-12. One of the few internal GRF emails produced to the defense shows that the

GRF accountant responsible for preparing the tax returns ignored the emails disclosing the Montenegro bank accounts because he was dealing with a flood in his house. *See* ECF No. 112-1, at 2. Here again, the defense expects the government to attempt to shift the blame for an obvious GRF error to Mr. Goldstein. Expert testimony will be helpful to the jury in resolving that issue.

A third example. The Second Superseding Indictment alleges that, out of the numerous payments from the firm bank account over the years, six payments in 2016 were improperly characterized as business expenses on the firm tax returns. It is undisputed that Mr. Goldstein never instructed anyone to classify these payments as business expenses. The defense will argue at trial that the most reasonable inference is that these mischaracterized transactions were inadvertent, and not the result of willful tax evasion by Mr. Goldstein. In support of that inference, the defense will show that GRF had a practice of improperly assuming that every payment from the firm bank account was a business expense, despite knowing that Mr. Goldstein also executed personal transactions from the business account. Indeed, on several occasions GRF ignored or disregarded express instructions from the Goldstein & Russell staff to classify particular transactions as personal expenditures, including payments to these same counterparties. Expert testimony on this issue will be helpful to the jury to place GRF's conduct in context.

These are just a few examples of the many errors committed by GRF that bear on the conduct charged in the Second Superseding Indictment.

Because the errors made by GRF are central to Mr. Goldstein's defense, the defense expert disclosure included the following topic:

> **3. GRF:** The Superseding Indictment alleges that GRF performed bookkeeping, accounting, and tax-preparation services for G&R and Mr. Goldstein. The defense's pretrial motions have identified numerous errors that [GRF] committed

in the preparation of those returns, including with respect to matters that are the subject of allegations in the Superseding Indictment. Mr. Williams will testify that businesses that hire accountants to prepare their tax returns reasonably expect the accountants to utilize their professional training and experience to identify information that is necessary for accurate completion of tax returns and to communicate with an accounting client information that the accounting firm needs to accurately complete the client's tax return. Mr. Williams will further testify that aspects of GRF's work did not meet generally accepted standards, industry norms, and best practices. For example, Mr. Williams will identify failures by GRF to act on instructions or information provided to them by Mr. Goldstein or G&R employees, and failures to inquire of Mr. Goldstein when GRF lacked sufficient information to accurately complete a tax return. Mr. Williams will also identify incorrect and inaccurate advice that GRF provided regarding Mr. Goldstein and G&R's accounting and tax liability, and instances in which GRF failed to give proper treatment to pertinent tax forms. Mr. Williams will explain how specific errors in G&R's tax reporting impacted Mr. Goldstein's or G&R's tax liability for specific years, including errors that affected Mr. Goldstein's or G&R's tax liability.

The defense's original noticed expert, David Williams, is a Senior Managing Director at FTI Consulting, where he manages white collar investigations and leads the firm's Criminal Tax Enforcement practice.  Mr. Willaims has extensive experience analyzing financial records to assess allegations of tax evasion or other misconduct, and he is a Certified Fraud Examiner.  Prior to joining FTI, he spent twenty years as a Special Agent for the IRS conducting criminal investigations, and three years advising the IRS as a tax attorney.  From those roles, he has

extensive experience with the tax and accounting practices of small businesses and the conduct of tax professionals that prepare returns for those businesses.

At the motions hearing on December 12, 2025, the Court ruled that Mr. Williams was not qualified to opine on the standards of conduct applicable to GRF because he does not have a degree in accounting. In light of that ruling, the defense advised the Court that it would promptly seek leave to supplement its expert notice to identify an expert with an accounting background.

During that same hearing, the Court held that Mr. Williams could testify as an expert regarding the government's tax calculations and IRS payment plans, Topics 4 and 6 in the defense expert notice. These topics are similar to those that the government intends to present through its disclosed witness, Revenue Agent Colleen Ranahan, as fact and summary testimony.[1] The defense intends to present Mr. Williams as an expert on these topics as well as its summary witness on the following topics based on his review of the relevant financial records and communications: (1) what a Form 1099-NEC is; (2) properly-characterized personal expenditures that were not deducted on G&R's tax returns; (3) the transfer and tax treatment of funds involving the relevant Montenegrin bank accounts, the purchase of the Hawthorne property, and the IOLTA account; (4) the other financial transactions underlying the government's tax calculations (including gambling

---

[1] Agent Ranahan is expected to "calculate Defendant's income for tax years 2016 through 2021" and "present her computations of Defendant's tax due and owing for tax years 2016-2021." Ex. A at 5. Mr. Williams' Topic 4, which this Court approved, is to "respond to testimony from Agent Ranahan regarding the calculation of Mr. Goldstein's income and her computation of taxes due and owing." Ex. B at 3. Agent Ranahan is also expected to explain IRS procedures based on her experience as an IRS agent, including "various tax returns and tax forms," "the taxation of income earned by a Subchapter S corporation," and "tax reporting procedures for professional and amateur gamblers." Ex. A at 4-5. Similarly, Mr. Williams' Topic 6, which this Court approved, would explain IRS procedures—"the purpose and timing of a payment plan" and "the IRS's general practices for taxpayers who agree to a payment plan," in addition to summary testimony on "Mr. Goldstein's IRS payment plans and his history of payments on his then-outstanding IRS liabilities." Ex. B at 3.

payments); and (5) Mr. Goldstein and his law firm's history of tax preparation and filing. As to these topics, Mr. Williams will offer summary testimony of the relevant records and communications only, as the government plans to do with Revenue Agent Ranahan.

## ARGUMENT

The Court's Amended Pretrial Scheduling Order permits modification of the pretrial schedule, which includes the expert disclosure deadline, for "good cause shown." ECF No. 219, at 2. The defense request to supplement its expert notice is supported by good cause.

*First,* the request is limited in scope. The defense is not seeking to add new topics of expert testimony or to introduce new issues into the case. Rather, the defense is seeking only to supplement its existing notice with the identity of a new expert who possesses the qualifications identified by the Court at the motions hearing. The subject matter of the proposed new expert's testimony—GRF's errors in preparing the relevant tax returns and the effect of those failures on the charged tax errors—is well known to the parties and has been discussed extensively in various pretrial filings.

*Second,* this expert testimony is critical to Mr. Goldstein's willfulness defense. Many of the tax errors charged in the Second Superseding Indictment—including those discussed above—are attributable to GRF's numerous mistakes. Indeed, some of GRF's errors were so egregious that the government considered charging GRF's lead tax preparer with a crime, as the case agent admitted at the November 6 motions hearing. Expert testimony on this topic will be helpful to the jury and is central to Mr. Goldstein's defense.

The importance of this expert testimony to the defense supports a finding of good cause. "The United States Constitution guarantees criminal defendants 'a meaningful opportunity' to present a complete defense." *United States v. Smead*, 317 Fed. App'x 457, 462 (6th Cir. 2008)

(citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "A central component of a defendant's right to present a defense is the right to offer the testimony of witnesses," including experts. *Id.*; *see United States v. Green*, 698 Fed. App'x 879, 880 (9th Cir. 2017) (reversing conviction based on district court's exclusion of expert testimony concerning standards applicable to the relevant industry on the ground that the ruling denied the defendant "a meaningful opportunity to present a complete defense"); *United States v. Peralta*, 39 Fed. App'x 555, 556 (9th Cir. 2002) (reversing conviction based on exclusion of defense expert testimony); *United States v. Shay*, 57 F.3d 126, 137 (1st Cir. 1995) (same). Here, Mr. Goldstein's constitutional right to present a defense, including through the testimony of experts, strongly supports a finding of good cause.

*Third*, the defense acted diligently and made its request promptly after the Court's ruling on the government's motion in limine. The Court issued its ruling on the afternoon of Friday, December 12. By Saturday, December 13, the defense had identified a potential new expert. The defense filed this motion on the next business day. This is not a circumstance where the defense delayed disclosure to seek a tactical advantage.

*Fourth*, the government will suffer no prejudice from the defense's limited proposed modification. *See United States v. Chalker*, 966 F.3d 1177, 1192 (11th Cir. 2020) (affirming the district court's decision to permit a substitute expert and noting that the party opposing the substitution "cannot show . . . any prejudice from the . . . swap of one expert witness for another"); *see also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2009 WL 2004521, at *1 (E.D.N.Y. July 2, 2009) (Weinstein, J.) (permitting a party to substitute a new expert following the disqualification of an initial expert because "[t]he court recognizes no prejudice . . . in granting [the] motion"). The government is aware of the topic of the proposed expert testimony, as it is set forth in the existing notice. And this is not a civil case where the government would have the

opportunity to depose or otherwise seek discovery from the new expert. The only effect of the defense's proposed expert notice supplement on the government is the identity of the person the government will cross-examine at trial.

*Fifth*, granting this request will not delay the trial. With this limited requested modification to the pretrial scheduling order, the defense will be prepared for trial on January 12, 2026, with both experts—Mr. Williams on Topics 4 and 6 (as well as summary testimony that does not include any expert opinion) and the new expert on Topic 3. The defense sees no reason why the government cannot be ready on the same schedule. However, if the government argues that it would suffer any prejudice from a supplemental expert notice in light of the upcoming trial date, then the defense requests a brief continuance of the trial for the length of time the government states it needs.

                                  Respectfully submitted,

                                  */s/ Jonathan I. Kravis*
                                Jonathan I. Kravis (Bar No. 31556)
                                Stephany Reaves (Bar No. 19658)
                                Sarah Weiner (*pro hac vice*)
                                MUNGER, TOLLES & OLSON LLP
                                601 Massachusetts Avenue NW, Suite 500E
                                Washington, DC 20001
                                (202) 220-1100
                                Jonathan.Kravis@mto.com
                                Stephany.Reaves@mto.com
                                Sarah.Weiner@mto.com

                                Adeel Mohammadi (*pro hac vice*)
                                MUNGER, TOLLES & OLSON LLP
                                350 S. Grand Avenue, 50th Floor
                                Los Angeles, CA 90071
                                (213) 683-9100
                                Adeel.Mohammadi@mto.com

                                *Attorneys for Defendant Thomas Goldstein*

Dated: December 15, 2025