IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 25-cr-00006-LKG |
| | ) | |
| THOMAS C. GOLDSTEIN, | ) | Dated:  December 16, 2025 |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON PRE-TRIAL MOTIONS**

**I.      INTRODUCTION**

Pending before the Court for resolution are the (1) the Defendant's motion to dismiss allegations concerning employees (ECF No. 122) and (2) the Defendant's motion to dismiss the Second Superseding Indictment for prosecutorial misconduct (ECF No. 234).  These motions are fully briefed.  ECF Nos. 122, 135, 154, 230, 234, 238, 246 and 250.  The Court held a hearing on these motions on December 12, 2025.  ECF No. 285.  For the reasons that follow, and those stated during the December 12, 2025, hearing, the Court: (1) **DENIES** the Defendant's motion to dismiss the Second Superseding Indictment for prosecutorial misconduct (ECF No. 234); (2) **GRANTS** the Defendant's motion to dismiss allegations concerning employees (ECF No. 122); and (3) **DISMISSES** the allegations concerning the four women employees related to the Government's tax evasion charges in Count 3 of the Second Superseding Indictment.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

On January 16, 2025, a federal Grand Jury sitting in the District of Maryland returned a 22-Count Indictment against the Defendant, Thomas C. Goldstein, for violations of federal tax laws and for making false statements on mortgage loan applications.  ECF No. 1.  On January 27, 2025, the Defendant made his initial appearance and he pled not guilty to all charges.  ECF No. 4.

On August 7, 2025, the Grand Jury returned a Superseding Indictment.  ECF No. 159. On October 7, 2025, the Defendant pled not guilty to the charges in the Superseding Indictment. ECF No. 185.  On November 20, 2025, the Grand Jury returned a Second Superseding

Indictment. ECF No. 239. On December 12, 2025, the Defendant pled not guilty to the charges in the Second Superseding Indictment. ECF No. 276.

The Second Superseding Indictment

The Second Superseding Indictment alleges that, between 2016 and 2022, the Defendant committed various tax crimes, including evading assessment of his income taxes, aiding and assisting in the preparation of false Forms 1040 for himself and false Forms 1120S for his law firm, Goldstein & Russell, P.C. ("G&R"), willfully failing to pay his income taxes and making false statements on certain mortgage loan applications. *See generally* ECF No. 239. Specifically, the Second Superseding Indictment alleges, among other things, that:

> Between 2016 and 2022, [the Defendant] engaged in a scheme to evade the assessment of taxes, file false tax returns, and fail to pay his tax obligations when they were due. In furtherance of that scheme:
>
> [The Defendant] used over $1.1 million of G&R funds to pay personal debts in 2016, including gambling debts owed to poker players and payments due on Note-1, causing the filing of false Forms 1120S and 1040 and the evasion of a substantial amount of his 2016 income tax;
>
> [The Defendant] falsely understated his gambling winnings by more than $3.9 million on his 2016 Form 1040, causing the filing of a false Form 1040 and the evasion of a substantial amount of his 2016 income tax;
>
> In March 2018, [the Defendant] falsely told an IRS Revenue Officer seeking to collect his unpaid taxes for 2016 that his unpaid tax liability for that year was attributable to a legal case resulting in a large payment to [the Defendant] whereas, in truth, his liability was attributable principally to gambling income;
>
> [The Defendant] diverted $250,000 in legal fees due and owing to G&R from Law Firm-1 to his Gambling Account, causing the false understatement of G&R's corporate receipts and the evasion of a substantial amount of his 2017 income tax;
>
> [The Defendant] used $175,000 of G&R funds in 2017 to pay a personal gambling-related debt that he owed to Law Firm-2, causing the filing of false Forms 1120S and 1040 and the evasion of a substantial amount of his 2017 income tax;
>
> [The Defendant] falsely omitted $200,000 in gambling winnings from his 2017 Form 1040 by directing a Nevada-based professional poker player ("Professional Gambler-1") to send winnings that he

owed to [the Defendant] to Law Firm-2 in order to satisfy part of a personal gambling-related debt that [the Defendant] owed to Law Firm-2;

[The Defendant] falsely stated in an October 11, 2018, email to the Accounting Firm that he had "[n]o gambling winnings" in 2017, causing the preparation and filing of a 2017 Form l040 that falsely omitted over $3.4 million in gambling winnings;

[The Defendant] falsely omitted from his 2017 Form 1040 over $210,000 in income from a 401K distribution;

[The Defendant] used G&R assets in 2018, in the form of a $125,000 legal fee due to G&R from Law Firm-2, to satisfy a $125,000 gambling-related debt owed personally by [the Defendant] to Law Firm-2, causing the filing of false Forms 1040 and 1120S and the evasion of a substantial amount of his 2018 income tax;

[The Defendant] used tens of thousands of dollars of G&R funds in 2018 to pay health insurance premiums and full salaries to women, despite the fact that the women were not entitled to insurance coverage and performed little or no work for G&R and the payments were actually personal in nature;

[The Defendant] falsely understated substantial amounts of gambling and other income on his 2018 Form 1040, resulting in the evasion of a substantial amount of his 2018 income tax;

[The Defendant] used $170,000 of G&R funds to pay a personal gambling debt in 2019, causing the filing of false Forms 1120S and 1040 and the evasion of a substantial amount of his 2019 income tax;

[The Defendant] falsely omitted from his Forms 1040 for the 2016, 2017, and 2018 tax years certain interest income received through the Gambling Account, the records for which [the Defendant] failed to provide to the Accounting Firm;

[The Defendant] falsely stated on his 2020 and 2021 Forms 1040 that he had not received, sold, sent, exchanged, or otherwise acquired or disposed of any financial interest in any virtual currency—despite the fact that he had engaged in dozens of cryptocurrency transactions totaling over $10 million over those two tax years;

[The Defendant] falsely omitted $500,000 in legal fee income from the 2021 G&R Form 1120S, resulting in the filing of a false Form 1040 and the evasion of a substantial amount of his 2021 income tax;

> [The Defendant] willfully failed to pay his 2016, 2017, 2019, 2020, and 2021 taxes when due, despite spending millions of dollars on personal expenses, including luxury purchases and payments to and on behalf of women;
>
> [The Defendant], throughout the relevant period, systematically and repeatedly failed to provide to the Accounting Firm, or to G&R's firm managers, records of his gambling wins and losses, despite the fact that [the Defendant] at times kept records of his gambling activity, and throughout the relevant period had access to such information, including Forms 1099 and bank records;
>
> [The Defendant] made false and misleading statements to IRS representatives during an interview on October 14, 2020;
>
> [The Defendant] repeatedly offered things of value, including cryptocurrency and a $10,000 bonus, to a G&R firm manager in late 2020 through early 2021, at least in part to dissuade her from cooperating with the IRS's ongoing criminal investigation; and
>
> [The Defendant] transferred at least $960,000 in personal funds into G&R's Interest on Lawyers' Trust Account ("IOLTA") in March 2021 so that he could prevent the IRS from levying the funds before using them to purchase a new home.

*Id.* at ¶ 28.

### The Allegations Concerning Women Employees

Relevant to the Defendant's motion to dismiss allegations concerning employees, the Second Superseding Indictment alleges as follows:

> Between 2016 and 2022, [the Defendant] was involved in, or pursued, intimate personal relationships with at least a dozen women, transferring hundreds of thousands of dollars to them from his financial accounts or joint bank accounts he set up with the women, and paying for travel and other expenses for many of them. [The Defendant] executed these financial transactions while he owed substantial amounts of money to the Internal Revenue Service ("IRS").
>
> To supplement or supplant payments he was making personally to three of the women, and to pursue an intimate relationship with a fourth woman, [the Defendant] caused the four women to be nominally "hired" as employees of G&R, and added to its health insurance plan, at various points during 2018. That arrangement, [the Defendant] explained to the women, allowed the women to be paid by G&R and obtain health insurance under G&R's policy.

> Before "hiring" the four women, [the Defendant] was involved in or pursuing intimate relationships with each of them and paid them as part of those relationships. As part of his sham employment arrangement scheme, [the Defendant] caused G&R to pay salaries to the four women and pay health insurance premiums on their behalf.
>
> [The Defendant] knew that these payments made by G&R to or on behalf of the women were not ordinary and necessary business expenses of G&R and could not be lawfully deducted as business expenses on G&R's tax return. [The Defendant] knew that the women would and did perform little or no work for G&R, and were not eligible for G&R's health insurance.
>
> To the extent that [the Defendant] gave any assignments to each of the four women during their "employment" at G&R, [the Defendant] caused G&R to continue paying their salaries and insurance premiums for weeks or months after they completed their last assignments. That is, the four women either always had or eventually had no-show jobs, for which [the Defendant] caused G&R to pay their salary and health insurance premiums even though the women were not doing any work for G&R.
>
> For example, although one of the women performed no work for G&R, the firm, at [the Defendant's] direction, paid her more than $4,000 in "salary" over approximately one month, provided her G&R health insurance between 2018 and 2020, and paid the premiums for that coverage.
>
> Despite all this, [the Defendant] caused the full salary payments to, and insurance premium payments for, these four women—which supplemented or replaced his personal payments to them—to be deducted as G&R business expenses, thereby falsely reducing his taxable income.

*Id.* at ¶¶ 11-17. The Second Superseding Indictment further alleges that:

> [D]uring the 2018 tax year, [the Defendant] caused G&R to list as employees four women with whom he was having or pursuing intimate personal relationships. Pursuant to [the Defendant's] instructions, the women were paid salaries by G&R and provided health insurance under G&R's health insurance policy. [The Defendant] knew that payments to or on behalf of the women were not ordinary and necessary business expenses of G&R, and could not be lawfully deducted as business expenses on G&R's tax returns [the Defendant] knew that the women would and did perform little or no work for G&R, and were not eligible for G&R's health insurance. However, [the Defendant] caused over $8,000 in G&R funds to be used to pay the four women's health care premiums and

> over $31,000 in G&R funds to be paid to them as salaries. These payments by G&R replaced or added to personal payments [the Defendant] was making to the women.

*Id.* at ¶ 60. And so, the Second Superseding Indictment alleges that the Defendant "willfully attempted to evade and defeat the income tax due and owing and the payment thereof by him to the United States of America, for the calendar year 2018," by, among other things, "using funds and assets of G&R to make personal payments, in the form of salaries and health insurance premiums, to or on behalf of women with whom he was having or pursuing intimate relationships and who did little or no work for G&R." *Id.* at ¶ 113.

### III. STANDARDS OF DECISION

#### A. Section 7201 Tax Evasion

The tax evasion statute, 26 U.S.C. § 7201, provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony." 26 U.S.C. § 7201. The elements of the crime of tax evasion are: (1) that the defendant acted willfully; (2) that the defendant committed an affirmative act that constituted an attempted evasion of tax payments; and (3) that a substantial tax deficiency existed. *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997).

#### B. The Grand Jury And Prosecutorial Misconduct

It is well-established that there is a "presumption of regularity" that attaches to grand jury proceedings and that a defendant "bear[s] the burden of rebutting the presumption." *United States v. Bros. Constr. Co.*, 219 F.3d 300, 314 (4th Cir. 2000). In this regard, the Fourth Circuit "has repeatedly recognized that district courts should refrain from intervening in the grand jury process absent compelling evidence of grand jury abuse." *United States v. McTague*, 840 F.3d 184, 189-90 (4th Cir. 2016); *see also United States v. Moss*, 756 F.2d 329, 331-32 (4th Cir. 1985); *In re Grand Jury Subpoenas*, 581 F.2d 1103, 1108 (4th Cir. 1978). A defendant is only entitled to dismissal of the indictment where he can establish actual prejudice arising from the purported abuse. *Bank of N.S. v. United States*, 487 U.S. 250, 256 (1988); *United States v. Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999) ("[A] defendant is entitled to dismissal of an indictment only where actual prejudice is established." (citing *Bank of N.S.*, 487 U.S. at 256)). And so, "[d]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the

decision to indict was free from the substantial influence of such violations." *Bank of N.S.*, 487 U.S. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

Relevant to this dispute, the Supreme Court has held that "the grand jury 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)). To that end, "[t]he function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *Id.* And so, "[t]he breadth of [the grand jury's] powers reflects the importance of the grand jury's investigatory mission." *In re Grand Jury Proceedings No. 92-4 Doe No. A93-155*, 42 F.3d 876, 878 (4th Cir. 1994).

### C. Due Process And The Void-For-Vagueness Doctrine

The United States Court of Appeals for the Fourth Circuit has held that "[d]ue process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002) (quoting *Buckley v. Valeo*, 424 U.S. 1, 77 (1976)). Given this, the "void-for-vagueness doctrine" requires that a criminal statute (1) "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited" and (2) "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)). The Fourth Circuit has held that, when the Government "must prove that a defendant intended to violate the law to obtain a conviction, [such a requirement] eliminat[es] any genuine risk of holding a person 'criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *United States v. Hsu*, 364 F.3d 192, 197 (4th Cir. 2004) (quoting *Sun*, 278 F.3d at 309). But, if the Court determines that the Government's theory of criminal liability does not provide notice to the public and adequately curtail arbitrary enforcement, the Court must dismiss the charge. *Cf. United States v. Simms*, 914 F.3d 229, 236-37 (4th Cir. 2019).

### IV.    ANALYSIS

Pending before the Court are (1) the Defendant's motion to dismiss the Second Superseding Indictment for prosecutorial misconduct (ECF No. 234) and (2) the Defendant's

7

motion to dismiss allegations concerning employees (ECF No. 122).  The Court addresses and resolves these motions below.

### A. The Court Denies The Defendant's Motion To Dismiss For Prosecutorial Misconduct

As an initial matter, the Court DENIES the Defendant's motion to dismiss the Second Superseding Indictment for prosecutorial misconduct (ECF No. 234), because the motion is both untimely and unsubstantiated.  First, the Defendant's motion to dismiss is untimely, because it was filed six months after the May 16, 2025, deadline for pre-trial motions set forth in the Court's Scheduling Order.  *See* ECF No. 234; *see also* ECF Nos. 107, 155 and 219.

The Defendant has not shown good cause to belatedly file this motion.  In his motion to dismiss, the Defendant seeks to dismiss the Second Superseding Indictment upon the grounds that the Government improperly asked questions before the Grand Jury about the intimate details of his relationships with four women who were employed by his law firm in or about 2018.  ECF No. 234 at 9-14.  While the Defendant argues that he filed this motion to dismiss as soon as practicable after receiving the transcripts of this Grand Jury testimony, the Defendant's previous pre-trial motion in this case makes clear the Defendant has been aware of the nature of the Government's questioning and the Grand Jury testimony on this topic for some time.  *See* ECF No. 122.

Given this, the Defendant has not shown that he was unable to timely pursue this motion pursuant to the Court's schedule for the filing of pre-trial motions in this case.  And so, the Court DENIES the Defendant's motion to dismiss for prosecutorial misconduct (ECF No. 234) as untimely.

The Court also observes that, even if the Defendant could show good cause to file this belated motion, the Defendant has not met his burden to rebut the "presumption of regularity" that attaches to the Grand Jury proceedings to prevail on his motion for several reasons.  *See Bros. Constr. Co.*, 219 F.3d at 314.  First, the evidence before the Court makes clear that the Government appropriately inquired about the nature of the relationships between the four women employees and the Defendant, because the Grand Jury was investigating whether the Defendant willfully evaded taxes by improperly characterizing the salaries and health insurance premiums paid to, or on behalf of, these women as business expenses.  *See* ECF No. 238 at 7; *see also R. Enters., Inc.*, 498 U.S. at 297 ("The grand jury 'can investigate merely on suspicion that the law

8

is being violated, or even just because it wants assurance that it is not.'" (quoting *Morton Salt Co.*, 338 U.S. at 642-43)). Given this, the Defendant has not shown that the Government's line of questioning was improper or constitutes prosecutorial misconduct.

Second, while the Defendant correctly observes that some of the testimony elicited from the women provides intimate details about their personal interactions with the Defendant, the relevant Grand Jury transcripts show that this testimony constitutes a relatively small portion of the overall testimony provided by these witnesses before the Grand Jury. Notably, the testimony of women employee 2 spans 32 pages, but only 3 pages of this testimony contain the questions and answers that the Defendant argues are improper. *See* Tr. at 21:2-10 and 29:12-30:22 (ECF No. 234-1). The testimony for women employee 3 is similarly limited with regards to the discussion of her intimate relationship with the Defendant. In this regard, this witness's testimony spans 74 pages, but only 14 pages contain alleged concerning questions and/or answers. *See* Tr. at 19:24-20:1, 21:3-14; 22:7-23:2; 24:25-25:23; 43:25-44:3; 64:1-65:12; 68:16-18, 69:2-16; and 74:7-11 (ECF No. 234-2). Lastly, the Grand Jury testimony for women employee 4 spans 44 pages, but only 3 pages of her testimony contain any concerning questions and/ or answers. *See* Tr. at 17:1-19:19 (ECF No. 234-5).

The Court also observes that the Second Superseding Indictment makes clear that the Government's allegations regarding the four women employees relate to just one of several schemes that the Government alleges support the tax and mortgage fraud charges in this case. *See generally* ECF No. 239. The evidentiary record also shows that the Grand Jury heard testimony from more than 20 witnesses during its investigation of the Defendant's alleged tax and mortgage fraud crimes. ECF No. 238 at 9. Given this, the Defendant simply has not shown that any impropriety with regards to the Government's questioning of the four women before the Grand Jury warrants dismissing the various tax and mortgage fraud charges in this case.

Lastly, the Defendant also has not shown that he was prejudiced by the Grand Jury testimony about his relationships with these women employees. *See Bank of N.S.*, 487 U.S. at 255 (concluding that "a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant"); *see also Feurtado*, 191 F.3d at 424 ("[A] defendant is entitled to dismissal of an indictment only where actual prejudice is established."). Again, the evidence before the Court shows that there were relatively few references to the intimate details of the Defendant's relationships with the four women during the

subject Grand Jury testimony and that this testimony is related to just one of several theories of tax evasion that the Grand Jury investigated in this case. The Court also observes that the Defendant is charged in this case with several counts of willful failure to pay tax and mortgage fraud.

Given this, the Defendant simply has not shown that the testimony at issue influenced the Grand Jury's decision to indict him on these charges. And so, the Court also DENIES the Defendant's motion to dismiss the Second Superseding Indictment for prosecutorial misconduct (ECF No. 234) as unsubstantiated.

### B. The Court Dismisses The Allegations Concerning The Women Employees

While the Defendant has not shown that the Court should dismiss this matter due to prosecutorial misconduct, the Defendant persuasively argues that the federal criminal tax evasion statute is void-for-vagueness with regards to the allegations about the women employees as applied by the Government in this case. And so, for the reasons set forth below, the Court will GRANT the Defendant's motion to dismiss the allegations concerning the women employees (ECF No. 122) as they relate to the Government's tax evasion charges.

The Fourth Circuit has recognized that "[d]ue process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." *Sun*, 278 F.3d at 309 (quoting *Buckley*, 424 U.S. at 77). Given this, the "void-for-vagueness doctrine" requires that a criminal statute (1) "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited" and (2) "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (quoting *Kolender*, 461 U.S. at 357).

Relevant to this case, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *See id.* (quoting *Mazurie*, 419 U.S. at 550). In this regard, the Fourth Circuit has held that, when the Government "must prove that a defendant intended to violate the law to obtain a conviction, [such a requirement] eliminat[es] any genuine risk of holding a person criminally responsible for conduct which he could not reasonably understand to be proscribed." *Hsu*, 364 F.3d at 197 (quoting *Sun*, 278 F.3d at 309). But, if the Court determines that the Government's theory of tax evasion does not provide notice to the public and adequately curtail arbitrary enforcement, the Court must dismiss the charge. *Cf. Simms*, 914 F.3d at 236-37.

Here, the Defendant persuasively argues that Section 7201 is void-for-vagueness as applied by the Government in this case, because there is no clear standard that would allow an ordinary intelligent person to distinguish lawful conduct from criminal conduct based upon the specific facts of this case. The Government alleges in the Second Superseding Indictment that the Defendant willfully evaded taxes by, among other things, treating the salaries and health care premiums for four women employees, with whom he had romantic relationships and who performed little or no work for his law firm, as business expenses. *See* ECF No. 239 at ¶¶ 11-12. The Second Superseding Indictment also alleges that the Defendant had his firm make these payments to supplement or supplant certain payments that he was personally making to three of the women and to pursue an intimate relationship with the fourth woman. *See id.* at ¶ 12. But the Government has not identified a clear standard regarding this alleged conduct to show how a person of ordinary intelligence would understand that the conduct alleged in the Second Superseding Indictment is unlawful under Section 7201 for several reasons.

First, while the Government argues that the Defendant's conduct constitutes criminal tax evasion, because the salaries and health insurance premiums for these employees should have been treated as personal expenses, rather than business expenses, the Government does not dispute that the criminal tax evasion statute does not address whether and when the deduction of an employee's salary and/or health insurance premiums as a business expense would constitute tax evasion. *See* 26 U.S.C. § 7201. Rather, this statute simply provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony." *Id.* And so, there is no language in this statute to support or explain the Government's theory of tax evasion in this case. *See id.*

The Government also fails to identify a clear standard for this alleged unlawful conduct based upon the relevant case law, to allow a reasonable person to distinguish the line between lawful and criminal conduct. Notably, the Government points to no case where a court has held that treating the salary and/or health insurance premiums of an employee as an ordinary and necessary business expense constitutes tax evasion, when the employee performed some, albeit "little," work. *See generally* ECF Nos. 135 and 230. The Government also does not dispute that hiring and paying a salary to an individual with whom an employer is having romantic

11

relationship does not, alone, render the employee's salary to be a personal expense. *See* ECF No. 230 at 4 n.2.

Indeed, while the parties agree that it would be improper for the Defendant to treat the salary and health insurance premiums paid to a so-called "sham" employee who performs no work as a business expense, the Second Superseding Indictment makes clear that Government's theory of tax evasion in this case does not fall into this category. Rather, it is undisputed that three of the four employees at issue here *did* perform some work for the Defendant's law firm and that the fourth employee took medical leave shortly after accepting a position with the law firm. *See id.* at 5 (citing *United States v. Barbera*, No. 02 CR 1268 (RWS), 2005 WL 2709112 (S.D.N.Y. Oct. 21, 2005)). Given this, the allegations in the Second Superseding Indictment suggests that at least some of the salaries and health insurance premiums paid to, or on behalf of the women, were business expenses.

The question then becomes, at what point did these business expenses become personal expenses. The Government answers this question in its supplemental brief by arguing that these expenses became personal once it became clear that the three women who performed some work for the law firm spent relatively few hours on their projects, thereby making their salaries "excessive." *See id.* at 4-6. But the Government points to no clear standard for determining the minimum number of hours of work required to render an employee's salary a business expense. *See id.* at 4-6 and 8-17.

The Government next argues that the Defendant knew these expenses were not business expenses at the point when the women employees stopped performing work for his firm and he continued to pay their salaries. *See id.* at 9-12, and 15-16. But, again, the Government provides no standard for determining how much time may elapse after an employee completes her tasks before the payments become a personal expense. *See id.* The Government similarly fails to identify a clear standard that would put a reasonable person on notice regarding whether and when a person commits tax evasion by continuing to pay the health insurance premiums for an employe who has taken medical leave. *See* ECF No. 230 at 17; ECF No. 246 at 4. Given this, the Court is not satisfied that the Defendant, or a person of ordinary intelligence, would know that the conduct alleged in this criminal matter with regards to the four women employees falls within the scope of Section 7201.

The Court is also not satisfied that the "willfulness" requirement in Section 7201 is sufficient to overcome the vagueness concerns discussed above. As the Government correctly observes, the Fourth Circuit has held that the intent requirement in a criminal statue is sufficient to overcome the concern about the prosecution of an individual for conduct that he could not reasonably understand to be proscribed by a criminal statue. *See Hsu*, 364 F.3d at 197 (citing *Sun*, 278 F.3d at 309). But the problem here is that the precise nature of conduct that constitutes tax evasion is not clear. Given this, the fact that the Government must also show that the Defendant willfully engaged in this insufficiently defined unlawful conduct does not resolve the Court's constitutional concern.

As a final matter, the Court also agrees with the Defendant that it is appropriate for this Court, rather than the jury, to address the question of whether the Government's theory of tax evasion in this case is constitutionally sound. Simply put, the question before the Court is whether the Defendant had adequate notice under the Due Process Clause that the alleged unlawful conduct in this case with regards to the four women employees constitutes criminal tax evasion. And so, it is the role of this Court to answer this question. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010); *see also United States v. Hammoud*, 381 F.3d 316, 330 (4th Cir. 2004).

For each of the above reasons, the Court concludes that a person of ordinary intelligence would not understand that the conduct alleged in the Second Superseding Indictment with regards to the four women employees constitutes criminal tax evasion under Section 7201. And so, the Court GRANTS the Defendant's motion to dismiss the allegations concerning the women employees (ECF No. 122) and DISMISSES the allegations concerning the four women employees related to the Government's tax evasion charges in Count 3 of the Second Superseding Indictment.

## V.     CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** the Defendant's motion to dismiss the Second Superseding Indictment for prosecutorial misconduct (ECF No. 234);

(2) **GRANTS** the Defendant's motion to dismiss allegations concerning employees (ECF No. 122); and

(3) **DISMISSES** the allegations concerning the four women employees related to the Government's tax evasion charges in Count 3 of the Second Superseding Indictment.

**IT IS SO ORDERED.**

                                                s/Lydia Kay Griggsby
                                                LYDIA KAY GRIGGSBY
                                                United States District Judge