IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS C. GOLDSTEIN,<br><br>Defendant. | CRIMINAL NO. LKG-25-0006 |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT CERTAIN OF GOLDSTEIN'S STATEMENTS TO *THE NEW YORK TIMES* (GOV'T EX. 5)**

On December 28, 2025, *The New York Times Magazine* published an article on Goldstein and the upcoming trial. *See* https://www.nytimes.com/2025/12/28/magazine/thomas-goldstein-supreme-court-gambling.html (Attachment A). The article drew heavily on statements that Goldstein made to a *Times* reporter during multiple on-the-record interviews. Goldstein was quoted on numerous topics that are relevant and which will be contested at trial. Goldstein spoke about his background in poker, transitioning over time to ultra-high stakes poker, and his lifetime poker wins and losses including in matches relevant to the indictment. For example, Goldstein admitted that in 2016 he "won $50 million in heads-up poker" (Attach. A at 11), which is consistent with the indictment and the underlying evidence (*see* ECF 239, ¶ 33). Goldstein further conceded in the article that he *intentionally* failed to disclose $15 million in poker debts on a series of mortgage loan applications in 2021 (Attach. A at 15), which again is consistent with the indictment and the evidence (*see* ECF 239, ¶¶ 120-125)—and directly proves two elements of the mortgage fraud counts.

The government respectfully requests that the Court preadmit Gov't Ex. 5, which is a redacted copy of the *Times* article containing certain of Goldstein's statements as published in the article. Gov't Ex. 5 (attached). As explained herein, Goldstein's statements to the *Times* are

admissible under a standard hearsay-within-hearsay analysis: Goldstein's statements to the *Times* are not hearsay under Fed. R. Evid. 801(d)(2)(A), and the *Times* article itself is admissible hearsay under Fed. R. Evid. 807 and 801(d)(2)(B).

Importantly, there is no genuine dispute that Goldstein was quoted accurately in the article. Two *Times* fact-checkers verified Goldstein's contributions to the article directly with Goldstein over the course of multiple phone calls. The fact-checkers also verified the content of the article by reviewing *audio recordings* and *transcripts* of the reporter's interviews with Goldstein. The government has confirmed that, as of the date of this filing, Goldstein has not asked the *Times* to retract or correct the article. Finally, when the government asked Goldstein's trial counsel if the quotes were in any way inaccurate or inauthentic, his counsel sidestepped the question without answering.

Goldstein chose to tell his side of the story to the *Times*, and ended up making on-the-record statements that are relevant and incriminating. He has to take the good with the bad. These are admissions that should come into evidence and should be fair game for opening statements.

## I. The United States has good cause for not filing this motion prior to the deadline.

Good cause exists to file this motion now, after the Court's motions *in limine* deadline. Goldstein's statements in the *Times* article were a surprise. Before it was published on December 28, 2025, the government had no reason to believe that Goldstein gave multiple wide-ranging, on-the-record interviews with a *Times* reporter. Nor could the government have discovered Goldstein's plan through due diligence. When it was published, the government evaluated the article and promptly, on December 30, 2025, notified Goldstein of its intent to admit certain statements into evidence at trial. Goldstein noted his objection on January 1, 2025. The government then worked diligently to file this motion *in limine*. Therefore, good cause exists to file this motion

after the October 24, 2025 deadline for motions *in limine*, and the Court should entertain the motion on the merits.

## II. The *Times* article is authentic, relevant, and admissible.

### A. The *Times* article is self-authenticating under Fed. R. Evid. 902(6).

Newspaper articles are self-authenticating. Fed. R. Evid. 902(6). *See also Tarlton v. Sealey*, No. 5:15-CV-451-BO, 2021 U.S. Dist. LEXIS 87702, at *6 (E.D.N.C. May 7, 2021); *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir. 1988) ("Fed. R. Evid. 902(6) dispenses with 'extrinsic evidence of authenticity' for printed articles from periodicals."); *Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 579 (6th Cir. 2013) (citing Fed. R. Evid. 902(6)); *de Oliveira v. Holder*, 564 F.3d 892, 897 (7th Cir. 2009) (same); *United States v. Ehmer*, 87 F.4th 1073, 1122 (9th Cir. 2023) (same); *Serendipity At Sea, LLC v. Underwriters At Lloyd's of London Subscribing To Policy No. 187581*, 56 F.4th 1280, 1288 n.2 (11th Cir. 2023) (same).

### B. The excerpts of the *Times* article the government seeks to introduce—Goldstein's own statements—are relevant.

First, most of the portions of the *Times* article that the government offers into evidence are Goldstein's own statements relevant to the tax crimes charged in the indictment. He admitted to specific amounts of money won and lost while playing poker during the relevant time period. *See* Gov't Ex. 5, pp 5-7, 9-11, 13, 16. He admitted to matches and wins and losses against specific poker players, including some who were not publicly linked to the case until Goldstein spoke to the *Times*. Goldstein admitted to his state of mind at various points in time while attempting to ascend the ultrahigh-stakes poker ladder. *Id.* at 11 ("I just have convinced myself, because I won $50 million in heads-up poker, that I am a savant at heads-up poker."). These statements are relevant to the tax counts because they prove Goldstein's income from poker, the falsity of his tax returns, and his years-long pattern of prioritizing ultrahigh-stakes poker over paying his debts to

the IRS.

Further, Goldstein's statements are also potentially relevant to the statute of limitations for certain tax counts. He admitted in the article to being "out of the country for almost a full year" from 2016 to 2018. *Id*. at 10. To the extent that the government is forced to prove out-of-country tolling at trial under 26 U.S.C. § 6531, Goldstein's admission is clearly on point.

Finally, some portions of the *Times* article that the government offers into evidence are Goldstein's statements relevant to the mortgage fraud counts. The article confirms that "Goldstein understated his debts" on mortgage applications in 2021 by "multiple millions of dollars." *Id*. at 15. "Goldstein told [the reporter] that he omitted that information because he wanted to keep that debt secret from [his wife], as he had kept her in the dark about most of his poker activity." *Id.*

The parties here agree that the first two elements of the mortgage fraud counts are (1) Goldstein made or caused to be made a false statement or report relating to an application to a mortgage lending business; and (2) Goldstein acted knowingly. ECF 312 at 112-113. By describing to the *Times* reporter his purpose for failing to disclose the debts, Goldstein admitted to the first two elements of mortgage fraud—making a false statement on a mortgage application and doing so knowingly. The admission is powerful evidence of guilt on three felony counts.

C. **Goldstein's statements—as reported in the *Times* article–are admissible under Fed. R. Evid. 805.**

"[N]ewspaper articles containing quoted remarks are hearsay within hearsay—they contain out of court statements by the quoted individual, within a document that is itself an out of court statement." *Mandal v. City of N.Y.*, 2006 U.S. Dist. LEXIS 85216, at *3 (S.D.N.Y. Nov. 26, 2006). "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. *United States v. Filippi, No. 97-4970*, 1999 U.S. App. LEXIS 2840, at *18-19 (4th Cir. Feb. 23, 1999) ("Rule 805 requires

4

that hearsay within hearsay is admissible only if it also comes within an exception to the hearsay rule.") (*citing Precision Piping v. E.I. du Pont de Nemours*, 951 F.2d 613, 619 (4th Cir. 1991); *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir. 1982)).

The Court's hearsay-within-hearsay analysis here is exceedingly straightforward. As discussed below, the Southern District of New York conducted an identical analysis in *Mandal v. City of New York* (cited above), finding a newspaper article containing a party opponent's statements admissible under Fed. R. Evid. 805.

1. Level One – Goldstein's statements, when offered by the government, are not hearsay.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). However, a statement is "not hearsay" if "offered against an opposing party and . . . was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). The government is offering statements "made by the party" (Goldstein) "against an opposing party" (also Goldstein).

Notably, "[a] statement qualifies as a party admission *even though the party denies having made it*, if the statement's proponent provides adequate proof to support a finding that the statement was made by the party." 5 Weinstein's Evidence § 801.30[3] (emphasis added). Here, there is no evidence that the statements the government seeks to admit were fabricated or otherwise inauthentic. As noted above, two *Times* fact-checkers verified Goldstein's contributions to the article directly with Goldstein over the course of multiple phone calls, and they verified the content of the article by reviewing audio recordings and transcripts of the reporter's interviews with Goldstein. Moreover, Goldstein has not demanded any corrections to, or a retraction of, the *Times* article.

5

Courts have admitted opposing party statements in newspapers under Rule 801 where there is some context or validation of the statement. For example, in *Boyd v. City of Oakland*, the court admitted the defendant representative's newspaper quote because the representative had admitted in a deposition it was his quote. 458 F. Supp. 2d 1015, 1050 (N.D. Cal. 2006). Here, although Goldstein did not say that in a deposition, the *Times* personnel verified Goldstein's contributions on multiple phone calls, and Goldstein has not (as of today) requested a retraction or corrections. That is tantamount to the admission in *Boyd*.

In short, Goldstein's relevant statements are admissible evidence at trial: Rule 801(d)(2) clearly permits their admission into evidence.

2. Level Two – The *Times* article itself is admissible hearsay under Fed. R. Evid. 807.

In general, Federal Rules of Evidence 803 and 807 establish bases to admit out of court statements regardless of the declarant's availability to testify. *See Mandal*, 2006 U.S. Dist. LEXIS 85216, at *5. Rule 807 offers the Court the most direct route to admit the *Times* article here, and provides, in relevant part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The Court can admit the *Times* article under the residual exception if it finds: "(1) the hearsay has circumstantial guarantees of trustworthiness equivalent to those of the recognized exceptions, (2) it is offered as evidence of a material fact, (3) it is more probative than any other evidence that the proponent can reasonably obtain, and (4) admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice." *United States v. Cunningham*, 761 F. App'x 203, 206 (4th Cir. 2019). Here, those requirements are easily met.

First, Goldstein's statements carry "circumstantial guarantees of trustworthiness" when "considering the totality of circumstances." *See id.*; Fed. R. Evid. 807(a)(1). Based on communications between the government and the *Times* fact-checker, (i) Goldstein participated willingly in multiple on-the-record interviews with a *Times* reporter that were audio recorded and transcribed, (ii) Goldstein's contributions to the article were fact-checked by multiple *Times* personnel including through phone calls with Goldstein, and (iii) Goldstein has not requested a retraction or correction since the article was published. Importantly, Goldstein's trial counsel declined to respond when asked directly if Goldstein was denying that he made those statements to the New York Times, or if he was claiming that the statements are, in any way, inaccurate, or otherwise inauthentic. More generally, the article includes facially exculpatory (but self-serving and contrary-to-evidence) quotes from Goldstein—that is further evidence that Goldstein in fact made these statements to the *Times* reporter (as subsequently fact-checked by other *Times* personnel). Indeed, the article references Goldstein's 2014 email claiming, "We always play completely by the rules"—a document he has invoked throughout his defense. *See, e.g.*, Mot. 28, ECF 116. The guarantees of trustworthiness here are strong and diverse.

Second, as described above, many of Goldstein's statements to the *Times* are relevant and incriminating. And they are being "offered as evidence of [multiple] material fact[s]." *See Cunningham*, 761 F. App'x at 206.

Third, Goldstein's statements are "more probative than any other evidence that the proponent can reasonably obtain." *See id.*; Fed. R. Evid. 807(a)(2). The government has collected and will introduce at trial contemporaneous communications, bank records, and other documents and testimony proving Goldstein's guilt beyond a reasonable doubt. But on many issues, there is no stronger or more powerful argument than citing Goldstein's own recent admissions, whether

about his poker winnings and losses, his omission of poker debts from the 2021 mortgage applications, or other topics. The government seeks to admit the statements at the outset of trial because it likely cannot "obtain through reasonable efforts" other evidence by then. The government should be able to use Goldstein's admissions as early as opening statements. Notably, if Goldstein took the stand, the government would not need to seek this relief because it could cross examine Goldstein on his own quotes. However, no one will know if Goldstein will testify until after the government has closed its case-in-chief. The government's motion respectfully asks for the right result and early clarity.

Fourth, "admitting [the statements] will best serve the purposes of the Federal Rules of Evidence and the interests of justice." *See Cunningham*, 761 F. App'x at 206. The Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102 (Purpose). It was Goldstein's choice to disclose this information to the *Times* and the public. But now that he made that choice, there is no reason to shield the truth from the jury. This is not unfairly prejudicial or inflammatory evidence; it is simply Goldstein's own words. If the goal is efficiently and fairly resolving the charges against Goldstein, the statements should be admitted.[1]

As the Southern District of New York concluded in *Mandal*, "newspaper articles need not be excluded from evidence when they contain admissions by a party opponent under Rule 801, provided the article . . . falls within the 'residual exception' of Rule 807." *Mandal v. City of N.Y.*,

---

[1] On the other hand, Goldstein's approach to this issue—objecting to the statements unless the *Times* reporter testifies—would be the opposite of efficiency and fairness. It would only waste time and give Goldstein an opportunity to cast doubt on the accuracy of statements that to this day he has not contested. At the very least, the Court should inquire of Goldstein on the record whether he disputes the accuracy or authenticity of the statements offered into evidence in Gov't Ex. 5.

8

2006 U.S. Dist. LEXIS 85216, at *6. On the other hand, the Fourth Circuit's most recent case relating to the admissibility of newspaper articles, *Greene v. Scott*, 637 F. App'x 749 (4th Cir. 2016), is easily distinguishable from the facts before this Court.

In *Greene*, a former police officer, sued the City of Columbia, South Carolina, the Police Department, and the Police Chief (Scott) for publicly announcing Greene's termination (and thereby tarnishing her reputation and hurting her chances of finding future employment). *See Greene v. Scott*, No. 3:13-cv-0567-JFA, 2015 U.S. Dist. LEXIS 59198 (D.S.C. May 6, 2015). In opposing summary judgment, Greene sought to rely on a newspaper article in which the Mayor of Columbia (who was not a party to the lawsuit) discussed Chief Scott's decision to terminate Greene as proof that her reputation had been tarnished. *Id*. at *7-8. The district court did not conduct a hearsay-within-hearsay analysis, noting only the Fourth Circuit's prior rulings that newspapers are inadmissible hearsay unless the proponent establishes an applicable exception to the hearsay rule and finding that Greene had "failed to provide the Court with an applicable hearsay exception allowing for its admission and consideration by the Court." *Id*. at *8-9.

The Fourth Circuit affirmed the district court's ruling, noting, as did the district court, that Greene had failed to engage with the requisite hearsay-within-hearsay analysis ("Greene's argument that the Mayor's statements in the newspaper article should be admitted as a non hearsay statement by a party-opponent under Fed. R. Evid. 801(d)(2) fails to distinguish the Mayor's statement, which is not hearsay, from the conveyance of that statement in the newspaper article, which is hearsay."). *Greene*, 637 F. App'x at 752. The Fourth Circuit's decision in *Greene* is thus distinguishable on two points: (1) the plaintiff sought to introduce into evidence the *entirety of a newspaper article* (and not just statements of a party opponent contained in that article, as the government offers here), and (2) Greene failed to provide the Court *any* basis for the admission of

the newspaper article as either non-hearsay (*e.g.*, as an adopted statement of a party opponent under Rule 801(d)(2)(B), discussed below) or as an exception to the hearsay exclusion rule (e.g., the residual exception provided by Rule 807).

3. Level Two – Alternatively, Goldstein effectively adopted the statements attributed to him in the *Times* article, converting the excerpts the government seeks to admit to non-hearsay under Fed. R. Evid. 801(d)(2)(B).

Finally, insomuch as Goldstein voluntarily sat for multiple *recorded* interviews with a *Times* reporter—and then confirmed his contributions to that article with two *Times* fact-checkers over the course of multiple phone calls prior to publication—Goldstein effectively adopted the statements attributed to him in the *Times* article. Under Rule 801(d)(2)(B), when offered by the government, a statement that Goldstein adopted as his own (by verifying his statements with the fact checkers) is not hearsay. Under this basis for admissibility, the hearsay-within-hearsay analysis is even more direct: the statements attributed to Goldstein are not hearsay because they are his own (level one) and the excerpts of the article the government offers into evidence (level two) are not hearsay because Goldstein adopted those excerpts as his own statements.

### III. The proposed excerpts of the *Times* article are non-testimonial statements that do not implicate the Confrontation Clause.

Goldstein demands that the government call a live witness at trial to introduce Goldstein's statements to the *Times* reporter, ostensibly so he can "confront" them about Goldstein's own statements. This is folly. The government is not required to offer Gov't Ex. 5 through a live witness.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court established the modern approach to analyzing a defendant's rights under the Confrontation Clause of the Sixth Amendment. Under *Crawford*, the Confrontation Clause applies to "testimonial" statements, which the Supreme Court has since explained are statements that result from questioning, "the

primary purpose of [which was] to establish or prove past events potentially relevant to later criminal prosecution," (*Davis v. Washington*, 547 U.S. 813, 822, (2006)), or when written statements are "functionally identical to live, in-court testimony," "made for the purpose of establishing or proving some fact" at trial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009). Non-testimonial statements—like those that Goldstein made to the *Times* reporter—do not implicate the Confrontation Clause and are subject only to the "traditional limitations upon hearsay evidence." *Davis*, 547 U.S. at 821.

Goldstein's demand for the government to subpoena a witness from the *Times* to testify at trial is a cynical ploy to prevent the government from using Goldstein's damning admissions, hoping that the *Times* will seek to quash any subpoena issued. Moreover, precluding the use of Goldstein's admissions without testimony from a *Times* employee would reward Goldstein's gambit: seeking to influence (or worse, taint) the jury pool with pretrial publicity—a narrative Goldstein crafted and delivered—on the eve of trial. Goldstein was not expressly prohibited from speaking with the media in advance of trial, but the Court should not grant Goldstein the benefit of having sought this publicity without bearing the burden of having done so.

### IV. The government's proposed excerpts from the *Times* article omit Goldstein's self-serving hearsay statements, which are inadmissible and—if admitted—would invite jury nullification.

To be sure, not all of Goldstein's statements to the *Times* were incriminating. For example, the article quoted Goldstein as saying, "Millions of people file and then pay [their taxes] late, as I did" (Ex. A at 15), and "I have never, ever believed that I did anything wrong" (*id.* at 3). Goldstein was also quoted as saying the allegations relating to his employment of current or prospective paramours at his law firm "have nothing to do with taxes"—"[the government] just put in those charges to dirty me up, to make the jury dislike me." *Id.* at 15. Goldstein even detailed to the reporter his trial strategy of inviting the jury to consider whether "somebody is out to get

11

somebody" and ultimately decide "Am I a good guy or a bad guy" *Id.* at 17.

As the government explained in an earlier motion *in limine* (ECF 203 at 3), the Rule of Evidence that permits the government to admit Goldstein's statements as a party opponent operates as a one-way street. When Goldstein offers his own statements into evidence, they are *inadmissible* hearsay, even if made contemporaneously with other self-inculpatory statements. *See Williamson v. United States*, 512 U.S. 594, 599 (1994) (finding "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming district court decision to preclude defendant from "eliciting his own exculpatory statements, which were made within a broader, inculpatory narrative").

Accordingly, it is entirely appropriate for the government to have selected specific statements to offer into evidence while excluding Goldstein's self-serving statements.[2] If Goldstein wants the jury to hear his side of the story, he can testify.

Moreover, many of the statements the government has redacted are irrelevant, thinly veiled attempts at jury nullification, or unjustified attacks on the government, that should not be admitted at any point during the trial (even if Goldstein decides to testify). For example, Goldstein's statement that "millions of people" pay their taxes late clearly was meant to imply that his conduct is not serious, and/or that the government unfairly focused on him. The government is concerned that Goldstein's statements, if admitted at trial, would portend an improper invitation to the jurors to nullify by refusing to convict Goldstein despite the evidence.

---

[2] The United States has also redacted portions of the *Times* article that are either not clearly attributable to Goldstein, or otherwise were irrelevant, inadmissible, and/or unnecessary. Through this exercise, the government has preemptively addressed any Rule 403 concerns (assuming Goldstein could ever credibly claim that information he provided to the *Times* for publication would unfairly prejudice him at trial).

Goldstein's allegation that someone wants "to dirty [him] up" similarly reflects an eagerness to attack the government's investigation. The same for Goldstein's apparent trial strategy of hypothesizing that "somebody is out to get somebody." These are similar to the types of arguments the government previously moved *in limine* to exclude. ECF 204. These arguments should be foreclosed, and one way to do that is declining admission of Goldstein's irrelevant and improper statements.

## CONCLUSION

The government's proposed, redacted version of the *Times* article—marked as Government's Trial Ex. 5—contain statements from, and information attributed to, Goldstein. Those statements are critical admissions directly relevant to the charges in the indictment, and the article itself is authentic and admissible under Fed. R. Evid. 805. The government therefore respectfully requests that the Court preadmit Gov't Ex. 5 into evidence so the government may refer to Goldstein's statements in its opening statements.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: January 6, 2026

Sean Beaty
Senior Litigation Counsel
Hayter L. Whitman
Emerson Gordon-Marvin
Trial Attorney
Department of Justice—Criminal Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland

13