IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. LKG-25-6 |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |

********

**DEFENDANT THOMAS C. GOLDSTEIN'S RESPONSE TO GOVERNMENT'S MOTION TO DISMISS COUNTS TWO THROUGH SIX AND FIFTEEN OF THE <u>SECOND SUPERSEDING INDICTMENT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................1
ARGUMENT .....................................................................................................................3
I.    IN ADOPTING FINAL JURY INSTRUCTIONS, THE COURT SHOULD
ACCOUNT FOR THE DISMISSAL OF THE TAX EVASION CHARGES IN
CRAFTING THE UNANIMITY INSTRUCTION FOR THE FALSE
STATEMENT CHARGES. ........................................................................................3
II.   IN CONSIDERING EVIDENCE THAT THE GOVERNMENT SEEKS TO
ADMIT AT TRIAL, THE COURT SHOULD RECOGNIZE THAT SEVERAL
ACTS THAT WERE PREVIOUSLY CHARGED AS WILLFUL TAX
EVASION CANNOT UNDERLIE THE REMAINING FALSE STATEMENT
CHARGES. .................................................................................................................9
CONCLUSION ................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*McKoy v. North Carolina*,
 494 U.S. 433 (1990)..................................................................................................6

*United States v. Duncan*,
 850 F.2d 1104 (6th Cir. 1988) ..............................................................................6, 7

*United States v. Holley*,
 942 F.2d 916 (5th Cir. 1991) ....................................................................................6

*United States v. Lighty*,
 616 F.3d 321 (4th Cir. 2010) ....................................................................................5

*United States v. Sarihifard*,
 155 F.3d 301 (4th Cir. 1998) ....................................................................................6

*United States v. Siragy*,
 947 F.2d 943 (4th Cir. 1991) ....................................................................................6

*United States v. Tipton*,
 90 F.3d 861 (4th Cir. 1996) ..................................................................................6, 8

**FEDERAL STATUTES**

26 U.S.C. § 7206..............................................................................................................6

## INTRODUCTION

The defense does not dispute the government's right to dismiss Counts 2-6 and 15.  In addition, the defense accepts that, as a matter of trial administration, the Court likely will elect to renumber the remaining counts.  The result will be that the charges relating to the 2016 tax year will proceed as alleged willful tax evasion (Count 1) while the remaining tax years will proceed as alleged willful false statements on tax returns (renumbered Counts 2-9).

In the defense's view, the Motion reflects the government's recognition that many of the allegations underlying the tax evasion charges are meritless.  To this point in the case, the government has lobbed numerous allegations at Mr. Goldstein while taking liberal advantage of the principle that his factual response must await trial.  Now that time has arrived, yet just days before trial, much of the government's case may be evaporating.  In particular, the to-be-dismissed tax evasion charges specify an array of specific theories that the jury would have separately considered—and in the defense's view, rejected.  By retreating to the false return charges, which instead simply list amounts from the relevant tax returns, the government seemingly seeks to avoid the jury marching through a series of spurious charges and finding Mr. Goldstein not guilty of successively more and more.  The Motion to Dismiss nonetheless does not reduce the time the government requires to present its case, because the government never had substantial evidence to present in support of those charges in the first place.

The government's right to dismiss the charges at issue follows from the government's almost-absolute right to dismiss charges as a matter of prosecutorial discretion.  But contrary to the assumption underlying the Motion to Dismiss, the government does not have the right to do so at the last possible moment utterly without consequence.  This Court has given this case extraordinary attention over the past year.  On the government's view, much of that effort—in

addition to the Court's own trial preparation with respect to the now-dismissed charges—would have been a complete waste.

In addition, the government's blithe assertion that the Motion merely makes the case simpler for the defense ignores the effect of the *timing* of this request on the reality of trial preparation. The defense is ready for trial. But the defense has spent months preparing—including in drafting proposed jury instructions and preparing its substantive case—on the understanding that the jury would (1) consider the allegations underlying the now-dismissed tax evasion charges, and (2) do so in parallel with the false statement charges.

The Court should also be aware that the government has taken substantial tactical advantage of the delay in bringing the Motion. At the Pretrial Hearing, the government's lead counsel strongly suggested that he sought to dismiss these charges substantially earlier but had not yet received the required approvals of the Department of Justice. The defense accepts that the government acted in good faith. But the fact remains that the prosecution has prepared for trial—including, for example, in drafting jury instructions—knowing full well that the defense was both (1) drafting jury instructions on the false premise that most of the tax evasion charges would be in the case (*see* Part I, *infra*), and (2) wasting substantial time in preparing its defense with respect to charges that would not be in the case as substantive counts (*see* Part II, *infra*). The prosecution easily could have raised this prospect with the Court and the defense substantially earlier. The fact that—as the government stresses—the motion must be granted essentially as a matter of right obviated any need for secrecy.

Although the government is correct that the Court and the defense are essentially powerless to prevent such a dramatic eleventh-hour change in the case two days just before trial is set to begin, the Court should ensure that neither it nor the defense is unfairly prejudiced as a

result.  In particular, the Court will need to account for the dismissal of the relevant counts in two respects.

First, in crafting the final jury instructions, the Court should give a revised unanimity instruction on the false return charges.  In particular, the Court should instruct the jury that it must be unanimous as to the specific act that gives rise to the alleged falsity.  Such an instruction is warranted under settled precedent and comports with fundamental fairness.  *See* Part I, *infra*.

Second, the government should be held to the consequences of its decision to dismiss the tax evasion counts for 2017, 2018, and 2021 and to proceed on false return charges only.  There are several alleged acts of evasion that have no connection to any alleged false statement in the tax returns.  Those alleged acts are thus no longer tethered to any theory of criminal liability.  If the government nevertheless seeks to introduce evidence related to those alleged acts, it should first explain its alternative theory of admissibility to the Court.  The government's motion also has implications for the evidence concerning the four employees—implications that the Court should consider when it takes up any request by the government to introduce this evidence notwithstanding the Court's December 16 order.  *See* Part II, *infra*.

## ARGUMENT

I. **IN ADOPTING FINAL JURY INSTRUCTIONS, THE COURT SHOULD ACCOUNT FOR THE DISMISSAL OF THE TAX EVASION CHARGES IN CRAFTING THE UNANIMITY INSTRUCTION FOR THE FALSE STATEMENT CHARGES.**

Counts 1 through 4 of the Second Superseding Indictment charge Mr. Goldstein with tax evasion in 2016, 2017, 2018, and 2021.  Each tax evasion count identifies specific categories of alleged affirmative acts.  For example, Count 2 charges tax evasion in 2017 based on a wide range of alleged unrelated conduct, including (1) using firm funds to pay gambling debts; (2) diverting firm fees to his personal bank account; and (3) diverting gambling winnings.

Counts 5, 6, 7, 8, 9, 10, and 14 charge Mr. Goldstein with assisting in the preparation of false tax returns in those same years. Unlike the tax evasion counts, the false return counts do not identify the particular acts that are alleged to make the statements false. Instead, those counts merely identify the allegedly false line items in each return.

In the defense's view, one significant effect of the Motion to Dismiss would be to negate the defense's right to a unanimous jury verdict with respect to the false statement charges. The government's Motion stated that its reason for dismissing these counts was "streamlining its case-in-chief and limiting the overall length of trial." Dkt. No. 337, at 1. However, at the final pretrial conference, the government admitted that granting its motion would not remove any substantive theories of liability from the case and did not shorten the government's estimated length of its case-in-chief. Indeed, according to the government, the *only* effect of the dismissal would be to obviate the need for Revenue Officer Colleen Ranahan to testify to the tax loss calculation for 2017, 2018, and 2021, and to remove the need for some evidence regarding Mr. Goldstein's time out of the country. At the hearing, the government did not dispute the defense's supposition that the true purpose of the motion to dismiss was to avoid a special unanimity instruction. When the Court crafts the final jury instructions, it should not permit that result.

The parties have already provided the Court with proposed final jury instructions. Dkt. No. 312. With respect to the tax evasion charges, the parties agreed with respect to the unanimity requirement. The agreed-upon instruction requires the jury to unanimously agree on the "conduct Mr. Goldstein committed that constituted an attempted evasion of tax payments." Dkt. No. 312, Instruction 46. With respect to the false statement changes, the parties disagreed. The defense requested that the Court instruct that the jury "must agree unanimously on which particular statement was false." Dkt. No. 312, Instruction 53.

In light of the dismissal of the tax evasion charges, the defense now requests a revised jury instruction regarding the unanimity requirement on the false statement charges. The full proposed instruction is attached as Exhibit A to this Response. But the critical language would instruct the jury that it must *both* "agree unanimously on which particular act Mr. Goldstein took to advise or assist in the preparation of a materially false tax return," Ex. A (revised requested Instruction 52), *and* (as previously proposed) "agree unanimously on which particular statement was false," Dkt. No. 312, Instruction 53.

Previously, the defense did not believe that the revised instruction was required. It is of course well settled that the jury considers the instructions taken as a whole, not individually in isolation. *See United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010). That is naturally most true where, as here, the instructions in question overlap completely in time and substantially with respect to their underlying conduct. The parties' agreed-upon tax evasion instruction directs the jury that they must unanimously agree on the acts of evasion. In the corresponding tax year, those same alleged acts give rise to the alleged falsity of the tax returns. The defense therefore believed that the jury would understand that the requirement that they be unanimous with respect to the "false statement" (on the false statement charges) required that they be unanimous with respect to the alleged underlying conduct (as with the tax evasion charges). The Motion to Dismiss, however, will eliminate the parallel status of the tax evasion and false statement charges on which the defense was relying.

Absent the revised proposed instruction, the jury will not know that it must be unanimous not only as to which line item on each return was false (for example, "Total Income," "Amount Owed," "Total Deductions," etc.), but also as to the specific instance of conduct that made that

line item false. To restore that constitutionally required protection, the Court should give the proposed jury instruction attached as Exhibit A.

This instruction is required by settled law. (It is thus not requested as, for example, a sanction for the government's last-minute filing.) The federal courts hold that a unanimity instruction as to the conduct underlying the alleged false statement is appropriate where, as here, a single false return count covers multiple conceptually distinct theories.

"In federal criminal prosecutions, where a unanimous verdict is required, the Courts of Appeals are in general agreement that 'unanimity means more than a conclusory agreement that the defendant has violated the statute in question; there is a requirement of substantial agreement as to the principal factual elements underlying a specified offense.'" *United States v. Holley*, 942 F.2d 916, 925 (5th Cir. 1991) (quoting *McKoy v. North Carolina*, 494 U.S. 433, 449 n.5 (1990)) (citation modified); *see also United States v. Tipton*, 90 F.3d 861, 885 (4th Cir. 1996) ("A special unanimity instruction is required … when there is a genuine risk of juror confusion or that a conviction could result from different jurors having concluded that the defendant committed quite different acts within those of a prescribed set or among multiple means of violating a statute," for example, where "multiple false statements [are] charged in single count"); *United States v. Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998) (similar); *United States v. Siragy*, 947 F.2d 943 (4th Cir. 1991) (unpub.) ("[T]he better practice, because of the possibility of a non-unanimous verdict when one charge encompasses multiple falsities, is for the trial judge to give an augmented unanimity instruction to the jury.").

Applying this principle to the statute at issue here (i.e., a charge of filing a false return in violation of 26 U.S.C. § 7206), the Fifth Circuit held in *United States v. Duncan* that the trial court erred in not giving a special unanimity instruction where the was "a genuine risk that the

jury [was] confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." 850 F.2d 1104, 1113-15 (6th Cir. 1998). In so holding, the court rejected the government's argument that "the jury need be unanimous only on the overall falsity of the return, but not on any particular false statement." *Id.* at 1111. Instead, the court held that "the essence of the statute lies in the willful falsity of a statement," and therefore "the false statement is the culpable act." *Id.* at 1111-12. Accordingly, where a single count charges multiple false statements that are conceptually distinct, the jury must agree on the willful falsity of one factually distinct false statement. *Id.* at 1113.

Here, the false return counts each comprise multiple conceptually distinct theories of falsity, and therefore a special unanimity instruction is required. For example, as noted above, Count 2 charges tax evasion in 2017 based on a wide range of alleged conduct, including (1) using firm funds to pay gambling debts; (2) diverting firm fees to Mr. Goldstein's personal bank account; and (3) diverting gambling winnings. The alleged use of firm funds to pay gambling debts, for example, has nothing to do with the alleged diversion of firm fees to Mr. Goldstein's personal bank account. These are different alleged transactions, accomplished through different alleged acts, and with different alleged consequences for Mr. Goldstein's tax liability. The same is true of the other theories in Count 2 and the theories of liability in Counts 3 and 4—in each year, the theories are all conceptually distinct from one another.

For its part, the government has previously agreed with this characterization of its case. During the hearing on motions *in limine*, the government (unsuccessfully) opposed the defense motion to introduce evidence that Mr. Goldstein on many occasions correctly characterized firm transactions by arguing that "[i]t's not about pattern." Dkt. No. 334 (12/12/25 Tr.) at 97:10-11. In other words, the government told the Court that its theory of liability was

not that Mr. Goldstein had engaged in a "pattern" of acts of evasion, but rather "that on these instances that are charged in the indictment Mr. Goldstein … failed to abide by the process, and he skipped that ordinary process to make sure that these things were categorized." *Id.* at 97:11-15. This is precisely why a unanimity instruction is required—because there is a serious risk "that a conviction could result from different jurors having concluded that the defendant committed quite different acts." *Tipton*, 90 F.3d at 885.

The proposed defense instruction addresses the concern that the jury will find Mr. Goldstein guilty of assisting in the preparation of a false return without unanimity as to the specific conduct that gives rise to the falsity. The instruction accomplishes this by informing the jury that it must be unanimous not only as to the false statement in each charged return but also as to the specific instance of conduct underlying the falsity. This instruction prevents, for example, a scenario where some jurors (but not others) believe that Mr. Goldstein willfully diverted firm funds to his bank account, while some jurors (but not others) believe that Mr. Goldstein diverted gambling winnings, leading to a guilty verdict on the falsity of the return as to, e.g., "Total Income" or "Amount Owed," Dkt. No. 239 ¶ 117 (Count 7), without unanimity as to why that line item was false. The proposed defense verdict form, attached as Exhibit B, accomplishes this same objective.

The government can of course claim no prejudice from the defense revising its requested unanimity instruction now. This request is a direct response to the government seeking to dismiss the charges only *after* the parties submitted their proposed jury instructions. In addition, to the extent the request for a unanimity instruction could affect the government's opening statement or presentation of evidence (which seems very unlikely), the government is on notice of the government's position.

## II. IN CONSIDERING EVIDENCE THAT THE GOVERNMENT SEEKS TO ADMIT AT TRIAL, THE COURT SHOULD RECOGNIZE THAT SEVERAL ACTS THAT WERE PREVIOUSLY CHARGED AS WILLFUL TAX EVASION CANNOT UNDERLIE THE REMAINING FALSE STATEMENT CHARGES.

The government should be held to the consequences of its decision to dismiss the tax evasion charges for 2017, 2018, and 2021. Unhelpfully, the government's Motion to Dismiss tells the Court *nothing* about the effect of dismissing the tax evasion charges on the substantive allegations of the indictment. For a last-minute request that will inevitably have a significant effect on the trial, that cannot be acceptable. At the Pretrial Hearing, the government then attempted to wave the issue away, simply asserting without explanation that everything that was relevant before remains relevant now. That is obviously wrong. If and when the government attempts to introduce at trial evidence of certain acts that previously were specified as acts of tax evasion, the Court should recognize that those no longer represent a substantive theory of criminal liability. The government must of course independently justify the introduction of any evidence on those issues.

The defense recognizes that there is an overlap between the originally charged tax evasion and false statement counts. Indeed, that is precisely why the defense relied on the unanimity instruction on the tax evasions count in crafting its original unanimity instruction on the false statement counts. *See* Part I, *supra*. But the government's unexplained assumption that *all* of the charges overlap is wrong as a matter of law.

The Indictment included five alleged acts of evasions for 2017, 2018, and 2021 that are not connected to any purported false statements in the tax returns, and thus are no longer tethered to any theory of criminal liability:

1. The allegation (charged as an affirmative act in Count 2) that Mr. Goldstein made "false and misleading statements to IRS representatives in October 2020," Dkt. No. 239, ¶ 111(d);

2. The allegation (charged in Count 2) that Mr. Goldstein transferred $960,000 in personal funds into the firm IOLTA account in March 2021 "to shield the funds from collection by the IRS," *id.* ¶ 111(e);

3. The allegation (charged in Counts 2, 3, and 4) that Mr. Goldstein caused the preparation and signing of false returns, *id.* ¶¶ 111(g), (h); 113(e), (f); 115(d), (e);

4. The allegation (charged in Count 3) that Mr. Goldstein made false statements to IRS representatives "about the funds received through his Montenegrin bank accounts and brought back in cash from Hong Kong," *id.* ¶ 113(g); and

5. The allegation (charged in Count 3) that Mr. Goldstein offered a firm manager "things of value, including cryptocurrency, at least in part to dissuade her from cooperating with the IRS's ongoing criminal investigation," *id.* ¶ 113(h).

The government should be required to explain whether it intends to introduce evidence on these issues and, if so, on what basis. Otherwise, the government will leave both the Court and the defense in the untenable position of not knowing the consequences of the last-minute Motion to Dismiss.

The defense is also seriously concerned that the government intends to use the Motion to Dismiss to circumvent the Court's ruling dismissing the employee allegations of the tax evasion charges as unconstitutionally vague. Here too, the Court need take no action now. But it should be aware of this issue in advance of any attempt by the government to introduce evidence relating to the employees.

Broadly speaking, the government has maintained that evidence is admissible on two grounds: (1) as a substantive theory of liability; and (2) as support for otherwise unrelated allegations. The Court struck the substantive theory as it relates to the tax evasion charges. The government has occasionally suggested that the substantive allegations would survive with respect to the false-statement charges. This argument is so bad that the government did not even make it in originally opposing the defense's vagueness argument. And it is obviously meritless. The Court struck down the allegations with respect to the tax evasion counts because that statute and other guidance do not give employers such as Mr. Goldstein sufficient guidance regarding when employment and benefits decisions cross the line into constituting tax evasion. Because that is so, the employees evidence cannot be relevant to the false statement charges—as a matter of law, that evidence has no probative value as to any *intentionally* false statement on the returns. To hold otherwise would be to reintroduce the same vagueness flaw to the false statement charges.

The government has never contended otherwise. Rather, its theory was that Mr. Goldstein unlawfully deducted the employees' salaries and benefits (which it alleged was tax evasion), which in turn meant that Mr. Goldstein made false statements on the relevant tax returns. In fact, that parallel between the two types of charges is *precisely* the reason that the government now maintains that most of the substantive tax evasion allegations underlying the now-dismissed counts apply equally with respect to the remaining false statement allegations.

As noted, the Court need not decide that question now. If and when the government attempts to introduce evidence relating to the employees, the Court can decide whether the evidence relates to a substantive theory of liability or, alternatively, is admissible on some other basis. With respect to the latter, the Court has recognized that the evidence is highly prejudicial.

By contrast, the salaries and benefits represent an absolutely miniscule proportion of both Mr. Goldstein's spending and the alleged tax liability.

## **CONCLUSION**

For the foregoing reasons, the defense does not oppose the government's Motion to Dismiss. But the defense requests that the Court be attentive to the implications of the Motion (and its last-moment submission) in (1) crafting the final jury instruction with respect to the false statement charges, and (2) considering the admissibility of evidence proposed by the government.

Dated: January 11, 2025

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*