IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS C. GOLDSTEIN,<br><br>Defendant. | CRIMINAL NO. LKG-25-0006 |

**GOVERNMENT'S MOTION TO CLARIFY THAT
CERTAIN EVIDENCE FROM 2022-2025 IS ADMISSIBLE**

The government respectfully requests a ruling that certain evidence from 2022 through 2025 is admissible at the trial.

First, Goldstein's poker winnings and losses in 2022 ($47 million and $26 million respectively) are relevant and admissible to show he willfully failed to pay his 2020 and 2021 taxes as alleged in Counts 12 and 13.[1] Goldstein did not pay those taxes until the end of 2022. He was gambling tens of millions of dollars in 2022 while he owed taxes to the government. In legal terms, Goldstein showed an "intentional preference of other creditors over the United States [which] is sufficient to establish the element of willfulness." *See United States v. Akins*, No. CR RDB-24-0255, 2025 WL 2720003, at *6 (D. Md. Sept. 24, 2025) ("[I]ntentional preference of other creditors over the United States is sufficient to establish the element of willfulness." (quoting *United States v. Boccone*, 556 F. App'x 215, 239 (4th Cir. 2014))). In everyday terms, Goldstein chose to gamble instead of paying his taxes, so he committed a crime.

---

[1] This motion cites to the redacted and streamlined indictment for trial at Dkt. 337-2.

None of this was in dispute when the trial began. But on the first day of witness testimony, Goldstein manufactured the issue by misstating the Court's prior ruling. The government asked a witness about a poker match in 2022, and Goldstein objected and argued, incorrectly, that it was "out" or excluded per the Court's December 12, 2025 ruling on his Rule 404(b) motion. The opposite is true. Goldstein had requested the Court limit the temporal scope of evidence on his poker activities, and the Court considered but deferred ruling on the request. Regardless, what matters is getting this right, and the law is clear that Goldstein's spending (including on poker) in 2022 before paying his taxes should come into evidence.

Any other result would be unjust because Goldstein told the jury that his conduct in 2022 undermines Counts 12 and 13. In his opening, Goldstein emphasized that "he paid taxes with penalties and interest for every one of the years that he's charged with willful failure to pay, and he paid that long before this case was charged, **all of them by 2022**. . . . All of that will show you **this is not a willful failure to pay taxes**." Ex. A, 1/15/26 Tr. 71:13-72:2. Now that Goldstein has explicitly claimed that he was not willful and is not guilty because he eventually paid his overdue taxes, it is only fair to allow the government to respond by showing that Goldstein won and lost tens of millions of dollars in 2022 while choosing not to pay his taxes until the end of that year.

Second, Goldstein opened the door to evidence that he failed to file tax returns and report poker winnings in 2022 through 2024 by relentlessly attacking his former accounting firm, Gelman, Rosenberg & Freedman CPAs ("Gelman"), in opening statements, and blaming Gelman for his tax crimes. For example, Goldstein argued that he "sits here accused of willful crimes **because [Gelman] didn't do their jobs properly**," Ex. A, 1/15/26 Tr. 75:3-8. Goldstein's opening slides reinforced these arguments, and featured an entire section—comprising 19 slides out of 75—focused on "GRF ERRORS."

The opening left a deeply unfair and inaccurate impression that Gelman is the problem, when in reality Goldstein continued to violate the tax laws long after Gelman prepared the last tax return for him (for tax year 2021). Thankfully, it will not take much to correct that misimpression. If the Court grants this motion, the government can provide the jury context of Goldstein retaining a different accounting firm and still choosing not to file tax returns or report poker winnings for 2022 through 2024. That evidence supports a "pattern of failing to pay over taxes for an extended period of time," *United States v. Lord*, 404 F. App'x 773, 779 (4th Cir. 2010), and should be admissible even if Goldstein did not open the door. *See* Dkt. 224 at 19-22 (collecting cases supporting the admissibility of evidence of Goldstein's taxpaying record outside the charged period). But since he has, the Court's decision should be even easier. The government must be permitted to respond to Goldstein's factually tenuous arguments about Gelman.

## BACKGROUND

Goldstein currently stands trial on 16 counts of tax and mortgage fraud crimes. Counts 12 and 13 allege that Goldstein willfully failed to pay his taxes for 2020 and 2021. Goldstein owed $947,137 in taxes on May 17, 2021 (for 2020), and $1,139,488 in taxes on April 18, 2022 (for 2021). As alleged in the indictment, Goldstein chose not to pay the 2020 taxes until December 2022, and he chose not to pay his 2021 taxes until October 2022. Dkt. 337-2 at 30, 33. The indictment also alleged that Goldstein spent millions on luxury expenses including poker and travel instead of timely paying his taxes. *See, e.g.*, Dkt. 337-2 at 11.

I.  **Pretrial Litigation on Evidence from 2022-2025**

   A.  **The Parties' Dueling Motions**

   1.  **Goldstein's Rule 404(b) Motion (Dkt. 210)**

On October 24, 2025, Goldstein filed a motion *in limine* to preclude evidence of uncharged misconduct and other character evidence ("Rule 404(b) motion"). Dkt. 210. The Rule 404(b) motion urged exclusion of Goldstein's "failure to file or pay federal and state taxes outside of the charged period," Dkt. 210 at 12-15, and "playing poker after the charged period." Dkt. 210 at 23-24. In its opposition, the government argued on the former that the evidence was relevant and admissible to show Goldstein's willfulness and a lack of mistake, Dkt. 224 at 19-22, and on the latter that it did "not intend to introduce evidence that Defendant . . . continued to play high stakes poker after the charged period" *unless* Goldstein opened the door, Dkt. 224 at 24-25 (emphasis added). As noted above, the indictment's allegations on Goldstein's failure to pay taxes for 2020 and 2021 continue through to when he paid the taxes in late 2022. Dkt. 337-2 at 30, 33.

   2.  **The Government's Motion to Preclude Improper Arguments (Dkt. 204)**

Also on October 24, 2025, the government filed a motion *in limine* to preclude Goldstein from making various types of improper arguments to the jury. Dkt. 204 at 1. For example, the motion argued that Goldstein should be barred from suggesting that he is not culpable for failure to timely pay taxes merely because he *eventually* paid the taxes late. Dkt. 204 at 1. Goldstein opposed the motion and argued that "the jury may consider the circumstances surrounding Mr. Goldstein's belated tax payments in deciding whether Mr. Goldstein acted willfully in failing to pay taxes." Dkt. 225 at 14-19.

### 3. December 12, 2025 Hearing

On December 12, 2025, the Court held a hearing on Goldstein's Rule 404(b) motion and the government's motion to preclude improper arguments (among others).

Regarding the Rule 404(b) motion, the Court indicated that it was inclined to exclude Goldstein's failure to file or pay taxes for years not at issue in the indictment, Ex. B, 12/12/25 Tr. 270:24-271:6, and that it would defer ruling on the admissibility of Goldstein's high-stakes poker activities "in 2024, and maybe beyond that." Ex. B, 12/12/25 Tr. 272:2-6. The Court described evidence of Goldstein's personal spending as "intrinsic to the nature of the tax charges in this case." Ex. B, 12/12/25 Tr. 272:24-273:3.

Regarding the government's motion to preclude improper arguments, the Court agreed that Goldstein may not argue the belated tax payments for 2020 and 2021 "somehow prohibit[] or preclude[] the charges in this case." Ex. B, 12/12/25 Tr. 99:14-19. The Court added, however, that the belated payments "may also go to willfulness," and declined to preemptively bar such arguments by Goldstein at trial. Ex. B, 12/12/25 Tr. 100:17-22.

### 4. The Court's Rulings (Dkt. 287)

The same day, the Court issued a written order denying Goldstein's Rule 404(b) motion except as to (1) evidence of the Defendant's SCOTUS briefs; (2) evidence that the Defendant failed to timely file and pay taxes for tax years before the charging period ; (3) evidence that the Defendant did not timely file or pay his 2022 and 2023 federal taxes; (4) evidence that the Defendant failed to report gambling winnings in previous years; and (5) evidence concerning personal relationships related to the Government's tax evasion charges in (then) Count 3 of the Second Superseding Indictment. Dkt. 287 at 2. The order did not exclude any evidence about Goldstein's personal spending or poker matches and payments—in any time period.

On the government's motion to preclude improper arguments, the Court granted and denied it in part and barred Goldstein "from introducing evidence regarding civil and administrative remedies to resolve taxes and the mental state." Dkt. 287 at 1. The Court's order did not preclude Goldstein from arguing that his belated tax payments were relevant to his willfulness.

### B. Motions to Quash (Dkts. 264, 294)

Late last year, two of the government's potential witnesses (John Doe and John Doe 2) filed motions to quash their trial subpoenas. Dkts. 264, 294. Among other things, the witnesses argued that they had no relevant testimony to provide at trial.

In opposing the motions to quash, one of the government's central arguments was that the witnesses could testify to Goldstein's poker wins and losses in 2022 while he was choosing not to pay his 2020 and 2021 taxes. Dkt. 274 at 5 ("One clear-cut example of Goldstein prioritizing poker over paying taxes in 2022 is participating in a series of high-stakes poker matches against [John] Doe."); Dkt. 315 at 5 (arguing John Doe 2's testimony "will be relevant to the charges for willful failure to pay taxes in 2020-2021" because he "can testify about poker matches in 2022 that resulted in Goldstein wiring losses . . . before paying his already overdue 2020 and 2021 taxes.").

After hearing argument from the government and the witnesses' attorneys, the government denied the motions to quash. The government currently intends to call both witnesses at trial to testify about, among other things, Goldstein's poker wins and losses in 2022 while he owed taxes to the government for 2020 and 2021.

## II. Beginning of Trial

### A. The Parties' Opening Statements

On January 15, 2025, trial began with opening statements and testimony from three witnesses.

In opening statements, both parties addressed the willful failure to pay counts by citing evidence from 2022. Consistent with the pretrial rulings, the government previewed evidence that Goldstein won millions of dollars playing poker before paying his overdue taxes in 2022, and Goldstein told the jury that he eventually paid off the debts in 2022.

Goldstein spent much of his opening statement blaming his former accounting firm, Gelman or GRF, for his tax crimes. Goldstein relentlessly attacked Gelman by arguing that:

- he "sits here accused of willful crimes **because [Gelman] didn't do their jobs properly**," Ex. A, 1/15/26 Tr. 75:3-8;

- "**all of the errors that [Gelman] made** in its accounting, in its reporting, in its advice, are going to **translate directly to the charges that the government is bringing** against Mr. Goldstein," Ex. A, 1/15/26 Tr. 67:16-21; and

- "**Mr. Goldstein went out of his way to ask for [certain income] to be reported** to make sure it was in the books and **the accounting firm ignored that**," Ex. A, 1/15/26 Tr. 67:3-9.

These arguments were reinforced by Goldstein's opening slides, which included an entire section—comprising 19 slides out of 75—focused on "GRF ERRORS." Goldstein also argued to the jury that Gelman had deleted relevant documents, before later conceding to the Court that there is no evidence suggesting any such documents ever existed.

### B. Objections to Witness Testimony

After opening statements, the government called its first three witnesses. One was Alec Gores, who lost approximately $26 million playing poker against Goldstein in 2016. As reflected in text messages between Goldstein and Mr. Gores that were introduced in evidence, they also played in a poker match in March 2022. Ex. 411 at 82. During Mr. Gores' testimony, Goldstein objected to questions about the 2022 match. Goldstein asserted that questions about poker matches in 2022 are "**out on the Court's 404(b) ruling. This is playing poker after the charged time period.**" Ex. A, 1/15/26 Tr. 182:1-2. (Of course, as detailed above, the Court's December 12, 2025

7

Order did **not** grant Goldstein's request to exclude evidence of Goldstein playing poker after the charged time period or in any time period.)

The government responded—consistent with the Court's prior rulings including Goldstein's Rule 404(b) motion—that Goldstein's "playing poker in March of 2022, or any time in 2022, is still relevant to the failure to pay tax because at that point in time he had still not paid the taxes for 2020 and 2021. So again, it shows he is prioritizing his poker over paying the government, and that is squarely within the case." Ex. A, 1/15/26 Tr. 183:19-25. Although the government intended only to ask Mr. Gores questions about the 2022 match to "undermine[] the notion that he is in some way biased against Mr. Goldstein," Ex. A, 1/15/26 Tr. 183:15-19, the government should be entitled to introduce evidence of Goldstein's poker winnings and losses in 2022 before paying his 2020 and 2021 tax debts.

## ARGUMENT

### I. The Court Should Order That Goldstein's 2022 Poker Activity Is Admissible

In failure to pay cases, "intentional preference of other creditors over the United States is sufficient to establish the element of willfulness." *See United States v. Akins*, No. CR RDB-24-0255, 2025 WL 2720003, at *6 (D. Md. Sept. 24, 2025) (quoting U*nited States v. Boccone*, 556 F. App'x 215, 239 (4th Cir. 2014)); *accord Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992). Discretionary spending "naturally completes the story of allegations that [a defendant] failed to pay over taxes by providing a narrative of how he used the funds other than to pay the taxes owed." *Id.* Spending on gambling instead of taxes shows willfulness in failing to pay taxes. *See id.*; *United States v. Blanchard*, 618 F.3d 562, 569 (6th Cir. 2010); *United States v. Ellis*, 548 F.3d 539, 543 (7th Cir. 2008).

Here, Goldstein's poker winnings and losses in 2022 are relevant to show how he was using his funds other than to pay the taxes owed. *See Akins*, 2025 WL 2720003, at *6. Goldstein won $40 million in 2022 from one individual, John Doe, before paying his taxes. Goldstein also lost $26 million in 2022. When Goldstein won, he could have paid his taxes, but chose not to. And when Goldstein lost, he could have skipped the match (or deferred payment after losing) and instead used the money to pay his taxes, but he chose not to. In either case, Goldstein's poker winnings and losses in 2022 tend to prove willfulness on Counts 12 and 13 (failure to pay for 2020 and 2021). The Court should treat Goldstein's poker winnings and losses in 2022 the same way as his personal spending, which the Court ruled is admissible and goes to his willfulness in failing to pay taxes. Ex. B, 12/12/25 Tr. 272:24-273:3.

These are uncontroversial points, muddied only by Goldstein misstating the Court's prior ruling on the first day of trial. Contrary to Goldstein's objection during Mr. Gores' testimony, the Court never ruled that poker activity in 2022—or any other time period—was "out" or inadmissible. *Compare* Ex. A, 1/15/26 Tr. 182:1-2 (Goldstein's objection), *with* Dkt. 287. In fact, Goldstein requested a temporal limit to evidence about Goldstein's poker activity, Dkt. 210 at 23-24, but the Court expressly declined to grant the request, Ex. B, 12/12/25 Tr. 272:2-6; Dkt. 287 at 2. The Court's ruling on Goldstein's Rule 404(b) motion (Dkt. 287) speaks for itself—and contradicts what Goldstein told the Court last week.

The demonstrative timeline below shows when Goldstein was required, but failed, to pay taxes for 2020 and 2021, how much he was legally required to pay, and when he finally decided to pay. Consistent with evidence that should be admitted, the timeline also shows that Goldstein spent millions of dollars on poker throughout the period, all while owing taxes for 2020 and 2021. This includes investing $800,000 in another player's poker matches on May 27, 2022, barely a

9

month after Goldstein had failed to pay his 2021 taxes—and while he also still owed nearly a million dollars on his 2020 taxes. Voluntarily choosing to invest nearly a million dollars rather than pay taxes is paradigmatic evidence of willfulness.



Evidence of Goldstein's poker winnings and losses in 2022 poses no risk of unfair prejudice, let alone a substantial one. In the Fourth Circuit, "[w]here the evidence is substantially similar, or at least no more sensational, than the crimes charged, there is no unfair prejudice," and evidence may not be excluded under Rule 403. *United States v. Chaudhri*, 134 F.4th 166, 184 (4th Cir. 2025), *cert. denied*, No. 25-146, 2025 WL 2824227 (U.S. Oct. 6, 2025); *see United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (reversing district court's exclusion of evidence under Rule 403 as abuse of discretion where that evidence was "substantially similar" to the charged evidence). Indeed, evidence may be excluded under Rule 403 "only if the evidence is *unfairly* prejudicial and, even then, only if the unfair prejudice *substantially* outweighs the probative value of the evidence." *Siegel*, 556 F.3d at 319 (emphasis in original).

There is no unfair prejudice here. This is exactly the same type of evidence the jury has *already* heard about for 2016, and will hear about for 2017 through 2021. And these jurors made it through extensive voir dire during which their views on gambling large sums of money were fully fleshed out. There is no reason to believe that Goldstein's winnings and losses in 2022 would distract the jurors from the task at hand. On the other hand, excluding the evidence would unfairly prejudice the government because **Goldstein** has already relied on facts occurring in 2022 to dispute his willfulness in failing to pay taxes. Goldstein argued in his opening statement that he eventually paid his 2020 and 2021 taxes in 2022 and therefore was not willful in failing to pay them on time. Ex. A, 1/15/26 Tr. 71:13-72:2. In other words, Goldstein wants to cite the two entries at the end of the above timeline while *blindfolding* the jury to all his poker activity beforehand. Allowing him to cite evidence from late 2022 to negate his willfulness while excluding the government's willfulness evidence in the same year would be absurd and unfair—and leave the jury with an intensely inaccurate understanding of the facts.

And indeed, the Court's prior rulings did not impose any such limit. The government seeks clarity now only to address the uncertainty injected by Goldstein's improper objection. The Court should rule that his poker activity in 2022, including his winnings and losses, is admissible. To rule otherwise and exclude this evidence would create precisely the profound danger of "misleading the jury" that Rule 403 was designed to prevent. Fed. R. Evid. 403.

## II. The Court Should Admit Goldstein's Failures To File Tax Returns For 2022-2024

The government has previously briefed the reasons why Goldstein's failures to file tax returns for 2022 through 2024 should be admissible at trial, *see* Dkt. 224 at 19-22, and incorporates that briefing here. The government respects the Court's decision on Goldstein's Rule 404(b) motion, Dkt. 287 at 2, but circumstances have changed.

11

In his opening statement, Goldstein relentlessly attacked his former accounting firm, Gelman, and left the unfair and inaccurate impression that Gelman is to blame for Goldstein hiding poker winnings from the government and otherwise violating the tax laws.[2] In reality, even after Goldstein stopped using Gelman to prepare taxes, he continued hiding tens of millions in poker winnings from the government by choosing not to file tax returns at all. For example, in 2022, Goldstein won $47 million playing poker but did not file a tax return and, therefore, did not report any of the winnings. (Goldstein did make substantial tax payments in October and December 2022 and, as discussed above, a significant portion of those payments went to overdue taxes from 2020 and 2021.) The government needs to be able to correct the misimpression left by Goldstein's opening statement and proposes doing so by introducing Goldstein's failures to file tax returns in 2022 through 2024.

This evidence would not unfairly prejudice Goldstein especially in the context of the rest of the admissible evidence. *See* Fed. R. Evid. 403. His failures to report poker winnings in 2022 through 2024 is "substantially similar, or at least no more sensational, than the crimes charged," so "there is *no* unfair prejudice" at all. *See Chaudhri*, 134 F.4th at 184 (emphasis added). Thus, there is *zero* risk of the probative value being substantially outweighed by unfair prejudice. One central theory of the government's case is that Goldstein serially hid his poker activity and winnings from the government including by omitting it from tax returns. Introducing Goldstein's

---

[2] Goldstein also insinuated to the jury that Gelman recently deleted internal emails with "conversations that were happening between the accountants at the time" of Goldstein's tax misconduct, Ex. A, 1/15/26 Tr. 68:15-25, despite later conceding to the Court that "we have no idea what those documents are," Ex. A, 1/15/26 Tr. 230:18-24. As the Court noted, it is unclear whether there even are any relevant documents that were deleted. Ex. A, 1/15/26 Tr. 231:3-5. What's worse, Goldstein tied the spurious deletion allegations with an irrelevant attack on what he called the government's "tunnel vision investigation"—leaving the inescapable false impression that the government had something to do with the deletion or absence of evidence (which Goldstein concedes may have never even existed in the first place).

failures to file tax returns in 2022 through 2024 is no more sensational than evidence the jury is expected to hear during trial as it stands now. He is already charged with multiple federal felonies, including tax evasion (which Goldstein twice called the "lead charge" in opening), so his subsequent misdemeanor failures to file tax returns is arguably *less* sensational than this charged conduct.

And while true that "all evidence suggesting guilty is prejudicial to a defendant," "[t]hat kind of general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence." *See Siegel*, 536 F.3d at 319 (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)). Goldstein's failures to file tax returns in 2022 through 2024 will not cause him any harm cognizable under Rule 403.

Indeed, federal appeals courts across the country agree that a defendant's tax violations *after* the charged years are relevant and admissible to prove intent. *See, e.g.*, *United States v. Johnson*, 893 F.2d 451, 452-53 (1st Cir. 1990) (affirming admission of defendant's failure to "file an income tax return for 1987[]" because it "was relevant to show [his] willfulness and absence of mistake in filing [false forms] during the years 1982-86 [so t]he jury could reasonably infer from that the improper filings in the years immediately previous were likewise infected by tax evasion purpose"); *United States v. Upton*, 799 F.2d 432, 433 (8th Cir.1986) ("Evidence of [defendant's] questionable compliance with tax laws, both in the years prior to and *subsequent to* [the years of the charged conduct] is probative of willfulness in the present context." (emphasis added)).[3]

---

[3] This norm of admitting subsequent tax misconduct mirrors the general rule that a defendant's uncharged past tax misconduct is admissible to prove intent. *See, e.g.*, *United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) (collecting cases and summarizing, "In cases involving violations of federal tax laws such as tax evasion, a defendant's past taxpaying record is admissible to prove willfulness circumstantially" (cleaned up)); *United States v. Farr*, 701 F.3d 1274, 1281 (10th Cir. 2012) (affirming admission of tax penalties prior to the charged conduct to prove willfulness); *see*

(continued...)

Evidence of a defendant's conduct *after* the charged period becomes especially important, and all the more admissible, when he blames the charged conduct on his accountants—just Goldstein is now. *See United States v. Bok*, 156 F.3d 157, 165-66 (2d Cir. 1998) (affirming admission of defendant's entities' failure "to file federal . . . corporate returns for the years during *and after* those in the indictment" to prove willfulness where the defendant "suggested that *his reliance on his accountant* effectively negated his willfulness" (emphasis added)). This evidence is critical to "provide the jury with the necessary context for the government's claim" that Goldstein's charged conduct was willful. *Cf. Siegel*, 536 F.3d 316-17 (reversing exclusion of subsequent conduct and noting this conduct were intrinsic as necessary context to the charges). Otherwise, it will be left with the profoundly wrong impression that he became fully compliant with his tax obligations the moment he stopped using Gelman.

Goldstein's trial strategy and opening statement confirmed the appropriateness of introducing his failures to file tax returns for 2022 through 2024. The evidence is admissible under Rule 404(b), not unfairly prejudicial, and now is necessary to rebut and contextualize the misimpression Goldstein left on the jury.

\*   \*   \*

---

*also Lord*, 404 F. App'x at 779 (4th Cir. 2010) ("[The defendant]'s willfulness also can be inferred from her pattern of failing to pay over the taxes for an extended period of time.").

## CONCLUSION

The government respectfully requests a ruling that the following categories of evidence are admissible: (1) Goldstein's poker winnings and losses in 2022 and (2) Goldstein's failures to file tax returns and report poker winnings in 2022 through 2024.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: January 18, 2026

/s/  *Hayter L. Whitman*
Hayter L. Whitman
Trial Attorney
Department of Justice—Tax Division

Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Trial Attorney
Department of Justice—Tax Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland

15