IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. LKG-25-6 |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |
| ******** | | |

**DEFENDANT THOMAS C. GOLDSTEIN'S RESPONSE TO GOVERNMENT'S
MOTION TO "CLARIFY"**

**TABLE OF CONTENTS**

                                                  **Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.     EVIDENCE THAT MR. GOLDSTEIN HAS NOT FILED TAX RETURNS FOR TAX YEARS 2022-2024 IS INADMISSIBLE ...............................................................2

II.    EVIDENCE THAT MR. GOLDSTEIN PLAYED POKER IN 2022 IS INADMISSIBLE .......................................................................................................6

III.   THE DEFENSE MUST CORRECT THE RECORD REGARDING THE ISSUE OF GRF'S DELETED EMAILS ..............................................................................10

CONCLUSION ............................................................................................................................12

## INTRODUCTION

The government's motion to "clarify" the admissibility of evidence from after the charged period is just an untimely and meritless motion for reconsideration, plain and simple. At the hearing on the parties' motions *in limine*, this Court ruled (1) that evidence that Mr. Goldstein continued to play poker after 2021 was *not* intrinsic to the charged conduct, and *might* be an appropriate subject of questioning—if at all—only during cross-examination "should Mr. Goldstein take the stand," 12/12/25 Tr. 247:4-14, *see also id.* at 272:2-6; and (2) that evidence that Mr. Goldstein failed to file and/or pay his federal taxes after the charged period was inadmissible because it is "not intrinsic to the specific tax charges in this case" and its probative value is "outweighed [by] concerns about prejudice to Mr. Goldstein," 12/12/25 Tr. 270:24-271:6; *see also* ECF No. 287, ¶ 10(3).

Apparently unhappy with this Court's rulings, the government seizes on entirely predictable trial developments to claim that Mr. Goldstein somehow opened the door to extremely prejudicial evidence. This is a ruse. In fact, what *has happened* is that it has become painfully clear that the government's strategy for its case-in-chief is not to prove up the allegations actually charged, but rather to invite the jury to convict Mr. Goldstein based on his "high-roller lifestyle," 1/15/26 Tr. 48:23-24, and his assertedly "decept[ive]" character, *id.* at 40:20-21. Why else would the government have dedicated a substantial part of its opening statement to showing the jury pictures of expensive cars, nightclub receipts, and luxury vacation rentals? And why else would the government have tried to ask a witness about whether Mr. Goldstein "misrepresent[ed]" the identity of one of his guests? *See* 1/15/26 Tr. 177:2-179:10.

This Court should not countenance the government's untimely attempt to reopen this Court's prior evidentiary rulings in the hopes of putting Mr. Goldstein's character on trial—a

1

tactic that, if permitted to succeed, will surely recur and delay and already lengthily trial. The government's motion should be denied.

## ARGUMENT

**I. EVIDENCE THAT MR. GOLDSTEIN HAS NOT FILED TAX RETURNS FOR TAX YEARS 2022-2024 IS INADMISSIBLE**

This Court has already unequivocally ruled that "evidence that [Mr. Goldstein] did not timely file or pay his 2022 and 2023 federal taxes" is "**EXCLUDE[D]** … from being admitted at trial."[1] ECF No. 287, ¶ 10(3). The government's mid-trial "request[] [for] a ruling that … Goldstein's failures to file tax returns and report poker winnings in 2022 through 2024" are "admissible," ECF No. 352, at 15, is a nothing more than a belated motion for reconsideration. That request is untimely by more than three weeks, and it can be denied on that basis alone. *See* LR 105.10 ("[A]ny motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order."); *compare* ECF No. 287 (Order on the Parties' Motions In Limine, dated December 12, 2025), *with* ECF No. 352 (government's request to admit evidence previously ruled inadmissible, dated January 18, 2026).

The government's purported excuse—i.e., that "circumstances have changed" because the defense's opening statement highlighted GRF's errors *during the charged period*—is a feint. ECF No. 352, at 11-12. From the beginning, the defense has been clear with the Court and with the government that evidence regarding GRF's woeful bookkeeping and accounting services will form a key piece of Mr. Goldstein's defense to the charged offenses, because GRF's mistakes and bad advice directly rebut the element of willfulness. The government's feigned surprise that

---

[1] The Court did not address Mr. Goldstein's 2024 taxes because the government did not include that tax year in its Rule 404(b) notice. *See* ECF No. 212, at 4. But evidence regarding Mr. Goldstein's 2024 taxes is inadmissible for the same reasons as his 2022 and 2023 taxes. *See* ECF No. 249, at 8 n.6.

2

the defense made precisely this argument in its opening statement is disingenuous, to say the least. And the government's tortured logic for why the defense's perfectly legitimate criticism of GRF's work *during* the charged period somehow requires "correct[ion]" with evidence that Mr. Goldstein's failed to file and/or pay taxes *after* the charged period, ECF No. 352, at 3, is incoherent. Mr. Goldstein's argument is that GRF is responsible (at least in part) for the errors in his 2016-2021 tax returns that the government has charged as criminal acts of willful tax evasion or willful assistance in the preparation of false returns. Whether Mr. Goldstein "cho[se] not to file tax returns" "after [he] stopped using [GRF] to prepare taxes," ECF No. 352, at 12, has no bearing on whether GRF's shoddy work during the charged period undermines the government's charge that Mr. Goldstein willfully evaded paying taxes.

While the government's *briefed* justification for asking this Court to revisit its 404(b) ruling makes no sense, the government's opening statement reveals why the government *really* wants to admit this evidence. Because the government has no evidence that Mr. Goldstein actually committed the charged offenses, the government intends to put Mr. Goldstein's lifestyle on trial in the hopes that the jury will convict him because they do not approve of him personally. Thus, the government argued in its opening statement that "[w]hen it benefits Mr. Goldstein to do the right thing, maybe he'll do it," "[b]ut … when it impedes or gets in the way of him living the lifestyle that he wants … , he deceives people and he misleads people." 1/15/26 Tr. 52:14-18. This line of argument is completely improper, as it invites the jury to draw impermissible inferences about Mr. Goldstein's guilt based on Mr. Goldstein's purported propensity and/or character for truthfulness. *See* Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); Fed. R. Evid. 404(b) ("Evidence of any other

3

crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The fact that the government promised the jury a story about a deceitful man does not mean that, anytime the defense challenges that narrative with evidence relevant to the charged offenses, the government can respond with evidence of uncharged misconduct that this Court has already deemed inadmissible under Rule 404(b).

In all events, even if the government could show good cause for its untimely motion for reconsideration (which it cannot), the government remains wrong on the merits. As this Court already ruled, evidence that Mr. Goldstein did not file or pay his taxes after 2021 is "not intrinsic to the specific tax charges in this case." 12/12/25 Tr. 270:24-271:2. And such evidence is inadmissible under both Rules 403 and 404(b) because the "probative value" of such evidence, if any, is substantially "outweighed [by] concerns about prejudice to Mr. Goldstein"—especially because this evidence "is not about the time period for which the government has brought the tax charges here." *Id.* at 271:2-6.

The government's contention that evidence of non-payment *after* 2021 is "admissible to prove intent" with respect to failures to pay *before* 2021 answers itself. Mr. Goldstein does not dispute the Second Superseding Indictment's allegations that he finished paying his tax liability for tax years 2017 and 2019 in 2021, see ECF No. 337, ¶¶ 55, 73, and his tax liability for tax years 2020 and 2021 in 2022, see *id.* ¶¶ 79, 91. The dates on which Mr. Goldstein paid his taxes in *other* years are entirely irrelevant to the charged crimes—and certainly not necessary to prove any element of those offenses. *See United States v. Brizuela*, 962 F.3d 784, 793-97 (4th Cir. 2020). In fact, in other filings submitted to this Court, the government itself has taken the position that "[w]hat [Mr.] Goldstein thought about the importance of paying his taxes after
4

[2020] could not possibly have any bearing on what was in his mind when his obligation to pay his taxes arose under the law."[2]  ECF No. 204, at 9.

The government's argument that post-2021 non-payment evidence cannot be prejudicial because Mr. Goldstein is charged with the crime of willful failure to pay, *see* ECF No. 352, at 12-13, gets it exactly backwards:  Because Mr. Goldstein is charged with willful failure to pay in tax years 2017, 2019, 2020, and 2021, evidence that Mr. Goldstein did not file and/or pay taxes in 2022, 2023, and 2024 invites the jury to convict Mr. Goldstein based on the inappropriate inference that he had a propensity for not paying his taxes.  *See United States v. Hall*, 858 F.3d 254, 270 (4th Cir. 2017) ("When other crimes evidence is of 'marginal probative value' and other evidence supporting a drug trafficking defendant's guilt is 'scarce and equivocal,' there is 'an unacceptable risk that the jury will assume that the defendant has a propensity for drug trafficking and convict on that basis alone." (citation modified)).  This evidence is not prejudicial because it is "sensational," as the government suggests, ECF No. 352, at 13; rather, it is overwhelmingly prejudicial because there is a serious risk that the jury would "becom[e] confused by the purpose of the admitted acts and us[e] th[ose] acts improperly in arriving at a verdict."  *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997).

The Fourth Circuit's decision in *United States v. Chaudhri*, 134 F.4th 166 (4th Cir. 2025)—which the government could have cited in its opposition to the defense's 404(b) motion, but chose not to—is not to the contrary.  In *Chaudhri*, the Court held that evidence that was

---

[2] The government's brief also rehashes a number of cases that the government previously cited in its opposition to the defense's motion *in limine* to exclude Rule 404(b) evidence.  *Compare* ECF No. 352, at 13-14 & n.3, *with* ECF No. 224, at 19-20.  The defense incorporates by reference its prior discussion of those cases, *see* ECF No. 249, at 8-9 & n.7—including the overarching point that appellate decisions declining to find error in the admission of failure-to-file evidence after the charged period necessarily do so under the lenient abuse-of-discretion standard of review.

5

*intrinsic* to the charged offense was not prejudicial "[w]here the evidence is substantially similar, or at least no more sensational, than the crimes charged." *Id.* at 184. But, as this Court has already ruled, Mr. Goldstein's failure to pay taxes in 2022 through 2024 is "not intrinsic to the specific tax charges in this case." 12/12/25 Tr. 270:24-271:6. And, as just noted, Mr. Goldstein's objection to this evidence is not that it is "sensational," *Chaudhri*, 134 F.4th at 184, but rather that it is improper propensity evidence under Rule 404(b).

## II. EVIDENCE THAT MR. GOLDSTEIN PLAYED POKER IN 2022 IS INADMISSIBLE

In resolving the defense's pre-trial motion *in limine* to exclude evidence of uncharged misconduct, including 404(b) evidence that Mr. Goldstein "continued to play high stakes poker as late as 2024," ECF No. 212, at 5 (government's 404(b) notice), this Court ruled that such evidence is not "intrinsic," and rather "sounds like something the government might want to bring up on cross-examination should Mr. Goldstein take the stand." 12/12/25 Tr. 247:4-14. The Court therefore deferred ruling on the defense's motion because "that is an issue that would come up on cross and needs to be assessed by the Court in light of the direct testimony." 12/12/25 Tr. 272:2-6. The clear import of this Court's ruling is that evidence about Mr. Goldstein's poker playing outside of the charged period is *not* admissible to support the government's case-in-chief. Indeed, the government conceded as much in its in response to the defense's 404(b) motion, wherein it stated that it did "not intend to introduce evidence that [Mr. Goldstein] … continued to play high stakes poker after the charged period" unless Mr. Goldstein "posit[ed] a defense at trial that he … received no income from gambling after the charged period." ECF No. 224, at 24.

In an abrupt about face, the government now argues that the evidence it previously had no plans to introduce, *see id.*, is actually "paradigmatic evidence of willfulness," ECF No. 352, at

6

10. And, based on nothing more than the government's own say-so, the government contends that, despite the government's prior concession, this Court's order on the defense's motion *in limine* "did not exclude any evidence about [Mr.] Goldstein's … poker matches and payments … in any time period." *Id.* at 5. The government seriously misrepresents its briefing and misunderstands this Court's ruling. For the reasons stated above, *see* p. 2, *supra*, its instant motion for "clarification" should be denied as an untimely motion for reconsideration.

In addition to its untimeliness, the government's motion suffers from another fatal procedural flaw. As the defense argued extensively in its motion *in limine*, the government's boilerplate Rule 404(b) notice was deficient because it failed to "articulate … the permitted purpose for which the [government] intend[ed] to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B); *see* ECF No. 210, at 7-10. This Court agreed that the government's notice failed to "m[eet] that standard," but concluded that "the government ha[d] cured that problem during the course of … briefing." 12/12/25 Tr. 242:7-11. The defense requested, therefore, that the government be held strictly to its briefing, including "concessions [the government] ha[s] made," and this Court agreed. *Id.* at 249:22-250:7.

As a result, the government's earlier concession that post-2021 gambling would be admissible (if at all) only on cross-examination, *see* ECF No. 224, at 24, presents more than a forfeiture problem; it means that, until filing its motion yesterday, the government had *never* "articulate[d] … the permitted purpose for which" it sought to offer that evidence, much less "the reasoning that supports th[at] purpose." Fed. R. Evid. 404(b)(3)(B). And the government's newly articulated theory that Mr. Goldstein's "poker winnings and losses in 2022 are relevant to show how he was using his funds other than to pay the taxes owed," ECF No. 352, at 9, simply comes too late. Rule 404(b) requires the government to give notice *before* trial unless, "for good

cause, [the Court] excuses lack of pretrial notice." Fed. R. 404(b)(3)(C). The government has not claimed good cause for its belated notice, and plainly none exists.

In all events, the defense respectfully submits that this Court was correct before, and the government is (still) wrong now. As the defense argued in its Rule 404(b) motion, there is no conceivable way that playing poker after the charged period could be intertwined with, or otherwise part of the story of, the tax crimes charged against Mr. Goldstein. *See United States v. Bush*, 944 F.3d 189, 196 (4th Cir. 2019) (evidence is intrinsic of it is "inextricably intertwined with the evidence regarding the charged offense" such that "it forms an integral and natural part of the witness's accounts of the circumstances surrounding the [charged] offenses"). Nor is it "relevant to an issue other than the general character of the defendant" or "necessary to prove an element of the charged offense[s]"—the showing the government must make to admit it under Rule 404(b). *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (citation and internal quotation marks omitted); *see Hall*, 858 F.3d at 266 (the government "bears the burden of establishing that evidence of … prior bad acts is admissible for a proper purpose").

The government tries to skirt these issues by recharacterizing Mr. Goldstein's poker playing in 2022 as "[d]iscretionary spending." ECF No. 352, at 8. That is simply inaccurate.[3]

---

[3] Even if evidence that Mr. Goldstein played poker in 2022 were properly characterized as "personal spending" evidence (which it is not), such evidence is incredibly cumulative. The government simply does not need evidence that Mr. Goldstien played poker in 2022 to make the point that, in the years Mr. Goldstein had outstanding tax liabilities, he spent money on things other than his taxes. The defense notes that the Court has already conditionally admitted roughly 70 pages of "personal spending" evidence under Rule 902(11) at the government's request, *see, e.g.*, GX-780, GX-1066, GX-1067, GX-1068, GX-1070, GX-1071, and the government's exhibit lists discloses that it intends to offer hundreds upon hundreds of pages more, *see, e.g.*, GX-28, GX-589, GX-590, GX-596, GX-653, GX-654, GX-765, GX-767, GX-768, GX-771, GX-772, GX-773, GX-774, GX-775, GX-776, GX-777, GX-778, GX-779, GX-781, GX-782, GX-803, GX-848, GX-851, GX-853, GX-854, GX-857, GX-858, GX-859, GX-860, GX-861, GX-862, GX-863, GX-864, GX-865, GX-866, GX-867, GX-868, GX-869, GX-870, GX-872, GX-873, GX-874, GX-875, GX-876, GX-877, GX-927, GX-930, GX-1033, GX-1034, GX-1044, GX-

Mr. Goldstein played poker in the hopes that he would make money—not as some frivolous diversion. Moreover, as the government concedes, Mr. Goldstein did *in fact* use the money he made in 2022 to fully pay his outstanding 2020 and 2021 taxes. *See* ECF No. 352, at 10. And none of that should matter anyway, because the government has consistently argued—and this Court has accepted, *see* ECF No. 237, at 21-22—that the crime of failure to pay under 26 U.S.C. § 7203 is "complete on the payment due dates," ECF No. 131, at 9, and that "[t]here is no exception in the statute for individuals who eventually paid the taxes they owe" or "for individuals who lack the financial wherewithal to timely pay their taxes," ECF No. 134, at 22. So all that matters for the government's case is whether Mr. Goldstien willfully failed to pay his 2021 taxes on the day they were due—i.e., April 18, 2022, *see* ECF No. 337, ¶ 119—not what Mr. Goldstien *was* spending his money on.[4]

It does not change the calculus that, as the government notes, *see* ECF No. 352, at 11, Mr. Goldstein plans to present evidence that he fully paid his taxes for all charged years with penalties and interest.[5] The fact that Mr. Goldstein made regular payments to the IRS and eventually satisfied his liability for the charged tax years is highly relevant to whether his failure to pay was willful, because a jury could reasonably infer from Mr. Goldstein's subsequent efforts to pay his taxes that he did not know *on the date his taxes were due* that, by complying with civil-enforcement options for resolving outstanding tax liability, he still would be in breach of a

---

1045, GX-1046, GX-1133, GX-1142, GX-1150, GX-1151, GX-1152, GX-1153, GX-1154, GX-1155.

[4] The smattering of cases cited by the government, *see* ECF No. 32, at 8-9, are all inapposite. None concern the statute at issue here (Section 7203), which—as noted—the government contends is violated on the day taxes are due.

[5] As the government concedes, *see* ECF No. 352, at 4-5, this Court has already rejected the government's attempt to exclude evidence of Mr. Goldstein's belated payments, *see* ECF No. 287 ¶ 4; 12/12/25 Tr. 101:1-8.

"legal duty" to pay. *United States v. Hirschfeld*, 964 F.2d 318, 322 (4th Cir. 1992) (citation and internal quotation marks omitted). That Mr. Goldstein spent money on things other than his taxes in 2022, including on gambling, does not shed any light on whether he knew he was allegedly committing a crime on April 18, 2022 by not paying his taxes in full.

Evidence that Mr. Goldstein played poker in 2022 is also inadmissible under Rule 403. Such evidence is highly prejudicial, as it encourages the jury to pass judgment on Mr. Goldstein's lifestyle rather than carefully consider whether the government has carried its burden to prove the charged offenses beyond a reasonable doubt. Additionally, such evidence presents a grave danger of "confusing the issues" and "misleading the jury," Fed. R. Evid. 304, by implying that Mr. Goldstein is charged with a criminal offense related to his 2022 poker playing (or his tax reporting thereof).

### III. THE DEFENSE MUST CORRECT THE RECORD REGARDING THE ISSUE OF GRF'S DELETED EMAILS

As this Court is aware, the defense intends to argue that GRF deleted internal emails potentially relevant to Mr. Goldstein's defense. The government's motion misleadingly states that the defense "conced[ed] to the Court that there is no evidence suggesting any such documents ever existed." ECF No. 352, at 7. The defense made no such concession. Rather, the defense's point was merely that, because GRF's internal emails were not collected before they were irrevocably destroyed, "we have no idea what those documents" might have said. 1/15/26 Tr. 230:23-231:5.

At Thursday's hearing, the government expressed shock at the proposition that the defense could challenge the inadequacy of the government's investigation without knowing precisely the contents of the deleted emails. 1/15/26 Tr. 230:10-231:22. But that objection answers itself. It is analogous to saying that the defense cannot point out the government's

10

failure to collect DNA evidence without first establishing that the missing evidence would have exonerated the defendant. As the Court recognized, the point here is that the defense does not know what those internal emails say because GRF refused to provide them to the defense, the government failed to collect them, and GRF subsequently deleted them. All this is directly relevant to the contention that the government conducted an inadequate investigation by (among other things) failing to collect GRF's internal emails before they were permanently deleted. And as the Court has recognized, inadequacy of investigation is a well-recognized and entirely proper defense.

The defense also must respond to the government's accusation at the close of Thursday's proceedings that defense counsel "wasn't being entirely honest" with the Court with respect the GRF records issue. 1/15/26 Tr. 224:3-4. That is a serious accusation. It is also entirely inaccurate—and based on two misrepresentations *by the government* about its discussions with defense counsel.

First, the government on Thursday complained to this Court that "[a]pparently there was a declaration from a witness," but that "[w]e have no idea who that witness is." 1/15/26 Tr. 224:15-17. That is false. The defense produced to the government as part of its Rule 16(b) discovery a declaration by Ian Shuman, which the defense has also identified on its previously circulated exhibit list. In addition, the defense has also produced to the government and identified on its exhibit list an email chain from 2024—that is, prior to GRF's adoption of its document auto-deletion policy—in which Mr. Goldstein's counsel requested internal emails from GRF, and in which GRF refused to produce those records.

Second, the government on Thursday accused defense counsel of not "liv[ing] up to [their] end of the bargain" by refusing to produce to the government documents that the defense

11

filed with this Court on an *ex parte* basis. 1/15/26 Tr. 228:5-8. Again, the government is misrepresenting facts. Following the December 12, 2025 hearing, the government produced to the defense copies of three relevant subpoenas issued to GRF during the grand jury investigation: one in October 2020; another in November 2023; and the last in June 2024.[6] In email correspondence, the defense asked the government: "Did the government tell GRF—either orally or in writing—that it was not required to produce internal emails in response to these subpoenas?" Ex. A. The defense proposed that "[i]f [the government is] willing to share this information with us, then we would be willing to share with you our ex parte motion." *Id.* In response, the government stated that "there were no additional instructions or directions to GRF limiting the production of documents in response to the **_2024 subpoena_** . . . ." Ex. B (emphasis added). But the government refused to provide information as to the earlier two subpoenas. When defense counsel again requested that information, the government refused, stating that it would not "spend any more time on ad hoc research assignments." *Id.* Because the government failed to live up to its end of the bargain by providing complete information about any instructions it gave to GRF in connection with the **_subpoenas_** (plural), the defense declined to disclose its *ex parte* filings to the government.

## CONCLUSION

For the reasons set forth herein, the Court should deny the government's motion.

Dated: January 19, 2025

Respectfully submitted,

/s/ Jonathan Kravis
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)

---

[6] The government also produced a fourth subpoena from February 2024 requesting unencrypted versions of various files.

12

Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*