IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. LKG-25-6 |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |

**DEFENDANT THOMAS C. GOLDSTEIN'S MOTION TO EXCLUDE TESTIMONY REGARDING "REDIRECTED" FEES OF THE GOLDSTEIN & RUSSELL FIRM**

The defense respectfully moves in limine for an Order precluding the government from introducing and relying on evidence that Mr. Goldstein redirected payments from Goldstein & Russell to third parties or his own personal account. At 5pm yesterday, the defense received notice that the government today intends to introduce testimony from Darren Robbins (of the Robbins Geller law firm) and of Paul Napoli (of the Napoli Bern law firm). The Second Superseding Indictment alleges, and the defense anticipates that these witnesses will testify, that Mr. Goldstein directed them to send payments owed to the Goldstein & Russell law firm to either Mr. Goldstein's personal bank account or a third party. But it is undisputed that the law firms had a legal obligation to send Forms 1099 to both the IRS and Goldstein & Russell recording the income. *See* 26 C.F.R. 1.6045-5(a)(1), -5(a)(3); *IRS Instructions for Form 1099-NEC*, IRS (Apr. 2025), https://www.irs.gov/instructions/i1099mec. The payor's willful failure to file such an "informational tax return" is itself a criminal offense. *See* 26 U.S.C. § 7203. It is undisputed that the evidence will show (1) that the Robbins Geller in fact sent the 1099, and (2) that the Napoli

1

Bern firm initially failed to send the 1099 but later realized that it made an error in not doing so. Thus, the payors' unqualified duty to send the 1099s to Goldstein & Russell is unquestioned.

Notwithstanding this express legal duty to report the income regardless of where it was paid, the government's theory of willfulness (as the defense understands it) is that Mr. Goldstein was relying on the fact that the accountants would *ignore* the Forms 1099 in preparing the tax returns. That would be extraordinary: the IRS *required* the payors to send the Forms 1099 to the law firm. Thus far, the government has not presented any evidence suggesting that Mr. Goldstein was even aware of the accountant's legally improper practice of ignoring Forms 1099 sent to the law firm, let alone that he relied on it. Indeed, the Second Superseding Indictment includes no such allegation. As a result, before it is permitted to present this evidence to the jury, the government should at the very least proffer its intention to put on that evidence. And it should be held to that specific theory in arguing this point to the iury. Otherwise, there is no possible theory of criminal liability.[1]

The government previously disparaged Mr. Goldstein's reliance on the payors' duty to send 1099s as merely identifying one way a third party could have prevented him from engaging in tax evasion. That is a serious mischaracterization of the relevant reporting obligation. The

---

[1] The Court has not previously decided this issue. The Court denied Mr. Goldstein's distinct pre-trial motion seeking to strike this theory of criminality with respect to the tax evasion charges. That motion relied on a distinct legal theory: that the mere redirection of the 1099s "otherwise innocent conduct" that was not an "affirmative act of tax evasion." *See* ECF No. 120. In denying that Motion, which addressed a variety of alleged "affirmative acts," the Court did not even discuss the 1099s. It generally relied on the distinct and narrow ground that the types of conduct that can constitute an "affirmative act" are broad under Supreme Court precedent. The Court found the Indictment alleged an "affirmative act" on the ground that it alleged that Mr. Goldstein "'caused' the transfer of those funds to be improperly characterized on the books and tax returns of G&R." ECF No. 237, at 21 (Nov. 18, 2025). That is not the issue raised by this Motion in Limine.

defense's argument is not that Mr. Goldstein was relying on the hypothetical prospect that a third party might report income that he was hiding. Rather, Mr. Goldstein was entitled to rely on the *identical* legal duty that *the government* is relying on with respect to the 2016 gambling income: the duty to provide 1099s that report income. And the payors' willful failure to comply with that obligation would have been a crime.

Earlier, the government also misleadingly asserted that it was significant that Mr. Goldstein had supposedly failed to deliver the Form 1099 reporting the Gores poker winnings to the accountants. Putting to the side the absence of evidence of that fact, there simply is no equivalence. The Gores 1099 was sent to Mr. Goldstein's personal residence. The 1099s at issue before the Court today were to be delivered by the payors to the Goldstein & Russell law firm. The government has never maintained that Mr. Goldstein ever even *saw* such documents when delivered to the firm, much less that he intercepted these 1099s. If the government is now going to rely on that theory for the first time in the case, then it must proffer its intention to proceed on that basis and the jury must be instructed that it can find Mr. Goldstein criminally liable *only* if it finds that he interfered with the delivery of the payors' 1099s.[2]

The defense recognizes that the government has claimed that it could try to prove not only that Goldstein & Russell's accountants did not rely on the payors' legally mandatory 1099s but also – critically – that Mr. Goldstein knew that fact. The defense does anticipate that the tax

---

[2] In reality, there is a fundamental inconsistency in the government's theory of willfulness. The government maintains that Mr. Goldstein committed a willful tax crime – a violation of a known legal duty – when the *relevant* legal duty in these circumstances is the payors' obligation to report this income to the firm and to the IRS. By contrast, the premise of the government's theory of willfulness with respect to the Gores 1099 is that Mr. Goldstein understood the significance of 1099s and the importance of delivering them to the accountants, whereas its theory of willfulness with respect to the firm payors is that Mr. Goldstein could not rely on the 1099s. Those two propositions cannot co-exist.

3

preparer, Walter Deyhle, will testify that he ignored 1099s delivered to the law firm. But the evidence will show that was based on the *legally erroneous* view that the payors provided 1099s by mistake. And the government has never suggested that it would prove that Mr. Goldstein knew that Mr. Deyhle was disposing of 1099s.

Similarly, the government has attempted to suggest in a related context that it is significant that Goldstein & Russell's accounting was conducted on a "cash accounting basis." In other words, the firm determined its taxable income based on the money it received in a given year, not on the services it delivered in that year. But once again, at the very least, the government would be required to proffer now and prove later that Mr. Goldstein knew (1) the nature of the firm's accounting, and also (2) that on that basis the firm's accountants were ignoring 1099s. It has never suggested that it could or would prove those facts.

There is a good reason: The government could never put forward that proof. The nature of the firm's accounting makes absolutely no difference to its treatment of 1099s. Saying that the firm operated on a "cash accounting basis" is in no way a justification for ignoring 1099s. The 1099s *show* the income. That is the whole point. That is why they are legally mandatory. The government is instead intentionally confusing the fact that Goldstein & Russell was operating on a "cash accounting basis" with the fact that Mr. Deyhle made his own choice only to look at the bank account balances, and to ignore 1099s received by the firm. After all, the IRS requires payors to send 1099s to all law firms; there is no exception for firms that operate on a "cash accounting basis." The government's theory in this case is thus utterly inconsistent with the IRS's own mandatory reporting rules.

The government theoretically also could argue, proffer, and prove that Mr. Goldstein intentionally always had the firm assistants prepare invoices for firm clients, that the accountants

used the invoices in determining the firm's income, and that Mr. Goldstein knew that fact. But the government has never suggested that it could prove this theory, which is completely inconsistent with the one it has advanced. Specifically, the government has never maintained that the accountants paid the slightest attention to firm invoices in preparing the firm's taxes. To the contrary, it has maintained that the accountants looked only to the firm bank accounts. Yesterday, Ms. Runkle testified that she sent the accountants 1099s, not that she ever sent them firm invoices. Nor has the government ever suggested that Mr. Goldstein believed that the accountants were relying on invoices. Here too, if the government were to change its position now, it would have to proffer what its evidence will show and the Court would need to instruct the jury that this theory of criminality is accordingly limited.

The defense accordingly respectfully requests that the Court preclude the government from introducing evidence today that Mr. Goldstein requested that either the Robbins Geller or Napoli Bern firms direct payments to Mr. Goldstein or a third party. Alternatively, if the government is able to articulate a legally acceptable theory on which Mr. Goldstein's conduct was criminal notwithstanding the payors' obligation to send Goldstein & Russell 1099s, the Court should (a) require the government to make an evidentiary proffer, and (b) instruct the jury that the government is required to prove the proffered facts.  And if the government's proof at trial does not meet the proffer, then the defense requests that the Court strike this evidence at the appropriate time and instruct the jury to disregard it.

Dated: January 21, 2026                Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP

601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*