IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  v.<br><br>THOMAS C. GOLDSTEIN,<br><br>                Defendant. | Case No. 8:25-cr-00006-LKG |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES
JEFFREY TOOBIN AND RUDY LEE'S MOTION TO QUASH**

Through subpoenas issued on January 23, 2026, the government seeks to require non-party journalists Jeffrey Toobin and Rudy Lee (the "Journalists") to testify at the trial in this matter about their newsgathering and reporting for *The New York Times* ("The *Times*").  These subpoenas should be quashed under Rule 17(c) of the Federal Rules of Criminal Procedure because compelling the Journalists to testify would be unreasonable in these circumstances.  For one, the government's unexplained delay in issuing the subpoena, issued after more than a week of trial and seeking testimony not referenced in the opening, is itself sufficient grounds to quash the subpoena.  For another, the Journalists' testimony would have minimal value to the government's case – indeed, it is *exculpatory* as to several counts – and it comes at the cost of a serious intrusion into the newsgathering process that will chill future journalism.

**BACKGROUND**

   **A.**   **The Charges Against Defendant**

Defendant Thomas Goldstein is charged with violating federal tax laws and making false statements on loan applications.  *See* 2d Superseding Indictment, ECF No. 337-2 (as amended by the Jan. 12, 2026 Order, ECF No. 343).  According to the Court, these criminal charges are

"supported by, among other things, the Defendant's contemporaneous communications, documented loans that were not disclosed to mortgage lenders, bank and wire records, gambling-related memoranda authored by the Defendant, tax and accounting records and record reflecting the Defendant's spending habits during the relevant period." *See* Mar. 27, 2025 Mem. Op. at 5, ECF No. 108.  Defendant has pleaded not guilty on all counts.  *See* ECF No. 276.

      B.     *The New York Times Magazine* **Article**

Late last month, *The New York Times Magazine* published an article about Defendant, describing him as "a superstar in the legal world" who "was also a secret high-stakes gambler" and "whose wild 10-year run may now land him in prison." *See* Jeffrey Toobin, *He Was a Supreme Court Lawyer. Then His Double Life Caught Up With Him.*, The New York Times Magazine (Dec. 28, 2025), https://www.nytimes.com/2025/12/28/magazine/thomas-goldstein-supreme-court-gambling.html (the "Article").  Written by Jeffrey Toobin and fact-checked in part by Rudy Lee, the Article tracks Defendant's "meteoric" rise in the legal profession, where he "established himself as a successful, and prosperous, Supreme Court advocate," followed by his "precipitous" fall after the revelation of his "secret life of ultra-high-stakes gambling and 'sugar daddy' relationships with multiple young women."  The Article also reports on the charges against Defendant in this case, describing them as "a thunderclap in the legal world."

      C.     **The Government's Motion to Admit (ECF No. 327)**

On January 6, 2026, the government moved to admit into evidence "a redacted copy of the *Times* article containing certain of Goldstein's statements as published in the article." *See* Gov't's Mot. in Limine at 1, ECF No. 327.  The government argued that Goldstein's statements in the Article about certain poker matches are relevant to the tax counts and that his statements about certain mortgage applications are relevant to the false statements counts. *See id.* at 3-4.

Defendant opposed the motion, arguing that the Article is inadmissible hearsay and that "many of the statements in the article" that the government sought to admit "are at best irrelevant and at worst prejudicial." *See* Def.'s Resp. to Gov't's Mot. in Limine, ECF No. 335.[1] Defendant thus argued that, because of these potential hearsay issues and the Confrontation Clause, "[i]f the government wishes to present Mr. Toobin's statements as evidence, it must call Mr. Toobin to the stand" so that Defendant could cross-examine him. *Id.* at 13.

The Court heard argument on the government's motion to admit the Article on January 9, 2026, and denied that motion from the bench. *See* Jan. 9, 2026 Hr'g Tr. at 43:24-55:21. The Court observed that there was "a fair question about whether the reporter should simply be called, and the government both have the obligation of getting the evidence in that way and also giving Mr. Goldstein the chance to cross-examine that witness." *Id.* at 46:18-23.

### D.     The Trial Subpoenas

On the evening of Friday, January 23, 2026 – after the conclusion of the second week of trial in this matter – government counsel notified counsel for *The Times* that the government had authorized issuing subpoenas for the Journalists' trial testimony. The Journalists subsequently authorized *The Times* to accept service of the subpoenas on the condition that they be permitted to file a motion to quash the subpoenas on or before January 27, 2026. This motion followed.

## ARGUMENT

Rule 17 provides that "[o]n motion made promptly, the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). These

---

[1] Indeed, the government's redacted version of the Article includes, *inter alia*, photographs of Defendant, ECF No. 327-2 at 4, 11, 15, Defendant's descriptions of unnamed other poker players' demeanor, *id.* at 10 ("They're not chatting."), and a parenthetical aside about a celebrity who stopped by one of Defendant's poker games in Beverly Hills, *id.* at 14 ("Al Pacino came by to watch, but he didn't play.") It is not clear how any of that material could be relevant to the government's case or whether the government seeks to question the Journalists on these points.

subpoenas are unreasonable for multiple reasons, and the Court should quash them accordingly. Alternatively, the Court should at a minimum narrowly limit any questioning of the Journalists to ensure that the newsgathering and reporting process remains as undisturbed as possible.

I. **THE COURT SHOULD GRANT THE MOTION TO QUASH BECAUSE COMPELLING THE JOURNALISTS TO TESTIFY WOULD BE UNREASONABLE IN THESE CIRCUMSTANCES**

Forcing the Journalists to comply with these subpoenas would be unreasonable both because the subpoenas are untimely and because the minimal value of the journalists' testimony to the government's case cannot justify such a serious intrusion into the newsgathering and reporting process.

A. **The Subpoenas Are Untimely.**

The Court, in deciding whether to grant this motion to quash, should consider as a threshold matter the untimeliness of the subpoenas.  By its own account, the government became aware of the Article "[w]hen it was published" on December 28, 2025, and it understood on January 1, 2026, that Defendant objected to the Article being offered into evidence at trial.  *See* ECF No. 327 at 2.  The government then waited five days, until January 6, to file its motion to admit the Article.  *See generally id.*  The Court promptly heard argument on that motion and denied it just three days later, on January 9.  *See* ECF No. 338.  Yet the government then took ***14 more days***, until the evening of Friday, January 23, to authorize issuance of the subpoenas and ask *The Times* to accept service.  As a result of this delay, the Journalists were obligated to brief this motion to quash in an expedited manner and may be forced to make future decisions in this litigation – such as whether to appeal an unfavorable ruling – on an even more emergency basis. The timing of the subpoenas alone has thus imposed an undue burden on the Journalists.

Federal courts around the country have held that compliance with a subpoena may be unreasonable or oppressive based on the untimeliness of that subpoena.  In *United States v.*

*Carvin*, for example, the Fifth Circuit held that a party "has no ground to complain that the trial court quashed his subpoena" where that party "waited until the morning of the trial" to issue the subpoena.  555 F.2d 1303, 1305 (5th Cir. 1977); *see also In re Grand Jury Matters*, 751 F.2d 13, 19 (1st Cir. 1984) (noting that it is within the district court's discretion to quash a subpoena as unreasonable or oppressive based on a finding that "the *timing* of the subpoenas [was] inappropriate") (emphasis in original).  Likewise, in *United States v. Jasper*, defendant served subpoenas on two non-parties on "the first day of jury selection," and the government moved to quash the subpoenas on the grounds that, *inter alia*, "they were unreasonable and oppressive." 2003 WL 1107526, at *1 (S.D.N.Y. Mar. 13, 2003).  The court granted the government's motion to quash, explaining that it "agrees with the government that [compliance] would be unreasonable and oppressive at this late date."  *Id.* at *3; *see also United States v. Henry*, 482 F.3d 27, 29 (1st Cir. 2007) (finding no error where the district court quashed a subpoena issued by defendant "one business day" before trial began).

The Journalists recognize that the government could not have issued the subpoenas *immediately* after the Court denied the motion to admit the Article, given that the government was obligated to satisfy Justice Department guidelines on issuing subpoenas to journalists.  But the government has not explained why *two weeks* passed between the Court's ruling and the issuance of the subpoenas.  Unless the government can provide the Court with a reasonable justification for this significant delay, the Court should quash the subpoenas as untimely.

> **B.** **The Journalists' Testimony Would Offer Little If Any Benefit To The Government's Case But Impose A High Cost On The Newsgathering Process.**

Even if the Court were to excuse the after-the-eleventh-hour issuance of these subpoenas, the Court should still quash them under Rule 17 as unreasonable in these circumstances.  *See*

*United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (in assessing whether compliance with a subpoena would be unreasonable under Rule 17, "what is reasonable depends on the context").

In determining whether to quash a subpoena under Rule 17, a district court may properly "balance" the subpoena recipient's "asserted interests against the United States' interest in enforcing the subpoena." *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 585 (4th Cir. 2007). Given the Fourth Circuit's ruling in *United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013), the Journalists are not claiming the protection of a formal First Amendment privilege. But the Fourth Circuit has explained that Rule 17 "enables district courts to quash a subpoena that intrudes gravely on significant interests *outside* of the scope of a recognized privilege, if compliance is likely to entail consequences more serious than even severe inconveniences occasioned by irrelevant or overbroad requests for records." *In re Grand Jury,* 478 F.3d at 585 (internal marks omitted).

Here, compelling the Journalists to testify about their newsgathering and reporting would intrude gravely on their significant interests in journalistic independence. As Judge Wilkinson has observed, "[r]eporters facing the prospect of becoming prosecution witnesses if they report a [defendant's] statement may think twice about conducting exclusive interviews or reporting statements of denial that may be open to question," and as a result "[t]he values served by an independent press will be diminished if reporters covering a case are routinely dragged into its midst." *In re Shain*, 978 F.2d 850, 854 (4th Cir. 1992) (Wilkinson, J., concurring in the judgment). As the Second Circuit has likewise noted, subpoenas as a practical matter "burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties," and as a matter of principle subpoenas "risk the symbolic harm of making

6

journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1999).

The government's minimal interest in the Journalists' testimony cannot justify this grave intrusion into journalistic processes.  For one, the government cannot credibly claim that the Journalists' testimony is necessary to the prosecution given that the government asserts that it *already* "has collected and will introduce at trial contemporaneous communications, bank records, and other documents and testimony proving Goldstein's guilt beyond a reasonable doubt." *See* ECF No. 327 at 7.  For another, the Journalists' testimony would appear to be irrelevant, or potentially *exculpatory* of Defendant, on multiple counts.  As to the tax fraud counts, the Article does not even purport to provide a complete – let alone precise – accounting of Defendant's poker winnings and losses for any given year.  As to the mortgage fraud counts, those charges arise under 18 U.S.C. § 1014, and "the essential elements of [that] crime . . . clearly requir[e] the jury to convict [defendant] only if he acted with the specific intent to influence *the bank's* action on his loan." *United States v. Whaley*, 786 F.2d 1229, 1231 (4th Cir. 1986) (emphasis added).  Yet the government has sought to admit into evidence Defendant's statement in the Article that he omitted information on the mortgage applications "because he wanted to keep that debt secret from [his wife], as he had kept her in the dark about most of his poker activity." *See* ECF No. 372-2 (redacted Article) at 16.  The Journalists' testimony on that point would therefore amount to evidence that Goldstein potentially *lacked* the specific intent necessary to convict him under 18 U.S.C. § 1014.

The minimal – perhaps even negative – value of the Journalists' testimony to the government's case thus cannot justify the government's effort to "intrude[] gravely on significant

7

interests" in newsgathering and reporting. *In re Grand Jury,* 478 F.3d at 585. The Court should therefore grant the Journalists' motion and quash the subpoenas in full.

## II. AT A MINIMUM, THE COURT SHOULD STRICTLY LIMIT ANY QUESTIONING OF THE JOURNALISTS.

Even if the Court declines to quash these subpoenas outright, the Court should still exercise its authority to ensure that any examination and cross-examination of the Journalists is as narrow as possible to avoid an even greater intrusion into the newsgathering and reporting process, and evaluate whether testimony from both of the Journalists is necessary. In *Hobley v. Burge*, for example, the district court declined to quash a subpoena issued to a journalist in a civil lawsuit, but it nevertheless modified that subpoena to limit the scope of information that the journalist would be compelled to disclose because the court found that the limited subpoena "meets [the subpoena-issuing party's] needs without the unwarranted intrusion into [the journalist's] work." 223 F.R.D. 499, 505 (N.D. Ill. 2004). Here, the Court should likewise ensure that if either of the Journalists is compelled to testify at trial, questioning by either party should be strictly limited to the accuracy and authenticity of the statements made by Defendant that were included in the Article.

With such limits in place, the parties could ask questions only to confirm that the copy of the Article presented into evidence is an authentic version of the story as published and that the witness believed at the time of writing and believes today that the Article accurately captures what he learned in his interviews. Such limits would thus prevent either party from attempting to elicit testimony about unpublished newsgathering materials – *i.e.*, information that the Journalists chose *not* to include in the Article – or about communications with sources other than Defendant with whom the Journalists may have spoken in the course of their reporting.

**CONCLUSION**

For each and all of the foregoing reasons, the Court should grant the Motion to Quash or, at a minimum, strictly limit the scope of any questioning of the Journalists at trial.

Dated: January 27, 2026    Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (D. Md. Bar No. 18305)
Maxwell S. Mishkin (D. Md. Bar No. 20650)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Jeffrey Toobin and Rudy Lee*