**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S MOTION TO LIMIT PRESENTATION OF
<u>CUMULATIVE EVIDENCE</u>**

On Tuesday, January 27, after several defense inquiries, the government disclosed that it intends to present numerous exhibits documenting personal spending by defendant Thomas Goldstein.  The government's exhibits go well beyond the documentation necessary to establish the dates and amounts of the purchased items.  This evidence is cumulative, unduly prejudicial, and a waste of time.  The defense requests that the Court limit the government's presentation of "lifestyle" evidence to one document showing the total cost of each of the items referenced in the government's opening statement—the car, the restaurant bill, and one rental property.

That relief is appropriate under Federal Rule of Evidence 403.  The relevance of this evidence is marginal.  The government has conceded that evidence of Mr. Goldstein's personal spending is relevant only to Mr. Goldstein's state of mind regarding the willful failure to pay misdemeanors.  The few illustrative examples cited in the government's opening suffice to make the point and can be admitted easily through a stipulation.  Indeed, the government has already presented additional evidence on this topic in the form of testimony that Mr. Goldstein continued

to play poker while he owed money to the government.  Yet the government's exhibit list includes hundreds of pages of evidence on this topic.[1]

Presentation of this additional lifestyle evidence to establish state of mind on the misdemeanor offenses in an indictment charging multiple felonies is a paradigmatic example of the tail wagging the dog.  That is particularly true in light of the fact that these charges are unprecedented and the evidence admitted in the government's case-in-chief has been very weak.  As the defense has previously noted, while criminal charges based on failure to file a tax return are not uncommon, the defense is aware of no case in which the government has brought criminal charges against a taxpayer who filed timely returns and eventually paid off their tax bill.  *See* Dkt. No. 126.  The Court denied the defense motion to dismiss these counts, reasoning that willfulness is a question for the jury at trial.

But the government's trial presentation has only confirmed its inability to prove willfulness.  The government has presented no evidence that Mr. Goldstein had any intention other than to pay his taxes with penalties and interest.  Several government witnesses have now testified that Mr. Goldstein was never advised that paying his taxes late with penalties and interest was a crime.  Emails between Mr. Goldstein's law firm and the accounting firm GRF admitted in the government's case confirm that Mr. Goldstein was never provided with any such

---

[1]     *See, e.g.*, GX-28, GX-589, GX-590, GX-596, GX-653, GX-654, GX-765, GX-767, GX-768, GX-771, GX-772, GX-773, GX-774, GX-775, GX-776, GX-777, GX-778, GX-779, GX-781, GX-782, GX-803, GX-848, GX-851, GX-853, GX-854, GX-857, GX-858, GX-859, GX-860, GX-861, GX-862, GX-863, GX-864, GX-865, GX-866, GX-867, GX-868, GX-869, GX-870, GX-872, GX-873, GX-874, GX-875, GX-876, GX-877, GX-927, GX-930, GX-1033, GX-1034, GX-1044, GX-1045, GX-1046, GX-1133, GX-1142, GX-1150, GX-1151, GX-1152, GX-1153, GX-1154, GX-1155.  The defense stipulated to the admission of some of these records pursuant to business record certifications conditioned on Rule 403 objections.  In light of the government's intention to present excessive evidence on this topic, the defense raises that objection now.

advice.  Indeed, Mr. Goldstein's former accountant Bill Caldwell testified that he has never given this advice to *any* client.  The defense expects that the government will present no witness or document suggesting that Mr. Goldstein was so advised.

The weakness of the government's evidence on these charges magnifies the risk of introducing the kind of prejudicial evidence that the government seeks to present as relevant to a theory of willfulness that the government will never be able to prove.  It raises the possibility that those offenses will be dismissed on a motion for judgment of acquittal or that the government will voluntarily dismiss them before jury deliberations.  At that point, admission of the lifestyle evidence very likely would entitle the defense to a mistrial, at the least.

Weighed against that marginal relevance, the lifestyle evidence is obviously prejudicial in the sense that it can serve to "unduly excite the emotions of the jury."  *Queen*, 132 F.3d at 994; *see United States v. Briley*, 770 F.3d 267, 277 (4th Cir. 2014) ("[T]he need to push the defendant's personal habits and inclinations forward raises Rule 403 concerns.").  As the Fourth Circuit has cautioned, "[t]he trouble with . . . character wounds is that they bleed, in the sense that 'bad people' may be presumed by the factfinder to commit no end of criminal acts."  *Id.* The Court ruled pretrial that *some* evidence on this topic is admissible.  But the evidence that the government intends to present is grossly cumulative and particularly prejudicial.

Permitting the government to present further lifestyle evidence would also offend Rule 403 because the government is cherry-picking examples of Mr. Goldstein's spending calculated to give the jury a one-sided view about Mr. Goldstein's character.  The government is not painting a representative picture to the jury of Mr. Goldstein's spending—including his substantial spending on charitable causes and organizations providing public services, like SCOTUSblog—and instead is focusing on spending evidence that would mislead the jury into

concluding that Mr. Goldstein *only* spent funds on "extravagant" purchases.  This one-sided

evidence runs the risk of allowing the jury to make improper inferences about Mr. Goldstein's

character.  For example, a juror who only hears evidence about Mr. Goldstein's spending on

"extravagant" purchases (as opposed to his substantial charitable contributions) may draw

inaccurate and prejudicial inferences about Mr. Goldstein's character—precisely the risk that the

Fourth Circuit identified in *Briley*.

*     *     *     *     *

The marginal relevance of further evidence concerning personal expenditures by Mr.

Goldstein is substantially outweighed by unfair prejudice, wasting time, and presentation of

cumulative evidence in violation of Rule 403.  The defense recognizes that the government

mentioned some examples of lifestyle evidence in its opening statement.  Presentation of those

examples (in addition to the testimony already admitted concerning Mr. Goldstein's gambling in

2022) through a stipulation with a jury instruction is sufficient.

Dated: January 27, 2026                    Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com
*Attorneys for Defendant Thomas Goldstein*

4