IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S MOTION TO PRECLUDE THE GOVERNMENT FROM SEEKING CONVICTION ON THE BASIS OF UNCHARGED ACTS OF AIDING AND ASSISTING THE PREPARATION OF A FALSE RETURN**

Last week, this Court ruled that "the government cannot rely upon affirmative acts that are not set forth in the indictment for purposes of pursuing [its] *tax evasion* count." 1/28/26 Tr. 20:1-4 (emphasis added); *see* ECF No. 381. That ruling is grounded in black letter constitutional law that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994), *overruled on other grounds by United States v. Banks*, 29 F.4th 168 (4th Cir. 2022) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)).

Now essentially the same issue has arisen in the context of the indictment's allegations that Mr. Goldstein aided and assisted in the preparation of a false tax return (Counts 2-9). On those counts, the government's position is not coherent; it has made utterly irreconcilable arguments that seem only to correspond to whether its position at the moment would benefit the government. Or maybe the distinction is which prosecutor happens to be arguing at the time. In either event, the government has said opposite things. On Wednesday of last week, during the

1

government's examination of Mr. Deyhle, Mr. Beaty appeared to argue in a sidebar that *any conduct*—including conduct not specified in the indictment, like the suggestion that Mr. Goldstein failed to report cryptocurrency income—can form the basis of a conviction for aiding and assisting in the preparation of a false tax return because those counts allege generally that Mr. Goldstien's "total income line" was falsely reported. *See* 2/4/26 Tr. 16:23-24:1. But that position lasted less than a day. On Thursday, during the government's cross-examination of the defense's expert Mr. Marks, Mr. Adenrele reversed course and asked the witness to confirm what he described as the government's position that erroneous transactions not specifically identified in the indictment have "nothing to do with the charge[s] in this case." 2/5/25 Tr. 259:3-13.

The government was wrong on Wednesday and right on Thursday. To obtain a conviction for assisting in the filing of a false tax return under 26 U.S.C. § 7206(2), the government must prove *both* that Mr. Goldstein "aided, assisted, or otherwise caused the preparation and presentation of a return" and that "the return was fraudulent or false as to a material matter." *United States v. Kimble*, 855 F.3d 604, 614 (4th Cir. 2017) (citation and internal quotation marks omitted). As to the latter element, the indictment alleges that Mr. Goldstein's' returns were materially false because (among other things) they misstated his total income. But as to the former element, the indictment alleges more than a dozen discrete acts that, in the government's view, aided or assisted Mr. Goldstein's accountants in preparing false returns. The government cannot now seek to convict Mr. Goldstein on the basis of some *other* act of aiding-or-assisting that the grand jury never indicted.

The Court will also recognize the close relationship between this issue and the government's continuing complete refusal to identify which of the alleged affirmative acts that

were asserted in the since-dismissed tax evasion charges remain viable under the false statement counts.  The Court will recall that the government moved to dismiss those counts on the eve of trial, without explaining the implications for the false statement charges.  The defense immediately stressed the importance of receiving an explanation of which allegations remain in the case, and which do not.  The government refused to respond beyond making the (incorrect) sweeping claim that nothing had changed.  That was obviously false, because some allegations that were set forth in the tax evasion charges (such as the use of the IOLTA account as it affected IRS collections for tax years other than 2016) have literally nothing to do with filing a false return.  The Court itself specifically highlighted to the government that the Court was uncertain about what remained in the case.  But the government still refuses to clarify.  And as a consequence, the government has put the defense in the impermissible and untenable position of starting its case without even knowing what all the charges supposedly are.

      To be clear, the defense is not asking this Court to strike any evidence, nor to revisit any of its prior evidentiary rulings.  The defense understands, too, that some uncharged conduct may be relevant to the question of willfulness, and the defense is prepared to continue addressing those issues as they arise in the context of particular evidence.  The defense is simply requesting a ruling that the government may not seek to convict Mr. Goldstein of aiding and assisting in the preparation of a false return on the basis of alleged acts of aiding and assisting that are not charged in the indictment.  That ruling will not only help the parties resolve future evidentiary objections, but it will also clarify important threshold issues that will be pertinent both to motions practice at the close of the government's case-in-chief and to jury instructions.

      There is good cause for the defense to file this motion at this time. As noted, the defense (like the Court) has consistently sought to learn what allegations are encompassed within the

false statement charges, to no avail. Until recently, the defense was unaware that the government may be planning to seek conviction on Counts 2 through 9 on the basis of conduct not charged in the indictment. The defense immediately notified the Court and the government that it intended to make a written submission on that issue. The defense also respectfully submits that resolving this motion now may help streamline the parties' presentation of evidence and argument going forward.

## BACKGROUND

The indictment charges Mr. Goldstein with eight counts of aiding and assisting the preparation of false tax returns in tax years 2017, 2018, 2019, 2020, and 2021. *See* ECF No. 337-2, ¶¶ 109, 117. The substantial majority of the 128-paragraph, 56-page speaking indictment falls under the heading "Particulars of GOLDSTEIN's Tax Crimes," *id.* at 12, which is broken out into sections titled "Tax Year 2016," "Tax Year 2017," "Tax Year 2018," "Tax Year 2019," "Tax Year 2020," and "Tax Year 2021," *see id.* at 12, 18, 22, 26, 28, 30. And each of *those* sections contains a specific section dedicated to Mr. Goldstein's "False Tax Reporting for the [Relevant] Tax Year." *See id.* at 16, 21, 24, 28, 29, 32.

The paragraph(s) that fall under the headers "False Tax Reporting for the [Relevant] Tax Year" identify the precise conduct that allegedly aided or assisted the preparation of each allegedly false tax return. Across five years, the indictment alleges that the following thirteen acts aided or assisted in the preparation of false tax returns:

- **(1)** failing to report gross gambling winnings in years where Mr. Goldstein had no net gambling income (Counts 2, 6, 8, and 9);
- **(2)** directing the payment of legal fees to personal accounts or third parties, namely,
    - **(a)** by diverting a $250,000 legal fee from Robbins Geller to Mr. Goldstein's personal account (Count 3), **(b)** using $125,000 in legal fees due from Napoli

4

Shkolnik to satisfy a personal debt of $125,000 (Count 5), and **(c)** redirecting a $500,000 legal fee payment from Tobey Maguire to Bob Safai (Count 9);

**(3)** using Goldstein & Russell ("G&R") funds to pay personal expenses and/or debts, namely, **(a)** by using $175,000 of G&R funds to pay a personal debt to Napoli Shkolnik (Count 3), and **(b)** using $170,000 of G&R funds to pay a personal debt to Chuck Pacheco (Count 7);

**(4)** omitting interest income (Counts 2 and 4);

**(5)** omitting $215,971 "in pension-related income" in 2017 (Count 2);

**(6)** causing salary and/or benefits to be paid to employees who allegedly did little or no work (Counts 5, 7, and 8);

**(7)** failing to report three payments from Paul Phua as income, namely, **(a)** a $1,000,000 transfer into Mr. Goldstein's Montenegrin bank account in September 2018 (Count 5), **(b)** $968,000 in cash given to Mr. Goldstein in October 2018 (Counts 4 and 5), and **(c)** a $235,000 transfer into G&R's Montenegrin bank account in February 2019 (Count 7); and

**(8)** answering "no" to the question of whether Mr. Goldstein had cryptocurrency transactions in 2020 and 2021 (Counts 8 and 9).

| Count | Return (Year) | Paragraph | Introductory Language | Allegation(s) |
|---|---|---|---|---|
| 2 | Goldstein Form 1040 (2017) | ¶ 52 | "Meanwhile, **GOLDSTEIN**'s 2017 Form 1040 falsely omitted …" | 1) Failed to report $3,250,000 in gambling income by telling accountants Mr. Goldstein had "no gambling winnings" (¶ 52)<br>2) Omitted $215,971 in "pension-related income" (¶ 52) |

| Count | Return (Year) | Paragraph | Introductory Language | Allegation(s) |
|---|---|---|---|---|
| | | | | 3) Omitted $263 in interest income (¶ 52) |
| 3 | G&R Form 1120S (2017) | ¶ 52 | "As a result of the conduct described in paragraphs 45 through 51, **GOLDSTEIN** caused the following false tax reporting on the Form 1120S for G&R for the 2017 tax year:" | 1) Diverted $250,000 legal fee from Robbins Geller to gambling account (¶ 52)<br>2) Used $175,000 of G&R funds to pay debt to Napoli Shkolnik (¶ 52) |
| 4 | Goldstein Form 1040 (2018) | ¶ 62 | "As a result of the conduct described in paragraphs 56 through 61, **GOLDSTEIN** also caused the following false tax reporting on his 2018 Form 1040 for the 2018 tax year:" | 1) Omitted $968,000 in alleged cash income (gambling theory) (¶ 62)<br>2) Omitted interest income (¶ 62) |
| 5 | G&R Form 1120S (2018) | ¶ 61 | "As a result of the conduct described in paragraphs 56 through 60, **GOLDSTEIN** caused the following false tax reporting on the 2018 G&R Form 1120S for the 2018 tax year:" | 1) Used $125,000 legal fee due from Napoli Shkolnik to satisfy debt of $125,000 (¶ 61)<br>2) Omitted $1,000,000 in alleged income transferred into Montenegrin account by Phua (¶ 61)<br>3) Omitted $968,000 in alleged cash income (legal fee theory) (¶ 61)<br>4) Deducted approx. $40,000 in salaries and healthcare premiums paid to four employees (¶ 61) |
| 6 | Goldstein Form 1040 (2019) | ¶ 72 | "As a result of the conduct described in paragraphs 67 through 71, **GOLDSTEIN** caused the following | 1) Failed to report $359,000 in gambling income (¶ 72) |

6

| Count | Return (Year) | Paragraph | Introductory Language | Allegation(s) |
|---|---|---|---|---|
| | | | false tax reporting for the 2019 tax year:" | |
| 7 | G&R Form 1120S (2019) | ¶ 72 | "As a result of the conduct described in paragraphs 67 through 71, **GOLDSTEIN** caused the following false tax reporting for the 2019 tax year:" | 1) Used $170,000 G&R funds to pay debt to Chuck Pacheco (¶ 72)<br>2) Deducted $5,997 in healthcare premiums (¶ 72)<br>3) Omitted $235,000 in alleged legal fee income from Phua (¶ 72) |
| 8 | Goldstein Form 1040 (2020) | ¶ 77 | "As a result of the conduct described in paragraphs 74 through 76, **GOLDSTEIN** caused his 2020 Form 1040 to falsely omit …" | 1) Failed to report $93,180 in gambling income (¶ 77)<br>2) Omitted $1,800 as income paid in healthcare premiums (¶ 77)<br>3) Failed to check cryptocurrency box (¶ 77) |
| 9 | Goldstein Form 1040 (2021) | ¶¶ 88-89 | "As a result of the conduct described in paragraphs 81 through 87, **GOLDSTEIN** caused …" | 1) Redirected $500,000 legal fee payment from Maguire to Safai (¶ 88)<br>2) Failed to check cryptocurrency box (¶ 89)<br>3) Failed to report $267,000 in gambling income (¶ 89) |

On Wednesday, the government appeared to argue that, despite the foregoing detailed and specifically alleged acts of aiding and assisting, the government may seek to convict Mr. Goldstein on the basis of uncharged conduct. For example, during the government's direct examination of Mr. Deyhle, the government asked the witness about whether Mr. Goldstein had failed to disclose income derived from cryptocurrency transactions. *See* 2/4/26 Tr. 15:25-16:2, 17:14-18:7. When the defense objected on the ground that the indictment nowhere charges Mr.

Goldstein with assisting the preparation of a false return by failing to report cryptocurrency income, the government argued that the evidence was relevant because the false-return counts allege that Mr. Goldstein incorrectly reported his "total income" in the charged tax years.[1] 2/4/26 Tr. 16:23-17:1.  The government seemingly abandoned that position the following day, however, when it argued that transactions not alleged in the indictment "ha[ve] nothing to do with the charge[s] in this case."  2/5/26 Tr. 259:3-13.

## ARGUMENT

Because "only the grand jury may broaden or alter the charges in the indictment," *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999), *overruled on other grounds by United States v. Banks*, 29 F.4th 168 (4th Cir. 2022), the government violates a defendant's Fifth Amendment if it seeks to constructively amend an indictment by pursuing conviction upon "a factual basis which effectively modifie[s] one of the essential elements of the crime charged," *United States v. Escruceria-Delgado*, 887 F.2d 1081 (4th Cir. 1989) (unpub.).

The essential elements of an offense under 26 U.S.C. § 7206(2) are "(1) [that] the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) [that] the act of the defendant was willful."  *Kimble*, 855 F.3d at 614 (citation omitted).  To prove the first element— i.e., that the defendant aided, assisted, or otherwise caused the preparation of a return—the government must establish that the defendant "knowingly participate[d] in providing information

---

[1] The government deployed this strategy again later in Mr. Deyhle's testimony—this time by asking Mr. Deyhle a series of questions about whether Mr. Goldstein had *in 2023* asked to amend his 2021, 2019, 2017, or 2016 tax returns.  *See* 2/4/26 Tr. 27:12-28:14.  (This line of questioning echoed a similar set of questions posed to Ms. Gou the day before.  *See* 2/2/26 Tr. 241:14-242:9.)  As with the government's late-breaking cryptocurrency-income allegation, the indictment nowhere alleges that Mr. Goldstein assisted in the preparation of a false return by failing to amend already-filed returns from previous years.

8

that results in a materially fraudulent tax return." *United States v. Nealy*, 729 F.2d 961, 963 (4th Cir. 1984) (citation and internal quotation marks omitted); *see also* ECF No. 312, Instruction No. 52 (*jointly* proposed jury instructions).

As noted above, the indictment in this case alleges that Mr. Goldstein did *thirteen different things* that aided, assisted, or caused his accountants to prepare false returns. *See* pp. 3-6, *supra*. Some of those acts are alleged to have occurred in multiple years—for example, failing to separately report gross gambling winnings and losses in years in which Mr. Goldstein had no net gambling income (Counts 2, 6, 8, and 9). And some of those acts allegedly occurred only once—for example, specific instances of allowing specific legal fees to be paid in a manner other than wiring the funds into G&Rs accounts (Counts 3, 5, 9), or specific instances of failing to report specific funds received from Paul Phua as income (Counts 4, 5, and 7). But *all* of those acts are laid out in specific detail across 63 paragraphs of allegations. *See* ECF No. 337-2, ¶¶ 29-91 (allegations under the heading "Particulars of GOLDSTEIN's Tax Crimes").

Having chosen to ask the grand jury to indict Mr. Goldstein on the basis of these particular acts of aiding-or-assisting, the government is constitutionally prohibited from seeking conviction on any other grounds. The Supreme Court established that rule more than 65 years ago in *Stirone v. United States*, 361 U.S. 212 (1960), in which it reversed the defendant's conviction under the Hobbs Act because the trial court had "instructed the jury that it could convict the defendant if it found that he had obstructed an interstate shipment of sand *or* steel," even though the indictment charged the defendant only with "obstructing the interstate movement of sand." *United States v. Hoover*, 467 F.3d 496, 502 n.5 (5th Cir. 2006) (summarizing *Stirone*) (emphasis added). The Court explained that "when only one particular kind of commerce is charged to have been burdened," "a conviction must rest on that charge and

not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Stirone*, 361 U.S. at 218; *see also Randall*, 171 F.3d at 208 (discussing *Stirone*).

Following *Stirone*, courts in the Fourth Circuit and others have consistently held that "when the grand jury has charged a particular factual basis for an essential element of the crime, a conviction must rest on that charged basis," *even if* the indictment could have been written "in more general terms to allow conviction to rest on another factual basis." *United States v. Mallory*, 343 F. Supp. 3d 570, 579 n.10 (E.D. Va. 2018), *aff'd,* 40 F.4th 166 (4th Cir. 2022). In *United States v. Adams*, 778 F.2d 1117 (5th Cir. 1985), for example, the Fifth Circuit held that a constructive amendment occurred where the indictment had charged the defendant with providing a false driver's license when purchasing a handgun, because the indictment specified that the false identification "was likely to deceive the firearms dealer with respect to" the defendant's name, but the court had permitted the jury to convict on the basis of "alleged misrepresentations as to [the defendant's] residence." *Id.* at 1118-19, 1124-25; *see Randall*, 171 F.3d at 209 (citing *Adams* with approval); *see also, e.g.*, *Hoover*, 467 F.3d at 500-02; *United States v. Crocker*, 568 F.2d 1049, 1060 (3d Cir. 1977), *abrogated on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995). Similarly, in *United States v. Ameyapoh*, 293 F. Supp. 3d 568 (E.D. Va. 2018), the U.S. District Court for the Eastern District of Virginia (Ellis, J.) granted a motion for judgment of acquittal where the jury had convicted the defendant under 18 U.S.C. § 111(a) of "forcibly resisting CBP officers," because the indictment had charged him only with "forcibly resisting ICE officers."[2] 293 F. Supp. 3d at 575. The court explained that "it does not

---

[2] The court was aware that the jury had convicted the defendant of forcibly resisting CBP officers (but not ICE officers) because the court had employed a special verdict form. *See Ameyapoh*, 293 F. Supp. 3d at 571. Given that the government in this case has now presented to

10

matter that the government could have charged [the] defendant with a § 111(a) violation by alleging generally in the indictment that he resisted federal officers" because "the indictment specified that defendant was being charged with resistance against ICE officers" only. *Id.* at 573.

The government's suggestion last week that Mr. Goldstein has been indicted for doing anything and everything that could have possibly caused his "total income line" to be false, 2/4/26 Tr. 16:23-17:1, grievously muddles the elements of a Section 7206(2) offense.[3] It is true that, to prove the *second* element of that offense, the government must establish that the relevant "return was fraudulent or false as to a material matter." *Kimble*, 855 F.3d at 614 (citation and internal quotation marks omitted). For instance, in this case, the indictment alleges that the "total income line" on Mr. Goldstein's returns was materially false. But the government must *also* prove the first element of a Section 7206(2) offense—i.e., that Mr. Goldstein "aided, assisted, or otherwise caused the preparation and presentation of [those] return[s]." *Id.* (citation and internal quotation marks omitted). That is the element as to which the indictment has alleged thirteen specific acts of aiding, assisting, or causing. And because those acts are specifically alleged, the government cannot now seek conviction upon the basis of any others—for example, on the claims that Mr. Goldstein failed to disclose cryptocurrency income to his accountants and failed to request that they amend his prior years' returns.[4]

---

the jury *both* evidence of uncharged affirmative acts of tax evasion, *see* ECF No. 366, and evidence of uncharged acts of a aiding-and-assisting, the defense submits that the need for a special verdict form is especially acute here. *See* ECF Nos. 315, 342-2.

[3] The confusion may stem from the fact that the government chose *not* to charge Mr. Goldstein under 26 U.S.C. § 7206(1), which generally applies to *taxpayers*, and instead to charge Mr. Goldstein under 26 U.S.C. § 7206(2), which generally applies to *tax preparers*. *See Kimble*, 855 F.3d at 614.

[4] Had the defense known the government planned to do this, it may have requested a contemporaneous instruction explaining to the jury that "there is no clear statutory, regulatory or judicial authority for the proposition that the taxpayer is under a legal obligation to file an amended return upon the discovery of a mistake or error on a prior year's return." 15 Mertens

At times—that is, when it has been to the government's advantage to downplay GRF's errors—the government has eagerly pointed out to witnesses (and, by extension, the jury) that certain mistakes are uncharged. *See, e.g.* 2/4/26 Tr. 166:6-18 ("Q: … [W]hat, if anything, is Mr. Goldstein charged with in this case with respect to Montenegro or about the disclosure about Montenegro? A. Nothing."); 2/5/26 Tr. 259:3-6 ("Q. [Y]ou don't know whether that's charged in this case one way or another[,] right? A. I do not believe it was charged."). In fact, the government last week went so far as to argue that uncharged transactions "ha[ve] nothing to do with the charge in this case." 2/5/26 Tr. 259:7-13.

That is entirely correct. Not only would it violate Mr. Goldstein's grand jury right to allow the government to pursue conviction on the basis of uncharged acts of assisting or aiding, *see* pp. 7-10, *supra*, but it would raise serious due process concerns, as well. The government's passing assertion that it can seek to convict upon the basis of *any conduct* that might have caused Mr. Goldstein's "total income line" to be false, 2/4/26 Tr. 16:23-17:1, would mean that literally every item of income, expense, deduction, or credit could give rise to its own felony.[5] Under that theory, the government could (as it already has) spring entirely new theories of liability on the defense mid-trial without providing the defense *any* notice under Rule 404(b) or otherwise. And because (unlike the crime of tax evasion) a false-return offense lacks a "substantial deficiency" requirement, there would be no check on the government's ability to deploy this theory to seek conviction on the basis of incredibly trivial errors.

---

Law of Fed. Income Tax'n § 56:75 (2025). The defense anticipates that it will request such an instruction in the jury's final charge.

[5] Notably, the logic of the government's argument would go beyond just income; it would extend, too, to anything Mr. Goldstein allegedly did to cause his accountants to incorrectly report, *e.g.*, his "S Corp Income," "Other Income," "Amount Owed," "Gross Receipts and Sales," "Other Deductions," or "Total Deductions." ECF No. 337-2, ¶ 117.

## **CONCLUSION**

For the reasons set forth herein, the Court should preclude the government from seeking to convict Mr. Goldstein on the basis of acts of aiding or assisting in the preparation of a false tax return that are not alleged in the indictment.

Dated: February 7, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*