IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CRIMINAL NO. LKG-25-0006 |
| THOMAS GOLDSTEIN, | |
| Defendant. | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL (DKT. 408)**

The government respectfully requests that the Court deny defendant Thomas Goldstein's motion for judgment of acquittal or, in the alternative, request for jury instructions. Dkt. 408. The government introduced more than sufficient evidence for the jury to convict Goldstein on counts 1-16 of the indictment.

The government reserves its right to make additional factual and legal arguments to the Court before it rules on Goldstein's motion.

**LEGAL STANDARDS**

Rule 29 allows a criminal defendant, "[a]fter the government closes its evidence," to ask for "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). However, a defendant making such an argument "bears a heavy burden." *United States v. Dennis*, 19 F.4th 656, 665 (4th Cir. 2021) (quoting *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011)). The question for the Court is whether "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mazumder*, No. 3:22-CR-165-MOC, 2024 WL 253655, at *1 (W.D.N.C. Jan. 23, 2024) (emphasis in original) (quotation omitted). "The Court must view the evidence in the light

1

most favorable to the government and must not weigh the evidence or review the credibility of witnesses for itself." *Id.* "A Rule 29 motion is thus granted only where no rational jury could have found the essential elements of the crime beyond a reasonable doubt, such that acquittal is the <u>only</u> proper verdict." *Id.* (emphasis in original) (quotation omitted).

## ARGUMENT

### I. Jury Instructions Should Be Handled at the Charge Conference

Goldstein's motion begins with a request in the alternative that the Court give certain jury instructions. The government proposes that jury instructions be handled at the charge conference and not in the context of this Rule 29 motion. The government and Goldstein have been working together on the jury instructions and plan to submit an updated set of joint proposed and disputed instructions to the Court in advance of the charge conference.

### II. The Court Should Not Acquit Goldstein on Specific Theories or Allegations

Rule 29 may provide for "acquittal of any *offense* for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a) (emphasis added). Goldstein's motion largely seeks acquittal on specific theories, as opposed to "offenses" or counts. Rule 29 Goldstein concedes that it is "rare" for courts to grant acquittal as to particular theories of liability within individual counts. Dkt. 408 at 11. The trial courts did not grant Rule 29 motions on particular theories of liability in either case Goldstein cited. Dkt. 408 at 11 (citing *United States v. Beverly*, 913 F.2d 337, 360, 365 (7th Cir. 1990) and *United States v. Weise*, No. 13-CR-20092-KMM, 2013 WL 11318867, at *1 (S.D. Fla. Sept. 4, 2013)). In this case, there is no reason to depart from the plain text of the rule especially where, as explained below, all of the charges are supported by sufficient evidence.

### III. The Government Introduced Sufficient Evidence on Count 1

Count 1 is tax evasion for 2016. The elements of tax evasion are (1) willfulness, (2) a substantial tax deficiency, and (3) an affirmative act constituting an attempt to evade. *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997); 26 U.S.C. § 7201. Even innocent or innocuous acts—when done with the intent to mislead or conceal—can constitute affirmative acts of evasion. *See, e.g.*, *United States v. Hassebrock*, 663 F.3d 906, 918-19 (7th Cir. 2011).

On willfulness, the government has introduced sufficient evidence. The evidence at trial showed that Goldstein knew he won approximately $50 million playing poker in 2016 and yet reported to his tax preparer only approximately $27 million. *See* 1/15 Tr. 131:7-11 (Gipson on how much Goldstein won); 2/5 Tr. 122:13-16 (Robl on the same); GX31.1 (text messages reflecting the same); GX412 at 6 (summary of the same); 2/4 Tr. 74:6-11 (Deyhle on how much Goldstein reported). Goldstein arrived at the falsely deflated number by creating two sets of gambling ledgers, the latter of which included millions in false deductions, and then provided his tax preparer with the information from the latter ledger. GX2 (first poker ledger); GX451 (second poker ledger); 2/4 Tr. 93:9-24 (Deyhle). Goldstein lied to the IRS multiple times (in 2018 and 2020) about the 2016 tax return to hide the falsity and his high-stakes poker activities more generally. 1/22 Tr. 228:13-230:1 (RO Parrish); 2/5 Tr. 54:21-55:3 (SA McDonald).

On substantial tax deficiency, the government has introduced sufficient evidence. First, according to his own tax return, Goldstein owed $1,690,527 in taxes for 2016. GX54 at 3. That is enough to satisfy the substantial tax deficiency requirement regarding Goldstein's subsequent attempts to evade payment of taxes. Second, the evidence at trial showed that Goldstein underreported his net poker income by more than $3 million on his 2016 tax return. 2/7 Tr. 80:11-24 (RA Ranahan). That is also enough to satisfy the substantial tax deficiency requirement.

Goldstein argues that the government has not presented proof as to his failure to report interest income and pension-related income, but there are documents in evidence reflecting that income, and so are Goldstein's tax returns, which do not include the income. *See, e.g.*, GX4 at 204, 223, 235 (Wells Fargo account through which Goldstein earned the interest); GX658 at 345 (Citibank account into which pension-related income was deposited).

On affirmative acts constituting attempts to evade, the government also has introduced sufficient evidence of multiple such acts. To start, the government has plainly established Goldstein caused his accountants to misclassify over a million dollars in personal expenses as business expense, chose not to correct the error even after using a spreadsheet of the misclassifications to build his secret poker ledger, and then gave them affirmatively false information about his net 2016 winnings—all leading them to prepare and file false 2016 tax returns. The government has also introduced sufficient evidence to support each affirmative act within the limitations period.

First, the lie to IRS Revenue Officer Parrish in March 2018. RO Parrish confirmed that when she interviewed him in 2018 regarding his 2016 tax debt, Goldstein said that the large amount of income he received that year was from a big legal case. *See, e.g.*, 1/22 Tr. 228:13-230:1; GX19 at 13 (IRS collections history on Goldstein). That was false and was an affirmative act of evasion of assessment (because Goldstein was continuing to hide how much tax he owed for 2016 by hiding that most of his income was from poker) and payment (because Goldstein was hiding the extent of his poker activities and frustrating the IRS's efforts to collect his unpaid tax balance from individuals he played in poker after 2016). *See, e.g.*, 1/22 Tr. 230:2-19 (RO Parrish testifying that if Goldstein "told [her] about winning or losing millions of dollars playing poker" she "would have

investigated further to make a determination and to try to secure additional information, because, again, that would have been another levy source").

Second, the lies to IRS criminal investigators in October 2020. IRS Special Agent John McDonald testified that Goldstein told the federal agents that his 2016 tax return was accurate as to his poker winnings. 2/5 Tr. 54:21-55:3 (SA McDonald). That was false and was an affirmative act of evasion of assessment (because Goldstein was continuing to hide how much tax he owed for 2016) and payment (because Goldstein was hiding the extent of his poker activities and frustrating the IRS's efforts to potentially collect from individuals he played in poker after 2016). Goldstein also told the federal agents that he had not played poker with investors besides versus Alec Gores in 2018. That was false because, in 2016 alone, Goldstein had investors in his poker matches against two other opponents (Tango and Chairman). 1/15 Tr. 158:1-7 (Gipson on Tango); 155:12-19 (Gipson on Chairman), 2/5 Tr. 121:18-24 (Robl on Tango and Chairman). And it similarly frustrated the IRS's ability to ascertain the scale of Goldstein's 2016 poker activity, his tax liability for that year, and his ongoing ability to pay his overdue taxes. *See, e.g.*, 1/22 Tr. 230:2-19 (RO Parrish testifying that if Goldstein "told [her] about winning or losing millions of dollars playing poker" she "would have investigated further to make a determination and to try to secure additional information, because, again, that would have been another levy source").

Third, funneling money through the IOLTA account in March 2021. The evidence showed that Goldstein believed in March 2021 that he had defaulted on his payment plan with the IRS for his overdue 2016 and 2017 taxes. *See* 2/2 Tr. 178:6-15 (Gelman told Gou on February 24, 2021 that Goldstein's IRS payment plan defaulted); GX504 (email reflecting the same). Goldstein then misled the mortgage lending business, FSM, by indicating that the payment plan was still in place. 2/3 Tr. 39:5-40:2 (Busch); GX810; GX410. Having defaulted on his installment agreement while

5

he still owed nearly $2 million in taxes, Goldstein knew that the IRS may levy his bank accounts. *See, e.g.*, 1/21 Tr. 251:7-256:11 (Levitan testifying about levies and related interactions with Goldstein prior to the payment plan). The evidence showed that Goldstein funneled funds for the purchase of his Washington, DC home through G&R's IOLTA account (which had never been levied), where he parked the funds for a number of days. GX421 (flow chart for IOLTA account and home purchase); 2/9 Tr. 70:2-71:7 (Flack testifying about the flow of funds). The evidence is more than sufficient for the jury to find it was an affirmative act of evasion of payment for his overdue 2016 and 2017 taxes.

### IV. The Government Introduced Sufficient Evidence on Counts 2-9

Counts 2-9 are aiding and assisting in the preparation of false tax returns. The elements are (1) Goldstein advised or assisted in the preparation of a tax return, (2) the tax return was false as to any material matter, and (3) Goldstein acted willfully. 1/15 Tr. 24:9-16; *United States v. Kimble*, No. CRIM. WDQ-13-035, 2015 WL 4164820, at *25 (D. Md. July 8, 2015), *aff'd*, 855 F.3d 604 (4th Cir. 2017).

On advising or assisting, the government introduced sufficient evidence that Goldstein was the source of the false information submitted (or not submitted) on his and G&R's tax returns. Most notably, the evidence showed that Goldstein was the only person who could have relayed his poker winnings to his firm managers and/or tax preparer—and that he chose not to. 1/20 Tr. 169:20-170:4 (Runkle testifying Goldstein did not tell her about poker); 1/21 Tr. 44:13-15 (Levitan testifying he was never asked to track Goldstein's poker); 1/29 Tr. 218:18-219:12 (Bart testifying that Goldstein never asked for help reporting wins or losses in poker); 2/2 Tr. 192:16-193:11 (Gou testifying that Goldstein never shared records of his wins and losses in poker), 2/3 Tr. 112:12-116:9 (Deyhle testifying about Goldstein's responsibility to file accurate returns and his failure to

6

report poker winnings to Gelman). The evidence also showed that Goldstein helped prepare his and G&R's tax returns which included false deductions for poker-related payments Goldstein sent from G&R's bank account. *See, e.g.*, 2/3 Tr. 159:6-161:10 (Deyhle testifying to Goldstein's role in preparing the 2016 tax return and his knowledge of what was on that return).

On falsity and materiality, the government introduced sufficient evidence. The returns were false according to the stipulation Goldstein signed making clear he won substantial sums in every year at issue. Stipulation #1. IRS Court Witness Coordinator Roman Hernandez testified that taxpayers are required to report their gambling winnings even if they are exceeded by losses. 2/2 Tr. 141:10-20 (Hernandez). The materiality of Goldstein's failure to report his winnings—regardless of losses—is only heightened by the fact that he was either seeking or party to an IRS payment plan throughout most of the relevant time period. *See, e.g.*, 2/10 Tr. 130:5-131:8 (RA Ranahan testifying on why the IRS would be interested in reported winnings even if they are exceeded by losses). The returns also were false, and materially so, because Goldstein was illegally deducting poker-related payments sent from G&R's bank account. GX48 (summary of misclassified payment and resulting tax savings for Goldstein).

On willfulness, the government introduced sufficient evidence. Goldstein hid his poker winnings from his tax preparer and the government—either completely or partially—for half a decade. *Compare* Stipulation #1, *with* 2/3 Tr. 161:8-10 (Deyhle testifying he is "very confident" that Goldstein knew what was being reported on his tax returns), 183:12-19 (Goldstein did not tell Deyhle about poker income in 2017), 207:4-208:14 (same for 2018), 210:19-22 (same for 2019) ; GX24 (Goldstein emailing Deyhle that he had "no winnings" in 2017). In all, Goldstein failed to report millions in poker winnings. *Compare* GX430 at 1 (Goldstein's poker winnings per the evidence), *with* GX50 at 5 (Goldstein's poker winnings per his tax returns). The evidence supports

7

a reasonable conclusion by the jury that Goldstein hid his poker winnings because he was already in debt to the IRS for 2016 and did not want to pay that debt much less subject himself to additional taxes if he had a winning year. Goldstein's concealment of his poker activities from the very people (firm managers, accountants, and tax preparer) he chose to help him with taxes is further proof of his willfulness. The same is all true for Goldstein's losses paid from G&R's bank account and illegally deducted: Goldstein was finding a way to beat the IRS while losing at poker.

Finally, regarding the diverted legal fee payments and Forms 1099, Goldstein's motion simply blames other people for his own willful choices. Goldstein is required to report to the IRS all of his gross income. That is true regardless of whether he receives a Form 1099. *Reinhardt v. Comm'r*, 66 T.C.M. (CCH) 566, *6 (T.C. 1993) (taxpayer's belief that "income is not taxable unless there is a Form 1099 or W-2" was "wrong"); *Welker v. Comm'r*, 74 T.C.M. (CCH) 956, *2 (T.C. 1997) (noting taxpayer "was aware that he had to report all his income on his tax return regardless of whether he received a Form 1099"). And as to the diverted legal fee payment Goldstein directed Tobias Maguire to send Bob Safai in 2021, the evidence showed that Maguire was not required to send a Form 1099 to Goldstein or G&R. *See* 2/10 Tr. 233:6-23 (RA Ranahan).

V. **The Government Introduced Sufficient Evidence on Counts 10-13**

Counts 10-13 are willfully failing to timely pay taxes for 2017, 2019, 2020, and 2021. The elements are (1) Goldstein owed income taxes for the year in question; (2) Goldstein failed to pay the tax by the due date; and (3) Goldstein's failure to pay was knowing and willful. 1/15 Tr. 26:9-17; *United States v. McGill*, 964 F.2d 222, 239-40 (3d Cir. 1992); 26 U.S.C. § 7203.

On whether Goldstein owed income taxes, the government introduced sufficient evidence that he did for the tax years at issue. Goldstein's own tax returns reported that he owed taxes for those years. GX50 at 4 (collecting exhibit citations).

On whether Goldstein failed to pay by the due date, the government has introduced sufficient evidence. The IRS transcripts introduced at trial for the relevant tax years all make clear that Goldstein did not timely pay. GX50 at 4 (collecting exhibit citations).

On knowing and willful, Goldstein concedes that "the government has offered some evidence that [he] knew his taxes were due on April 15." Dkt. 408 at 34. Indeed, Goldstein's own draft email to Craig Cooper explicitly recognized his duty to pay taxes—and his deliberate choice not to do so: "I was going to use part of that to pay my personal 2016 taxes, but I'm just paying penalties instead. That's fine, and it's my problem." GX12. The government also has introduced evidence that Goldstein willfully chose not to pay his taxes on time and instead spent his money on poker, luxury items, etc. The government introduced evidence that Goldstein concealed his poker activities from the IRS over a half-decade period further supporting his willfulness. *Compare* GX430 at 1 (Goldstein's poker winnings per the evidence), *with* GX50 at 5 (Goldstein's poker winnings per his tax returns).

## VI. Section 7203 Is Not Void for Vagueness

This is an untimely argument by Goldstein, who should have made it before trial (as he did with a vagueness challenge to other allegations). It is also incorrect argument on the merits. As the government has explained before, federal courts consistently reject vagueness challenges to criminal tax statutes. *See* Dkt. 135 at 17-18 (collecting cases). And intent or willfulness requirements "tend[]to defeat any vagueness challenge based on the potential for arbitrary enforcement." *See United States v. Kimble*, No. CRIM. WDQ-13-035, 2015 WL 4164820, at *17 (D. Md. July 8, 2015), *aff'd*, 855 F.3d 604 (4th Cir. 2017) (quotations and citations omitted); *United States v. Kim*, 808 F. Supp. 2d 44, 55 (D.D.C. 2011) ("[T]he willfulness requirement in the

9

statute effectively eliminates any concerns that Defendant may have been subject to arbitrary enforcement.").

Normal people understand that they have to pay taxes by a due date. Goldstein concedes that "the government has offered some evidence that [he] knew his taxes were due on April 15." Dkt. 408 at 34. This is much simpler than the tax evasion theory that the Court previously dismissed. Almost all of the witnesses testified that Goldstein is an intelligent person. But it does not take a Supreme Court lawyer to know that you have to pay your taxes by the due date. Goldstein's suggestion that he did not know the due date had any legal significance besides that the federal government would charge you ***penalties*** and interest after that date is not a credible grounds on which to grant a Rule 29 motion. Indeed, to prove willfulness, the government does not need to prove that Goldstein was aware of the criminal consequences for his conduct. *See, e.g.*, *United States v. Gilmore*, 837 F. App'x 101, 105 (3d Cir. 2020).

## VII. The Government Introduced Sufficient Evidence on Counts 14-16

Counts 14-16 are making false statements on mortgage applications. The elements are (1) Goldstein made or caused to be made a false statement or report relating to an application to a mortgage lending business, (2) Goldstein acted knowingly, (3) the false statement or report was made for the purpose of influencing the mortgage lending business's action, and (4) the statement was submitted to a mortgage lending business. 1/15 Tr. 30:15-23; 18 U.S.C. § 1014.

The government introduced sufficient evidence that Goldstein made false statements to two mortgage lending businesses, FSM and NFM. 2/3 Tr. 19:6-10 (Busch); 2/9 Tr. 120:1-16 (Anthony). The false statements were contained in three separate applications. GX8, GX9, GX10.

The government introduced sufficient evidence that Goldstein acted knowingly in making the false statements. In 2021 when Goldstein submitted the applications, he still owed millions of

dollars on his poker-related debts to Stewart and Lynda Resnick and Bob Safai. *See, e.g.*, GX15.1, GX15.2, GX16. Further, a factual stipulation was read to the jury that Goldstein told a trusted friend that he understated his debts on the mortgage applications by millions of dollars to keep the debt secret from his wife. Stipulation #6.

The government introduced sufficient evidence that the false statement was made to influence the mortgage lending businesses. Just as Goldstein knew he was misleading his wife by omitting the debts, he knew he would influence the mortgage lending businesses. Witnesses from both businesses testified that it was important for potential borrowers to provide truthful information including about their liabilities. 2/3 Tr. 35:3-5 (Busch); 2/9 Tr. 123:17-20 (Anthony). At the time, Goldstein and his wife were trying to buy the new home in Washington, D.C. 2/2 Tr. 12-18. In that context, there can be no other purpose of affirmatively filling out mortgage applications with misrepresentations on them besides to mislead the lending business.

The government introduced sufficient evidence that the false statements were submitted to FSM and NFM. That evidence includes the applications themselves. GX8, GX9, GX10. And it includes the testimony of the representatives of the mortgage lending businesses. *See, e.g.*, 2/3 Tr. 36:21-37:1 (Busch); 2/9 Tr. 127:24-128:6 (Anthony).

Goldstein's brief references the venue standard in a footnote, but the government has introduced sufficient proof of venue on counts 14-16 too. For FSM, Goldstein signed the false applications from his home in Chevy Chase, Maryland. *See* 1/29 Tr. 145:13-148:22 (comparing FSM application IP address logs for Goldstein with Verizon IP address for his Chevy Chase home); GX8.1; GX9.1; GX781 (Verizon IP Registry). For NFM, Maxwell Howell stated that Goldstein signed the false application in his office in Rockville, Maryland. 2/5 Tr. 75:18-19. This is more than enough to establish venue by a preponderance of evidence.

## **CONCLUSION**

The government respectfully requests that the Court deny defendant Thomas Goldstein's motion for judgment of acquittal or, in the alternative, request for jury instructions. Dkt. 408.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: February 11, 2026

/s/_____
Hayter L. Whitman
Trial Attorney
Department of Justice—Criminal Division

Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Trial Attorney
Department of Justice—Criminal Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland