IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |

*********

**DEFENDANT THOMAS C. GOLDSTEIN'S FILING CONCERNING HIS PRIOR CONSISTENT STATEMENTS**

Earlier today, the Court denied without prejudice the defense's motion *in limine* (ECF No. 411) to admit certain phone messages and ledgers exchanged between Mr. Goldstein and Mr. Phua's assistant, appended at ECF No. 411-3 (Exhibit C). *See* 2/11/26 Tr. 96:15. To avoid prolonged disruptions to the presentation of evidence in front of the jury, the defense is making this filing to advise the Court and the government that, in the event that the government makes attacks on Mr. Goldstein's credibility during its cross-examination, the defense will be seeking to admit five specific messages threads under Rule 803(d)(1)(B). *See* Exhibit A. To be clear, the defense is not seeking relief through this filing, and instead advising the Court of this issue in case it arises during Mr. Goldstein's cross-examination.

**I.      Rule 801(d)(1)(B) Permits the Admissibility of Out-Of-Court Prior Consistent Statements When a Witness's Credibility Is Attacked.**

Rule 801(d)(1)(B) states that a prior statement of a declarant-witness who "testifies and is subject to cross-examination about [the] prior statement" is not hearsay if the statement is "consistent with the declarant's testimony and is offered":

1

> (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>
> (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.

"[T]he standard for finding an implied charge [of fabrication or improper motive] is a lenient one." *United States v. GossJankowski*, 734 F. Supp. 3d 65, 71 (D.D.C. 2024). "[T]here need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *Id.* (quoting *United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006)). Thus, where on cross-examination, the government "implie[s] that the defendant had recently fabricated his account . . . and had the improper motive of avoiding punishment for wrongdoing," Rule 801(d)(1)(B) permits the admissibility of those statements. *Id.* at 72.

Procedurally, courts frequently permit the introduction of Rule 801(d)(1)(B) materials for use on redirect when an implication of fabrication is raised on cross-examination. *See, e.g.*, *United States v. Hines*, 395 F. App'x 316, 318 (8th Cir. 2010) (affirming introduction of out-of-court statements "on redirect examination to rebut testimony elicited . . . on cross-examination suggesting that the witness might have fabricated his testimony for personal gain"); *United States v. Sims*, No. 2:23-cr-200, 2025 WL 636235, at *3 (S.D. Ohio Feb. 27, 2025) (permitting a party to "use prior consistent statements made by" witnesses "to rehabilitate their credibility on redirect examination" if the witnesses were "attack[ed]" on cross examination).

Here, if the government implies that Mr. Goldstein fabricated any part of his account of his 2016 gambling wins, losses, and shares, or that Mr. Goldstein fabricated his account of the

2018 cash he brought to the United States from Asia, the defense will seek to admit one or more of the following exhibits as prior consistent statements (also appended hereto as Exhibit A):

    1.    <u>**DX 737.4**</u>



DX 737.4 is Mr. Goldstein's statement on November 24, 2016, that Mr. Phua has a 70% share in poker matches he will be playing with Mr. Gores.

    2.    <u>**DX 737.8**</u>



3

In DX 737.8, Mr. Goldstein states that calculations of Mr. Phua's share of poker matches played against Tango are "correct."

### 3. DX 737.9



In this message, Mr. Goldstein acknowledges that Mr. Phua has not been paid by Tango as of February 2017.

4. **DX 737.13**



In this message, Mr. Goldstein acknowledges that he and Mr. Phua are "even steven" in April 2017, and that he "arranged" a payment of the remainder of Mr. Phua's $600,000 to Thomas Dwan.

5. **DX. 738.1**

5

In this message, Mr. Goldstein requesrts an additional loan of $1 million from Mr. Phua in October 2018 in order to pay IRS obligations.[1]

## II. Allowing the Government to Challenge Mr. Goldstein's Credibility Without Admitting These Messages Would Raise Constitutional Concerns.

Moreover, there are constitutional limits on the government's ability to argue to the jury, either expressly or impliedly through its cross-examination of Mr. Goldstein, that Mr. Goldstein cannot corroborate his testimony or that he recently fabricated his testimony. *See, e.g.*, *United States v. Blueford*, 312 F.3d 962, 963–64, 968 (9th Cir. 2002) (holding that the government "violated defendant's right to a fair trial" where "the prosecution[] . . . ask[ed] the jury to infer that [the defendant] had fabricated his alibi in certain telephone calls with witnesses in the weeks just before the trial, when in fact the government had evidence contradicting some of its assertions"). It is both "plainly improper [for] . . . a prosecutor [to] argue the absence of evidence she well kn[ows] exist[s]," *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009), and "for the government to present to the jury statements or inferences it knows to be false or has very strong reason to doubt," *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009); *see also United States v. Udechukwu*, 11 F.3d 1101, 1106 (1st Cir. 1993) ("It is . . . improper to imply reliance on a fact that the prosecutor knows to be untrue, or to question the existence of someone who is known by the prosecution to exist.").

In this case, the government now definitively knows that there are phone message exchanges supporting Mr. Goldstein's testimony regarding (1) Mr. Phua's share of the Gores games, (2) Mr. Phua's share of the Tango games, (3) the timing of Tango's payment in 2017, (4)

---

[1] Earlier today, the Court held that the first part of this message (Mr. Goldstein's message at 7:45pm) is admissible. 2/11/26 Tr. 86:2-8. In the event that the government attacks Mr. Goldstein's credibility on cross-examination, the defense will seek to admit the remainder of the message.

the timing of Mr. Phua's and Mr. Goldstein's "swap" in 2017, and (5) the fact that the approximately $1 million in cash that Mr. Goldstein brought to the United States in October 2018 was a loan. It would violate Mr. Goldstein's right to a fair trial for the government to imply to the jury that evidence *the government itself prevented the jury from seeing* simply does not exist.

## CONCLUSION

If the defense attacks Mr. Goldstein's credibility in its cross-examination, the defense will respectfully request that the Court admit one or more of the above-listed phone messages as prior consistent statements under Rule 801(d)(1)(B).

Dated: February 11, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*