IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******** | |

### DEFENDANT THOMAS C. GOLDSTEIN'S MOTION
### TO EXCLUDE "REBUTTAL" EVIDENCE

On Sunday, February 15, the government advised the defense that it intends to present a "rebuttal" case consisting of privileged emails between defendant Thomas Goldstein and his wife Amy Howe concerning the electronic signatures on the March 1, 2021 application submitted to First Savings Mortgage. The government apparently intends to introduce this evidence to support a brand-new theory of venue on Count 15—that Mr. Goldstein allegedly caused Ms. Howe to submit the mortgage application in Maryland. This is entirely different from the theory of venue presented by the government in its case-in-chief, which was that Mr. Goldstein signed the mortgage application in Maryland. That original theory was thoroughly refuted in the defense case by flight records—which have been in the government's possession for years—showing that Mr. Goldstein was in St. Thomas on March 1, 2021.

The government should not be permitted to use its rebuttal case to introduce a completely new theory of venue. Introducing a new theory is not a "rebuttal" case. The jury has no context whatsoever for this evidence, as it has heard nothing about the sender of these emails (docs@docmagic.com), or the electronic signature tool referenced in the emails, or where the

1

links in the emails go. Allowing the government to present evidence on this topic in rebuttal is fundamentally unfair to the defense, which put on its case (including Mr. Goldstein's testimony) in reliance on the government's original theory. And it would disrupt the trial, as the defense would be entitled to a surrebuttal case. In any event, the government's rebuttal evidence is not admissible. It consists entirely of emails protected by the spousal communications privilege. The only possible relevance of this evidence would be to invite the jury to speculate impermissibly about the content of those privileged communications. If the government wanted to use privileged communications between Mr. Goldstein and Ms. Howe to try to establish venue, it should have included these emails on its exhibit list and raised the issue with the Court before now.

## FACTUAL BACKGROUND

Count 15 charges Mr. Goldstein with making false statements on a mortgage application submitted to First Savings Mortgage Company on March 1, 2021. In its case-in-chief, the government presented evidence that this application was signed electronically by Mr. Goldstein. The government introduced testimony from First Savings witness that the application bore Mr. Goldstein's signature. 2/3/26 Tr. 31:17-19, 36:14-20 (Gregg Busch). The government presented evidence that Mr. Goldstien "view[ed] and complete[d]" the March 1, 2021 application. 1/29/26 Tr. 147:25-148:5 (Special Agent Nguyen) ("Q: Who is listed as the middle signer? A: Mr. Thomas Che Goldstein. Q: On what date did he view and complete this document? A: March 1, 2021, at 1:54 p.m.") And the government presented testimony from Special Agent Nguyen that the Internet Protocol ("IP") address associated with the transmission of the application returns to the address of Mr. Goldstein's old house in Maryland, and that Mr. Goldstein "use[d]" that "IP address . . . for all of his" signatures. *Id.* at 148:10-12 ("Q: [W]hat IP address did Mr. Goldstein use for all of his events? A: The same. 96.255.84.162."). The government did not disclose

Agent Nguyen as an expert on this topic, and so the defense objected to this testimony. That objection was overruled.

The theory of venue underlying this evidence—that Mr. Goldstein signed the March 1, 2021 mortgage application in Maryland—was consistent with the final jury instruction on venue that the government proposed to the defense last week. The government's proposed final instruction stated, "the government must prove that Mr. Goldstein communicated the alleged false statement to the mortgage lending business from a location within the District of Maryland." This proposed final instruction dropped language from the government's preliminary jury instruction on venue stating that the government could prove that Mr. Goldstein "caused" the false statement in Maryland.

In its case-in-chief, the government presented no evidence to support the new theory of venue that it now proposes to introduce in rebuttal—namely that Mr. Goldstein *caused* Ms. Howe to sign his name to the March 1 application and transmit it from Maryland. In particular, the government introduced no evidence in its case-in-chief that Ms. Howe had the ability to sign the application for Mr. Goldstein, or that she actually did so, or that she had his permission to do so, or that she transmitted the application from Maryland.

In its case, the defense crafted its presentation in response to and in reliance on the government's theory that venue was proper on Count 15 because Mr. Goldstein signed the March 1 application in Maryland. In particular, Mr. Goldstein chose not to exercise his Fifth Amendment right against self-incrimination with respect to the mortgage fraud charges because he knew that the government's theory of venue was contradicted by its own records. The defense also chose not to present any additional evidence through other fact witnesses or expert testimony on the theory of venue that the government now proposes in rebuttal but never

3

mentioned in its case-in-chief. For example, the defense did not present evidence on whether Ms. Howe could have electronically signed Mr. Goldstein's name to the application. And the defense chose not to present evidence on other possible defenses to Count 15. The defense made all these strategic choices in its case based on the theory of venue presented by the government during its case-in-chief.

During Mr. Goldstein's testimony, the defense presented evidence that thoroughly refutes the government's theory of venue on Count 15. Travel records that appeared on the government's exhibit list and that have been in the government's possession for years clearly show that Mr. Goldstein was in St. Thomas on March 1, 2021. *See* 2/12/26 Tr. 225:25-227:3 (Thomas Goldstein); *see also* GX 886, at 550, 852.

Now that its theory of venue on Count 15 has been demolished, the government proposes to present in its rebuttal case an entirely new theory—that Mr. Goldstein caused Ms. Howe to sign the March 1 application on his behalf in Maryland. In support of this theory, the government proposes to introduce three documents that did not appear on its exhibit list. The emails, attached herein at Exhibit A, are privileged spousal communications between Mr. Goldstein and Ms. Howe. The bottom of each email is a message from docs@docmagic.com to Mr. Goldstein dated February 24, 2021 that include links. The jury has heard no testimony about those emails—who uses docs@docmagic.com, or where the links go, or why Mr. Goldstein received this email. The top section of each email is the header of an email from Ms. Howe to Mr. Goldstein or vice versa. The content of the top emails is redacted because communications between Ms. Howe and Mr. Goldstein are protected by the spousal communications privilege. For example:



The government has not identified for the defense the witness it intends to use to introduce these documents.

## ARGUMENT

### I. The Redacted Emails Are Not "Rebuttal" Evidence.

The government's proposed "rebuttal" case is not a rebuttal case at all—it is a last-ditch effort to introduce a completely new theory of venue on Count 15. That is improper.

"The proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party." *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974); *see also Toth v. Grand Trunk R.R.*, 306 F.3d 335, 347 (6th Cir. 2002) (rebuttal evidence must be "offered to refute new evidence offered in defendant's case-in-chief"). The

government may not use its rebuttal case to admit evidence "that does not rebut anything said by the defendant." *United States v. Pantone*, 609 F.2d 675, 681 (3d Cir. 1979).

Accordingly, "[i]t is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984); *see also Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987) ("In the exercise of sound discretion, the district court may limit the scope of rebuttal testimony . . . to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief.") (citation omitted); *see also Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 583 (5th Cir. 2004).

Here, the government's proposed "rebuttal" evidence does not respond to any testimony or evidence presented in the defense case. On this issue, the defense case was (appropriately) limited to rebutting the venue evidence actually advanced by the government—that Mr. Goldstein signed the March 1 application in Maryland. The defense presented no evidence on the (purported) topic of these emails—whether Mr. Goldstein and Ms. Howe communicated about the March 1 application, or whether Mr. Goldstein authorized Ms. Howe to sign the application on his behalf, or whether she in fact did so, or where Ms. Howe was located when she did so. The defense presented no evidence on any of these subjects, of course, because the government did not raise them in its case-in-chief. Instead, the defense presentation on this issue was limited to testimony from Mr. Goldstein and travel records showing that he was not in Maryland on March 1.

The government's "rebuttal" evidence does not "explain, repel, counteract or disprove" the evidence that the defense did present on this issue, which was limited to one point—that Mr.

6

Goldstein was not in Maryland on March 1.  Instead, this evidence is intended to introduce an entirely new theory of venue on Count 15—a theory that was never mentioned in the government's case-in-chief and was never addressed in the defense case.  In fact, the government's late-breaking theory represents a total about-face, since the government argued in its case-in-chief that Mr. Goldstein himself "view[ed]" and "complete[d]" the electronic signatures on the application.  1/29/26 Tr. 147:25-148:5 (Special Agent Nguyen).   If the government wanted to present the theory of venue it now advances—that Mr. Goldstein authorized Ms. Howe to sign the March 1 application in Maryland—then it should have done so in its case-in-chief, instead of presenting the contradictory theory that Mr. Goldstein himself signed the application.  The government has been in possession of this evidence—the application, the travel records, and the emails—for *years*.  And the government has long been aware that the defense intended to contest venue on these charges.  It should not be permitted to introduce in rebuttal an entirely new theory of venue that does not respond to the factual evidence presented in the defense case.

     The government's presentation of an entirely new theory of venue based on the privileged emails in its rebuttal case is also inconsistent with the orderly presentation of proof in the trial.  The jury has heard nothing about these emails—which were not included on the government's exhibit list—or their contents.  The jury has not heard, for example, what the email address docs@docmagic.com is or who uses it.  The jury has heard no evidence as to how the electronic document signature tool referenced in the bottom emails works.  The jury has heard no evidence as to the meaning of the bottom email in the exhibits, including what the URLs in the bottom email actually link to.  The jury has heard no evidence as to whether it was even possible for Ms. Howe to sign on Mr. Goldstein's behalf, or what would be required for her to do so.  And

the jury has heard no evidence that Ms. Howe was in Maryland at the time of these email exchanges.

Moreover, the government's proposed "rebuttal" evidence is enormously and unfairly prejudicial to Mr. Goldstein. As discussed above, the defense made strategic decisions about its presentation of evidence in the defense case in reliance on the theory of venue advanced by the government in its case-in-chief and framed by the government's proposed final instruction on venue. That included Mr. Goldstein's decision to testify on the mortgage fraud counts, the decision not to present any additional defense on the mortgage fraud counts, and of course the decision not to present evidence refuting a theory of venue that the government had never advanced.

Finally, permitting the government to introduce its eleventh-hour venue theory and evidence would be unduly disruptive of the trial. As a matter of law, the defense would be entitled to put forward a sur-rebuttal case, because it would have had no cause to anticipate this argument. *See United States v. Wilson*, 134 F.3d 855, 867 (7th Cir. 1998); *United States v. Moody,* 903 F.2d 321, 330-31 (5th Cir. 1990). The Court would have to permit the defense the opportunity to develop that evidence, including potentially by securing expert testimony. The Court would then have to assess the qualifications of the defense's proposed expert, no doubt in the face of objections from the government. A multi-day delay would be inevitable. There would be a significant risk of losing additional jurors. That is an additional and sufficient basis to reject the proposed rebuttal case. "The court may properly decide that the prosecution should be allowed to rebut testimony by defense witnesses but that it should not be allowed to go into new matter which would prompt a surrebuttal by the defense." *United States v. Cleveland*, 1997 WL 321218, at *1 (E.D. La. June 11, 1997) (citation omitted).

## II. The Government's Proposed Use of the Redacted Emails Violates Privilege.

The government's proposed "rebuttal" evidence is improper for the additional reason that the entirety of the emails the government seeks to introduce are protected by the spousal communications privilege. In each exhibit, the top emails between Mr. Goldstein and Ms. Howe are plainly privileged communications, which is why they are redacted. And use of the bottom portions of the emails—the email from docs@docmagic.com to Mr. Goldstein—would also violate the privilege because the portion of the emails that forwards the documagic.com message was part of the communication between the two. It is settled that email attachments and similar materials that are part of a spousal communication are themselves also privileged. *See United States ex rel. Scott v. Humana, Inc.*, 2019 WL 7404032, at *4 (W.D. Ky. Sept. 24, 2019); *see also In re Search of Info. Associated with rickmaike@yahoo.com that is stored at premises controlled by YAHOO! Inc.*, 2020 WL 4373447, at *5 (W.D. Ky. July 10, 2020), *report and recommendation adopted sub nom. In re Search of Info. Associated with rickmaike@yahoo.com that is stored at premises controlled by YAHOO! Inc.*, 2020 WL 4369448 (W.D. Ky. July 30, 2020).

In any event, even if the bottom portions of the emails were not themselves privileged, the government's use of these emails would still be improper because it invites impermissible speculation about the content of privileged communications. The only possible relevance of the emails would be to invite the jury to speculate that in the redacted portions of the messages Mr. Goldstein instructed Ms. Howe to sign the March 1 application on his behalf. But that theory of relevance necessarily requires the government to argue to the jury that it should draw an inference as to the content of Mr. Goldstein's and Ms. Howe's privileged spousal communications. In essence, the government is asking the jury to infer that the redacted portions

of the emails contain statements from Mr. Goldstein to Ms. Howe asking her to sign the application on his behalf.

That is clearly improper. Courts have long held that it is impermissible to "draw[ ] inferences from the claim" of a recognized privilege. *See* 1 McCormick On Evid. § 74.1 (9th ed.). For example, the Fourth Circuit has squarely held that it is error for a fact-finder to "draw an inference about the substance of [a client's] conversations with [her attorney]" because "[a]ny such inference would intrude upon the protected realm of the attorney-client privilege." *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990). "[A] client asserting the privilege should not face a negative inference about the substance of the information sought." *Id.*; *see also In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994) ("A negative inference should not be drawn from the proper invocation of the attorney-client privilege.") In other words, a party may not "tell the jury the substance of" evidence protected by the privilege through the "back door." *United States v. Hall*, 989 F.2d 711, 716 (4th Cir. 1993) (citation omitted).

Courts readily extend this no-inferences principle to the spousal communication privilege, since precisely the same logic applies to the spousal communication privilege. *See, e.g.*, *Whitney v. City of Milan. Tennessee*, No. 09-1127, 2014 WL 11411675, at *1 (W.D. Tenn. Feb. 27, 2014) ("Although [other] cases involved the attorney-client privilege, the same or similar consequences are at risk of resulting if the Court were to permit an adverse inference where the marital-communications privilege has been invoked. And, like the attorney-client privilege . . . the marital-communications privilege, which protects the marital bond, is considered to have a value higher than truth." (citation modified)); *In re Dores*, No. 16-10169, 2017 WL 2468964, at *9 (Bankr. E.D. Cal. June 7, 2017). This is "because 'marital

10

confidences' are 'regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.'" *United States v. Hamilton*, 701 F.3d 404, 407 (4th Cir. 2012) (quoting *Wolfle v. United States,* 291 U.S. 7, 14 (1934)); *see Romero v. Helmerich & Payne Int'l Drilling Co.*, 2017 WL 3268878, at *4 (D. Colo. Aug. 1, 2017) (concluding that "argument or commentary during trial regarding the substance of privileged information [under the spousal communication privilege], or speculation as to that information or the basis for the privilege, is inappropriate").

Moreover, if the government is permitted to ask the jury to draw an inference about the contents of privileged communications, the government will have improperly converted the shield of the spousal communications privilege into a sword. In effect, the government is trying to force Mr. Goldstein to waive that privilege in order to show that the privileged communications may not say what the government hypothesizes they do. *See generally In re Zetia Antitrust Litigation*, No. 18-2836, 2022 WL 4354620, at *3 (E.D. Va. Aug. 15, 2022) ("A party uses the attorney-client privilege as both a sword and a shield when asserting a claim that in fairness requires examination of protected communications." (citation modified)). This of course impermissibly burdens Mr. Goldstein's right to exercise the privilege over spousal communications.

Stripped of the impermissible inference that the privileged communications at issue here contained instructions from Mr. Goldstein to Ms. Howe to sign the March 1, 2021 mortgage application on Mr. Goldstein's behalf, the three emails have *zero* relevance and should be excluded under Rule 401 and Rule 403. Those emails are "*only* probative if one infers" the contents of privileged communications between Mr. Goldstein and Ms. Howe. *Parker*, 900 F.2d at 775 (emphasis added). Where materials are "only relevant to the extent that an inference may

be drawn as to the substance of [privileged communications]" and are "only relevant in order to draw this improper inference," courts in this Circuit readily exclude such evidence. *E.g.*, *Sharer v. Tandberg, Inc.*, No. 06-626, 2007 WL 983849, at *2 (E.D. Va. Mar. 27, 2007) (finding that the "danger of unfair prejudice . . . greatly outweighs any probative value under Rule 403 of the Federal Rules of Evidence"). Here too, the Court should exclude the three email communications whose *only* probative value is the impermissible inference about the contents of privileged communications between Mr. Goldstein and Ms. Howe.

## CONCLUSION

For the foregoing reasons, the Court should grant the defense's motion to exclude the government's "rebuttal" evidence and order that the government is precluded from introducing the three emails attached as Exhibit A.

Dated: February 16, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*