IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

### MOTION FOR REMEDIES TO CURE IMPROPER ARGUMENTS IN GOVERNMENT'S CLOSING STATEMENT

The government made three improper arguments in its closing statements.

First, in direct contravention of its representations to the Court, the government twice attempted to argue to the jury that it could find venue on Count 15 even though defendant Thomas Goldstein was not in Maryland on the date of the offense because Mr. Goldstein asked his wife (who was in Maryland, according to the government) to sign and file the application charged in Count 15.  In an attempt to bolster this improper argument, the government twice showed the jury the privileged March 1, 2021 email from Mr. Goldstein to his wife, a document that has no other possible relevance in the case.  This argument was completely improper. Earlier that morning at the conclusion of the charge conference, the Court rejected yet another attempt by the government to insert this theory of venue into the jury instructions.  At the conclusion of that discussion, the government promised the Court that it would not make arguments in closing that were inconsistent with this ruling.  That afternoon, the government broke its promise to the Court twice, in its initial closing and again in rebuttal.  To remedy the jury confusion caused by the government's improper conduct, the defense requests that the Court

1

add a sentence to the relevant jury instruction clarifying that the jury may not find venue on Count 15 on the basis that Mr. Goldstein caused his wife to take an action in Maryland.

Second, the government falsely told the jury on three separate occasions that no evidence exists to corroborate the testimony of defendant Thomas Goldstein regarding his 2016 gambling winnings and losses outside the United States. This point was central to the government's closing argument on the 2016 gambling numbers, which was that Mr. Goldstein hid gambling winnings with Mr. Phua in Asia. But as the government well knows, those winnings and losses were recorded on a ledger kept by Paul Phua. The government successfully objected to the admission of the ledger at trial, then improperly argued to the jury that there was no evidence to corroborate Mr. Goldstein's testimony.

Third, the government once again attempted to constructively amend the indictment by arguing to the jury that it could convict Mr. Goldstein based on uncharged false statements.

To remedy these improper arguments, the defense requests: (1) addition of a single sentence to the venue instruction clarifying that the government cannot rely on the improper theory of venue that it twice attempted to argue to the jury; (2) admission of a single page summary of the losses recorded on the Phua ledger or a brief curative jury instruction; and (3) a curative jury instruction on the uncharged false statement.

## ARGUMENT

### I.    The Government Misrepresented Its Burden To Prove Venue

Yesterday morning, the Court unambiguously ruled that the government cannot prove venue for Counts 14-16 by demonstrating that "the alleged false statement was communicated" within the District of Maryland. *See* ECF No. 428, at 17. Instead, as the final jury instructions clearly state, "the government must prove that Mr. Goldstein made the alleged false statement to the mortgage lending business from a location within the District of Maryland." After the Court

ruled on this instruction, defense counsel raised the concern that "the government is going to stand up...in their closing and try to say something different[,] that he caused someone to make a false statement in Maryland where Mr. Goldstein was not, in fact, in Maryland. And we think that argument would be inconsistent with this venue instruction." 2/18/26 Tr. 19:13-19. On behalf of the government, Trial Attorney Hayter Whitman promised the Court that the government would not make such an argument: "The government will do its best and will comply with the Court's orders and argue consistent with the instructions." *Id.* 19:21-23.

In its closing arguments, the government broke its word to the Court not once but twice. Despite those rulings and representations, Trial Attorney Sean Beaty (in the initial closing) and Assistant United States Attorney Adeyemi Adenrele (in the rebuttal closing) both tried to argue to the jury the theory of venue that the Court had just rejected in a blatant attempt to mislead the jury as to the correct legal standard. *See* 2/18/26 Tr. 87:14-20; 204:2-3. Both times the government attempted to bolster its argument by showing the jury a privileged March 1, 2021 email from Mr. Goldstein to his wife. This document, which was not included on the government's exhibit list and was introduced over the defense objection in the rebuttal case, is a privileged spousal communication that has no relevance other than to attempt to show that Mr. Goldstein caused his wife to sign and transmit the mortgage application, which is exactly the theory of venue that the Court rejected at the charge conference and that the government promised not to mention in its closing argument.

The government's purpose in twice violating its promise to the Court was obvious—to mislead the jury into believing that it can find that Mr. Goldstein "made" the false statement by causing his wife to sign and transmit the March 1 loan application, which is wrong. The government's improper conduct is nothing more than an attempt to capitalize on the fact that the

3

venue instruction as currently written does not expressly state that causing the application to be made does not qualify. Now that the government has inappropriately sought to capitalize on that silence, a curative instruction is necessary. The defense requests to add following sentence to the end of the first paragraph of Instruction No. 68:

> **Nor is it sufficient for the government to prove that Mr. Goldstein caused someone else to make the alleged false statement from a location within the District of Maryland, if Mr. Goldstein himself was not within the District of Maryland.**

If the government is not pursuing a theory of venue that this Court has expressly rejected, then it should have no objection to this clarifying instruction.

II.     **The Government Violated Mr. Goldstein's Due Process Rights By Arguing That He Lacks Evidence That The Government Knows Exists, and That the Government Moved To Exclude**

The government misled the jury in its closing argument about the Phua ledger. As Mr. Goldstein testified, the Phua ledger was a spreadsheet where Paul Phua was keeping track of Mr. Goldstein's gambling wins and losses outside the United States during the relevant period. 2/11/26 Tr. 143:20-144:6. Mr. Phua's assistant would occasionally send Mr. Goldstein photographs of the ledger to confirm its accuracy. Mr. Goldstein testified that he relied in good faith on the numbers in the ledger when providing his accountant with information about his 2016 gambling winnings and losses. 2/11/26 Tr. 227:24-228:12. The defense attempted to move the ledger into evidence as relevant to Mr. Goldstein's state of mind. *Id.* The Court sustained the government's objection. *Id.*

In its closing argument, the government deeply misled the jury about the Phua ledger in several respects. First, the government improperly told the jury that "there are no records, at least no records the IRS can get its hands on, of Mr. Goldstein's poker winnings in Asia." 2/18/26 Tr. 18-19. This statement is completely untrue. As the government knows, there is such

4

a record—the Phua ledger that the government kept out of the trial.  And the government also knows that the IRS "can get its hands on" those records—they were in Mr. Goldstein's phone, they were produced in Rule 16 discovery, and they could have been obtained by an overseas grand jury subpoena, an investigative technique that the government used several times in this case.

Second, the government improperly told the jury, "The only evidence of Mr. Goldstein having offsetting losses in Asia is Mr. Goldstein's own testimony." 2/18/26 Tr. 71:3-5.  This statement is also completely untrue.  As the government knows, Mr. Goldstein's testimony about his offsetting losses in Asia was strongly corroborated by the Phua ledger, which the government excluded from trial.  The government asked Mr. Goldstein virtually no questions about his 2016 overseas gambling losses when he testified, because the government knew that questioning the credibility of Mr. Goldstein's testimony on this topic would lead to admission of the ledger on redirect examination.  For example, if the government had asked Mr. Goldstein on cross-examination whether there was any evidence to corroborate his testimony about the offsetting losses overseas, the ledger surely would have been admissible at that point.  Instead, the government chose to wait for its closing argument and then mislead the jury about the absence of corroborating evidence.

Third, immediately after making the false statement that there was no corroborating evidence of Mr. Goldstein's overseas losses, the government told the jury, "Think about this.  Mr. Goldstein paid Zachary Marks, a forensic accountant, $79,000 to testify in this case about Gelman's mistakes.  But Mr. Marks testified that he never reviewed any of the poker-related records in this case.  Let me say that again.  Mr. Goldstein did not ask his own accountant to evaluate Mr. Goldstein's own poker records." *Id.* 71:6-12.  This statement, which the

5

government made immediately after the line quoted above about the offsetting losses in Asia, was a clear reference to the Phua ledger. This statement also deeply misled the jury. As the government is aware, the defense *did* ask a forensic accountant and colleague of Mr. Marks named David Williams to review and analyze the poker-related records in this case, including the Phua ledger. The defense did not call Mr. Williams to testify on this topic once the Court excluded the Phua ledger.

These were not passing comments. The government's central point in closing argument on the 2016 gambling numbers was that Mr. Goldstein hid his gambling winnings in Asia. *See, e.g.*, 2/18/26 Tr. 54:18-20 ("He knows that there are no records, at least no records the IRS can get its hands on, of Mr. Goldstein's poker winnings in Asia."); *id.* 64:22-25 ("The IRS did not know that Mr. Goldstein had won an additional $22 million in poker in Asia in 2016. The IRS did not know that Mr. Goldstein had a secret virtual account with Paul Phua in Asia."); *id.* 69:17-20 ("But the IRS didn't count all of Mr. Goldstein's winnings in Asia because they never touched his U.S. or Montenegrin bank accounts. It's all stashed with Paul Phua in Asia."); *id.* 70:2-5 ("…you should reject Mr. Goldstein's claim that there are offsets to his domestic gambling income in the form of unreported losses in Asia and set asides."). The government used its misrepresentations to the jury about the Phua ledger to bolster this central point by falsely suggesting to the jury that there was no evidence that, far from having millions of dollars in a secret bank account in Asia, Mr. Goldstein actually lost money gambling overseas in 2016.

These statements violated Mr. Goldstein's right to due process. Under the Due Process Clause, it is "plainly improper" for a prosecutor to "argue the absence of evidence she well kn[ows] exist[s]." *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009). And the government may not "present to the jury statements or inferences it knows to be false or has very

strong reason to doubt." *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009); *see also United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998) (prosecutor prejudicially mislead the jury by "forcefully stating an unreasonable inference"); *United States v. Udechukwu*, 11 F.3d 1101, 1106 (1st Cir. 1993) ("It is . . . improper to imply reliance on a fact that the prosecutor knows to be untrue, or to question the existence of someone who is known by the prosecution to exist.").

That is precisely what the government did here. The government knows that the Phua ledger exists, and that it corroborates Mr. Goldstein's testimony about his gambling winnings and losses outside the United States in 2016. Yet the government argued to the jury three times that this evidence does not exist, telling the jury that "the only evidence of Mr. Goldstein having offsetting losses in Asia is Mr. Goldstein's own testimony," 2/18/26 Tr. 71:3-5, and that there were "no records the IRS can get its hands on, of Mr. Goldstein's poker winnings in Asia," *id.* At 18-19, and that Mr. Goldstein's forensic investigators "never reviewed any of the poker-related records in this case," *id*. at 71:8-9. *See, e.g.*, *United States v. Blueford*, 312 F.3d 962, 963–64, 968 (9th Cir. 2002) (holding that the government "violated defendant's right to a fair trial" where "the prosecution[] . . . ask[ed] the jury to infer that [the defendant] had fabricated his alibi in certain telephone calls with witnesses in the weeks just before the trial, when in fact the government had evidence contradicting some of its assertions").

While the defense attempted to correct the government's serious mischaracterization of the evidence in its own closing statement, that is not sufficient. While the defense attempted (over the government's objection) to remind the jury that the government clearly knew about the Phua ledger, the defense was not able to explain to the jury that the government's statements were untrue, because the ledger was not in evidence. The only way to correct this

mischaracterization and the resulting due process violation is to supplement the record with the evidence that the government falsely told the jury does not exist.

     The appropriate remedy is to reopen the evidence for the limited purpose of admitting a single document that corrects the government's false statements to the jury—a PowerPoint slide attached as Exhibit A summarizing the 2016 overseas losses recorded in the Phua ledger. The slide summarizes the gambling transactions from the screen shots of the Phua ledger that Mr. Goldstein received in 2016. Those screen shots, and the text messages containing them, were produced to the government in Rule 16 discovery and are included in the exhibit marked as DX-737. In the alternative, the defense requests that the Court admit the screen shots of the ledger into evidence. The Court has wide latitude to fashion a remedy for the government's due process violation in its closing argument. *See, e.g.*, *United States v. Bowman*, 106 F.4th 293, 307 (4th Cir. 2024) (district court "'is afforded broad discretion in controlling closing arguments,'" including "the discretion to … 'ensure that argument does not stray unduly from the mark'" (citations omitted)); *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1168–69 (10th Cir. 2017) ("Because the presiding trial judge is present in the courtroom throughout the proceedings, he or she is uniquely positioned to assess the prejudicial effect of an improper argument in the context of the overall trial, as well as to fashion an appropriately tailored remedy."). That discretion includes the ability to reopen evidence. *See United States v. Cohen*, 888 F.2d 770, 774 (11th Cir. 1989) (district court did not abuse discretion in reopening evidence to admit previously excluded evidence to correct misimpression left by closing argument). And that remedy is particularly appropriate here, because the only way to cure the misimpression created by the government—i.e., that evidence does not exist—is to show the jury a summary of the evidence.

If the Court is not inclined to admit the summary or the screen shots of the ledger into evidence, then the defense requests in the alternative that the Court instruct the jury that it may not speculate that there is no evidence to support Mr. Goldstein's testimony about his gambling winnings and losses outside the United States in 2016.  Such an instruction would correct the misimpression left with the jury by the government's improper statements in its closing argument.  The defense proposes the following language for that instruction: "In their closing arguments yesterday, the parties referenced a ledger kept by Paul Phua.  The ledger was not admitted into evidence in this case, although it was used to refresh witness recollection.  You are not to speculate about why the ledger was not admitted into evidence.  And you may not infer that the ledger, or the fact that the ledger was not admitted into evidence, supports the government's contention that Mr. Goldstein underreported his 2016 gambling winnings."

### III. The Government Constructively Amended The Indictment By Arguing That The Jury Should Convict On The Basis of An Uncharged Affirmative Act of Evasion

In its closing argument, the government argued that the jury should convict Mr. Goldstein of tax evasion under Count One based on an allegedly false statement he made to Officer Parrish in 2018 about his line of credit with the Resnicks.  *See* 2/18/26 Tr. 63:25-64:1 ("Mr. Goldstein never disclosed the debt to the Resnicks to Officer Parrish.")  That allegation appears nowhere in the Second Superseding Indictment.  In fact, the indictment identifies—and identifies specifically—only one allegedly false statement that Mr. Goldstein made to Officer Parrish:  that "his outstanding liability for 2016 was attributable to his receipt of a significant legal fee."  ECF No. 337-2, ¶ 42; *see also id.* ¶ 28 ("In March 2018, GOLDSTEIN falsely told an IRS Revenue Officer seeking to collect his unpaid taxes for 2016 that his unpaid tax liability for that year was attributable to a legal case").

The government's suggestion to the jury that it may convict Mr. Goldstein on the basis of an uncharged false statement constitutes an unconstitutional constructive amendment to the indictment. *See United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994), *overruled on other grounds by United States v. Banks*, 29 F.4th 168 (4th Cir. 2022) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."); *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999), *overruled on other grounds by Banks*, 29 F.4th 168 ("When the government, through its presentation of evidence and/or its argument . . . broadens the bases for conviction beyond those charged in the indictment, a constructive amendment [to the indictment] . . . occurs."). "Had the government simply charged [Mr. Goldstein] generically under Section 7201 with the willful evasion of a tax, we might have a different situation. But it did not." *United States v. Farr*, 536 F.3d 1174, 1181 (10th Cir. 2008) (Gorsuch, J.). Instead, the 56-page speaking indictment identifies with particularity the specific false statement that Mr. Goldstein allegedly made to Officer Parrish. ECF No. 337-2, ¶¶ 28, 42. "It is settled law . . . that the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself, such that '[i]f an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars.'" *Farr*, 536 F.3d at 1181 (citation omitted) (alteration adopted).

To remedy the government's unconstitutional attempt to constructively amend the indictment in its closing statement, the defense requests one of the following curative jury instructions:

1. Add to Instruction No. 60 the following sentence: "**I further instruct you that Mr. Goldstein is not charged with any crime in connection with any**

**statement he made or did not make to Officer Parrish regarding Mr. Goldstein's line of credit with the Resniks**."

2. Add to Instruction No. 41 the following bolded text: "making false and misleading statements to an IRS Revenue Officer in March 2018**, namely by falsely telling the IRS Revenue Officer that his outstanding tax liability for 2016 was attributable to his receipt of a significant legal fee**."

Dated: February 19, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*