**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Criminal Action No. 25-cr-00006-LKG |
| | ) |
| THOMAS C. GOLDSTEIN, | ) Dated:　June 22, 2026 |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION ON THE DEFENDANT'S RENEWED MOTION
FOR  JUDGMENT OF ACQUITTAL, OR, IN THE ALTERNATIVE,  A  NEW TRIAL**

### I.　　INTRODUCTION

Pending before the Court for resolution is Defendant, Thomas C. Goldstein's renewed motion for judgment of acquittal, or, in the alternative, a new trial.  ECF No. 487.  The motion is fully briefed.  ECF Nos. 487, 505 and 513.  The Court held a hearing on the motion on June 16, 2026.  ECF No. 534.  For the reasons that follow, and those stated during the June 16, 2026, hearing, the Court **DENIES** Mr. Goldstein's renewed motion for judgment of acquittal, or, in the alternative, a new trial (ECF No. 487).

### II.　　FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2025, a federal Grand Jury sitting in the District of Maryland returned a 22-Count Indictment against Mr. Goldstein for violations of federal tax laws and for making false statements on mortgage loan applications.  ECF No. 1.  On January 27, 2025, Mr. Goldstein made his initial appearance, and he pleaded not guilty to all charges.  ECF No. 4.

On August 7, 2025, the Grand Jury returned a Superseding Indictment.  ECF No. 159.  On October 7, 2025, Mr. Goldstein pleaded not guilty to the charges in the Superseding Indictment.  ECF No. 185.  On November 20, 2025, the Grand Jury returned a Second Superseding Indictment.  ECF No. 239.  On December 12, 2025, Mr. Goldstein pleaded not guilty to the charges in the Second Superseding Indictment.  ECF No. 276.

The Second Superseding Indictment

The Second Superseding Indictment alleges that, between 2016 and 2022, Mr. Goldstein committed various tax crimes, including evading assessment of his income taxes, aiding and assisting in the preparation of false Forms 1040 for himself and false Forms 1120S for his law firm, Goldstein & Russell, P.C., willfully failing to pay his income taxes and making false statements on certain mortgage loan applications. *See generally* ECF No. 239. Specifically, the Second Superseding Indictment alleges, among other things, that:

> Between 2016 and 2022, [Mr. Goldstein] engaged in a scheme to evade the assessment of taxes, file false tax returns, and fail to pay his tax obligations when they were due. In furtherance of that scheme:
>
>> [Mr. Goldstein] used over $1.1 million of [Goldstein & Russell] funds to pay personal debts in 2016, including gambling debts owed to poker players and payments due on Note-1, causing the filing of false Forms 1120S and 1040 and the evasion of a substantial amount of his 2016 income tax;
>>
>> [Mr. Goldstein] falsely understated his gambling winnings by more than $3.9 million on his 2016 Form 1040, causing the filing of a false Form 1040 and the evasion of a substantial amount of his 2016 income tax;
>>
>> In March 2018, [Mr. Goldstein] falsely told an IRS Revenue Officer seeking to collect his unpaid taxes for 2016 that his unpaid tax liability for that year was attributable to a legal case resulting in a large payment to [Mr. Goldstein] whereas, in truth, his liability was attributable principally to gambling income;
>>
>> [Mr. Goldstein] diverted $250,000 in legal fees due and owing to [Goldstein & Russell]from Law Firm-1 to his Gambling Account, causing the false understatement of [Goldstein & Russell's] corporate receipts and the evasion of a substantial amount of his 2017 income tax;
>>
>> [Mr. Goldstein] used $175,000 of [Goldstein & Russell] funds in 2017 to pay a personal gambling-related debt that he owed to Law Firm-2, causing the filing of false Forms 1120S and 1040 and the evasion of a substantial amount of his 2017 income tax;
>>
>> [Mr. Goldstein] falsely omitted $200,000 in gambling winnings from his 2017 Form 1040 by directing a Nevada-based professional poker player ("Professional Gambler-1")

2

to send winnings that he owed to [Mr. Goldstein] to Law Firm-2 in order to satisfy part of a personal gambling-related debt that [Mr. Goldstein] owed to Law Firm-2;

[Mr. Goldstein] falsely stated in an October 11, 2018, email to the Accounting Firm that he had "[n]o gambling winnings" in 2017, causing the preparation and filing of a 2017 Form l040 that falsely omitted over $3.4 million in gambling winnings;

[Mr. Goldstein] falsely omitted from his 2017 Form 1040 over $210,000 in income from a 401K distribution;

[Mr. Goldstein] used [Goldstein & Russell] assets in 2018, in the form of a $125,000 legal fee due to [Goldstein & Russell] from Law Firm-2, to satisfy a $125,000 gambling-related debt owed personally by [Mr. Goldstein] to Law Firm-2, causing the filing of false Forms 1040 and 1120S and the evasion of a substantial amount of his 2018 income tax;

[Mr. Goldstein] used tens of thousands of dollars of [Goldstein & Russell]funds in 2018 to pay health insurance premiums and full salaries to women, despite the fact that the women were not entitled to insurance coverage and performed little or no work for [Goldstein & Russell] and the payments were actually personal in nature;

[Mr. Goldstein] falsely understated substantial amounts of gambling and other income on his 2018 Form 1040, resulting in the evasion of a substantial amount of his 2018 income tax;

[Mr. Goldstein] used $170,000 of [Goldstein & Russell] funds to pay a personal gambling debt in 2019, causing the filing of false Forms 1120S and 1040 and the evasion of a substantial amount of his 2019 income tax;

[Mr. Goldstein] falsely omitted from his Forms 1040 for the 2016, 2017, and 2018 tax years certain interest income received through the Gambling Account, the records for which [Mr. Goldstein] failed to provide to the Accounting Firm;

[Mr. Goldstein] falsely stated on his 2020 and 2021 Forms 1040 that he had not received, sold, sent, exchanged, or otherwise acquired or disposed of any financial interest in any virtual currency—despite the fact that he had engaged in dozens of cryptocurrency transactions totaling over $10 million over those two tax years;

3

[Mr. Goldstein] falsely omitted $500,000 in legal fee income from the 2021 [Goldstein & Russell] Form 1120S, resulting in the filing of a false Form 1040 and the evasion of a substantial amount of his 2021 income tax;

[Mr. Goldstein] willfully failed to pay his 2016, 2017, 2019, 2020, and 2021 taxes when due, despite spending millions of dollars on personal expenses, including luxury purchases and payments to and on behalf of women;

[Mr. Goldstein], throughout the relevant period, systematically and repeatedly failed to provide to the Accounting Firm, or to [Goldstein & Russell's] firm managers, records of his gambling wins and losses, despite the fact that [Mr. Goldstein] at times kept records of his gambling activity, and throughout the relevant period had access to such information, including Forms 1099 and bank records;

[Mr. Goldstein] made false and misleading statements to IRS representatives during an interview on October 14, 2020;

[Mr. Goldstein] repeatedly offered things of value, including cryptocurrency and a $10,000 bonus, to a [Goldstein & Russell]firm manager in late 2020 through early 2021, at least in part to dissuade her from cooperating with the IRS's ongoing criminal investigation; and

[Mr. Goldstein] transferred at least $960,000 in personal funds into [Goldstein & Russell's] Interest on Lawyers' Trust Account ("IOLTA") in March 2021 so that he could prevent the IRS from levying the funds before using them to purchase a new home.

*Id.* at ¶ 28.[1]

The Jury Trial

The Court held a six-week jury trial in this criminal matter, during the period January 12, 2026, to February 26, 2026. *See generally* ECF Nos. 348, 349, 350, 351, 356, 359, 361, 379, 384, 392, 393, 394, 398, 404, 409, 413, 415, 423, 429, 432, 451, 454 and 456. During the trial, the Government presented the testimony of 39 witnesses and introduced more than

---

[1] On January 12, 2026, the Court granted the Government's motion to dismiss Counts 2–6 and 15 of the Second Superseding Indictment. ECF No. 343. Mr. Goldstein was tried on one count of tax evasion, eight counts of aiding and assisting in the preparation of false tax returns, four counts of willful failure to pay, and three counts of making false statements on loan application. *See* ECF No. 337-2 (streamlined indictment for trial).

400 trial exhibits.  *See*  ECF No. 457.  The parties also entered into six factual stipulations that were read to the Jury.  *See, e.g.*, ECF No. 438 at 35–41 (January 29, 2026, Tr. at 35:03–41:5 and 115:1–16).  In addition, the Defense presented a case, during which Mr. Goldstein testified in his own defense.  *See* ECF Nos. 466 and 447.  The Defense also introduced 76 exhibits during the trial.  ECF No. 458.

The Court held the charge conference on February 17, 2026.  *See* ECF No. 448.  Thereafter, the parties presented their closings arguments to the Jury on February 18, 2026.  *See* ECF No. 449.  The Court instructed the Jury on February 19, 2026.  *See* ECF No. 450.

After two days of deliberations, the Jury reached a verdict.  *See, e.g.*, ECF No. 454.  On February 25, 2026, the Jury convicted Mr. Goldstein on one count of tax evasion, four counts of aiding and assisting in the preparation of false tax returns, four counts of willful failure to pay taxes, and three counts of false statements on loan applications.  *See* ECF No. 462.  The Jury acquitted Mr. Goldstein on four counts of aiding and assisting in the preparation of false return.  *Id.*

On February 26, 2026, the Jury was retained to decide whether there was a sufficient nexus between Mr. Goldstein's residence in Washington, DC and his commission of the offense of false statement on loan applications as alleged in Count 16 of the Indictment. ECF Nos. 456 and 462.  The Jury reached a verdict that same day and declined to find such a nexus.  ECF Nos. 456 and 462.

<u>The Jury Instructions</u>

At the conclusion of the trial, the Court gave 65 instructions to the Jury (the "Jury Instructions") regarding the law applicable to this case.  *See* ECF No. 450.  The Jury Instructions were based upon the proposed jury instructions that the parties jointly submitted to the Court on February 17, 2026.  ECF Nos. 422 and 424.  Several of the Court's Jury Instructions are relevant to the pending motion.

First, the Court instructed the Jury on the charges in this case as follows:

(Indictment Is Not Evidence)

The defendant here, Thomas Goldstein, is charged with various crimes about which I will instruct you shortly. Each charge is called a "count." I will refer to each count by the number assigned to it in the charging instrument, called an indictment, but you will not be furnished with the indictment itself, because an indictment is merely a statement of

charges and not itself evidence. At times my instructions may reference language from the indictment. Even if I read a portion of the indictment to you, it is not evidence; it is only a statement of charges.

Jury Instruction No. 12.

#### (Multiple Counts – One Defendant)

The indictment contains a total of 16 counts. Each count charges Mr. Goldstein with a different crime. You must consider each count separately and return a separate verdict of guilty or not guilty for each. Whether you find Mr. Goldstein guilty or not guilty as to one offense should not affect your verdict as to any other offense charged.

Jury Instruction No. 14.

Second, the Court instructed the Jury on the Indictment and the relevant statutes in the case as follows:

#### (Tax Evasion – Indictment And Statute)

Count 1 of the indictment charges Mr. Goldstein with evasion of income tax, and aiding, abetting, counseling, commanding, inducing, or procuring such an offense.

Count 1 alleges that from in or about January 2016 through in or about March 2021, in the District of Maryland and elsewhere, Mr. Goldstein willfully attempted to evade and defeat the income tax due and owing and the payment thereof by him to the United States of America, for the tax year 2016.

The indictment alleges that Mr. Goldstein violated section 7201 of Title 26 of the United States Code, which provides in pertinent part: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by [the Internal Revenue Code shall be guilty of a crime]." The indictment also alleges that Mr. Goldstein violated section 2 of Title 18 of the United States Code, which provides in pertinent part: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal" and "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Jury Instruction No. 32.

(False Returns – Indictment And Statute)

Counts 2-9 of the indictment charge Mr. Goldstein with aiding or assisting in the filing of a false tax return, and aiding, abetting, counseling, commanding, inducing, or procuring such an offense. The indictment reads as follows:

On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with a matter arising under, the internal revenue laws, of returns, claims, and other documents, that is, the IRS Forms 1040 and 1120S and attached schedules set forth below, for the tax years set forth below, each of which returns, claims and other documents, as Mr. Goldstein then and there knew, were false and fraudulent as to one or more material matters, as set forth below:

| COUNT | TAXPAYER/ RETURN | TAX YEAR | FILING DATE (Approximate) | FALSE ITEMS |
|---|---|---|---|---|
| 2 | **GOLDSTEIN** Form 1040 | 2017 | 10/15/2018 | a) Line 17: S Corp Income from Schedule E of $3,214,887<br><br>b) Line 21: Other Income of $0<br><br>c) Line 22: Total Income of $3,374,846<br><br>d) Line 78: Amount Owed of $1,037,595 |
| 3 | [Goldstein & Russell] Form 1120S | 2017 | 09/15/2018 | a) Line 1a: Gross Receipts and Sales of $7,258,225<br><br>b) Line 19: Other Deductions of $1,491,487<br><br>c) Line 20: Total Deductions of $3,948,019 |

| COUNT | TAXPAYER/ RETURN | TAX YEAR | FILING DATE (Approximate) | FALSE ITEMS |
|---|---|---|---|---|
| 4 | **GOLDSTEIN** Form 1040 | 2018 | 10/15/2019 | a) Schedule 1, Line 17: S Corp Income from Schedule E of $336,763 <br><br> b) Schedule 1, Line 21: Other Income of $0 <br><br> c) Line 6: Total Income of $527,879 <br><br> d) Line 22: Amount Owed of $25,109 |
| 5 | [Goldstein & Russell] Form 1120S | 2018 | 04/15/2019 | a) Line 1a: Gross Receipts and Sales of $7,354,028 <br><br> b) Line 19: Other Deductions of $3,231,942 <br><br> c) Line 20: Total Deductions of $6,839,880 |
| 6 | **GOLDSTEIN** Form 1040 | 2019 | 10/15/2020 | a) Schedule 1, Line 5: S Corp Income from Schedule E of $1,973,681 <br><br> b) Schedule 1, Line 8: Other Income of $12,400 <br><br> c) Line 7a: Other Income from Schedule 1 of $2,011,519 <br><br> d) Line 23: Amount Owed of $681,515 |

| COUNT | TAXPAYER/ RETURN | TAX YEAR | FILING DATE (Approximate) | FALSE ITEMS |
|---|---|---|---|---|
| 7 | [Goldstein & Russell] Form 1120S | 2019 | 09/15/2020 | a) Line 1a Gross Receipts and Sales of $6,828,938<br><br>b) Line 19 Other Deductions of $928,755<br><br>c) Line 20: Total Deductions of $4,845,868 |
| 8 | **GOLDSTEIN** Form 1040 | 2020 | 10/15/2021 | a) Answer "No" to question whether, at any time during 2020, the defendant had received, sold, sent, exchanged, or otherwise acquired any financial interest in any virtual currency<br><br>b) Schedule 1, Line 5: S Corp Income from Schedule E of $2,818,297<br><br>c) Schedule 1, Line 8: Other Income of $0<br><br>d) Line 9: Total Income of $2,976,261 |

9

| COUNT | TAXPAYER/ RETURN | TAX YEAR | FILING DATE (Approximate) | FALSE ITEMS |
|---|---|---|---|---|
| 9 | **GOLDSTEIN** Form 1040 | 2021 | 10/15/2022 | a) Answer "No" to question whether, at any time during 2021, the defendant had received, sold, sent, exchanged, or otherwise disposed of any financial interest in any virtual currency<br><br>b) Schedule 1, Line 5: S Corp Income from Schedule E of $3,517,770<br><br>c) Schedule 1, Line 8b: Gambling Income of $0<br><br>d) Line 9: Total Income of $3,675,863<br><br>e) Line 37: Amount Owed of $1,139,488 |

The indictment alleges that the defendant violated section 7206(2) of Title 26 of the United States Code, which provides that: "Any person who willfully aids or assists in, or procures, counsels or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim or other document, which is fraudulent or is false as to any material matter … [shall be guilty of a crime]." The indictment also alleges that the defendant violated section 2 of Title 18 of the United States Code, which provides in pertinent part: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal" and "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Jury Instruction No. 39.

(Failure To Pay – Indictment And Statute)

Counts 10-13 of the indictment charge Mr. Goldstein with failing to timely pay income taxes, and aiding, abetting, counseling, commanding, inducing, or procuring such an offense. The indictment reads as follows:

In the tax years set forth below, in the District of Maryland and elsewhere, Mr. Goldstein received taxable income of at least the amounts set forth below, on which taxable income there was owing to the United States of America an income tax of at least the amounts set forth below, which required the defendant to pay, on or before the payment due dates set forth below, that income tax to the Internal Revenue Service. Well-knowing the foregoing, on or about the tax payment due dates set forth below, the defendant did willfully fail to pay the income tax due, as follows:

| COUNT | TAX YEAR | TAXABLE INCOME (Reported on Tax Return) | APPROXIMATE TAX DUE | PAYMENT DUE DATE |
|---|---|---|---|---|
| 10 | 2017 | $2,707,866 | $1,037,595 | 04/17/2018 |
| 11 | 2019 | $2,004,734 | $512,522 | 07/15/2020 |
| 12 | 2020 | $2,941,485 | $947,137 | 05/17/2021 |
| 13 | 2021 | $3,675,863 | $1,139,488 | 04/18/2022 |

The indictment alleges that Mr. Goldstein violated section 7203 of Title 26 of the United States Code, which provides in pertinent part: "Any person required under this title to pay any estimated tax or tax . . . who willfully fails to pay such estimated tax or tax . . . at the time or times required by law or regulations, [shall be guilty of a crime]."

Jury Instruction No. 44.

False Statement On A Loan Application – Indictment And Statute)

Counts 14-16 of the indictment charge Mr. Goldstein with making a false statement on a mortgage loan application, and aiding, abetting, counseling, commanding, inducing, or procuring such an offense.

11

Count 14 alleges that on or about February 24th of 2021, in the District of Maryland and elsewhere Mr. Goldstein did knowingly make false statements and reports for the purpose of influencing in any way the actions of First Savings Mortgage Corporation, a mortgage lending business as defined in Title 18, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in that, in connection with the loan application seeking approximately $2 million, Mr. Goldstein represented that the information he provided in the application was true, accurate and complete as of the date of the application, when in truth and fact Mr. Goldstein knew that the application had omitted liabilities totaling over $15 million based on the amounts owed under Note 1 and Note 2 and omitted over $512,000 that Mr. Goldstein then owed to the Internal Revenue Service for the 2019 tax year and that Mr. Goldstein answered "no" in response to the question whether Mr. Goldstein was currently delinquent or in default on a federal debt, when in truth and in fact, Mr. Goldstein knew that he had unpaid tax liability of over $512,000 for tax year 2019.

Count 15 alleges that on or about March 1st of 2021, in the District of Maryland and elsewhere, Mr. Goldstein did knowingly make false statements and reports for the purpose of influencing in any way the action of First Savings Mortgage Corporation, a mortgage lending business as defined in Title 18, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment and loan, in that, in connection with the loan application seeking approximately $180,000, Mr. Goldstein represented that the information he provided in the application was true, accurate and complete as of the date of this application, when in truth and fact, Mr. Goldstein knew that the application omitted liabilities totaling over $15 million based on the amounts owed under Note 1 and Note 2 and omitted over $512,000 that Mr. Goldstein then owed to the Internal Revenue Service for the 2019 tax year, and that Mr. Goldstein answered "no" in response to the question whether Mr. Goldstein was currently delinquent or in default on a federal debt when, in truth and in fact, Mr. Goldstein knew that he had unpaid tax liability of over $512,000 for the 2019 tax year.

Count 16 alleges that on or about September 29th of 2021, in the District of Maryland and elsewhere, Mr. Goldstein did knowingly make false statements and reports for the purpose of influencing in any way the action of NFM Lending, a mortgage lending business as defined in Title 18, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment and loan, in that, in connection with a loan application seeking approximately $1,987,500, Mr. Goldstein represented that the information he provided in the application was true, accurate and complete as of the date he

12

signed the application, when in truth and fact, Mr. Goldstein knew that the application had omitted liabilities totaling over $14,500,000 based on the amounts owed under Note 1 and Note 2, and that Mr. Goldstein answered "no" in response to the question whether Mr. Goldstein was a co-signer or guarantor on any debt or loan that is not disclosed in this application when, in truth and fact, Mr. Goldstein knew that he was a guarantor on the two financing agreements between [Goldstein & Russell] and Parabellum, which were in the amounts of $1,600,000 and $4 million, respectively.

The relevant statute on this subject is section 1014 of Title 18 of the United States Code. That section provides, whoever knowingly makes any false statement or report for the purpose of influencing in any way the actions of a mortgage lending business upon any application loan shall be guilty of a crime.

The indictment also alleges that Mr. Goldstein violated Section 2 of Title 18 of the United States Code. This provision provides in pertinent part as follows: Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as the principal, and whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as the principal.

Jury Instruction No. 51.

The Court also instructed the Jury on the elements of the tax and false statement on loan application offenses in this case. *See* Jury Instruction Nos. 33-38 (Tax evasion); 39-43 (false tax return); 45-49 (failure to pay) and 53-57 (false statement on loan application).

After the Court held the charge conference, the Government requested that the Court not give an instruction on Section 2(a) liability to the Jury. ECF No. 452 (February 18, 2026, Tr. at 23:13–24:1). That proposed jury instruction provides as follows:

(Aiding And Abetting)

You have been instructed that for counts 1-16, Mr. Goldstein has been charged both with committing the underlying offenses and also aiding and abetting those offenses.

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof. A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

13

Accordingly, you may find Mr. Goldstein guilty of the offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed every element of the offense with which Mr. Goldstein is charged, and that Mr. Goldstein aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place. Therefore, you must find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons. But if you do find that a crime was committed, then you must consider whether Mr. Goldstein aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that Mr. Goldstein knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

For counts 1-13, to establish that defendant knowingly associated himself with the crime, the government must establish that Mr. Goldstein acted knowingly and willfully—and you have previously been instructed on the definitions of those terms in the context of counts 1-13.

For counts 14-16, to establish that defendant knowingly associated himself with the crime, the government must establish that Mr. Goldstein knowingly made or caused the making of a false statement on a mortgage loan application for the purpose of influencing in any way the mortgage lending business's action.

To establish that Mr. Goldstein participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

Participation in a crime is willful if done voluntarily and intentionally, and with the specific intent to do something which the law forbids or with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.

The mere presence of Mr. Goldstein where a crime is being committed, even coupled with knowledge by Mr. Goldstein that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being

14

> committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture.
>
> To determine whether Mr. Goldstein aided or abetted the commission of the crime with which he is charged, ask yourself these questions:
>
> Did he participate in the crime charged as something he wished to bring about?
>
> Did he knowingly associate himself with the criminal venture?
>
> Did he seek by his actions to make the criminal venture succeed?
>
> If he did, then Mr. Goldstein is an aider and abettor, and therefore guilty of the offense. If, on the other hand, your answer to any one of these questions is "no," then Mr. Goldstein is not an aider and abettor, and you must find him not guilty of aiding and abetting.

ECF No. 312 (proposed Jury Instruction No. 83). The Government argued that the proposed instruction was not appropriate, because the Indictment charged Mr. Goldstein with violating both Sections 2(a) (aiding and abetting liability) and Section 2(b) (causer liability) in the Indictment. ECF No. 452 (February 18, 2026, Tr. at 23:13–24:1). Following a discussion of the issue with the parties, the Court agreed that the Section 2(a) instruction was not appropriate in this case. *Id.* at (February 18, 2026, Tr. at 26:5–10). And so, the Court did not give the Section 2(a) instruction to the Jury. *Id.* at (February 18, 2026, Tr. at 31:19–68:22, 71:1–88:19).

Lastly, the Court instructed the Jury on the willful blindness doctrine as follows:

> In determining whether Mr. Goldstein acted knowingly, you may consider whether Mr. Goldstein deliberately closed his eyes to what would otherwise have been obvious to him.
>
> A person who attempts to cheat the justice system by consciously preserving a lack of actual knowledge of a subjectively obvious fact is just as culpable as a person who has actual knowledge of that fact. A showing of negligence is not sufficient to support a finding of willfulness or knowledge. I caution you that the willful blindness charge does not authorize you to find that [Mr. Goldstein] acted knowingly because he should have known what was occurring, or that in the exercise of hindsight he should have known what was occurring, or because he was negligent in failing to recognize what was occurring, or even because he was reckless or foolish in failing to recognize what was occurring. Instead, the government must prove beyond a reasonable doubt that [Mr. Goldstein] purposely and

15

deliberately contrived to avoid learning all of the facts. If you find that [Mr. Goldstein] was aware of a high probability that a fact exists, and took deliberate action to avoid learning of that fact, you may find that [Mr. Goldstein] acted knowingly. It is entirely up to you whether you find that Mr. Goldstein.

Jury Instruction No. 59 (Conscious Avoidance; Deliberately Closing Eyes).

Procedural History

On March 23, 2026, Mr. Goldstein filed a motion for judgment of acquittal , or in the alternative, a new trial, pursuant to Fed. R. Crim. P. 29 and 33. ECF No. 485. On March 24, 2026, Mr. Goldstein filed a corrected version of the motion. ECF No. 487.

On May 15, 2026, the Government filed a response in opposition to Mr. Goldstein's motion. ECF No. 505. On May 27, 2026, Mr. Goldstein filed a reply brief. ECF No. 513.

## III.   STANDARDS OF DECISION

### A.   Motions For Judgment Of Acquittal

Federal Rule of Criminal Procedure 29 requires the district court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). But, "[r]eversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *United States v. Booker*, 146 F.4th 332, 341 (4th Cir. 2025) (quotation omitted). Given this, the Court must "uphold the jury's verdict if, viewing the evidence in the light most favorable to the government, the verdict is supported by substantial evidence." *Id.* (quotation omitted). And so, a verdict can be overturned only "if the evidence is so insufficient that *no* rational trier of fact could convict." *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (emphasis in original). In evaluating a Rule 29 motion, the district court does not assess witness credibility, and presumes that the jury resolved any conflicting evidence in the government's favor. *United States v. Reed*, 75 F.4th 396, 401 (4th Cir. 2023).

### B.   Motions For A New Trial

Federal Rule of Criminal Procedure 33 gives the Court discretion to order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Defendants face a "demanding burden" when seeking to "disturb the jury's verdict." *United States v. Brasser*, No. 3:23-CR-00006-MOC-SCR, 2024 WL 3659305, at *2 (W.D.N.C. Aug. 5, 2024). Granting a new trial is "highly disfavored" and should only be done "sparingly." *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (cleaned up). And so, Rule 33 motions should be granted "only

16

when fundamental fairness or the integrity of the trial are substantially in doubt," *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006), such as when there is a "concern that an innocent person may have been convicted," *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).

## IV. ANALYSIS

The Defense raises several arguments seeking either a judgment of acquittal, or a new trial, pursuant to Fed. R. Crim. P. 29 and 33. The Court addresses each of these arguments in turn below.

### A. The Court Did Not Erred By Declining To Instruct The Jury On Section 2 Liability And The Timing Of This Decision Did Not Prejudice The Defense

As an initial matter, the Defense seeks a new trial in this criminal matter, because the Court did not instruct the jury on liability under title 18, United States Code, section 2(a). ECF No. 487 at 22–37. Because the Court is satisfied that a jury instruction on Section 2(a) liability was not supported by the evidence presented at trial, and that Mr. Goldstein was not prejudiced by the timing of the Court's decision not to provide this instruction to the Jury, the Court DENIES the Defense's motion for a new trial on this ground. Fed. R. Crim. P. 33.

Federal Rule of Criminal Procedure 33 gives the Court discretion to order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). When seeking to "disturb the jury's verdict," pursuant to Rule 33, the Defense faces a "demanding burden." *United States v. Brasser*, No. 23-cr-00006, 2024 WL 3659305, at *2 (W.D.N.C. Aug. 5, 2024). Given this, the Fourth Circuit has cautioned that granting a new trial is "highly disfavored" and should only be done "sparingly." *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (citation modified). And so, Rule 33 motions should be granted "only when fundamental fairness or the integrity of the trial are substantially in doubt," *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006), such as when there is a "concern that an innocent person may have been convicted," *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).

Relevant to the pending motion, the Fourth Circuit has long recognized that, "a single instruction" to the jury is not viewed in isolation; rather, the question is whether the jury "instructions accurately and fairly state the controlling law," when "taken as a whole and in the context of the entire charge." *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (quoting *United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009)); *see also United States v. Tillery*,

17

702 F.3d 170, 176 (4th Cir. 2012) ("We view an allegedly erroneous instruction in its full context.").  The Supreme Court has also held that "our legal system presumes that jurors will 'attend closely the particular language of such instructions in a criminal case and strive to understand, make sense of, and follow'" them.  *Samia v. United States*, 599 U.S. 635, 646 (2023) (citation modified) (quoting *United States v. Olano*, 507 U.S. 725, 740 (1993)).  And so, the strong presumption that jurors will follow the Court's jury instructions can be overcome only in "extraordinary situations."  *United States v. Brewbaker*, 87 F.4th 563, 584 (4th Cir. 2023) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 (1985), and citing *Bruton v. United States*, 391 U.S. 123 (1968), as an example).

Also relevant to the pending motion, Rule 30(b) of the Federal Rules of Criminal Procedure requires that a trial court "inform the parties before closing arguments how it intends to rule on the requested [jury] instructions."  Fed. R. Crim. P. 30(b).  "A violation of Rule 30 requires reversal only when [a defendant] can show actual prejudice."  *Horton*, 921 F.2d at 547.  And so, the Fourth Circuit has held that actual prejudice occurs where a violation "inhibits [a d]efendant's counsel from making his 'essential' argument to the jury."  *Clarke*, 842 F.3d at 295; *see also id.*

In this case, the Defense argues that the extraordinary remedy of a new trial is warranted, because: (1) the Court erred by declining to instruct the jury on the elements of accessory liability under Section 2 and (2) Fed. R. Crim. P. 30(b) forbids amending the Jury Instructions after the parties' closing arguments.  ECF No. 487 at 29 and 37.  In this regard, the Defense argues that there is a "reasonable likelihood" that a reasonable juror would have understood the Jury Instructions in this case to permit a conviction under Section 2.  ECF No. 513 at 12 (citing *Boyde v. California*, 494 U.S. 370, 380 (1990)).  The Defense also argues that:

> Under the Final Jury Instructions: (1) the jury could convict Mr. Goldstein on both an aiding and abetting theory (for every charge) and a cause theory (for tax evasion, false returns, and mortgage fraud); (2) to find aiding and abetting liability, the jury was not instructed that it must find another guilty principal, that Mr. Goldstein willfully intended to commit the substantive tax offenses, and that he committed an affirmative act rather than an omission; and (3) to find cause liability, the jury was not instructed that it must find that Mr. Goldstein had the intent to willfully commit the substantive tax offenses."

18

ECF No. 487 at 24.  In addition, the Defense contends that the Court's decision to not instruct the Jury on Section 2 after the parties' closing arguments prejudiced Mr. Goldstein.  *Id.* at 38.  And so, for these reasons, the Defense contends that a re-trial is warranted on every count in this case. *Id.* at 35.  For the reasons set forth below, the Court disagrees.

First, the trial record in this case shows that the evidence presented at trial was not sufficient to sustain a conviction under Section 2(a).  The Fourth Circuit has held that it is an error for the Court to give a jury instruction that is not supported by the evidence at trial.  *See, e.g.*, *United States v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990) ("No instruction may be given unless there is 'a foundation in the evidence' to support it." (citation omitted)).  To convict Mr. Goldstein based upon a Section 2(a) liability theory, the trial evidence must have shown that: (1) a person other than Mr. Goldstein committed the tax and mortgage fraud offenses charged in the Indictment; (2) that Mr. Goldstein knowingly associate himself in some way with the crime, and (3) that Mr. Goldstein participate in the crime by doing some act to help make the crime succeed. *See, e.g.*, ECF No. 487 at 23.  And so, the Government must have introduced evidence to show that a person other than Mr. Goldstein actually committed every element of the offenses for which he was charged, and that Mr. Goldstein aided or abetted that person in the commission of the offense.

Here, a careful review of the evidence presented at trial shows that the Government did not present sufficient evidence to convict Mr. Goldstein under a Section 2(a) liability theory. Notably, the evidence presented during the trial was not sufficient to show that someone other than Mr. Goldstein acted as a principal in committing the tax and mortgage fraud offenses charged in this case.  *See generally* ECF Nos. 433, 434, 435, 436, 438, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450 and 452.  Indeed, the Government acknowledged at the conclusion of the trial that it never proceeded on a Section 2(a) theory in this case.  ECF No. 505-17 at 13 and 23 (February 19, 2026, Tr. at 13:17–19, 23:12–25) (statement of Government's counsel). And so, the Court is satisfied that a Section 2(a) jury instruction was not appropriate in this case.

The Defense's argument that the Court was required to instruct the Jury on Section 2 liability, because the Jury Instructions state that the Indictment charges Mr. Goldstein with violating Sections 2(a) and 2(b), and quotes the text of these statutes, is also unconvincing.  In considering this argument, the Court is mindful that a single jury instruction should not be viewed in isolation and that the Court should assess whether the Jury Instructions "accurately

19

and fairly state the controlling law," when "taken as a whole and in the context of the entire charge." *Lighty*, 616 F.3d at 366 (quoting *Passaro*, 577 F.3d at 221); *see also Tillery*, 702 F.3d at 176 ("We view an allegedly erroneous instruction in its full context."). The Court also applies the strong presumption that the jurors in this case followed the Jury Instructions. *Brewbaker*, 87 F.4th at 584 (quoting *Francis*, 471 U.S. at 324 (1985), and citing *Bruton*, 391 U.S. at 123, as an example).

The Jury Instructions show that the Court briefly mentioned Section 2 when summarizing the charges brought against Mr. Goldstein in the Indictment. *See* Jury Instruction Nos. 32 (Tax Evasion-Indictment And Statute ), 39 (False Returns-Indictment and Statute) and 51 (False Statement on Loan Application-Indictment And Statute). Specifically, the relevant Jury Instructions state that:

> The indictment also alleges that [Mr. Goldstein] violated section 2 of Title 18 of the United States Code, which provides in pertinent part: Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal and [w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Jury Instruction No. 32 (Tax Evasion-Indictment And Statute) (internal quotation marks omitted); *see also* Jury Instruction No. 39 (False Returns – Indictment And Statute) (same); Jury Instruction No. 51 (False Statement On A Loan Application – Indictment And Statute) (stating that: "The indictment also alleges that Mr. Goldstein violated Section 2 of Title 18 of the United States Code. This provision provides in pertinent part as follows: 'Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as the principal, and whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as the principal.'"). The Court also instructed the Jury as follows: "an indictment is merely a statement of charges and not itself evidence. At times my instructions may reference language from the indictment. Even if I read a portion of the indictment to you, it is not evidence; it is only a statement of charges." Jury Instruction No. 12 (Indictment Is Not Evidence); *see also* ECF No. 505-17 at 41 (February 19, 2026, Tr. at 41:9–14). Lastly, the Court made clear to the Jury that "you will not be furnished with the indictment itself, because an indictment is merely a statement

of charges and not itself evidence." Jury Instruction No. 12 (Indictment Is Not Evidence); *see also* ECF No. 505-17 at 41 (February 19, 2026, Tr. at 41:8–10)

Taken as a whole, the Court is satisfied that the Jury Instructions make clear that the brief references to Section 2 related to the charges contained in the Indictment was not evidence for the Jury to consider and that this information simply summarized the charges alleged in the case. *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (quoting *United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009) ); *see also United States v. Tillery*, 702 F.3d 170, 176 (4th Cir. 2012) ("We view an allegedly erroneous instruction in its full context.").

The Court's Jury Instructions also make clear, as the Defense acknowledges, that the Jury was properly instructed on what the essential elements are for each of the tax and mortgage fraud offenses charged in this case. *See* Jury Instruction Nos. 33–38 (elements of tax evasion); 40–43 (elements of false returns); (elements of failure to pay); 45–49); and 52–57 (elements false statement on loan application); *see also* Jury Instruction No. 58 (false statement on loan application -venue).[2] Notably, none of the Jury Instructions regarding the elements of these tax and mortgage fraud offenses refer to Section 2. *See, e.g.*, ECF No. 505-17 at February 19, 2026, Tr. 56, 65, 79–80. And so, the Court is satisfied that the Jury Instructions, taken as a whole, did not permit the Jury to convict Mr. Goldstein based on a Section 2 liability theory.[3]

Lastly, the Court is satisfied that timing of the decision to not instruct the Jury on Section 2 liability did not prejudice Mr. Goldstein. As the Defense correctly observes, Fed. R. Crim. P. 30(b) requires that the Court "inform the parties before closing arguments [about] how it intends

---

[2] The Court also observes that the mixed verdict in this case shows that the Jury carefully considered and followed the Jury Instructions, including the instruction that the Jury not consider the allegations in the Indictment as evidence. *See, e.g.*, ECF No. 450 at February 24, 2026, at Tr. 86:5–6. Notably, the Jury acquitted Mr. Goldstein on Counts 2, 4, 5 and 6, despite the fact that the Jury Instructions briefly reference the charges in the Indictment and Section 2. And so, the trial verdict reflects that the Jury heeded the Court's instructions not to consider the allegations in the Indictment as evidence, but rather to weigh the evidence and decide whether the Government had proven the essential elements of these offenses beyond a reasonable doubt. *See United States v. Cornell*, 780 F.3d 616, 627 (4th Cir. 2015) (split verdict indicated jury "carefully considered the evidence").

[3] The Defense's argument that the Jury was allowed to convict Mr. Goldstein under a Section 2(b) theory of liability is also unpersuasive. Beyond the brief description of the Government's charges in this case, there is no mention of Section 2(b) liability in the Jury Instructions. *See, e.g.*, ECF No. 487 at 25. And so again, the Court is satisfied that the brief references to Section 2 from the Indictment did not permit the Jury to convict based upon a Section 2(b) liability theory. And so, the Court is satisfied that a jury instruction on Section 2(b) was not required.

to rule on the requested [jury] instructions." Fed. R. Crim. P. 30(b). The purpose of this rule is to "allow counsel the opportunity to argue the case intelligently to the jury." *United States v. Horton*, 921 F.2d 540, 547 (4th Cir. 1990) (internal quotation marks omitted) and to lodge objections to preserve errors for appeal and to "aid the court in giving a proper charge in the first instance." *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016) (quoting *United States v. Guadalupe*, 979 F.2d 790, 794 (10th Cir. 1992)). But the Court's failure to comply with this requirement "requires reversal only when a defendant can show actual prejudice." *Horton*, 921 F.2d at 547. And so, Mr. Goldstein must show that the violation alleged here "inhibit[ed] [his] counsel from making his 'essential' argument to the jury." *Clarke*, 842 F.3d at 295; *see also id.*

The Defense has not made such a showing here for several reasons. First, the trial record makes clear that Section 2(a) liability was not an issue that the Defense addressed during the trial. *See generally* ECF Nos. 433, 434, 435, 436, 438, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450 and 452. Rather, the Defense maintained throughout the trial that the evidence introduced by the Government was not sufficient to support a conviction under Section 2(a). *See generally* ECF Nos. 433, 434, 435, 436, 438, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450 and 452. In fact, the Defense maintained through-out the trial that the proposed jury instruction on Section 2(a) liability should not be given to the Jury, because there was "no evidence" from which the jury could find that Mr. Goldstein aided a principal under Section 2(a). ECF No. 505-15 at 3 (February 12, 2026, Tr. at 184:5–15).

Second, a careful reading of the transcript of the Defense's closing argument shows that the Defense Counsel did not address Section 2(a) liability during his closing argument to the Jury. *See* ECF No. 505-16 at 54-140 (February 18, 2026, Tr. at 96–182); s*ee generally* ECF No. 452. Lastly, the Defense also did not seek to make an additional closing argument to the Jury after learning that the Court would not instruct the Jury on Section 2(a) liability. *See generally* ECF No. 450. And so, the trial record makes clear that Defense Counsel's closing argument to the Jury would have been the same regardless of the Court's decision regarding the proposed Section 2(a) Jury Instruction.

In sum, the trial record in this case shows that: (1) the evidence did not support giving a jury  instruction on Section 2(a) liability; (2) Defense Counsel was able to make all essential points during his closing argument; and (3) advance notice that the proposed Section 2(a) instruction would be given to the Jury would not have changed the substance of that closing

22

argument.  Given this, the Court is satisfied that a Section 2(a) jury instruction was not warranted and that Mr. Goldstein was not prejudiced by the timing of the Court's decision to not give this instruction.  Because the Defense was able to make "all arguments essential to his case" and "those arguments reflected the instructions ultimately provided by the court," *Clarke*, 842 F.3d at 296, the Court DENIES the Defense's motion for a new trial on this ground.  Fed. R. Crim. P. 33.

### B.    The Court Did Not Err In Instructing The Jury On Willful Blindness

The Defense next argues without persuasion that a new trial is warranted, because the Court instructed the Jury on willful blindness with regards to the charges in this case.  ECF No. 487 at 42.  As the Fourth Circuit has held, the decision whether to give a willful blindness instruction is within the Court's discretion.  *See United States v. Jinwright*, 683 F.3d 471, 478 (4th Cir. 2012).  An instruction on willful blindness is appropriate where "a defendant undertook an active and deliberate effort to avoid imbuing himself with the knowledge that would support a criminal conviction."  *Id.*

In this case, the parties agree that the Jury's willfulness determination required evaluating whether Mr. Goldstein intentionally violated a known legal duty.  *Id.*  Given this, "the doctrine of willful blindness permits the government to prove knowledge by establishing that [Mr. Goldstein] deliberately shielded himself from clear evidence of critical facts that are strongly suggested by the circumstances."  *Id.* at 478–479 (citation modified).  And so, "willful blindness may satisfy knowledge in a criminal tax prosecution, where 'the evidence supports an inference that [Mr. Goldstein] was subjectively aware of a high probability of the existence [of a fact], and purposefully avoided learning the facts pointing to liability.'"  *Id.* (quoting *United States v. Poole*, 640 F.3d 114, 122 (4th Cir. 2011)).

In this case, the Jury Instruction on willful blindness provides that:

> In determining whether Mr. Goldstein acted knowingly, you may consider whether Mr. Goldstein deliberately closed his eyes to what would otherwise have been obvious to him.

> A person who attempts to cheat the justice system by consciously preserving a lack of actual knowledge of a subjectively obvious fact is just as culpable as a person who has actual knowledge of that fact. A showing of negligence is not sufficient to support a finding of willfulness or knowledge.  I caution you that the willful blindness charge does not authorize you to find that [Mr. Goldstein] acted knowingly because he should have known what was occurring, or

23

> that in the exercise of hindsight he should have known what was occurring, or because he was negligent in failing to recognize what was occurring, or even because he was reckless or foolish in failing to recognize what was occurring. Instead, the government must prove beyond a reasonable doubt that [Mr. Goldstein] purposely and deliberately contrived to avoid learning all of the facts.
>
> If you find that [Mr. Goldstein] was aware of a high probability that a fact exists, and took deliberate action to avoid learning of that fact, you may find that [Mr. Goldstein] acted knowingly. It is entirely up to you whether you find that Mr. Goldstein.

Jury Instruction No. 59 (Conscious Avoidance; Deliberately Closing Eyes). The Defense agrees that this Jury Instruction accurately states the law. ECF No. 487 at 28–35. The trial record also shows that this Jury Instruction was supported by the evidence.

During the trial, the Government introduced evidence to show that Mr. Goldstein denied knowledge of central facts related to his obligation to report his gambling income and tax liability. *See, e.g.*, ECF No. 505-13 at 13 and 147 (February 11, 2026, Tr. at 109:12–16 and 243:10–21) (evidence showing that Mr. Goldstein denied knowledge of relevant tax rules concerning reporting gambling winnings and losses); *id.* at 172–73 (February 11, 2026, Tr. at 268:18–269:8) (evidence showing that Mr. Goldstein denied knowledge that he underreported his 2016 gambling income).

The Government also introduced evidence to show that Mr. Goldstein was aware of a high probability that information about how to properly report his gambling income existed. Indeed, the trial record shows that the Government introduced evidence to show that Mr. Goldstein purposefully avoided learning facts about his gambling winnings and tax liability, such as knowing about the tax rules concerning gambling. *Id.* at 13 and 147 (February 11, 2026, Tr. at 109:12–16, 243:10–21); ECF No. 505-14 at 162 (Feb 12, 2026, Tr. at 162:6–15) (evidence showing that Mr. Goldstein was previously audited by the IRS about his gambling income and tax reporting); ECF No. 505-14 at 163–64 (February 12, 2026, Tr. at 163:16–164:3) (evidence showing that Mr. Goldstein chose not to hire an accountant or tax preparer who specialized in tax issues related to gambling income.); ECF No. 505-1 at 12–13 (January 15, 2026, Tr. at 203:20–204:11) (evidence showing that Mr. Goldstein advised a fellow high-stakes poker player about how to handle tax issues related to gambling).

In addition, the Government introduced evidence at trial to show that: (1) Mr. Goldstein denied knowing that he underreported his gambling income in 2016, *see* ECF No. 505-13 at

24

172–73 (February 11, 2026, Tr. at 268:18–269:8), but he failed to provide his accountant with the information necessary to determine his gambling income, *see, e.g.*, ECF Nos. 441 at 112–239 (February 3, 2026, Tr. at 112–239) and 442 at 5–170 (February 4, 2026, Tr. at 5–170) (testimony of Walter Deyhle); (2) Mr. Goldstein denied knowing that poker-related payments from his law firm's bank account would be deducted as business expenses, ECF No. 505-14 at 72–73 (Feb 12, 2026, Tr. at 72:20–73:18), but he was notified by his office manager that certain of the 2016 payments would be improperly deducted, *id.* at 92:22–94:1; (3) Mr. Goldstein denied knowing about his duty to report cryptocurrency activity on his 2020–2021 tax returns, ECF No. 505-14 at 57 (February 12, 2026, Tr. at 57:10–24), but he was notified by his outside accounting firm that cryptocurrency use could have tax consequences, ECF No. 505-36 at 3–4; ECF No. 505-29 at 2–3; and that the cryptocurrency question was on the very first page of the tax returns, *see* ECF No. 505-23 at 1; ECF No. 505-24 at 1).

The Court agrees with the Government that this evidence was sufficient to support providing the Jury with a willful blindness instruction. *See Jinwright*, 683 F.3d at 478–479. Given this, the Court is satisfied that the willful blindness Jury Instruction was appropriate in this case.[4] And so, the Court also DENIES Mr. Goldstein's motion for a new trial on this ground. Fed. R. Crim. P. 33.

### C. Mr. Goldstein Is Not Entitled To A New Trial Based On The Exclusion Of Certain Contemporaneous Text Messages

The Defense's next argument for a new trial—that the Court erred by excluding as hearsay the so-called Phua Ledger and certain text messages related to this ledger—is also unconvincing. To the extent that the Court erred in excluding this evidence, the trial record shows that such an error was harmless.

Federal Rules of Evidence 801 and 802 make clear that out-of-court statements offered to prove the truth of the matter asserted are hearsay and, thus, inadmissible at trial, unless an

---

[4] The trial record also makes clear that, to the extent the Court erred by exercising its discretion to give the willful blindness Jury Instruction, this error was harmless, because there was ample evidence before the Jury to show that Mr. Goldstein had actual knowledge of his tax obligations with regards to his gambling winnings. *See, e.g.*, ECF No. 505-14 at 92:22–94:1 (evidence showing that Mr. Goldstein's office manager sent him a spreadsheet in 2016 indicating that various poker-related payments from the law firm's bank account would be improperly deducted as business expenses); *see also United States v. Ravenell*, 66 F.4th 472, 491 (4th Cir. 2023) (holding that "any error in giving a willful blindness instruction is harmless where there is sufficient evidence in the record of actual knowledge on the defendant's part").

exception to the Hearsay Rule applies.  Fed. R. Evid. 801–802; *United States v. Gallagher*, 90 F.4th 182, 195 (4th Cir. 2024).  One such exception is that a statement offered to establish the state of mind that the statement induced on the listener is admissible for that non-hearsay purpose.  *Gallagher*, 90 F.4th at 195–96; *United States v. Leake*, 642 F.2d 715, 720 (4th Cir. 1981).  A declarant's own statement of his then-existing state of mind, including motive, intent or plan, is also admissible.  Fed. R. Evid. 803(3).

During the trial, the Defense sought to introduce several contemporaneous text messages that Mr. Goldstein exchanged with Mr. Kids, who was an assistant to Paul Phua, and certain images of the Phua Ledger, to show Mr. Goldstein's poker winnings, losses, and investor shares from the Chairman, Gores, and Tango matches.  ECF Nos. 411 (Defendant's motion *in limine* regarding his testimony) and 446 at 68–69, 86–96 and 169–170 (February 11, 2026, Tr. at 68–69, 86–96 and 169–170).  The Court ruled that this evidence was inadmissible hearsay, because the Defense sought to introduce this evidence to show the truth of the matter, namely, that Mr. Goldstein had poker losses in 2016.  *See* ECF No. 446 at 95–96 (February 11, 2026, Tr. at 95:12–96:16.

Relying on Fed. R. Evid. 803(3), the Defense argues that the Court erred in excluding this evidence, because the Phua Ledger and the text messages were admissible to show Mr. Goldstein's his state of mind regarding his gambling winnings and losses in 2016.  ECF No. 487 at 55–57.  But, as the Government persuasively argued during the June 16, 2026, hearing on the Defense's motion, portions of Mr. Goldstein's testimony on direct examination support the Court's conclusion that the Defense intended to use this evidence to show that Mr. Goldstein suffered poker losses in 2016.  ECF No. 534.

Nonetheless, to the extent the Court erred in excluding this evidence, the trial record makes clear that the error was harmless.  *United States v. Ibisevic*, 675 F.3d 342, 350 (4th Cir. 2012) (An error is harmless if it did not have a substantial or injurious effect on the verdict—that is, if the Court can say with fair assurance, after weighing all that occurred, that the judgment was not substantially swayed.).  The Fourth Circuit has held that the Court should weigh three factors in determining whether an error was harmless: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the error; and (3) the closeness of the case.  *Id.*  Here, all three factors weigh in favor of a finding of harmless error.

First, the issue of whether Mr. Goldstein had poker gambling winnings or losses in 2016 was not central to the charges in this tax and mortgage fraud case. Rather, this issue is relevant only to the tax evasion charge in Count 1 of the Indictment.

And, even with regards to the charges in Count 1, the question of whether Mr. Goldstein had gambling winnings and losses in 2016 is not central to that count, because the Government introduced other evidence regarding Mr. Goldstein's improper business deductions for the 2016 tax year that could independently show that Mr. Goldstein evaded taxes. *See, e.g.*, ECF No. 505-22 at 2; ECF No. 505-11 at 4–5 (February 11, 2026, Tr. at 175:4–176:8) (evidence showing that Mr. Goldstein routed more than $1 million in poker-related payments through his law firm's account, resulting in a tax deficiency). The Government also introduced other evidence to show affirmative acts of tax evasion that were unrelated to the amount of Mr. Goldstein's gambling winnings and losses in 2016. ECF No. 505-4 at 3 (January 22, 2026, Tr. at 228:13–20); ECF No. 505-21 at 14.

Second, at the Defense's request, the Court gave a curative instruction to the Jury that directed the Jury not to speculate about why the Phua Ledger was not admitted into evidence. Jury Instruction No. 62 (Phua Ledger). Notably, the Court instructed the Jury not to infer that the absence of this ledger supported the Government's argument that Mr. Goldstein underreported his 2016 gambling winnings. *Id.*; *see also* ECF No. 505-17 at 85 (February 19, 2026, Tr. at 85:16–24); *Ibisevic*, 675 F.3d at 351–52; *United States v. Burfoot*, 899 F.3d 326, 341 (4th Cir. 2018).

More importantly, Mr. Goldstein testified extensively about the excluded evidence during the trial. *See* ECF No. 446 at 145–146, 148–149, 160–161, 247–250 and 267–268 (February 11, 2026, Tr. at 145:5–146:18, 148:15–149:23, 160:5–161:12, 247:17–248:18 and 267:9–268:9). In doing so, Mr. Goldstein presented the substance of the excluded text messages and the Phua Ledger to the Jury. *See id.*; *see also* ECF No. 505-13 at 73 (February 11, 2026, Tr. at 169:2–170:22).

Lastly, the Court observes that this was not a close case. During the trial, the Government presented the testimony of 39 witnesses, extensive documentary evidence and six factual stipulations that were agreed to by the parties. Mr. Goldstein also testified in his own defense, including about the Phua Ledger and the text messages at issue. In addition, the Jury never

27

indicated during its two-day deliberations that it was struggling to reach a verdict in this case. *Ibisevic*, 675 F.3d at 352, 354; *United States v. Sanders*, 964 F.2d 295, 299 (4th Cir. 1992).

Given this, Mr. Goldstein was not prejudiced by any error regarding the exclusion of the Phua Ledger and the subject text messages. And so, the Court also DENIES Mr. Goldstein's motion for a new trial on this ground.

**D.    The Evidence Was Sufficient To Sustain A Conviction On Count 1**

Turning to the various grounds for the Defense's motion for judgment of acquittal, the Court first considers whether the evidence presented at trial was sufficient to satisfy a conviction on tax evasion based on the charges in Count 1 of the Indictment. Fed. R. Crim. P. 29. In this regard, the Defense challenges the sufficiency of the evidence for Count 1 related to two of the Government's theories of tax evasion: (1) Mr. Goldstein's transfer money into an IOLTA account in 2021 and (2) Mr. Goldstein's alleged false statements to IRS Office Parrish. ECF No. 487 at 64–74.

When considering a motion for judgment of acquittal under Fed. R. Crim. P. 29, the Court views the evidence in the light most favorable to the Government and sustains the verdict if any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). Relevant to the pending motion, the offense of tax evasion under 26 U.S.C. § 7201 requires: (1) a substantial tax deficiency, (2) an affirmative act constituting an attempted evasion, (3) and willfulness (*Sansone v. United States*, 380 U.S. 343, 351 (1965); *United States v. Goodyear*, 649 F.2d 226, 227–28 (4th Cir. 1981)) and the last element of this offense requires the voluntary, intentional violation of a known legal duty (*Cheek v. United States*, 498 U.S. 192, 201 (1991)). In addition, the "affirmative act" element of a tax evasion charge turns on the defendant's intent, rather than success, and any conduct for which the likely effect would be to mislead or conceal can satisfy this element. *Spies v. United States*, 317 U.S. 492, 499 (1943); *Jungles*, 903 F.2d at 474.

For the reasons discussed below, the Court is satisfied that the evidence presented at trial was sufficient to sustain a conviction under both of the challenged theories of tax evasion.

First, the trial record shows that there was sufficient evidence for a reasonable juror to convict Mr. Goldstein of tax evasion based upon his act of transferring certain funds into an IOLTA account in 2021. During the trial, the Government introduced evidence to show that: (1)

Mr. Goldstein owed the IRS for his 2016 tax liability in early 2021; (2) Mr. Goldstein knew that the IRS could levy his bank accounts to collect this outstanding tax liability; (3) Mr. Goldstein knew that the IRS had previously levied almost $1 million from his personal Wells Fargo bank account in December 2018; and (4) Mr. Goldstein knew that he had defaulted on his IRS installment agreement in March 2021, and that the IRS could collect the full amount owed under that agreement by placing a levy on his income, bank accounts, and/or other assets. ECF No. 505-5 at 3 (January 28, 2026, Tr. at 184:8–17) (testimony regarding the December 2018 levy); ECF No. 505-7 at 3 and 4 (February 2, 2026, Tr. at 177:5–23, 180:5–9 (testimony that Mr. Goldstein learned in March 2021 that he had defaulted on the installment agreement)); ECF No. 505-21 at 27 (IRS record reflecting the December 2018 levy of nearly $1 million from Mr. Goldstein's Wells Fargo account); and ECF No. 505-28 at 7–8 (installment agreement, providing that upon default the IRS could collect the full amount owed by levy on Mr. Goldstein's income, bank accounts, or other assets); ECF No. 505-37 at 1 (email regarding default); ECF No. 505-38 at 1–2 (IRS records concerning the default).

The Government also introduced evidence to show that, in 2021, Mr. Goldstein moved the funds he ultimately used to purchase a home through several bank accounts, including moving the funds to Goldstein & Russell's IOLTA account, just before forwarding the funds to a title company's escrow account. *See* ECF No. 505-35 (records of the transactions routing the funds from Mr. Goldstein's retirement accounts through his personal account, the IOLTA, a business account, and the title company's escrow). Given this evidence, the Jury could reasonably conclude that Mr. Goldstein moved the subject funds into his law firm's IOLTA account for the purpose of evading his taxes and shielding these funds from the IRS. *See* 26 U.S.C. §§ 6330, 6159(b)(2), (5); ECF No. 505-28 at 8 (permitting the IRS to cancel the installment agreement at any time, if it found the collection of the tax in jeopardy); *see also United States v. Goodyear*, 649 F.2d 226, 227–28 (4th Cir. 1981) (tax evasion under 26 U.S.C. § 7201 requires a substantial tax deficiency, an affirmative act constituting an attempted evasion, and willfulness).

The Defense's argument that a reasonable juror could not have convicted Mr. Goldstein of tax evasion based upon the 2021 IOLTA Transfer, because it was legally impossible for the IRS to levy his bank accountant at that time, is also not persuasive. Legal impossibility is not a defense to a tax evasion charge. *Spies*, 317 U.S. at 498. Notably, the completed crime of tax evasion does not require success. *Id.* And so, the Court is satisfied that the evidence presented

29

by the Government at trial was sufficient to sustain a conviction for tax evasion, based upon the IOLTA transfer.

The trial record also makes clear that the Government presented sufficient evidence to show that Mr. Goldstein's March 2018 statements to Officer Parrish about the source of his 2016 income was an affirmative act of tax evasion. During the trial, the Government presented sufficient evidence to show that Mr. Goldstein: (1) falsely told Officer Parrish in March 2018 that his outstanding 2016 tax liability arose from a legal fee; (2) Mr. Goldstein failed to mention his gambling income to Officer Parrish; and (3) Mr. Goldstein knew that his statement about the source of his 2016 income was false. ECF No. 505-4 at 3 (January 22, 2026, Tr. at 228:13–20) (trial testimony regarding Mr. Goldstein's March 2018 statements to Officer Parrish); ECF No. 505-21 at 14 (IRS record reflecting the March 2018 statement).

The Defense contends that the Government's theory of tax evasion is "legally invalid," because Mr. Goldstein testified that he understood the inquiries from Office Parrish to be "forward-looking," and to concern how he would pay the balance of his tax liabilities, rather than as historical questions about the source of his 2016 tax liability. ECF No. 487 at 70–74; *see also* ECF No. 505-14 at 24–25 (February 12, 2026, Tr. at 24:7–25:13) (testimony of Mr. Goldstein stating that he understood the inquiries as forward-looking). But Officer Parrish testified that: (1) her question pertained to the source of Mr. Goldstein's 2016 tax liability; (2) that Mr. Goldstein misrepresented the source of this outstanding tax liability during their conversation; and (3) that she concluded that Mr. Goldstein was not telling the truth about the source of his 2016 tax liability. ECF No. 505-4 at 3 (January 22, 2026, Tr. at 228:13–20).

Given this testimony, there was sufficient evidence before the Jury to support the Government's theory that Mr. Goldstein committed tax evasion by misrepresenting the source of his 2016 tax liabilities. And so, it was for the Jury to decide how much weight to give to Mr. Goldstein's testimony on this topic.

The Defense's argument that Mr. Goldstein's statement to Officer Parrish cannot constitute an affirmative act of evasion, because the IRS already had information about the source of his 2016 tax liability, is also unconvincing. ECF No. 487 at 71. As the Government correctly observes, courts have long recognized that making an affirmative misrepresentation to the IRS is a quintessential affirmative act of tax evasion. *Sansone*, 380 U.S. at 351; *Goodyear*, 649 F.2d at 228; *United States v. Brimberry*, 961 F.2d 1286, 1291 (7th Cir. 1992). Here, the question is

whether Mr. Goldstein was being truthful in his statements to Officer Parrish, not whether Office Parrish could have obtained information about Mr. Goldstein's 2016 tax liability from other information in the possession of the IRS. *United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir. 1998) (holding that the affirmative-act element turns on intent rather than success).

Because the Court is satisfied that a reasonable juror could have found that Mr. Goldstein willfully misrepresented the source of his 2016 tax liability to Officer Parrish, to support the charge of tax evasion, the Court DENIES Mr. Goldstein's motion for judgment of acquittal as to Count 1.

### E.    The Evidence Was Also Sufficient To Sustain A Conviction On Count 3

The Defense next challenges the sufficiency of the Government's evidence to establish the false tax return charges in Counts 3 of the Indictment. ECF No. 487 at 75. In this regard, the Defense argues that the evidence shows that: (1) Mr. Goldstein did not assist in the filing of a false tax return by directing his office manager to send a wire to Napoli Shkolnik and (2) Mr. Goldstein did not file a false tax return by asking Robbins Geller to make a legal payment into his personal account. ECF No. 487 at 75–76. For the reasons that follow, the Court disagrees.

To sustain a conviction for aiding or assisting in the filing of a false return under 26 U.S.C. § 7206(2), the Government must prove the following beyond a reasonable doubt: (1) Mr. Goldstein aided, assisted, or otherwise caused the preparation and presentation of a return; (2) the tax return was fraudulent or false as to a material matter; and (3) Mr. Goldstein acted willfully. *United States v. Kimble*, 855 F.3d 604, 614 (4th Cir. 2017) (citation omitted). The willfulness element of this offense requires the voluntary, intentional violation of a known legal duty. *Cheek*, 498 U.S. at 201, 203.

A careful review of the trial record shows that the Government presented sufficient evidence to support its false tax return charges based upon Mr. Goldstein's business deduction for a $175,000 payment made to Napoli Shkolnik and diverting and failing to report a $250,000 legal fee received from Robbins Geller. ECF No. 337-2 at ¶¶ 52 and 117. In Count 3, the Government charged Mr. Goldstein with aiding the preparation of a false 2017 Form 1120S, by falsely deducting a $175,000 poker-related payment to Napoli Shkolnik as a business expense, and by diverting and failing to report a $250,000 legal fee from Robbins Geller. *Id.*

During the trial, the Government presented evidence to show that Mr. Goldstein aided, assisted, or otherwise caused the preparation and presentation of the return at issue, because Mr.

Goldstein's accountant, Walter Deyhle, testified that the accuracy of the tax returns for Mr. Goldstein and Goldstein & Russell was wholly dependent on the information that Mr. Goldstein supplied to his accounting firm. *See, e.g.*, ECF Nos. 441 at 112–239 (February 3, 2026, Tr. at 112–239) and 442 at 5–170 (February 4, 2026, Tr. at 5–170) (testimony of Walter Deyhle). The trial evidence also shows that the Defense did not contest that the subject tax return was false as to a material matter. ECF No. 505-13 at 9 and 26–27 (February 11, 2026, Tr. at 105:4–6 and 122:9–123:2) (Mr. Goldstein's testimony); ECF No. 505-8 at 3–5 (February 3, 2026, Tr. at 112:19–114:12) (testimony of Walter Deyhle).

The Court is also satisfied that the Government introduced sufficient evidence to show that Mr. Goldstein willfully assisted in the filing of a false tax return with regards to the Napoli Shkolnik deduction. During the trial, the Government presented evidence to show that: (1) Mr. Goldstein paid a personal poker debt in the amount of $175,000 to Napoli Shkolnik from his law firm's bank account; (2) Mr. Goldstein did not instruct his office manager or his accountant to treat this payment as a personal distribution, rather than as a business expense; and (3) the payment was reported as "Legal & Professional Fees" on the 2017 tax return that Mr. Goldstein signed under penalties of perjury. ECF No. 505-31 at 7 (bank statement of the $175,000 deposit by Mr. Goldstein); ECF No. 505-3 at 12 (January 21, 2026, Tr. at 227:4–20) (testimony of Paul Napoli); ECF No. 505-8 at 6 (February 3, 2026, Tr. at 192:18–25) (testimony of Walter Deyhle); ECF No. 505-25 at 1 (Goldstein & Russell's 2017 Form 1120S Income Tax Return for an S Corporation).

The Government also presented evidence to show that: (1) Mr. Goldstein knew how to properly classify his personal expenses for tax purposes; (2) Mr. Goldstein could have avoided any confusion about the nature of the subject expense by first wiring the funds to his personal account before sending the payment to Napoli Shkolnik; and (3) Mr. Goldstein understood which transactions had to be reported to his accountant for tax purposes. ECF No. 505-14 at 155–58 (February 12, 2026, Tr. at 155:3–158:25) (testimony of Mr. Goldstein); ECF No. 505-27 (payments labeled "Wire to TG" classified as "Distributions").

Given this evidence, a reasonable juror could have concluded that Mr. Goldstein willfully aided the filing of a false tax return with regard to the Napoli Shkolnik deduction. Notably, the evidence presented by the Government supports a finding that Mr. Goldstein was aware of his legal duty to properly classify his personal and business expenses on the subject tax return and

32

that Mr. Goldstein could have avoided the misclassification of the Napoli Shkolnik payment by first wiring the funds at issue to his personal bank account before making this payment. ECF No. 505-14 at 155–58 (February 12, 2026, Tr. at 155:3–158:25) (testimony of Mr. Goldstein that he knew how to classify personal payments and conceded that self-wires were always classified correctly); ECF No. 505-27 (payments labeled "Wire to TG" classified as "Distributions"); ECF No. 505-31 at 7 (the $175,000 payment from the firm's account); ECF No. 505-25 at 1 (the 2017 Form 1120S signed under penalties of perjury). And so, when viewed in the light most favorable to the Government, the evidence was sufficient for a reasonable juror to convict Mr. Goldstein of aiding or assisting in the filing of a false tax return under 26 U.S.C. § 7206(2).

The trial record also shows that the Government presented sufficient evidence to support a false tax return charge based on the $250,000 Robbins Geller legal fee. To support its theory that Mr. Goldstein assisted in the filing of a false tax return by diverting and failing to report the $250,000 Robbins Geller legal fee, the Government presented evidence to show that: (1) Mr. Goldstein directed Robbins Geller to wire this legal fee to his personal Wells Fargo bank account; (2) Mr. Goldstein then wired most of these funds to Bob Safai the next day, to satisfy a poker debt; (3) Mr. Goldstein did not tell his office manager or Mr. Deyhle that this payment should be treated as legal fee income to his law firm; and (4) the payment was omitted from the 2017 Form 1120S, which Mr. Goldstein signed under penalties of perjury. ECF No. 505-34 at 5; ECF No. 505-3 at 6, 8–9 and 13 (January 21, 2026, Tr. at 103:4–14, 105:22–106:5, 272:17–20); ECF No. 505-8 at 6 (February 3, 2026, Tr. at 192:15–21); and ECF No. 505-25 at 1. Given this evidence, a reasonable juror could have found that Mr. Goldstein willfully assisted in the filing of the false tax return as to the Robbins Geller legal fee. *See Cheek*, 498 U.S. at 201 and 203. The Defense also does not dispute that the evidence established the other elements of this claim. ECF No. 487 at 77–80. And so, there was also sufficient evidence for the Jury to convict Mr. Goldstein of Count 3.

For these reasons, the Court DENIES Mr. Goldstein's motion for judgment of acquittal as to Count 3.

### F.    The Evidence Was Sufficient To Sustain A Conviction On Count 7

Turning to the filing of false tax return charge in Count 7, the Court is also satisfied that the Government's evidence was sufficient to sustain a conviction on this count. In Count 7, the Government charged Mr. Goldstein with aiding and assisting the preparation of a false tax return

33

with regards to Goldstein & Russell's 2019 Form 1120S, by: (1) falsely deducting a $170,000 poker-related payment to Charles Pacheco as a business expense and (2) failing to report $235,000 in legal fee income from Paul Phua. ECF No. 505 at 65. Viewed in the light most favorable to the Government, the evidence presented at trial is sufficient to sustain a conviction based on this conduct.

With regards to the payment to Mr. Pacheco, the trial record shows that the Government presented evidence to show that: (1) Mr. Goldstein lost $170,000 to Mr. Pacheco in 2019 in connection with a poker match; (2) Mr. Goldstein paid this gambling debt to Mr. Pacheco from Goldstein & Russell's bank account; (3) Mr. Goldstein not tell his office manager or accountant that this payment was for a poker-related debt; and (4) Goldstein & Russell's 2019 Form 1120S, which Mr. Goldstein signed under penalties of perjury, shows this payment as a business deduction for "Legal & Professional Fees," saving Mr. Goldstein almost $60,000 in taxes. ECF No. 438 at 35–41 (January 29, 2026, Tr. at 35:03–41:5 and 115:1–16) (the parties' stipulation regarding the Pacheco payment and the testimony of Charles Pacheco); ECF No. 505-11 at 4–5 (February 9, 2026, Tr. at 175:12–176:16) (testimony of Ian Shuman); ECF No. 505-22 (showing the $170,000 wire transfer to Mr. Pacheco); ECF No. 505-26 (2019 Form 1120S Income Tax Return for an S Corporation).

The Government also presented evidence to show that Mr. Goldstein voluntarily and intentionally violated a known legal duty to correctly classify this expenses on Goldstein & Russell's tax returns. Notably, the Government's evidence shows that Mr. Goldstein did not disclosed the poker-related nature of the Pacheco payment to his accountant, despite the fact that Mr. Goldstein knew of several ways to keep the payment from being misclassified and improperly deducted as a business expense. ECF No. 505-11 at 4–5 (February 9, 2026, Tr. at 175:12–176:16) (testimony of Ian Shuman); ECF No. 505-22 at 1–2 (showing the $170,000 wire transfer to Mr. Pacheco). Given this evidence, a reasonable juror could have found that Mr. Goldstein knowingly assisted in the misclassification of this payment on the subject tax return, because he knew how to properly report his business and personal expenses for tax purposes, to satisfy the willfulness element of the filing of a false return offense.

The Defense's argument that the evidence was not sufficient to support a conviction on Count 7 with regards to Mr. Goldstein's failure to report a $229,927 legal fee from Mr. Phua presents a closer question. But the Court need not resolve this issue to sustain Mr. Goldstein's

34

conviction on Count 7. *Turner v. United States*, 396 U.S. 398, 420 (1970) ( "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

Nonetheless, there is evidence in the trial record to support the Government's theory that Mr. Goldstein aided or assisted in the filing of a false tax return, by failing to report $235,000 in legal fee income from Mr. Phua. For example, the Government presented evidence to show that: (1) Mr. Goldstein helped defend Mr. Phua during a 2019 criminal trial held in Macau; (2) Mr. Phua wired $229,927 to Goldstein & Russell the day after he was acquitted in that case; (3) Mr. Goldstein directed his office manager to tell Goldstein & Russell's bank located in Montenegro that this payment was a "capital contribution;" and (4) the legal fee was omitted from the Goldstein & Russell's 2019 Form 1120S tax return which Mr. Goldstein signed under penalties of perjury. ECF No. 505-14 at 48–49 (February 12, 2026, Tr. at 48:21–49:24); ECF No. 505-12 at 5, 6 and 9–10 (February 10, 2026, Tr. at 136:11–14, 234:9–10, 237:6–238:11); ECF No. 505-39; ECF No. 505-4; ECF No. 505-40; ECF No. 505-26 at 1; ECF No. 505-41 at 1–2. The Defense argues with some persuasion that the Government's evidence does not show that Mr. Goldstein's accountant was aware that Mr. Goldstein mischaracterized the Phua legal fee as a capital contribution in his correspondence with the Montenegrin bank, so as to aid or assist in the filing of a false tax return. ECF No. 487 at 82. But, even if true, the Government's evidence was sufficient to sustain a conviction on Count 7 for falsely deducting the $170,000 poker-related payment to Mr. Pacheco as a business expense, for the reasons discussed above. And so, the Court also DENIES Mr. Goldstein's motion for judgment of acquittal as to Count 7.

### G.   The Evidence Was Sufficient To Sustain A Conviction On Count 8

Turning to the false tax return charge in Count 8, the Court is also satisfied that the evidence was sufficient for a reasonable juror to sustain a conviction on this count. In Count 8, the Government charged Mr. Goldstein with aiding and assisting in the preparation of a false Form 1040 for tax year 2020, by: (1) failing to report approximately $90,000 in poker winnings and (2) falsely denying involvement in cryptocurrency transactions. ECF No. 337-2 at ¶¶ 77 and 117. Again, the trial record shows that the Government presented sufficient evidence to support a conviction under both theories.

First, when viewed in the light most favorable to the Government, the evidence presented by the Government was sufficient for a reasonable juror to find that Mr. Goldstein aided and

assisted in the preparation of a false Form 1040 for tax year 2020, by failing to report approximately $90,000 in poker winnings. As discussed above, to prove this offense, the Government must prove beyond a reasonable doubt that: (1) Mr. Goldstein aided, assisted, or otherwise caused the preparation and presentation of a return; (2) the return was fraudulent or false as to a material matter; and (3) Mr. Goldstein acted willfully. *Kimble*, 855 F.3d at 614. There is sufficient evidence in the trial record to satisfy each of these elements.

Notably, the trial testimony of Walter Deyhle shows that Mr. Deyhle was Mr. Goldstein's tax preparer for the 2020 tax year and that Mr. Deyhle relied on the information provided by Mr. Goldstein to prepare the tax returns for Mr. Goldstein and for Goldstein & Russell. *See* ECF No. 505-8 at 3 (February 3, 2026, Tr. at 112:6–10). Mr. Deyhle also testified that Mr. Goldstein swore under the penalties of perjury that: (1) his personal tax returns were true and accurate and (2) Goldstein & Russell's corporate tax returns were true and accurate. *See id.* at 112:8–113:3; *see also* ECF No. 505-23 at 2. The Government also introduced evidence to show that Mr. Goldstein's 1040 form for tax year 2020 was false as to a material matter, because the return omitted approximately $90,000 in gambling winnings in 2020, and that Mr. Goldstein stipulated to receiving these funds ($23,180 playing poker against Mr. Pacheco and $70,000 playing poker against an individual named Michael McGuiness). ECF No. 505-6 at 5 (January 29, 2026, Tr. at 37:13–16); ECF No. 505-7 at 8 (February 2, 2026, Tr. at 248:1–3).

In addition, the trial record makes clear that the Government presented sufficient evidence to the Jury to show that Mr. Goldstein acted willfully in failing to report his poker winnings. During the trial, the Government presented evidence to show that Mr. Goldstein misled his office manager about the nature of his poker-related transactions, by disguising these transactions as business payments by the law firm. *See* ECF 505-6 at 30–32 (January 29, 2026, Tr. at 214:9–216:17) (Testimony of Kathleen Bart). As discussed above, the Government also presented evidence to show that Mr. Goldstein was aware of his obligation to correctly classify his personal and business expenses on his tax returns and to correctly report his gambling winnings and losses.

Given this evidence, a reasonable juror could have found that Mr. Goldstein willfully aided or assisted in the filing of a false tax return by failing to report his poker winnings on his 2020 1040 Form. And so, the Court also DENIES Mr. Goldstein's motion for judgment of acquittal as to Count 8. Fed. R. Crim. P. 29.

36

While the Court need not address the Defense's second argument challenging the Government's theory that Mr. Goldstein aided and assisted in the filing of a false 1040 Form for 2020, by falsely denying his cryptocurrency activity, to sustain the Jury's conviction on Count 8, the trial record also shows that the Government presented sufficient evidence to support this charge. Again, the trial record shows that the Government presented evidence to show that Mr. Goldstein aided and assisted Mr. Deyhle in preparing the subject tax return (ECF No. 505-8) and that Mr. Goldstein falsely reported his cryptocurrency activities on his 2020 1040 Form, by answering "No" to the question, "At any time during 2020, did you receive, sell, send, exchange, or otherwise acquire any financial interest in any virtual currency," which subsequently signed under the penalties of perjury. ECF No. 505-23 at 1–2; *see also* ECF No. 505-42 (showing that Mr. Goldstein's had approximately $500,000 in cryptocurrency activity in his Coinbase account during 2020).

The trial record also shows that the Government presented sufficient evidence to show that Mr. Goldstein acted willfully in engaging in this conduct. During the trial, the Government introduced a retention letter that Mr. Goldstein's accountant sent to him in 2020, which states that there could be "tax consequences for individuals who transact in or possess virtual currency." *See* ECF No. 505-36 at 3–4. The Government's evidence also shows that the question about cryptocurrency is located on the first page of the tax return in question, making the question difficult to miss and highlighting its importance to the IRS. ECF No. 505-23 at 1. Mr. Deyhle also testified that Mr. Goldstein had the opportunity to review the 2020 From 1040 before it was submitted to the IRS, and that he was "very confident" that Mr. Goldstein was aware of what was being reported in this tax return. ECF No. 505-8 at 8 (February 3, 2026, Tr. at 227:7–20).

Given this evidence, the Court is satisfied that the Government's evidence was sufficient for a reasonable juror to find that Mr. Goldstein willfully assisted in the filing of a false tax return to support a conviction on Count 8. And so, the Court DENIES Mr. Goldstein's motion for judgment of acquittal on Count 8. Fed. R. Crim. P. 29.

**H.    The Evidence Was Sufficient To Sustain A Conviction On Count 9**

The Government's evidence was also sufficient for a reasonable juror to convict Mr. Goldstein on Count 9. In Count 9 of the Indictment, the Government charges Mr. Goldstein with aiding and assisting in the filing of a false Form 1040 for 2021, by: (1) failing to report

approximately $250,000 in poker winnings, (2) falsely denying involvement in cryptocurrency transactions and (3) failing to report $500,000 in legal fee income from actor Tobias Maguire. ECFF No. 337-2 at ¶¶ 117, 88–89.  The trial record shows that the Government presented sufficient evidence to support each of these theories.

First, the Government's evidence was sufficient to show that: (1) Mr. Deyhle was Mr. Goldstein's tax preparer for 2021; (2) Mr. Goldstein was responsible for providing the information needed to complete and file his 2021 tax return; and (3) Mr. Goldstein's 2021 1040 form was false as to a material matter, because he failed to report approximately $250,000 in poker winnings.  ECF No. 505-24 at 1–2; ECF No. 505-8 at 3 (February 3, 2026, Tr. at 112:6–10); ECF No. 505-6 at 5 (January 29, 2026, Tr. at 37:22–25); ECF No. 505-7 at 8 (February 2, 2026, Tr. at 248:6–7).  There was also sufficient evidence for a reasonable juror to find that Mr. Goldstein acted willfully by failing to report his poker winnings.  The Government's evidence shows that Mr. Goldstein had an opportunity to review his 2021 tax return form before filing, and that Mr. Deyhle testified that he was "very confident" that Mr. Goldstein was aware of what was being reported on the tax return.  ECF No. 505-9 at 3 (February 4, 2026, Tr. at 18:8–21).  Given this evidence, a reasonable juror could have concluded that Mr. Goldstein had a clear understanding and awareness of his obligation to report his gambling winning and that he failed to do so.

The Government also presented sufficient evidence to show that Mr. Goldstein falsely report his cryptocurrency use.  Notably, the Government presented evidence to show that Mr. Goldstein falsely reported his cryptocurrency activity, by checking "No" to the question, ""At any time during 2021, did you receive, sell, send, exchange, or otherwise acquire any financial interest in any virtual currency," which subsequently signed under the penalties of perjury."  *See* ECF No. 505-24 at 1–2; ECF No. 505-42 at 1–3.  The Government also presented evidence to show that Mr. Goldstein acted willfully, given the warning in his accountant's 2020 retention letter.  And so, a reasonable juror also could have found that Mr. Goldstein understood his obligations to report his cryptocurrency activity to his accounting firm in 2021 and the potential consequences for failing to do so.  *See* ECF No. 505-36 at 3–4.

Lastly, there is also sufficient evidence in the trial record to establish beyond a reasonable doubt that Mr. Goldstein aided and assisted in the filing of a false tax return, by omitting a legal fee in the amount of $500,000 from Tobias Maguire.  ECF No. 505-6 at January 29, 2026, Tr.

38:9–39:20; *see also* ECF No. 505-24.  During the trial, Mr. Goldstein testified that he directed Mr. Maguire to wire this legal fee to Bob Safai's account instead of Goldstein & Russell's bank account.  ECF No. 505-14 at 159 (February 12, 2026, Tr. at 159:6–7).  The Government also presented evidence to show that Mr. Goldstein did not inform his accountant or his office manager that Mr. Maguire sent these funds to Mr. Safai on Mr. Goldstein's behalf.  ECF No. 505-6 at 36 (January 29, 2026, Tr. at 252:9–17) (Testimony of Kathleen Bart)); ECF No. 505-7 at 5–6 (February 2, 2026, Tr. at 201:12–202:8) (Testimony of Angie Gou)); ECF No. 505-9 at 4 (February 4, 2026, Tr. at 28:1–4) (Testimony of Walter Deyhle).  The Government's trial exhibits also show that Mr. Goldstein signed a 2021 tax return that omitted the income from this $500,000 legal fee.  ECF No. 505-24.

Given this evidence, the Court is also satisfied that a reasonable juror could conclude that Mr. Goldstein willfully filed a false tax return, by failing to report the $500,000 legal fee from Mr. Maguire.  And so, the Court DENIES Mr. Goldstein's motion for judgment of acquittal as to Count 9.  Fed. R. Crim. P. 29.

## I.   The Defense's Argument Regarding Counts 10–13 Is Untimely

As a final matter, the Defense's argument that Mr. Goldstein is entitled to a new trial on Counts 10–13, because the Government proved the wrong date for each of these offenses is untimely and, thus, waived.  Federal Rule of Criminal Procedure 12(b)(3), which governs pre-trial motions provides, in relevant part, that a motion alleging failure to state an offense must be raised by pretrial motion, if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits.  Fed. R. Crim. P. 12(b)(3)(B)(v).  And so, a motion for failure to state an offense made after this deadline is untimely, and may only be considered if Mr. Goldstein shows good cause.  Fed. R. Crim. P. 12(c)(3).

In this case, Mr. Goldstein's motion regarding the dates alleged in the Indictment is clearly untimely.  The Defense brings his motion almost one year after pretrial motions were due in this case.  ECF No. 219.  The Defense also relies upon amendments to a federal statute that was enacted by Congress in 2021, several years before the Grand Jury returned the Indictment in this case.  ECF No. 505 at 79 (relying upon 26 U.S.C. § 7508A and *Kwong v. United States*, 179 Fed. Cl. 382, 388 (2025)).  Given this, the Defense has not shown good cause to belatedly raise this

issue with the Court.  Fed. R. Crim. P. 12(c)(3).  And so, the Court DENIES Mr. Goldstein's motion on this final ground.[5]

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Goldstein's renewed motion for judgment of acquittal, or, in the alternative, a new trial (ECF No. 487).

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[5] The Court also observes that there does not appear to be a prejudicial variance in this case.  A prejudicial variance occurs when a defendant shows that the variance "infringed his 'substantial rights' and thereby resulted in actual prejudice."  *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994).  But, here, the difference in the due dates for Mr. Goldstein's tax payments would not matter, because it appears that the payments would be untimely even with the additional time provided under 26 U.S.C. § 7508A(d).