**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**THOMAS C. GOLDSTEIN,**<br><br>**Defendant.** | **CRIMINAL NO. LKG-25-0006** |

**UNITED STATES' OPENING SUPPLEMENTAL BRIEF REGARDING FORFEITURE**

The government respectfully renews its request that the Court enter a forfeiture money judgment in the amount of $1,987,500, the precise amount of the fraud proceeds that defendant Thomas Goldstein received by violating 18 U.S.C. § 1014 and defrauding NFM, the mortgage lender in Count 16. Goldstein's arguments to the contrary are inconsistent with federal law and the U.S. Sentencing Guidelines. Most notably, he claims that the requested judgment is disproportionate to a fine listed in a Guidelines table—but completely ignores that the Guidelines and Fourth Circuit precedent forbid using that table in this context. In truth, the maximum fine for Count 16 is $1 million, and the requested forfeiture—which is less than twice the maximum fine—is entirely proportionate to the gravity of his offense.

**BACKGROUND**

On November 20, 2025, a federal grand jury sitting in the District of Maryland returned a Second Superseding Indictment charging Goldstein with nineteen criminal tax-related counts, as well as three counts of false statements on a loan application, in violation of 18 U.S.C. § 1014 (Count 20-22). Dkt. 239.

That Indictment also included a forfeiture allegation which provided notice that the United States intended to seek forfeiture, pursuant to 18 U.S.C. § 982(a)(2), upon conviction of the

Goldstein of the offenses alleged in Counts 20 through 22 of the Superseding Indictment. Before trial, the government moved to dismiss certain charges, resulting in the streamlined Second Superseding Indictment in which Goldstein's § 1014 charges were Counts 14-16. Dkt. 337-2.

Following a multi-week jury trial, on February 25, 2026, the jury convicted Goldstein on Counts 1, 3, and 7 through 16. Dkt. No. 472. The government requested the jury be retained to determine the nexus between Goldstein's crime in Count 16 and his house at 4323 Hawthorne Street, Washington, D.C., pursuant to Federal Rule of Criminal Procedure 32.2(b)(5). The jury found no such nexus. Dkt. 473.

After trial, the government moved for a preliminary order of forfeiture. Dkt. 509. Goldstein opposed, arguing, among other things, that a forfeiture of $1,987,500 would violate the Eighth Amendment's Excessive Fines Clause. *See* Opp., Dkt. 523 at 10-12; Gov. Reply Br., Dkt. 529. During the sentencing hearing on July 24, 2026, the Court heard argument on the forfeiture motion, ultimately granting the motion in part and denying it in part. The Court ruled that forfeiture was appropriate and mandatory, and that the Hawthorne property was properly a substitute asset. *See* 7/24 Pub. Sent. Tr. 178:22-183:21.

On the Excessive Fines Clause, however, the Court expressed "a little bit of pause" about the ratio between the amount of forfeiture sought and the Guidelines table fine of $9,500 but noted that "the government is on much firmer footing" on "the other factors." *Id.* at 183:22-184:19. Thus, the Court suggested further briefing about the proper amount of the money judgment was warranted. *See* 7/24 Tr. 185:11-17, 187:12-24. The Court memorialized that ruling in its preliminary order of forfeiture, which entered "a forfeiture money judgment in the amount of **to be determined**" against Goldstein and forfeited his interest in the 4323 Hawthorne Street property. Dkt. 566 at 2 (emphasis in original). On August 27, 2026, the Court issued a scheduling order for

supplemental filings concerning the amount of forfeiture. Dkt. 586. Although the parties reached an agreement to conduct an interlocutory sale of the Hawthorne property, *see* Dkt. 587, the proper amount of forfeiture remains contested.

## LEGAL STANDARD

The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Under the Supreme Court's ruling in *United States v. Bajakajian*, an amount of forfeiture "violates the Excessive Fines Clause only if it is (1) punitive, and (2) grossly disproportional to the gravity of the defendant's offense." *United States v. Jalaram, Inc.*, 599 F.3d 347, 351 (4th Cir. 2010).[1]

To assess the proportionality of the forfeiture, the Fourth Circuit examines four factors: (1) the amount of the forfeiture and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the crime charged and other crimes; and (4) the harm caused by the charged crime. *Id.* at 355-56.

"Because questions of proportionality are reserved primarily to the legislature, the *Bajakajian* test is highly deferential." *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014); *see also Bajakajian*, 524 U.S. 321, 336 (1998) ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature."). In cases involving criminal proceeds, Congress has made clear that a defendant must forfeit the entirety of his criminal proceeds. Under § 982(a)(2):

> [T]he court in imposing sentence on a person convicted of [a violation of 18 U.S.C. § 1014] *shall order that the person forfeit* to the United States any property constituting, or derived from, *proceeds* the person obtained directly or indirectly, as the result of such violation.

18 U.S.C. § 982(a)(2) (emphasis added).

[1] The government does not contest that forfeiture in the instant dispute is punitive. This brief therefore does not address the first prong of the test.

Forfeiture remains mandatory under § 982(a)(2) even if a defendant no longer possesses the proceeds. *United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("Forfeiture is calculated on the basis of the total proceeds of a crime, not the percentage of those proceeds remaining in the defendant's possession."). In such a scenario, "money judgments representing the unlawful proceeds are appropriate." *United States v. McGinty*, 610 F.3d 1242, 1246-47 (10th Cir. 2010) (collecting cases, concluding the government was "entitled to a money judgment against [the defendant] for the money he obtained from his criminal activity," and reversing district court's refusal to order a forfeiture money judgment equal to the proceeds of his offense).

Because forfeiture of criminal proceeds is mandatory, forfeiture in the full amount of those proceeds is entirely proportionate. Indeed, the Fourth Circuit has recognized that anything less than forfeiture in the full amount of a defendant's ill-gotten gains would be exceedingly rare: "In a case involving a single offender, it would be very difficult, and perhaps impossible, for the defendant to show that the forfeiture of proceeds was grossly disproportional to the gravity of his offense." *Jalaram*, 599 F.3d at 355.

## ARGUMENT

Forfeiture in the amount $1,987,500—the exact amount of Goldstein's fraud proceeds, and less than twice the maximum fine authorized—is entirely proportionate to his crimes.

### I. The Relationship Between the Amount of Forfeiture and the Authorized Penalty

#### A. The Maximum Authorized Penalty

Under *Bajakajian*, the first factor compares the forfeiture sought to the maximum "authorized penalty," which is effectively the maximum fine applicable to the crime of conviction. *See Jalaram, Inc.*, 599 F.3d at 355-56. Here, the maximum authorized monetary penalty is $1,000,000 under § 1014 and the Sentencing Guidelines.

To assess the maximum authorized penalty under *Bajakajian*, courts in the Fourth Circuit routinely look to the maximum fine authorized by statute. *E.g.*, *United States v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021) (comparing forfeiture amount to maximum "statutorily authorized monetary penalty"); *United States v. Bollin*, 264 F.3d 391, 418 (4th Cir. 2001) (measuring proportionality to "the statutory maximum . . . fine" of $500,000), *overruled on other grounds by United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017); *United States v. Spirito*, 36 F.4th 191, 212 (4th Cir. 2022) (affirming forfeiture where, *inter alia*, defendant's laundering of $3.8 million "could have subjected him to a criminal fine of up to" $7.6 million, under money laundering statutes authorizing fine up to twice the amount involved).

Although courts sometimes look to both the maximum statutorily authorized fine and the maximum fine recommended by the Fine Table under Guidelines § 5E1.1(c)(2)-(3), that Fine Table does not apply here. Guideline § 5E1.2(c)(2) states: "Except as specified in paragraph (4) below, the maximum of the fine guideline range is the amount shown in column B of the [subsection (c)(3) fine] table." *Id.* Guideline § 5E1.2(c)(4), in turn, specifies an exception:

> Subsection (c)(2), limiting the maximum fine, *does not apply* if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $500,000, or (B) a fine for each day of violation. In such cases, the court may impose a fine up to the maximum authorized by the statute.

U.S.S.G § 5E1.2(c)(4) (emphasis added). The Guidelines commentary further emphasizes, "Subsection (c)(4) applies to statutes that contain special provisions permitting larger fines; the guidelines do not limit maximum fines in such cases." *Id.* app. n.4.

Thus, where Subsection (c)(4) applies, "the guidelines impose *no limit* on the maximum fine." *United States v. Ming Hong*, 242 F.3d 528, 533 (4th Cir. 2001) (emphasis added) (quoting Guideline application note and vacating fine where district court overlooked subsection (c)(4) and erroneously concluded lower maximum fine applied).

Indeed, to assess the relationship to the maximum penalty under *Bajakajian* when § 5E1.2(c)(4) applies, "the correct authorized penalty *is the statutory maximum fine*"—not the Guidelines advisory fine.[2] *United States v. $79,650*, 650 F.3d 381, 388 (4th Cir. 2011) (emphasis added), *as corrected* (June 2, 2011) (vacating forfeiture order where court made "a legal error [by] predicating its proportionality analysis on an incorrect understanding that the authorized penalty was the Guidelines advisory fine" under § 5E1.2(c)(3) and incorrectly imposed a lower forfeiture when, in fact, § 5E1.2(c)(4) applied and the Fine Table was "inapplicable").

Section 1014 authorizes a fine of up to $1,000,000. 18 U.S.C. § 1014. As a result, § 5E1.2(c)(4) controls, the Guidelines impose no limit on the maximum fine, and the forfeiture amount is measured against maximum statutory fine of $1,000,000, *not* the Fine Table.

### B. Forfeiture of $1,987,500 is Not Excessive Relative to the $1,000,000 Fine Authorized by Section 1014

Courts, including the Fourth Circuit, routinely deem constitutional forfeitures that are near—and more than—twice the maximum authorized statutory penalty. For example, in *United States v. Bollin*, 264 F.3d 391 (4th Cir. 2001), the district court imposed a forfeiture money judgment of $1.2 million despite the fact that the statutory maximum fine for the defendant's white-collar fraud convictions was $500,000 and he "received only about $30,000" from his crimes. *Id.* at 418-19. Even though the $1.2 million forfeiture was *more than double* the statutory maximum penalty, the Fourth Circuit affirmed, noting that the maximum fine "indicat[ed] that Congress has found the offense to be serious" and "demonstrate[d] the gravity of his offense." *Id.* at 418; *see also Bennett*, 986 F.3d at 399 (summarizing *Bollin* as "affirm[ing] a criminal forfeiture

[2] This precept explains why courts in the District of Maryland routinely order forfeiture far above the § 5E1.2(c)(3) Fine Table's $500,000 maximum. *See, e.g.*, *United States v. Khatiwala*, Prelim. Order of Forfeiture, No. 23-cr-0390-DKC, Dkt. 357 at 2 (Oct. 7, 2025) (imposing $6 million forfeiture for plea to one count of conspiracy to commit bank fraud); *United States v. Tinker*, Prelim. Order of Forfeiture, No. 24-cr-0336-ABA, Dkt. 61 at 1 (Nov. 10, 2025) (imposing $1.09 million forfeiture for plea to one count of wire fraud).

judgment of more than twice the authorized statutory penalty").

Other circuits have taken a similar tact. *E.g.*, *United States v. Sperrazza*, 804 F.3d 1113, 1127 (11th Cir. 2015) ("We have upheld all forfeitures imposed by district courts in amounts up to twice the maximum authorized fine."); *United States v. Wallace*, 389 F.3d 483, 486 (5th Cir. 2004) (concluding forfeiture "is not grossly disproportionate" where it exceeds the statutory maximum fine "by only a factor of two," and affirming forfeiture of plane operated without a federal registration by defendant with no criminal history).

Here, the $1,000,000 maximum authorized penalty demonstrates that a $1.98 million forfeiture is entirely appropriate. First, the forfeiture amount is less than twice the maximum authorized penalty and thus well within the ratio blessed by the Fourth Circuit and others. *See Bollin*, 264 F.3d at 418-19.

Second, the massive $1 million maximum penalty demonstrates that Congress "has found the offense to be serious," *Bollin*, 264 F.3d at 418, and thus "indicat[es] a substantial level of culpability." *See Blackman*, 746 F.3d at 144 (concluding $150,000 Guidelines advisory maximum fine "indicat[es] a substantial level of culpability").

This is unsurprising. Subprime loans—those made to borrowers who were less able to afford the cost of the loan and more likely to default—were a major precipitant of the 2008 Financial Crisis. *See* S. Rep. 111-10 at 2-3 (2009). After that crisis, Congress passed the Fraud Enforcement Recovery Act of 2009 ("FERA") to amend § 1014 and encompass mortgage lending businesses. *See* Pub. L. No. 111-21, § 2, 83 Stat. 1617 (2009). Congress did so to deter mortgage fraud and help prevent a similar financial catastrophe. *See* S. Rep. 111-10 at 2, *reprinted in* 2009 U.S.C.C.A.N. 430, 431-32. A critical component of deterrence from § 1014 is the fact that it provides a statutory maximum of 30 years' imprisonment and a $1 million fine. 18 U.S.C. § 1014.

That massive maximum penalty underscores the seriousness of Goldstein's mortgage fraud and his significant culpability. Where Congress has deemed fit to provide a $1 million fine, a forfeiture less than double that amount is entirely appropriate. *See Blackman*, 746 F.3d at 144 (noting that judgments about proportionality and punishment are primarily reserved to the legislature so the *Bajakajian* test is highly deferential).

Third and relatedly, the Sentencing Commission's decision to impose *no Guidelines limit at all* on the recommended fine for crimes like § 1014 further underscores both the seriousness of Goldstein's crimes and the importance of looking to Congress's maximum authorized fine, rather than the Fine Table, to assess proportionality. *See* U.S.S.G. § 5E1.2(c)(4) & app. n. 4.

Fourth, forfeiture for the exact amount of Goldstein's fraud proceeds is not excessive but, instead, directly proportionate to his crimes. As a general matter, forfeiture of criminal proceeds is not grossly disproportionate. *E.g.*, *United States v. Johnson*, 956 F.3d 510, 518 (8th Cir. 2020) (affirming forfeiture and stating, "[T]he $2.1 million personal money judgment is directly proportional to the $2.1 million that [defendant] took from investors in his wire fraud scheme and does not by itself violate the Excessive Fines Clause"); *United States v. Peters*, 257 F.R.D. 377, 389-90 (W.D.N.Y. 2009), *aff'd*, 732 F.3d 93 (2d Cir. 2013) (concluding $23 million forfeiture that consisted "entirely of proceeds" from defendant's crimes financial crimes was not grossly disproportionate, while noting that statutory maximum fine under § 1014 and four other counts of conviction was $1,000,000); *United States v. Patterson*, No. 21-1678-CR, 2022 WL 17825627, at *6 (2d Cir. Dec. 21, 2022) (unpublished) ("Our precedents suggest that a forfeiture amount is not necessarily greatly disproportionate where it equals the proceeds of the illegal scheme, even if it significantly exceeds the maximum statutory fine."); *see also United States v. Shepherd*, 171 F. App'x 611, 616 (9th Cir. 2006) (affirming forfeiture money judgment as proportionate to

defendant's fraudulent proceeds and concluding use of house as substitute asset therefore was also proportionate).

Given the maximum statutory fine, a $1.98 million forfeiture order representing only the value of Goldstein's mortgage fraud proceeds is entirely appropriate. *See United States v. Joseph*, 185 F. Supp. 3d 1290, 1295 (D. Utah 2016) (holding "a forfeiture judgment representing only the value of the fraudulent loans [the defendant] obtained is not 'grossly disproportionate,'" and imposing forfeiture of $5.6 million for § 1014 and wire fraud convictions), *aff'd*, 705 F. App'x 711 (10th Cir. 2017); *see also Jalaram*, 599 F.3d at 355 ("[W]e recognize that in most cases, courts ultimately will find a forfeiture of proceeds not grossly disproportional to the offense. In a case involving a single offender, it would be very difficult, and perhaps impossible, for the defendant to show that the forfeiture of proceeds was grossly disproportional to the gravity of his offense.").

## II. The Other Three Proportionality Factors

### A. Nature and Extent of the Criminal Activity

The nature and extent of Goldstein's criminal conduct was significant. After the initial mortgage lender, FSM, declined his false applications for undisclosed tax liens, Goldstein chose to double-down and lie to more lenders: first, to Parabellum to finance his new Washington, D.C. home, and then to another mortgage lender, NFM, to repay Parabellum. He lied on the NFM loan application in much the same way as the previous ones: by omitting roughly $15 million in private, poker-related debts. In convicting him on Count 16, the jury found that Goldstein acted deliberately and intentionally: he knew what he was doing. *See* 2/19 Trial Tr. 81:14-23 (instructing jury on elements of § 1014 for Counts 14-16). In fact, Goldstein himself admitted that he intentionally lied on the application. 2/12 Tr. 125:8-14, 117:6-15. He did so not out of desperation but unrelenting greed and desire to keep enjoying his multi-million-dollar Washington, D.C. home.

### B. Relationship Between Count 16 and Goldstein's Other Crimes

The relationship between Count 16 and the other counts is strong. The other mortgage fraud charges (Counts 14 & 15) involved nearly identical conduct with a different victim, FSM. Goldstein hid approximately $15 million in poker-related debts to get a loan to purchase the D.C. house. The heavy overlap between these crimes—which spanned most of 2021, *after* Goldstein learned he was under criminal investigation—underscores the extent of his culpability.

Imposing forfeiture for the full amount of criminal proceeds deters fraudsters from targeting a new victim if the first victim does not pay out. That Goldstein also effectively defrauded Parabellum twice in 2021 (after FSM and before NFM) by omitting his poker-related debts from two investment agreements (which were *de facto* loans) only reinforces the importance and proportionality of the requested forfeiture.

Count 16 was also intertwined with Goldstein's tax crimes, which entailed his serial concealment of his poker transactions (including debts) from his accountants and the IRS. More deeply, he subsidized (and made possible) his continued monthly mortgage payments to NFM in part by willfully failing to timely pay his 2021 and subsequent taxes.

### C. The Harm Caused

Although NFM has not been harmed financially, this is not dispositive. *See Jalaram*, 599 F.3d at 356 (concluding forfeiture would not be excessive even though government had "not identified any victims who suffered harm").

First, Goldstein's status as an attorney—and his repeated efforts to defraud lenders, including Parabellum, an investor in his firm's work—makes his crimes all the more brazen and undermines confidence in members of the bar more generally. *See United States v. Miller*, No. 17-CR-213, 2019 WL 6792762, at *7 (E.D. Va. Dec. 12, 2019) (finding forfeiture money judgment

was proportionate to defendant's crimes where, among other things, his "status as a lawyer and the lengths to which he went to attempt to conceal his fraud" against "multiple victims" made the nature of his crime "more brazen" and "undermine[d] confidence in members of the bar").

Second, that NFM has not experienced economic harm is a function of luck, not Goldstein's conduct. Because the Washington, D.C., housing market has remained stable, the house's value has not decreased since Goldstein received the loan in 2021 and there is substantial collateral NFM could attempt to recover if Goldstein defaulted. However, if the house's value had decreased substantially (for example, due to a market downturn) and Goldstein did not pay, then his choice to defraud NFM would have caused substantial financial harm. Simply foreclosing on the home would not suffice to cover the loan and NFM would suddenly be forced to fight other creditors for repayment. Moreover, Goldstein's continued payments to NFM are lucky in a literal sense, too: he won tens of millions of dollars in 2022-2023 playing poker, which shored up his ability to afford the payments and the home. Thus, although NFM has not been substantially financially harmed, forfeiture for Goldstein's fraud proceeds remains appropriate.

Indeed, in an analogous context involving § 1014 and other financial crimes, a district court imposed forfeiture based on the full amount of the defendant's criminal proceeds but did not subtract the defendant's loan repayments from its calculation of the criminal proceeds. *See Peters*, 257 F.R.D. at 387-89 (acknowledging forfeiture amount, based largely on $22.8 million in "draws from [a] revolving line of credit," was significant "principally because the repeated draws on the [$10.5 million] line of credit are not offset by payments to the line of credit for purposes of forfeiture"). Nonetheless, the court found that forfeiture of more than $23 million was not grossly disproportionate to the gravity of his crimes. *See id.*

Here, Goldstein has repaid NFM only a small portion of the loan that he fraudulently obtained, and forfeiture for the full amount of his criminal proceeds remains entirely proportionate. *See* 8/29/25 Goldstein Financial Decl. ¶5, Trial Ex. 790 (previously filed at Dkt. 166) (stating he and his wife "jointly owe approximately $1,800,000" to NFM as of August 2025).

Taken together, the four factors weigh heavily in favor of forfeiture in the amount of $1,987,500. That amount is less than twice the maximum authorized penalty, Goldstein's fraud on NFM was not only serious but part of his concerted, serial fraud on three lenders, and the fact that NFM has been lucky enough to avoid financial harm does not diminish the importance of forfeiture, nor lessen the proportionality of the proposed amount.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court enter an amended forfeiture money judgment in the amount of $1,987,500—the exact amount of Goldstein's § 1014 fraud proceeds.

Respectfully submitted,

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

Dated: September 10, 2026

*/s/*
Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice
National Fraud Enforcement Division

Sean Beaty
Senior Litigation Counsel
Department of Justice
National Fraud Enforcement Division