**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | Criminal Action No. 25-cr-00006-LKG |
| THOMAS C. GOLDSTEIN, | ) | Dated: November 4, 2026 |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Pending before the Court is the Government's supplemental brief regarding forfeiture in the above-captioned criminal matter. ECF No. 588. This issue has been fully briefed by the parties. ECF Nos. 588, 591 and 592. Another hearing is not necessary to resolve this issue. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, and for those stated during the July 24, 2026, sentencing hearing, the Court **ORDERS** that a forfeiture money judgment in the amount of **$1,000,000** be entered in this case.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On November 20, 2025, a federal Grand Jury sitting in the District of Maryland returned a Second Superseding Indictment charging the Defendant, Thomas C. Goldstein, with 19 criminal tax-related counts and three counts of false statements on a loan application, in violation of 18 U.S.C. § 1014.[1] ECF No. 239. The Indictment also contains a forfeiture allegation providing notice that the United States intends to seek forfeiture, pursuant to 18 U.S.C. § 982(a)(2), upon Mr. Goldstein's conviction of the false statements on a loan application offenses. *Id.*

The Court held a multi-week jury trial in this matter, during the period January 12, 2026, to February 26, 2026. *See generally* ECF Nos. 348, 349, 350, 351, 356, 359, 361, 379, 384, 392, 393, 394, 398, 404, 409, 413, 415, 423, 429, 432, 451, 454 and 456. On February 25, 2026, the

[1] Before trial, the Government moved to dismiss certain charges, resulting in the Section 1014 offenses being charged in Counts 14, 15 and 16 of the Indictment. ECF No. 337-2.

Jury convicted Mr. Goldstein on Counts 1, 3, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 of the Indictment. ECF No. 472.

On February 26, 2026, the Court retained the Jury to decide whether there was a sufficient nexus between Mr. Goldstein's residence located at 4323 Hawthorne Street, Washington, D.C. (the "Hawthorne Property") and his commission of the offense of false statements on loan application, as alleged in Count 16 of the Indictment, pursuant to Federal Rule of Criminal Procedure 32.2(b)(5),. ECF Nos. 456 and 462. The Jury reached a verdict that same day and declined to find such a nexus. *Id.*

Following the trial, the Government moved for a preliminary order of forfeiture, pursuant to 18 U.S.C. § 982(a)(2) and Fed. R. Crim. P. 32.2(b)(2), to include a money judgment in the amount of at least $1,987,500 in U.S. currency, equal to the value of the property constituting, or derived from, the proceeds that Mr. Goldstein obtained directly, or indirectly, up to the full value of his forfeiture money judgment, as a result of the false statements on loan application offense in Count 16. ECF No. 509 at 2. The Defense opposes the Government's motion for a preliminary order of forfeiture, upon among other grounds, that a forfeiture in the amount of $1,987,500 would violate the Eighth Amendment's Excessive Fines Clause. ECF No. 523 at 10-12.

During the July 24, 2026, sentencing hearing, the Court granted-in-part and denied-in-part the Government motion for preliminary order of forfeiture. ECF No. 559. In doing so, the Court held that forfeiture was appropriate and mandatory in this case, and that the Hawthorne Property was a proper substitute asset. ECF No. 574 (July 24, 2026, sentencing hearing Tr. at 178:22-183:21); *see also* 21 U.S.C. § 853(p); 18 U.S.C. § 982(b)(1). But the Court expressed concern that the requested amount of the forfeiture money judgment sought by the Government may be excessive. ECF No. 574 (July 24, 2026, sentencing hearing Tr. at 183:22-184:19). And so, the Court directed the parties to provide supplemental briefing on this issue. ECF No. 586.

The parties have since reached an agreement to conduct an interlocutory sale of the Hawthorne Property. ECF No. 587. But the parties remain in disagreement about the amount of the forfeiture money judgment in this case.

**B. Procedural History**

On May 21, 2026, the Government filed a motion for preliminary order of forfeiture. ECF No. 509. On September 10, 2026, the Government filed a supplemental brief regarding forfeiture. ECF No. 588.

On September 24, 2026, Mr. Goldstein filed a response to the Government's supplemental brief regarding forfeiture. ECF No. 591. On October 1, 2026, the Government filed a reply brief regarding forfeiture. ECF No. 592.

## III. STANDARDS OF DECISION

### A. Section 982(a)(2) And Forfeiture

Pursuant to 18 U.S.C. § 982(a)(2), the Court, "in imposing sentence on a person convicted of [a violation of 18 U.S.C. § 1014,] shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." 18 U.S.C. § 982(a)(2). The United States Court of Appeals for the Fourth Circuit has held that forfeiture is mandatory under Section 982(a)(2), even if a defendant no longer possesses the proceeds. *United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("Forfeiture is calculated on the basis of the total proceeds of a crime, not the percentage of those proceeds remaining in the defendant's possession."). And so, when a defendant no longer possesses the proceeds obtained as a result of a Section 1041 violation, "money judgments representing the unlawful proceeds are appropriate." *United States v. McGinty*, 610 F.3d 1242, 1246-47 (10th Cir. 2010) (collecting cases, concluding the government was "entitled to a money judgment against [the defendant] for the money he obtained from his criminal activity," and reversing district court's refusal to order a forfeiture money judgment equal to the proceeds of his offense).

### B. The Eight Amendment And The Excessive Fines Clause

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Fourth Circuit has held that an amount of forfeiture "violates the Excessive Fines Clause only if it is (1) punitive, and (2) grossly disproportional to the gravity of the defendant's offense." *United States v. Jalaram, Inc.*, 599 F.3d 347, 351 (4th Cir. 2010).

To assess the proportionality of the forfeiture, the Fourth Circuit has instructed that the Court consider the following four factors: (1) the amount of the forfeiture and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the crime charged and other crimes; and (4) the harm caused by the charged crime. *Id.* at 355-56. The first factor of this test compares the forfeiture sought to the maximum "authorized penalty," which is effectively the maximum fine applicable to the crime of

conviction. *See Jalaram, Inc.*, 599 F.3d at 355-56. And so, courts in the Fourth Circuit routinely look to the maximum fine authorized by statute to assess the forfeiture amount. *See, e.g.*, *United States v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021) (comparing forfeiture amount to maximum "statutorily authorized monetary penalty").

The Court may also consider the maximum fine recommended by the Fine Table under the Sentencing Guidelines. *See* U.S.S.G. § 5E1.1(c)(2)-(3). Relevant here, U.S.S.G. § 5E1.2(c)(2) provides that: "Except as specified in paragraph (4) below, the maximum of the fine guideline range is the amount shown in column B of the [subsection (c)(3) fine] table." U.S.S.G. § 5E1.2(c)(4) also provides that:

> Subsection (c)(2), limiting the maximum fine, does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $500,000, or (B) a fine for each day of violation. In such cases, the court may impose a fine up to the maximum authorized by the statute.

U.S.S.G § 5E1.2(c)(4). And so, when U.S.S.G. § 5E1.2(c)(4) applies, the Sentencing Guidelines impose no limit on the maximum fine. *United States v. Ming Hong*, 242 F.3d 528, 533 (4th Cir. 2001).

## IV. ANALYSIS

The parties have filed supplemental briefs regarding the appropriate amount of the forfeiture money judgment in this case. In this regard, the Government argues in its supplemental brief that the Court should enter a forfeiture money judgment in the amount of $1,987,500, which is the amount of the mortgage loan proceeds that Mr. Goldstein fraudulently obtained from NFM by violating 18 U.S.C. § 1041. ECF No. 588. To support this request, the Government argues that: (1) the maximum authorized penalty under Section 1041 and the applicable Sentencing Guidelines is $1,000,000; (2) a forfeiture money judgment in the amount of $1,987,500 is not excessive, given the maximum fine authorized under Section 1041; (3) the nature and extent of Mr. Goldstein's criminal conduct regarding his false statement on the NFM loan application was significant; (4) the relationship between Count 16 and the other Counts in this case are also strong; and (5) forfeiture of the full amount of the proceeds of Mr. Goldstein's fraud is appropriate in this case, notwithstanding the fact that NFM has not been economically harmed by his fraudulent conduct. *Id.* at 4-12. And so, the Government requests that the Court enter an amended forfeiture money judgment in the amount of $1,987,500 in this case. *Id.* at 12.

The Defense counters that the amount of the forfeiture money judgment requested by the Government in this case is excessive, because: (1) Mr. Goldstein's offense caused no harm to NFM; (2) there is a gross disparity between the proposed forfeiture amount and the penalties for a Section 1041 offense; and (3) the nature and extent of Mr. Goldstein's criminal activity and the relationship between the Section 1041 offense at issue and the other crimes charged in this case do not support the requested forfeiture amount. ECF No. 591 at 6-18. And so, the Defense requests that the Court deny the Government's request for a forfeiture money judgment in the amount of $1,987,500. *Id.* at 18.

For the reasons that follow, the Court reads Section 1041 and the relevant Sentencing Guidelines to provide that the maximum penalty for a Section 1041 offense is $1,000,000. The relevant factors in this case also weigh in favor of entering a forfeiture money judgment that is in alignment with the amount of this maximum penalty. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Government's motion for preliminary order of forfeitures and (2) ENTERS an amended forfeiture money judgment in the amount of $1,000,000 in this case.

The Court observes as an initial matter that the parties agree that forfeiture is a mandatory component of Mr. Goldstein's sentence, because the Court is imposing sentence on a person convicted of a violation of 18 U.S.C. § 1014. ECF No. 588 at 3-4; ECF No. 591; *see also* 18 U.S.C. § 982(a)(2) (providing that the Court "in imposing sentence on a person convicted of [a violation of 18 U.S.C. § 1014] shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation"). The Court also observes that courts have recognized that, when a defendant no longer possesses the proceeds obtained as a result of a Section 1041 violation, as is the cases here, "money judgments representing the unlawful proceeds are appropriate." *United States v. McGinty*, 610 F.3d 1242, 1246-47 (10th Cir. 2010). And so, the Court considers below whether the relevant factors to assess the proportionality of the requested forfeiture money judgment support entering the judgment requested by the Government. *United States v. Jalaram, Inc.*, 599 F.3d 347, 355-56 (4th Cir. 2010).

**A. The Amount Of The Forfeiture Is Proportional To The Authorized Penalty**

First, the Court agrees with the Government that the maximum authorized penalty for a Section 1014 offense is $1,000,000. To assess the maximum authorized penalty for Section 1041 offenses, the Court looks to the maximum fine authorized in that statute. *See, e.g.*, *United States*

*v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021) (comparing forfeiture amount to maximum "statutorily authorized monetary penalty"). The Court may also consider the maximum fine recommended by the Fine Table under the Sentencing Guidelines. U.S.S.G. § 5E1.1(c)(2)-(3.).

In this regard, Section 1041 provides that an individual who violates this statute "shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." 18 U.S.C. § 1041. And so, the maximum statutory fine for a Section 1041 offense is $1,000,000.

The Court also agrees with the Government that the maximum fine authorized by the Sentencing Guidelines is not applicable to a Section 1041 offense. In this regard, U.S.S.G. § 5E1.2(c)(4) provides that:

> [The maximum fine guideline range] does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $500,000, or (B) a fine for each day of violation. In such cases, the court may impose a fine up to the maximum authorized by the statute.

U.S.S.G § 5E1.2(c)(4). As the Government correctly observes, the relevant commentary in the Sentencing Guidelines also makes clear that U.S.S.G § 5E1.2(c)(4) "applies to statutes that contain special provisions permitting larger fines; the guidelines do not limit maximum fines in such cases." *Id.* app. n.4.

Given this, the Court reads the Sentencing Guidelines to provide that, when U.S.S.G. § 5E1.2 (c)(4) applies, the Sentencing Guidelines do not impose a limit on the maximum fine. U.S.S.G § 5E1.2(c)(4); *see also United States v. Ming Hong*, 242 F.3d 528, 533 (4th Cir. 2001). And so, the Court is satisfied that the $1,000,000 maximum fine set forth in Section 1041 is the proper metric to compare with the Government's requested forfeiture amount.

The Court also agrees with the Government that a forfeiture money judgment in the amount of $1,987,500 would be proportional to the maximum fine for a Section 1041 offense. This amount is slightly less than twice the amount of the maximum fine for a Section 1041 offense. It is also undisputed that the requested forfeiture amount reflects the exact value of Mr. Goldstein's mortgage fraud proceeds with regards to the NFM loan. ECF No. 591 at 7; ECF No. 588 at 9. And so, the first factor that the Court considers in assessing the proportionality of the forfeiture money judgment requested by the Government weighs in favor of entering a judgment in the requested forfeiture amount.

**B. The Nature And Extent Of Mr. Goldstein's Criminal Activity Supports The Requested Forfeiture Money Judgment Amount**

The Court is also satisfied that the nature and extent of Mr. Goldstein's criminal activity supports imposing the forfeiture amount requested by the Government. The trial evidence established that Mr. Goldstein sought a mortgage loan from NFM after he had already been turned down by another lender, due to undisclosed tax liens. ECF No. 441 at 36–37 and 55 (2/3/26 Tr. at 36:25-37:13, 37:11-13 and 55:10-15). The trial evidence also showed that Mr. Goldstein made false statements on his NFM loan application that mirror the false statements that he made on prior loan applications to FSM and Parabellum, including omitting his substantial poker-related debts. *Compare* ECF No. 565 at ¶ 252 (GX8.1 at 1 and GX8.1 at 1) *with* ECF No. 565 at 54 (GX10.1 at 3 and GX 13). Mr. Goldstein also acknowledged during the trial that he intentionally lied on the NFM loan application. ECF No. 447 at 117 and 125 (2/12/26 Tr. at 125:8-14 and 117:6-15). And so, the nature and extent of Mr. Goldstein's criminal conduct in this case was significant and supports a significant forfeiture money judgment.

**C. The Relationship Between The Crime Charged And Other Crimes Supports The Requested Forfeiture Money Judgment Amount**

The evidence in this case also makes clear that the relationship between Mr. Goldstein's Section 1041 offense in Count 16 and the other mortgage fraud and tax crimes charged in this case is a close one. The Indictment charged Mr. Goldstein with 19 criminal tax-related counts and three counts of false statements on a loan application. ECF No. 239. The trial evidence also showed that the mortgage fraud offense in Count 16 and the mortgage fraud offenses in Counts 14 and 15 of the Indictment involved essentially identical conduct. Namely, Mr. Goldstein's failure to disclose his significant poker-related debts on loan applications to obtain funds to purchase the Hawthorne Property. ECF No. 565 at 54 (GX10.1 at 3 and GX 13).

The mortgage fraud offense in Count 16 of the Indictment also factually overlaps with the criminal tax offenses for which Mr. Goldstein has been convicted. The trial evidence showed that these tax offenses also involved the concealment of Mr. Goldstein's poker-related debts. ECF No. 447 at 117 and 125 (2/12 Tr. 117:6-15, 125:8-14); ECF No. 565 at ¶ 260 (GX14 at 37); ECF No. 442 at 202 (2/4 Tr. 202:2-25). And so, the third factor that the Court considers in assessing the proportionality of the requested forfeiture money judgment also weighs in favor of entering a forfeiture money judgment in the amount requested by the Government.

**D. The Harm Caused By The Charged Crime Warrants A Reduction In The Requested Forfeiture Amount**

But the final factor that the Court considers in assessing the Government's requested forfeiture money judgment amount—the harm caused by the charged crime—weighs in favor of reducing the amount of the forfeiture money judgment requested by the Government. As the Government acknowledges, the trial evidence established that NFM suffered no economic harm as a result of Mr. Goldstein's Section 1041 offense. *Id.* at 11. Notably, a representative of NFM, Darran Anthony, testified during the trial that NFM has not "lost money" as a result of Mr. Goldstein's mortgage fraud and that Mr. Goldstein has "never defaulted on the loan" and "is still paying on time." ECF No. 444 at 134 (2/9/26 Tr. at 134:17- 24). There is also no dispute that Mr. Goldstein will fully re-pay the NFM mortgage loan upon the completion of the pending sale of the Hawthorne Property. ECF No. 591 at 11. *See generally* ECF No. 592 at 15.

Given this, NFM will be fully reimbursed before any amount is forfeited to the Government in this case. And so, Mr. Goldstein's full re-payment of the NFM loan supports reducing the amount of the forfeiture money judgment requested by the Government.

In sum, the Court agrees with the Government that a significant forfeiture money judgment is appropriate in this case, given the relationship between the maximum statutory penalty for a Section 1041 offense and the requested forfeiture amount, the nature and extent of Mr. Goldstein's fraudulent activity, and the relationship between the Section 1041 offense in Count 16 and the other crimes in this case. But the fact that NFM suffered no economic harm as a result of Mr. Goldstein's fraudulent conduct, and that Mr. Goldstein will fully re-pay the NFM loan upon the sale of the Hawthorne Property, weighs in favor of reducing the amount of the forfeiture money judgment requested by the Government. And so, the Court will impose a forfeiture money judgment in the amount of the maximum fine for a Section 1041.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART and DENIES-in-PART** the Government's motion for preliminary order of forfeitures; and

(2) **ENTERS** an amended forfeiture money judgment in the amount of **$1,000,000** in this matter.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge